58.    Upon information and belief, and unknown to Plaintiffs, upon the instruction of Stern, Safrin and First Republic LLC, Frenkel and Land Escrow on July 12, 2007 took and used Amusement's $13 million escrowed funds without notice and without Amusement's authorization on July 12, 2007 and in violation of specific instructions given to Friedman on July 9. Frenkel and Land Escrow transferred Amusement's funds to Stern and/or Safrin and/or First Republic LLC for their benefit. First Republic LLC thus closed its purchase of the property portfolio from seller, Colonial Realty Limited Partnership, that same date.

59.    As a result of this taking of Amusement's funds by Stern, Safrin and First Republic LLC on July 12, 2007, after and without objection to Amusement's counter offer of July 11, 2007, a contract formed between Amusement and Stern, Safrin and First Republic LLC that within 45 days Amusement would have the partnership.

60.    Since Amusement on July 12, 2007 did not know of the taking of its escrowed funds, Amusement that day wrote to Stern, Safrin and First Republic LLC, through Friedman, addressing their positions that Amusement already owned the whole thing, that Amusement should not worry and that better documentation of the agreed upon terms among the parties was better left to be done after closing, and asked for revised documents. Revised documents were not provided.

61.    On July 13, 2007, Friedman announced that he had executed versions of all of Stern's and Safrin's documents (the version that Amusement had already rejected), and that Amusement could authorize release of its escrowed $13 million dollars.

62.    Also on July 13, 2007, Amusement's California counsel and Allen Alevy in California were asked by Frenkel and Land Escrow to provide written authorization for

release of the $13 million escrowed funds, but authorization was refused for reasons previously disclosed. The provided writings from Stern and Safrin, through Friedman, were not satisfactory to Amusement as they appeared to be an attempt by Stern and Safrin to alter the terms of Amusement's offers and already agreed terms.

63.     Also on July 13, 2007, Frenkel announced that Steven Alevy had verbally authorized the release and asked Amusement's California counsel for written authorization, who refused. In the afternoon, Steven Alevy wrote to Frenkel: "You are hereby authorized to release $13,000,000 from escrow. The interest earned should be returned to originator." Frenkel and Land Escrow knew that such purported authorization from Steven Alevy could not properly authorize release of Amusement's escrowed funds because they had been specifically told otherwise in writing by Amusement.

64.     On July 15, 2007, Amusement for the first time learned of the earlier taking of Amusement's escrowed funds on July 12, 2007 from Frenkel and Land Escrow by Stern, Safrin and First Republic LLC. Thus the statements by Stern, Safrin, First Republic LLC, Frenkel and Land Escrow of July 13, 2007, as detailed above, were all a deception upon plaintiffs to conceal the fact that Amusement's escrowed funds were previously released and taken without authorization.

65.     Amusement's California counsel wrote to Frenkel and Land Escrow on July 15, 2007 that when the proper documents are provided the written authorization to release would be provided, and that if on or before the July 13, 2007 the funds were released, Frenkel and Land Escrow should retrieve them. Frenkel and Land Escrow did not respond.

66.     On July 16, 2007, Amusement's California counsel wrote to Frenkel, Land Escrow and Friedman and told them that the agreed upon terms and conditions among Stern,

Safrin and First Republic LLC with Amusement were not fulfilled by the documents that were previously provided. Frenkel, Land Escrow, First Republic LLC, Stern, Safrin and Friedman did not refute or object to this assertion.

67.    On July 19, 2007, Amusement's California counsel wrote to Frenkel and Land Escrow, asking them to wire the accrued interest back to Amusement. They did not do so.

68.    Amusement ended up with nothing of value after Stern, Safrin and First Republic LLC without proper authorization removed and took Amusement's escrowed $13 million from Frenkel and Land Escrow.

69.    On November 15, 2007, Amusement sent its demand to Stern, Safrin, First Republic LLC, Friedman and Steven Alevy as escrow holders that they deliver the escrowed eleven grant deeds and assignments of LLC membership interests to Amusement.

## FIRST CAUSE OF ACTION
### (DECLARATORY RELIEF AS TO OWNERSHIP OF GRANT DEEDS AND LLC INTERESTS, AGAINST STERN, SAFRIN & FIRST REPUBLIC LLC)

70.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

71.    An actual controversy has arisen and now exists between Plaintiffs and Defendants, Stern, Safrin & First Republic LLC in that Plaintiffs contend, and these defendants deny, the following:

a.    That these defendants agreed to convey to Amusement a present and immediate 100% ownership interest in the property portfolio prior to First Republic LLC's purchase of the property portfolio from seller, Colonial Realty Limited Partnership;

31

b.      That these defendants in fact conveyed to Amusement such a present and immediate 100% ownership interest in the property portfolio, when First Republic LLC provided Amusement, through escrow, with the grant deeds for each of the eleven properties within the property portfolio delivered on about July 11, 2007;

c.      That these defendants agreed to convey and assign to Amusement a present and immediate assignment of 100% of Stern's and Safrin's membership interests in MS Colonial LLC, JSAE Colonial LLC, FRGR HOLDINGS LLC, FRGR MANAGING MEMBER LLC and defendant, First Republic LLC, prior to First Republic LLC's purchase of the property portfolio from seller, Colonial Realty Limited Partnership;

d.      That these defendants in fact conveyed and assigned to Amusement such a present and immediate 100% of Stern's and Safrin's membership interests in MS Colonial LLC, JSAE Colonial LLC, FRGR HOLDINGS LLC, FRGR MANAGING MEMBER LLC and defendant, First Republic LLC, when Stern and Safrin provided Amusement, through escrow, with the LLC membership assignments delivered on about July 11, 2007, so that now Amusement is the present owner of 100% of the membership interest in First Republic LLC;

e.      That in the alternative to "a." above, these defendants agreed to convey to Amusement a present and immediate 50% ownership interest in the property portfolio prior to First Republic LLC's purchase of the property portfolio from seller, Colonial Realty Limited Partnership;

f.      That in the alternative to "b." above, these defendants in fact conveyed to Amusement such a present and immediate 50% ownership interest in the property portfolio;

g.      That Amusement and these defendants agreed that Stern and/or First Republic LLC were obligated to return and pay within sixty days of July 11, 2007 the sum of $13 million to Plaintiffs, and that Stern personally guaranteed such payment by the signed $13 million promissory note of about July 11, 2007, and that payment has not been made;

h.      Amusement and these defendants agreed that Stern and/or First Republic LLC were obligated to return and pay within sixty days of July 11, 2007 the sum of $15 million to Plaintiffs, and that Stern personally guaranteed such payment by the signed $15 million promissory note of about July 12, 2007, and that payment has not been made;

i.      That in furtherance of "a.", "b.", "c." and "d." above, Amusement and these defendants agreed that following Stern's and Safrin's assignments of First Republic LLC's membership interests to Amusement delivered about July 11, 2007, and following First Republic LLC providing the eleven grant deeds to Amusement, Stern and Safrin would have a limited option period through September 10, 2007 to repurchase their 50% ownership interest in First Republic LLC from Amusement by providing to Amusement during this time a signed partnership agreement which confirms Amusement will receive return of its contribution and presently is a 50% partner with Stern and Safrin in ownership and management of the property portfolio;

33

j.    That Stern and Safrin did not provide Amusement with a partnership agreement confirming Amusement as a 50% partner with Stern and Safrin in ownership and management of the property portfolio before September 10, 2006, and thus Stern's and Safrin's limited option period has passed unfulfilled and unexercised so that Amusement presently remains and is the owner of Stern's and Safrin's original ownership interest in First Republic LLC and/or the portfolio properties owned by First Republic LLC.

72.    Plaintiffs desire a judicial determination of the respective rights and duties of Plaintiffs and Defendants with respect to the damages and orders claimed in the complaint of Plaintiffs herein. In particular, Plaintiffs desire a declaration that Amusement owns First Republic LLC and owns the eleven portfolio properties formerly owned by First Republic LLC, and that Practical Finance as assignee is owed sums of money pursuant to promissory notes signed by Stern.

73.    A present controversy has arisen over whether the grant deeds and assignments of LLC membership interests were conveyed to Plaintiffs to provide Amusement with present ownership of real property and of LLC membership interests or were instead mortgage interests transferred to secure a loan transaction. Such a declaration is necessary and appropriate at this time in order that Plaintiffs may ascertain their rights and duties with respect to personal property and real property interests provided by First Republic LLC, Stern and Safrin to Plaintiffs.

## SECOND CAUSE OF ACTION
### (QUIET TITLE AS TO REAL PROPERTY, AGAINST FIRST REPUBLIC LLC)

74.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

75.     A true and correct copy of the eleven property portfolio grant deeds provided by First Republic LLC to Plaintiffs' escrow agent, Friedman and/or Steven Alevy, on about July 11, 2007, are attached hereto as **Exhibit 1**.

76.     On about November 15, 2007, Plaintiffs in writing requested that Defendants, including First Republic LLC, consent to release by Plaintiffs' escrow agent of the grant deeds to Plaintiffs so that Plaintiff, Amusement, could record them.  A true and correct copy of the letter request is attached hereto as **Exhibit 4** and is incorporated herein by reference. Defendants, including First Republic LLC, refused to agree to Amusement's recordation of the grant deeds.

77.     Defendants have taken the position that the property portfolio grant deeds provided by First Republic LLC created mortgage instruments, not actual transfers of ownership of the eleven properties to Amusement.

78.     As a proximate result of this refusal of Defendants, Amusement has not been able to clear title to the eleven properties that constitute the property portfolio and that are currently record titled to First Republic LLC.

79.     Based on facts alleged above, First Republic LLC presently and immediately conveyed to Amusement its 100% ownership interest in the property portfolio, when First Republic LLC provided Amusement, through escrow, the grant deeds for each of the eleven properties within the property portfolio delivered on about July 11, 2007.  The court should quiet title to Amusement.

## THIRD CAUSE OF ACTION
### (QUIET TITLE AS TO LLC MEMBERSHIP INTERSTS, AGAINST STERN & SAFRIN)

80.     Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

81.    A true and correct copy of the two assignments of LLC membership interests in MS Colonial LLC, JSAE Colonial LLC, FRGR HOLDINGS LLC, FRGR MANAGING MEMBER LLC and defendant, First Republic LLC, provided by Stern and Safrin to Plaintiffs' escrow agent, Friedman and/or Steven Alevy, on about July 11, 2007, are attached hereto as **Exhibit 5**.

82.    On about November 15, 2007, Plaintiffs in writing requested that Defendants, including Stern and Safrin, consent to the release from escrow of the assignments of LLC membership interests to Plaintiffs so that Plaintiff, Amusement, could file them in order to publicly reflect Amusement's present ownership of all LLC entities. A true and correct copy of the letter request is attached hereto as **Exhibit 4** and is incorporated herein by reference. Defendants, including Stern and Safrin, have not responded in writing to Amusement's demand and, in so doing, have blocked the release of the assignments from escrow into Plaintiff's possession and control.

83.    As a proximate result of this refusal of Defendants, Amusement has not been able to obtain clear title to the membership interests of the aforementioned LLCs, which are currently record titled to Stern and Safrin.

84.    Based on facts alleged above, Stern and Safrin presently and immediately conveyed to Amusement their 100% ownership interest in the aforementioned LLCs, through escrow, by the assignments of LLC membership interests delivered on about July 11, 2007. The court should quiet title to Amusement.

## FOURTH CAUSE OF ACTION
### (JUDICIAL FORECLOSURE OF REAL PROPERTY, AGAINST FIRST REPUBLIC LLC)

85.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

86.     In the alternative to Quiet Title above, Plaintiffs are beneficiaries under the terms of the LOI, grant deeds and escrow agreement of about July 11, 2007. The escrow agreement constitutes a security agreement among Plaintiffs, Stern, Safrin and First Republic LLC.

87.     First Republic LLC was the record owner of the eleven real properties that constitute the property portfolio, at the time that First Republic LLC provided its eleven grant deeds for same to Plaintiffs by deposit into escrow as security for Stern's and First Republic LLC's performance of the LOI and the promissory notes. First Republic LLC remains the record owner of the eleven real properties of the property portfolio at this time.

88.     By the terms of the LOI and the delivered promissory notes and security agreement, Stern and First Republic LLC promised and agreed to pay Plaintiffs, or either of them, the sums of $13,000,000 and/or $15,000,000 by September 10, 2007.

89.     Stern and First Republic LLC have wholly failed, neglected and refused to make or pay, and no other person has made or paid, the unpaid balance of principal and interest of the LOI, two promissory notes and debts reflected therein, which all came due September 10, 2007. The total amount of principal thus defaulted by Stern and First Republic LLC is Thirteen Million Dollars ($13,000,000) and/or Fifteen Million Dollars ($15,000,000), plus pre-default interest and default interest thereon pursuant to the LOIs and promissory notes' terms from dates due, plus penalties, foreclosure costs and attorney's fees all in a sum to be established in accordance with proof at trial.

90.     Plaintiffs have performed all obligations on their part, if any, to be performed under the terms of the LOI, promissory notes, grant deeds and security agreement. All conditions precedent to Plaintiffs' enforcement and collection of the LOI, promissory notes

and the debts reflected therein, and thus all conditions precedent to Plaintiffs' foreclosure of the grant deeds to the extent provided as security, have been satisfied and fulfilled. Therefore, Plaintiffs which are owed all sums on the defaulted LOI and promissory notes, are now entitled to foreclose upon the eleven real properties of the property portfolio to the extent the eleven grant deeds were provided by First Republic LLC to Plaintiffs as security for Stern's and First Republic LLC's performance of the LOI and promissory notes.

91.    Plaintiffs are now further entitled to seek a deficiency judgment against First Republic LLC, in the event at the judicially ordered foreclosure sale of the eleven properties that constitute the property portfolio, a deficiency balance will remain owed on the debt of Stern and First Republic LLC to Plaintiffs or either of them.

92.    By virtue of the foregoing, Plaintiffs seek a decree of judicial foreclosure of real property, and deficiency money judgment for any resulting deficiency, against First Republic LLC.

## FIFTH CAUSE OF ACTION
### (JUDICIAL FORECLOSURE OF PERSONAL PROPERTY LLC MEMBERSHIP INTERESTS, AGAINST STERN & SAFRIN)

93.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

94.    In the alternative to Quiet Title above, Plaintiffs are beneficiaries under the terms of the LOI, assignments of LLC membership interests and escrow agreement of about July 11, 2007. The escrow agreement constitutes a security agreement among Plaintiffs, Stern, Safrin and First Republic LLC.

95.    Stern and Safrin were the record owner of the assigned LLC membership interests, at the time that Stern and Safrin provided assignments of LLC membership interests to Plaintiffs by deposit with Plaintiffs' escrow agent, Friedman and/or Steven

Alevy, as security for Stern's and First Republic LLC's performance of the LOI and promissory notes. Stern and Safrin remain the record owners of the assigned LLC membership interests at this time.

96.     By the terms of the LOI and the delivered promissory notes and security agreement, Stern and First Republic LLC promised and agreed to pay Plaintiffs, or either of them, the sums of $13,000,000 and/or $15,000,000 by September 10, 2007.

97.     Stern and First Republic LLC have wholly failed, neglected and refused to make or pay, and no other person has made or paid, the unpaid balance of principal and interest of the LOI, two promissory notes and debts reflected therein, which all came due September 10, 2007. The total amount of principal thus defaulted by Stern and First Republic LLC is Thirteen Million Dollars ($13,000,000) and/or Fifteen Million Dollars ($15,000,000), plus pre-default interest and default interest thereon pursuant to the LOIs and promissory notes' terms from dates due, plus penalties, foreclosure costs and attorney's fees all in a sum to be established in accordance with proof at trial.

98.     Plaintiffs have performed all obligations on their part, if any, to be performed under the terms of the LOI, promissory notes, assignments of LLC membership interests and security agreement. All conditions precedent to Plaintiffs' enforcement and collection of the LOI, promissory notes and the debts reflected therein, and thus all conditions precedent to Plaintiffs' foreclosure of the assigned LLC membership interests to the extent provided as security, have been satisfied and fulfilled. Therefore, Plaintiffs which are owed all sums on the defaulted LOI and promissory notes, are now entitled to foreclose upon the LLC membership interests to the extent the assignments of LLC membership interests were

provided by Stern and Safrin to Plaintiffs as security for Stern's and First Republic LLC's performance of the LOI and promissory notes.

99.    Plaintiffs are now further entitled to seek a deficiency judgment against Stern and Safrin, in the event at the judicially ordered foreclosure sale of the LLC membership interests a deficiency balance will remain owed on the debt of Stern and First Republic LLC to Plaintiffs or either of them.

100.    By virtue of the foregoing, Plaintiffs seek a decree of judicial foreclosure of personal property, and deficiency money judgment for any resulting deficiency, against Stern and Safrin.

### SIXTH CAUSE OF ACTION
(BREACH OF CONTRACT - FAILURE TO REPAY INVESTMENT, AGAINST STERN, SAFRIN & FIRST REPUBLIC LLC)

101.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

102.    Amusement, on the one hand, entered into a contract with Stern, Safrin and First Republic LLC, on the other hand, by no later than July 11, 2007, having the consistent terms of the LOI (**Exhibit 1**) and the July 11, 2007 contract as described above.

103.    One of the agreed contract terms was that, since Amusement provided a $13 million investment and contribution to enable First Republic LLC's acquisition of the property portfolio for the benefit of First Republic LLC, Stern and Safrin, Stern, Safrin and First Republic LLC agreed they were obligated to return this $13 million investment to Amusement, with interest until paid.  This contract term was then modified to raise the repayment obligation to $15 million, as explained above.

104.    Although Amusement requested that the investment be repaid with interest in 45 days from closing of the property portfolio purchase, Stern, Safrin and First Republic

LLC requested and Amusement accepted that the investment could be repaid with interest in 60 days from closing of the property portfolio purchase. As First Republic LLC's closing with seller occurred July 12, 2007, Stern, Safrin and First Republic LLC thus were obligated to repay to Amusement its $15 million investment with interest by no later than September 10, 2007, or in the alternative should the modification not be upheld, its $13 million investment with interest by no later than September 10, 2007.

105.    The promissory notes provided by Stern for $15 million and $13 million merely memorialized and guaranteed Stern's performance of the $15 million or $13 million obligation owed by Stern, Safrin and First Republic LLC to Amusement for repayment of Amusement's $13 million investment plus the $2 million upward adjustment as described and detailed above.

106.    Defendants, Stern, Safrin and First Republic LLC, breached their agreement with Amusement on September 10, 2007 by failing to pay by that date the sum of $13 million or $15 million with interest to Amusement. To date, no partial sum has been paid.

107.    Plaintiffs have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract.

108.    Although demand has been made for return of the investment, as upwardly adjusted per agreement, with interest, no payments have been made by or received from Stern, Safrin and First Republic LLC towards such debt, so there now remains due and owing to Amusement by Stern, Safrin and First Republic LLC the sum of $15,000,000.00, plus interest at the legal rate or higher rate per the contract, from the date of breach of September 10, 2007, or in the alternative the sum of $13,000,000.00, plus interest at the legal rate or higher rate per the contract, from the date of breach of September 10, 2007.

## SEVENTH CAUSE OF ACTION
### (BREACH OF $13,000,000 PROMISSORY NOTE CONTRACT, AGAINST STERN)

109.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

110.    On about July 12, 2007 defendant, Stern executed a written Promissory Note contract wherein Stern promised to pay Amusement the sum of $13,000,000.00 principal, plus interest on the principal amount from July 12, 2007, both due on the maturity date of September 10, 2007.  Attached as **Exhibit 6** hereto, is a true and correct copy of this Promissory Note contract of July 12, 2007.

111.    This $13 million promissory note was entered into either as a memorialization and guaranty by Stern of Stern's full or partial performance of the $13 million obligation, or $15 million obligation, owed by Stern, Safrin and First Republic LLC to Amusement for repayment of Amusement's $13 million investment, plus upward adjustment, as described and detailed above, or in the alternative if Amusement did not invest but instead lent $13 million to allow Stern, Safrin and their entity, First Republic LLC, to purchase the property portfolio, then as a loan to Stern and First Republic LLC as evidenced by this $13 million promissory note signed by Stern.  Therefore in either event, Stern obligated himself, with or without others, to pay the sum of $13 million to Practical Finance as assignee.

112.    Stern breached the $13 million promissory note contract on September 10, 2007 by not making or paying this Note's principal with interest on that date as required by the terms of the written promissory note contract.  Stern has made no payment towards the promissory note contract. At this time, the outstanding balance owed by Stern to Practical

Finance as assignee pursuant to the terms of the Promissory Note contract is the sum of $13,000,000.00 principal, plus interest, plus default interest, all pursuant to the note's terms.

113.    Plaintiffs have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the written Promissory Note contract.

114.    The sum of $0 has been paid, and so there now remains due and owing to Practical Finance as assignee by Stern the sum of $13,000,000.00 principal, plus interest thereon at the note rate from July 12, 2007 and at the default rate thereafter from the date of breach of September 10, 2007.

### EIGHTH CAUSE OF ACTION
(BREACH OF CONTRACT - SPECIFIC PERFORMANCE FOR 50% OWNERSHIP OF FIRST REPUBLIC LLC, AGAINST STERN, SAFRIN & FIRST REPUBLIC LLC)

115.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

116.    Amusement, on the one hand, entered into a contract with Stern, Safrin and First Republic LLC, on the other hand, by no later than July 11, 2007, having the consistent terms of the LOI (**Exhibit 1**) and the July 11, 2007 contract as described above, wherein it was agreed that since Amusement provided a $13 million contribution to enable First Republic LLC's acquisition of the property portfolio for the benefit of First Republic LLC, Stern and Safrin, Amusement was entitled to receive a 50% ownership in the property portfolio by no later than July 12, 2007.

117.    In the event that the ownership and security structure provided by Stern, Safrin and First Republic LLC to Plaintiffs does not include Amusement having a present and valid 50% ownership interest in First Republic LLC, the purchaser of the property

portfolio, then Amusement is entitled to receive such 50% ownership in First Republic LLC as owner of the property portfolio by court order pursuant to the aforementioned agreement.

118.    If by July 12, 2007 Stern, Safrin and First Republic LLC did not provide Amusement with a present and valid 50% ownership interest in First Republic LLC, then Stern, Safrin and First Republic LLC breached their aforementioned agreement with Amusement on July 12, 2007 by failing to do so. They did not do so.

119.    Plaintiffs have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract. Since these defendants have not provided Amusement with a valid 50% ownership interest in First Republic LLC to date thus breaching the contract, Amusement is entitled to specific performance of the contract against Stern, Safrin and First Republic LLC for an order providing Amusement with a 50% ownership interest in First Republic LLC as owner of the property portfolio, as plaintiffs have no adequate remedy at law.

120.    Plaintiffs are also entitled to receive consequential damages in addition to specific performance against these defendants, including for half the income and profits generated by the property portfolio owned by First Republic LLC from July 12, 2007 through the date plaintiff obtains its co-ownership of First Republic LLC by court order, which is lost income and profit as a result of these defendants' breach of contract.

## NINTH CAUSE OF ACTION
### (BREACH OF CONTRACT - MONEY DAMAGES FOR 50% OWNERSHIP OF FIRST REPUBLIC LLC, AGAINST STERN, SAFRIN & FIRST REPUBLIC LLC)

121.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

122.    Amusement, on the one hand, entered into a contract with Stern, Safrin and First Republic LLC, on the other hand, by no later than July 11, 2007, having the consistent

terms of the LOI (**Exhibit 1**) and the July 11, 2007 contract as described above, wherein it was agreed that since Amusement provided a $13 million contribution to enable First Republic LLC's acquisition of the property portfolio for the benefit of First Republic LLC, Stern and Safrin, Amusement was entitled to receive a 50% ownership in the property portfolio by no later than July 12, 2007.

123.    If by July 12, 2007 Stern, Safrin and First Republic LLC did not provide Amusement with a present and valid 50% ownership of First Republic LLC, then Stern, Safrin and First Republic LLC breached their aforementioned agreement with Amusement on July 12, 2007 by failing to do so.

124.    For purposes of this claim, Stern, Safrin and First Republic LLC did not provide Amusement with a 50% ownership interest in First Republic LLC, by July 12, 2007 as had been promised, and thus these defendants breached their contract with Amusement as of that date.

125.    Plaintiffs have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract.

126.    Since these defendants have not provided Amusement with a valid 50% ownership interest in First Republic LLC to date, Amusement has been damaged and is entitled to money damages for the value of the undelivered valid 50% ownership interest in First Republic LLC, estimated to be the sum of about $30 million the exact sum to be proven at time of trial, plus interest at the legal rate from the date of breach.

127.    Plaintiffs are also entitled to receive consequential damages in addition to specific performance against these defendants, including for half the income and profits

generated by the property portfolio owned by First Republic LLC from July 12, 2007 through judgment.

128. The amount of money due plaintiffs from defendants is unknown and cannot be ascertained without an accounting of the funds utilized in all aspects of the transactions described or the wrongs alleged. Plaintiffs have demanded this information but defendants have failed and refused to provide the same.

## TENTH CAUSE OF ACTION
(BREACH OF $15,000,000 PROMISSORY NOTE CONTRACT, AGAINST STERN)

129. Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

130. On about July 12, 2007 Stern executed a written Promissory Note contract wherein Stern promised to pay Practical Finance (as subsequent assignee) the sum of $15,000,000.00 principal, due on the maturity date of September 10, 2007. Attached as **Exhibit 7** hereon, is a true and correct copy of this Promissory Note contract of July 12, 2007.

131. This $15 million promissory note was entered into either as a memorialization and guaranty by Stern of Stern's performance of the $15 million obligation owed by Stern, Safrin and First Republic LLC to Amusement for payment of investment return with upward adjustment, as described and detailed above.

132. Stern breached the $15 million promissory note contract on September 10, 2007 by not making or paying this Note's principal on that date as required by the terms of the written promissory note contract. Stern has made no payment towards the promissory note contract. At this time, the outstanding balance owed by Stern to Practical Finance (as

assignee) pursuant to the terms of the Promissory Note contract is the sum of $15,000,000.00 principal, plus default interest, all pursuant to the note's terms.

133.    Plaintiffs have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the written Promissory Note contract.

134.    The sum of $0 has been paid, and so there now remains due and owing to Practical Finance (as assignee) by Stern the sum of $15,000,000.00 principal, plus interest thereon at the default rate from the date of breach of September 10, 2007.

## ELEVENTH CAUSE OF ACTION
### (BREACH OF CONTRACT - SPECIFIC PERFORMANCE FOR 100% OWNERSHIP OF FIRST REPUBLIC LLC, AGAINST STERN, SAFRIN & FIRST REPUBLIC LLC)

135.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

136.    Amusement, on the one hand, entered into a contract with Stern, Safrin and First Republic LLC, on the other hand, by no later than July 11, 2007, having terms of the July 11, 2007 contract as described above, that since Amusement provided a $13 million investment and contribution to enable First Republic LLC's acquisition of the property portfolio for the benefit of these defendants, Amusement would receive 100% ownership of the property portfolio by no later than July 12, 2007, with 50% ownership in the property portfolio being subject to repurchase from Amusement by Stern and Safrin if they provide to Amusement by no later than September 10, 2007 a signed partnership agreement which confirms Amusement will receive return of its contribution and presently is a 50% partner with Stern and Safrin in ownership and management of the property portfolio.

137.    In the event that the ownership and security structure provided by Stern, Safrin and First Republic LLC to Plaintiffs on about July 11 - 12, 2007 did not provide

Amusement with a present and valid 100% ownership interest in First Republic LLC, then Amusement is entitled to receive such 100% ownership in First Republic LLC as owner of the property portfolio by court order pursuant to the aforementioned agreement.

138.    If by July 12, 2007 Stern, Safrin and First Republic LLC did not provide Amusement with a present and valid 100% ownership of First Republic LLC, then Stern, Safrin and First Republic LLC breached their aforementioned agreement with Amusement on July 12, 2007 by failing to do so.  Further, if by September 10, 2007 Stern and Safrin did not repurchase from Amusement a 50% ownership of First Republic LLC by providing to Amusement during this time a signed partnership agreement which confirmed Amusement would receive return of its contribution and presently be a 50% partner with Stern and Safrin in ownership and management of the property portfolio, then thereafter Amusement was entitled to retain 100% ownership of First Republic LLC.

139.    For purposes of this claim, Stern, Safrin and First Republic LLC did not provide Amusement with a valid 100% ownership of First Republic LLC by July 12, 2007 as had been promised, and thus these defendants breached their contract with Amusement as of that date.  Further, Stern and Safrin did not repurchase from Amusement a 50% ownership of First Republic LLC by providing to Amusement during this time a signed partnership agreement which confirmed Amusement would receive return of its contribution and presently be a 50% partner with Stern and Safrin in ownership and management of the property portfolio.

140.    Plaintiffs have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract.

141.    As a result of these defendants having not provided Amusement with a valid 100% ownership of First Republic LLC to date, Amusement is entitled to specific performance of the contract against Stern, Safrin and First Republic LLC for an order providing Amusement with 100% ownership of First Republic LLC, as plaintiffs have no adequate remedy at law.

142.    Plaintiffs are also entitled to receive consequential damages in addition to specific performance against these defendants, including for half the income and profits generated by the property portfolio owned by First Republic LLC from July 12, 2007 through the date plaintiff obtains its 100% ownership of First Republic LLC by court order, which is lost income and profit as a result of these defendants' breach of contract.

## TWELFTH CAUSE OF ACTION
(BREACH OF CONTRACT - MONEY DAMAGES FOR 100% OWNERSHIP OF FIRST REPUBLIC LLC, AGAINST STERN, SAFRIN & FIRST REPUBLIC LLC)

143.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

144.    Amusement, on the one hand, entered into a contract with Stern, Safrin and First Republic LLC, on the other hand, by no later than July 11, 2007, having the consistent terms of the LOI (**Exhibit 1**) and the July 11, 2007 contract as described above, that since Amusement provided a $13 million investment and contribution to enable First Republic LLC's acquisition of the property portfolio for the benefit of these defendants, Amusement would receive 100% ownership of the property portfolio by no later than July 12, 2007, with 50% ownership in the property portfolio being subject to repurchase from Amusement by Stern and Safrin if they provide to Amusement within 60 days of July 12, 2007 a signed partnership agreement which confirms Amusement will receive return of its contribution and

presently is a 50% partner with Stern and Safrin in ownership and management of the property portfolio.

145.    If by July 12, 2007 Stern, Safrin and First Republic LLC did not provide Amusement with a present and valid 100% ownership of First Republic LLC, then Stern, Safrin and First Republic LLC breached their aforementioned agreement with Amusement on July 12, 2007 by failing to do so.

146.    In the event 100% ownership of First Republic LLC was provided by July 12, 2007, Stern and Safrin did not repurchase from Amusement a 50% ownership of First Republic LLC by providing to Amusement, on or before September 10, 2007, a signed partnership agreement which confirms Amusement will receive return of its contribution and presently is a 50% partner with Stern and Safrin in ownership and management of the property portfolio.

147.    Plaintiffs have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the contract.

148.    Since either these defendants have not provided Amusement with a valid 100% ownership of First Republic LLC to date, or a 100% ownership was timely provided but Amusement has not been provided with a signed partnership agreement which confirms Amusement will receive return of its contribution and presently is a 50% partner with Stern and Safrin in ownership and management of the property portfolio for repurchase of a 50% ownership of First Republic LLC, Amusement is entitled to money damages for the value of the undelivered or delivered 100% ownership interest in First Republic LLC, estimated to be the sum of about $60 million the exact sum to be proven at time of trial, plus interest at the legal rate from the date of breach.

149. Plaintiffs are also entitled to receive consequential damages in addition to specific performance against these defendants, including for half the income and profits generated by the property portfolio owned by First Republic LLC from July 12, 2007 through judgment.

150. The amount of money due plaintiffs from defendants is unknown and cannot be ascertained without an accounting of the funds utilized in all aspects of the transactions described or the wrongs alleged. Plaintiffs have demanded this information but defendants have failed and refused to provide the same.

## THIRTEENTH CAUSE OF ACTION
### (BREACH OF ESCROW CONTRACT – AGAINST FRENKEL & LAND ESCROW)

151. Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

152. When Amusement wired the sum of $13 million to Land Escrow and Frenkel with written instruction that only certain persons of Amusement could authorize the release of such funds from escrow, as detailed above, a contract was formed between Land Escrow and Frenkel with Amusement having such terms.

153. At first upon immediate wire of Amusement's funds, Friedman was a person authorized to release Amusement's funds from escrow, but these instructions were changed in writing by Amusement such that only Allen Sragow or Allen Alevy could authorize Frenkel and Land Escrow to release Amusement's funds, as detailed above.

154. Defendants, Frenkel and Land Escrow, breached their agreement with Amusement on about July 12, 2007 by releasing Amusement's escrowed $13 million without the authorization of Allen Sragow or Allen Alevy.

155.    Amusement has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the escrow contract.

156.    Although demand has been made for return of the $13 million placed into escrow with interest, no sum has been returned by or received from Frenkel or Land Escrow, so there now remains due and owing to Amusement by Land Escrow and Frenkel the sum of $13,000,000.00, plus interest at the legal rate from the date of breach of July 12, 2007, plus consequential damages caused by this breach of escrow contract.

## FOURTEENTH CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY, AGAINST FRENKEL & LAND ESCROW)

157.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

158.    Amusement transmitted its funds to Frenkel and Land Escrow to be held for use in the property portfolio purchase transaction then pending.

159.    Frenkel and Land Escrow were given clear and multiple instructions from Amusement, and from Friedman as Amusement's agent, to not release the escrowed money without written authorization from either Allen Alevy or Allen Sragow.

160.    Frenkel and Land Escrow as escrow agents holding money had the fiduciary duty to maintain escrowed funds under the instructions provided by the party providing the funds. As an escrow agent, these defendants held Amusement's $13 million in trust to be used only as Amusement instructed. Thus these defendants owed a fiduciary duty to Amusement to only act by authorized instruction of Amusement and in Amusement's best interests.

161. Frenkel and Land Escrow released to unknown persons on about July 12, 2007 Amusement's $13,000,000 held in its escrow account #5514007904, without receiving written authorization from either Allen Alevy or Allen Sragow. Thus these defendants breached their fiduciary duty owed to Amusement on July 12, 2007.

162. In addition, upon information and belief, First Republic LLC's purchase of the property portfolio from Colonial Realty Limited Partnership closed on July 12, 2007. On that date, First Republic LLC used a portion of Amusement's $13 million dollars then in escrow to close that purchase transaction. Therefore, Frenkel and Land Escrow released at least some of Amusement's $13 million then held in escrow not only without proper written authorization from Amusement's agents, Allen Sragow or Allen Alevy, but also without notice to Amusement until July 13, 2007. Thus these defendants breached their fiduciary duty owed to Amusement on July 12, 2007.

163. As a result of Frenkel and Land Escrow releasing Amusement's $13,000,000 from escrow on July 12, 2007 before Amusement completed memorialization of its agreements with Stern, Safrin and First Republic LLC, Amusement has suffered damages.

164. In addition, as a result of Frenkel and Land Escrow's refusal to return the accrued interest on the escrowed $13,000,000, Amusement has been damaged in an additional sum of approximately $20,000. Amusement is entitled to punitive damages and pre-judgment interest on all sums due as a result of these defendants' breach of fiduciary duty.

165. The amount of money due plaintiffs from defendants is unknown and cannot be ascertained without an accounting of the funds utilized in all aspects of the transactions

described or the wrongs alleged. Plaintiffs have demanded this information but defendants have failed and refused to provide the same.

## FIFTEENTH CAUSE OF ACTION
(FRAUD IN THE INDUCEMENT - AGAINST STERN & SAFRIN (REGARDING NEED FOR $13,000,000))

166.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

167.    On about June 29, 2007, when Stern and Safrin solicited Amusement's $13 million contribution to enable Stern and Safrin to complete their acquisition of the property portfolio from seller, Colonial Realty Limited Partnership, Stern and Safrin promised by email, through Friedman, to Allen Alevy at Amusement: 1) - that the entire $13 million contribution was necessary for completion of the property portfolio purchase. Amusement accepted material representation and relied upon it on June 29, 2007 when Amusement wired its $13 million to Land Escrow and Frenkel that day.

168.    Stern's and Safrin's investment solicitation promise made to Amusement was false and on information and belief Stern and Safrin knew it to be false when made on about June 29, 2007, because these defendants knew that same day they did not need $13 million in additional funds to close purchase of the property portfolio. Instead on information and belief, these defendants knew on that same day that they only needed about $9 million in additional funds to close purchase of the property portfolio.

169.    Thus the false investment solicitation of these defendants induced Amusement to place into escrow on June 29, 2007, for benefit of these defendants, about $4 million more than these defendants needed to purchase the property portfolio.

170.    Upon information and belief, these defendants at closing of the property portfolio purchase use the about $4 million excess of Amusement's contribution to pay

Stern's and Safrin's personal creditors included payment to the following persons and entities: Carruthers & Roth; Young Conaway Starrgatt & Taylor; Odin Feldman Pittleman; Young Conaway; Starrgatt & Taylor; Cavazos Hendricks & Poirot, PC; Buchanen Ingersol; Herrick Feinstein; Mary Stark; Frank Dwyer; NRAI Entity Services; Burr Forman; Parker Hudson Rainer; Bruce Minsky; Prudential Douglas Elliman; GAMC IPG; Ace Capital Group; Hoffinger Stern & Ross; Eisenpress and Reiss; and Roman Associates, LTD.

171.    Amusement reasonably and justifiably relied upon Stern's and Safrin's false representation of June 29, 2007 as described above.

172.    As a direct and proximate result of Stern's and Safrin's false representation, Amusement was induced to provide about $4 million more than necessary for Stern's and Safrin's acquisition of the property portfolio, so that Stern and Safrin acquired $4 million for themselves under false pretense to Amusement. Amusement has been damaged by loss of at least $4 million, the exact sum to be proven at time of trial, plus any and all pre-judgment interest allowed by law.

173.    In making the false promises described above, Stern and Safrin acted with oppression, fraud and malice, for having used their investment solicitation in a business venture to make and profit personally from false promises targeted to harm Amusement, and Amusement is therefore entitled to punitive damages in an amount to be established at time of trial.

174.    The amount of money due plaintiffs from defendants is unknown and cannot be ascertained without an accounting of the funds utilized in all aspects of the transactions described or the wrongs alleged. Plaintiffs have demanded this information but defendants have failed and refused to provide the same.

## SIXTEENTH CAUSE OF ACTION
(BREACH OF CONTRACT - AGAINST STERN & SAFRIN
(REGARDING USE OF $13,000,000))

175.   Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

176.   On about June 29, 2007, when Stern and Safrin solicited Amusement's $13 million contribution to enable Stern and Safrin to complete their acquisition of the property portfolio from seller, Colonial Realty Limited Partnership, Stern and Safrin promised to Amusement: 1) - that the $13 million contribution was necessary for completion of the property portfolio, and 2) - Amusement's $13 million contribution would be entirely used for that purchase with any excess placed into the property portfolio by providing such to the owning entity.  Amusement accepted these representations when on that same day of June 29, 2007, Amusement wrote to Stern and Safrin on June 29, 2007 stating that Stern and Safrin would only need to use about $9 million of Amusement's $13 million towards acquisition of the property portfolio thus leaving about $4 million excess remaining for retention in the property portfolio purchasing entity as promised.  Thus a contract was formed on June 29, 2007 between Amusement and these defendants containing these terms originally represented by these defendants.

177.   On about July 12, 2007 Stern and Safrin breached their contract with Amusement promising to retain Amusement's excess within the property portfolio at closing, when upon First Republic LLC's acquisition of the property portfolio on July 12, 2007 by Stern's and Safrin's use of Amusement's $13 million contribution, Stern and Safrin did not retain the about $4 million excess in First Republic LLC.  Instead, Stern and Safrin took Amusement's about $4 million excess for themselves to pay their personal expenses and personal creditors, thus violating their contractual promise to Amusement.

56

178.    Upon information and belief, the portion of Amusement's contribution used to pay Stern's and Safrin's personal creditors included payment to the following persons and entities:

179.    Carruthers & Roth; Young Conaway Starrgatt & Taylor; Odin Feldman Pittleman; Young Conaway; Starrgatt & Taylor; Cavazos Hendricks & Poirot, PC; Buchanen Ingersol; Herrick Feinstein; Mary Stark; Frank Dwyer; NRAI Entity Services; Burr Forman; Parker Hudson Rainer; Bruce Minsky; Prudential Douglas Elliman; GAMC IPG; Ace Capital Group; Hoffinger Stern & Ross; Eisenpress and Reiss; and Roman Associates, LTD.

180.    As a direct and proximate result of Stern's and Safrin's breach of contract, Amusement was induced to provide about $4 million more than necessary for Stern's and Safrin's acquisition of the property portfolio, and Stern and Safrin wrongly acquired about $4 million of Amusement's funds for their personal use in contravention of their promise not to do so. Amusement has been damaged by loss of at least $4 million, the exact sum to be proven at time of trial, plus interest at the legal rate from the date of breach of July 12, 2007.

181.    The amount of money due plaintiffs from defendants is unknown and cannot be ascertained without an accounting of the funds utilized in all aspects of the transactions described or the wrongs alleged. Plaintiffs have demanded this information but defendants have failed and refused to provide the same.

## SEVENTEENTH CAUSE OF ACTION
### (FRAUD IN THE INDUCEMENT – AGAINST STERN & SAFRIN (REGARDING ABILITY TO REFINANCE))

182.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.