183. The terms of the loan agreements between Citibank and borrowers ("Citibank loan agreements") were known by, and were in the possession of, Stern and Safrin, but were not disclosed to, not known by and were not in the possession of plaintiffs through July 13, 2007. Thus Amusement was unaware of loan terms between Citibank and the borrowers up through Frenkel's and Land Escrow's unauthorized release of Amusement's $13 million escrowed funds.

184. On about June 29, 2007, Stern and Safrin disclosed to Amusement by email sent that date, through Friedman, that the Citibank debt upon the property portfolio would be about $126 million and that the property portfolio had a market value of about $190 million, so that equity of about $64 million existed from which repayment to Amusement would occur.

185. Based on these disclosed financials, to induce Amusement's $13 million contribution to Stern's and Safrin's acquisition of the property portfolio, Stern and Safrin represented by email, through Friedman, to Allen Alevy of Amusement on about June 29, 2007, and again by emails between these parties of about July 11, 2007 as detailed above, that: 1) - there would be a defined time in which Amusement would receive return of its $13 million contribution, 2) - this defined time would be 60 days from closing of the property portfolio purchase, and 3) - since Safrin and Stern lacked sufficient personal funds to repay Amusement's $13 million contribution within 60 days, repayment would occur by these defendants' removal of equity from the property portfolio through refinance of the Citibank loan within the 60 day repayment period.

186. The promissory notes signed by Stern both contained 60 day terms from closing to reflect this promise that 60 days from closing the Citibank loan encumbering the

property portfolio would be refinanced by these defendants to obtain the funds necessary to pay Amusement.

187.    Further, Stern and Safrin performed the terms of their promise by their post-closing attempts to refinance the Citibank loan that encumbered the property portfolio after July 12, 2007.

188.    Notwithstanding these post-July 12, 2007 attempts by Stern and Safrin to pull equity out of the property portfolio in attempted repayment of Amusement, these defendants' prior material representations that return of Amusement's $13 million contribution within 60 days of closing was possible based upon payoff and refinance of the Citibank loan was false, and Stern and Safrin knew this representation to be false when made.  In fact, known to Stern and Safrin but unknown to Plaintiffs, the Citibank loan agreements in these defendants' possession precluded any payoff and refinance of the Citibank debt secured by the property portfolio within the first 180 days after July 12, 2007, and also precluded placement of additional debt upon the property portfolio, and thus precluded removal of equity from the property portfolio to repay Amusement its $13 million investment within 60 days of July 12, 2007.

189.    Stern's intent within his $13 million and $15 million promissory notes that equity from the property portfolio could be and would be procured within 60 days of July 12, 2007 to pay those notes was thus also false.

190.    Stern and Safrin had a duty to disclose to investor, Amusement, that the repayment terms offered to Amusement by these defendants were in fact at least possible and not impossible as was the case.  These defendants and Amusement were to be business partners together owning and operating the property portfolio once purchased.  Thus these

59

defendants knowingly. maliciously and wrongly concealed the material fact from Plaintiffs that Citibank would not allow the refinance of the debt secured by the property portfolio for an initial 180 days from July 12, 2007, so that equity within the property portfolio could not be tapped within 60 days of July 12, 2007 as promised by Stern and Safrin.

191.    Plaintiffs reasonably and justifiably relied upon the false representation of 60 day loan refinance as the funding source to repay Amusement's $13 million investment, and to pay the promissory notes signed by Stern, as Amusement would not have provided its $13 million to Stern and Safrin for acquisition of the property portfolio unless the property portfolio, with its equity, could be tapped within a short 60 day time to return at least $13 million to Amusement.

192.    As a direct and proximate result of Stern's and Safrin's false promise and concealment, Amusement was induced to provide $13 million for a promised investment return within 60 days of closing.  With Stern's and Safrin's concealed material knowledge that 60 day refinance of the Citibank loan was impossible, Stern and Safrin could not and did not use equity from the property portfolio to repay Amusement any sum within 60 days of July 12, 2007.  Amusement has thus been damaged by the sum of at least $13 million, the exact sum to be proven at time of trial, plus any and all prejudgment interest allowed by law.

193.    In making the false promise with concealment described above that Amusement would see return of its investment in 60 days from equity taken from the property portfolio, Amusement was induced to provide $13 million to Stern and Safrin. Thus Stern and Safrin acted with oppression, fraud and malice, for having used their concealed knowledge to falsely promise to Amusement that it would be repaid its investment within 60 days of July 12, 2007 based on equity available from the property

portfolio. Stern and Safrin thus targeted Amusement for harm, so that these defendants would not lose their opportunity to purchase the property portfolio, and Amusement is therefore entitled to punitive damages in an amount to be established at time of trial.

## EIGHTEENTH CAUSE OF ACTION
### (NEGLIGENT MISREPRESENTATION – AGAINST STERN & SAFRIN) (REGARDING ABILITY TO REFINANCE)

194.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

195.    In the alternative to the 17th cause of action above, if Stern and Safrin did not know the falsity of their material representation concerning source of repayment and did not intentionally conceal from plaintiffs the fact of 180 day repayment lockout by Citibank of its debt encumbered by the property portfolio, these defendants should have known that their representation that the property portfolio would be the repayment source by refinance of the Citibank loan within 60 days of July 12, 2007, was a false promise, not possible to perform, at variance with Citibank loan agreements.

196.    Stern's and Safrin's false representation if not made knowingly was made recklessly and negligently, without due regard for the truth of the asserted ability to refinance equity out of the property portfolio in 60 days, because Stern and Safrin were parties to, and in control and possession of, the Citibank loan documents which indicated by its 180 day lockout term that a contemplated 60 day repayment period from property portfolio equity was not possible.

197.    Plaintiffs requested but did not receive the Citibank loan documents which contained the 180 day lockout term, and thus as these defendants were to be partners with Amusement in ownership and management of the property portfolio, these defendants owed a duty to Amusement to provide requested loan agreements that could impact the business

relationship. Had plaintiffs known of the 180 day lockout of Citibank loan refinance prior to July 12, 2007, Amusement would not have provided its $13 million to Stern and Safrin for acquisition of the property portfolio so that Amusement would have recalled its funds from Land Escrow and Frenkel. Therefore, plaintiffs reasonably and justifiably relied upon the mistaken representation of 60 day loan refinance as the funding source to repay Amusement's $13 million contribution.

198.    As a direct and proximate result of Stern's and Safrin's false promise negligently made, Amusement was induced to provide and did in fact provide its $13 million contribution to Stern and Safrin for acquisition of the property portfolio. Amusement has thus been damaged by the sum at least $13 million, the exact sum to be proven at time of trial, plus any and all prejudgment interest allowed by law.

## NINETEENTH CAUSE OF ACTION
(FRAUD - INDUCEMENT OF ESCROW – AGAINST STERN & SAFRIN)
(REGARDING CONSENT TO RELEASE FUNDS FROM ESCROW)

199.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

200.    Amusement wired $13 million to escrow for the benefit of Stern and Safrin, pending negotiation of and entry into a final payment and security agreement between Amusement and Stern / Safrin. Amusement's instruction to escrow to await its authorization to release its previously wired $13 million to Stern and Safrin for their use and benefit, was based upon ongoing negotiations that continued between Amusement and Stern / Safrin that as of July 12, 2007 when escrow released Amusement's funds to Stern and Safrin, and Stern and Safrin used those funds, had not led to a final payment and security agreement between Amusement and Stern / Safrin satisfactory to Amusement.

201.    Prior to and including July 12, 2007, various proposals and drafts of the Amusement - Stern / Safrin payment and security agreements went back and forth between the parties, but no final payment and security agreements acceptable to Amusement had been reached or provided. Thus, Amusement reasonably did not provide its authorization, through Allen Alevy or Allen Sragow, to escrow to release Amusement's $13 million to Stern and Safrin.

202.    Notwithstanding this lack of a negotiated final payment and security agreement between Amusement and Stern / Safrin, and notwithstanding Amusement's lack of authorization to escrow to release funds to Stern and Safrin, Stern and Safrin on about July 12 and 13, 2007 without Plaintiffs' knowledge or consent, falsely misrepresented to Steven Alevy, not authorized release agent of Amusement, and to Frenkel and Land Escrow, that a final payment and security agreement between Amusement and Stern / Safrin had been reached and thus it was now permitted for Land Escrow and Frenkel to release Amusement's escrowed $13 million to Stern and Safrin. Stern and Safrin thus concealed the truth from Land Escrow, Frenkel and Steven Alevy that in fact no final payment and security agreements acceptable to Amusement had been reached.

203.    Land Escrow and Frenkel released Amusement's $13 escrowed million on about July 12, 2007, based at least in part upon and in reliance upon Stern's and Safrin's false, material representation that a final payment and security agreement had been reached by them with Amusement. Land Escrow and Frenkel would not have released Amusement's $13 million on July 12, 2007, to Amusement's detriment, without having received Stern's and Safrin's false representation.

204.  As a direct and proximate result of Stern's and Safrin's fraud and concealment upon Land Escrow and Frenkel, Amusement's escrowed $13 million was taken from Amusement without permission or authorization, so that a theft occurred whereby Stern and Safrin stole Amusement's escrowed funds without finalizing payment and security agreements with Amusement.  Amusement has thus been damaged in the sum of at least $13 million, the exact sum to be proven at time of trial.

205.  In making the false promises described above to convince Land Escrow and Frenkel to release Amusement's $13 million to Stern and Safrin, before terms agreed by Stern and Safrin with Amusement could be memorialized in legally binding writings, Stern and Safrin acted with oppression, fraud and malice.  Stern and Safrin knew that Amusement had not yet received written memorialization of agreed upon terms for Amusement's investment in the property portfolio purchase, and yet Stern and Safrin nevertheless falsely claimed to Land Escrow, Frenkel and Steven Alevy, to induce release of Amusement funds by Land Escrow and Frenkel, that Amusement had received agreements from Stern, Safrin and First Republic LLC containing agreed upon terms with Amusement.  Amusement was harmed by the early and unauthorized release of its funds from Land Escrow and Frenkel wrongly induced by Stern and Safrin, and Amusement is therefore entitled to punitive damages in an amount to be established at time of trial.

## TWENTIETH CAUSE OF ACTION
(NEGLIGENT MISREPRESENTATION - INDUCEMENT OF ESCROW — AGAINST STERN & SAFRIN)
(REGARDING CONSENT TO RELEASE FUNDS FROM ESCROW)

206.  Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

207.    In the alternative to the 19th cause of action above, if Stern and Safrin did not know the falsity of their representation concerning the finality of agreements with plaintiffs concerning escrowed funds, and did not intentionally trick Frenkel and Land Escrow to release Amusement's escrowed funds based on the fact that there did not yet exist any final agreement with plaintiffs concerning its escrowed funds, these defendants should have known that their representation to Frenkel and Land Escrow that the final agreements with plaintiffs concerning the escrowed funds was false, since no final agreements in fact had been reached and executed between plaintiffs and these defendants.

208.    Stern's and Safrin's false representation to Frenkel and Land Escrow if not made knowingly was made recklessly and negligently, without due regard for the truth of the assertion that final agreements had been reached and executed between these defendants and plaintiffs and thus the escrowed funds could be released, because these defendants' prepared and provided the agreements with plaintiffs that were provided to plaintiffs.

209.    Prior to and including July 12, 2007, various proposals and drafts of the Amusement - Stern / Safrin payment and security agreements went back and forth between the parties, but no final payment and security agreements acceptable to Amusement had been reached or provided.  Thus, Amusement reasonably did not provide its authorization, through Allen Alevy or Allen Sragow, to escrow to release Amusement's $13 million to Stern and Safrin, and these defendants should have recognized this lack of final agreement between the parties.

210.    Notwithstanding this lack of a negotiated final payment and security agreement between Amusement and Stern / Safrin, and notwithstanding Amusement's lack of authorization to escrow to release funds to Stern and Safrin, Stern and Safrin on about

July 12 and 13, 2007 without Plaintiffs' knowledge or consent, negligently yet falsely misrepresented to Steven Alevy, not authorized release agent of Amusement, and to Frenkel and Land Escrow, that a final payment and security agreement between Amusement and Stern / Safrin had been reached and thus it was now permitted for Land Escrow and Frenkel to release Amusement's escrowed $13 million to Stern and Safrin. Stern and Safrin thus negligently ignored the truth from Land Escrow, Frenkel and Steven Alevy that in fact no final payment and security agreements acceptable to Amusement had been reached.

211. Land Escrow and Frenkel released Amusement's $13 escrowed million on about July 12, 2007, based at least in part upon and in reliance upon Stern's and Safrin's negligent yet false representation that a final payment and security agreement had been reached by them with Amusement. Land Escrow and Frenkel would not have released Amusement's $13 million on July 12, 2007, to Amusement's detriment, without having received Stern's and Safrin's negligent yet false representation.

212. As a direct and proximate result of Stern's and Safrin's negligent misrepresentation to Steven Alevy, Land Escrow and Frenkel, Amusement's escrowed $13 million was taken from Amusement without permission or authorization, so that a theft occurred whereby Stern and Safrin stole Amusement's escrowed funds without finalizing payment and security agreements with Amusement. Amusement has thus been damaged in the sum of at least $13 million, the exact sum to be proven at time of trial, plus any and all prejudgment interest allowed by law.

## TWENTY-FIRST CAUSE OF ACTION
(FRAUD - CONCEALMENT AND FALSE PROMISE, AGAINST STERN,
SAFRIN & FIRST REPUBLIC LLC)
(REGARDING ABILITY TO TRANSFER AND/OR PLEDGE ASSETS)

213.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

214.    From about July 9, 2007 through July 13, 2007, while Stern/Safrin and Amusement were negotiating a final ownership and security agreement between them, and exchanging drafts of same, Amusement requested from Stern, Safrin, First Republic LLC and Friedman copies of the Citibank loan agreements and the LLC operating agreements for Stern's and Safrin's ownership structure of the property portfolio, in order to confirm that the ownership and security structure for Amusement proposed by Stern, Safrin and First Republic LLC was in compliance with those agreements as represented by Stern, Safrin and First Republic LLC. Neither Friedman, First Republic LLC, Stern nor Safrin provided any such requested agreements to Amusement.

215.    Instead, Stern, Safrin and First Republic LLC represented to Amusement on about July 11, 2007 that its proposed ownership and security structure for Amusement, which included the assignments of LLC membership interests signed by Stern and Safrin and grant deeds in the portfolio properties provided by First Republic LLC, sufficiently protected Amusement by providing Amusement with secured ownership of Stern's and Safrin's property portfolio ownership structure, as well as with secured ownership of the eleven properties within the property portfolio itself, in the event that Stern, Safrin and First Republic LLC defaulted on their payment and ownership obligations to Amusement due September 10, 2007, including in the event that Stern alone defaulted on his promissory note

67

obligations of $13 million and/or $15 million to Practical Finance (as assignee) also due September 10, 2007.

216. Thus at the same time that Stern, Safrin and First Republic LLC concealed from Plaintiffs the Citibank loan agreements and the LLC operating agreements for Stern's and Safrin's intended ownership structure of the property portfolio, Stern, Safrin and First Republic LLC provided Plaintiffs with an ownership and security structure that violated those loan agreements and LLC operating agreements. Stern, Safrin and First Republic LLC not only never disclosed to Plaintiffs this violation of loan agreements and LLC operating agreements, but also never disclosed to Plaintiffs that these violations negatively impacted the validity of the provided assignments of LLC membership interests and grant deeds.

217. These representations by Stern, Safrin and First Republic LLC were false, and these defendants knew them to be false when made, since the requested LLC operating agreements and Citibank loan agreements, not known to or provided to Plaintiffs but known to and in the possession of these defendants, contained various transfer restrictions which made Stern's and Safrin's assignments of LLC membership interests and First Republic LLC's grant deeds potentially if not actually invalid and void.

218. In addition to the concealment of Stern, Safrin and First Republic LLC, these defendants affirmatively represented to Plaintiffs on about July 11, 2007, as detailed above, that the assignments of LLC membership interests and grant deeds provided to Plaintiffs were valid and enforceable, when in fact this representation was false and known to be false based on the same transfer restrictions of the LLC operating agreements in the property portfolio ownership structure and Citibank loan agreements known only to these defendants but not to Plaintiffs.

219.    In addition to the concealment of Stern, Safrin and First Republic LLC, these defendants affirmatively represented to Plaintiffs on about July 11, 2007, as detailed above, that the assignments of LLC membership interests signed and provided from Stern and Safrin to Amusement gave Amusement 100% ownership in First Republic LLC and its subordinate LLC members, when fact this representation was false and known to be false, because Avery Egert was a co-owner of JSAE Colonial LLC with Safrin.  Since these defendants did not provide any assignment of LLC membership interests from Avery Egert, these defendants did not provide 100% ownership in JSAE Colonial LLC and upstream LLC entities as represented, even if the provided Stern and Safrin assignments of LLC membership interests were and are valid and enforceable.

220.    Plaintiffs reasonably and justifiably relied upon these concealments and false promises, by in belief of such concealment and false promises Amusement left its $13 million in escrow to enable acquisition of the property portfolio, while without such concealment and false promises Plaintiffs would have before closing learned of the probable invalidity of the ownership and security structure provided by these defendants, so that Amusement would have pulled its $13 million back from escrow prior to July 12, 2007 and suffered no monetary loss.

221.    As a direct and proximate result of Stern's, Safrin's and First Republic LLC's fraud and concealment, Plaintiffs received the equivalent of an unenforceable receipt from Stern, Safrin and First Republic LLC when these defendants took Amusement's $13 million escrowed funds for their benefit.  Plaintiffs never received ownership and security agreements which would be legally valid to provide Plaintiffs with at least 50% ownership of the property portfolio plus return of Amusement's $13 million investment, as intended by

the parties and as promised by Stern, Safrin and First Republic LLC. Plaintiffs have been damaged in a sum equal to the value of 50% ownership of the property portfolio not provided or received, plus $13 million not repaid, the exact sums to be proven at time of trial.

222.    Stern, Safrin and First Republic LLC intentionally concealed operational and loan documents from Plaintiffs, while at the same time they affirmatively represented to Plaintiffs that the provided ownership and security agreements were valid and enforceable to provide actual ownership and actual security in the property portfolio to Plaintiffs, and thus Stern, Safrin and First Republic LLC acted with oppression, fraud and malice to intentionally harm Plaintiffs. Plaintiffs are therefore entitled to punitive damages in an amount to be established at time of trial.

## TWENTY-SECOND CAUSE OF ACTION
### (NEGLIGENT MISREPRESENTATION AGAINST STERN, SAFRIN & FIRST REPUBLIC LLC)
### (REGARDING ABILITY TO TRANSFER AND/OR PLEDGE ASSETS)

223.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

224.    In the alternative to the 16th cause of action above, if Stern, Safrin and First Republic LLC did not know the falsity of their representations and did not intentionally conceal that the ownership and security structure, including the assignments of LLC membership interests and grant deeds, that these defendants provided to plaintiffs failed to comply with various transfer restrictions of the LLC operating agreements and Citibank loan agreements, as alleged in the 16th cause of action above, these defendants should have known that their representation and concealment were material and false.

225.   These defendants' false representation and material concealment if not made knowingly was made recklessly and negligently, without due regard for the truth of the probable validity of the assignments of LLC membership interests and grant deeds provided to plaintiffs. These defendants were negligent because they were in control and possession of the Citibank loan documents and LLC operating agreements which would have indicated that the ownership and security structure provided to plaintiffs was not necessarily and probably valid and enforceable as represented by these defendants.

226.   Plaintiffs reasonably and justifiably relied upon the mistaken representation that the ownership and security structure provided to plaintiffs was necessarily and probably valid and enforceable and not at variance with the governing LLC operating agreements and Citibank loan agreements, because plaintiffs requested but did not receive the Citibank loan documents and LLC operating agreements which unknown to plaintiffs contained the transfer restrictions. Had plaintiffs known of the transfer restrictions as should have been disclosed by these defendants, Amusement would have pulled its $13 million back from escrow prior to July 12, 2007 and so would have suffered no monetary loss.

227.   As a direct and proximate result of Stern's, Safrin's and First Republic LLC's false promise and concealment negligently made, Plaintiffs received the equivalent of an unenforceable receipt from Stern, Safrin and First Republic LLC when these defendants took Amusement's $13 million escrowed funds for their benefit. Plaintiffs never received ownership and security agreements which would be legally valid to provide Plaintiffs with at least 50% ownership of the property portfolio plus return of Amusement's $13 million investment, as intended by the parties and as promised by Stern, Safrin and First Republic LLC. Plaintiffs have been damaged in a sum equal to the value of 50% ownership of the

71

property portfolio not provided or received, plus $13 million not repaid, the exact sums to be proven at time of trial.

## TWENTY-THIRD CAUSE OF ACTION
(FRAUD - FALSE PROMISE, AGAINST STERN, SAFRIN & FIRST REPUBLIC LLC)
(REGARDING DELIVERY OF PARTNERSHIP AGREEMENT)

228.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

229.    Stern, Safrin and First Republic LLC also represented to Amusement on about July 11, 2007 that even if its proposed ownership and security structure for Amusement, which included the assignments of LLC membership interests signed by Stern and Safrin and grant deeds in the portfolio properties provided by First Republic LLC, did not provide Amusement with its contractually promised 50% ownership interest in the property portfolio and secured repayment of Amusement's $13 million investment in the property portfolio plus a $2 million upward adjustment, these defendants agreed to draft and provide replacement or additional ownership and security agreements post-closing of First Republic LLC's purchase of the property portfolio, to place Amusement securely into the promised positions.

230.    After First Republic LLC's purchase of the property portfolio closed on July 12, 2007, these defendants have provided no replacement or additional ownership and security agreements of any kind concerning the property portfolio.

231.    As a result, in the event that Stern's and Safrin's assignments of LLC membership interests and First Republic LLC's grant deeds are invalid and void and/or do not provide Amusement with its contractually promised 50% ownership interest in the property portfolio and secured repayment of Amusement's $15 million investment with

upward adjustment, then these defendants' promise to provide Amusement with replacement or additional ownership and security agreements after July 12, 2007 was false and known by these defendants to be false.

232.    Plaintiffs reasonably and justifiably relied upon this material false promise to post-closing cure the provided ownership and security structure to match the agreement between the parties, by in belief of such false promise Amusement left its $13 million in escrow to enable acquisition of the property portfolio, while without such false promise Amusement would have pulled its $13 million back from escrow prior to July 12, 2007 and suffered no monetary loss.

233.    As a direct and proximate result of Stern's, Safrin's and First Republic LLC's fraud, Amusement left its $13 million contribution in escrow to its detriment when the money was taken without authorization on July 12, 2007.  In return, Plaintiffs have not received replacement or additional ownership and security agreements post-July 12, 2007 to place Amusement securely into the contractually promised positions.  Plaintiffs have been damaged in a sum equal to the value of 50% ownership of the property portfolio not provided or received, plus at least $13 million not paid, the exact sums to be proven at time of trial.

234.    Stern, Safrin and First Republic LLC falsely promised to place Plaintiffs in their contractually promised positions, even if it meant doing so after First Republic LLC's purchase of the property portfolio on July 12, 2007.  These defendants have not done so, and thus Stern, Safrin and First Republic LLC acted with oppression, fraud and malice to intentionally harm Plaintiffs.  Plaintiffs are therefore entitled to punitive damages in an amount to be established at time of trial.

## TWENTY-FOURTH CAUSE OF ACTION
### (CONVERSION, AGAINST STERN & SAFRIN)

235.   Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

236.   All of these allegations are irrelevant and too detailed.  Only need to say that Stern/Safrin obtained release of Amusement's property without authority or justification. No need for reps, agreements etc. The condition precedent to release was not a final deal – it was permission from Alevy or Sragow.  On and before July 12, 2007 when Stern and Safrin falsely represented to Steven Alevy, Frenkel and Land Escrow that a final and agreed ownership and security arrangement Plaintiffs and Stern / Safrin had been reached, Stern and Safrin made such a false representation to wrongly obtain and receive, without Plaintiffs' permission or consent, Amusement's escrowed $13 million.

237.   These defendants' representations regarding the conclusion of a final arrangement between Plaintiffs and Stern / Safrin were false, since Plaintiffs were still reviewing proposals and documents, and were in fact still negotiating with Stern / Safrin to reach a final ownership, payment and security structure that would better protect Plaintiffs' contractually agreed interests.

238.   As a direct and proximate result of Stern's and Safrin's misrepresentations, they or their chosen payee obtained Amusement's escrowed $13 million without authorization from Amusement, and thus stole Amusement's escrowed funds.

239.   Plaintiffs have made demand upon Stern and Safrin for return of the sums taken by them from Amusement being held by Frenkel and Land Escrow, but Stern and Safrin have failed and refused to return such sums.

240.    These defendants' acts to induce Frenkel and Land Escrow to release Amusement's $13 million without authorization were willful, wanton, malicious, and oppressive in that these defendants lied about the status of their arrangement with plaintiffs to reach and obtain Amusement's escrowed funds, knowing that Amusement lacked a final arrangement with these defendants and so Amusement justifiably would not release its escrowed funds to these defendants, thus justifying an award of punitive and exemplary damages against these defendants.

241.    The amount of money due plaintiffs from defendants is unknown and cannot be ascertained without an accounting of the funds utilized in all aspects of the transactions described or the wrongs alleged.  Plaintiffs have demanded this information but defendants have failed and refused to provide the same.

## TWENTY-FIFTH CAUSE OF ACTION
### (CONSPIRACY TO COMMIT CONVERSION AND FRAUD – AGAINST STERN, SAFRIN, FRENKEL & LAND ESCROW)

242.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

243.    Once Amusement wired its $13 million to Land Escrow and Frenkel on about June 29, 2007, Stern, Safrin, Frenkel and Land Escrow conspired and agreed, without Plaintiffs' knowledge or consent, to take Amusement's escrowed funds and provide them to Stern and Safrin, or to their chosen payee, to be used for their benefit, even if no final arrangement and structure between Stern / Safrin and Plaintiffs existed governing the use and repayment of the escrowed $13 million or governing Amusement's ownership interest in the property portfolio.

244.    This conspiracy to defraud and to convert Amusement's escrowed funds to the detriment of Plaintiffs was in fact performed resulting in actual harm to Plaintiffs, as described and detailed in causes of action 11, 12, 15 and 18 above.

245.    As a direct and proximate result of Stern's, Safrin's, Frenkel's and Land Escrow's conspiracy to commit conversion and fraud, they or their chosen payee obtained Amusement's escrowed $13 million without authorization from Amusement, and thus stole Amusement's escrowed funds.

246.    Plaintiffs have made demand upon Stern, Safrin, Frenkel and Land Escrow for return of the sums taken by them from Amusement being held by Frenkel and Land Escrow, but these defendants have failed and refused to return such sums.

247.    These defendants' acts to ensure that Frenkel and Land Escrow released Amusement's $13 million without authorization were willful, wanton, malicious, and oppressive in that these defendants knew the true unfinished status of Plaintiffs' arrangement with Stern and Safrin precluding them from lawfully obtaining Amusement's escrowed funds at that time. These defendants knew that Amusement lacked a final arrangement with Stern and Safrin and so justifiably Amusement would not release its escrowed funds to Stern and Safrin by July 12, 2007, thus justifying an award of punitive and exemplary damages against these defendants.

## TWENTY-SIXTH CAUSE OF ACTION
### (UNJUST ENRICHMENT AGAINST STERN, SAFRIN, FIRST REPUBLIC LLC, FRENKEL & LAND ESCROW)

248.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

249.    On July 12, 2007, Stern, Safrin, First Republic LLC, Frenkel and Land Escrow knowingly and unlawfully accessed and obtained for their benefit, without Plaintiffs'

knowledge or consent, Amusement's $13 million escrowed funds, even though all these defendants were aware that no final arrangement and structure existed between Stern, Safrin and First Republic LLC with Plaintiffs that permitted the release of any part of Amusement's escrowed $13 million, and even though all these defendants were aware that Amusement had not provided authorization for release of its escrowed funds.

250.    At all relevant times herein, and continuing to the present, Amusement has and continues to have a legal and contract interest in the $13 million that it escrowed with Frenkel and Land Escrow, which sum was improperly taken by these defendants.

251.    On or about July 12, 2007 these defendants wrongly obtained the benefit of the escrowed $13 million.

252.    As a direct and proximate result of these defendants' wrongful conduct, have been and continue to be unjustly enriched by the wrongful withdrawal and receipt by them of any portion of Amusement's $13 million formerly escrowed with Frenkel and Land Escrow, which is money that these defendants know and have been advised is not money for their benefit, but is money escrowed pending finalization of an arrangement between plaintiffs and Stern, Safrin and First Republic LLC which satisfies the contractually agreed promises reached between the parties.

253.    These defendants have failed to pay or compensate plaintiffs any amount whatsoever since the beginning of their wrongful conduct.

254.    The fair and reasonable value of plaintiffs' loss as a result of these defendants' wrongful withdrawal is the sum of $13 million.

255.    By reason of such conduct, these defendants hold the money and other benefits which they have received from their wrongful withdrawal as constructive trustees

for Plaintiffs. Plaintiffs are therefore entitled to a judicial declaration that these defendants are constructive trustees of Plaintiffs, so that Plaintiffs are entitled to a court order that these defendants convey all such monies and other benefits to Plaintiffs.

256.    The amount of money due plaintiffs from defendants is unknown and cannot be ascertained without an accounting of the funds utilized in all aspects of the transactions described or the wrongs alleged. Plaintiffs have demanded this information but defendants have failed and refused to provide the same.

## TWENTY-SEVENTH CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY AGAINST STERN, SAFRIN AND FIRST REPUBLIC LLC)

257.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

258.    At all times herein mentions, Defendants Stern and Safrin were incorporators, officers, directors, managers, or the like of First Republic LLC.

259.    In acting as described above, Defendants Stern and Safrin did not exercise the care required of them in that they took Amusement's money without providing Amusement with any of the benefits promised to them as investors, i.e. ownership, profit, and reimbursement rights.

260.    As a direct and proximate result of these acts of Defendants Stern and Safrin, Plaintiffs have suffered damages in an amount to be determined by the trier of fact.

261.    Further, defendants acted with oppression, fraud and malice to intentionally harm Plaintiffs. Plaintiffs are therefore entitled to punitive damages in an amount to be established at time of trial.

262.    The amount of money due plaintiffs from defendants is unknown and cannot be ascertained without an accounting of the funds utilized in all aspects of the transactions

described or the wrongs alleged. Plaintiffs have demanded this information but defendants have failed and refused to provide the same.

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

A.     AS TO THE FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF AS TO OWNERSHIP OF DEEDS AND LLC INTERESTS, AGAINST STERN, SAFRIN:

    1.     A declaration that Amusement owns First Republic LLC and owns the eleven portfolio properties formerly owned by First Republic LLC, and that Practical Finance as assignee is owed sums of money pursuant to promissory notes signed by Stern.

B.     AS TO THE SECOND CAUSE OF ACTION FOR QUIET TITLE AS TO REAL PROPERTY, AGAINST FIRST REPUBLIC GROUP REALTY LLC:

    1.     For judgment quieting Plaintiff's title to the property against Defendants;

    2.     For all applicable statutory penalties; and

    3.     For damages in a sum to be proven at time of trial.

C.     AS TO THE THIRD CAUSE OF ACTION FOR QUIET TITLE AS TO PERSONAL PRIOPERTY, AGAINST FIRST REPUBLIC GROUP REALTY LLC:

    1.     For judgment quieting Plaintiff's title to the property against Defendants;

    2.     For all applicable statutory penalties; and

    3.     For damages in a sum to be proven at time of trial.

D.     AS TO THE FOURTH CAUSE OF ACTION FOR JUDICIAL FORECLOSURE OF REAL PROPERTY:

    1.     Against Defendant, damages in the sum of the principal, together with interest to date of Entry of Judgment, together with such other additional sums as may be due;

    2.     A decree of judicial foreclosure against the Defendant FRG Realty and a deficiency judgment against Defendant FRG Realty;

3.  Adjudging that Defendant FRG Realty's rights, claims, ownership, liens, titles and demands are subsequent to and subject to the lien of Plaintiffs' security rights;

4.  Adjudging that Plaintiffs' security rights be foreclosed, that the usual judgment be made for the sale of the SUBJECT REAL PROPERTY according to law, that the proceeds of the sale be applied in payment of all amounts due to Plaintiff, and that the Defendant FRG Realty and all parties and/or persons claiming through them or any of them, whether as lien claimants, judgment creditors, claimants under a junior deed of trust, purchasers, each, or otherwise, be barred and foreclosed from all rights, claims, interests or equity of redemption in the SUBJECT REAL PROPERTY and personal property and other property described in the Security Agreement and every part thereof when time for redemption has elapsed; and

5.  Permitting Plaintiffs or any parties to this action to become a purchaser at the foreclosure sale.

E.  AS TO THE FIFTH CAUSE OF ACTION FOR JUDICIAL FORECLOSURE OF PERSONAL PROPERTY:

1.  A decree of judicial foreclosure against the Defendants Stern and Safrin and a deficiency judgment against Defendants Stern and Safrin;

2.  Adjudging that Defendants Stern and Safrin's rights, claims, ownership, liens, titles and demands are subsequent to and subject to the lien of Plaintiffs' security rights;

3.  Adjudging that Plaintiffs' security rights be foreclosed, that the usual judgment be made for the sale of the SUBJECT LLC MEMBERSHIP INTERESTS according to law, that the proceeds of the sale be applied in payment of all amounts due to Plaintiffs, and that the Defendants Stern and Safrin and all parties and/or persons claiming through them or any of them, whether as lien claimants, judgment creditors, claimants under a junior deed of trust, purchasers, each, or otherwise, be barred and foreclosed from all rights, claims, interests or equity of redemption in the SUBJECT LLC MEMBERSHIP INTERESTS and every part thereof when time for redemption has elapsed; and

4.  Permitting Plaintiff or any parties to this action to become a purchaser at the foreclosure sale.

F.  AS TO THE SIXTH CAUSE OF ACTION FOR BREACH OF PROMISE TO REPAY INVESTMENT AGAINST STERN, SAFRIN AND FIRST REPUBLIC LLC:

       1.     For damages allowed by law, the exact sum to be proven at time of trial.

G.    AS TO THE SEVENTH CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST MARK STERN -- $13,000,000 PROMISSORY NOTE:

       1.     For damages allowed by law, the exact sum to be proven at time of trial.

H.    AS TO THE EIGHTH CAUSE OF ACTION FOR SPECIFIC PERFORMANCE OF PROMISE TO PROVIDE 50% PARTNERSHIP:

       1.     For a decree ordering Defendants to transfer 100% of their interest in the entities and the subject real property to a partnership 50% owned by Plaintiffs.

I.    AS TO THE NINTH CAUSE OF ACTION FOR BREACH OF CONTRACT TO PROVIDE 50% PARTNERSHIP:

       1.     For damages allowed by law, the exact sum to be proven at time of trial; and

       2.     For an accounting between the parties and for payment to plaintiffs of the amounts found due and owing from defendants as a result of such accounting.

J.    AS TO THE TENTH CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST MARK STERN - $15,000,000 PROMISSORY NOTE:

       1.     For damages allowed by law, the exact sum to be proven at time of trial.

K.    AS TO THE ELEVENTH CAUSE OF ACTION FORSPECIFIC PERFORMANCE OF PROMISE TO PROVIDE 100% PARTNERSHIP:

       1.     For a decree ordering Defendants to transfer 100% of their interest in the entities and the subject real property to a partnership wholly owned by Plaintiffs.

L.    AS TO THE TWELFTH CAUSE OF ACTION FOR BREACH OF CONTRACT TO PROVIDE 100% PARTNERSHIP:

       1.     For damages allowed by law, the exact sum to be proven at time of trial; and

2.    For an accounting between the parties and for payment to plaintiffs of the amounts found due and owing from defendants as a result of such accounting.

M.    AS TO THE THIRTEENTH CAUSE OF ACTION FOR BREACH OF CONTRACT (ESCROW) CONTRACT AGAINST EPHRAIM FRENKEL AND LAND TITLE ASSOCIATES:

1.    For damages allowed by law, the exact sum to be proven at time of trial.

N.    AS TO THE FOURTEENTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY AGAINST EPHRAIM FRANKEL AND LAND TITLE ASSOCIATES:

1.    For damages allowed by law, the exact sum to be proven at time of trial; and

2.    For an accounting between the parties and for payment to plaintiffs of the amounts found due and owing from defendants as a result of such accounting.

O.    AS TO THE FIFTEENTH CAUSE OF ACTION FOR FRAUDULENT MISREPRESENTATION REGARDING NEED FOR $13M:

1.    For damages allowed by law, the exact sum to be proven at time of trial;

2.    For exemplary and punitive damages to be proven at time of trial;

3.    For an accounting between the parties and for payment to plaintiffs of the amounts found due and owing from defendants as a result of such accounting; and

4.    As a result of the foregoing, Plaintiffs are equitably entitled to an order divesting defendants from management and ownership of the property portfolio wrongly obtained and retained by them, and vesting same with Plaintiffs, to the greatest extent permitted in equity.

P.    AS TO THE SIXTEENTH CAUSE OF ACTION FOR BREACH OF CONTRACT REGARDING USE OF $13M:

1.    For damages allowed by law, the exact sum to be proven at time of trial; and

2.    For an accounting between the parties and for payment to plaintiffs of the amounts found due and owing from defendants as a result of such accounting.

Q.    AS TO THE SEVENTEENTH CAUSE OF ACTION FOR FRAUDULENT MISREPRESENTATION REGARDING ABILITY TO REFINANCE:

1.    For damages allowed by law, the exact sum to be proven at time of trial;

2.    For exemplary and punitive damages to be proven at time of trial; and

3.    As a result of the foregoing, Plaintiffs are equitably entitled to an order divesting defendants from management and ownership of the property portfolio wrongly obtained and retained by them, and vesting same with Plaintiffs, to the greatest extent permitted in equity.

R.    AS TO THE EIGHTEENTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION REGARDING ABILITY TO REFINANCE:

1.    For damages allowed by law, the exact sum to be proven at time of trial.

S.    AS TO THE NINETEENTH CAUSE OF ACTION FOR FRAUDULENT MISREPRESENTATION REGARDING AMUSEMENT'S CONSENT TO RELEASE OF $13M FROM ESCROW:

1.    For damages allowed by law, the exact sum to be proven at time of trial; and

2.    For exemplary and punitive damages to be proven at time of trial.

T.    AS TO THE TWENTIETH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION REGARDING AMUSEMENT'S CONSENT TO RELEASE OF $13M FROM ESCROW:

1.    For damages allowed by law, the exact sum to be proven at time of trial.

U.    AS TO THE TWENTY FIRST CAUSE OF ACTION FOR FRAUDULENT MISREPRESENTATION REGARDING ABILITY TO TRANSFER OR PLEDGE ASSETS:

1.    For damages allowed by law, the exact sum to be proven at time of trial;

2.    For exemplary and punitive damages to be proven at time of trial; and

3.    As a result of the foregoing, Plaintiffs are equitably entitled to an order divesting defendants from management and ownership of the property portfolio wrongly obtained and retained by them, and vesting same with Plaintiffs, to the greatest extent permitted in equity.

V.      AS TO THE TWENTY SECOND FIRST CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION REGARDING ABILITY TO TRANSFER OR PLEDGE ASSETS:

     1.      For damages allowed by law, the exact sum to be proven at time of trial.

W.      AS TO THE TWENTY THIRD CAUSE OF ACTION FOR FRAUDULENT PROMISE TO DELIVER PARTNERSHIP AGREEMENT:

     1.      For damages allowed by law, the exact sum to be proven at time of trial;

     2.      For exemplary and punitive damages to be proven at time of trial; and

     3.      As a result of the foregoing, Plaintiffs are equitably entitled to an order divesting defendants from management and ownership of the property portfolio wrongly obtained and retained by them, and vesting same with Plaintiffs, to the greatest extent permitted in equity.

X.      AS TO THE TWENTY FOURTH CAUSE OF ACTION FOR CONVERSION REGARDING AMUSEMENT'S $13M:

     1.      For damages allowed by law, the exact sum to be proven at time of trial; and

     2.      For an accounting between the parties and for payment to plaintiffs of the amounts found due and owing from defendants as a result of such accounting.

Y.      AS TO THE TWENTY FIFTH CAUSE OF ACTION FOR CONSPIRACY TO COMMIT FRAUD AND CONVERSION:

     1.      For damages allowed by law, the exact sum to be proven at time of trial;

     2.      For exemplary and punitive damages to be proven at time of trial; and

     3.      As a result of the foregoing, Plaintiffs are equitably entitled to an order divesting defendants from management and ownership of the property portfolio wrongly obtained and retained by them, and vesting same with Plaintiffs, to the greatest extent permitted in equity.

Z.      AS TO THE TWENTY SIXTH CAUSE OF ACTION FOR UNJUST ENRICHMENT:

     1.      For damages allowed by law, the exact sum to be proven at time of trial;

2.    For the imposition of a constructive trust on for the benefit of Plaintiffs for all sums of money deposited in escrow;

3.    For restitution of all moneys deposited in escrow by Plaintiffs;

4.    For an equitable lien on all subject matters purchased with moneys deposited in escrow by Plaintiffs;

5.    For an order requiring transferees with knowledge of the moneys deposited in escrow by Plaintiffs to make restitution; and

6.    For an accounting between the parties and for payment to plaintiffs of the amounts found due and owing from defendants as a result of such accounting.

AA.    AS TO THE TWENTY SEVENTH CAUSE OF ACTION FOR BREACH OF FUDICIARY DUTY:

1.    For damages allowed by law, the exact sum to be proven at time of trial;

2.    For exemplary and punitive damages to be proven at time of trial;

3.    For an accounting between the parties and for payment to plaintiffs of the amounts found due and owing from defendants as a result of such accounting; and

4.    As a result of the foregoing, Plaintiffs are equitably entitled to an order divesting defendants from management and ownership of the property portfolio wrongly obtained and retained by them, and vesting same with Plaintiffs, to the greatest extent permitted in equity.

BB.    AS TO ALL CAUSES OF ACTION:

1.    For Plaintiffs' reasonable attorneys' fees and costs of suit incurred herein; and

2.    For such other and further relief as the Court deems just, necessary or appropriate.

DATED:  December 27, 2007

_____
PHILIP R. WHITE
MARC D. YOUNGELSON
SILLS CUMMIS & GROSS P.C.
One Rockefeller Plaza
New York, New York 10020
Tel:  (212) 643-7000
Fax:  (212) 643-6500

ALLEN P. SRAGOW
SRAGOW & SRAGOW
6665 Long Beach Boulevard, Suite B-22
Long Beach, California 90805
Tel: (310) 639-0782
Fax: (310) 639-7210

ATTORNEYS FOR PLAINTIFFS