UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

AMUSEMENT INDUSTRY, INC., dba WESTLAND    :    No. 07 Civ. 11586 (LAK)(GWG)
INDUSTRIES; PRACTICAL FINANCE CO., INC.,     :
                                         :
                        Plaintiffs,            :    (ECF)
                                         :
     - against -                         :
                                         :

MOSES STERN, aka MARK STERN; JOSHUA SAFRIN, :
FIRST REPUBLIC REALTY LLC, EPHRAIM               :
FRENKEL, LAND TITLE ASSOCIATES ESCROW,     :
                                         :
                      Defendants.         :
------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT JOSHUA SAFRIN'S MOTION TO DISMISS THE COMPLAINT

Of Counsel:

     Jonathan D. Lupkin
     Jean Marie Hackett*

**FLEMMING ZULACK WILLIAMSON ZAUDERER LLP**
**Attorneys for Defendant Joshua Safrin**
**One Liberty Plaza, 35th Floor**
**New York, New York 10006**
**(212) 412-9500**

* S.D.N.Y. Admission Application Pending

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ............................................................. v

PRELIMINARY STATEMENT ...................................................... 1

STATEMENT OF FACTS ............................................................ 3

    A. The Parties and Notable Non-Parties ..................................... 4

    B. Plaintiffs' Investment ....................................................... 5

        1. The June 29, 2007 "Letter of Intent" ....................................... 6

        2. Plaintiffs' Subsequent Negotiations With Friedman ................. 6

        3. The July 11, 2007 Counter Offer ............................................. 8

        4. The Release of the $13 Million in Escrow ............................... 9

    C. Plaintiffs' Substantive Allegations And Claims Against
       Defendant Safrin ............................................................... 9

ARGUMENT ............................................................................ 11

POINT I:

THE ALLEGATIONS AGAINST SAFRIN ARE SO
IMPLAUSIBLE AND SPECULATIVE THAT THE COMPLAINT
SHOULD BE DISMISSED AS A MATTER OF LAW ..................................... 11

POINT II:

THE COMPLAINT DOES NOT STATE A VIABLE CLAIM
AGAINST SAFRIN BECAUSE FRIEDMAN DID NOT HAVE AUTHORITY
TO BIND SAFRIN TO ANY ALLEGED CONTRACTS OR
MISREPRESENTATIONS .............................................................. 13

    A. Plaintiffs Fail To Allege – Even Conclusorily – That Friedman
       Had Authority To Act On Safrin's Behalf ......................................... 13

        1. Actual Authority.................................................. 13

## TABLE OF CONTENTS

Page(s)

2. Apparent Authority ................................................................. 14

B. By Plaintiffs' Own Allegations, Friedman Is The Only Actor Behind All Of The Conduct Complained Of In The Claims Against Safrin, And The Complaint Is Bereft of Any Allegation That Safrin Manifested To Plaintiffs That Friedman Had Authority To Act On His Behalf ................................................................. 15

POINT III:

THE BREACH OF CONTRACT CLAIMS AGAINST SAFRIN MUST BE DISMISSED BECAUSE THERE IS NO PRIVITY OF CONTRACT ................................................................. 16

A. The Complaint Fails To Allege That Safrin Was Even A Party To Any Of The Purportedly Breached Contracts .................. 16

B. Safrin May Not Be Held Individually Liable For Contracts Allegedly Entered Into By A Limited Liability Company ................ 17

POINT IV:

PLAINTIFFS' CLAIMS FOR FRAUDULENT CONCEALMENT, NEGLIGENT MISREPRESENTATION AND BREACH OF FIDUCIARY DUTY MUST BE DISMISSED ........................... 19

A. Plaintiffs' Fraudulent Concealment And Negligent Misrepresentation Claims Must Be Dismissed Because They Fail To Allege The Existence Of A Confidential Or Fiduciary Relationship With Safrin ......................... 19

B. Plaintiffs' Breach of Fiduciary Duty Claim Fails As A Matter Of Law ................................................................. 22

1. Plaintiffs Fail To Allege That A Fiduciary Relationship Existed ................................................................. 22

2. Plaintiffs Do Not Adequately Allege The Breach Of Any Fiduciary Duty ................................................................. 23

3. Plaintiffs' Breach Of Fiduciary Duty Claim Fails Because It Arises Out Of The Same Facts As Plaintiffs' Breach Of Contract Claims ................................................................. 23

# TABLE OF CONTENTS

Page(s)

POINT V:

PLAINTIFFS FAIL TO PLEAD THE ELEMENTS,
OR MEET THE PLEADING REQUIREMENTS FOR FRAUD-BASED
CLAIMS ................................................................................... 24

    A.  Plaintiffs Fail To Plead Their Fraud-Based Claims
      (Counts 15, 17-25, 27) With The Requisite Level of Particularity
      Because They Do Not Identify Which Defendant Made Any Of The
      Purported Misrepresentations ........................................................... 24

    B.  Plaintiffs' Failure to Allege Any Misrepresentations Purportedly
      Made To Plaintiffs Upon Which They Relied Mandates Dismissal
      of Counts 19 and 20 ........................................................... 27

    C.  Plaintiffs' Allegations Of A "False Promise" Are Not Actionable
      As Fraud ........................................................... 28

    D.  The Fraudulent Inducement Claim (Count 15) Fails To Allege A
      Representation That Was False Or Misleading When Made, And
      Any Assertion Otherwise Is Negated By The Facts As Pled ............. 29

    E.  Plaintiffs  Do Not – And Cannot – Allege Justifiable Reliance ......... 30

        1.  Plaintiffs Cannot Justifiably Rely On Statements Of
          Opposing Counsel ............................................... 31

        2.  Plaintiffs' Decision To Proceed With The Transaction
          After They Requested, But Were Denied, The Citibank
          Loan Documents And Underlying LLC Documents,
          Precludes A Finding of Justifiable Reliance As A
          Matter Of Law ................................................... 32

POINT VI:

PLAINTIFFS' CONVERSION CLAIM IS
IMPLAUSIBLE UNDER THE ALLEGED FACTS ......................... 33

POINT VII:

INCORPORATION OF CERTAIN LEGAL ARGUMENTS
OF CODEFENDANTS ................................................... 34

CONCLUSION ................................................... 34

**ADDENDUM TO TABLE OF CONTENTS**

| Count # for Counts Implicating Safrin | Description Of Count In Complaint | Basis For Dismissal |
|---|---|---|
| 1 | Declaratory Relief As To Ownership Of Grant Deeds and LLC Interests, Against Stern, Safrin & First Republic LLC | Point I, II, III |
| 3 | Quiet Title As To LLC Interests, Against Stern & Safrin | Point I, II, III |
| 5 | Judicial Foreclosure Of Personal Property LLC Membership Interests, Against Stern & Safrin | Point I, II, III |
| 6 | Breach Of Contract - Failure To Repay Investment, Against Stern, Safrin & First Republic | Point I, II, III |
| 8 | Breach Of Contract – Specific Performance for 50% Ownership Of First Republic LLC, Against Stern, Safrin & First Republic LLC | Point I, II, III |
| 9 | Breach Of Contract- Money Damages for 50% ownership Of First Republic LLC, Against Stern, Safrin & First Republic | Point I, II, III |
| 11 | Breach Of Contract- Specific Performance For 100% Ownership Of First Republic LLC, Against Stern, Safrin & First Republic LLC | Point I, II, III |
| 12 | Breach Of Contract – Money Damages For 100% Ownership Of First Republic LLC, Against Stern, Safrin & First Republic LLC | Point I, II, III |
| 15 | Fraud In The Inducement – Against Stern & Safrin (Regarding Need for $13,000,000) | Point I, II, V(A), (D), (E) |
| 16 | Breach Of Contract – Against Stern & Safrin (Regarding Use of $13,000,000) | Point I, II, III |
| 17 | Fraud In The Inducement – Against Stern & Safrin (Regarding Ability To Refinance) | Point I, II, IV(A), V(A), (E) |
| 18 | Negligent Misrepresentation – Against Stern & Safrin (Regarding Ability To Refinance) | Point I, II, IV(A), V(A), (E) |
| 19 | Fraud – Inducement Of Escrow – Against Stern & Safrin (Regarding Consent To Release Funds From Escrow) | Point I, V(A), (B) |
| 20 | Negligent Misrepresentation -- Inducement Of Escrow – Against Stern & Safrin (Regarding Consent To Release Funds From Escrow | Point I, IV(A), V(A), (B) |
| 21 | Fraud – Concealment And False Promise, Against Stern, Safrin & First Republic LLC (Regarding Ability To Transfer And/Or Pledge Assets) | Point I, II, IV(A), V(A), (E) |
| 22 | Negligent Misrepresentation Against Stern, Safrin & First Republic LLC) (Regarding Ability To Transfer And/Or Pledge Assets) | Point I, II, IV(A), V(A), (E) |
| 23 | Fraud – False Promise, Against Stern, Safrin & First Republic LLC (Regarding Delivery Of Partnership Agreement) | Point I, II, V(A), V(C), (E) |
| 24 | Conversion, Against Stern & Safrin | Point I, V(A), VI |
| 25 | Conspiracy to Commit Conversion & Fraud – Against Stern, Safrin, Frenkel & Land Escrow | Point I, II, V(A), |
| 26 | Unjust Enrichment Against Stern, Safrin, First Republic LLC, Frenkel & Land Escrow | Point I, II |
| 27 | Breach Of Fiduciary Duty Against Stern, Safrin And First Republic LLC | Point I, II, IV(B), V(A) |

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

Abbatiello v. Monsanto Co., 522 F. Supp. 2d 524 (S.D.N.Y. 2007) ......................... 27-28

Acito v. IMCERA Group, Inc., 47 F.3d 47, 51-52 (2d Cir. 1995) ............................ 25

Aglira v. Julien & Schlesinger, P.C., 214 A.D.2d 178,
      631 N.Y.S.2d 816 (1st Dep't 1995) ..................................................... 31

Apace Commc'ns, Ltd. v. Burke, 522 F. Supp. 2d 509 (W.D.N.Y. 2007) ................ 25, 26, 27

Arnold Chevrolet LLC v. Tribune Co., No. 04-CV-3097 (DRH)(WDW),
      2007 WL 2743490 (E.D.N.Y. Sept. 17, 2007).................................................. 28

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) ................... 11

Barth v. Bd. Of Managers of CBJE Condo., 17 Misc.3d 1121(A),
      2007 WL 3167254 (Sup. Ct. N.Y. Co. Oct. 1, 2007) ....................................... 27, 28

Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S.Ct. 1955 (2007) ....................... 11

Black Radio Network, Inc. v. NYNEX Corp., 2000 WL 64874
      (S.D.N.Y. Jan. 25, 2000) .................................................................. 20

Brinsights, LLC v. Charming Shoppes of Del., Inc., No. 06 Civ. 1745(CM),
      2008 WL 216969 (S.D.N.Y. Jan. 16, 2008)................................................... 20, 29

City of N.Y. v. Cyco.net, Inc., 383 F. Supp. 2d 526 (S.D.N.Y. 2005)....................... 28

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 521 N.Y.S.2d 653,
      70 N.Y.2d 382 (1987) ...................................................................... 23

Concorde Funds, Inc. v. Value Line, Inc., No. 04 Civ. 9932(NRB),
      2006 WL 522466 (S.D.N.Y Mar. 2, 2006) .................................................. 25, 27

Daly v. Castro Llanes, 30 F. Supp. 2d 407 (S.D.N.Y. 1998).................................. 25

Druyan v. Jagger, 508 F. Supp. 2d 228 (S.D.N.Y. 2007)...................................... 26, 27

Ellison v. Am. Image Motor Co., 36 F. Supp. 2d 628 (S.D.N.Y. 1999) ................... 26, 27

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,
      343 F.3d 189 (2d Cir. 2003)............................................................... 31-32

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                               <u>Page(s)</u>

<u>Ernst Iron Works, Inc. v. Duralith Corp.</u>, 270 N.Y. 165, 200 N.E. 683 (1936) .......... 13

<u>Escoett & Co. v. Alexander & Alexander, Inc.</u>, 31 A.D.2d 791,
    296 N.Y.S.2d 929 (1st Dep't 1969).................................................... 27

<u>Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.</u>,
    425 F. Supp. 2d 458 (S.D.N.Y. 2006) ................................................ 28

<u>Filler v. Hanvit Bank</u>, Nos. 01 Civ. 9510, 02 Civ. 8251(MGC), 2003
    WL 22110773 (S.D.N.Y. Sept. 12, 2003)........................................... 25, 26-27

<u>Ford v. Unity Hosp.</u>, 32 N.Y.2d 464, 299 N.E.2d 659,
    346 N.Y.S.2d 238 (1973) ................................................................. 14

<u>Gitnik v. Home Depot U.S.A., Inc.</u>, No. 07 CIV 1244(MDF),
    2007 WL 2728358 (S.D.N.Y. Sept. 18, 2007) .................................. 12

<u>Goddard v. Citibank, NA</u>, No. 04CV5317 (NGG)(LB), 2006 WL 842925
    (E.D.N.Y. Mar. 27, 2006) ................................................................. 25

<u>Holloway v. King</u>, 361 F. Supp. 2d 351 (S.D.N.Y. 2005), <u>aff'd</u>,
    161 Fed. Appx. 122 (2d Cir. Dec. 30, 2005) ..................................... 21, 22

<u>Hydro Investors, Inc. v. Trafalgar Power Inc.</u>, 227 F.3d 8 (2d Cir. 2000)................. 29

<u>I.L.G.W.U. Nat'l Ret. Fund v. Cuddlecoat, Inc.</u>, No. 01 Civ. 4019(BSJ),
    2004 WL 444071 (S.D.N.Y. Mar. 11, 2004) .................................... 31, 32

<u>In re Global Crossing, Ltd. Sec. Litig.</u>, 322 F. Supp. 2d 319 (S.D.N.Y. 2004)........... 3

<u>In re Marsh & McLennan Cos., Inc. Sec. Litig.</u>, 04 Cv. 8144(SWK),
    2007 WL 3407064 (S.D.N.Y. Nov. 14, 2007) .................................. 12

<u>In re Parmalat Sec. Litig.</u>, 501 F. Supp. 2d 560 (S.D.N.Y. 2007) ........................... 11, 12, 25, 33

<u>Iqbal v. Hasty</u>, 490 F.3d 143 (2d Cir. 2007) .......................................................... 11

<u>JewelAmerica Inc. v. Frontstep Solutions Group, Inc.</u>, No. 02 Civ. 1328(RO),
    2002 WL 31465807 (S.D.N.Y. 2002).............................................. 21-22

<u>Korea First Bank of N.Y. v. Noah Enters., Ltd.</u>, 12 A.D.3d 321, 787 N.Y.S.2d 2
    (1st Dep't 2004)............................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                 <u>Page(s)</u>

<u>Kregos v. Associated Press,</u> 3 F.3d 656 (2d Cir. 1993)...............................................31

<u>Lawrence v. Sofamor, S.N.C.,</u> No. 95-CV-1507,
    1999 WL 592689 (N.D.N.Y. Aug. 2, 1999).......................................................25

<u>Lerner v. Fleet Bank, N.A.,</u> 459 F.3d 273 (2d Cir 2006) ..........................................26

<u>Maalouf v. Salomon Smith Barney, Inc.,</u> No. 02 Civ. 4770(SAS),
    2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003).......................................22, 23

<u>Matsumura v. Benihana Nat'l Corp.,</u> No. 06 Civ. 7609(NRB),
    2008 WL 282021 (S.D.N.Y. Jan. 25, 2008) ........................................12, 25, 29-32

<u>Maung Ng We & Massive Atlantic Ltd. v. Merrill Lynch & Co.,</u>
    No. 99 CIV 9687 (CSH), 2000 WL 1159835 (S.D.N.Y. Aug. 15, 2000) ...........13, 15

<u>Metro. W. Asset Mgmt, LLC v. Magnus Funding, Ltd.,</u> No. 03 Civ. 5539(NRB),
    2004 WL 1444868 (S.D.N.Y. June 25, 2004)....................................................23

<u>Nash v. Y&T Distrib.,</u> 207 A.D. 2d 779, 616 N.Y.S.2d 402 (2d Dep't 1994) ...........14

<u>N. Am. Knitting Mills, Inc., v. Int'l Women's Apparel, Inc.,</u> No. 99 Civ. 4643 (LAP),
    2000 WL 1290608 (S.D.N.Y. Sept. 12, 2000)...................................................20, 21, 22

<u>Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP,</u> 03 Civ. 0613 (GBD),
    2004 WL 112948 (S.D.N.Y. Jan 22. 2004) .......................................................13, 15

<u>N.X. v. Cabrini Med Ctr.,</u> 97 N.Y.2d 247, 765 N.E.2d 844,
    739 N.Y.S.2d 348 (2002) ..................................................................................14

<u>Pacific Carleton Dev. Corp. v. 752 Pacific, LLC,</u> 17 Misc.3d 1102(A),
    2007 WL 2781874 (Sup. Ct. Kings Co. Sept. 19, 2007) ...................................16-18

<u>Quebecor World (USA), Inc. v. Harsha Assocs., LLC,</u>
    455 F. Supp. 2d 236 (W.D.N.Y. 2006)..............................................................18

<u>Rodas v. Manitaras,</u> 159 A.D.2d 341, 552 N.Y.S.2d 618 (1st Dep't 1990)...............32, 33

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                   <u>Page(s)</u>

<u>Rombach v. Chang</u>, 355 F.3d 164 (2d Cir.2004) ....................................................... 25

<u>Rozsa v. May Davis Group, Inc.</u> 187 F. Supp. 2d 123 (S.D.N.Y. 2002),
   aff'd, <u>Rozsa v. SG Cowen Sec. Corp.</u>, 165 Fed. Appx. 892 (2d Cir. 2006) .......... 15, 16

<u>Sarkes Tarzian, Inc. v. U.S. Trust Co. of Fla. Sav. Bank</u>,
   397 F.3d 577 (7th Cir. 2005) ........................................................................ 14-15

<u>Sheth v. N.Y. Life Ins. Co.</u>, 273 A.D.2d 72, 709 N.Y.S.2d 74
   (1st Dep't 2000)................................................................................................ 29

<u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236 (2d Cir. 2002) ...................... 12

<u>SNS Bank, N.V. v. Citibank, N.A.</u>, 7 A.D.3d 352, 777 N.Y.S.2d 62
   (1st Dep't 2004)................................................................................ 19-20, 22-23

<u>Spencer v. Green</u>, 42 A.D.3d 521, 842 N.Y.S.2d 445 (2d Dep't 2007) .................... 21

<u>Spira v. Curtin</u>, No. 97 CIV. 2637(TPG), 2001 WL 611386
   (S.D.N.Y. June 5, 2001)................................................................................... 25

<u>Strategic Alliance Partners, LLC v. Dress Barn, Inc.</u>, 386 F. Supp. 2d 312
   (S.D.N.Y. 2005) .............................................................................................. 20

<u>Success Universal Ltd. v. CWJ Int'l Trading, Inc.</u>, No. 95 Civ 10210 (DLC),
   1996 WL 535541 (S.D.N.Y Sept. 20, 1996).................................................... 19, 20

<u>Thomas v. Hobbs</u>, No. C.A. 04C-02-010 RFS, 2005 WL 1653947
   (Del. Super. Ct. Apr. 27, 2005) ........................................................................ 18

<u>United Safety of Am., Inc. v. Consol. Edison Co. of N.Y., Inc.</u>,
   213 A.D.2d 283, 623 N.Y.S.2d 591 (1st Dep't 1995) ........................................ 21

<u>U.S. Fire Ins. Co. v. Am. Home Assurance Co.</u>, 19 A.D.3d 191, 796 N.Y.S.2d 603
   (1st Dep't 2005) .............................................................................................. 17

<u>U.S. W. Fin. Servs., Inc. v. Tollman</u>, 786 F. Supp. 333 (S.D.N.Y. 1992)................... 29

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

Waksman v. Cohen, No. 00 Civ. 9005(WK),
    2002 WL 31466417 (S.D.N.Y. Nov. 4, 2002) .................................................. 32

Zigabarra v. Falk, 143 A.D.2d 901, 533 N.Y.S.2d 536
      (2d Dep't 1988) ........................................................................................... 15

Statutes and Rules

N.Y. L.L.C. L. § 609(a) ...........................................................................................18

6 Del. C. § 18-303 ...................................................................................................18

Fed. R. Civ. P. 9(b)........................................................................................1, 11, 25-27

Fed. R. Civ. P. 11 ....................................................................................................12

Fed. R. Civ. P. 12(b)(6) ....................................................................................1, 11, 15

Secondary Sources

Restatement (Third) of Law Governing Law. § 27 (2000)........................................ 14

## PRELIMINARY STATEMENT

Defendant Joshua Safrin ("Safrin" or "Defendant") submits this Memorandum of Law in support of his motion pursuant to Fed R. Civ. P. 12(b)(6) and 9(b), to dismiss plaintiffs' Second Complaint ("SC" or "Complaint") in its entirety.[1]

Simply put, Safrin does not belong in this case. He had nothing to do with the transactions at issue. Though plaintiffs have chosen to feature him in this suit as an individually-named defendant, they noticeably neglect to ascribe to Safrin <u>any</u> active role in the tortuous tale they have spun. Instead, plaintiffs' Complaint is a 262-paragraph labyrinth, replete with overlapping and repetitive allegations that are, in plaintiffs' own words, "irrelevant and too detailed." (SC ¶236.) There is no mention of a single meeting, conversation, letter or e-mail between Safrin and plaintiffs. Safrin's name does not appear on the so-called "Letter of Intent" that began this deal, nor is he found in the purported, unsigned partnership agreement attached to the Complaint, to which plaintiffs ascribe some sort of significance. The starring roles, rather, belong to an attorney named Stephen Friedman, a non-party by design, who had represented Amusement in the past, and, to a lesser extent, his sidekick (also a non-party), a broker named Steven Alevy, the son of Amusement's sole shareholder. Plaintiffs allege – without any factual support—that Friedman represented Safrin in all of his communications and dealings with plaintiffs. Thus, as their allegations make clear, it is Friedman who made the purported contracts that plaintiffs claim have been breached, and it is Friedman who made the representations that they now claim caused them damage. In an effort, presumably, to avoid pinning their woes on Alevy and Friedman -- the individuals most directly involved – the plaintiffs have crafted flypaper allegations hoping to affix liability elsewhere.

The Complaint purports to allege claims against Safrin for breach of fiduciary duty, fraud in the inducement, fraudulent concealment, fraud, negligent misrepresentation, breach of

---

[1] This is plaintiffs' second attempt to state a claim based on these facts. <u>See infra</u>, at p. 2. A copy of the Second Complaint filed December 27, 2007 ("SC"), is attached to the accompanying Declaration of Jonathan D. Lupkin in Support of Defendant Joshua Safrin's Motion to Dismiss (the "Lupkin Decl."), as Exhibit A.

contract, conversion, declaratory relief, quiet title, judicial foreclosure of real property, conspiracy to commit conversion and fraud and unjust enrichment.  As discussed below, plaintiffs utterly fail to plead a single viable claim against Safrin. Their attempt to drag Safrin into this ordinary contractual dispute (to which Safrin was not a party) should not be countenanced.

Notably, this is not the first time plaintiffs have interposed these claims against Safrin; it is plaintiffs' second go-around.  On November 30, 2007, plaintiffs filed a 249-paragraph complaint featuring 26 causes of action against the same defendants as those named here.  See Amusement Industry Inc. v. Stern, et. al., No. 1:07-10717 (Kaplan, J).  This Court dismissed the action sua sponte for lack of subject matter jurisdiction.  (A copy of this Court's December 18, 2008 Order is attached to the Lupkin Decl. as Exhibit B.)[2]  On December 27, plaintiffs filed the current Complaint and enlarged their allegations to 262-paragraphs and 27 causes of action.

Plaintiffs' claims against Safrin are purportedly based on alleged statements made on his behalf by attorney Stephen Friedman (who purportedly represented Safrin, Stern and First Republic LLC in the alleged negotiations).  In attempting to manufacture claims where none exist, plaintiffs also allege that Friedman had represented Amusement, as well as its sole shareholder, Allen Alevy, and his son, Steven Alevy, in other matters entirely unrelated to these claims, and thereby, led Amusement and the Alevys to believe that he had authority to speak on behalf of Safrin.  Plaintiffs do not allege that Safrin ever did anything to foster this belief.

Accordingly, plaintiffs' claims must fail for one or more of the following reasons:

- First, the Complaint's allegations against Safrin – to whom plaintiffs fail to credibly ascribe a single statement or action – strain credulity to an impossible level, and fail to meet the Supreme Court's and this Circuit's "plausibility" standard for surviving a motion to dismiss;

---

[2] On December 8, 2007, this Court informed plaintiffs that the Complaint failed to allege the existence of subject matter jurisdiction, and that the complaint would be dismissed absent the filing of an amended complaint or notice of removal by December 14, 2007.  (See Dec. 14, 2007 Order, attached to the Lupkin Decl. as Exhibit C.)  Plaintiffs did not amend their complaint, and on December 18, 2007, the Court dismissed the action.  (Lupkin Decl., Ex. B.)

- <u>Second</u>, the claims against Safrin (Counts 1, 3, 5, 6, 8, 9, 11, 12, 15-18, 21-23, and 25-27) fail to state a claim because the Complaint is bereft of any facts suggesting that Friedman had authority to "bind" Safrin to any purported contracts or representations allegedly made on his behalf;

- <u>Third</u>, plaintiffs' breach of contract claims (Counts 6, 8, 9, 11, 12, and 16) must be dismissed for the additional reason that there is no privity of contract between plaintiffs and Safrin, and, in any event, Safrin is shielded from liability on any alleged contract that may have existed by the laws governing limited liability companies; the <u>only</u> alleged connection between Safrin and plaintiffs is by way of First Republic LLC. Moreover, absent a valid breach of contract claim, it follows that plaintiffs' declaratory judgment, quiet title and judicial foreclosure claims (Counts 1, 3, 5) – all premised on the purported contracts – must necessarily fail as well;

- <u>Fourth</u>, plaintiffs' fraudulent nondisclosure, negligent misrepresentation and breach of fiduciary duty claims (Counts 17, 18, 20-22 and 27) must be dismissed because plaintiffs fail to allege any relationship with Safrin, let alone the requisite special or fiduciary relationship, necessary to sustain such claims; and

- <u>Fifth</u>, plaintiffs' fraud-based claims (Counts 15, 17-25, and 27) must be dismissed in any event for one or more of the following reasons: (i) plaintiffs fail to allege their fraud-based claims with the requisite particularity; (ii) the negligent misrepresentation and fraud claims purportedly alleged in Counts 19 and 20 fail to allege any purported misrepresentations made *to plaintiffs* upon which *plaintiffs* relied; (iii) plaintiffs cannot state a cognizable claim based on contingent promises of future conduct, as promises of future conduct are not actionable as negligent or fraudulent misrepresentations; (iv) plaintiffs do not and cannot plead justifiable reliance; and (v) finally, plaintiffs' fraud claims (Counts [ ]) fail because they are a legally impermissible restatement of plaintiffs' breach of contract claims.

Not surprisingly, the arguments set forth in defendant's motion highlight a common theme: Safrin does not belong in this suit.

## STATEMENT OF FACTS[3]

The Complaint's meandering 262-paragraphs begins with plaintiff Amusement Industry, Inc.'s acceptance of an investment proposal presented by non-parties Steven Alevy and Stephen Friedman, on behalf of First Republic Group Corp., ("First Republic Corp."). (SC ¶31.) The proposal contemplated First Republic Corp.'s purchase from non-party Colonial Realty Limited

---

[3] This statement of facts is drawn from the allegations of the Complaint, which are generally presumed to be true on a Rule 12(b)(6) motion, and from the documents to which the Complaint refers. See In re Global Crossing, Ltd. Sec. Litig., 322 F. Supp. 2d 319, 327-28 (S.D.N.Y. 2004) ("When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference.")

Partnership ("Colonial Realty") of a certain real estate portfolio consisting of shopping centers located in southeastern United States (the "Property Portfolio").  (SC ¶¶24, 30-31.)  First Republic Corp., which is solely owned by defendant Mark Stern, contracted to buy the property in April, 2007. (SC ¶24.)

A.    **The Parties and Notable Non-Parties**

Plaintiff Amusement Industry, Inc. is a California corporation doing business as Westland Industries, Inc.  (SC ¶1.)   It conducts business from Long Beach, California.  (SC ¶1.)  Plaintiff Practical Finance Co., Inc. ("Practical Finance") is a California corporation and the alleged assignee of certain promissory notes signed by defendant Stern and purportedly held in escrow for the benefit of Amusement.  (SC ¶2.)

Defendant Moses aka Mark Stern ("Stern") is a citizen of New York who regularly transacts business in New York County.  (SC ¶3.)  Defendant Joshua Safrin ("Safrin"), is a citizen of the State of New York.  (SC ¶4.)

Defendant Land Title Associates Escrow ("Land Escrow"), is a New York limited liability company. (SC ¶ 14.)  Defendant Ephraim Frenkel ("Frenkel") is a citizen of the State of New York and the sole owner and sole member of Land Escrow.  (SC ¶13.)

Non-party First Republic Corp. is a corporation registered to do business in New York, and is solely owned by Stern.  (SC ¶6.)  First Republic Corp. is the original contracting buyer of the Property Portfolio from Colonial Realty, the party to the alleged Letter of Intent executed June, 29, 2007 (SC Ex. 2), and to the unsigned partnership agreement that, according to the Complaint, features prominently later in this transactional saga. (SC, Ex. 3).

Non-party Stephen Friedman ("Friedman") is an attorney at the law firm Buchanan Ingersoll & Rooney, P.C. who allegedly represented Stern, Safrin and First Republic LLC in their "communications and dealings with plaintiffs." (SC ¶¶ 8, 32).  Non-party Steven Alevy of Bankers Capital, LLC, is a broker, who, together with Friedman, worked to obtain the additional funding for First Republic Corp. to complete the Acquisition, and is the son of the sole shareholder of Amusement. (SC ¶¶30-31.)

4

Defendant First Republic Group Realty LLC ("First Republic LLC") is a Delaware limited liability company, whose sole member is non-party FRGR Managing member, LLC, and is the alleged assignee (from First Republic Corp.) of the written contract to purchase the property portfolio. (SC ¶¶5, 24).

The Complaint further alleges the following ownership and management structure of First Republic LLC (SC ¶¶5, 9-11):



**B.    Plaintiffs' Investment**

On June 29, 2007, non-parties Steven Alevy and Friedman presented an investment opportunity to Amusement, purportedly on behalf of Safrin and Stern, to enable completion of the Property Portfolio Purchase.  (SC ¶31.)  Friedman allegedly represented Stern, Safrin and First Republic LLC in their "communications and dealings with plaintiffs." (SC ¶32.)  Plaintiffs nevertheless allege that Friedman somehow owed a fiduciary duty to Amusement because he had previously represented Amusement, as well as its sole shareholder, Allen Alevy, and his son, non-party Steven Alevy, in various legal matters.  (SC ¶¶32-33.)  Plaintiffs contend that "as a

result" of this previous representation by Friedman, "Friedman led plaintiffs to believe that he had full authority to speak on behalf of . . . Safrin." (SC ¶32.)

### 1.    The June 29, 2007 "Letter of Intent"

The investment opportunity purportedly presented by Friedman and Steven Alevy in June, 2007 on behalf of Stern, Safrin and First Republic LLC resulted June 29, 2007 in a "written Letter of Intent contract and agreement" drafted by Steven Alevy and signed by Stern, notably, on behalf of *First Republic Corp*. (SC ¶¶35, Ex. 2.) Although the document is referred to as a "Letter of Intent" in the Complaint, the document itself is characterized as a Letter of Understanding (hereafter "LOI"). (SC, Ex. 2.) The LOI identifies as its parties First Republic Corp. and Westland Industries. (Id.) On July 2, 2007, Alevy e-mailed the so-called "Letter of Intent" to Friedman and Stern. (Id.) The LOI unambiguously indicates that it is not an agreement, but rather a proposed financing arrangement which would require continued negotiations to reach an agreement. (Id.)

On June 29, 2007, the same day Stern signed the LOI on behalf of First Republic Corp. (not on behalf of any individuals or First Republic LLC), Amusement wired $13,000,000.00 into the Land Escrow account. (¶36). Plaintiffs assert that as a result of this wire transfer, a contract formed among Amusement and "Stern and Safrin" having the terms of the LOI. (¶36). Notably, neither Safrin, Stern nor First Republic LLC was a party to the LOI. (SC, Ex. 2).

Plaintiffs allege that subsequent to the June 29, 2007 LOI, on about or after July 2, 2007, Safrin and Stern obtained a reduction of the purchase price of the property portfolio "by about $4.47 million dollars." (SC ¶39.)

### 2.    Plaintiffs' Subsequent Negotiations With Friedman

Notwithstanding their allegation that "a contract formed" on June 29, 2007 (SC ¶36), plaintiffs allege that in the ensuing seven-day period, during which Westland and First Republic Corp. had agreed to work in good faith "to finalize these agreements," Amusement drafted and forwarded three partnership agreements to Friedman for "Stern and Safrin" to sign in order "to complete a transaction". (SC ¶42.) (emphasis added). But the only parties to the unsigned

6

partnership agreement attached to the Complaint are Amusement and First Republic Corp. (SC Ex. 3.) Plaintiffs allege that Stern and Safrin never signed these "draft" partnership agreements (SC ¶¶42), but this allegation is misleading; the unexecuted agreement attached to the Complaint (SC, Ex. 3), by its terms, seeks only a signature from Mark Stern on behalf of First Republic Corp., his solely owned company.

After the seven day period passed without the agreements being "finalized" or signed, Amusement continued to negotiate through Friedman. (SC ¶¶44-61.) On July 6, 2007, plaintiffs, through Friedman, suggested a new Property Portfolio ownership structure, inquired as to whether its $13,000,000.00 contribution to the purchase should be a loan to Stern or to the entity that would be the owner of the Property Portfolio, notified "Stern and Safrin" that the seven-day period had expired, noted that there should be about $4,000,000.00 in reserve after the closing, and instructed Friedman not to authorize the release of the $13,000,000.00 held in escrow. (SC ¶44.) On July 6, 2007, counsel for Amusement also wrote to Friedman, stating that if the transaction had materially changed from the draft partnership agreement and the LOI (agreements to which only Amusement and First Republic Corp. are parties), then the wired $13 million should be returned. (SC ¶45.)

On July 9, 2007, Amusement asked Friedman, in writing, for a copy of the Citibank loan documents that provided for the first $111,150,000.00 in financing for the Property Portfolio purchase. (SC ¶46.) Friedman did not provide the documents, but responded that same day, in writing, that First Republic LLC was now the purchasing entity. (SC ¶46).

During the flurry of back-and forth communications alleged to have occurred on July 9, 2007 through Friedman (SC ¶¶46-49), Stern and Safrin purportedly promised "through Friedman in writing" that formal documentation of Amusement's interest in the property portfolio was recognized and would be completed as necessary after closing once First Republic LLC owned the property portfolio. (SC ¶48.) Amusement then instructed Friedman, again, not to release the $13 million in escrow. (SC ¶51.) Amusement also instructed Land Escrow and Frenkel not to

release Amusement's funds without written authorization of Sragow & Sragow, one of two firms acting as counsel of record to plaintiffs in this matter. (SC ¶51.)

On July 11, 2007, <u>Friedman</u> provided documents to Amusement, including a Promissory Note for $13,000,000.00 signed by Stern in his individual capacity, an Escrow Agreement, Assignments, purportedly signed by Stern and Safrin (SC, Exs. 5, 6),[4] of their respective LLC membership interests in First Republic LLC and the underlying LLC ownership structure, and eleven grant deeds constituting the Property Portfolio, all of which were signed by Stern on behalf of First Republic LLC and notarized on July 12, 2007 (SC, Ex. 1) (these documents are collectively referred to herein as the "Escrow Documents").[5] (SC. ¶52.)

### 3.    The July 11, 2007 Counter Offer

On July 11, 2007, Amusement communicated to Stern, Safrin and First Republic LLC, in writing "<u>through Friedman</u>" a "counter offer" because it disagreed with the characterization of the transaction among the parties reflected in the Escrow Documents, including that the money from Amusement was a loan. (SC ¶53(emphasis added).)  Amusement declared there would be no loan; rather the $13,000,000.00 would be treated as a direct investment with a preferred right to return of this investment within 45 days.  In addition, the repayment right would be increased to $15,000,000.00 because of the $4,000,000.00 remaining in reserve after closing.  (SC ¶53.) Amusement also demanded conveyance to Amusement of 100% of the Property Portfolio by deeding all eleven properties to Amusement, together with the conveyance of the LLC membership interests, and noted that Stern and Safrin would have a limited option to repurchase

---

[4] While the authenticity of Safrin's signature on the assignment must be presumed on this pre-answer motion, this firm retained Gus R. Lesnevich, a well-respected forensic document examiner to assess the legitimacy of this (and two other) Safrin signatures.  Lesnevich's conclusion, that the signature is <u>not</u> genuine, is set forth in a declaration dated February 26, 2008.  We have forwarded the Lesnevich Declaration to plaintiffs' counsel and have suggested that in light of his declaration and our current motion, they voluntarily dismiss Mr. Safrin as a party defendant.  <u>See</u> Lupkin Decl., Ex. D (Letter to Philip R. White from Jonathan D. Lupkin, dated February 26, 2008, and enclosed Lesnevich Declaration).

[5] Copies of all these documents are attached as exhibits to the Complaint, except, notably, the Escrow Agreement, which presumably set forth the terms and conditions of the escrow.  (SC ¶52.)

the grant deeds and a 50% ownership interest by providing "the partnership agreement" (presumably an executed copy of the document attached to the Complaint as Ex. 3) within a period of 45 days.  (SC ¶53.)

Friedman responded, telling Amusement that it "should not worry as Amusement now owned the whole thing", and the following day, provided a $15,000,000.00 promissory note signed by Stern in his individual capacity.  (SC ¶56, and Ex. 7.)

### 4.    The Release of the $13 Million in Escrow

Plaintiffs allege that on July 12, 2007, Frenkel and Land Escrow "took and used" the $13,000,000.00 in escrow based on instructions from "Stern, Safrin and First Republic LLC" without notice or authorization from Amusement and in violation of specific instructions given to Friedman on July 9, 2007.  (SC ¶58.)  Plaintiffs also allege that Land Escrow had obtained verbal and written authorization from Steven Alevy to release the escrow (SC ¶ 63).

Based on the July 11, 2007 Counter Offer and the release of the escrow funds, Amusement alleges that a second contract had been formed "between Amusement and Stern, Safrin, and First Republic LLC." (¶59), pursuant to which it obtained a 100% interest in the Property Portfolio (valued at $190,000,000.00).  (¶¶53, 59.)

### C.    Plaintiffs' Substantive Allegations And Claims Against Defendant Safrin

Plaintiffs, who cannot plausibly allege that Safrin played any role in the transaction at issue, nevertheless attempt to assert claims against for: (i) declaratory relief (Count 1); (ii) quiet title (Count 3); judicial foreclosure of real property (Count 5); (iii) breach of contract (Counts 6, 8, 9, 11, 12 and 16); (iv) fraud (Counts 19, 20, 23); (v) fraud in the inducement (Counts 15 and 17); (vi) fraudulent concealment (Counts 17, 21); (viii) negligent misrepresentation (Counts 18, 20, and 22); (ix) Conversion (Count 24); (x) conspiracy to commit conversion and fraud (Count 25); (xi) unjust enrichment (Count 26); and (xii) breach of fiduciary duty (Count 27).[6]

---

[6] For the Court's convenience, and given the hopelessly prolix and confusing nature of the Complaint, we have attached as an addendum to the Table of Contents, supra, a chart that correlates each Count with that section of Safrin's Memorandum of Law that provides the basis for that Count's dismissal.

The fulcrum upon which virtually plaintiffs' entire case against Safrin is premised is paragraph 32 of the Complaint.  Beginning with Friedman's presentation of the investment opportunity to plaintiffs in June, 2007, the Complaint alleges that all of the negotiations at issue occurred through Friedman:

> Stern and Safrin, and later First Republic LLC, were represented by attorney Friedman in their communications and negotiations with plaintiffs . . . Friedman led plaintiffs to believe that he had full authority to speak on behalf of Stern, Safrin, and First Republic LLC concerning their purchase of the property portfolio, and upon information and belief, Friedman had such authority when communication occurred with plaintiffs, and Allen Alevy.

(SC ¶32.)

In essence, paragraph 32 declares Friedman to be the conduit for, and speaker and recipient of, all communications with plaintiffs that follow, thereby establishing the lens through which to view the remaining 240-odd paragraphs in the pleading.  By incorporating this allegation at the outset of all 27 counts, plaintiffs render this allegation indispensable to each of their purported claims.  In any event, a reading of the rest of the Complaint bears out the assertion in paragraph 32 that Friedman is the source of all of the alleged communications and conduct complained of.  Thus:

- The bulk of plaintiffs' declaratory judgment, quiet title and breach of contract claims against Safrin (Counts 1, 3, 5, 6, 8, 9, 11, and 12) are based on a purport contract formed as a result of plaintiffs' counteroffer of July 11 sent "*through Friedman*" (SC ¶ 53) and the response thereto, also sent "***through Friedman***" (SC ¶56) (emphasis added).

- The breach of contract alleged in Count 16 is based on the contract purportedly formed on June 29, 2007 as a result of the investment opportunity presented ***by Friedman*** (SC ¶ 31) and representations of June 29, 2007 "***through Friedman***" (SC ¶37) (emphasis added).

- Plaintiffs allege fraud in the inducement claims (Counts 15 and 17) and an alternative negligent misrepresentation claim that refers back to Count 17 (Count 18), based on promises purportedly made by Stern and Safrin, "***by email, through Friedman***" (SC ¶¶ 167, 185; see also SC ¶¶184, 195) (emphasis added), and the failure to provide loan documents requested ***from Friedman*** (SC ¶46).  To the extent that these counts pay lip service to allege representations by "Stern and Safrin", they are simply referring back to

"promises," representations and "concealment" of loan documents by Friedman. <u>Compare</u>, for example, SC ¶168 <u>with</u> ¶167; SC ¶¶188, SC ¶191 <u>with</u> ¶185; SC ¶195 <u>with</u> ¶185.

- Similarly, plaintiffs' fraud and negligent misrepresentation claims in Counts 21 and 22, respectively (Count 22 simply repleads Count 21 as a negligent misrepresentation claim) concern July 11, 2007 representations regarding the ownership and security structure protecting Amusement (SC ¶¶ 215, 218), which all occurred "***through Friedman***" (SC ¶¶52-56) and the concealment of Citibank loan documents that were requested "***through Friedman***." (SC ¶46) (emphasis added). Plaintiffs also refer generally to ongoing negotiations during the July 9 –July 13, 2007 time frame, all of which appear to have occurred between plaintiffs and Friedman (<u>see generally</u> SC ¶¶46-62).

As plaintiffs utterly fail to plead a single viable claim against Safrin, the Complaint must be dismissed.

<u>**ARGUMENT**</u>

<u>**POINT I:**</u>

<u>**THE ALLEGATIONS AGAINST SAFRIN ARE SO IMPLAUSIBLE AND SPECULATIVE THAT THE COMPLAINT SHOULD BE DISMISSED AS A MATTER OF LAW**</u>

Where, as here, the allegations in the Complaint are implausible, speculative and conclusory, dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) is warranted. In <u>Bell Atlantic Corp. v. Twombly</u>, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007), the Supreme Court endorsed "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007) (italics in original); <u>see also</u> <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 93 (2d Cir. 2007) (affirming dismissal). As this Court has recognized, this means that "[n]ow, in order '[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" <u>In re Parmalat Sec. Litig.</u>, 501 F. Supp. 2d 560, 572 (S.D.N.Y. 2007) (Kaplan, J). While the Court is obliged to accept as true the factual allegations of the complaint, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to

dismiss.'" <u>Matsumura v. Benihana Nat'l Corp.</u>, No. 06 Civ. 7609(NRB), 2008 WL 282021, at *4
(S.D.N.Y. Jan. 25, 2008) (quoting <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 240 (2d
Cir. 2002)).

      Courts in this district have not hesitated to dismiss complaints that fail to meet this
plausibility threshold.  <u>See, e.g.</u>, <u>In Re Parmalat</u>, 501 F. Supp. 2d at 577 (dismissing complaint
where, <i>inter alia</i>, plaintiffs' pleadings failed to "suppl[y] factual allegations sufficient to raise a
right to relief above the speculative level."); <u>In re Marsh & McLennan Cos., Inc. Sec. Litig.</u>,  04
Cv. 8144(SWK), 2007 WL 3407064, at *10 (S.D.N.Y. Nov. 14, 2007) (dismissing complaint
with prejudice where allegations "fail[ed] to state a claim upon which relief can be granted");
<u>Gitnik v. Home Depot U.S.A., Inc.</u>, No. 07 CIV 1244(MDF), 2007 WL 2728358, *5 (S.D.N.Y.
Sept. 18, 2007) (granting defendant's motion to dismiss breach of contract action); <u>Matsumura</u>,
2008 WL 282021, at *11 (granting motion to dismiss in its entirety pursuant to Fed.R.Civ.P.
12(b)(6) and 9(b) where alleged fraudulent statements were not actionable as a matter of law, and
plaintiffs failed to plead scienter, reliance or the existence of a fiduciary duty).

      Here, the Complaint's allegations against Safrin – to whom plaintiffs fail to ascribe any
personal role whatsoever – do not state any plausible claim for relief.  As set forth in depth
below, the plaintiffs' failure to allege that they ever had a single conversation or exchange of
correspondence with Safrin, renders the Complaint implausible.  Plaintiffs here cannot make out
a claim upon which relief can be granted without alleging, consistent with their obligations under
Fed. R. Civ. P. 11, one or more of the following facts:  (a) that Friedman had authority to act on
behalf of Safrin; (b) that an enforceable contract between plaintiffs and Safrin, <i>qua</i> individual,
existed; (c) that the limited liability afforded to members of an LLC did not protect Safrin in this
case; (d) that there was a "special" or fiduciary relationship between plaintiffs and Safrin; and (f)
that Safrin personally made representations of facts to plaintiffs that were false when made and
upon which plaintiffs reasonably relied.  Because plaintiffs have failed to (and cannot) make
such allegations, their Complaint must be dismissed as a matter of law.

**POINT II:**

**THE COMPLAINT DOES NOT STATE A VIABLE CLAIM AGAINST SAFRIN BECAUSE FRIEDMAN DID NOT HAVE AUTHORITY TO BIND SAFRIN TO ANY ALLEGED CONTRACTS OR MISREPRESENTATIONS**

The Complaint is devoid of any allegations of conduct or representations made by Safrin to plaintiffs. Rather, plaintiffs plead that all of the conduct complained of occurred through Friedman. (SC ¶32.) But plaintiffs have not alleged – nor can they -- that Friedman had authority to act on behalf of Safrin (and therefore, to bind Safrin to any of the purported contracts formed or misrepresentations made). Consequently, plaintiffs' Complaint must be dismissed as against Safrin.

**A.    Plaintiffs Fail To Allege – Even Conclusorily – That Friedman Had Authority To Act On Safrin's Behalf**

     **1.    Actual Authority**

"A principal . . . is not liable for loss caused to another by reason of his reliance upon a deceitful representation of an agent unless the representation was authorized or apparently authorized." See Ernst Iron Works, Inc. v. Duralith Corp., 270 N.Y. 165, 165-66, 200 N.E. 683 (1936). Actual agency "is created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP, 03 Civ. 0613 (GBD), 2004 WL 112948, at *4 (S.D.N.Y. Jan 22. 2004) (emphasis added) (internal quotation marks and citation omitted). In order to survive a motion to dismiss on an agency theory, plaintiffs "must do more than state the legal conclusion . . . it must plead facts that support a finding that such agency existed." Maung Ng We & Massive Atlantic Ltd v. Merrill Lynch & Co., No. 99 CIV 9687 (CSH), 2000 WL 1159835, at *5 (S.D.N.Y. Aug. 15, 2000) (dismissing complaint where plaintiffs failed to plead an agency relationship existed); Nuevo Mundo Holdings, 2004 WL 112948, at *5 (complaint failed to support bald assertion that an agency relationship existed; "Plaintiffs make no allegation of a manifestation by [alleged principals] that [alleged agents] were to act on their behalf.").

## 2.    Apparent Authority

Liability premised on apparent authority arises "where a third party reasonably relies upon the misrepresentation of an agent's authority through conduct of the principal." N.X. v. Cabrini Med Ctr., 97 N.Y.2d 247, 252 n.3, 765 N.E.2d 844, 847 n.3, 739 N.Y.S.2d 348, 351 n.3 (2002). The New York Court of Appeals has summarized the law of apparent authority thusly:

> [T]he existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of the principal-not the agent. As one treatise on New York law states: 'The very basis of the doctrine of apparent authority indicates that the principal can be held liable under the doctrine only where he was responsible for the appearance of authority in the agent to conduct the transaction in question. The apparent authority for which the principal may be held liable must be traceable to him; it cannot be established by the unauthorized acts, representations or conduct of the agent'

Ford v. Unity Hosp., 32 N.Y.2d 464, 473, 299 N.E.2d 659, 664, 346 N.Y.S.2d 238, 244 (1973) (citing 2 N.Y.Jur., Agency, s. 89, p. 253) (purported principal had not engaged in conduct so as to justify resort to "apparent authority"). In the attorney-client context, "[a] lawyer's act is considered to be that of the client in proceedings before a tribunal or in dealings with a third person if the tribunal or third person reasonably assumes that the lawyer is authorized to do the act on the basis of *the client's* (and not the lawyer's) manifestations of such authorization." Restatement (Third) of the Law Governing Lawyers § 27 (2000) (emphasis added).

It is "[e]ssential to the creation of apparent authority [that there] are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter a transaction. The agent cannot by his own acts imbue himself with apparent authority." Nash v. Y&T Distrib., 207 A.D. 2d 779, 780-81, 616 N.Y.S.2d 402, 403 (2d Dep't 1994) (vacatur of settlement agreement properly granted where defendant failed to show that plaintiff's attorney had the authority to settle the agreement); Sarkes Tarzian, Inc. v. U.S. Trust Co. of Fla. Sav. Bank, 397 F.3d 577, 587 (7th Cir. 2005) (finding that attorney lacked authority to enter U.S. Trust into a binding stock sale and purchase agreement where "there were

no actions or words of [U.S. Trust's CEO] which [plaintiff] could construe as cloaking [the attorney] with authority to bind U.S. Trust"). Thus, absent allegations that the purported client/principal, by words or conduct, gave rise to the belief and appearance that the attorney/agent possesses authority to enter into transactions on his behalf, the Complaint must be dismissed for failure to state a cause of action. See Rozsa v. May Davis Group, Inc., 187 F.Supp.2d 123, 130 (S.D.N.Y. 2002), aff'd, Rozsa v. SG Cowen Sec. Corp., 165 Fed. Appx. 892 (2d Cir. 2006) (granting motion to dismiss, reasoning, inter alia, that plaintiff Rozsa's "allegations [of apparent authority] are deficient because none of them constitute representations or conduct directed by the purported principal (SG Cowen) to a third-party (Rozsa)"); Zigabarra v. Falk, 143 A.D.2d 901, 902, 533 N.Y.S.2d 536, 538 (2d Dep't 1988) (affirming dismissal of complaint where the plaintiffs "fail[ed] to allege the manner in which [purported principals] communicated, by words or conduct, anything which would indicate that [the alleged agent] was selling modular homes on their behalf").

**B.      By Plaintiffs' Own Allegations, Friedman Is The Only Actor Behind The Conduct Complained Of In The Claims Against Safrin, And The Complaint Is Bereft of Any Allegation That Safrin Manifested To Plaintiffs That Friedman Had Authority To Act On His Behalf**

Nothing in the Complaint indicates that Safrin ever did anything to indicate to plaintiffs that Friedman had authority to enter into contracts or make representations on his behalf.

First, plaintiffs fail to allege any words or conduct by Safrin authorizing Friedman outright to act on his behalf. They simply assert the bald, unsupported conclusion that "Stern and Safrin, and later First Republic LLC, were represented by attorney Friedman," but nowhere allege words or deeds by Safrin conferring such authority.  As the conclusory assertion of an agency relationship fails to pass muster under Rule 12(b)(6), plaintiffs have not pled liability for Safrin based on an actual authority theory. See Maung Ng We, 2000 WL 1159835, at *5; Nuevo Mundo Holdings, 2004 WL 112948, at *6.

Second, plaintiffs have not alleged any facts from which this Court could find that Friedman had apparent authority.  Indeed, the plaintiffs fail to allege any manner in which the

purported client/principal, Safrin, communicated, by words or conduct, anything which would indicate that Friedman was working on his behalf.  All plaintiffs allege is that Friedman "previously had represented" the *plaintiffs* and, "[a]s a result, Friedman led plaintiffs to believe that he had full authority to speak on behalf of Stern, Safrin, and First Republic LLC." (SC ¶32). Notably missing from this picture – and fatal to plaintiffs' claims-- is any allegation of conduct on the part of Safrin giving rise to this belief.  Further, allegations regarding what Friedman "led plaintiffs to believe" (SC ¶32), "run afoul of the proscription that the alleged agent with whom the third-party was dealing . . . [in this case, Friedman], cannot cloak itself with apparent authority."  See Rozsa, 187 F. Supp. 2d at 130.

Plaintiffs have not alleged any basis for asserting liability against Safrin.  Accordingly, the Complaint must be dismissed as to him.

## POINT III:

### THE BREACH OF CONTRACT CLAIMS AGAINST SAFRIN MUST BE DISMISSED BECAUSE THERE IS NO PRIVITY OF CONTRACT

Plaintiffs assert a variety of breach of contract claims against Safrin.  As the Complaint fails to allege that Safrin himself was a party to any of the purportedly breached contracts – a prerequisite for any claim of breach– these counts must be dismissed.  Moreover, assuming a proper assignment of the agreements at issue from First Republic Corp. to First Republic LLC, the only arguably liable party under these "contracts" is First Republic LLC.

**A.    The Complaint Fails To Allege That Safrin Was Even
A Party To Any Of The Purportedly Breached Contracts**

The Complaint alleges several purported breaches of contract against Safrin. (SC, Counts 6, 8, 9, 11, 12 and 16.)  All of the breach of contract claims suffer from the same fundamental flaw:  there are no allegations of fact establishing that Safrin *qua* individual was a party to any of these purported contracts.  Absent privity between Safrin and plaintiffs, plaintiffs cannot look to Safrin to recover for any purported breaches.  See Pacific Carleton Dev. Corp. v. 752 Pacific, LLC, 17 Misc.3d 1102(A), 2007 WL 2781874, at *4 (Sup. Ct. Kings Co. Sept. 19, 2007)

16

(dismissing breach of contract brought against individual who signed agreement on behalf of LLCs for lack of privity because the only parties to the agreement were the tenants and the LLC); <u>U.S. Fire Ins. Co. v. Am. Home Assurance Co.</u>, 19 A.D.3d 191, 192, 796 N.Y.S.2d 603, 605 (1st Dep't 2005) (dismissing breach of contract claim where plaintiff "was not in privity with defendant and its insured in the insurance policy").

      Here, the alleged breach of contract claims concern the breach of terms purportedly agreed upon in the LOI, as modified by a subsequent "agreement" supposedly formed as a result of Amusement's July 11, 2007 counteroffer.  Though plaintiffs allege that it entered into these contracts with "Stern, Safrin, and First Republic LLC" (<u>see</u> SC ¶¶ 102,116,136,144) the only parties to the LOI attached to the Complaint are Amusement Industry and First Republic Corp.  Similarly, the purported breach of contract set forth in Count 16 (Stern and Safrin's alleged failure to retain the $4 million left in reserve after closing) is based on an alleged agreement concerning the terms of the financing of the Property Portfolio purchase by *First Republic Corp*.  As plaintiffs have failed to allege that Safrin is a party to any of the purported "contracts" at issue, the breach of contract claims must be dismissed.

**B.  Safrin May Not Be Held Individually Liable For Contracts Allegedly Entered Into By A Limited Liability Company**

      Read liberally (and in conjunction with the exhibits to the Complaint), it is apparent that, at most, First Republic LLC, as assignee of First Republic Corp., became a party at some point to the alleged agreements with plaintiffs.  Therefore, any breach committed would have been committed by First Republic LLC, not those who purported to act on its behalf.

      "[I]t is axiomatic that corporations and limited liability companies are artificial persons, and that the individuals who execute instruments on behalf of such entities in their capacity as officers or other duly authorized agents are not personally liable on those instruments."[7]  <u>Pacific</u>

---

[7] First Republic LLC is a Delaware Limited Liability Company.  The limited liability statutes of both New York and Delaware are similar and both protect members and managers of an LLC against personal liability for the obligations of the LLC by reason of being or acting as LLC members or managers.  <u>Compare</u> 6 Del. C. §18-03(a), <u>with</u> N.Y. L.L.C.L. §609(a).

Carlton Dev. Corp., 2007 WL 2781874, at *4 (citation omitted).  It is not enough for plaintiffs to allege that Stern and Safrin were behind the decisions and obligations entered into on behalf of First Republic LLC.  "[I]f it were, it would defeat one of the beneficial purposes for forming an LLC, that is, to shield its individual members from personal liability for the acts of the LLC." Quebecor World (USA), Inc. v. Harsha Assocs., LLC, 455 F. Supp. 2d 236, 244 (W.D.N.Y. 2006) (citing N.Y. L.L.C.L. § 609(a)) (granting motion to dismiss breach of contract action against principal of limited liability company, who plaintiffs alleged "was the person who made the decision to terminate the printing contract"); Thomas v. Hobbs, No. C.A. 04C-02-010 RFS, 2005 WL 1653947, at *4 (Del. Super. Ct. Apr. 27, 2005) (citing 6 Del. C. § 18-303) (dismissing sole member of LLC from suit as member "may not be held personally liable for the obligations and possible breach of contract by her limited liability company").

The Complaint makes it clear that the only parties entering into the financing transaction at issue are Amusement and First Republic Corp., and that subsequently, on or about July 9, the underlying Property Portfolio purchase transaction with Colonial Realty was assigned by First Republic Corp. to First Republic LLC.  Moreover, the investment opportunity presented by Friedman "in an attempt to obtain additional financing to complete their purchase of the property portfolio" (SC ¶30) concerned property to be purchased not by Stern and Safrin as individuals, but by First Republic Corp. (the company solely owned by Stern).  Tellingly, plaintiffs themselves allege that the transaction into which they entered was governed by the terms of the unsigned partnership agreement and the LOI.  (SC ¶ 45.)  A review of those agreements, which are attached to the Complaint, reveals that they are agreements between plaintiffs and First Republic Corp. (or perhaps First Republic LLC) – not Stern and Safrin as individuals.  Specifically:

- The LOI was signed by Marc Stern, *on behalf* of First Republic Corp. (SC ¶6.);

- The unsigned partnership agreement, drafted by plaintiffs, is, by it terms, a purported agreement with First Republic Corp. (SC ¶ 43, and Ex. 3.)

18

- Plaintiffs allege that the grant deeds provided by Friedman on July 11th, were "signed by grantor, First Republic LLC." (SC ¶52, and Ex. 1); and

- The purported assignment agreements (assigning interests in the LLC that owned the property) only highlight that the individual defendants did not own any of the property at issue.

Plaintiffs' coy attempt to plead a connection to Safrin by lumping Stern, Safrin and First Republic LLC together in these allegations is not only speculative, but flatly refuted by the documents attached to the Complaint.

Since plaintiffs fail to allege plausibly that Safrin was a party to any of the purportedly breached contracts, their breach of contract claims against Safrin must be dismissed.[8]

**POINT IV:**

**PLAINTIFFS' CLAIMS FOR FRAUDULENT
CONCEALMENT, NEGLIGENT MISREPRESENTATION AND
BREACH OF FIDUCIARY DUTY MUST BE DISMISSED**

Plaintiffs' failure to allege the existence of a special or fiduciary relationship with Safrin is fatal to plaintiffs' fraudulent nondisclosure, negligent misrepresentation and breach of fiduciary duty claims.  Accordingly, Counts 17, 18, and 20-22 and 27, must be dismissed.

**A.    Plaintiffs' Fraudulent Concealment And Negligent Misrepresentation Claims Must Be Dismissed Because They Fail To Allege The Existence Of A Confidential Or Fiduciary Relationship With Safrin**

Negligent misrepresentation and fraudulent concealment claims must be founded on a duty arising out of a special or fiduciary relationship.  Success Universal Ltd. v. CWJ Int'l Trading, Inc., No. 95 Civ 10210 (DLC), 1996 WL 535541, at *6 (S.D.N.Y Sept. 20, 1996) ("It is well-settled under New York law that silence alone does not amount to fraudulent concealment absent a confidential or fiduciary relationship between the parties); SNS Bank, N.V. v. Citibank,

---

[8] Because plaintiffs fail to allege any breach of contract against Safrin *qua* individual, it follows that the claims asserted against him in Counts 1 (Declaratory Relief As To Ownership Of Grant Deeds and LLC Interests), 3 (Quiet Title As To LLC Interests), and 5 (Judicial Foreclosure Of Personal Property LLC Membership Interests), which are all premised on the purported "contracts" formed in connection with the LOI and July 11 Counter Offer, must also be dismissed.

19

N.A., 7 A.D.3d 352, 356, 777 N.Y.S.2d 62, 66 (1st Dep't 2004) (when a cause of action is based on a failure to disclose information, that "omission does not constitute fraud unless there is a fiduciary relationship between the parties"); Brinsights, LLC v. Charming Shoppes of Del., Inc., No. 06 Civ. 1745(CM), 2008 WL 216969, at *8 (S.D.N.Y. Jan. 16, 2008) ("A plaintiff may recover for negligent representation under New York law 'only where the defendant owes her a fiduciary duty'") (citation omitted); Korea First Bank of N.Y. v. Noah Enters., Ltd., 12 A.D.3d 321, 323, 787 N.Y.S.2d 2, 4 (1st Dep't 2004) (to bring a negligent misrepresentation claim, there must exist a "confidential or fiduciary relationship giving rise to a duty to speak with care").

Courts routinely dismiss negligent misrepresentation and fraudulent concealment claims where, as here, plaintiffs fail to make any plausible allegation of a confidential or fiduciary relationship that gives rise to a duty to disclose.  See Success Universal Ltd., 1996 WL 535541, at *6 (dismissing fraudulent concealment claims in the absence of a "special or a fiduciary relationship between the parties that would give rise to a duty to speak"); Strategic Alliance Partners, LLC v. Dress Barn, Inc., 386 F. Supp. 2d 312, 318 (S.D.N.Y. 2005) (dismissing fraudulent concealment claim where "the complaint fail[ed] to allege that there was a sufficient relationship between Dress Barn and Strategic such that a duty to disclose existed"); Black Radio Network, Inc. v. NYNEX Corp., 2000 WL 64874, at *2 (S.D.N.Y. Jan. 25, 2000) (dismissing fraud claims based on nondisclosure in part because "there was no relationship at all between plaintiffs and [defendant], much less a fiduciary or confidential relationship, and plaintiffs do not argue that such a relationship existed"); N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc., No. 99 Civ. 4643(LAP), 2000 WL 1290608, at *5 (S.D.N.Y. Sept. 12, 2000) (dismissing negligent misrepresentation claim based on alleged proposed partnership between garment manufacturer and retailer business partnership where plaintiffs alleged only a "typical business relationship" and "failed to allege facts that give rise to a claim that the parties had a special relationship"); JewelAmerica Inc. v. Frontstep Solutions Group, Inc., No. 02 Civ. 1328(RO), 2002 WL 31465807, at *2 (S.D.N.Y. Nov. 1, 2002) ("Nothing here indicates that the parties were anything more than arms-length parties to a contract and as such, no 'special relationship'

20

sufficient to justify a claim of negligent misrepresentation exists and the claim is dismissed");
Spencer v. Green, 42 A.D.3d 521, 522, 842 N.Y.S.2d 445, 447 (2d Dep't 2007) (real property
vendor's complaint "which omitted any allegations that they had a confidential or fiduciary
relationship with the buyer defendants, did not even state a cause of action for fraud predicated
on an act of concealment"); United Safety of Am., Inc. v. Consol. Edison Co. of N.Y., Inc., 213
A.D.2d 283, 286, 623 N.Y.S.2d 591, 593 (1st Dep't 1995 (dismissing negligent
misrepresentation and fraud claims where there was "no relationship between plaintiff and
[defendant], let alone a 'special one'").

        The Complaint is devoid of any allegation regarding a prior or existing relationship
between the parties that might have given rise to a special relationship of trust and confidence.
Even a cursory review of the Complaint reveals that plaintiffs never had any contact with Safrin
at all, let alone contact that would give rise to a special or fiduciary relationship.  See SC ¶ 33;
United Safety of Am., Inc., 213 A.D.2d  at 286, 623 N.Y.S.2d at 593.  Plaintiffs are hard-pressed
to plead that even a garden variety business relationship existed between Amusement and Safrin,
but such an allegation would, in any event, be insufficient.  See Holloway v. King, 361 F. Supp.
2d 351, 360 (S.D.N.Y. 2005) (Kaplan, J), aff'd, 161 Fed. Appx. 122 (2d Cir. Dec. 30, 2005) ("A
conventional business relationship, without more, does not become a fiduciary relationship by
mere allegation").  Plaintiffs' feeble attempt to allege a "duty to disclose" based on their belief
that defendants and plaintiffs "*were to be* business partners together" (SC ¶¶190, 197) (emphasis
added) only serves to highlight the lack of any special relationship with Safrin.

        Since plaintiffs have alleged only an *expectation* of a partnership with the LLC, the
pleadings merely "illustrate that the parties were engaged in a conventional business
relationship."  See N. Am. Knitting, 2000 WL 1290608, at *4, 5 (where plaintiffs failed to plead
facts establishing the existence of a partnership, plaintiffs alleged only "facts that indicate that
the parties were engaged in a typical business relationship").  As plaintiffs have failed to make
any allegations of any relationship with Safrin, let alone a confidential or fiduciary one, these

claims are inadequate as a matter of law. Accordingly, plaintiffs' fraudulent nondisclosure and negligent misrepresentation claims (Counts 17, 18, and 20-22) must be dismissed.

**B.    Plaintiffs' Breach of Fiduciary Duty Claim Fails As A Matter Of Law**

The elements of a breach of fiduciary duty are: (1) a breach by a fiduciary in its obligations to another; (2) defendant's knowing participation in the breach, and (3) damages as a result of the breach. Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770(SAS), 2003 WL 1858153, at *4 (S.D.N.Y. Apr. 10, 2003). Plaintiffs' breach of fiduciary duty claim (Count 27) fails as a matter of law because plaintiffs do not properly allege that Safrin owed them (or breached) any fiduciary duty. In any event, the breach of fiduciary claim is merely a legally impermissible restatement of their breach of contract claims.

**1.    Plaintiffs Fail To Allege That A Fiduciary Relationship Existed**

"In order to pursue a breach of fiduciary duty claim, there must be a fiduciary relationship between the parties." Maalouf, 2003 WL 1858153, at *4. Allegations of a conventional business relationship -- or allegations that amount to nothing more than such a garden-variety commercial relationship -- are not enough.[9] See Holloway, 361 F. Supp. 2d at 361 (dismissing breach of fiduciary duty claim; "conclusory allegations of a 'special relationship' . . . [did] not transform an ordinary commercial relationship into a fiduciary relationship" between boxer's managers and promoters who had an agreement to share revenues); Maalouf, 2003 WL 1858153, at *5 (dismissing breach of fiduciary claim because "there can be no fiduciary relationship" between two parties "to a garden variety business transaction"); SNS Bank, N.V., 7 A.D.3d at 355, 777 N.Y.S.2d at 65 (affirming dismissal of

---

[9] As this Court has explained:

> Under New York law, a fiduciary relationship exists from the assumption of control and responsibility, and is founded upon trust reposed by one party in the integrity and fidelity of another. A fiduciary relationship cannot arise between parties to an arms length commercial transaction absent extraordinary circumstances.

Holloway, 361 F. Supp. 2d at 360 (dismissing breach of fiduciary duty claim); N. Am. Knitting Mills, Inc, 2000 WL 1290608, at *4 ("A fiduciary relationship exists under New York law when one [person] is under a duty to give advice for the benefit of another upon matters within the scope of the relation") (citation omitted).

breach of fiduciary duty claim where parties to a subscription agreement "merely had an arm's length business relationship").

Here, and as set forth *supra*, Point IV.A., the Complaint is bereft of any allegation of a fiduciary relationship with Safrin.  As such, Count 27 must be dismissed.

### 2.    Plaintiffs Do Not Adequately Allege The Breach Of Any Fiduciary Duty

Even if plaintiffs could allege that Safrin owed them a fiduciary duty with respect to the transaction at issue (and they cannot), plaintiffs' claim would still fail as a matter of law because they have not alleged any conduct on the part of Safrin that would constitute an actionable breach.  Instead, plaintiffs merely allege that Friedman made purported promises, misrepresentations and/or omissions.  As set forth <u>supra</u> pp. 9-11 and Point II, they do not allege that Friedman had any authority to bind Safrin.  As such, plaintiffs' breach of fiduciary duty against Safrin fails for this additional reason.

### 3.    Plaintiffs' Breach Of Fiduciary Duty Claim Fails Because It Arises Out Of The Same Facts As Plaintiffs' Breach Of Contract Claims

In any event, plaintiffs' breach of fiduciary duty claim merely repackages the breach of contract claims set forth in Counts 8, 9, 11, and 12.  "Where a tort claim is 'merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract,' the claim is barred as redundant."  <u>Metro. W. Asset Mgmt, LLC v. Magnus Funding, Ltd.</u>, No. 03 Civ. 5539(NRB), 2004 WL 1444868, at *8 (S.D.N.Y. June 25, 2004) (dismissing breach of fiduciary claim as legally insufficient where it arose out of the same facts as plaintiffs' breach of contract claim) (quoting <u>Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.</u>, 521 N.Y.S.2d 653, 656-57, 70 N.Y.2d 382, 389 (1987) (citations omitted).

Here, even accepting plaintiffs' allegations as true, plaintiffs have failed to allege that Stern and Safrin breached any duty to plaintiff other than that which was purportedly created by the alleged contracts at issue.  In fact, the only allegation asserted by plaintiffs in connection with their breach of fiduciary duty claim is that defendants Stern and Safrin "did not exercise the care required of them in that they took Amusement's money without providing Amusement with any

of the benefits promised to them as investors." (SC ¶ 259.) Stated differently, this allegation asserts that plaintiffs did not get the benefits they purportedly bargained for in the alleged contracts. Compare ¶259, with plaintiffs' breach of contract claims in Counts 8 and 9 ("since Amusement provided a $13 million contribution to enable First Republic LLC's acquisition of the property portfolio . . . [it] was entitled to receive a 50% ownership in the property . . ." (SC ¶¶ 116, 122)), and with the breach of contract claims in Counts 11 and 12 ("since Amusement provided a $13 million investment and contribution to enable First Republic LLC's acquisition of the property portfolio. . . Amusement would receive 100% ownership of the property portfolio . . ." (SC ¶¶ 136, 144)).

As plaintiffs fail to allege any act or omission not based on the alleged requirements of the LOI and July 11 counteroffer, the breach of fiduciary duty claim must be dismissed.

## POINT V:

### PLAINTIFFS FAIL TO PLEAD THE ELEMENTS, OR MEET THE PLEADING REQUIREMENTS FOR FRAUD-BASED CLAIMS

Although plaintiffs' claims against Safrin fail because the Complaint does not allege that Friedman had authority to act for him, their fraud-based claims should also be dismissed because of other fundamental pleading deficiencies. Specifically: (i) plaintiffs fail to allege fraud with the requisite particularity; (ii) plaintiffs' negligent misrepresentation and fraud claims in Counts 19 and 20 fail because they have not alleged any purported misrepresentations made *to plaintiffs* upon which *plaintiffs* relied; (iii) plaintiffs cannot state a cognizable claim based on contingent promises of future conduct, since promises of future conduct are not actionable as negligent or fraudulent misrepresentations; and (iv) plaintiffs do not – and cannot -- allege justifiable reliance.

A.   **Plaintiffs Fail To Plead Their Fraud-Based Claims (Counts 15, 17-25, 27)
     With The Requisite Level of Particularity Because They Do Not Identify Which
     Defendant Made Any Of The Purported Misrepresentations**

Assuming plaintiffs can escape the pleading straightjacket into which they have placed themselves (i.e. by alleging that all communications occurred through Friedman) and argue that

24

they have alleged direct representations made by Safrin, their fraud-based claims against Safrin would fail because they do not meet the heightened pleading requirements set forth in Fed. R. Civ. P. 9(b).  See Fed. R. Civ. P. 9(b); Concorde Funds, Inv. v. Value Line, Inc., No. 04 Civ. 9932(NRB), 2006 WL 522466, at *5 n.8 (S.D.N.Y Mar. 2, 2006) ("Rule 9(b) requires that a plaintiff set forth the circumstances suggesting fraud with particularity in order 'to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'") (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir.1995)).[10]  Such a complaint must: 1) specify the statements that the plaintiff contends were fraudulent; 2) identify the speaker; 3) state when and where the statements were made, and 4) explain why the statements were fraudulent.  See Apace Commc'ns v. Burke, 522 F. Supp. 2d 509, 515 (W.D.N.Y. 2007) (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)).

---

[10] "These heightened pleading requirements are applicable to any claim that 'sounds in fraud,' regardless of whether fraud is an element of the claim." Matsumura, 2008 WL 282021, at*4 (quoting Rombach v. Chang, 355 F.3d 164, 166, 170 (2d Cir.2004)). Thus, "courts in the Second Circuit have applied Rule 9(b) to any cause of action that bears a close legal relationship to fraud or mistake," including negligent misrepresentation and constructive fraud "as well as to individual claims that, as pleaded, are predicated on allegations of fraud", such as  breach of fiduciary duty.  Id.; see In re Parmalat, 501 F. Supp. 2d at 573 ("9(b) requires allegations of fraud and breach of fiduciary duty consisting of fraud by a fiduciary to be stated with particularity"); Apace, 522 F. Supp. 2d at 519 ("Rule 9(b)'s heightened pleading standards apply to breach of fiduciary duty claims where the breach is premised on the defendant's fraudulent conduct . . . .") (citations omitted).  Courts have also applied Rule 9(b) to conversion and conspiracy claims predicated on fraud.  See Goddard v. Citibank, NA, No. 04CV5317 (NGG)(LB), 2006 WL 842925, at *7-8 (E.D.N.Y. Mar. 27, 2006) (dismissing conversion claim predicated on fraud allegations for failure to meet the standards of Rule 9(b)); Spira v. Curtin, No. 97 CIV. 2637(TPG), 2001 WL 611386, at *3-4 (S.D.N.Y. June 5, 2001) (dismissing complaint pursuant to Rule 9(b) and applying Rule 9(b) to conspiracy, conversion, and breach of fiduciary duty claims resting on allegations of fraud); Daly v. Castro Llanes, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (dismissing conversion claim against bank based on allegation of fraudulent taking for failure to meet the pleading requirements of Rule 9(b)); Filler v. Hanvit Bank, Nos. 01 Civ. 9510, 02 Civ. 8251(MGC), 2003 WL 22110773, at *2-4 (S.D.N.Y. Sept. 12, 2003) (dismissing common law conspiracy claim pursuant to Rule 9(b)). Here, plaintiffs have done little more than repackage their fraud claims as a number of other counts.  First, they repackage their fraud claims in Count 17, 19, and 21 as alternative negligent misrepresentation claims (Counts 18, 20, 22), see SC ¶¶ 195, 207, 224, specifically incorporating by reference the preceding paragraphs relating to the fraud claims, and realleging the same grounds for the negligent misrepresentation claims.  Second, the conversion claim (Count 24) is a virtual restatement of the fraud and misrepresentation allegations set forth in Counts 19 and 20 and, is, in any event, explicitly premised on fraud -- a purported "false representation" or "lie[ ]."  (SC ¶¶ 236-37, 240.)  Third, the "Conspiracy to Commit Conversion and Fraud" claim (Count 25) is also premised on a conclusory allegation of a conspiracy to "defraud and convert."  (SC ¶¶ 244-45.)  Finally, the breach of fiduciary duty claim (Count 27) also "sounds in fraud;" plaintiffs allege that "defendants acted with oppression, malice and fraud" in taking plaintiffs' monetary investment without providing Amusement any of the benefits purportedly promised to it as an investor. Relabeling counts does not relieve plaintiffs of the heightened pleading requirements of Rule 9(b), which apply with equal force to Counts 15, 17-25, and 27.

Rule 9(b) is not satisfied by a complaint "in which defendants are clumped together in vague allegations." Ellison v. Am. Image Motor Co., 36 F. Supp. 2d 628, 640 (S.D.N.Y. 1999). Where, as here, multiple defendants are alleged to have committed fraud, "a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant." Id. Failure to do so warrants dismissal. See id., at 640-41 (dismissing fraud claims pursuant to Rule 9(b) where the complained failed to "separate these defendants [three individuals and one law firm] with specific allegations of wrongdoing as to each one of them"); Druyan v. Jagger, 508 F. Supp. 2d 228, 242 (S.D.N.Y. 2007) (granting motion to dismiss where "[p]laintiff fail[ed] to allege specifically what each defendant did in furtherance of the fraudulent scheme"); Apace, 522 F. Supp. 2d at 516-17 (dismissing claims where plaintiff failed to "attribute specific false statements to specific individual defendants").

The Complaint here does exactly what Rule 9(b) prohibits and should be dismissed as a result. All of plaintiffs' fraud, negligent misrepresentation, breach of fiduciary duty, conversion and conspiracy claims simply amalgamate the defendants together, without either identifying which defendant or entity made the purported statements or describing specifically each defendant's alleged participation in the so-called fraud.[11] See Apace, 522 F. Supp. 2d at 517 ("Rather than attribute specific false statements to specific individual defendants, the complaint typically alleges that multiple defendants (whether identified by name or simply as 'these defendants')"); Druyan, 508 F. Supp. 2d at 242 ("alleg[ing] that 'defendants' did everything . . . makes it nearly impossible for the court to discern which of the defendants . . . are responsible for making the alleged misrepresentations"); Ellison, 36 F. Supp. 2d at 641 (because plaintiff did not "separate" the defendants -- three individuals and one entity – "the complaint [did] not pass muster under Rule 9(b)."); Filler, 2003 WL 22110773, at *3 (dismissing conspiracy and aiding

---

[11] Plaintiffs allege "group" misrepresentations or fraudulent conduct by either "*Stern and Safrin*" or "*these defendants*" (see, e.g., Count 15 at ¶¶ 167, 168, 169, 172; Count 17 at ¶¶ 184, 185, 188, 192; Count 18 at ¶¶ 195-196; Count 19 at ¶¶ 202-205; Count 20 at ¶¶ 207-208, 210-212; Count 24 at ¶¶236-238; and Count 27 at ¶¶259-260) (emphasis added), or "*Stern, Safrin and First Republic LLC*" (see, e.g., Count 21 at ¶¶ 215-219, 221-222; Count 22 at ¶¶ 224-225, 227; Count 23 at ¶¶229, 233-234) (emphasis added), or "*Stern, Safrin, Frenkel and Land Escrow*" (see Count 25 at ¶¶243, 245-47) (emphasis added).

abetting fraud claims pursuant to Rule 9(b) where complaints failed to "make allegations with respect to each defendant" and otherwise failed to provide the "'who, where and when' required by Rule 9(b)"). Moreover, plaintiffs only conclusorily allege a "conspiracy to defraud" -- literally, simply by concluding it occurred. (SC ¶¶244-245.) But "[r]hetoric is not a substitute for specificity." Filler, 2003 WL 22110773, at *3.

This pleading deficiency is particularly inexcusable, where as here, most of the alleged statements were purportedly made to the plaintiffs themselves; plaintiffs are presumably in as good a position as anyone to recall the identity of the maker of the statements. Concorde Funds, Inc., 2006 WL 522466, at *5 n.8 ("plaintiff is in as good a position as the defendants are to recall the speakers, dates, and content of the alleged misrepresentations"); Apace, 522 F. Supp. 2d at 518 ("Those statements, if they were in fact made, would presumably be at least as well known to plaintiffs as to defendants").

Accordingly, because plaintiffs impermissibly attribute all alleged representations made and fraudulent conduct committed by Friedman to collective groupings of defendants, their fraud-based claims must be dismissed under Rule 9(b).

**B.    Plaintiffs' Failure to Allege Any Misrepresentations Purportedly Made To Plaintiffs Upon Which They Relied Mandates Dismissal of Counts 19 and 20**

Plaintiffs cannot maintain a common-law fraud claim based on misrepresentations purportedly made to a third party and relied upon only by that third party. See Barth v. Bd. of Managers of CBJE Condo., 17 Misc.3d 1121(A), 2007 WL 3167254, at *6 (Sup Ct. N.Y. Co. Oct. 1, 2007) ("as defendants aptly indicate, a cause of action for fraud is not stated because the representations of which plaintiffs complain were made to third parties and not to them, and those representations were relied upon by those third parties and not by plaintiffs") (citing Escoett & Co. v. Alexander & Alexander, Inc., 31 A.D.2d 791, 296 N.Y.S.2d 929 (1st Dep't 1969)); Abbatiello v. Monsanto Co., 522 F. Supp. 2d 524, 534 (S.D.N.Y. 2007) (dismissing employees' fraud claim based on misrepresentations or omissions made by defendant Monsanto to defendant GE "because New York law requires that the plaintiffs themselves be misled by the

alleged misrepresentation or omission"); Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 425 F. Supp. 2d 458, 474 (S.D.N.Y. 2006) (dismissing fraud claim where "[p]laintiffs d[id] not allege any false statements made to them, directly or indirectly, upon which they relied"); City of N.Y. v. Cyco.net, Inc., 383 F. Supp. 2d 526, 564-66 (S.D.N.Y. 2005) ("Unlike a RICO cause of action, Plaintiff in a common law fraud cause of action, cannot rely on the reliance of a third party"; held, fraud claim dismissed).

In Counts 19 and 20, plaintiffs allege that "Stern and Safrin" either falsely or negligently misrepresented *to Frenkel*, *Land Escrow* and non-party *Steven Alevy* that a final payment and security agreement had been reached and that "thus it was now permitted for Land Escrow and Frenkel to release Amusement's escrowed $13 million to Stern and Safrin," thus damaging Amusement in the amount of $13 million.  (¶¶ 202, 204, 207, 210, 212).  Notably missing is any allegation that defendant Safrin made any representation, fraudulent or otherwise, to plaintiffs, upon which plaintiffs relied.[12]  In fact, plaintiffs do not allege that they relied to their detriment on these purported representations.  They allege, rather, that defendants *Land Escrow and Frenkel* acted "in reliance upon" these purported misrepresentations.  (¶¶203, 211).  This basic pleading deficiency is fatal to plaintiffs' claims.  See Arnold Chevrolet LLC v. Tribune Co., No. 04-CV-3097 (DRH)(WDW), 2007 WL 2743490 (E.D.N.Y. Sept. 17, 2007) ("there are no allegations tying these representations to Plaintiffs [and] [i]n that vein, there are no allegations that Plaintiffs relied").  Therefore, Counts 19 and 20 must be dismissed.

**C.    Plaintiffs' Allegations Of A "False Promise" Are Not Actionable As Fraud**

Count 23 alleges a "false promise" to "deliver a partnership agreement" or to "draft and provide replacement or additional ownership and security agreements post-closing." (SC ¶ 229). Plaintiffs claim that defendants ultimately failed to provide such agreements after the closing, and thereby committed fraud.  However, promises of future conduct are not actionable as

---

[12] Plaintiffs' negligent misrepresentation claim in Count 20 is based on the same allegations set forth in Count 19. Reliance is an essential element of both fraud and negligent misrepresentation under New York law.  See Lawrence v. Sofamor, S.N.C., No. 95-CV-1507, 1999 WL 592689, at *5 (N.D.N.Y. Aug. 2 1999).  As such, plaintiffs' failure to allege that they relied on any purported misrepresentations in Counts 19 and 20 is fatal to both claims.

negligent misrepresentations or fraud.[13] Brinsights, 2008 WL 216969, at *8; U.S. W. Fin. Servs., Inc. v. Tollman, 786 F. Supp. 333, 344 (S.D.N.Y. 1992) (dismissing counterclaim alleging that U.S. West negligently represented that it would extend the financing necessary to complete the buy-out; "No action for negligent misrepresentation lies where the alleged misrepresentation is promissory rather than factual"); Matsumura, 2008 WL 282021, at * 5 (dismissing fraud claims based on "merely predictive, forward-looking statements regarding [defendant company]'s intentions"); Sheth v. N.Y. Life Ins. Co., 273 A.D.2d 72, 74, 709 N.Y.S.2d 74, 75 (1st Dep't 2000) ("The purported misrepresentations relied upon by plaintiffs may not form the basis of a claim for fraudulent and/or negligent misrepresentation since they are conclusory and/or constitute mere puffery, opinions of value or future expectations").  Rather, "the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition."  Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20-21 (2d Cir. 2000).

>      Accordingly, Count 23 fails to state a claim for fraud.

**D.      The Fraudulent Inducement Claim (Count 15) Fails To Allege A Representation That Was False Or Misleading When Made, And Any Assertion Otherwise Is Negated By The Facts As Pled**

>      The conclusory (and hopelessly convoluted) fraud in the inducement theory asserted in Count 15 not only fails to satisfy any of the requirements of Rule 9(b), but also fails to allege that Safrin made a single representation of material fact that was false or misleading at the time it was made.  See Matsumura, 2008 WL 282021, at * 5 (dismissing fraudulent inducement claims where plaintiffs "utterly failed to meet the burden of pleading specific facts to support their

---

[13] Not only is Count 23 an inactionable promise of a future act, but, as alleged, it is a contingent promise that may or may not turn out to be false.  According to the Complaint:  "In the event that . . . assignments of LLC membership interests and First Republic LLC's grant deeds are invalid and void and/or do not provide Amusement with its contractually promised 50% ownership interest in the property portfolio . . . *then* these defendants' promise to provide Amusement with replacement or additional ownership and security agreements after July 12, 2007 was false and known by defendants to be false."  (SC ¶ 231) (emphasis added).  Count 23 thus fails even to allege that the purported promise is in fact "false", just that it might turn out to be false.  If a claim based on a promise of a future act is not actionable as fraud, it follows *a fortiori* that a *contingent* promise of a future act is similarly not actionable.

assertion that the statements were false or misleading when made"). As such, Count 15 must be dismissed.

In Count 15, plaintiffs allege that on June 29, Safrin and Stern, *through Friedman*, represented that the entire $13 million was necessary for completion of the property portfolio purchase when they "knew on that same day that they only needed about $9 million." (SC ¶168). But the facts pled (and incorporated by reference into this Count) actually establish the very opposite. Specifically, paragraphs 38-39 allege that defendants did not even obtain a reduction of the purchase price to less than $13 million until ***July 2*** at the earliest, days <u>after</u> First Republic Corp. and Amusement executed the LOI and Amusement wired the $13 million. Thus, by plaintiffs' own admission, the alleged June 29, 2007 "promise[] by email, through Friedman" to Allen Alevy that "the entire $13 million contribution was necessary" (SC ¶167) could not have been false when made. And if this is not confusing enough, after incorporating their allegations in Count 15 by reference, plaintiffs allege in Count 16 (their breach of contract claim) that *plaintiffs themselves knew* on June 29 that less than $13 million was necessary (even though they already alleged that defendants themselves did not purportedly know this until sometime on or after July 2nd) (SC ¶176).

As plaintiffs' fraudulent inducement claim set forth in Count 15 fails to allege a representation that was false when made, is inconsistent with the breach of contract claim set forth in Count 16, and is inconsistent with the factual allegations set forth in the body of the Complaint, it fails to state a claim for fraud.

## E.    Plaintiffs Do Not – And Cannot – Allege Justifiable Reliance

A plaintiff must prove reasonable reliance in order to recover on a claim for fraud or negligent misrepresentation. <u>See</u> <u>Matsumura</u>, 2008 WL 282021, at * 8. In assessing the reasonableness of a plaintiff's alleged reliance, courts "consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." <u>Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.</u>, 343 F.3d 189, 195 (2d Cir. 2003) (affirming dismissal of claims based on

misrepresentations for failure to allege reasonable reliance). Moreover, where plaintiffs are "sophisticated parties and the statement related to a business transaction memorialized in a contract, New York courts are reluctant to find reliance on oral communications to be reasonable." Matsumura, 2008 WL 282021, at * 8.

Here, all of plaintiffs' fraud and negligent misrepresentation theories fail as a matter of law because the Complaint does not -- and cannot -- allege that plaintiffs, who were represented by their own counsel (SC ¶¶ 45, 62, 65, 66, 67) in this complex transaction (a $13 million investment in 11 shopping malls valued at $190 million), justifiably relied on any of the alleged misrepresentations.

### 1.    Plaintiffs Cannot Justifiably Rely On Statements Of Opposing Counsel

The Complaint does not – and cannot – allege that plaintiffs, who were represented by their own counsel, justifiably relied on any alleged statements of Friedman (purportedly on Safrin's behalf) where Friedman, as alleged, was believed to be opposing counsel in this ordinary business transaction.[14] See, e.g., I.L.G.W.U. Nat'l Ret. Fund v. Cuddlecoat, Inc., No. 01 Civ. 4019(BSJ), 2004 WL 444071, at *3 (S.D.N.Y. Mar. 11, 2004) ("[I]t is a well-settled principle that neither a party nor his attorney may justifiably rely on the legal opinion or conclusions of his or her adversary's counsel.") (quoting Aglira v. Julien & Schlesinger, P.C., 214 A.D.2d 178, 185, 631 N.Y.S.2d 816, 820 (1st Dep't 1995)); Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993) ("[I]t is unreasonable for one to rely on the advice of adversary's counsel…when both parties are aware that adverse interests are being pursued"); Matsumura, 2008 WL 282021 at * 9 (decision to rely on opposing counsel's oral representations with respect to his interpretation of the agreement or defendant's performance under that contract was unreasonable, particularly where plaintiffs retained their own attorney).[15] Plaintiffs' failure to allege justifiable reliance is fatal to their fraud in the inducement claim as a matter of New York law.

---

[14] Plaintiffs allege that all of the negotiations at issue occurred through Friedman. See SC ¶32; supra, pp. 9-11.

[15] That Friedman may have represented plaintiffs in other matters does not alter this result. See Matsumura, 2008 WL 282021, at *9 ("fact that [attorney] had a pre-existing attorney-client relationship with the plaintiffs on several

**2.     Plaintiffs' Decision To Proceed With The Transaction After They Requested, But Were Denied, The Citibank Loan Documents And Underlying LLC Documents, Precludes A Finding of Justifiable Reliance As A Matter Of Law**

Counts 17, 18, 21, and 22 allege that defendants concealed the Citibank loan documents and underlying LLC documents while at the same time alleging that these documents, had they been provided, would have revealed to be false defendants' purported representations regarding the ability to refinance and the validity of the LLC assignments. Plaintiffs contend that had they known the information contained in these documents, they would not have provided the $13 million in the first place or would have pulled the $13 million out of escrow prior to July 12. Plaintiffs further claim that they requested these documents but did not receive them.

New York courts have repeatedly concluded that reasonable reliance was lacking where a party "failed to review available records or secure available documentation which would have otherwise armed it with the truth." Waksman v. Cohen, No. 00 Civ. 9005(WK), 2002 WL 31466417, at *6 (S.D.N.Y. Nov. 4, 2002). Under New York law:

> where ... a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation . . . he may truly be said to have willingly assumed the business risk that the facts may not be as represented. Succinctly put, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament.

Emergent Capital, 343 F.3d at 195 (quoting Rodas v. Manitaras, 159 A.D.2d 341, 343, 552 N.Y.S.2d 618, 620 (1st Dep't 1990) (affirming dismissal of misrepresentation claims where investor did not reasonably rely on corporations misrepresentations regarding the size of its investment in another company).

By their own allegations, plaintiffs were represented by counsel in this complex transaction, negotiated a $13 million investment, and wire transferred the $13 million without

---

ancillary matters while the negotiations with Benihana were ongoing does little to mitigate the circumstances surrounding the sale that negate the reasonableness of their reliance").

ever seeing the Citibank loan documents that they claim to have asked for. Under the circumstances, their decision to rely blindly on Friedman's or any of the defendants' purported representations regarding the ability to refinance or the validity of the LLC assignments, rather than demanding these admittedly material documents as a precondition to any contract, is unreasonable as a matter of law. Accord, id. at 342, 552 N.Y.S.2d at 620 ("[p]laintiffs could have easily protected themselves by insisting on an examination of the books as a condition of closing").

### POINT VI:

### PLAINTIFFS' CONVERSION CLAIM IS IMPLAUSIBLE UNDER THE ALLEGED FACTS

Plaintiffs restate their fraud claims (Counts 19 and 20) as a conversion claim against Safrin and Stern, claiming that they obtained the escrowed $13 million by fraudulently representing to Steven Alevy, Frenkel and Land Escrow that a final and agreed ownership and security arrangement had been reached. By plaintiffs' own allegations, this was impossible.[16]

Nowhere in Complaint is there any suggestion that Safrin had any authority to direct release of the escrow funds, or even that a final deal could procure release of the escrow. (In fact, plaintiffs proclaim that consummation of a final deal was not the key to release of the escrow (SC ¶236)). Plaintiffs allege that at one point, Friedman had this authority (SC ¶153), but that they subsequently rescinded this authority in writing so that only a written authorization from their counsel (Allen Sragow) or Amusement's sole shareholder (Allen Alevy) could effectuate a release. (SC ¶¶51, 153, 236.) Thus, plaintiffs fail to plausibly assert a conversion claim against Safrin. Where the pleadings fail to "suppl[y] factual allegations sufficient to raise a right to relief above the speculative level," the claim must be dismissed. See In Re Parmalat, 501 F. Supp. 2d at 577.

---

[16] Indeed, plaintiffs allege that the condition precedent to release of the $13 million in escrow was permission from Allen Alevy or Sragow. SC ¶236; see SC ¶51 ("Amusement also directly instructed Land Escrow and Frenkel to not release Amusement's funds *without written authorization* from Sragow & Sragow") (emphasis added); and SC ¶153 ("only Allen Sragow or Allen Alevy could authorize Frenkel and Land Escrow to release Amusement's funds").

## POINT VII

## INCORPORATION OF CERTAIN LEGAL ARGUMENTS OF CODEFENDANTS

Defendant Safrin hereby incorporates by reference the legal arguments set forth in Points I, II, and VII-IX of Co-defendants Stern, First Republic LLC, Frenkel and Land Escrow's memorandum of law in support of their motion to dismiss the Complaint.

## CONCLUSION

For the foregoing reasons, plaintiffs' claims against Safrin should be dismissed with prejudice and without leave to replead.

Dated: New York, New York
       February 27, 2008

FLEMMING ZULACK WILLIAMSON
    ZAUDERER LLP

By:_____/s/_____
    Jonathan D. Lupkin (JL-0792)

One Liberty Plaza
New York, New York  10006
Tel: (212) 412-9500
Fax: (212) 964-9200
Email: jlupkin@fzwz.com

*Attorneys for Defendant Joshua Safrin*