UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AMUSEMENT INDUSTRY, INC., dba WESTLAND
INDUSTRIES; PRATICAL FINANCE CO., INC.,    :

                          Plaintiffs,    :

             -against-    :    07 CIV. 11586(LAK)(GWG)

MOSES STERN, aka MARK STERN,    :
JOSHUA SAFRIN,
FIRST REPUBLIC GROUP REALTY, LLC,    :
EPHRAIM FRENKEL,
LAND TITLE ASSOCIATES ESCROW    :

                   Defendants.    :
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION BY DEFENDANTS MOSES STERN,
FIRST REPUBLIC GROUP REALTY, LLC, EPHRAIM FRENKEL
AND LAND TITLE ASSOCIATES ESCROW
TO DISMISS THE COMPLAINT**

**HOFFINGER STERN & ROSS LLP
ATTORNEYS FOR THE ABOVE NAMED DEFENDANTS
150 EAST 58TH STREET-19TH FLOOR
NEW YORK, NEW YORK 10155
(212)421-4000**

Table of Contents

Page

Table of Authorities................................................................... i-iv

RELIEF REQUESTED.......................................................... 1

NATURE OF THE ACTION.................................................... 1

THE PARTIES/NON PARTIES IDENTIFIED IN THE COMPLAINT;
THE FAILURE TO NAME AN INDISPENSABLE PARTY.................... 2

THE BASIC ALLEGATIONS SET FORTH IN THE COMPLAINT FAIL TO
SUPPORT A COGNIZABLE THEORY OF LAW.............................3

A.     Primary Financing for the Purchase of the Property Portfolio
        Obtained from Citigroup.......................................................3

B.     The June 29, 2007 LOI; The LOI is Not A Binding Agreement..............6

C.     The $13,000,000 Promissory Note and Loan Documents.................. 9

D.     Amusement Claims a Contract Exists – Though Not Signed
        by Any Party to Be Charged  -- and Juxtaposed to this Mystical
        Contract Existence, then States it Made a July 11, 2007
        Counter Offer Thereby Vitiating the Alleged LOI "Contract"............9

ARGUMENT
THE LEGAL STANDARD.................................................................11

POINT I
THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE
ALLEGED INHERENTLY CONTRADICTORY FACTS AND ADMISSIONS
INTO ALL CLAIMS..................................................................12

POINT II
THE FIRST THROUGH SIXTH, THE EIGHTH THROUGH
TWELFTH AND THE SIXTEENTH CLAIMS MUST BE DISMISSED
AS THE ALLEGED CONTRACTS WHICH ARE THE CONDITION
PRECEDENT TO ESTABLISHING THESE CLAIMS ARE
WHOLLY UNENFORCEABLE AND DO NOT MEET THE
REQUIREMENTS OF THE STATUTE OF FRAUDS................................14

**POINT III**
**THE BREACH OF CONTRACT CLAIMS MUST ALSO BE**
**DISMISSED AGAINST STERN BECAUSE THERE IS NO PRIVITY**
**OF CONTRACT**.................................................................................18

A.      **The Complaint Fails to Allege that Stern Was Ever a Party**
**to Any of the Purportedly Unilaterally Created Breached**
**Contracts**..........................................................................................18

B.      **Stern, as an Individual, Cannot Be Held Individually**
**Liable for Contracts Allegedly Entered into by a Limited Liability**
**Company**............................................................................................19


**POINT IV:**
**PLAINTIFFS' CLAIMS FOR FRAUDULENT CONCEALMENT,**
**NEGLIGENT MISREPRESENTATION AND BREACH OF FIDUCIARY**
**DUTY MUST BE DISMISSED**..............................................................20

A.      **Plaintiffs' Fraudulent Concealment and Negligent Misrepresentation Claims**
**Must Be Dismissed for Failure to Allege a Confidential or Fiduciary**
**Relationship with Stern, Which Relationship Cannot Be Alleged**.........20

B.      **Plaintiffs' Breach of Fiduciary Duty Claim Fails as a Matter**
**of Law**...............................................................................................22

1.      **Plaintiffs Fail to Allege That a Fiduciary Relationship Existed**............22

2.      **Plaintiffs Do Not Adequately Allege the Breach of Any Fiduciary Duty**..23

3.      **Plaintiffs' Breach of Fiduciary Duty Claim Fails Because It Arises Out**
**of the Same Facts as Plaintiffs' Breach of Contract Claims**................23


**POINT V:**
**THE COMPLAINT FAILS TO MEET THE PLEADING**
**REQUIREMENTS FOR FRAUD-BASED CLAIMS**................................24

A.      **Plaintiffs' Failure to Allege Any Misrepresentations Purportedly**
**Made to them Mandates Dismissal of Claims 19 and 20**.....................24

B.      **Plaintiffs Fail to Plead Their Fraud-Based Claims (Claims 15, 17, 20-23, 27)**
**with the Required Particularity**..........................................................26

C.      **Plaintiffs' "False Promise" Allegations Are Not Actionable**
**as Fraud**............................................................................................27

D.      The Fraudulent Inducement Claim (Claim 15) Fails to
        Allege a Representation that Was False or Misleading when Made,
        and Any Assertion Otherwise Is Negated by the Facts as Pled............28

E.      Plaintiffs Do Not – and Cannot – Allege Justifiable Reliance...............29

F.      Plaintiffs Cannot Justifiably Rely On Statements Of Opposing Counsel.29

G.      Plaintiffs' Decision to Proceed with the Transaction after They
        Requested, But Were Denied, the Citibank Loan Documents and
        Underlying LLC Documents, Precludes a Finding of Justifiable Reliance
        as a Matter of Law.................................................................30

**POINT VI**
**THE THIRTEENTH AND FOURTEENTH CLAIMS AGAINST FRENKEL AND**
**LAND ESCROW MUST BE DISMISSED, AS INCLUDING ADMISSIONS**
**CONTAINED IN THE COMPLAINT WHICH DEFEAT THEM**..................32

**POINT VII**
**THE CONVERSION CLAIM MUST BE DISMISSED**
**FOR FAILURE TO STATE A CLAIM AND**
**AS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIMS**...............33

**POINT VIII**
**THE TWENTY-FIFTH CLAIM FOR CONSPIRACY DOES NOT PLEAD A**
**COGNIZABLE CLAIM**..............................................................34

**POINT IX**
**THE TWENTY-SIXTH CLAIM FOR UNJUST ENRICHMENT SHOULD BE**
**DISMISSED BECAUSE IT IS DUPLICATIVE OF THE ALLEGED BREACH**
**OF CONTRACT CLAIMS**..........................................................35

**CONCLUSION**.....................................................................35

## TABLE OF AUTHORITIES

**Page**

### Federal Cases

Acito v. IMCERA Group, Inc., 47 F. 3d 47, 51-52 (2d Cir. 1995)..................... 26

Apace Communications, Ltd. v. Burke, 522 F. Supp.2d 509 (W.D.N.Y. 2007)...... 26

Arnold Chevrolet LLC v. Tribune Co., 2007 WL 2743490 (E.D.N.Y. 2007)......  25

Bell Atlantic v. Twombly, _ U.S. _ , 127 S.Ct. 1955 (2007).......................... 11

Brinsights, LLC v. Charming Shoppes of Delaware, Inc., 2008 WL 216969 (S.D.N.Y.
Jan. 16, 2008)............................................................................ 21, 27

Druyan v. Jagger, 508 F. Supp. 2d 228 (S.D.N.Y 2007).............................  26

Ellis v. American Image Motor Co., 36 F. Supp. 2d 628 (S.D.N.Y. 1999).........  26

Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc., 343 F.3d
189 (2d Cir. 2003)..............…......................................................  29

Holloway v. King, 361 F.Supp.2d 351 (S.D.N.Y. 2005), aff'd,
161 Fed. Appx. 122(2d Cir. Dec. 30, 2005)..........................................  22

Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 20-21 (2d Cir. 2000)..  27

I.L.G.W.U. Nat'l Ret. Fund v. Cuddlecoat, Inc., No. 01 Civ. 4019, 2004 U.S. dist
lexis 3764 (S.D.N.Y. Mar. 11, 2004)..................................................  30

In Re Wells, 296 B.R. 728, 731-732 (Bkrtcy. E.D.Va. 2003)........................  16

Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . ..  11

Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993)...........................  30

Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir 2006).........................  26

Livent, Inc., 151 F. Supp. 2d 371, 407 (S.D.N.Y., 2001)......... . . . . . . . . . . . . . .  13

Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770 (SAS), 2003 WL 1858153
(S.D.N.Y. Apr. 10, 2003)................................................................  22

Matsumura v. Benihana Nat'l Corp., No. 06 Civ. 7609 (NRB),
2008 WL 282021 (S.D.N.Y. Jan. 25, 2008).............................. 12, 27, 28, 29, 30

McCann, Inc. v. Di Lido Beach Resort, Ltd et al, 318 B.R. 276, 288-289
(Bktcy. Ct., S.D.N.Y., 2004).... . . . . . . . . . . . . . . . . . . . . . . . . . ..... ............... 13, 14

Metropolitan West Asset Magmt, LLC v. Magnus Funding, Ltd., No. 03 Civ.
5539(NRB), 2004 WL 1444868 (S.D.N.Y. June 25, 2004)........................ 23

North Am. Knitting Mills, Inc. v Int'l Women's Apparel, Inc., No. 99 Civ.
4643 (LAP), 2000 WL 1290608 (S.D.N.Y. Sept. 12, 2000)....................... 21

Pacific Carleton Dev. Corp. v. 752 Pacific, LLC, 17 Misc.3d 1102(A),
2007 WL 2781874 (Sup Ct. Kings Co. Sept. 19 2007)........................... 18, 19

Parmalat Sec. Litig., 501 F. Supp.2d 560 (S.D.N.Y. 2007)........................ 12

Petrello v. White, 412 F. Supp. 2d 215 (E.D.N.Y 2006)........................... 30

Quebecor World (USA), Inc. v. Harsha Associs., LLC, et.al., 455 F. Supp. 2d 236
(W.D.N.Y. 2006)......................................................................... 19

Success Universal Ltd. v. CWJ Int'l Trading, Inc., No. 95 Civ 10210 (DLC), 1996 WL
535541 (S.D.N.Y. Sept. 20, 1996).................................................. 20, 21

Waksman v. Cohen, 2002 WL 31466417 (S.D.N.Y. Nov. 4, 2002)................. 31

US West Fin. Servs., Inc. v. Tollman, 786 F. Supp. 333 (S.D.N.Y., 1992)......... 27

## State Cases

Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.S.2d 546 (1986)... 34

Anostario v. Vicinanzo, 59 N.Y.2d 662, 450 N.E.2d 215 N.Y.S.2d 409 (1983)... 16,17

Benedict Realty Co. v. City of New York, 45 A.D.2d 713,
846 N.Y.S.2d 294 (2nd Dept. 2007)................................................. . . 16

Bridgeview Development Corp. v. Hooda Realty, Inc., 145 A.D.2d 457,
535 N.Y.S.2d 418 (2nd Dept. 1988)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cooper, Bamundo, Hecht & Longworth, LLP v. Kuczinski, 14 A.D.3d 644 ,
789 N.Y.S.2d 508 (2d Dept. 2005).................................................. 35

Eurycleia Partners, LP v. Seward & Kissel, LLP, ---N.Y.S.2d---, 46 A.D.3d 400 (1ˢᵗ Dept 2007).................................................................................................................... 25

Holman v. Childersburg Corporation, Inc., 352 So.2d 691 (Ala. 2002)............... 16

Glatzer v. Scappatura, 99 A.D.2d 505, 99 A.D.2d 505, 470 N.Y.S.2d 675 (2d Dept 1984)............................................................................................... 24

Korea First Bank v. Noah Enterprises, 12 A.D.2d, 321, 787 N.Y.S.2d 2 (1ˢᵗ Dept. 2004)......................................................................................... 21

Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Grp., PLC, 93 N.Y.2d 229, 689 NYS2d 674 NE2d 953 (1999)............................. . . . . . . . . . . 15

National Westminster Bank USA v. Weksel, 124 A.D.2d 144,511 N.Y.S.2d 626 (1ˢᵗ Dept 2007)......................................................................................... 16

Pappas v. Passias, 271 A.D.2d 420, 707 N.Y.S.2d 178 (2d Dept. 2000)................. 34

Payne v. Warren, 282 Ga. App. 524, 639 S.E. 2d 528 (Ga. App. 2006)................... 16

Pickelsimer v. Pickelsimer, 257 N.C. 696, 127 S.E.2d 557 (North Carolina 1962)...... 16

PKO Television, LTD. v. Time Life Films, Inc., 169 A.D.2d 582(1ˢᵗ Dept.).............. 35

Read v. Henzel, 67 A.D.2d 186, 415 N.Y.S.2d 520 (4ᵗʰ Dept. 1979)....................... 14

Rentz v. Grant, 934 So.2d 368, 3 (Ala. 2006)................................................. 16

Rodas v. Manitaras, 159 A.D.2d 341, 552 N.Y.S.2d 618 (1ˢᵗ Dept. 1990)................ 31

Salvatore v. Kumar, 45 A.D.3d 560, 845 N.Y.S.2d 384 (2d Dept. 2007)................. 34

Sheth v. New York Life Ins. Co., 273 A.D.2d 72, 709 N.Y.S.2d 74 (1ˢᵗ Dept. 2000).... 27

SNS Bank, N.A. v. Citibank, N.A., 7 A.D.3d 352, 777 N.Y.S.2d 62 (1ˢᵗ Dept. 2004) ............................................................................. 20, 22

St. Paul's Realty Corp. v. Huan Jen Chin, 133 A.D.2d 450, 519 N.Y.S.2d 568 (2ⁿᵈ Dept. 1987)............. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Thomas v. Hobbs, 2005 WL 1653947 (Del. Super. Ct. Apr. 27, 2005)................ 19

United Safety of Am., Inc. v. Consol. Edison Co. of New York, Inc., 213 A.D.2d 283,623 N.Y.S.2d 591 (1ˢᵗ Dept 1995)......................................... 21

iii

<u>U.S. Fire Ins. Co. v. Am. Home Ins. Co.</u>, 19 A.D.3d 191,
796 N.Y.S.2d 603 (1st Dept. 2005).......................................................... 18

<u>Willmott v. Giarraputo</u>, 5.N.Y.250, 184 N.Y.S.2d 97 (1959)........... ........... 14

<u>85 Fifth Ave. 4th Floor, LLC v. I.A.Selig, LLC</u>, 45 A.D.3d 439,
845 N.Y.S.2d 274 (1st Dept. 2007)........................................................ 34

**<u>Federal Statutes</u>**

Federal Rules of Civil Procedure, Rule 12(b)(6)....................................... 1

Federal Rules of Civil Procedure, Rule 9(b)....................................... 26, 27, 28

**<u>State Statutes</u>**

Ala. Code § 8-9-2.................................................................... 15

Ga. Code § 13-5-30, 13-5-31 (3)...................................................... 15

N.C. GS § 122-2..................................................................... 15

N.Y. Gen. Oblg. Law §5-703 (4) (2006)............................................... 15

Va. ST § 11-1, § 11-2 (6)............................................................ 15

## RELIEF REQUESTED

This memorandum of law is submitted in support of the motion by defendants Moses Stern a/k/a Mark Stern ("Stern"), First Republic Group Realty LLC ("First Republic"), Ephraim Frenkel ("Frenkel") and Land Title Associates Escrow ("Land Escrow") seeking an order pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6) dismissing plaintiffs' complaint (the "Complaint"). These Defendants adopt the legal arguments of co-defendant Joshua Safrin ("Safrin") to the extent they support dismissal of the Complaint against these Defendants.

## NATURE OF THE ACTION

The blunderbuss 86 page Complaint is clearly a pleading in search of any viable theory of law, desperately seeking to obtain relief the plaintiffs are not entitled to -- while tortuously reciting 27 claims to support any "stab in the dark" unsupportable theory of law. Most importantly, reducing the truly unwieldy 262 paragraph Complaint to its most common denominator, this "action" stems from a series of events purportedly relating to the last hour alternate efforts of First Republic to possibly obtain additional or mezzanine financing representing less than 7% of the appraised value of the properties being purchased (the "Partial Financing" or the "PF").

One, only one, of the Partial Financing possibilities was to occur through the efforts of an indispensable party to this action, a broker, Steven Alevy ("Alevy"). Indeed, Alevy advised he had the ability to deliver the needed PF without any problem; and, ultimately from plaintiff Amusement Industry, Inc., dba Westland Industries ("Amusement") (the "Alevy Alternate PF").

The Alevy Alternate PF related to First Republic's proposed purchase of certain real estate consisting of shopping centers located in southeastern United States from non-

party Colonial Realty Limited Partnership ("Colonial Realty") (the "Acquisition"). Thus, this action is nothing more than a garden variety alleged non-payment action stemming from Alevy's broker efforts to obtain Partial Financing for First Republic – and, then, the incestuous placement of the Partial Financing by Alevy with his father's company, Amusement – a party with whom the Defendants never met or spoke at anytime prior to the commencement of the within action.

Defendants acknowledge, most begrudgingly for purposes of this motion to dismiss (the "Motion"), they are constrained to accept the allegations as pleaded as correct and accurate – however, Defendants are compelled to note, the facts and events are wholly disparate from those set forth in the Complaint. Nonetheless, assuming, arguendo, the allegations as pleaded, Amusement's efforts to set forth claims (27 in number) against the various Defendants must fail and the Complaint dismissed.

### THE PARTIES/NON PARTIES IDENTIFIED IN THE COMPLAINT; THE FAILURE TO NAME AN INDISPENSABLE PARTY

Amusement and plaintiff Practical Finance Co., Inc. ("Practical Finance") are California corporations, the latter being the alleged assignee of Amusement to certain promissory note(s) purportedly held by Amusement (Compl ¶¶1, 2).

The Complaint names as defendants Stern and Safrin, New York State residents, First Republic, a Delaware limited liability company, Land Escrow, a New York limited liability company and the individual Frenkel, a New York State resident and the sole member of Land Escrow (Compl ¶¶ 3, 4, 5, 13, 14).

A number of non-parties are identified in the Complaint; to wit: Stephen Friedman ("Friedman"), a lifelong friend of the Alevy family, an attorney portrayed as allegedly representing Stern, Safrin (each of whom deny such allegations) and First

Republic in their supposed negotiations with Amusement and who somehow owed a fiduciary duty to Amusement at the same time; and, the absolutely indispensable party, Alevy of Bankers Capital, LLC, a mortgage broker, who allegedly obtained the Alevy Alternate PF and the son of Amusement's sole shareholder.

The Complaint also seems to allege an ownership and management structure of First Republic consisting of non-party limited liability companies including FRGR Managing Member, LLC ("FRGR Managing Member"), FRGR Holdings, LLC ("FRGR Holdings"), MS Colonial, LLC ("MS Colonial") and JSAE Colonial, LLC ("JSAE Colonial").

## THE BASIC ALLEGATIONS SET FORTH IN THE COMPLAINT FAIL TO SUPPORT A COGNIZABLE THEORY OF LAW

On or about April 20, 2007, non-party First Republic Group Corp., as buyer, entered into a certain written contract to purchase (the "Contract") from Colonial Realty, as seller, various shopping centers in the southeastern United States (previously referred to as the "Acquisition"). The Contract was amended and assigned, inter alia, to First Republic (Compl ¶24). The Acquisition, as provided for in the Contract, closed on or about July 12, 2007 (Compl ¶25). As a result of the closing, First Republic became the owner of eleven properties consisting of shopping malls located in North Carolina, Georgia, Virginia and Alabama, collectively referred to herein as the "Property Portfolio" (Compl ¶24).

**A.    Primary Financing for the Purchase of the Property Portfolio Obtained from Citigroup**

The Complaint states primary financing (truly meaning more than 90% of the financing) for the Acquisition was obtained from non-party Citigroup Global Markets

Realty Corp. ("Citigroup") (Compl ¶25). To give effect to the primary financing, First Republic executed a Loan Agreement with Citigroup for $111,150,000.00 and non-party FRGR Managing, the sole member of First Republic, executed a Mezzanine Loan Agreement with Citigroup for $15,000,000.00 for a total debt upon or affecting the Property Portfolio in the amount of $126,150,000.00 (Compl ¶¶25, 26).

It is then alleged in the Complaint (¶¶5,9,10,11,12) Stern and Safrin somehow owned, operated and managed First Republic through other limited liability companies and *knew* in early June of 2007 the funds to be obtained from Citigroup were insufficient for First Republic to purchase the Property Portfolio (Compl ¶28). These two individuals somehow approached *mortgage broker Alevy (an indispensable but not named party - for obvious familial reasons)* of Bankers Capital, LLC ("Bankers Capital") and an attorney named Friedman in an attempt to obtain additional funding (the Alevy Alternate PF) to complete the Acquisition (Compl ¶¶28-31).

The Complaint further alleges (i) *Alevy* and Friedman -- notably, not any of the Defendants -- presented an investment opportunity to Amusement to enable First Republic to close the Acquisition and (ii) Friedman represented the interests of Stern and Safrin, individually, as well as First Republic in that transaction. It is alleged, upon information and belief, Friedman had the full authority to somehow speak on their individual and collective behalf and on behalf of First Republic (Compl ¶32). (It should be noted neither Stern nor Safrin ever owned the Property Portfolio in their individual names or in any individual capacity – and the Complaint makes no allegations in this regard while alleging Alevy/Friedman somehow represented them in their individual capacity when attempting to obtain financing.)

Tellingly, the Complaint discloses *Alevy* is the son of Allen Alevy, the apparent sole shareholder and officer of Amusement, and specifically alleges Freidman, who was purportedly now representing First Republic, had previously represented Amusement, Allen Alevy and Steven Alevy in various unspecified legal matters. The Complaint further claims Friedman, although somehow representing Stern and Safrin as well as First Republic in "their" negotiations with Amusement, was at the same time a "fiduciary" to Amusement and occupied a position of trust with Amusement (Compl ¶¶32, 33). The Complaint is silent as to what Stern and Safrin's individual negotiations were with Amusement or how they individually engaged in such negotiations – the Complaint is likewise silent with respect to how First Republic engaged in such negotiations with Amusement. In fact, it appears from the Complaint all negotiations involved only Freidman, Alevy and Amusement.

It is alleged the investment opportunity presented to Amusement included the statement Stern and Safrin (but, mysteriously, not First Republic – the actual Property Portfolio acquirer) had a profitable opportunity to acquire the Property Portfolio, which they would lose, if they did not move quickly and needed an additional $13,000,000.00 to close (Compl ¶34). The Complaint is devoid of any allegation that Stern or Safrin ever owned the Property Portfolio or that Partial Financing was not available from any another source, such as the Seller of the Property Portfolio.

It is also alleged the Portfolio Property **was appraised at $190,000,000** but was capable of being purchased for $131,000,000 – yielding $59,000,000 in immediate total equity. The Complaint initially alleges if Amusement contributed $13,000,000 towards the Acquisition, Amusement could participate in ownership of the Property Portfolio

(Compl ¶35).   The Property Portfolio would be refinanced in 60 days enabling Amusement to receive back its principal investment, $13,000,000, from equity of the Property Portfolio and magically retain a 50% partnership interest in a partnership that owned the Portfolio Property having an appraised value of $190,000,000 merely by loaning 13 million dollars (Compl ¶34) -- without claiming the Seller was unprepared to provide funding to First Republic, if needed.

Curiously, the Complaint fails to support these allegations with a binding document executed by First Republic, the party to be charged and owner of the Portfolio Property, to support the retention of any partnership interest – let alone the incredible sum of 50% of a 190 million dollar appraised portfolio as a result of Partial Financing (i.e., a loan of 13 million dollars).

**B.**      **The June 29, 2007 LOI; The LOI is Not A Binding Agreement**

According to the Complaint, on June 29, 2007 a written Letter of Intent ("LOI") was drafted by indispensable party Alevy of Bankers Capital (notably, not Amusement) and signed by Stern, notably *on behalf of* First Republic (Exhibit 2 to the Complaint). Purposely, the Complaint only partly quotes from this document, omitting material portions.   Although the document is referred to as an "LOI" in the Complaint, the document itself is characterized as a Letter of Understanding[1](Compl ¶35).

Of paramount interest, the LOI specifically and clearly indicates it is ***not an agreement***, but rather a **proposal requiring continued negotiations to reach an agreement**. Notably, the LOI identifies as its parties First Republic (not any individuals) and Westland Industries.  Significantly, the very first sentence of the very first paragraph of the LOI states, in pertinent part, the following:

---

[1] To eliminate any confusion the Letter of Understanding will be referred to herein as the LOI.

> This letter will set out the terms of a proposed financing of a Retail Portfolio of the eleven properties in the Southeast ("Southeast")... (emphasis supplied). (Exhibit 2 to Complaint)

The next paragraph confirms the preliminary nature of the relationship:

> On or before June 29, 2007 (Closing), which date can be extended with mutual agreement of First Republic and Westland, Westland and First Republic would enter into an agreement whereby Westland will provide $13,000,000.00 for a 50% equity and voting interest in Southeast and a 12% annual preferred return payable on a monthly basis. 7% paid current (set at 165 basis points over the 30 day libor rate) and the balance will accrue if necessary (emphasis supplied). (Exhibit 2 to Complaint)

The fourth paragraph of the LOI reinforces its **preliminary nature**:

> Parties agree to work in good faith to finalize these agreements within 7 days. Until such agreements are finalized 100% of the equity and voting interest in Southeast shall be held in escrow for the benefit of Westland (emphasis supplied). (Exhibit 2 to Complaint)

Finally, then, the coup de grace, anticipating there might be disagreements or misunderstandings as to the proposal contained in the LOI, the next to last paragraph provides the following:

> "Any disagreements or misunderstandings shall be brought to Stephen Friedman, Esq. for resolution." (Exhibit 2 to Complaint)

On June 29, 2007, the same day the LOI was allegedly signed by Stern on behalf of First Republic[2] (not on behalf of any individuals), Amusement wired $13,000,000 into the Land Escrow account. Amusement then magically concludes (Compl ¶ 36) a contract had been formed once the wire transfer occurred:

---

[2] The LOI does not indicate whether it was signed on behalf of non party First Republic Group Corp. or Defendant First Republic Group Realty LLC.

> Later that day of June 29, 2007, Amusement wired $13,000,000 to Land Escrow Account #5514007904 and thus, by such performance, a contract formed among Amusement and the borrowers and the soliciting parties, Stern and Safrin. (Emphasis supplied.)

In essence, Amusement has alleged a binding contract had been formed by its act of wiring $13,000,000 into the Land Escrow account and thereby creatively obtained a 50% interest in the Property Portfolio (valued at $190,000,000), and then has the temerity to state the $13,000,000 should be repaid with interest. Inexplicably, Stern and Safrin were now somehow personally responsible for the funds to be borrowed by First Republic.

Notwithstanding the conclusory allegation "a contract had been formed," the Complaint admits the opposite when it alleges subsequent to June 29, 2007, during the seven day period referred to in the LOI when the parties agreed to work in good faith "to finalize these agreements," Amusement drafted and forwarded three partnership agreements to First Republic **for its consideration "to complete a transaction."** Significantly, the Complaint fails to note these "draft" partnership agreements were never signed (Compl ¶¶43, 44).

Furthermore, after the seven day period lapsed without any agreement being "finalized" or signed, Amusement acknowledges, on July 6, 2007, **it continued in its negotiations** and communicated through Friedman to suggest a new Property Portfolio ownership structure, inquiring whether its $13,000,000 contribution to the purchase should be a **_loan_** to Stern or to the portfolio owning entity, and to note, based upon figures provided by Stern and Safrin, there should be $4,000,000 in reserve after the

closing and not to authorize the release of the $13,000,000 held in escrow (Compl ¶44). This allegation contradicts the claim the LOI was a contract formed on June 29, 2007.

**C.**      **The $13,000,000 Promissory Note and Loan Documents**.

It is alleged on July 11, 2007 documents were provided to Amusement through Friedman which included a Promissory Note for $13,000,000 (Exhibit 6 to Complaint), signed by Stern in his individual capacity, an Escrow Agreement, Assignments of Stern's and Safrin's LLC Membership interests in First Republic and the underlying LLC ownership structure allegedly signed by Stern and Safrin (Exhibit 5 to Complaint), and eleven grant deeds constituting the Property Portfolio signed by Stern on behalf of First Republic (Exhibit 1 to Complaint) (collectively, these documents are referred to herein as the "Escrow Documents"). The Escrow Documents were **to be held in escrow** by Friedman. Copies of these documents are attached as exhibits to the Complaint, with a notable exception: the Escrow Agreement which supposedly provided for the terms and conditions of the escrow and the possible release of the Escrow Documents (Compl ¶52).

**D.**      **Amusement Claims a Contract Exists – Though Not Signed by Any Party to Be Charged  -- and Juxtaposed to this Mystical Contract Existence, then States it Made a July 11, 2007 Counter Offer Thereby Vitiating the Alleged LOI "Contract"**.

According to the Complaint, on July 11, 2007 Amusement responded to the receipt of the Escrow Documents **with a counter offer**. Amusement unilaterally declared there would be no loan and the $13,000,000 would be treated as a direct investment with a preferred right to return of this investment within 45 days. In addition, it stated, again unilaterally, the repayment right would be increased to $15,000,000 because of the anticipated $4,000,000 remaining in reserve after closing (Compl ¶53).

Amusement also demanded conveyance to itself of 100% of the Property Portfolio, deeds to all eleven properties, together with conveyance of the LLC membership interests held by Stern and Safrin under Amusement's counter offer. Stern and Safrin would have a limited option to repurchase the grant deeds and a 50% ownership interest by providing the partnership agreement within 45 days (Compl ¶53).

Amusement admitted it sent its "counter offer" through Friedman (the "July 11 Counter Offer"), because it disagreed with the characterization of the transaction among the parties reflected in the Escrow Documents as a loan, as well as aspects of the drafting documents. According to the Complaint, Friedman allegedly responded to Amusement, it "should not worry as Amusement now owned the whole thing" and the next day was provided a $15,000,000 promissory note signed by Stern in his individual capacity (Compl ¶¶54, 55, 56).

It is then alleged on July 12, 2007 the $13,000,000 escrow funds were released and used in violation of specific instructions given to Friedman on July 9, 2007. Significantly and tellingly, it is acknowledged Land Escrow had **obtained both verbal and written authorization**, from both indispensable party **Alevy** and Friedman, **to release the escrow** (Compl ¶¶57, 58, 61-63).

Then, somehow, relying upon the July 11 Counter Offer and the authorized release of the escrow funds, Amusement (again unilaterally) alleges the far-fetched legal conclusion that now a **second disparate contract** had been formed, stating:

> As a result of this taking of Amusement's funds, Stern, Safrin and First Republic, LLC, on July 12, 2007, after and without objection to Amusement's counter offer of July 11, 2007, a contract formed between Amusement and Stern, Safrin and First Republic LLC that within 45 days Amusement would have the partnership. (Compl ¶59)

In essence, Amusement has now vitiated the supposed first LOI "contract," alleging a second disparate and distinct "contract" had been formed by which it had unilaterally obtained a 100% interest in the Property Portfolio (valued at $190,000,000) simply by First Republic's use of the $13,000,000 with a preferred right of return of $15,000,000 within 45 days and a limited option for First Republic to repurchase the grant deeds and 50% ownership interest by providing the partnership agreement within 45 days.

Thereafter, it is alleged, on November 15, 2007 -- four months later -- Amusement sent a written demand for the release of the Escrow Documents, based upon the alleged default under the terms of an unspecified agreement referred to as "under the terms of the contribution and/or loan and/or promissory note(s)" (emphasis supplied). The "promissory note(s)" are the only documents identified by Amusement. Critically, there is no mention or reference to the two contracts which are now alleged to have somehow been formed in connection with the LOI and the July 11 Counter Offer (Exhibit 4 to Complaint).

## ARGUMENT

### THE LEGAL STANDARD

In connection with FRCP 12(b)(6)and 9(b), the Supreme Court in Bell Atlantic v. Twombly, __U.S.__, 127 S.Ct 1955 (2007) endorsed "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F. 3d 143,158 (2d Cir. 2007).

As this Court has stated, "[n]ow, in order '[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" In re Parmalat Sec. Litig., 501 F. Supp.2d 560, 572 (S.D.N.Y. 2007). While the Court is obliged to accept, as true, the factual allegations of the Complaint, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" Matsumura v. Benihana Nat'l Corp., No. 06 Civ. 7609(NRB), 2008 WL 282021, at *4 (S.D.N.Y. Jan. 25, 2008) (quoting Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002). This standard clearly mandates the Complaint's dismissal because, among other things, the allegations consist of legal conclusions, contradictory allegations and implausible assertions.

## POINT I
### THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE ALLEGED INHERENTLY CONTRADICTORY FACTS AND ADMISSIONS INTO ALL CLAIMS

A review of the numerous claims evidences a plaintiff in desperate search of a plausible theory. Indeed, Amusement's inconsistent and contradictory factual pleadings repeatedly illustrate the foregoing conclusion, alternatively and inconsistently seeking enforcement of (i) the alleged LOI and/or, (ii) the enforcement of the alleged July 11 Counter Offer and/or, (iii) the $13,000,000 promissory note, and/or, (iv) the $15,000,000 promissory note.

Pleadings which contain alternative claims are permissible under the FRCP -- provided each claim is factually and legally sufficient "standing alone." But, if a claim incorporates inconsistent factual allegations of an alternative claim, the inconsistent factual allegations are treated as binding admissions to defeat the claims which are

inconsistent with those factual allegations, requiring their dismissal. <u>McCann, Inc. v. Di Lido Beach Resort, Ltd et al.</u>, 318 B.R. 276, 288-289 (Bktcy. Ct., S.D.N.Y. 2004); <u>In re Livent, Inc.</u>, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001).

This latter holding is wholly applicable to the Complaint. The Complaint sets forth in its "Statement of Facts" (Compl ¶¶24-69) inconsistent and wholly contradictory factual allegations which are expressly incorporated by reference and serve as a predicate to each of the 27 pleaded claims. As a result, all claims are defeated because they are all inconsistent or contradictory to these factual allegations.

For example, the First Claim (Compl ¶¶70-73) for declaratory relief relies upon the inconsistent and contradictory factual allegations relating to <u>both</u> the LOI <u>and</u> the July 11 Counter Offer. These inconsistent factual allegations must be treated as admissions to defeat claims relating to both alleged contracts because the formation of one is inconsistent and contradictory to the formation of the other. This principle also applies, for example, to the Eighth and Ninth Claims, for breach of contract (Compl ¶¶115-128) in which Amusement again relies on both the inconsistent and contradictory factual allegations relating to the formation of the LOI and the July 11 Counter Offer for the requested relief, and the Eleventh and Twelfth Claims for breach of contract (Compl ¶¶135-150) in which Amusement relies on the July 11 Counter Offer for the requested relief, yet incorporates the inconsistent and contradictory factual allegations relating to the formation of the LOI.

This flaw is further illustrated in the pleading of the Fourth, Fifth and Sixth Claims (Compl ¶¶85-108) where Amusement relies inconsistently on the contradictory allegations relating to the LOI <u>and/or</u> the Escrow Agreement <u>and/or</u> the July 11 Counter

Offer and/or the $13,000,000 Promissory Note and/or the $15,000,000 Promissory Note.
Other examples of this flawed form of pleading can be found in the Thirteenth and
Fourteenth Claims (Compl ¶¶151-165) in which Amusement alleges breach of escrow
contract and breach of fiduciary duty against Frenkel and Land Escrow in releasing the
$13,000,000. Yet Amusement incorporates into these Claims, its admission that both
Steven Alevy and Friedman authorized the release of the escrow (Compl ¶¶57, 58, 61-
63). Further, the Thirteenth and Fourteenth Claims against Land Escrow and Frenkel for
releasing the funds are contradicted by the Nineteenth and Twentieth Claims, alleging
Stern and Safrin fraudulently and negligently induced Land Escrow and Frenkel to
release the funds. These factual admissions also defeat Plaintiffs' Twenty-Fourth Claim
for Conversion (Compl ¶¶235-241), and Twenty-Fifth Claim for Conspiracy to Commit
Conversion (Compl ¶¶242-244).

Accordingly, this inherently inconsistent and contradictory factual pleading,
which the Complaint has incorporated into all of its Claims, requires dismissal of the
Complaint. McCann v. Di Lido Beach Resort, et al., supra .

## POINT II
### THE FIRST THROUGH SIXTH, THE EIGHTH THROUGH TWELFTH AND THE SIXTEENTH CLAIMS MUST BE DISMISSED AS THE ALLEGED CONTRACTS WHICH ARE THE CONDITION PRECEDENT TO ESTABLISHING THESE CLAIMS ARE WHOLLY UNENFORCEABLE AND DO NOT MEET THE REQUIREMENTS OF THE STATUTE OF FRAUDS

It is well settled under New York law that a writing containing all the essential
terms of a complete agreement signed by the party to be charged is required to convey an
estate or interest in real property. Any writing where material elements are left for future
negotiations does not meet this requirement. See New York General Obligations Law, §
5-703; Willmott v. Giarraputo, 5.N.Y.2d.250, 184 N.Y.S2d 97 (1959); Read v. Henzel,

67 A.D.2d 186, 415 N.Y.S.2d 520 (4th Dept. 1979); Bridgeview Development Corp. v. Hooda Realty, Inc., 145 A.D.2d 457, 535 N.Y.S.2d 418 (2nd Dept. 1988); St. Paul's Realty Corp. v. Huan Jen Chin, 133 A.D.2d 450, 519 N.Y.S.2d 568 (2nd Dept. 1987).[3]

Clearly, the LOI described itself as a proposal, and stated the parties agreed "to finalize these agreements within 7 days." Moreover, Amusement does not allege the LOI was a binding contract at the moment it was allegedly signed. Most notably, the Complaint never alleges either the LOI or the disparate and distinct July 11 Counter Offer meets the requirements of the Statute of Frauds. Rather, it argues the so-called partial performance by Amusement of transferring $13,000,000 into the escrow account allegedly formed the LOI contract between Amusement and Stern and Safrin (Compl ¶36) and the partial performance by First Republic in using the $13,000,000 to complete the transaction allegedly formed the second disparate and distinct July 11, 2007 Counter Offer between Amusement, Stern, Safrin and First Republic (Compl ¶59).

The doctrine of partial performance holds an otherwise unenforceable contract for the sale of land may be enforceable in equity if plaintiff has relied on defendant's promise and performed some or all of the oral agreement. N.Y. Gen. Oblg. Law, §5-703(4); Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Grp., PLC, 93 N.Y.2d 229, 235, 689 N.Y.S.2d 674, 711 N.E.2d 953 (1999). Critically, however, to overcome the Statute of Frauds, the performance must be unequivocally referable to the agreement sought to be enforced. See N.Y. Gen. Oblg. Law, § 5-703(4);

---

[3] It is well settled under New York law that a writing is required to convey an estate or interest in real property. See New York General Obligations Law § 5-703. New York law is discussed because New York is the forum state and the state in which the two contracts were allegedly formed. It should be noted that Alabama (Ala. Code § 8-9-2), Virginia (Va. St. § 11-1, § 11-2 (6)), Georgia (Ga. Code § 13-5-30, 13-5-31(3)) and North Carolina (N.C. GS §22-2), where the properties included in the Property Portfolio are located, have similar statutes and require a writing when there is a conveyance of real property or an interest in real property.

Messner Vetere, supra, 93 N.Y.2d at 234, 689 N.Y.S.2d at 678, 711 N.E.2d at 956;

Anostario v. Vicinanzo, 59 N.Y.2d 662, 450 N.E.2d 215, 463 N.Y.S.2d 409 (1983);

Benedict Realty Co. v. City of New York, 45 A.D.2d 713, 846 N.Y.S.2d 294 (2nd Dept.

2007).[4]

In Anostario, supra, plaintiff argued the parties would hold equal shares of a corporation formed to hold title and run the affairs of a seven story building. The defendant, an attorney, would arrange for the purchase and financing of the building and perform legal services for the corporation on a continuing basis. Plaintiff, for his part, was responsible for the overall management of the building.

Prior to the formation of the corporation the parties signed a purchase agreement for the building as co-promoters of a corporation to be formed. Thereafter, both parties signed a bank note for the sum of $37,000.00 which was used for a down payment. This obligation was paid when the defendant secured a bank mortgage. Thereafter, the plaintiff assigned his interest in the purchase contract to the newly formed corporation. Plaintiff argued these facts and documents constituted sufficient performance to remove the alleged agreement from the operation of the Statute of Frauds.

In language which is instructive and fully applicable here, the New York Court of Appeals affirmed the dismissal of the complaint, rejecting plaintiff's argument of partial performance, holding:

> The doctrine of part performance may be invoked only if plaintiff's actions can be characterized as "unequivocally referable" to the agreement

---

[4] See the following cases which discuss the doctrine of partial performance in Alabama, Virginia, and Georgia and which have similar requirements. Rentz v. Grant, 934 So.2d 368, 373-374 (Ala. 2006); Holman v. Childersburg Corporation, Inc., 352 So. 2d 691, 697-699 (Ala. 2002); In Re Wells, 296 B.R. 728, 731-732 (Bkrtcy. E.D.Va. 2003); Payne v. Warren, 282 Ga. App. 524, 639 S.E. 2d 528 (Ga. App 2006). It appears North Carolina does not recognize the doctrine of partial performance to the Statute of Frauds. Pickelsimer v. Pickelsimer, 257 N.C. 696, 698, 127 S.E2d 557, 560 (North Carolina 1962).

alleged. It is not sufficient, as Presiding Justice Mahoney noted in the dissent below (56 A.D.2d 406, 412, 392 N.Y.S 2d 933) that the oral agreement gives significance to plaintiff's actions. <u>Rather, the actions alone must be "unintelligible or at least extraordinary", explainable only with reference to the oral agreement</u> [citations omitted]. <u>Plaintiff's actions, viewed alone, are not "unequivocally referable" to an agreement to convey a one-half interest in defendant's corporation. While the agreement alleged provides a possible motivation for plaintiff's action, the performance is equivocal,</u> for it is as reasonably explained by the possibility of other expectations, such as the receipt of compensation, other than in the form of an equity interest in the corporation. (59 N.Y.2d at 664 [emphases supplied])

Here it is even clearer the alleged performance was not unequivocally referable to either the alleged LOI, or the alleged inconsistent and contradictory July 11 Counter Offer. Performance is reasonably explained by other expectations such as, for example, the fact that the $13,000,000 constituted nothing more than a loan rather than investment for an equity interest in First Republic. In fact, Amusement admitted in the Complaint, First Republic always viewed the $13,000,000 as a <u>loan</u> and not as a purchase of an equity interest (¶ 53a of the Complaint).

Thus, as the alleged performance <u>was not</u> unintelligible and <u>only explainable</u> with reference to either the alleged LOI or the alleged July 11 Counter Offer and <u>was not</u> "unequivocally referable" to either the alleged LOI or the alleged July 11 Counter Offer, these alleged agreements are unenforceable as a matter of law for failing to meet the requirements of the Statute of Frauds. Accordingly, the First through Sixth, Eighth through Twelfth and Sixteenth Claims which are dependent upon either the LOI and/or the July 11 Counter Offer, must be dismissed. <u>Anostario, supra.</u>

## POINT III
## THE BREACH OF CONTRACT CLAIMS MUST ALSO BE DISMISSED AGAINST STERN BECAUSE THERE IS NO PRIVITY OF CONTRACT

The Complaint fails to allege that Stern was ever a party to any of the purportedly breached contracts, and Claims Sixth, Eighth, Ninth, Eleventh, Twelfth and Sixteenth must be dismissed.

### A.    The Complaint Fails to Allege that Stern Was Ever a Party to Any of the Purportedly Unilaterally Created Breached Contracts

The Complaint alleges breaches of the LOI and July 11 Counter Offer against Stern (Claims 6, 8, 9, 11, 12 and 16). But each of these alleged breach of contract claims suffers from the same fundamental flaw: the Complaint does not allege (other than in conclusory fashion) that Stern, individually, was a party to either of them. Absent privity between Stern and Amusement, Amusement cannot look to Stern to recover for any purported breaches. See Pacific Carleton Dev. Corp. v. 752 Pacific, LLC, 17 Misc.3d 1102(A), 2007 WL 2781874, at *4 (Sup Ct. Kings Co. Sept. 19, 2007) (dismissing breach of contract brought against individual who signed agreement on behalf of LLCs for lack of privity because the only parties to the agreement were the tenants and the LLC); U.S. Fire Ins. Co. v. Am. Home Ins. Co., 19 A.D.3d 191, 796 N.Y.S.2d 603 (1st Dep't 2005).

Though Amusement alleges it entered into these contracts with "Stern, Safrin, and First Republic LLC" (see Compl. ¶¶ 102, 116, 136, 144), the **only** plausible parties to the LOI are Amusement and First Republic. Similarly, the purported breach of contract set forth in Claim 16 (Stern and Safrin's alleged failure to retain the $4 million left in reserve after closing) is based on an alleged agreement concerning the terms of the financing of the Property Portfolio purchase by *First Republic*. As Plaintiffs have failed to plausibly

allege Stern is a party to any of the purported "contracts" at issue, the breach of contract claims must be dismissed for failure to state a claim.

**B.    Stern, as an Individual, Cannot Be Held Individually Liable for Contracts Allegedly Entered into by a Limited Liability Company**

Read liberally, it is apparent that, at most, First Republic LLC, as assignee of First Republic Group, Corp., became a party at some point to the alleged agreements with Amusement. Therefore, any breach, if any, committed would have been committed by First Republic LLC, and not those who purported to act on its behalf.

"[I]t is axiomatic that corporations and limited liability companies are artificial persons, and that the individuals who execute instruments on behalf of such entities in their capacity as officers or other duly authorized agents are not personally liable on those instruments." Pacific Carlton Dev. Corp., supra. It is not enough to allege Stern and Safrin were behind the discussions and obligations entered into on behalf First Republic. "[I]f it were, it would defeat one of the beneficial purposes for forming an LLC, that is, to shield its individual members from personal liability for the actions of the LLC." Quebecor World (USA), Inc. v. Harsha Assocs., LLC, et.al., 455 F. Supp. 2d 236 (W.D.N.Y. 2006) (citing N.Y.L.L.C.L. § 609(a)) (granting motion to dismiss breach of contract action against principal of limited liability company, who plaintiffs alleged "was the person who made the decision to terminate the printing contract"); Thomas v. Hobbs, 2005 WL 1653947 (Del. Super. Ct. Apr. 27, 2005) (citing 6 Del C. 18-303) (dismissing sole member of LLC from suit as member "may not be held personally liable for the obligations and possible breach of contract by her limited liability company").

The Complaint makes clear the only plausible parties entering into the financing transaction at issue are Amusement and First Republic Group Corp., and subsequently on

or about July 9, the underlying portfolio purchase transaction with Colonial Realty was assigned by First Republic Group to First Republic. Moreover, the investment opportunity presented by Friedman "in an attempt to obtain additional financing to complete their purchase of the property portfolio" concerned property to be purchased not by Stern and Safrin, as individuals, but by First Republic. A review of those "agreements," attached to the Complaint, reveals they are at most, agreements between plaintiffs and First Republic Group or First Republic – clearly not Stern and Safrin as individuals.

**POINT IV:**
**THE FRAUDULENT CONCEALMENT, NEGLIGENT MISREPRESENTATION**
**AND BREACH OF FIDUCIARY DUTY CLAIMS MUST BE DISMISSED**

Plaintiffs' failure to allege the existence of a special or fiduciary relationship with Stern is fatal to plaintiffs' fraudulent nondisclosure, negligent misrepresentation and breach of fiduciary duty claims. Accordingly, Claims 17, 18, and 20-22 and 27, must be dismissed.

**A.    Plaintiffs' Fraudulent Concealment and Negligent Misrepresentation Claims Must Be Dismissed for Failure to Allege a Confidential or Fiduciary Relationship with Stern, Which Relationship Cannot Be Alleged**

Negligent misrepresentation and fraudulent concealment claims must be founded on a duty arising out of a special or fiduciary relationship. Success Universal Ltd. v. CWJ Int'l Trading, Inc., No. 95 Civ 10210 (DLC), 1996 WL 535541, at *6 (S.D.N.Y Sept. 20, 1996) (under New York law silence alone does not amount to fraudulent concealment absent a confidential or fiduciary relationship between the parties); SNS Bank, N.A. v. Citibank, N.A., 7 A.D.3d 352, 356, 777 N.Y.S.2d 62, 66 (1st Dep't 2004) (when a cause of action is based on a failure to disclose information, that "omission does

not constitute fraud unless there is a fiduciary relationship between the parties"); Brinsights, LLC v. Charming Shoppes of Delaware, Inc., 2008 WL 216969 (S.D.N.Y. Jan. 16, 2008); Korea First Bank v. Noah Enterprises, 12 A.D.3d 321, 323, 787 N.Y.S.2d 2, 3 (1st Dept. 2004).

Negligent misrepresentation and fraudulent concealment claims are routinely dismissed where, as here, plaintiffs fail to make any plausible allegation of a confidential or fiduciary relationship giving rise to a duty to disclose. See e.g., Success Universal Ltd., 1996 WL 535541, at *6 (dismissing fraudulent concealment claims in the absence of "a special or a fiduciary relationship that would give rise to a duty to speak"); North Am. Knitting Mills, Inc., v. Int'l Women's Apparel, Inc., No. 99 Civ. 4643 (LAP), 2000 WL 1290608, at *(S.D.N.Y. Sept. 12, 2000) (dismissing negligent misrepresentation claim based on alleged proposed partnership between garment manufacturer and retailer business partnership where plaintiffs alleged only a "typical business relationship" and "failed to allege facts that would give rise to a claim that the parties had a special relationship"); United Safety of Am., Inc. v. Consol. Edison Co. of New York, Inc., 213 A.D.2d 283, 286, 623 N.Y.S.2d 591, 593 (1st Dep't 1995) (dismissing negligent misrepresentation and fraud claims where there was no relationship between plaintiff and [defendant], let alone a "special one".)

The Complaint does not allege a prior or existing relationship between the parties which might have given rise to a special relationship of trust and confidence. The Complaint reveals that plaintiffs never had any contact with Stern at all, let alone contact that would give rise to a special or fiduciary relationship. See Compl ¶33; United Safety of Am., Inc., 213 A.D.2d at 286, 623 N.Y.S.2d at 593. Plaintiffs' allegation of a "duty to

disclose" based on the allegation that the parties were to be "business partners" demonstrates the lack of any special relationship. Accordingly, plaintiffs' fraudulent nondisclosure and negligent misrepresentation claims (Claims 17, 18, and 20-22) must be dismissed.

**B.     Plaintiffs' Breach of Fiduciary Duty Claim Fails as a Matter of Law**

The elements of a breach of fiduciary duty are: (1) a breach by a fiduciary in its obligations to another; (2) defendant's knowing participation in the breach, and (3) damages as a result of the breach. Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770(SAS), 2003 WL 1858153, at *4 (S.D.N.Y. Apr. 10, 2003). Plaintiffs' breach of fiduciary duty claim (Claim 27) fails as a matter of law because plaintiffs do not properly allege Stern owed them (or breached) any fiduciary duty. In any event, the breach of fiduciary claim is merely a legally impermissible restatement of the breach of contract claims.

**1.     Plaintiffs Fail to Allege That a Fiduciary Relationship Existed**

"In order to pursue a breach of fiduciary duty claim, there must be a fiduciary relationship between the parties." Maalouf, 2003 WL 1858153, at *4. Allegations of a conventional business relationship are not enough. See Holloway v. King, 361 F. Supp.2d 351 (S.D.N.Y. 2005), aff'd, 161 Fed. Appx. 122 (2d Cir. Dec.30, 2005) (dismissing breach of fiduciary duty claim; "conclusory allegations of a 'special relationship'...[did] not transform an ordinary commercial relationship into a fiduciary relationship" between boxer's managers and promoters who had an agreement to share revenues); SNS Bank, supra, 7 A.D.3d at 355, 777 N.Y.S.2d at 65 (1ˢᵗ Dept 2004)

(affirming dismissal of fiduciary duty claim where parties to agreement "merely had an arm's length business relationship").

As previously stated, the Complaint fails to allege a fiduciary relationship with Stern. As such, Claim 27 must be dismissed.

2.      **Plaintiffs Do Not Adequately Allege the Breach of Any Fiduciary Duty**

Even if plaintiffs could allege Stern owed them a fiduciary duty with respect to the transaction at issue, plaintiffs' claim would still fail as a matter of law because they have not alleged any conduct on the part of Stern that would constitute an actionable breach. Instead, plaintiffs merely allege that Friedman, their fiduciary, somehow made purported promises, misrepresentations and/or omissions. As such, plaintiffs' breach of fiduciary duty against Stern fails for this reason as well.

3.      **Plaintiffs' Breach of Fiduciary Duty Claim Fails Because It Arises Out of the Same Facts as Plaintiffs' Breach of Contract Claims**

Plaintiffs' breach of fiduciary duty claim is merely an overly generalized restatement of the breach of contract claims set forth in Claims 6, 8, 9, 11, and 12. "Where a tort claim is 'merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract,' id. at 657, the claim is barred as redundant." Metropolitan West Asset Mgmt, LLC v. Magnus Funding, Ltd., No. 03 Civ. 5539 (NRB), 2004 WL 1444868, at *8 (S.D.N.Y. June 25, 2004) (breach of fiduciary claim was legally insufficient where it arose out of the same facts as breach of contract claim) (quoting Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656-57 (1987) (citations omitted).

Here, even accepting plaintiffs' allegations as true, plaintiffs have not alleged Stern and Safrin breached any duty to Amusement other than that which was purportedly

created by the alleged contracts; indeed they cannot. The only allegation asserted by plaintiffs in connection with their breach of fiduciary duty claim is defendants Stern and Safrin "did not exercise the care required of them in that they took Amusement's money without providing Amusement with any of the benefits promised to them as investors" (Compl ¶259.) This allegation, however, merely asserts Amusement did not secure the benefits they purportedly bargained for in the alleged contracts. As plaintiffs fail to allege any act or omission not based on the alleged requirements of the LOI and July 11 Counter Offer, the breach of fiduciary duty claim must be dismissed as redundant.

**POINT V:**
**THE COMPLAINT FAILS TO MEET THE PLEADING**
**REQUIREMENTS FOR FRAUD-BASED CLAIMS**

The fraud-based claims against Stern should be dismissed because of fundamental pleading deficiencies. Specifically: (i) plaintiffs' negligent misrepresentation and fraud claims in Claims 19 and 20 have not alleged any purported misrepresentations made *to plaintiffs* upon which *plaintiffs* relied; (ii) plaintiffs fail to allege fraud with the requisite particularity; (iii) plaintiffs cannot state a cognizable claim based on contingent promises of future conduct, since promises of future conduct are not actionable as negligent or fraudulent misrepresentations; (iv) plaintiffs do not allege justifiable reliance; and (v) plaintiffs' fraudulent inducement claim (Claim 15) fail because it is a legally impermissible restatement of plaintiffs' breach of contract claims.

**A.    Plaintiffs' Failure to Allege Any Misrepresentations Purportedly Made to them Mandates Dismissal of Claims 19 and 20**

Plaintiffs cannot maintain a fraud or negligent misrepresentation claim based on misrepresentations purportedly made to somebody else and relied upon by somebody else. See Glatzer v. Scappatura, 99 A.D.2d 505, 506, 470 N.Y.S.2D 675, 676 (2d Dep't

1984) (dismissing fraud claim against attorneys alleged to have advised members of a conspiracy who actually made the purportedly fraudulent statements on which plaintiff relied; "The most important deficiency was his failure to allege that the moving defendants made any representation, fraudulent or otherwise, to him"); National Westminster Bank USA v. Weksel, 124 A.D.2d 144, 147, 511 N.Y.S.2d 626,628 (1ˢᵗ Dep't 1987) (cause of action for fraud dismissed where "there is no allegation anywhere in the complaint that the firm made any representation, fraudulent or otherwise, to plaintiff"); Euryclcia Partners, LP v. Seward & Kissel LLP, 46 A.D.3d 400, 849 N.Y.S.2d 510 (1ˢᵗ Dep't 2007) (hedge fund investors failed to plead fraud claim against the fund's outside counsel where plaintiffs "d[id] not allege that [law firm] made any representation, fraudulent or otherwise, to them").

In Claims 19 and 20, plaintiffs allege that "Stern and Safrin" either falsely or negligently misrepresented to Frenkel, Land Escrow and non-party Alevy that a final payment and security agreement had been reached and "thus it was now permitted for Land Escrow and Frenkel to release Amusement's escrowed $13 million to Stern and Safrin," thereby damaging Amusement in the amount of $13 million (¶¶202, 207, 210). Notably absent is any allegation that Safrin or Stern made any representation, fraudulent or otherwise, to plaintiffs. Plaintiffs certainly cannot allege they relied to their detriment upon representations made to someone else, in this instance, Land Escrow and Frankel (Compl ¶211). Plaintiffs' alleged reliance is an essential element of both fraud and negligent misrepresentation. This basic pleading deficiency is fatal to plaintiffs' claims. See Arnold Chevrolet LLC v. Tribune Co., 2007 WL 2743490 (E.D.N.Y. 2007) ("there

are no allegations tying these representations to plaintiffs [and] [i]n that vein, there are no allegations that plaintiffs relied"). Therefore, Claims 19 and 20 must be dismissed.

**B.    Plaintiffs Fail to Plead Their Fraud-Based Claims (Claims 15, 17, 20-23, 27) with the Required Particularity**

These fraud based claims do not meet the pleading requirements of FRCP 9(b) which requires the plaintiffs to plead with particularity "all averments of fraud or mistake." See FRCP 9(b); Acito v. IMCERA Group, Inc., 47 F. 3d 47, 51-52 (2d Cir. 1995). Such a complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state when and where the statements were made, and (4) explain why the statements were fraudulent. Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir 2006).

Rule 9(b) is not satisfied by a complaint "in which defendants are clumped together in vague allegations." Ellison v. American Image Motor Co., 36 F. Supp. 2d 628, 640-41 (S.D.N.Y. 1999). Where, as here, multiple defendants are alleged to have committed fraud, "a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant." Id. Failure to do so warrants dismissal. Ellison, supra, 36 F. Supp.2d at 640-41 (dismissing fraud claims pursuant to Rule 9(b) where the complained failed to "separate these defendants [three individuals and one law firm] with specific allegations or wrongdoing as to each one of them"); Druyan v. Jagger, 508 F. Supp. 2d 228 (S.D.N.Y. 2007) (granting motion to dismiss where "[p]laintiff fail[ed] to allege specifically what each defendant did in furtherance of the fraudulent scheme..."); Apace Communications, Ltd. v. Burke, 522 F. Supp.2d 509, 516, 517 (W.D.N.Y. 2007) (dismissing claims where plaintiff failed to "attribute specific false statements to specific individual defendants").

The Complaint clearly does not comply with Rule 9(b). All of the plaintiffs' fraud, negligent misrepresentation and breach of fiduciary duty claims lump together either "Safrin and Stern" or "Safrin, Stern and First Republic," without identification of which defendant or entity made the purported statements and must be dismissed.

## C.     Plaintiffs' "False Promise" Allegations Are Not Actionable as Fraud

Claim 23 alleges a "false promise" to "deliver a partnership agreement" or to "draft and provide replacement or additional ownership and security agreements post-closing..." (Compl ¶229). Plaintiffs claim defendants ultimately failed to provide such agreements after the closing, and thereby committed fraud. However, promises of future conduct are not actionable as negligent misrepresentations or fraud. Brinsights, LLC, supra, 2008 WL 216969, at *6 (S.D.N.Y.2008); US West Fin. Servs., Inc. v. Tollman, 786 F. Supp. 333, 344 (S.D.N.Y. 1992) (dismissing claim alleging US West negligently represented it would extend the financing necessary to complete buy-out; "No action for negligent misrepresentation lies where the alleged misrepresentation is promissory rather than factual"); Matsumura, supra, 2008 WL 282021 at *5 (dismissing fraud claims based on "merely predictive, forward-looking statements regarding [defendants]'s intentions") Sheth v. New York Life Ins. Co., 273 A.D.2d 72, 74, 709 N.Y.S.2d 74, 75 (1st Dept. 2000) ("The purported misrepresentations relied upon by plaintiffs may not form the basis of a claim for fraudulent and/or negligent misrepresentation since they are conclusory and/or constitute mere puffery, opinions of value or future expectations"). Rather, "the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20-21 (2d Cir. 2000).

Since plaintiffs allege that defendants promised but failed to deliver a partnership agreement, Claim 23 fails to state a claim for fraud.

**D.    The Fraudulent Inducement Claim (Claim 15) Fails to Allege a Representation that Was False or Misleading when Made, and Any Assertion Otherwise Is Negated by the Facts as Pled**

The conclusory fraud in the inducement theory (Claim 15) not only fails to satisfy Rule 9(b), but also fails even to allege Stern made a single representation of material fact that was false or misleading at the time it was made. See Matsumura, 2008 WL 282021, at *5 (dismissing fraudulent inducement claims where plaintiffs "utterly failed to meet the burden of pleading specific facts to support their assertion that the statements were false or misleading when made"). As such, Claim 15 must be dismissed.

In Claim 15, plaintiffs allege on June 29, Safrin and Stern, through Friedman, represented the entire $13 million was necessary for completion of the Property Portfolio purchase when they "knew that same day that they only needed about $9 million" (¶168). But the facts pled actually establish the very opposite. Specifically, plaintiffs allege at ¶¶38-39 defendants did not even obtain a reduction of the purchase price to less than $13 million until *July 2* at the earliest, days after the June 29th LOI and Amusement wired the $13 million. Thus, by plaintiffs' own admission, the alleged June 29, 2007 "promise[]by email, through Friedman" to Allen Alevy that "the entire $13 million contribution was necessary" (¶167) could not have been false when made. As if this is not confusing enough, plaintiffs allege in Claim 16 (their breach of contract claim) that *plaintiffs themselves knew* on June 29 that less than $13 million was necessary (even though they already alleged that defendants themselves did not purportedly know this until sometime on or after July 2nd) (Compl¶176).

As the fraudulent inducement claim (Claim 15) fails to allege a representation that was false when made, is inconsistent with the breach of contract claim set forth in Claim 16, and is inconsistent with the factual allegations set forth in the body of the Complaint, it fails to state a claim for fraud.

**E.    Plaintiffs Do Not – and Cannot – Allege Justifiable Reliance**

A plaintiff must prove reasonable reliance in order to recover on a claim for fraud or negligent misrepresentation. See Matsumura, 2008 WL 282021, at *8.  In assessing the reasonableness of a plaintiff's alleged reliance, courts "consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003) (affirming dismissal of claims based on misrepresentations for failure to allege reasonable reliance).

Here, all of plaintiffs' fraud and negligent misrepresentation theories fail as a matter of law because the Complaint does not – and cannot – allege that plaintiffs, who were represented by their own counsel (Compl ¶¶45, 62, 65, 66, 67) in this complex transaction (purportedly a $13 million investment for an alleged 50% ownership interest and/or a 100% ownership interest in 11 shopping malls valued at $190 million) justifiably relied on any of the alleged misrepresentations.

**F.    Plaintiffs Cannot Justifiably Rely On Statements Of Opposing Counsel**

The Complaint does not – and cannot – allege that plaintiffs, who were represented by their own counsel, justifiably relied on any alleged statements of Friedman (purportedly on Stern's, Safrin's and First Republic's behalf) where Friedman, as alleged, was believed to be opposing counsel in this ordinary business transaction.

See, e.g., I.L.G.W.U. Nat'l Ret. Fund v. Cuddlecoat, Inc., No. 01 Civ. 4019, 2004 U.S. Dist LEXIS 3764, at *9 (S.D.N.Y. Mar.11, 2004) (" 'It is a well-stated principle that neither a party nor his attorney may justifiably rely on the legal opinion or conclusions of his or her adversary's counsel'") (quoting Aligra v. Julien & Schlesinger, P.C., 214 A.D.2d 178, 185, 631 N.Y.S.2d 816 [1st Dep't 1995]); Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993) ("[I]t is unreasonable for one to rely on the advice of adversary counsel... when both parties are aware that adverse interests are being pursued."). Moreover, despite plaintiffs' obfuscations, the Complaint alleges plaintiffs were represented by their own counsel. See, e.g., Compl ¶45, 62,65,66,67; Petrello v. White, 412 F. Supp. 2d 215,227 (E.D.N.Y.2006); Matsumura, 2008 WL 282021 at *9 (reliance on opposing counsel's oral representations regarding his interpretation of the agreement or defendant's performance under that contract was unreasonable, particularly where plaintiffs retained their own attorney). Plaintiffs' failure and inability to allege justifiable reliance is fatal to their fraud in the inducement claim as a matter of law.

### G.    Plaintiffs' Decision to Proceed with the Transaction after They Requested, But Were Denied, the Citibank Loan Documents and Underlying LLC Documents, Precludes a Finding of Justifiable Reliance as a Matter of Law

In Claims 17, 18, 21 and 22, plaintiffs claim defendants concealed the Citibank loan documents and underlying LLC documents while at the same time alleging that these documents, had they been provided, would have revealed as false defendants' purported representations regarding the ability to refinance and the validity of the LLC assignments. Plaintiffs contend had they known the information contained in these documents, they would not have provided the $13 million in the first place or would have

pulled the $13 million out of escrow prior to July 12. Plaintiffs further claim they requested these documents but did not receive them.

New York courts have repeatedly found that reasonable reliance was absent where a party "failed to review available records or secure available documentation which otherwise would have armed it with the truth." Waksman v. Cohen, 2002 WL 31466417, at *6 (S.D.N.Y. Nov. 4, 2002). Under New York law:

> Where... a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation or *inserting appropriate language in the agreement for his protection*, he may truly be said to have willingly assumed the business risk that the facts may not be as represented. Succinctly put, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament.

In this complex transaction, plaintiffs, entrepreneurs, were represented by counsel and negotiating a $13 million investment. Under the circumstances, their decision blindly to rely on Friedman's or any of the Defendants' purported representations regarding the ability to refinance or the validity of the LLC assignments, rather than demanding these documents as a precondition to any contract, is unreasonable as a matter of law. Plaintiffs simply could have demanded to see the Citibank loan documents as a precondition to their initial investment, and, respectively, the underlying LLC documents before deciding to keep the $13 million in escrow. Rodas v. Manitaras, 159 A.D.2d 341, 343, 552 N.Y.S.2d 618 (1st Dept. 1990).

## POINT VI
## THE THIRTEENTH AND FOURTEENTH CLAIMS AGAINST FRENKEL AND LAND ESCROW MUST BE DISMISSED, AS INCLUDING ADMISSIONS CONTAINED IN THE COMPLAINT WHICH DEFEAT THEM

It is admitted by Amusement that Alevy and Friedman each had authorized the release of the escrow.[5]   More importantly, based upon the clear allegations of the Complaint, Amusement "ratified the release" of the escrow by alleging the release of the $13,000,000 and use of it by First Republic LLC formed the alleged contracts.   On November 15, 2007, rather than demanding return of the escrow, Amusement demanded a release of the Escrow Documents because of a purported "...default under the terms of the <u>contribution and/or loan and/or promissory note(s)</u>."

The allegations make clear when Amusement learned on July 15, 2007 that the $13,000,000 held in escrow had been released, Amusement never demanded the return of the escrow from Frenkel or Land Escrow, either orally or in writing.   Amusement, on July 19, 2007 only requested the accrued interest to be wired back to it (Compl ¶ 67). Additionally, the Complaint inconsistently alleges earlier that the use of the $13,000,000 formed one or both of the disparate contracts Amusement now seeks to enforce. [6]

The allegations of the Complaint make clear Amusement ratified and approved the release of the escrow and cannot now assert that the release of the funds was unauthorized or that Frenkel or Land Associates breached any fiduciary duty to it.  (See discussion in Point I and Point IV of this Memorandum of Law.)

---

[5] The Thirteenth Cause of Action alleges breach of the escrow contract against Frenkel and Land Escrow (Complaint ¶¶ 151-156), and the Fourteenth Cause of Action which alleges a breach of fiduciary duty against Frenkel and Land Escrow (Complaint ¶¶ 157-165).  These allegations are inconsistent and contradicted by the allegations of the Complaint as a whole.

[6] A contradictory allegation is made in ¶156 of the Complaint when it is alleged that demand for return of the escrow was made.   However, it is not specified to whom, if any one, the demand was made. Furthermore, the only alleged demand attached to the Complaint demands the escrow documents, not the return of the escrow (Exhibit 4 to the Complaint).

## POINT VII
## THE CONVERSION CLAIM MUST BE DISMISSED
## FOR FAILURE TO STATE A CLAIM AND
## AS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIMS

The Twenty-Fourth Claim against Stern and Safrin individually, purports to allege a claim for conversion. The claim, however, fails to state a claim for several reasons.

The Twenty-Fourth Claim asserts, among other things, the allegations "are irrelevant" and "the condition precedent to release [of the $13,000,000] was not a final deal – it was permission from Alevy or Sragow" (Compl ¶ 236). However, the Complaint also alleges Steven Alevy gave written permission to Frenkel to release the sum (Compl ¶ 63). Thus, with permission having been given, there is no conversion, since it must be based on, among other things, unauthorized possession of specific property. See, e.g., Vieilant Ins. Co. of Am. v. Housing Authority of the City of El Paso, Texas, 87 N.Y.2d 36, 44, 637 NYS2d 342 (1995); Republic of Haiti v. Duvalier, 211 A.D.2d 379, 384, 626 N.Y.S.2d 472 (1ˢᵗ Dept 1995).

Along with the express allegation that a final deal was not the condition precedent to release of the money, the Complaint also irrelevantly alleges there were purported misrepresentations regarding the status of a final deal. But all this is beside the point, since the claim expressly alleges a final deal was not a condition precedent to release of the money.

The claim is deficient in other ways as well. "For an action in conversion to lie when the original possession of the property is lawful, a plaintiff must make a demand for the allegedly converted property and the possessor must refuse." AD Rendon Communications, Inc. v. Lumina Americas, Inc., No. 04-CV-8832 (KMK), 2007 WL 2962591 at *4 (S.D.N.Y. 2007) (citation omitted). While the Complaint conclusorily

claims demand was made to Stern (and Safrin), it does not allege the monies were transferred to them; neither Stern nor Safrin was the "possessor" of the funds. It should also be noted the Complaint alleges following release of the $13,000,000, Amusement sought the "accrued interest" from Frenkel and Land Escrow (not Stern or Safrin) (Compl ¶ 67) – and does not allege the principal sum was demanded. Moreover, Exhibit 4 to the Complaint, a letter dated November 15, 2007, seeks certain documents, but nowhere seeks the return of the principal amount. Thus, the conclusory allegations are also contradicted by the specific allegations.

Beyond the foregoing, it is axiomatic that a conversion claim will be dismissed where, as here, it is duplicative of a breach of contract claim. Id.; see also, CDR Creances S.A. v. Euro-American Lodging Corporation, 40 A.D.3d 421, 837 N.Y.S.2d 609 (1st Dept 2007) (affirming dismissal of conversion and fraud causes of action as duplicative of breach of contract claim). In the case at bar, the conversion claim is duplicative of the breach of contract claims (Claim Nos. 6, 8, 9, 11, 12 and 16). Accordingly, for this reason as well, the conversion claim must be dismissed.

## POINT VIII
### THE TWENTY-FIFTH CLAIM FOR CONSPIRACY DOES NOT PLEAD A COGNIZABLE CLAIM

As to the Twenty-Fifth Cause of Action, "'New York does not recognize a civil conspiracy to commit a tort as an independent cause of action.'" Salvatore v. Kumar, 45 A.D.3d 560, 845 N.Y.S.2d 384 (2d Dept 2007), quoting Pappas v. Passias, 271 A.D.2d 420, 421, 707 N.Y.S.2d 178 (2d Dept 2000); see also, e.g., Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 510 N.Y.S.2d 546 (1986); 85 Fifth Ave. 4th Floor, LLC v. I.A. Selig, LLC, 45 A.D.3d 439, 845 N.Y.S.2d 274 (1st Dept. 2007). Here,

Plaintiffs have asserted (defective) claims for the underlying torts; no cause of action for conspiracy exists, and the claim must be dismissed.

### POINT IX
### THE TWENTY-SIXTH CLAIM FOR UNJUST ENRICHMENT SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE OF THE ALLEGED BREACH OF CONTRACT CLAIMS

Plaintiffs' unjust enrichment cause of action against all Defendants (¶¶ 248-256 of the Complaint) is based upon the same purported wrongdoing as its breach of contract claims and therefore should be dismissed. See Cooper, Bamundo, Hecht & Longworth, LLP v. Kuczinski, 14 A.D.3d 644, 645, 789 N.Y.S.2d 508 (2d Dept. 2005); PKO Television, LTD. v. Time Life Films, Inc., 169 A.D.2d 582, 582-583 (1st Dept.). In both cited cases the Court dismissed the cause of action sounding in unjust enrichment as duplicative to the breach of contract claim. As indicated, the pleadings are duplicative and the unjust enrichment cause of action should be dismissed.

### CONCLUSION

For the reasons stated above this Motion should be granted in all respects.

Dated:  New York, New York
        February 27, 2008

Hoffinger Stern & Ross, LLP
Attorneys for All Defendants (except Joshua Safrin)

By:   Stephen R. Stern, Esq.
      Philip S. Ross, Esq.
      150 East 58th Street, 19th Floor
      New York, New York 10155
      (212) 421-4000