UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMUSEMENT INDUSTRY, INC., a California
corporation, dba WESTLAND INDUSTRIES;
PRACTICAL FINANCE CO., INC., a California
corporation,

Case No.  CV 07-11586 (LAK)

                   Plaintiffs,

      v.

MOSES STERN, an individual aka MARK
STERN; JOSHUA SAFRIN, an individual;
FIRST REPUBLIC GROUP REALTY LLC, a
Delaware limited liability company; EPHRAIM
FRANKEL, an individual; LAND TITLE
ASSOCIATES ESCROW, a New York limited
liability company,

              Defendants.

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT SAFRIN'S MOTION TO DISIMSS

---

PHILIP R. WHITE
MARC D. YOUNGELSON
SILLS CUMMIS & GROSS P.C.
One Rockefeller Plaza
New York, New York 10020
(212) 643-7000

ALLEN P. SRAGOW
SRAGOW & SRAGOW
6665 Long Beach Boulevard, Suite B-22
Long Beach, California 90805
(310) 639-0782
Attorneys for plaintiffs

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT.................................................................................................... 5

I.      THE COMPLAINT SUFFICIENTLY ALLEGES FRIEDMAN'S AUTHORITY
        TO BIND SAFRIN ................................................................................ 6

        A.      Actual Authority ....................................................................... 7

        B.      Apparent Authority .................................................................. 8

        C.      Safrin Retained – and Still Retains – the Benefit of Friedman's Actions ........... 10

II.     THE VARIOUS CAUSES OF ACTION ARE PROPERLY ALLEGED
        AGAINST SAFRIN INDIVIDUALLY.................................................... 11

III.    THE FRAUDULENT CONCEALMENT, NEGLIGENT
        MISREPRESENTATION AND BREACH OF FIDUCIARY DUTY CLAIMS
        ARE PROPERLY ALLEGED.................................................................. 13

        A.      Plaintiffs' Claims Allege Affirmative Misrepresentations, Which Do Not
                Require Allegations of a Special Duty.................................... 13

        B.      Safrin Had a Duty to "Speak Up" As a Result of His Special, Fiduciary
                Relationship With Plaintiffs................................................... 14

                1.      Defendants' Partial Disclosures and Superior Knowledge..................... 14

                2.      Safrin Owed a Fiduciary Duty to Plaintiffs Beyond His Contractual
                        Obligations................................................................... 15

        C.      Plaintiffs' Breach of Fiduciary Duty Claim Does Not Fail As a Matter of
                Law .............................................................................. 16

IV.     THE FRAUD CAUSES OF ACTION ARE SUFFICIENTLY PLEADED .................. 17

        A.      The Complaint Sufficiently Identifies Who Made the Statements:
                Friedman, on Safrin's Behalf................................................ 17

        B.      Causes of Action 19 and 20 Properly Allege Fraud, Even Though
                Representations Are Made to Others. ....................................... 18

        C.      Safrin Had No Intent to Perform His False Promise............................... 18

        D.      Count 15 Properly Alleges A Representation that was False When Made,
                And This Is Not Negated By Other Facts Pleaded. .......................... 19

i

**Table of Contents**
**(continued)**

Page

E.  Safrin Improperly Applies Fraud Pleading Standards to Non-Fraud Causes of Action ............................................................................................... 20

V.  THE COMPLAINT SUFFICIENTLY ALLEGES JUSTIFIABLE RELIANCE ON DEFENDANTS' FRAUDULENT ACTS AND OMISSIONS ................................ 21

A.  Friedman's Representations Were Factual In Nature ......................................... 21

B.  Proceeding Without the Citibank Documents Was Not Unjustifiable As A Matter of Law ............................................................................................... 22

VI.  PLAINTIFFS' CONVERSION CLAIM IS PLEADED PROPERLY ............................ 25

VII.  THE COMPLAINT PASSES THE PLAUSIBILITY TEST ............................................ 26

CONCLUSION ............................................................................................................. 27

## TABLE OF AUTHORITIES

**Page**

CASES

ADP Investor Commun. Servs. v. In House Atty. Servs.,
    390 F.Supp. 2d 212 (E.D.N.Y. 2005) ..................................................................25

Allied Irish Banks v. Bank of America,
    2006 U.S. Dist. LEXIS 4270 (S.D.N.Y. Jan. 31, 2006)....................................... 23-24

Ambra v. Awad,
    847 N.Y.S.2d 900, 2007 N.Y. Misc. LEXIS 5981 (Sup. Ct. Nassau Co. 2007).....................22

Bangkok Crafts Corp. v. Capitolo Di San Piertro In Vaticano,
    2006 U.S.Dist. LEXIS 49161 (S.D.N.Y. July 18, 2006) ................................. 6-7, 22

Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,
    850 F. Supp. 1199 (S.D.N.Y. 1994)................................................................. 10-11

Catton v. Defense Technology Systems, Inc.,
    2006 U.S.Dist. LEXIS 205 (S.D.N.Y. Jan. 3, 2006)........................................... 22-25

Comm. of Unsecured Creditors v. DLJ,
    2002 U.S.Dist. LEXIS 3747 (S.D.N.Y. March 6, 2002) .....................................6, 20

Comm'r of Internal Revenue v. Banks,
    543 U.S. 426 (2005).........................................................................................8

Consol. Risk Serv. V. Auto. Dealers WC Self Ins. Trust,
    2007 U.S.Dist. LEXIS 22097 (N.D.N.Y. 2007) ....................................................20

Emergent Capital Inv. Mgt. v. Stonepath Group, Inc.,
    343 F.3d 189 (2d Cir. 2003)..........................................................................22, 24

Golden Trade, S.r.L. v Jordache,
    143 F.R.D. 504 (S.D.N.Y. 1992) .......................................................................17

Hallock v. State,
    64 N.Y.2d 224 (1984) ......................................................................................10

Heredia v. United States,
    887 F. Supp. 77 (S.D.N.Y. 1995) ........................................................................6

Hoffman v. Unterberg,
    9 A.D.3d 386.................................................................................................26

In re Parmalat Sec. Litig.,
    375 F. Supp. 2d 278 (S.D.N.Y. 2005) (Kaplan, J.)...................................................6

**Table of Authorities**
**(continued)**

Page

In re Parmalat Sec. Litigation,
    501 F.Supp.2d 560 (S.D.N.Y. 2007) (Kaplan, J.) ........................................................5

In re Tri-Star Pictures, Inc. Litig.,
    634 A.2d 319 (Del. 1993) ........................................................................................16

Kingdom 5-KR-41, Ltd. v. Star Cruises PLC,
    2002 U.S.Dist. LEXIS 4636 (S.D.N.Y. March 20, 2002) ........................................15

Lerner v. Westreich,
    819 N.Y.S.2d 210, 2006 N.Y. Slip.Op ...............................................................15-16

Lind v. Vanguard Offset Printers,
    857 F. Supp. 1060 (S.D.N.Y. 1994) ........................................................................14

LoPresti v. Terwilliger,
    126 F.3d 34 (2d Cir. 1997) ......................................................................................25

Maillet v. FrontPoint Partners, L.L.C.,
    2003 U.S. Dist. LEXIS 9832 (D.N.Y. 2003) ..........................................................16

Manchester Equip. Co. v. American Way & Moving Co.,
    60 F. Supp. 2d 3 (E.D.N.Y. 1999) ............................................................................7

Mandelblatt v. Devon Stores, Inc.,
    521 N.Y.S.2d 672 (App. Div. 1st Dep't 1987) ........................................................16

National Market Share, Inc. v. Sterling Nat. Bank,
    392 F.3d 520 (2d Cir. 2004) ....................................................................................12

National Westminster Bank, U.S.A. v. Ross,
    130 B.R. 656 (S.D.N.Y. 1991) ................................................................................18

Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.,
    51 F.Supp.2d 457 (S.D.N.Y. 1999) ......................................................................6-7, 9

Rahl v Bande,
    328 B.R. 387 (S.D.N.Y. 2005) ................................................................................20

Reiss v. Societe Centrale Du Groupe Des Assurances Nationales,
    246 F.Supp.2d 273 (S.D.N.Y. 2003) ......................................................................10

Standard Funding Corp. v. Lewitt,
    89 N.Y.2d 546, 678 N.E.2d 874, 656 N.Y.S.2d 188 (1997) ....................................10

**Table of Authorities**
**(continued)**

Page

Teachers Ins. & Annuity Ass'n v. CRIMI MAE Services, L.P.,
   2007 U.S. Dist. LEXIS 28279 (S.D.N.Y. March 20, 2007) .....................................................12

Teevee Toons v. Schubert,
   2002 U.S.Dist. LEXIS 5546 (S.D.N.Y. 2002)..........................................................................9

United States v. IBT,
   986 F.2d 15 (2d Cir. 1993).........................................................................................................8

**RULES**

F.R.C.P. 8.................................................................................................................... passim

F.R.C.P. 9.................................................................................................................... passim

## PRELIMINARY STATEMENT

Stripped to their core, plaintiffs' claims in this action are straightforward: last June, defendants Stern and Safrin, through their agent and attorney Friedman, solicited Amusement's participation in a real estate investment opportunity. Relying on specific representations by Friedman – Safrin and Stern's attorney, who previously had represented Amusement and its principal – Amusement contributed $13 million to this transaction. Defendants thereafter appropriated plaintiffs' money without authorization, and justified their actions by providing plaintiffs with two promissory notes and other collateral, the validity of which they now contest. In other words, defendants stole plaintiffs' $13 million. Amusement has since discovered that defendants misrepresented and concealed various material facts as well.[1]

Tellingly, defendants – including Safrin – nowhere dispute the charge that they stole plaintiffs' $13 million. Instead, by their respective motions to dismiss, they raise a variety of technical defenses to plaintiffs' claims, none of which have any merit.

For example, Safrin's main defense appears to be that he simply was not personally involved in the deal and that, therefore, plaintiffs' claims against him have no merit. Safrin raises this defense by arguing that (i) Friedman did not have actual or apparent authority to bind Safrin in any deal with plaintiffs; and (ii) plaintiffs have not sufficiently alleged privity with Safrin. Friedman's authority – whether it was actual or apparent – plainly is alleged. Indeed, it is entirely implausible that Friedman – a partner at a substantial national law firm – undertook the actions alleged as anything other than

---

[1] Plaintiffs acknowledge that the details relating to the parties' communications and the underlying negotiation of this transaction are undeniably complex. Certainly, the parties contemplated a variety of different corporate structures for this complex transaction, and considered a number of ways to document and memorialize the deal. The parties plainly disagree as to what their ultimate agreement was. At the end of the day, however, defendants have $13 million of plaintiffs' money. Plaintiffs, for their part, have nothing to show for that money.

Safrin's (and Stern's) attorney-agent. Similarly, Safrin's personal involvement in the transaction plainly is alleged. That is all that is necessary at this stage of the proceedings.

Predictably, Safrin also trots out every defendant's boilerplate defenses to claims of fraud, fraudulent concealment, and breach of fiduciary duty. For example, he argues that plaintiffs have failed to allege a special or fiduciary relationship with plaintiffs that would create a duty to disclose on his part. Safrin, however, had such a duty because he made partial disclosures to plaintiffs, and because he had superior knowledge of material facts that he failed to disclose to plaintiffs. Safrin also had a fiduciary duty to plaintiffs as the manager/owner/officer of First Republic, the LLC entity in which plaintiffs became investors.

In the same vein, Safrin complains that plaintiffs' misrepresentation claims should be dismissed because they do not (i) satisfy Rule 9(b); (ii) identify misrepresentations to plaintiffs; and (iii) allege a misrepresentation of present fact. These arguments fail as well. First, plaintiffs' allegations plainly specify Safrin's misrepresentations, as well as who made them, and how they were false. Second, Safrin's misrepresentations to third parties directly harmed plaintiffs. Third, Safrin had no present intent to perform the "future" promises he made.

Safrin also argues that plaintiffs cannot establish justifiable reliance as a matter of law because (i) a party cannot rely on the statements of opposing counsel; and (ii) plaintiffs were unjustified in proceeding without the Citibank documents. However, New York law is plain that a party may rely on the factual statements of opposing counsel. That is precisely what plaintiffs have alleged. Further, whether plaintiffs were justified in proceeding without the Citibank documents is a fact-specific inquiry not suitable for a motion to dismiss. Under facts similar to those alleged by plaintiffs – which must be taken as true for the purposes of this motion – New York courts have denied motions to dismiss on justifiable reliance grounds.

Incredibly, Safrin also argues that plaintiffs' claims against him simply are too implausible to survive his motion. This argument is flatly contradicted by the allegations in plaintiffs' complaint. Like it or not, plaintiffs have set forth plausible claims against Safrin as an individual.

## SUMMARY OF FACTUAL ALLEGATIONS[2]

In June 2007, defendants Moses Stern ("Stern"), Joshua Safrin ("Safrin") and First Republic Group Realty LLC ("First Republic," and, collectively, "defendants") through their attorney Stephen Friedman ("Friedman") and their broker Steven Alevy presented an investment opportunity to plaintiff Amusement Industry, Inc. ("Amusement").[3] (Complaint ("Compl.") ¶¶ 30-35.) Friedman – a partner at Buchanan Ingersoll & Rooney P.C. – previously had represented Amusement and its principal shareholder, and Amusement accordingly believed he was presenting a legitimate opportunity on behalf of Stern and Safrin. (Compl. ¶ 32.)

As told to Amusement, defendants recently had agreed to purchase a significant portfolio of shopping centers from an entity known as Colonial Real Estate. (Id. ¶ 24.) Defendants, who claimed to have substantial financing from Citibank, represented that they nonetheless required $13 million in additional financing. (Id. ¶ 34(a).) Thus, defendants proposed the following deal: in return for $13 million, defendants would make Amusement a 50% equity partner in the venture, and "take out" – i.e., refinance – Amusement within 60 days. (Id. ¶ 34(d), (e).) Further, to secure its investment, Amusement would hold 100% of the ownership until the parties executed a partnership agreement. (Id. ¶ 35(c).) In reliance on numerous and specific representations by defendants (through Friedman),

---

[2]    Plaintiffs present here an abbreviated factual summary for the Court's convenience. Plaintiffs respectfully refer the Court to plaintiffs' complaint for a more detailed description of the facts and circumstances underlying this action.

[3]    Plaintiff Practical Finance Co., Inc. (together with Amusement, "plaintiffs") is the assignee of certain promissory notes executed by Stern in favor of Amusement. (Compl. ¶ 2.)

Amusement agreed.  (<u>Id.</u> ¶36.)  A letter of intent ("LOI") reflecting many the foregoing terms was executed on June 29, 2007.  (<u>Id.</u> ¶ 35, Ex. 2.)

Also on June 29, Amusement held up its end of the bargain and wired $13 million to defendant Land Title Associates Escrow ("Land Title"), an escrow company owned by defendant Ephraim Frenkel ("Frenkel").  (Compl. ¶¶ 13, 14 36.)  Amusement also began preparing an appropriate partnership agreement.  (<u>Id.</u> ¶ 42.)

Thereafter, the parties contemplated a variety of structures for this complex transaction.  For example, defendants informed Amusement that substituting the partnership into the purchase would be disruptive to the purchase transaction.  (Compl. ¶ 47.)  Accordingly, on or about July 11, 2007, the parties modified the structure of the transaction, including by agreeing to have the partnership agreement executed shortly after the real estate transaction closed.  (<u>Id.</u> ¶¶ 47-49.)  Also on July 11, defendants provided plaintiffs with an executed agreement assigning Safrin's interests in First Republic (the corporate entity which was to own the property portfolio), an executed agreement assigning Stern's interests in First Republic, and two promissory notes executed by Stern.  (<u>Id.</u> ¶ 52.)  The parties discussed other deal structures as well.  (<u>Id.</u> ¶¶ 52.)

On July 13, 2007, much to Amusement's surprise, Frenkel announced that Steven Alevy had authorized the release of the escrow funds, notwithstanding the fact that Amusement expressly had instructed Frenkel and Land Title that only Allen Alevy or Allen Sragow could authorize the release of the escrow.  (Compl. ¶¶ 51, 63.)  Amusement has since come to understand that defendants had stolen Amusement's $13 million from the escrow account two days earlier.  (<u>Id.</u> ¶ 58.)

Amusement also has since discovered that defendants misrepresented and concealed numerous material facts in connection with the transaction.  For example, defendants failed to disclose that the structure proposed by defendants violated the Citibank loan documents.  (Compl. ¶ 27.)

Contrary to defendants' representations, the Citibank documents prohibited, among other things, (i) the refinancing of Amusement's investment within 60 days; (ii) defendants from obtaining any kind of additional financing; and (iii) defendants transferring their interests in the corporate owner of the portfolio. (Id. ¶ 188.) Further, the documents provided by defendants to memorialize their agreement with Amusement were not permitted under the terms of their own operating agreements; this too was not disclosed. (Id. ¶ 216.)  Adding insult to injury, defendants never really needed $13 million in financing; instead, they only needed $9 million. (Id. 168.)  Plaintiffs believe that defendants used the surplus $4 million to pay off their private debts. (Id. ¶ 168, 170.)  Defendants' other fraudulent misrepresentations and omissions are detailed throughout plaintiffs' complaint.

Plaintiffs have demanded that defendants honor their agreements and/or return plaintiffs' $13 million. (Compl. ¶¶ 69, 239.)  Defendants have refused. (Id.)  This lawsuit followed.

## ARGUMENT

As this Court has held, "[i]n deciding a motion to dismiss, the Court ordinarily accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor." In re Parmalat Sec. Litigation, 501 F.Supp.2d 560, 572 (S.D.N.Y. 2007) (Kaplan, J.). Safrin concedes as much. (Safrin Br. at 11 ("the Court is obliged do accept as true the factual allegations of the complaint"). Prior to the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, "it frequently was said that dismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'."" Id. After Twombly, "in order '[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Id. (citing, inter

alia, Twombly). Even under this arguably more relaxed standard, plaintiffs plainly have sufficiently alleged their claims against Safrin (and the other defendants).[4]

## I.    THE COMPLAINT SUFFICIENTLY ALLEGES FRIEDMAN'S AUTHORITY TO BIND SAFRIN

Safrin argues that plaintiffs somehow fail to allege that Friedman had either actual or apparent authority to bind Safrin.  (Safrin Br. at 13.)  Safrin is wrong on both fronts.

F.R.C.P. 8(a) sets forth the well-known general notice pleading standard.  F.R.C.P. 8(a) ("A pleading which sets forth a claim for relief. . .shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").  Allegations of agency need only satisfy these general notice pleading requirements where, as here, the agency relationship is not pled as part of the fraud alleged.  In re Parmalat Sec. Litig., 375 F. Supp. 2d 278, 292 (S.D.N.Y. 2005) (Kaplan, J.) (stating that an agency claim was "not so closely intertwined with the claim of securities fraud that it is a circumstance of the fraud itself.  Accordingly, agency need not be pled with particularity in this case. The agency allegations are governed by Rule 8."); see also Bangkok Crafts Corp. v. Capitolo Di San Piertro In Vaticano, 2006 U.S.Dist. LEXIS 49161, *26 (S.D.N.Y. July 18, 2006) ("Loata cites no authority for the proposition that agency allegations have to be pled with heightened specificity").

Moreover, agency claims typically are not resolvable on motions to dismiss:  "New York courts have recognized that the question of the existence and scope of an agency relationship is a factual issue that a court cannot properly adjudicate on a motion to dismiss."  Old Republic Ins. Co. v. Hansa World Cargo Service, Inc., 51 F.Supp.2d 457, 471 (S.D.N.Y. 1999); see also Heredia v. United States, 887 F. Supp. 77, 80 (S.D.N.Y. 1995) ("where the circumstances alleged in the pleading 'raise

---

[4]      If the Court grants some portion of Safrin's (or Stern's) motion, plaintiffs respectfully request that they be permitted to amend their pleadings to cure any defects identified by the Court.  Comm. of Unsecured Creditors v. DLJ, 2002 U.S.Dist. LEXIS 3747, (S.D.N.Y. March 6, 2002) ("If a court grants a motion to dismiss, leave to amend under Rule 15(a) should be 'freely given when justice so requires.'")

the possibility of a principal-agent relationship,' and no written authority for the agency is established, questions as to the existence and scope of the agency are issues of fact and are not properly the basis of a motion to dismiss") (citations omitted); Bangkok Crafts, 2006 U.S.Dist. LEXIS 49161 at *26 ("questions regarding the scope and existence of the agency are not properly the subject of a motion to dismiss") (citing Heredia).

A.    Actual Authority.

Safrin first argues that plaintiffs fail to allege, in even a conclusory fashion, that Stephen Friedman ("Friedman") – a partner at a substantial national law firm – had actual authority to bind Safrin. (Safrin Br. at 13.) Not so.

"Actual authority is crated by direct manifestations from the principal to the agent." Old Republic, 51 F. Supp. 2d at 472. This is not based on conduct perceived by a third party, but rather by conduct between the principal and the agent. Manchester Equip. Co. v. American Way & Moving Co., 60 F. Supp. 2d 3, 8 (E.D.N.Y. 1999) (stating that actual authority "depends upon the actual interactions of the putative agent and principal and not on the perception a third party may have of the relationship"). Thus, to allege an agency relationship based on actual authority, no allegations concerning communications between Safrin and Amusement are necessary at all. Safrin concedes as much. (Safrin Br. at 13.)

Here, plaintiffs specifically allege that Friedman told them that he represented Safrin and the entities in which Safrin is an owner, such as First Republic (jointly owned by Stern and Safrin), concerning (i) the purchase by First Republic of shopping centers from seller, Colonial, and (ii) in particular, First Republic's need to obtain financing from plaintiffs to consummate the purchase. (Compl. ¶¶ 30-34, 37, 44-46.) Plaintiffs also allege that Friedman previously had represented plaintiff Amusement and its shareholders in a variety of prior matters. (Id. ¶ 32.) Based that representation,

Friedman's standing in the bar and their personal experience with him, plaintiffs believed that Friedman had full authority to act on behalf of defendants. (Id.)

Plaintiffs further allege that Friedman communicated Stern's and Safrin's investment and partnership proposal to Amusement's Allen Alevy, negotiating by telephone and by email. (Id. ¶¶ 31, 34, 56, 57.) During such negotiations, Friedman provided an LLC Membership Assignment Agreement executed by Safrin (the "Safrin Assignment Agreement") (along with an assignment agreement and promissory notes executed by Stern). (Compl. ¶ 52.)

Further, after defendants took plaintiffs' money, Friedman continued to communicate on behalf of Safrin (as well as Stern and First Republic) with Amusement concerning his receipt of original signatures on the transaction documents from Stern, Safrin and First Republic. (Compl. ¶ 61.) Friedman also continued to provide Amusement with additional documents – presumably, from Safrin and Stern – relating to Safrin's and Stern's acquisition of the property portfolio, including the Citigroup loan agreement with First Republic, the Citigroup mezzanine loan agreement with FRGR Managing Member LLC, and operating agreements signed by Safrin. (Id.)

The foregoing plainly is sufficient to allege that Friedman had actual authority to act on behalf of Safrin (as well as Stern and First Republic). Cf. Comm'r of Internal Revenue v. Banks, 543 U.S. 426, 436 (2005) ("The relationship between client and attorney . . . is a quintessential principal-agent relationship.") (citing Restatement (Second) of Agency § 1, Comment e (1957)); United States v. IBT, 986 F.2d 15, 20 (2d Cir. 1993) (lawyers and clients share agent/principal relationship); Prate v. Freedman, 583 F.2d 42, 48 (2d Cir. 1978) ("Like any other principal, a client may be bound by the acts of his [attorney], acting within the scope of his authority. . . .").

B.    Apparent Authority.

Safrin also argues that plaintiffs fail to allege that Friedman had apparent authority because they "fail to allege any manner in which the purported client/principal, Safrin, communicated, by

8

words or conduct, anything which would indicate that Friedman was working on his behalf." (Safrin

Br. at 15-16.)  This is a deliberately myopic view of the complaint.

Unlike actual authority, implied authority depends on the reasonable conclusion of a third

party, derived from actions of the principal, that the person acting has authority to do so:

> Essential to the creation of apparent authority are words or conduct of the principal,
> communicated to a third party, that give rise to the appearance and belief that the agent
> possess authority to enter into a transaction.

Old Republic, 51 F. Supp. 2d at 475.)  Again, Safrin admits as much. (Safrin Br. at 14-15.)

However, direct conduct from, or communication with, a principal is not always necessary to

cloak an agent with apparent authority:

> [A]n undisclosed principal may, in certain circumstances, create apparent authority in
> his agent even without any contact between the principal and the third party. Where
> the principal has voluntarily placed the agent in such a situation that a person of
> ordinary prudence conversant with business usages and the nature of the particular
> business may be justified in assuming that such agent has authority to perform a
> particular act there is apparent authority.

Old Republic Ins., 51 F. Supp. 2d at 475 (citing Graffman v. Delecea, 1997 U.S. Dist. LEXIS 15525,

*5 (S.D.N.Y. Oct. 8, 1997) (denying a motion to dismiss on these grounds)).

As noted, the Complaint alleges that, on July 11, 2007, Amusement received the Safrin

Assignment Agreement from Friedman, which assigned all of Safrin's ownership in MS Colonial

LLC, FRGR Holdings, LLC, FRGR Managing Member, LLC and First Republic LLC to

Amusement. (Compl. ¶ 52, Ex. 5.)  Safrin's execution of the Safrin Assignment Agreement and

subsequent provision of that document to Friedman – who then provided it to plaintiffs – are sufficient

overt acts to imbue Friedman with apparent authority to act on Safrin's behalf, particularly at the

pleading stage of the proceedings.  See, e.g., Teevee Toons v. Schubert, 2002 U.S.Dist. LEXIS 5546,

*11 (S.D.N.Y. 2002) (holding that plaintiff "adequately pled the existence of an apparent agency

relationship" where principal allegedly "expressed his enthusiasm about" a project; "[v]iewing the

allegations in the light most favorable to the plaintiffs, a factual issue exists as to whether these statements created the appearance that Schubert authorized Rodico to contract with TVT on its behalf. Therefore, dismissal is inappropriate at this time."); Hallock v. State, 64 N.Y.2d 224, 231 (1984) (holding, "as a matter of law," that party had cloaked attorney "with apparent authority to enter into the settlement. [Attorney] had represented plaintiffs through the litigation, engaged in prior settlement negotiations for them and, in furtherance of the authority which had been vested in him, appeared at the final pretrial conference, his presence there constituting an implied representation by [principal] to defendants that [attorney] had authority to bind him to the settlement").

At minimum, plaintiffs unquestionably were justified in believing that Safrin (as well as Stern and First Republic) had authorized Friedman to perform the acts alleged in their Complaint, particularly given that Friedman had provided Safrin's executed assignment document. Simply put, plaintiffs have satisfied Rule 8 with respect to Friedman's apparent authority to bind Safrin.

C.    Safrin Retained – and Still Retains – the Benefit of Friedman's Actions.

Finally even in the absence of actual or apparent authority initially, New York law provides that a principal may ratify, and thus be bound by, an agent's actions where, as here, that principal retains the benefit of the agent's conduct:

> In agency law, 'ratification is a form of subsequent authorization [where] . . . . If a principal[,] with such knowledge that there is an agreement outstanding and with knowledge of what that agreement is, then accepts the benefits of an agent's action, the principal is responsible for agreement of the agent whether originally authorized or not.

Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank, 850 F. Supp. 1199, 1213 (S.D.N.Y. 1994) (quoting Julien J. Studley, Inc. v. Gulf Oil Corp., 282 F. Supp. 748, 751-52 (S.D.N.Y. 1968)); see also Standard Funding Corp. v. Lewitt, 89 N.Y.2d 546, 552, 678 N.E.2d 874, 656 N.Y.S.2d 188 (1997) ("ratification may be implied where the principal retains the benefit of an unauthorized transaction with knowledge of the material facts") (citation omitted); Reiss v. Societe

Centrale Du Groupe Des Assurances Nationales, 246 F.Supp.2d 273, 283 (S.D.N.Y. 2003) ("to ascertain whether an agency relationship exists, a court may consider whether the agent's acts were ratified by subsequent conduct of the principal") (citing Banque Arabe). Simply put, ratification is a "form of retroactive authority." Banque Arabe, 850 F. Supp. at 1213.

Here, the Complaint alleges that Safrin ratified the Friedman agency by a variety of methods, including by (i) assigning his LLC interests, (ii) accepting the benefits by his ownership of the real estate portfolio purchased (in part) with Amusement's money, and (iii) providing the transactional documents. (Compl. ¶¶ 26, 47, 52, 58 and 61.) Thus, plaintiffs have sufficiently alleged that Friedman had apparent agency to act on behalf of Safrin.

<div align="center">*****</div>

In sum, plaintiffs plainly have satisfied Rule 8 with respect to Friedman's authority to bind Safrin (as well as Stern and First Republic). They have alleged that Friedman had actual or apparent authority to act on behalf of, and therefore bind, Safrin. Plaintiffs further have alleged that Safrin retained the benefit of Friedman's conduct, and therefore is bound by Friedman's actions. Indeed, it is wholly implausible that Friedman – a partner at a substantial law firm – undertook the actions alleged as anything other than an attorney-agent for Safrin and the other defendants in this transaction. Accordingly, Safrin's motion to dismiss based on plaintiffs' failure to allege that Friedman had authority on Safrin's behalf should be denied.

## II.    THE VARIOUS CAUSES OF ACTION ARE PROPERLY ALLEGED AGAINST SAFRIN INDIVIDUALLY

In what can only be described as a novel argument, Safrin argues that plaintiffs' breach of contract claims against him (causes of action 6, 8, 9, 11, 12 and 16) must be dismissed because they fail "to allege that Safrin himself was a party to any of the purportedly breached contracts." (Safrin Br. at 16.) Safrin makes two principal claims here: (i) that plaintiffs have failed to allege privity

<div align="center">11</div>

between them and Safrin, and, (ii) at best, the Complaint alleges that he entered a contract on behalf of defendant First Republic Group LLC, and that he cannot be held individually liable on such a contract. (Safrin Br. at 16-17.)  Safrin's claims are flatly contradicted by the allegations in the Complaint, which easily plead the requisite elements of a breach of contract claim against Safrin.

"Under New York law, a party asserting a breach of contract claim must allege: (1) the existence of a contract; (2) plaintiff's performance of the contract; (3) defendant's breach of the contract; and (4) damages caused by the breach." Teachers Ins. & Annuity Ass'n v. CRIMI MAE Services. L.P., 2007 U.S. Dist. LEXIS 28279, *10 (S.D.N.Y. March 20, 2007) (citing Rexnord Holdings v. Biderman, 21 F.3d 522, 525 (2d Cir. 1994)); see also National Market Share. Inc. v. Sterling Nat. Bank, 392 F.3d 520, 525 (2d Cir. 2004) ("To establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach.").

Here, plaintiffs have alleged agreements made with Safrin on an individual basis (and with Stern on the same basis).  Specifically, the Complaint alleges that "Amusement, on one hand, entered into a contract with Stern, Safrin, and First Republic LLC, on the other hand . . . having the consistent terms of the LOI (Exhibit 1) and the July 11, 2007 contract." (Compl. ¶¶102, 116, 122, 136, 144.) Similarly, the Complaint alleges that "Stern, Safrin and First Republic LLC requested and Amusement accepted that the investment could be repaid with interest in 60 days from closing." (Compl. ¶104) (Sixth Cause of Action).  Likewise, plaintiffs' Sixteenth Cause of Action alleges that "Stern and Safrin solicited Amusement's $13 million contribution," and that "Stern and Safrin promised" that the $13 million was entirely necessary and would be entirely used for the purchase. (Id. ¶ 176.)  Plaintiffs allege the remaining requisite elements of their contract claims as well. (See,

12

e.g., Compl. ¶¶ 106-114.) Quite simply, these claims seek to enforce agreements Safrin (and Stern) made with plaintiffs. Plaintiffs' allegations are sufficient to state a claim for relief.

Incredibly, Safrin claims that the Safrin Assignment Agreement he executed merely "highlight[s] that [he] did not own any of the property at issue." (Safrin Br. at 19.) This completely misses the point. As alleged in the Complaint, this Assignment transferred Safrin's interests in the corporate entities that control, and ultimately own, the property portfolio. Safrin's direct ownership of the properties is not the basis of plaintiffs' claims.

In short, plaintiffs' breach of contract claims plainly involve Safrin in his individual capacity. Accordingly, Safrin's motion to dismiss these claims should be denied.

## III.   THE FRAUDULENT CONCEALMENT, NEGLIGENT MISREPRESENTATION AND BREACH OF FIDUCIARY DUTY CLAIMS ARE PROPERLY ALLEGED

Safrin next argues that plaintiffs' fraudulent concealment, negligent misrepresentation and breach of fiduciary duty claims (counts 17, 18, 20-22 and 27) should be dismissed because plaintiffs did not allege "the existence of a special or fiduciary relationship with Safrin" and that, as a result, he had no duty to disclose. (Safrin Br. at 19.) This is both irrelevant and incorrect.

A.    Plaintiffs' Claims Allege Affirmative Misrepresentations, Which Do Not Require Allegations of a Special Duty.

Safrin's argument is irrelevant because counts 17, 18, 20-22 and 27 allege numerous affirmative misrepresentations by defendants, for which it is not necessary to allege a special or fiduciary relationship. Safrin does not contest this. (Safrin Br. at 19-20.) Specifically, in claims 18, 19, 21, and 22, plaintiffs allege, inter alia, that Safrin made the following affirmative misrepresentations of fact: (i) that the Citibank debt would be about $126 million, and that repayment to Amusement could and would occur from the equity of about $64 million, within 60 days, through refinance (Compl. ¶ 184-185); and (ii) that the proposed ownership and security structure provided

13

Amusement with a valid and enforceable security interest (Compl. ¶¶ 215, 218) and that defendants were able to provide 100% of this structure. (Id. ¶ 219.)

At minimum, the affirmative misrepresentation aspects of the foregoing claims should not be dismissed. In any event, as described below, Safrin had a duty to "speak up" to plaintiffs.

B.    Safrin Had a Duty to "Speak Up" As a Result of His Special, Fiduciary
      Relationship With Plaintiffs.

Safrin next argues that plaintiffs' complaint describes only an arms-length, "garden variety business relationship," and that, as such, Safrin owed no duty to disclose to plaintiffs. (Safrin Br. at 21.) This ignores both New York law and the facts alleged in the complaint.

New York provides that a duty to disclose in a business transaction arises where, as here, a defendant (i) makes a partial or ambiguous disclosure; (ii) owes a fiduciary duty; or (iii) possesses superior knowledge and knows the plaintiff is acting on mistaken knowledge:

> a duty to disclose is recognized in three circumstances: first, where a party has made a partial or ambiguous statement; second, where the parties stand in a fiduciary or confidential relationship with each other; and third where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge. Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citing Junius Constr. Corp. v. Cohen, 257 N.Y. 393, 400, 178 N.E. 672 (1931) (Cardozo, J.), Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 45 (2d Cir. 1991); Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123 (2d Cir. 1984)).

Lind v. Vanguard Offset Printers, 857 F. Supp. 1060, 1067 (S.D.N.Y. 1994). Here, Safrin had a duty to "speak up" under all three of these scenarios.

1.    Defendants' Partial Disclosures and Superior Knowledge.

First, the complaint plainly alleges that Safrin made partial disclosures. For example, Safrin informed plaintiffs of the Citibank financing, but did not disclose that the Citibank agreements precluded tertiary secured financing. (Compl. ¶ 28.) Safrin also informed plaintiffs that they would own the entire LLC structure, but failed to disclose that defendants' transfer of the LLC interests could

violate the Citibank agreements. (Id. ¶ 56.) Safrin also partially disclosed the identity of the

purchasing entity – First Republic – without identifying its preclusive restrictions, or the fact that

Avery Egert also was an owner. (Id. ¶ 46.) Under such circumstances, Safrin had a duty to disclose

the full truth to plaintiffs. Kingdom 5-KR-41, Ltd. v. Star Cruises PLC, 2002 U.S.Dist. LEXIS 4636,

*49 (S.D.N.Y. March 20, 2002) ("by initiating a correspondence with [plaintiff] . . .[defendant] took

on a duty to disclose information that was directly relevant to that issue. . . . the facts as alleged are

sufficient to survive a motion to dismiss").

    The Complaint also alleges that Safrin had superior knowledge, and knew that plaintiffs were

operating under a different belief. For example, plaintiffs allege that Safrin (through Friedman)

advised plaintiffs that they owned 100% of the property portfolio, and that the documentation

provided by Friedman in this regard was valid and enforceable. (Compl. ¶ 215.) Safrin (and Stern

and First Republic) knew this was not true, based on their knowledge of, among other things, the

Citibank loan documents. (Id. ¶ 217.) Under such circumstances, Safrin had a duty to disclose the

truth to plaintiffs. Kingdom 5-KR-41, 2002 U.S.Dist. LEXIS 4636 at *49.

    2.    Safrin Owed a Fiduciary Duty to Plaintiffs Beyond His Contractual Obligations.

    The Complaint also alleges that Safrin owed plaintiffs a fiduciary duty. Specifically, in their

27th cause of action plaintiffs allege that defendants were incorporators, officers, directors, managers

or the like of First Republic. (Compl. ¶ 258.) After the execution of the LOI – or, at minimum, after

defendants took plaintiffs' $13 million – plaintiffs became investors in First Republic. As such, Safrin

(and Stern) owed a fiduciary duty – and thus a duty to disclose – to plaintiffs. Lerner v. Westreich,

819 N.Y.S.2d 210, 2006 N.Y. Slip.Op. 51058U, *4 (Sup. Ct. New York Co. 2006) ("Delaware courts

have found that a manager of a limited liability corporation owes a fiduciary duty of loyalty to the

LLC, its investors and his fellow managers under the common law.") (citing VGS, Inc. v. Castiel,

2000 Del. Ch. LEXIS 122, *4 (Del. Ch. Ct. Aug. 31, 2000), aff'd, 781 A.2d 696 (Del. 2001)).

C.    Plaintiffs' Breach of Fiduciary Duty Claim Does Not Fail As a Matter of Law.

Safrin also argues that plaintiffs' breach of fiduciary duty claim fails as a matter of law. (Safrin Br. at 23.) According to Safrin, plaintiffs have not alleged that Safrin did anything that would "constitute an actionable breach." (Id. ("they do not allege that Friedman had any authority to bind Safrin").) This simply recasts Safrin's authority arguments. For the reasons set forth supra at 7-12, these arguments fail.

Safrin further claims that "plaintiffs' breach of fiduciary duty claim merely repackages the[ir] breach of contract claims." (Safrin Br. at 23.) This is just wrong.

While it is true that not every commercial contract creates a fiduciary duty, it is "well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." Mandelblatt v. Devon Stores, Inc., 521 N.Y.S.2d 672, 676 (App. Div. 1st Dep't 1987). Further, it is well established under New York and Delaware law (defendants used Delaware LLCs) that managers of limited liability companies owe a fiduciary duty to investors such as plaintiffs. Maillet v. FrontPoint Partners, L.L.C., 2003 U.S. Dist. LEXIS 9832, *8 (D.N.Y. 2003) (holding that under New York and Delaware law LLC partners owe a fiduciary duty to other partners and managers); Lerner, 819 N.Y.S.2d at 210; In re Tri-Star Pictures, Inc. Litig., 634 A.2d 319, 328-29 (Del. 1993) (holding, on motion to dismiss, that fiduciary relationship could be established even for minority shareholder). That is precisely what plaintiffs have alleged here.

As noted supra at 16, in their 27th cause of action, plaintiffs allege that defendants were incorporators, officers, directors, managers or the like of First Republic. (Compl. ¶ 258.) Plaintiffs were investors in the First Republic entity (either as of the execution of the LOI or after defendants took plaintiffs' money). As such, Safrin owed plaintiffs a fiduciary duty. Plaintiffs further allege that

Safrin (and Stern) breached this duty when they took Amusement's money and failed to provide the ownership, profit, and reimbursement rights due them as investors. (Compl. ¶ 259.)

In short, Safrin's fiduciary duty to plaintiffs did not arise out of the parties' contractual agreements, but rather out of the basic fiduciary obligations that corporate managers have to their shareholders and investors. This is precisely how the 27th cause of action was pled: that independent of the parties' agreements, Safrin (and Stern) acted without exercising the care required of them.

**IV.    THE FRAUD CAUSES OF ACTION ARE SUFFICIENTLY PLEADED**

Safrin next argues that plaintiffs' "fraud-based" claim should be dismissed because plaintiffs do not (i) allege the particularity required by Rule 9(b); (ii) identify any misrepresentations made to plaintiffs in claims 19 and 20; (iii) allege a misrepresentation of present fact; and (iv) allege justifiable reliance. (Safrin Br. at 24.) Once again, Safrin is wrong on all fronts.

A.    The Complaint Sufficiently Identifies Who Made the Statements: Friedman, on Safrin's Behalf.

Safrin argues that plaintiffs' fraud claims do not satisfy Rule 9(b) because their allegations "clump" the defendants together and do not separately identify which defendants made which misrepresentations. (Safrin Br. at 26.) This argument lacks merit.

First, to the extent that the Complaint alleges fraudulent concealment claims, Rule 9(b) "requires only that the pleader identify what facts were not communicated." Golden Trade, S.r.L. v Jordache, 143 F.R.D. 504, 508 (S.D.N.Y. 1992) ("since the misrepresentation was alleged to be in the nature of an omission, Rule 9(b) does not, as plaintiffs suggest, request specification of 'the time, place and nature of the misrepresentation'; rather, it requires only that the pleader identify what facts were not communicated") (citations omitted).

Second, Safrin has mischaracterized the nature of plaintiffs' allegations. Unlike the cases cited, plaintiffs have not "lumped together" the allegations of who said what. Rather, the Complaint

specifically alleges that Safrin made the misrepresentations through his agent and attorney Friedman. That the statements were, by the same agency, made on behalf of Stern also, does not make the allegations "lumped together."

Further, plaintiffs' allegations otherwise satisfy Rule 9(b), in that they identify (i) the fraudulent statements, (ii) who made those statements; (iii) when the statements were made; and (iv) how those statements were fraudulent. Safrin does not argue otherwise.

In sum, Safrin (and the other defendants) plainly are on notice of the misrepresentations and concealments alleged by plaintiffs. This satisfies Rule 9(b).

B.    Causes of Action 19 and 20 Properly Allege Fraud, Even Though Representations Are Made to Others.

Next, Safrin argues that claims 19 and 20 should be dismissed because they allege that Stern and Safrin made misrepresentations to Frenkel, Land Title and Steven Alevy, not to plaintiffs. (Safrin Br. at 28.) Safrin's argument fails because (i) the misrepresentations to Frenkel and Land Title – plaintiffs' escrow agents – directly harmed plaintiffs; and (ii) the claims also allege that Safrin concealed from plaintiffs these misrepresentations to Frenkel, Land Title and Steven Alevy. If Safrin had disclosed his statements to plaintiffs' escrow agent – which, as noted supra, he had a duty to do – plaintiffs could have taken steps to protect themselves (e.g., by recalling the $13 million from escrow).

C.    Safrin Had No Intent to Perform His False Promise.

Safrin then argues that claim 23 should be dismissed because it only alleges a representation to do something in the future, which is not actionable in fraud. (Safrin Br. at 28-29.) However, promises of future conduct are actionable in fraud where, as here, the defendant had no present intent to perform the promise. National Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 664 (S.D.N.Y. 1991) ("a specific representation regarding future conduct, made with the undisclosed intention not to perform, is actionable fraud . . . Clearly, an action for fraud will lie if the promisor did not intend to

keep his promise at the time he made it. His present intent is the fact misrepresented") (citations omitted) (emphasis added).

Plaintiffs acknowledge that claim 23 does not expressly allege that Safrin did not have the present intent to perform his promise to deliver the partnership documents. However, such intent may be alleged generally, as long as the complaint contains allegations that permit the inference of intent. Powers v. British Vita, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995) (Rule 9(b) "permits plaintiffs to allege fraudulent intent generally while the circumstances amounting to fraud must be averred 'with particularity . . . the plaintiff must provide some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference of fraudulent intent") (quotation omitted). The Second Circuit has stated that such an inference may arise in one of two ways:

> A complaint may give rise to a sufficient inference of fraudulent intent in two ways. First, the plaintiff may allege a motive for committing fraud and a clear opportunity for doing so. . . Second, where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater.

Id. at 184.

Here, Safrin's intent not to perform may be inferred from (i) the allegations that he failed to cooperate in the initial partnership drafting process, and (ii) his refusal, despite demand therefore to provide the requested partnership agreement. (Compl. ¶¶ 42, 236.) Accordingly, plaintiffs sufficiently have alleged a lack of present intent on the part of Safrin to do that which he promised.

D.    Count 15 Properly Alleges A Representation that was False When Made, And This Is Not Negated By Other Facts Pleaded.

Safrin next argues that Count 15 should be dismissed because it too does not allege a misrepresentation of present fact. (Safrin Br. at 29.) According to Safrin, the claim is fatally flawed because it alleges that Safrin (and Stern) (i) misrepresented the alleged need for financing to be $13

19

million on June 29, 2007, when in fact it was only $9 million, and (ii) did not obtain a price reduction until July 2, three days later.  (Id. at 30.)

Safrin's construction of plaintiffs' allegations is too narrow.  It is entirely possible – as plaintiffs believe to be the case – that Safrin (and Stern) knew on or before June 29 that the financing requirements was less than $13 million, and that the so-called "price reduction" only was finalized on July 2.  In short, the allegations simply are not inconsistent.

E.      Safrin Improperly Applies Fraud Pleading Standards to Non-Fraud Causes of Action.

Buried in a footnote, Safrin also argues that the heightened pleading standard set forth in Rule 9(b) applies to Counts 24, 25, and 27 – for conversion, conspiracy, and breach of fiduciary duty, respectively – and that those claims fail to satisfy Rule 9(b).  (Safrin Br. at 25 n.10.)  Safrin's half-hearted argument has no merit.

Rule 9(b)'s "heightened pleading standard is applicable to breach of fiduciary claims only when the breach is premised on a defendant's fraudulent conduct." Rahl v Bande, 328 B.R. 387, 412 (S.D.N.Y. 2005) (emphasis added); see also Official Committee of Unsecured Creditors, 2002 U.S.Dist. Lexis 3747 at *25 (holding that 9(b) "does not extend to allegations of breach of duty, whether or not characterized as fiduciary, by conduct not amount to fraud or mistake. . .such as [a breach of the duty of] care, disclosure and loyalty"). The same is true for conspiracy and conversion claims.  Id. 2002 U.S. Dist. LEXIS 3747 at *19 ("Allegations of conspiracy are not measured under Rule 9(b) standards, but under the more liberal notice pleading standards set out in Rule 8(a)") (citing Hecht v. Commerce Clearing House, 897 F.2d 21, 26 n.4 (2d Cir. 1990)); Consol. Risk Serv. V. Auto. Dealers WC Self Ins. Trust, 2007 U.S.Dist. LEXIS 22097, *13 (N.D.N.Y. 2007) ("A plaintiff is not required to plead a conversion claim with particularity under Rule 9(b)").

Safrin does not contest the foregoing, but, instead, argues that "plaintiffs have done little more than repackage their fraud clams" in their conspiracy, conversion and breach of fiduciary duty claims.

Id. This is incorrect. Each of these causes of action depend on Safrin's (and Stern's) breaches of care, not their multiple misrepresentations. Specifically, plaintiffs' breach of fiduciary duty claims arise out of Safrin's (and Stern's) failure to provide them with the benefits of their investment in First Republic (e.g., profits, etc.), not out of the fact that Safrin (and Stern) defrauded plaintiffs with respect to that investment. Similarly, plaintiffs' conversion and conspiracy claims arise out of the basic allegations that defendants have taken, and not returned, $13 million that rightfully belongs to plaintiffs. Rule 9(b) does not apply to these claims.

In sum, because plaintiffs' claims for breach of fiduciary duty, conspiracy and conversion do not "sound" in fraud, they satisfy the liberal pleading requirements of Rule 8 and should not be dismissed.

## V.    THE COMPLAINT SUFFICIENTLY ALLEGES JUSTIFIABLE RELIANCE ON DEFENDANTS' FRAUDULENT ACTS AND OMISSIONS

Safrin also argues that plaintiffs' fraud and negligent misrepresentation claims should be dismissed as a matter of law because plaintiffs cannot allege justifiable reliance. (Safrin Br. at 31.)

A.    Friedman's Representations Were Factual In Nature.

First, Safrin argues that plaintiffs cannot establish justifiable reliance because Friedman was opposing counsel in the transaction.[5] (Safrin Br. at 31 ("Friedman, as alleged, was believed to be opposing counsel in this ordinary business transaction").) Safrin has mischaracterized plaintiffs' allegations.

New York law is plain that an agent may make misrepresentations that bind a principal:

It is well-settled that the false representations need not have been made by the defendant personally. If he authorized and caused it to be made it is the same as though he made it himself.

_____

[5]    This argument conflicts with Safrin's authority arguments. If Friedman was opposing counsel, he was Safrin's agent and had authority to act on his behalf. Safrin cannot have it both ways.

Bangkok Crafts, 2006 U.S.Dist.LEXIS 49161 at *25. Further, New York courts have held that a party may rely on statements and/or misrepresentations by "opposing counsel" where, as here, the alleged misrepresentations are factual. Ambra v. Awad, 847 N.Y.S.2d 900, 2007 N.Y. Misc. LEXIS 5981, *11(Sup. Ct. Nassau Co. 2007) (rejecting argument that party was not entitled to rely on statements of adversary because "[t]he case at bar does not concern an attorney's reliance on the adversary's statement of the law or contract. Rather, it concerns an attorney's reliance on an adversary's statement of fact (the existence or non-existence of insurance), within the singular knowledge of that adversary").[6] Here, Friedman's misrepresentations on behalf of Safrin (and other defendants) plainly were factual in nature. As in Ambra, such statements are actionable.

B.    Proceeding Without the Citibank Documents Was Not Unjustifiable As A Matter of Law.

Safrin next argues that plaintiffs cannot establish justifiable reliance in their claims relating to concealment of the Citibank loan documents because plaintiffs could have insisted on receiving such materials. (Safrin Br. at 33 (plaintiffs' "decision to rely blindly on Friedman's or any of the defendants' purported representations regarding the ability to refinance or the validity of the LLC assignments, rather than demanding these admittedly material documents . . . is unreasonable as a matter of law").) This ignores both the law and plaintiffs' allegations.

Justifiable reliance is a fact-intensive concept. Catton v. Defense Technology Systems, Inc., 2006 U.S.Dist. LEXIS 205, (S.D.N.Y. Jan. 3, 2006) ("In assessing the reasonableness of a plaintiff's alleged reliance, we consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them") (citation omitted). Safrin concedes as much. (Safrin Br. at 30 (citing Emergent

---

[6]    The cases cited by Safrin – I.L.G.W.U., Kregos, and Matsumura – stand only for the unremarkable proposition that a party cannot rely on the "legal opinion or conclusions" of opposing counsel. (Safrin Br. at 31 (citing cases).)

Capital Inv. Mgt. v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003).) Safrin, however, fails to acknowledge that it is for this reason that New York courts have denied motions to dismiss claiming no justifiable reliance. Catton, 2006 U.S.Dist.LEXIS 205 at *38 (denying motion to dismiss); Allied Irish Banks v. Bank of America, 2006 U.S. Dist. LEXIS 4270, *22 (S.D.N.Y. Jan. 31, 2006) ("reasonable reliance is a fact-specific inquiry generally considered inappropriate for determination on a motion to dismiss," and denying motion) (citation omitted).

Catton is instructive. 2006 U.S.Dist.LEXIS 205. In that case, plaintiffs asserted securities fraud and common law fraud claims, alleging that defendants misrepresented the value of a company in which plaintiffs were purchasing stock. Id. at *1-2. When negotiating the purchase, plaintiffs requested certain financial documents – which were not publicly available – concerning the company; one of the defendants, however, refused to provide those documents, and insisted that plaintiffs "trust" him. Id. at *5 ("On numerous occasions, plaintiffs requested that Brady . . . provide them with financial documents regarding the Company. In response, Brady admonished plaintiffs that they should trust him. No documents were publicly available because the Company was late in its 10Q and 10K filings"). Two defendants moved to dismiss, arguing, inter alia, that Catton could not establish reasonable reliance. Id. at *36-37. In response, plaintiffs argued that one of the plaintiffs "had a long-standing and trusting relationship with Brady and relied on Brady's superior expertise, and that plaintiffs had no access to any relevant information that would have revealed a fraud." Id. at *37. The Court held that the issue of plaintiffs' reasonable reliance could not be decided on a motion to dismiss. Id. at *38 ("These arguments do not lend themselves to resolution on a motion to dismiss. 'As the Court on this record cannot exclude the possibility that plaintiff might prove facts under the current pleading that would entitle it to relief,' defendants' motion to dismiss these claims cannot be granted .

23

..")[7]; see also Allied Irish Banks, 2006 U.S. Dist. LEXIS 4270 at *24 ("These expectations on

sophisticated businesses notwithstanding, 'when matters are held to be peculiarly within defendant's

knowledge, it is said plaintiff may rely without prosecuting an investigation, as he has no independent

means for ascertaining the truth.'"" (quoting Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d

1531, 1542 (2d Cir. 1997)).

Here, plaintiffs have alleged that they requested access to the Citibank loan documents, and

that defendants refused to provide them. (Compl. ¶ 46.) Plaintiffs further have alleged that they had a

long-standing, familiar relationship with Safrin's attorney, Friedman, who had represented plaintiffs in

the past. (Id. ¶ 32-34.) In other words, plaintiffs trusted Friedman. (Id.) As a result, plaintiffs had no

reason to suspect that they Citibank loan documents contained limitations that affected the transaction

contemplated by plaintiffs and Safrin (and Stern and First Republic).

Safrin's reliance on Waksman, Rodas and Emergent Capital is misplaced. (Safrin Br. at 30-

31.) First, Waksman and Rodas were decided in the summary judgment context, not on motions to

dismiss. Waksman, 2002 U.S.Dist.LEXIS 21209 at *12 ("As all parties have introduced evidence

outside the four corners of the original complaint . . . we . . . treat the motion as one for summary

judgment"); Rodas, N.Y.S.2d at 619 (granting motion for summary judgment). Second, and more

significantly, the plaintiffs in all three cases either were on notice of potential problems, or had the

necessary documents available to them. Waksman, 2002 U.S.Dist. LEXIS 21209 at *22-23 (stating

that plaintiff "had the means to discover the omitted information through a review of the available

documentation" – including a private placement memorandum plaintiff previously "had requested and

received"); Emergent, 343 F.3d at 195 (""where . . . a party has been put on notice of the existence of

material facts which have not been documented and he nevertheless proceeds with a transaction

---

[7]       The Court in Catton did grant the motion to dismiss  without prejudice on other grounds, and
instructed plaintiffs to replead within 20 days. Catton, 2006 U.S.Dist.LEXIS 205 at *44.

without securing the available documentation or inserting *appropriate language in the agreement for his protection*, he may truly be said to have willingly assumed the business risk that the facts may not be as represented) (italics in original); Rodas, 552 N.Y.S.2d at 620 (same). That was not the case for plaintiffs.

In short, as in Catton, plaintiffs' allegations are sufficient to establish that, if true – which the Court must accept on this motion – they reasonably relied on defendants' omissions regarding the Citibank documents.

## VI.    PLAINTIFFS' CONVERSION CLAIM IS PLEADED PROPERLY

Safrin next argues that plaintiffs' conversion claim must be dismissed because Safrin had no "authority to release . . . the escrow funds." (Safrin Br. at 33.) Safrin does not understand the law on conversion.

Specifically, a conversion claim exists where, as here, a party maintains control or dominion over property rightfully belonging to another:

> Conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession. It is well-settled that an action will lie under New York law for conversion of money where there is an obligation to return or otherwise treat in a particular manner the specific money in question. The tort of conversion does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another.

LoPresti v. Terwilliger, 126 F.3d 34, 41-42 (2d Cir. 1997) (citations omitted). Contrary to Safrin's argument, there is no pleading requirement regarding a defendant's "authority." To the contrary, even if a defendant receives funds by mistake, he is liable for conversion for simply failing to return the money. See, e.g., ADP Investor Commun. Servs. v. In House Atty. Servs., 390 F.Supp. 2d 212, 216-17, 223-24 (E.D.N.Y. 2005) (where plaintiff mistakenly wired defendants duplicate funds which defendants refused to return upon demand). Even if initial receipt of the funds initially appeared to be

lawful, "conversion occurs when there is a refusal to return the property after a demand" Hoffman v. Unterberg, 9 A.D.3d 386, 388; 780 N.Y.S.2d 617, 619 (2d Dep't 2004).

Here, plaintiffs have demanded the return of their funds, which Safrin (and the other defendants) refused. (Complaint ¶ 239.) Whether or not Safrin had "authority" to procure release of the escrow is not an element to the conversion cause of action; the conversion cause of action is properly alleged.

## VII.    THE COMPLAINT PASSES THE PLAUSIBILITY TEST

Incredibly, Safrin also insists that plaintiffs' claims against him are so implausible that they must be dismissed. (Safrin Br. at 12.) Safrin's sole "implausibility" argument is that plaintiffs fail to "allege that they ever had a single conversation or exchange of correspondence with Safrin." (Id.) This is pure nonsense.

At bottom, plaintiffs' claims are straightforward:  last June, Stern and Safrin, through their agent and attorney Friedman, solicited Amusement's participation in their real estate investment opportunity.  In reliance on numerous, specific representations by Friedman – defendants' attorney and agent – Amusement contributed $13 million to this transaction.  The parties undeniably contemplated a variety of different corporate structures for the transaction, the details of which were somewhat complex.  At the end of the day, however, Stern and Safrin, and First Republic Group, used – stole, really – plaintiffs' funds to purchase a real estate portfolio valued in excess of $190 million. For their part, plaintiffs are out $13 million, and, to date, have nothing to show for it.

Tellingly, defendants – including Safrin – nowhere protest these charges of thievery.  Instead, they raise a variety of technical defenses to plaintiffs' claims.  Safrin's main defense appears to be that he simply was not personally involved in the deal and that, therefore, plaintiffs' claims against him have no merit.  Safrin's personal involvement, however, is plain.  His attorney – Friedman – approached plaintiffs.  He has not denied his ownership interest in First Republic (and thus the

26

valuable property portfolio).  Most significantly, he executed an assignment of his LLC interests (in

part to induce plaintiffs to provide financing for the property portfolio).  (While Safrin claims his

signature was forged, even he would concede that this is a factual issue.)  Plainly, plaintiffs have set

forth plausible claims against Safrin (and the other defendants).  Accordingly, Safrin's motion to

dismiss should be denied.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny Safrin's motion to

dismiss in all respects.

Dated:  March 28, 2008

<div style="margin-left: 40%">

SILLS CUMMIS & GROSS P.C.
One Rockefeller Plaza
New York, New York  10020
(212) 643-7000

By: _Phil R White_____
      Philip R. White
      Marc D. Youngelson

ALLEN P. SRAGOW
SRAGOW & SRAGOW
6665 Long Beach Boulevard, Suite B-22
Long Beach, California 90805
Tel: (310) 639-0782

Attorneys for Plaintiffs
Amusement Industry, Inc. dba Westland Industries
and Practical Finance Co., Inc.

</div>

27