UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
AMUSEMENT INDUSTRY, INC., dba WESTLAND
INDUSTRIES; PRACTICAL FINANCE CO., INC.,   :

                    Plaintiffs,         :

          -against-                         :    07 CIV. 11586(LAK)(GWG)

MOSES STERN, aka MARK STERN,            :
JOSHUA SAFRIN,
FIRST REPUBLIC GROUP REALTY, LLC,      :
EPHRAIM FRENKEL,
LAND TITLE ASSOCIATES ESCROW           :

                   Defendants.     :
---------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION BY DEFENDANTS MOSES STERN,
FIRST REPUBLIC GROUP REALTY, LLC, EPHRAIM FRENKEL
AND LAND TITLE ASSOCIATES ESCROW
TO DISMISS THE COMPLAINT**

**HOFFINGER STERN & ROSS LLP
ATTORNEYS FOR THE ABOVE NAMED DEFENDANTS
150 EAST 58TH STREET-19TH FLOOR
NEW YORK, NEW YORK 10155
(212)421-4000**

## Table of Contents

|  | Page |
|---|---|
| **Table of Authorities** | ii |
| **PRELIMINARY STATEMENT** | 1 |
| **INTRODUCTION** | 1 |
| **POINT I** THE COMPLAINT'S INHERENTLY CONTRADICTORY FACTUAL ASSERTIONS AND ADMISSIONS ARE FATAL TO PLAINTIFFS' PLEADING | 3 |
| **POINT II** CLAIMS 1-6, 8-12 AND 16 BASED ON ALLEGED AGREEMENTS TO CONVEY THE PROPERTY PORTFOLIO DO NOT MEET THE REQUIREMENTS OF THE STATUTE OF FRAUDS; THE CLAIMS MUST BE DISMISSED | 5 |
| **POINT III** THE BREACH OF CONTRACT CLAIMS AGAINST STERN FAIL | 8 |
| **POINT IV:** THE FRAUDULENT CONCEALMENT, NEGLIGENT MISREPRESENTATION AND BREACH OF FIDUCIARY DUTY CLAIMS HAVE NO MERIT AND MUST BE DISMISSED | 8 |
| **POINT V:** THE FRAUD-BASED CLAIMS ARE DEFECTIVE AND SHOULD BE DISMISSED | 10 |
| **POINT VI** THE THIRTEENTH AND FOURTEENTH CLAIMS AGAINST FRENKEL AND LAND TITLE MUST BE DISMISSED | 12 |
| **POINT VII** THE CONVERSION CLAIM MUST BE DISMISSED | 13 |
| **POINT VIII** THE CONSPIRACY CLAIM SHOULD BE DISMISSED | 14 |
| **CONCLUSION** | 15 |

## TABLE OF AUTHORITIES

Page

**Federal Cases**

ESI, Inc. v. Coastal Corp., 61 F. Supp. 2d 35 (S.D.N.Y. 1999).................... 3

Fabry's S.R.L. v. IFT International, Inc., 2003 WL 21203405
(S.D.N.Y. May 21, 2003).................................................................... 13

In re Livent, Inc., 151 F. Supp. 2d 371 (S.D.N.Y. 2001).......................... 3

McCann, Inc. v. Di Lido Beach Resort, Ltd et al, 318 B.R. 276
(Bktcy. Ct., S.D.N.Y. 2004)................................................................. 3

Stillman v. Townsend, 2006 WL 2067035 2 (S.D.N.Y. July 26, 2006).............. 6

In re Wells, 296 B.R. 728 (Bkrtcy. E.D. Va. 2003).................................. 5

**State Cases**

Anostario v. Vicinanzo, 59 N.Y.2d 662, 450 N.E.2d 215, 463
N.Y.S.2d 409 (1983)..................................................................... 5,6-8

Benedict Realty Co. v. City of New York, 45 A.D.2d 713,
846 N.Y.S.2d 294 (2nd Dept. 2007)...................................................... 5

Bridgeview Development Corp. v. Hooda Realty, Inc., 145 A.D.2d 457,
535 N.Y.S.2d 418 (2nd Dept. 1988)...................................................... 5

Holman v. Childersburg Corporation, Inc., 352 So.2d 691 (Ala. 2002)............. 5

Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 521 N.Y.S.2d 672
(1st Dept. 1987)......................................................................... 9-10

Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Grp., PLC,
93 N.Y.2d 229, 689 N.Y.S.2d 674, N.E.2d 953 (1999)................................. 5

Payne v. Warren, 282 Ga. App. 524, 639 S.E. 2d 528 (Ga. App. 2006)............... 5

Pickelsimer v. Pickelsimer, 257 N.C. 696, 127 S.E.2d 557 (North Carolina 1962)..5

Read v. Henzel, 67 A.D.2d 186, 415 N.Y.S.2d 520 (4th Dept. 1979)................5

Rentz v. Grant, 934 So.2d 368 (Ala. 2006)..............................................................5

St. Paul's Realty Corp. v. Huan Jen Chin, 133 A.D.2d 450,
519 N.Y.S.2d 568 (2nd Dept. 1987)........................................................................5

Willmott v. Giarraputo, 5.N.Y.2d 50, 184 N.Y.S.2d 97 (1959).............................5

**Federal Statutes**

Federal Rules of Civil Procedure, Rule 8(d)..........................................................3

Federal Rules of Civil Procedure, Rule 9(b)........................................................10

**State Statutes**

Ala. Code § 8-9-2...................................................................................................5

Ga. Code § 13-5-30, 13-5-31 (3).............................................................................5

N.C. GS § 122-2......................................................................................................5

N.Y. Gen. Oblg. Law §5-703 (2006).......................................................................5

Va. ST § 11-1, § 11-2 (6).........................................................................................5

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted in further support of the motion by defendants Moses Stern a/k/a Mark Stern ("Stern"), First Republic Group Realty LLC ("First Republic"), Ephraim Frenkel ("Frenkel") and Land Title Associates Escrow ("Land Title") (collectively, the "FR DFTS") to dismiss the complaint (the "MTD").1

## INTRODUCTION

As arduously as plaintiffs strive to infuse some rationality or viable legal theory into their complaint, they fail. Instead, indicative of their desperation, plaintiffs resort to buzzwords such as "bizarre" and "inane" in their futile effort to defeat the MTD. Instead, the buzzwords describe the very divergent and contradictory (not alternative) factual averments upon which the pleading seeks to rest and survive the MTD. As noted in the Memorandum of Law in Support of the Motion to Dismiss (the "MOL"), the complaint invites the reader to consider (i) one claimed factual scenario, an "agreement" <u>unilaterally</u> created <u>after-the fact</u>, after Amusement advanced $13 million in connection with a closing (the so-called June 29, 2007 "LOI") and (ii) simultaneously, the inconsistent allegation of a subsequent "counter-offer" from Amusement as the operative agreement (the "July 11 Counter Offer") ; and, in connection with these juxtaposed positions, the complaint fails to satisfy the basic hornbook premise when it fails to allege there was a meeting of the minds. Actually the complaint does not even allege the meeting of minds with respect to material terms for a contract capable of enforcement. And, then, casting aside this fundamental principle, plaintiffs suggest the reader leave the lack of material terms in even one of these disparate "agreements" (or perhaps some other yet to be pleaded "agreement") to

---

1 The FR DFTS adopt the legal arguments of co-defendant Joshua Safrin ("Safrin") to the extent they support dismissal of the complaint against them.

1

another day – but, still fail to allege there was a meeting of the minds. Most tellingly, additionally, plaintiffs later bring themselves to claim a "contract" was entered into " by no later than July 11, 2007, having the consistent terms of the LOI . . . and the July 11, 2007 contract as described above" (Cmplt, ¶ 102). In this way, plaintiffs seek retroactively to manufacture a contract out of whole cloth, albeit, a <u>non-specific</u> one, resorting to the fiction that yet another iteration of their imaginary "contract" contains terms "consistent" with two other disparate and inconsistent "contracts" – one of which (the LOI) <u>expressly</u> noted it was <u>not an agreement</u> but a <u>proposal</u>, and the other which plaintiffs explicitly described as a "counter offer" (Cmplt, ¶¶ 53, 54) abrogating the existence of any alleged forerunner agreement. Thus, there can be but one indisputable conclusion, namely: there never was a meeting of the minds and no contract ever existed; and, even worse, the LOI and Counter Offer have inconsistent and contradictory terms.

Further, plaintiffs confirm the foregoing inevitable conclusion, months after a "contract" purportedly existed, when they forward a so-called "demand" letter of November 15, 2007 (attached to the complaint as Exhibit 4) explicitly stating:

> ". . . nor does Amusement Industry deem enforceable any particular documents or agreement among the parties."

Clearly, by its own explicit admission <u>four months</u> after the alleged "contribution and/or loan and/or the promissory note(s)," in an abundance of confusion, caution and downright uncertainty Amusement could not bring itself to conclude any supposed agreement or document was enforceable. <u>This is a most telling admission</u>; indeed, the final fatal flaw.

Moreover, although plaintiffs assert the FR DFTS stole $13 million, they concede they made no demand for its return until at least four months later. In truth, assuming for purposes of this motion the FR DFTS' counterclaims – if they need be filed -- do not exceed this amount, plaintiffs nevertheless are hiding behind this lawsuit and the extensive and intrusive third party

2

discovery in a misplaced effort to pressure the FR DFTS to force them to agree a partnership exists, which the complaint and attached documents clearly demonstrate was never agreed to by the parties.

There is but one consistent inevitable conclusion, namely, the complaint remains simply a hodgepodge of inconsistent (not alternative) and unsupportable theories, thrown together in the hope that something might stick. Unable to advance a coherent and consistent story, the internal contradictions in the complaint cause it to fail.

## POINT I

### THE COMPLAINT'S INHERENTLY CONTRADICTORY FACTUAL ASSERTIONS AND ADMISSIONS ARE FATAL TO PLAINTIFFS' PLEADING

As the FR DFTS noted in the MOL, a pleading may contain alternative claims (p. 12). Accordingly, plaintiffs' reliance on Federal Rule 8(d) for this noncontroversial proposition does not save their pleading.

In a footnote, plaintiffs deliberately twist the cases cited in the FR DFTS' MOL, to wit, McCann, Inc. v. DiLido Beach Resort, Ltd., et al., 318 B.R. 276 (Bktcy. Ct., S.D.N.Y. 2004) and In re Livent, 151 F.Supp.2d 371 (S.D.N.Y. 2001), which hold the incorporation of inconsistent factual allegations are binding admissions, <u>which operate to defeat the claims which are inconsistent with those factual allegations</u>. Plaintiffs claim those cases dealt with internal inconsistencies within claims; but, that is precisely what exists here. The factual predicate for each and every claim is set forth at the beginning of the complaint, in paragraphs 1 through 69, and "each and every allegation stated in the foregoing paragraphs of this Complaint" is expressly

3

incorporated into each and every claim (Cmplt, ¶¶70, 74, 80, 85, 93, 101, 109, 115, 121, 129, 135, 143, 151, 157, 166, 175, 182, 194, 199, 206, 213, 223, 228, 235, 242, 248, 257). 2

Curiously, plaintiffs wholly rely upon but one earlier and inapposite case, ESI, Inc. v. Coastal Corp., 61 F.Supp.2d 35 (S.D.N.Y. 1999). In ESI, the movant claimed the incorporation of an allegation that (a) defendants "conspired" together precluded a finding that the contracting parties would not have breached the contracts "but for" the movant's inducement, and (b) movant lacked knowledge of plaintiff's involvement in certain agreements precluded a tortious interference claim, which included an allegation that the movant knew of the agreements. While noting the plaintiff should not have directly incorporated those contrary allegations contained in prior claims, the court dismissed the argument as a technical error not requiring dismissal.

Assuming, somehow, one can put aside the more recent authority cited in the MOL, the factual contradictions here are of a magnitude which cannot be swept aside as a mere technicality; rather, plaintiffs' explicit contradictory allegations expressly form the foundation for each and every cause of action. Here, the contradictory factual allegations reveal patently divergent and inconsistent factual scenarios – e.g., a contract which was supposedly formed on June 29, 2007 (the LOI, couched in the form of a proposal) and a disparate contract which was supposedly formed on July 11, 2007 (described by plaintiffs as a "counter offer"), while failing to allege there was a meeting of the minds with regard to either scenario.

The complaint undeniably proceeds on internally inconsistent factual averments. Indeed, recognizing as much, the complaint offers a multiple choice menu of facts and remedies for the

---

2 The FR DFTS' MOL (pp. 13-14) provided specific examples of the inconsistent factual pleadings contained in particular claims, and they will not be repeated here.

first cause of action -- not alternative but inconsistent theories. For example, in the first claim the plaintiffs contend:

> "a.   That these defendants agreed to convey to Amusement a present and immediate 100% ownership interest in the property portfolio prior to First Republic LLC's purchase of the property portfolio from seller, Colonial Realty Limited Partnership"

and proceed to juxtapose that contention against:

> "e.   That in the alternative to "a." above, these defendants agreed to convey to Amusement a present and immediate 50% ownership interest in the property portfolio prior to First Republic LLC's purchase of the property portfolio from seller, Colonial Realty Limited Partnership"

The <u>only</u> difference is plaintiffs' contention of a 100% interest (in item "a.") and a 50% interest (in item "e"); yet plaintiffs cannot agree on what their contention is so they resort to <u>pleading both</u>, while also alleging, in their November 15, 2007 letter, they do not deem enforceable any agreement, thereby confessing the inconsistent theories have no legal foundation at all. The factual inconsistencies are fatal to the complaint.

## POINT II

### CLAIMS 1-6, 8-12 AND 16 BASED ON ALLEGED AGREEMENTS TO CONVEY THE PROPERTY PORTFOLIO DO NOT MEET THE REQUIREMENTS OF THE STATUTE OF FRAUDS; THE CLAIMS MUST BE DISMISSED

Plaintiffs first argue the FR DFTS cite "absolutely no authority" to support dismissal of claims 1-6, 8-12 and 16 based upon the Statute of Frauds. They are wrong; rather, plaintiffs simply chose to ignore the authorities cited on pages 14 through 17 of the MOL pretending that these authorities do not exist.3 The only plausible conclusion is plaintiffs have nothing to refute the cited authority that is dispositive of the issue; otherwise, why disregard it intentionally.

---

3 It is incomprehensible that plaintiffs argue the FR DFTS cite "absolutely no authority" to support the dismissal on Statute of Frauds grounds. Point II of the MOL (pp. 14-17) cites the following statutes and cases: New York General Obligations Law, § 5-703; <u>Willmott v. Giarraputo</u>, 5.N.Y.2d.250, 184 N.Y.S2d 97 (1959); <u>Read v. Henzel</u>, 67 A.D.2d 186, 415 N.Y.S.2d 520 (4th Dept. 1979); <u>Bridgeview Development Corp. v. Hooda Realty, Inc.</u>, 145

5

Indeed, no attempt is made by plaintiffs to distinguish these authorities -- and for good reason. <u>Anostario v . Vicinanzo</u>, 59 N.Y.2d 662, 405 N.E.2d 215, 463 N.Y.S.2d 409 (1983), for example, is directly on point and cannot be distinguished. In <u>Anostario</u>, there was an agreement the parties would hold equal shares of a corporation to be formed, to hold title to a seven story building, which shares of stock were not given by the defendant to the plaintiff. In the instant case, plaintiffs, in their inconsistent and contradictory claims, alleged they were either promised a 50% ownership interest or a 100% ownership interest in the Property Portfolio <u>or</u> First Republic. As more fully set forth in the MOL, the <u>Anostario</u> Court dismissed the complaint for specific performance directing the defendant to transfer to plaintiff shares of stock in the corporation which owned the property. Dismissal was based upon the absence of a writing as required by the Statute of Frauds involving the conveyance of real property and the partial performance alleged by plaintiff was not sufficient to eliminate this requirement.4 For the same reason, Claims 1-6, 8-12 and 16 should be dismissed.

---

A.D.2d 457, 535 N.Y.S.2d 418 (2nd Dept. 1988); <u>St. Paul's Realty Corp. v. Huan Jen Chin</u>, 133 A.D.2d 450, 519 N.Y.S.2d 568 (2nd Dept. 1987); Ala. Code § 8-9-2; Va. St. § 11-1, § 11-2 (6); Ga. Code § 13-5-30, 13-5-31(3); N.C. GS §22-2; <u>Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Grp., PLC</u>, 93 N.Y.2d 229, 235, 689 N.Y.S.2d 674, 711 N.E.2d 953 (1999); <u>Anostario v. Vicinanzo</u>, 59 N.Y.2d 662, 450 N.E.2d 215, 463 N.Y.S.2d 409 (1983); <u>Benedict Realty Co. v. City of New York</u>, 45 A.D.2d 713, 846 N.Y.S.2d 294 (2nd Dept. 2007); <u>Rentz v. Grant</u>, 934 So.2d 368, 373-374 (Ala. 2006); <u>Holman v. Childersburg Corporation, Inc.</u>, 352 So.2d 691, 697-699 (Ala. 2002); <u>In Re Wells</u>, 296 B.R. 728, 731-732 (Bkrtcy. E.D.Va. 2003); <u>Payne v. Warren</u>, 282 Ga. App. 524, 639 S.E.2d 528 (Ga. App 2006); <u>Pickelsimer v. Pickelsimer</u>, 257 N.C. 696, 698, 127 S.E2d 557, 560 (N.C. 1962).

4 The Complaint fails to allege any agreement exists which contains all the essential terms of an agreement signed by the party to be charged relating to the conveyance of the Property Portfolio. Rather, partial performance is alleged to have formed the LOI and partial performance is alleged to have formed the Counter Offer (see MOL pp. 14-17). Plaintiffs do not dispute the argument their <u>partial performance</u> was not sufficient to eliminate the requirement of a writing; rather, plaintiffs intentionally ignore this argument.

So, recognizing the fully dispositive nature of the Statute of Frauds opposition, plaintiffs choose a different and just as unpersuasive tack arguing affirmative defenses should not be determined on a motion to dismiss; relying on cases involving the very different and fact-laden affirmative defense of laches. Plaintiffs' position that the Statute of Frauds defense should not be considered on a motion to dismiss is plainly wrong. Indeed, the very same argument has been routinely rejected:

> "Plaintiff argues that consideration of the statute of frauds is inappropriate on a motion to dismiss. Yet courts routinely dismiss breach of contract claims on statute of frauds grounds. . . . [citations omitted]."

Stillman v. Townsend, 2006 WL 2067035 at *2 (S.D.N.Y. July 26, 2006).

In Anostario, the case plaintiffs wishfully pretend does not exist, the trial court dismissed the complaint for specific performance on Statute of Frauds grounds (the complaint was then reinstated by the Appellate Division, but the New York Court State of Appeals reversed, reinstating the trial court's judgment dismissing the complaint). Clearly, it is appropriate to now address the manifestly deficient contract claims, which cannot overcome the Statute of Frauds.

The first claim, for example, seeks a declaration that an agreement "to convey to Amusement a <u>present</u> 100% ownership interest in the property portfolio was entered into" relying on the never agreed to Counter Offer (emphasis supplied). Disparately, the first claim inconsistently seeks a declaration that an agreement "to convey to Amusement" a <u>present</u> and immediate 50% ownership interest in the Property Portfolio was entered into relying on the LOI which by its very terms is not a binding contract. However, the complaint never alleges these purported "agreements" contained all the essential terms of a complete agreement signed by the party to be charged to convey an estate or interest in real property as required by the Statute of Frauds; rather, <u>plaintiffs allege partial performance</u> (Compl. ¶¶ 36, 43, 44). These arguments and other documents relied upon are not unequivocally referable to an agreement to convey any

7

interest in the Property Portfolio to Amusement. For this reason the first claim and the others must be dismissed.5

Other claims clearly illustrating this point include the Eighth claim, which relies solely upon the LOI in requesting specific performance and an order providing Amusement with a 50% ownership interest of "First Republic LLC," as owner of the Property Portfolio (Compl. ¶ 119), and the Eleventh claim, which relies solely upon the Counter Offer in requesting specific performance and an order providing Amusement with a 100% ownership interest of First Republic LLC in the ownership and management of the Property Portfolio (Compl. ¶141). Based on Anostario, these claims must be dismissed.

## POINT III

## THE BREACH OF CONTRACT CLAIMS AGAINST STERN FAIL

To be clear, there is no privity between Stern and plaintiffs that could support a breach of contract claim against Stern in his individual capacity. Indeed, the so-called LOI (a proposal by its own terms) purports to have been signed by Stern on behalf of an entity described as "First Republic Group." It fails to support any claim it was signed by Stern in his individual capacity; indeed, the document flat out *contradicts* such a claim of individual liability, proposing "Westland and First Republic would enter into an agreement..." (Cmplt, Exh.2). It is thus incredible for plaintiffs to attempt to suggest Stern was a party to the LOI in his individual capacity. Similarly, the Counter-Offer – which thankfully the complaint does not assert was signed by anyone – cannot be construed as a contract which Stern entered into in his individual

---

5 The cases cited by plaintiffs in footnote 4 of their brief are inapplicable. The transfer of an ownership interest in First Republic LLC relates to the conveyance of real property, mandating compliance with the Statute of Frauds. The cases cited by plaintiffs did not involve any conveyance of real property.

capacity. And, finally, there is no claim that the Property Portfolio was purchased by Stern in his individual capacity. The disingenuous assertions that Stern is individually a party to the "proposal" LOI, the "unsigned" Counter Offer or some other manufactured concoction is unsupportable, and borders on bad faith.

## POINT IV

### THE FRAUDULENT CONCEALMENT, NEGLIGENT MISREPRESENTATION AND BREACH OF FIDUCIARY DUTY CLAIMS HAVE NO MERIT AND MUST BE DISMISSED

Ignoring the plain and indisputable facts that, at best, arms-length dealings were conducted in a sophisticated business transaction in which plaintiffs, sophisticated businessmen in their own right, were represented by counsel and a broker (the very son of the principal of plaintiffs), plaintiffs argue defendants somehow owed them a fiduciary duty, and fraudulently concealed facts which they should have been told; even if, apparently, plaintiffs did not insist on performing due diligence, did not insist that certain materials be provided to them and simply relied upon the plaintiffs' principal's son. Thus, plaintiffs' arguments fail and they have no one to look to but themselves and their co-conspirator son for any failings.

Then, in an especially creative vein, plaintiffs argue after execution of the "proposal" LOI, and if not then, <u>after advancing</u> $13 million, they somehow became "investors" in First Republic and, therefore, were owed a fiduciary duty. Of course, most notably and defeating their "contract" claim, plaintiffs do not claim to have executed the "proposal" LOI. By its terms the LOI was nothing more than a proposal, and, indeed, emanated from non-party Steven Alevy.[6] Thus, the LOI did not and could not create a fiduciary relationship or duty. The advancement of

---

[6] It is important to consider that Steven Alevy, a mortgage broker, is the son of Allen Alevy, the principal of plaintiffs and never introduced the FR DFTS to his father for any reason.

9

$13 million does not create a fiduciary duty. Indeed, plaintiffs themselves did not consider as much as their November 15, 2007 letter – four months <u>after</u> the advance, characterized the advance as, among other things, a loan (Exh 4 to Cmplt).

In spite of no basis for the claim, plaintiffs plod forward nevertheless, concocting the argument the same conduct may constitute a breach of contractual obligation and a breach of a duty arising out of a relationship created by contract which is independent of the contract, citing <u>Mandelblatt v. Devon Stores, Inc.</u>, 132 A.D.2d 162, 521 N.Y.S.2d 672, 676 (1st Dept. 1987). But <u>Mandelblatt</u> presented far different circumstances – a former officer who became a contractual consultant who allegedly disparaged the business which the owner was attempting to sell. The breach of fiduciary duty in <u>Mandelblatt</u> was based on the consultant's <u>duty</u> to give advice for the benefit of the company for which he was a consultant. The case is inapposite, and inapplicable to the circumstances at bar, where the parties clearly stood in arms-length bargaining positions, with no fiduciary duties being owed for a proposed **loan** transaction. It is submitted any other conclusion would suggest fiduciary duties should be imposed on every business transaction, which is not consistent with established law.

### POINT V

### <u>THE FRAUD-BASED CLAIMS ARE DEFECTIVE AND SHOULD BE DISMISSED</u>

As they do in their "response" to other arguments on the MTD, plaintiffs either avoid or completely fail to come to grips with the authority cited in the MOL.

<u>A. No misrepresentations were made to plaintiffs, requiring dismissal of the Nineteenth and Twentieth Claims</u>

Plaintiffs admit the alleged misrepresentations contained in the Nineteenth and Twentieth claims (alleging fraudulent and negligent misrepresentations), <u>were not made to them</u> but to

10

Frenkel, Land Title and non-party Steven Alevy; they do not claim the alleged misrepresentations were made to plaintiffs. So, again, ignoring the cases cited in the MOL, plaintiffs baselessly argue they may assert the claims because they were harmed. Citing utterly no law to support their argument, plaintiffs have essentially defaulted in responding to the point. The Nineteenth and Twentieth claims must be dismissed, as plaintiffs have failed to allege a misrepresentation was made to *plaintiffs*, upon which *plaintiffs* reasonably relied to their detriment; the basic requirements to plead a fraud-based claim.

B. The Fraud-based claims (Claims 15, 17, 20-23, 27) fail to comply with Rule 9(b)

Fraud-based claims must set forth what statements or representations were allegedly fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. The pleading cannot rely on vague or no references to "defendants." It appears in response to these arguments, plaintiffs allege all misrepresentations were made by "non-party" Stephen Friedman, rather than any of the defendants; such a cavalier response highlights the pleading's deficiencies. The complaint repeatedly clumps together various defendants, and does not attribute each alleged misrepresentation/omission to Friedman (see, e.g., Cmplt ¶ 215 [Stern, Safrin and First Republic LLC represented . . ."; ¶ 217 ["These representations by Stern, Safrin and First Republic LLC were false . . ."]). . Thus, the complaint remains blatantly deficient; it creatively contends the FR DFTS' non-statements and non-contact with the plaintiffs are misrepresentations. This is simply an amazing leap.

C. "False promise" allegations are not actionable as fraud

In response to the argument that Claim 23, alleging fraud through false promise of delivering partnership documents in the future is not actionable as fraud, plaintiffs argue a present intent not to perform in the future constitutes a fraud. But, plaintiffs then admit they

11

have not alleged the "defendants" harbored a present intention not to perform in the future (Pltfs. Br. in opposition to Safrin MTD, p. 19). Instead, they argue such necessary intent somehow should be inferred. It is not for this Court to re-draft the deficient complaint, nor does an alleged failure to ultimately deliver partnership documents in the future mean there was, retroactively, a fraudulent intent to never do so. The claim should be dismissed.

D.   The Fifteenth Claim for Fraudulent Inducement Claim Is Hopelessly Deficient and Contradicted by the Complaint's Factual Allegations

In the MOL, the FR DFTS argued the Fifteenth Claim for fraudulent inducement was nonsensical and contradicted by the "facts" alleged in the complaint. Thus:

> (A) plaintiffs allege on June 29, 2007, Safrin and Stern (through Friedman) misrepresented the entire $13 million was necessary to complete the Property Portfolio purchase when in fact, they knew only $9 million was necessary (Cmplt ¶ 168);
>
> (B) plaintiffs allege plaintiffs *knew* on June 29, 2007 only $9 million was required, and specifically allege they stated so in a writing – "... Amusement wrote to Stern and Safrin on June 29, 2007 stating that Stern and Safrin would only need to use about $9 million of Amusement's $13 million towards acquisition of the property portfolio . . ." (Cmplt, ¶ 176)
>
> (C) complicating the above factual allegations, plaintiffs also allege that sometime *after* July 2, 2007, Stern and Safrin negotiated for a reduction in the purchase price of the Property Portfolio, and achieved a $4.47 million reduction in the purchase price (Cmplt, ¶¶ 38-39).

Plaintiffs studiously avoid confronting these patently contradictory allegations, which defeat this claim. Specifically, plaintiffs ignore (i) their allegation that they wrote on June 29, 2007 only $9 million of the $13 million was required (Cmplt ¶ 176) and (ii) that they made no demand that the alleged loan be reduced to $9 million or any other claim regarding same. It is submitted, plaintiffs knew exactly what they were doing and proceeded full speed ahead while their principal's son, Steven Alevy, acted either as a broker or a principal of plaintiff or worse, as both. Thus, under the clear circumstances, the claim cannot stand.

12

## POINT VI

### THE THIRTEENTH AND FOURTEENTH CLAIMS AGAINST FRENKEL AND LAND TITLE MUST BE DISMISSED

Predictably, plaintiffs utterly ignore the argument that the allegations establish plaintiffs ratified the release of the escrow. In this regard, yet again, they studiously avoid, e.g., allegations that (a) the LOI "contract" was formed through their wiring of funds (Cmplt ¶ 36), (b) on July 19, 2007 plaintiffs requested only the interest on the sum be returned and (c) on November 15, 2007, rather than demand a return of the funds, plaintiffs demanded a release of escrow documents (Exh 4 to Cmplt). Plaintiffs seek to dodge their clear and obvious ratification of the release. To the extent plaintiffs try to rely on an allegation that on July 15, 2007 they advised if the funds were previously released they should be "retrieve[d]" (Cmplt ¶ 65), such allegation is a far cry from a demand that the funds be returned; and, in any event, is obviously overridden by plaintiffs' subsequent ratifying conduct of (a) July 19, 2008 (requesting only the interest on the sum) and (b) November 15, 2007 (requesting only escrow documents). Plaintiffs clearly ratified the release. The Thirteenth and Fourteenth claims have no basis.

## POINT VII

### THE CONVERSION CLAIM MUST BE DISMISSED

In response to arguments submitted in support of the MTD regarding the conversion claim (the Twenty-Fourth Claim), plaintiffs rely on inapposite cases. For example, plaintiffs cite Fabry's S.R.L. v. IFT International, Inc., 2003 WL 21203405 (S.D.N.Y. May 21, 2003), but note the court upheld the conversion claim there because the defendant retained a sum of money after a contract was terminated (Plfts Br., p.9).

Of more interest, however, is plaintiffs' argument "plaintiffs have alleged that, if a contract never formed between the parties – which plaintiffs do not believe to be the case – Stern

13

(and Safrin) nonetheless wrongfully have converted plaintiffs' $13 million" 7(Pltfs Br., p. 9). To the extent plaintiffs claim there was no contract – alleging defendants "[knew] that Amusement lacked a final arrangement with these defendants" (Cmplt, ¶ 240) and Stern and Safrin "falsely represented to Steven Alevy, Frenkel and Land Escrow that a final and agreed ownership and security arrangement Plaintiffs and Stern/Safrin had been reached [sic]" (Cmplt, ¶ 236) – plaintiffs have simply <u>reinforced</u> the absence of any contractual agreement; yet again, contradicting their contract-based causes of action. Accordingly, plaintiffs' contrary averments on the conversion claim further confirm the absence of a breach of contract claim (see Point I).

## POINT VIII

## <u>THE CONSPIRACY CLAIM SHOULD BE DISMISSED</u>

It is undisputed New York does not recognize an independent cause of action for civil conspiracy (Twenty-Fifth Claim). Instead, ignoring the MOL, plaintiffs resort to accusing the FR DFTS of not providing a complete recitation of the law, arguing a conspiracy claim stands or falls on the underlying tort. But the MOL brief noted same, advising plaintiffs "have asserted (defective) claims for the underlying torts; [accordingly] no cause of action for conspiracy exists." MOL, p. 35. Accordingly, again, there is no refutation of the law cited by the FR DFTS; thus, the conspiracy claim has no support.

---

[7] Curiously, plaintiffs nowhere explain how or why they can allege no contract was formed while asserting their contrary belief that a contract was indeed formed as the predicate for many of their cause of action.

14

Notably, the conspiracy claim presents another instance of plaintiffs' "cover all bases" in search of a theory approach to pleading, conveniently ignoring their prior allegations that Frenkel and Land Title were tricked into releasing the $13 million and now, in this claim, conclusorily allege they knowingly conspired with Stern and Safrin to have the funds improperly released, thereby contradicting the improper inducement allegations expressly incorporated into the conspiracy claim and disregarding the very instructions of Steven Alevy to release the escrow. The claim should be dismissed.

## CONCLUSION

For the reasons stated herein and in the MOL, the MTD should be granted in all respects.

Dated: New York, New York
April 11, 2008

        HOFFIGNER STERN & ROSS, LLP
        Attorneys for All Defendants (except Joshua Safrin)

        By:   Stephen R. Stern, Esq.
              Philip S. Ross, Esq.
              Mark W. Geisler, Esq.
        150 East 58th Street, 19th Floor
        New York, New York 10155
        (212) 421-4000