UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
AMUSEMENT INDUSTRY, INC., dba WESTLAND          :   No. 07 Civ. 11586 (LAK)(GWG)
INDUSTRIES; PRACTICAL FINANCE CO., INC.,        :
                                                :
                         Plaintiffs,            :
                                                :   (ECF)
       - against -                              :
                                                :
MOSES STERN, aka MARK STERN; JOSHUA SAFRIN,     :
FIRST REPUBLIC REALTY LLC, EPHRAIM              :
FRENKEL, LAND TITLE ASSOCIATES ESCROW,          :
                                                :
                         Defendants.            :
------------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT JOSHUA SAFRIN'S MOTION TO DISMISS THE COMPLAINT</u>**

Of Counsel:

    Jonathan D. Lupkin
    Jean Marie Hackett

**FLEMMING ZULACK WILLIAMSON ZAUDERER LLP**
**Attorneys for Defendant Joshua Safrin**
**One Liberty Plaza, 35th Floor**
**New York, New York 10006**
**(212) 412-9500**

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT .......................................................................... 1

ARGUMENT ........................................................................................................ 2

I. IN SITUATIONS SUCH AS THIS, IT IS ENTIRELY
   APPROPRIATE FOR THE COURT TO DISMISS AGENCY
   CLAIMS AT THE PLEADING STAGE ....................................................... 2

   A. This Court Has Dismissed Agency Claims As A Matter Of Law Where,
      As Here, Plaintiffs Fail To Allege Facts That Would
      Establish A Principal-Agent Relationship ................................................. 2

   B. Plaintiffs' Agency Claim Rests Entirely (And Inappropriately) Upon
      The Words And Conduct Of Friedman, The Putative Agent ................... 3

      1. The So-Called LLC "Assignment Agreement" Only
         Reveals Conduct By Friedman ........................................................... 4

      2. Plaintiffs Have Not Alleged That Safrin Himself
         Did Anything To Ratify Friedman's Authority .................................. 5

II. THE DOCUMENTS ATTACHED TO THE COMPLAINT REFUTE
    PLAINTIFFS' CLAIM THAT SAFRIN WAS A PARTY TO ANY OF
    THE ALLEGED CONTRACTS ................................................................... 6

III. ALL NEGLIGENT MISREPRESENTATION, FRAUDULENT
     CONCEALMENT AND BREACH OF FIDUCIARY DUTY
     CLAIMS REQUIRE A SPECIAL RELATIONSHIP, AND NONE IS
     ALLEGED HERE ......................................................................................... 7

## **TABLE OF CONTENTS**

Page(s)

    A. The Need For A Special Relationship Is Clear ..................................... 7

    B. No "Special Relationship" Existed Between Safrin And Plaintiffs ........ 8

    C. Plaintiffs' Proffer Of A "Special Relationship Substitute" -- i.e., Defendants' Partial Disclosures of Information And Superior Knowledge -- Fails Because Plaintiffs Were Well Aware That They Were Missing Material Information And Proceeded With The Transaction Anyway ....................................................................... 9

IV. PLAINTIFFS' FRAUD ARGUMENTS ARE DEFECTIVE ....................... 9

    A. Plaintiffs' Deficient Agency Claim Underscores Their Failure To Comply With Rule 9(b) .......................................................................... 9

    B. Plaintiffs Offer No Support For Their Argument That Statements Made To *Third Parties* (Counts 19 and 20) Are Actionable As A Fraud Perpetrated Upon Plaintiffs ................................................................... 11

    C. Plaintiffs Reluctantly Concede That Count 23 Fails To Allege That Safrin Did Not Intend To Perform His "Promise" ......................... 11

    D. Plaintiffs' Factually Inconsistent Claim in Count 15 -- That Defendants Fraudulently Induced Plaintiffs To Invest Based On Facts That Defendants Themselves Did Not Learn Until A Later Point In Time -- Cannot Plausibly Support A Fraud Claim .................... 12

    E. Plaintiffs' Decision To Proceed With The Transaction Without Confirming Admittedly Material Facts Was Unreasonable As A Matter Of Law And Defeats Any Claim Of Justifiable Reliance ........... 12

V. PLAINTIFFS' CONVERSION CLAIM FAILS BECAUSE THEY CONCEDE THAT STEVEN ALEVY IS RESPONSIBLE FOR THE RELEASE OF THE ESCROW FUNDS ..................................................... 13

CONCLUSION ............................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

380544 Canada, Inc. v. Aspen Tech., Inc., No. 07 Civ. 1204(JFK),
    2008 WL 731971 (S.D.N.Y Mar. 18, 2008) ........................................................ 8

A. Terzi Prods., Inc. v. Theatrical Protective Union,
    2 F. Supp. 2d 485, 492 (S.D.N.Y. 1998)............................................................ 5, 6

Allied Irish Banks, P.L.C. v. Bank of America N.A., No. 03 Civ. 3748(DAB),
    2006 WL 278138, (S.D.N.Y. Feb. 2, 2006) ........................................................ 13

Ambra v. Awad, 16 Misc. 3d 1128(A), 847 N.Y.S.2d 900, 2007 WL 2409600,
    (Sup Ct. Nassau Co. Aug. 6, 2007) .................................................................. 12

Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano, No. 03 CIV. 0015
    (RWS), 2006 WL 1997628 (S.D.N.Y. July 18, 2006)......................................... 2

Banque Arabe Et Internationale D'Investissement v. Md. Nat'l Bank,
    850 F. Supp. 1199 (S.D.N.Y. 1994), aff'd, 57 F.3d 146 (2d Cir. 1995).............. 5

Belin v. Weissler, No. 97 Civ. 8787 (RWS), 1998 WL 391114,
    (S.D.N.Y. July 14, 1998) .................................................................................. 13

Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955 (2007) ........................ 2-3, 5, 12

Catton v. Def. Tech. Sys., Inc., No. 05 Civ. 6954 (SAS), 2006 WL 27470,
    (S.D.N.Y. Jan. 3, 2006).................................................................................... 13

Dover Ltd. v. A.B. Watley, Inc, 423 F. Supp. 2d 303 (S.D.N.Y. 2006) ...................... 9, 10, 14

Germano v. Cornell Univ., No. 03 Civ. 9766(DAB),
    2005 WL 2030355 (S.D.N.Y. 2005).................................................................. 4, 8

GMA Accessories, Inc. v. ePartners Inc., No. 07 Civ.8414 (LAK),
    2008 WL 781188 (S.D.N.Y. Mar. 19, 2008) ...................................................... 11

Hallock v. State, 64 N.Y.2d 224, 474 N.E.2d 1178, 485 N.Y.S.2d 510 (1984) .......... 3

Heredia v. United States, 887 F. Supp. 77  (S.D.N.Y. 1995) .................................... 2

In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549 (S.D.N.Y. 2004)........... 4

## TABLE OF AUTHORITIES, Con't

**Cases**                                                      Page(s)

In re Lois/USA, Inc. v. Conesco Fin. Serv. Corp., 283 B.R. 382
    (Bankr. S.D.N.Y. 2002) .................................................................................... 10

In re Pfizer, Inc. Sec. Litig., No. 06 Civ. 14199 (LAK), 2008 WL 540120,
    (S.D.N.Y. Feb. 28, 2008) ..................................................................................... 2

In re Tristar Pictures, Inc., Litig., 634 A.2d 319 (Del. 1993) ....................................... 8

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) ............................................................. 3, 12

Kaye v. Grossman, No. 97 Civ. 8679 (JSR), 1999 WL 33465,
    (S.D.N.Y. Jan. 27, 1999)....................................................................................... 3

Lorentzen v. Curtis, 18 F. Supp. 2d 322 (S.D.N.Y. 1998) .............................................. 5

Maillet v. Frontpoint Partners, LLC, No. 02 Civ. 7865(GBD),
    2003 WL 21355218 (S.D.N.Y. June 10, 2003) ................................................... 8

Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 521 N.Y.S.2d 672
    (1st Dep't 1987)..................................................................................................... 8

Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.,
    244 F.R.D. 204 (S.D.N.Y 2007).......................................................................... 10

Matsumura v. Benihana Nat'l Corp., No. 06 Civ. 7609(NRB), --- F. Supp. 2d ----,
    2008 WL 282021 (S.D.N.Y. Jan. 25, 2008) .................................................. 12-13

Nat'l Westminster Bank, U.S.A. v Ross, 130 B.R. 656 (S.D.N.Y. 1991).................. 11, 12

Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP, No. 03 Civ. 0613 (GBD),
    2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ........................................................ 3

O'Brien v. Nat'l Prop. Analysts Partners,
    719 F. Supp. 222 (S.D.N.Y. 1989) ....................................................................... 5

Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 51 F. Supp. 2d 457,
    (S.D.N.Y. 1999)................................................................................................. 2, 3

## **TABLE OF AUTHORITIES, Con't**

**Cases**                                                                                                        Page(s)

Patane v. Clark, 508 F.3d 106 (2d Cir. 2007) ............................................................ 8

Randolphe Equities, LLC v. Carbon Capital, Inc., No. Civ. 10889 (PAC),
   2007 WL 914234 (S.D.N.Y. Mar. 26, 2007) ........................................................ 7

Reiss v. Societe Centrale du Groupe des Assurances Nationales,
   246 F. Supp. 2d 273 (S.D.N.Y. 2003) ................................................................... 5

Rich v. Maidstone Fin., Inc., No. 98 CIV. 2569(DAB), 2001 WL 286757
   (S.D.N.Y. Mar. 23, 2001) .................................................................................. 9-10

Rozsa v. May Davis Group, Inc., 187 F. Supp. 2d 123 (S.D.N.Y. 2002),
   aff'd, Rozsa v. SG Cowen Sec. Corp., 165 Fed. Appx. 892 (2d Cir. 2006) .......... 3, 4

Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, (S.D.N.Y. 2006) .......... 10, 12

Standard Funding Corp. v. Lewitt, 89 N.Y.2d 546, 678 N.E.2d 874 (1997) ............... 5

Teevee Toons, Inc. v. Gerhard Schubert GMBH, No. 00 Civ. 5189 (RCC),
   2002 WL 498627 (S.D.N.Y. Mar. 29, 2002) ........................................................ 3

United States v. Int'l Bhd. Of Teamsters, 986 F.2d 15 (2d Cir. 1993) ........................ 3

**Statutes and Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 2, 8

Fed. R. Civ. P. 9(b) ...................................................................................................... 9-10

**PRELIMINARY STATEMENT**

Plaintiffs' opposition brief ("Opp.") does nothing to remedy fatal flaws that pervade their Second Complaint ("SC"). Indeed, plaintiffs' opposition is remarkable for its glaring shortcomings, including: (i) its failure to address, refute, or distinguish the ample authority cited by Safrin that justifies dismissal of this amorphous pleading. (Safrin's opening brief cites more than 60 cases, of which plaintiffs anemically attempt to distinguish a mere six (e.g., Opp. at 22 n.6, 24-25.)); (ii) its interposition of several arguments without citing to any legal authority (Opp. at 13-14 (Pt. III.A), 18 (Pt. IV.B), and 19-20 (Pt. IV.D)); and (iii) its use by plaintiffs as an impermissible "quick fix" for their pleading deficiencies, advancing arguments and making assertions that have simply have not been pleaded.

There is one final point. Lest there be any lingering doubt based upon the complaint itself, plaintiffs' opposition makes absolutely clear that Safrin does not belong in this case and that non-parties Stephen Friedman and Steven Alevy do. First, plaintiffs' papers readily concede that all of the alleged misrepresentations attributed to Safrin in their tortuous, 262-paragraph complaint were made by attorney Stephen Friedman; plaintiffs, however, do not and cannot plead a principal-agent relationship that would justify this attribution. (SC ¶32; Opp. at 1, 10, 17-18.)[1] Second, plaintiffs' brief declares affirmatively that Steven Alevy, the son of plaintiff Amusement's sole shareholder, was responsible for the release of the funds in escrow – the very core of the Complaint. (Opp. at 4.) One can only speculate as to why plaintiffs have chosen not to name Friedman and Alevy as defendants, but what is clear is that the complaint should be dismissed as to Mr. Safrin in its entirety, and with prejudice.[2]

---

[1] Plaintiffs' suggestion that Safrin does not contest their charges of thievery (Opp. at 1, 26) borders on irresponsible. Not only does Safrin vehemently challenge the very notion that he had anything to do with the transactions at issue (including the alleged "thievery"), but plaintiffs have been well aware of his position for some time. Before even filing his motion to dismiss, Safrin provided plaintiffs with the declaration of a well-respected forensic document examiner, attesting to the fact that Safrin's "signature" on several of the key documents in this case was not genuine, and requested that plaintiffs voluntarily dismiss Mr. Safrin from the case. (Def's Br. at 8 n.4.) That they have not done so is regrettable, and their decision will be proven in time to have been ill-advised. Nevertheless, it just cannot be said that Safrin has acknowledged complicity in a scheme to steal plaintiffs' money.

[2] Dismissal without leave to replead is appropriate where, as here, plaintiffs have already had two opportunities to present a viable complaint against Safrin. (See Def's Br. at 1 nn.1-2.) In addition, plaintiffs cannot, as they do here, merely drop a footnote in their opposition papers to request leave to amend (see Opp. at 6 n.4), without giving any

**ARGUMENT**

**I.   IN SITUATIONS SUCH AS THIS, IT IS ENTIRELY APPROPRIATE FOR THE COURT TO DISMISS AGENCY CLAIMS AT THE PLEADING STAGE**

In opposition to Safrin's arguments that plaintiffs have not pleaded a viable agency relationship between him (Safrin) and Friedman, plaintiffs advance two separate counter-arguments: (1) that "agency claims typically are not resolvable on motions to dismiss" (Opp. at 6); and (2) that the allegations in the complaint, when viewed in conjunction with the complaint's attachments, are sufficient to create the inference of an agency relationship (Opp. at 7-11). Even under basic pleading standards, neither of these arguments has merit.

**A.   This Court Has Dismissed Agency Claims As A Matter Of Law Where, As Here, Plaintiffs Fail To Allege Facts That Would Establish A Principal-Agent Relationship**

Contrary to plaintiffs' assertion, and as illustrated in our moving papers, this Court has not hesitated, in appropriate circumstances, to dismiss claims of agency on a Rule 12(b)(6) motion to dismiss. (See Def's Br. at 13, 14-15 (citing cases).) Notably, plaintiffs ignore this authority, choosing, instead, to highlight other cases. But the cases marshaled by plaintiffs merely stand for the proposition that "agency claims *typically* are not resolvable on motions to dismiss." (Opp. at 6-7 (emphasis added).) See Heredia v. United States, 887 F. Supp. 77, 80 (S.D.N.Y. 1995) ("*where the circumstances alleged in the pleading 'raise the possibility of a principal-agent relationship,'* . . . questions as to the existence and scope of the agency" are issues of fact.") (emphasis added)).[3] As set forth at length in Safrin's moving papers, the meager agency-based allegations leveled against Safrin are hardly "typical." (See, e.g., Def's Br. at 9-11, 13-16.) Moreover, it bears mention that all of plaintiffs' cases pre-date Bell Atlantic Corp. v.

---

indication as to what defects they might cure or how they would go about curing them. This "technique" is procedurally improper, and plaintiffs' request should be denied on this basis alone. See In re Pfizer, Inc. Sec. Litig., No. 06 Civ. 14199 (LAK), 2008 WL 540120, at *9 n.108 (S.D.N.Y. Feb. 28, 2008) (Kaplan, J.) (granting defendants' motion to dismiss and denying plaintiffs' request for leave to amend, without prejudice to plaintiffs' filing such a motion for leave to amend accompanied by a proposed amended complaint, where plaintiffs requested leave in a footnote of their memorandum).

[3] The remaining two cases cited by plaintiffs on this point, Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 51 F. Supp. 2d 457, 471 (S.D.N.Y. 1999) and Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano, No. 03 CIV. 0015 (RWS), 2006 WL 1997628, at *10 (S.D.N.Y. July 18, 2006) merely refer back to Heredia.

Twombly, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007) and Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), decisions that require plaintiffs' allegations to do more than merely establish a speculative entitlement to relief.  Plaintiffs' allegations do not come close to overcoming the Twombly hurdle; as detailed in Safrin's moving papers (see Def's Br. at 12, 13-16), the complaint does not raise a "plausible" claim of an agency relationship between Safrin and Friedman.  Accordingly, and because plaintiffs' "agency" allegations are grossly insufficient and, therefore, atypical, dismissal at this juncture is entirely appropriate.

**B.     Plaintiffs' Agency Claim Rests Entirely (And Inappropriately) Upon The Words And Conduct Of Friedman, The Putative Agent**

It is well settled that "[t]he agent cannot confer authority upon himself or make himself an agent merely by saying that he is one."  Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP, No. 03 Civ. 0613 (GBD), 2004 WL 112948, at *6 (S.D.N.Y. Jan. 22, 2004); See Rozsa v. May Davis Group, Inc., 187 F. Supp. 2d 123, 130 (S.D.N.Y. 2002), aff'd, Rozsa v. SG Cowen Sec. Corp., 165 Fed. Appx. 892 (2d Cir. 2006) ("the alleged agent with whom the third-party was dealing . . . cannot cloak itself with apparent authority").  Rather, as the cases cited by both Safrin (Def's Br. at 13-15) and plaintiffs makes clear (Opp. at 7, 9-10),[4] an agent can only derive his authority from the words or act of the alleged principal.  See Kaye v. Grossman, No. 97 Civ. 8679 (JSR), 1999 WL 33465, at *1 (S.D.N.Y. Jan. 27, 1999) ("Authority – whether actual or apparent – can only be vested in an agent by the  words or actions of the *principal*") (emphasis in original) (citation omitted).

---

[4] See Opp. at 8-10, citing Teevee Toons, Inc. v. Gerhard Schubert GMBH, No. 00 Civ. 5189 (RCC), 2002 WL 498627, at *3-4 (S.D.N.Y. Mar. 29, 2002) (apparent authority sufficiently alleged where purported agent introduced principal to the plaintiff, and "at that time, [the principal] allegedly expressed his enthusiasm about the Biobox project [for which the agency was at issue]" and where the alleged agent and principal "were parties to an 'exclusive agency agreement'"); Hallock v. State, 64 N.Y.2d 224, 231, 474 N.E.2d 1178, 1182, 485 N.Y.S.2d 510, 514 (1984) (plaintiff-client (i.e. the principal) created the impression that the attorney (i.e. the agent) was authorized to enter into the settlement); Old Republic, 51 F. Supp. 2d at 472-73 (considering the custom of the importing business of posting bonds, the past relationship between the alleged agent and principal, as well as the present contract between the alleged agent and principal, the Court held that the plaintiff may be able to proceed on the theory of actual authority); United States v. Int'l Bhd. of Teamsters, 986 F.2d 15, 20 (2d Cir. 1993) (attorney had apparent authority to bind the client to settlement where, among other things, "the Local 493 officers themselves [i.e., the clients] indicated their belief in their attorney's authority to settle").

3

In support of their contention that Safrin cloaked Friedman with authority to act as his (Safrin's) agent on this transaction, plaintiffs' opposition, like their complaint, offers only instances of *Friedman*'s statements to and conduct towards plaintiffs. (See Opp. at 7-10.) Notably, unlike the situations presented in their cited cases, plaintiffs here offer neither a single statement made by Safrin to plaintiffs (or to anyone, for that matter), nor any long-standing relationship between Safrin and Friedman to bolster their claim. Indeed, the only prior relationship upon which plaintiffs rely to support their agency claim is a prior attorney-client relationship between Friedman and *plaintiffs*. (See SC ¶31; Opp. at 7-8.) The established case law makes clear that none of this is sufficient.

### 1. The So-Called LLC "Assignment Agreement" Only Reveals Conduct By Friedman

Plaintiffs attempt to salvage their agency argument by pointing to the so-called LLC "Assignment Agreement" provided to Amusement by *Friedman* (SC ¶52(c)) and purportedly "executed" by Safrin. (SC, Ex. 5; Opp. at 8, 9.) Plaintiffs claim that this document is evidence of conduct by Safrin that cloaked Friedman (in the eyes of plaintiffs) with purported "apparent authority" to operate on Safrin's behalf.

But even the most cursory inspection of the LLC "Assignment Agreement," which is attached to the complaint as Exhibit 5, reveals that the document is not what plaintiffs say it is (i.e., Safrin's assignment of certain LLC interests to plaintiff Amusement). (Opp. at 9; see, e.g., SC ¶¶ 71(c), 81.)[5] Specifically:

- Amusement is not identified as the assignee. Indeed, the document does not identify the assignee; the space provided in the "agreement" to identify the putative assignee is left blank.

---

[5] "When allegations contained within the complaint are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint as true." Rozsa, 187 F. Supp. 2d at 128; see also In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004); Germano v. Cornell Univ., No. 03 Civ. 9766(DAB), 2005 WL 2030355, at *6 (S.D.N.Y. Aug. 17, 2005) (where Cornell Faculty Handbook directly contradicted Plaintiff's version of the contract terms as set forth in the complaint, "the Complaint's allegations d[id] not establish the existence of an oral contract . . . between Defendants and Plaintiff").

4

- Safrin's alleged signature, as it appears in the document, is not witnessed, as required by the form itself. (The absence of a witness to the signature is particularly troubling where, as here, plaintiffs are abundantly aware of Safrin's claim that the signature on this document is forged and that a reputable expert has already so concluded).

- The Complaint itself makes plain that Friedman did not give plaintiffs this document until *July 11th* – weeks after plaintiffs began negotiations with Friedman (ostensibly on behalf of Safrin), and entered into the LOI, and only a day before the closing on the sale of the property (SC ¶¶52, 58). The temporal disparity between when Friedman first declared himself to be Safrin's agent and when the plaintiffs received the purported LLC "Assignment Agreement" demonstrates convincingly that plaintiffs' agency claim is based on nothing more than the allegation that Friedman, the agent, represented to plaintiffs that he had authority to act on behalf of Safrin (SC ¶¶32-33).

In short, the so-called LLC "Assignment Agreement," given its obvious defects, cannot be used to elevate plaintiffs' otherwise deficient agency allegations above the "plausibility" threshold standard required by Twombly and its progeny.[6]

### 2. Plaintiffs Have Not Alleged That Safrin Himself Did Anything To Ratify Friedman's Authority

Nor does plaintiffs' "ratification" argument salvage their ailing agency claim.[7] Because plaintiffs concede in their opposition papers that Safrin had no active role in the transactions

---

[6] Plaintiffs also attempt somehow to resuscitate their agency claim by arguing that Friedman "continued" to provide plaintiffs with documents, including the Citibank documents and operating agreements purportedly signed by Safrin. (Opp. at 8 (citing SC ¶61).) Safrin respectfully submits that these arguments, which appear nowhere in the complaint (including in ¶61, cited by plaintiffs), do not substitute for proper pleading. In fact, not only are these allegations absent from the Complaint, but the complaint itself alleges quite the opposite, asserting, at several points, claims premised upon, inter alia, Friedman's *concealment* of these documents. (SC ¶¶183, 197, 214, 226.) In any event, "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." Lorentzen v. Curtis, 18 F. Supp. 2d 322, 328 (S.D.N.Y. 1998) (quoting O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).

[7] As the law cited by plaintiffs makes clear, "[t]o ratify the unauthorized act of an agent, a principal must have full and complete knowledge of all the material facts of the transaction." Banque Arabe Et Internationale D'Investissement v. Md. Nat'l Bank, 850 F. Supp. 1199, 1213 (S.D.N.Y. 1994), aff'd, 57 F.3d 146 (2d Cir. 1995) (cited in plaintiffs' Opp. at 10, 11); see also Opp. at 10-11, citing Standard Funding Corp. v. Lewitt, 89 N.Y.2d 546, 552, 678 N.E.2d 874, 877, 656 N.Y.S.2d 188, 191 (1997); Reiss v. Societe Centrale du Groupe des Assurances Nationales, 246 F. Supp. 2d 273, 283 (S.D.N.Y. 2003). Here, plaintiffs concede that all of the statements alleged in the complaint were made by Friedman, and all negotiations described by the complaint occurred through Friedman. Because the complaint does not allege that Safrin does or says anything, plaintiffs' current contention -- that Safrin actually did something to ratify any or all of Friedman's actions, or that Safrin had any knowledge (let alone "complete knowledge") of all the material facts -- is nonsensical. See A. Terzi Prods., Inc. v. Theatrical Protective Union, 2 F. Supp. 2d 485, 492 (S.D.N.Y. 1998) (plaintiffs' conclusory allegation that union members ratified the tortious acts of the union officers by approving labor agreement was "a leap [that] finds no support in the

alleged in the complaint (i.e., all of the negotiations occurred through Friedman, and all of the alleged misstatements were made by Friedman) they have nothing to point to as an example of an act by Safrin ratifying Friedman's conduct.

Absent the ability to establish ratification by Safrin's conduct, plaintiffs attempt to manufacture implied ratification from Safrin's purported retention of the "benefits" of Friedman's actions. Plaintiffs identify Friedman's provision of the "assignment" of LLC interests and transactional documents to them and Safrin's so-called ownership of the real estate portfolio as the "benefits" Safrin received.[8] (Opp. at 11.) But it is entirely unclear how Friedman's provision of the "assignment agreement" and transaction documents to plaintiffs translates into "benefits" retained by Safrin. They also fail to present a credible argument as to how Safrin benefited "by his ownership of the real estate portfolio" (Opp. at 11), given their claim that the very LLC "Assignment Agreement" to which they point purports to divest Safrin of his interests in the LLC that owned the property portfolio. (Opp. at 13.) In short, plaintiffs' ratification argument is meritless.

## II. THE DOCUMENTS ATTACHED TO THE COMPLAINT REFUTE PLAINTIFFS' CLAIM THAT SAFRIN WAS A PARTY TO ANY OF THE ALLEGED CONTRACTS

In their opposition, plaintiffs do not dispute that Safrin can only be held liable for contracts to which Safrin *qua* individual is a party. Rather, they contend that they have asserted breach of contract claims against Safrin in his individual capacity. (Opp. at 11-13.)

This is just not so, and plaintiffs' assertion to the contrary finds no support in either the complaint or the documents to which it refers. As set forth at length in Safrin's moving papers (Def's Br. at 17, 18-19), all of the plaintiffs' contract claims concern the breach of terms purportedly agreed upon in the LOI, as modified by a subsequent "agreement" supposedly

---

Complaint's allegations" where plaintiffs did not allege that the union members "had any knowledge, let alone 'full knowledge,' of the allegedly tortuous conduct . . . ."). Further, in this case, like in A. Terzi Prods., plaintiffs allege a number of wrongful acts, but "have made no effort to allege that [Safrin] knew of and ratified each specific act, as required by New York law." Id. (citing N.Y. Jur.2d §177).

[8] Nor could Friedman's provision of these documents to plaintiffs constitute a ratifying "act" by Safrin.

6

formed as a result of Amusement's July 11, 2007 counteroffer. But Safrin the individual is neither a party to the LOI nor the subsequent "agreement." Indeed, the documents attached to the complaint, namely, the LOI and the draft partnership agreement that purportedly embody the parties' alleged agreement (SC, Ex. 2, 3) flatly contradict any such claim: the only parties to those "agreements" are Amusement and First Republic Corp.[9] Since plaintiffs baldly assert -- but fail to allege plausibly --- that Safrin himself is a party to any of the purported contracts at issue, the breach of contract claims against him must be dismissed. Accord <u>Randolphe Equities, LLC v. Carbon Capital, Inc.</u>, No. Civ. 10889 (PAC), 2007 WL 914234, at *4 (S.D.N.Y. Mar. 26, 2007) (dismissing, at the pleadings stage, breach of contract claim against defendant AFC where plaintiffs failed to plead facts sufficient to show that AFC entered into agreement with plaintiffs; <u>held</u>, even if valid contract had been created, AFC was not a party to that contract).

### III. ALL NEGLIGENT MISREPRESENTATION, FRAUDULENT CONCEALMENT AND BREACH OF FIDUCIARY DUTY CLAIMS REQUIRE A SPECIAL RELATIONSHIP, AND NONE IS ALLEGED HERE

Plaintiffs advance three arguments as to why their breach of fiduciary duty, fraudulent concealment and negligent misrepresentation claims (collectively, the "Special Relationship Claims") are properly pled: (1) that because these claims allege affirmative misrepresentations, there is no requirement to allege a special relationship; (2) that Safrin owed fiduciary obligations to Amusement because he was either an incorporator, manager, director or "the like" of First Republic LLC; and (3) the existence of a special relationship is not required because there exists a "special relationship substitute," namely, defendants' alleged partial disclosures of information and superior knowledge. None of these assertions has merit.

#### A. The Need For A Special Relationship Is Clear

Plaintiffs assert, *ipse dixit*, that a negligent misrepresentation claim based upon affirmative misrepresentations does not require the existence of a special relationship. (Opp. at 13-14.) This is just wrong. As set forth at length in Safrin's opening papers (<u>see</u> Def's Br. at 19-

---

[9] <u>See</u> <u>supra</u> note 5.

7

21), negligent misrepresentation claims require allegations of a special relationship *regardless* of whether the claim is based on an affirmative misrepresentation or an omission.

**B.     No "Special Relationship" Existed Between Safrin And Plaintiffs**

Plaintiffs attempt to salvage their Special Relationship Claims by asserting that Safrin owed plaintiffs a fiduciary duty as an incorporator, officer, manager, director or "the like" of First Republic LLC. (Opp. at 15.) However, nothing in the Operating Agreement of First Republic LLC ("LLC Agreement") -- a document that plaintiffs had in their possession, produced as part of their initial disclosures and relied upon in drafting the complaint -- supports this allegation. (A copy of the LLC Agreement is attached to the Reply Declaration of Jonathan D. Lupkin, dated April 11, 2008, as Ex. 1.)[10] While Safrin is identified in the document as an "initial Director" (Ex. 1, Section 9(a) and Schedule D), the directorship agreement attached to the LLC Agreement is not executed by Safrin (or anyone else for that matter), as required by the LLC Agreement (Ex. 1, Section 9(a)); indeed, Safrin's purported signature appears nowhere in the LLC Agreement or any of its schedules.[11] It is hardly appropriate to saddle Safrin with a duty based upon his status in an LLC when the operative document, which was used by plaintiffs to fashion the complaint, does not plausibly establish this alleged status.

---

[10] The court may consider the LLC Operating Agreement on this Rule 12(b)(6) motion because it is: (i) incorporated in the complaint by reference, or (2) integral to the complaint and relied upon in it, even if not attached or incorporated by reference, and/or (3) it is a document in defendant's motion papers that plaintiffs have knowledge and possession of, and relied on in framing their complaint. 380544 Canada, Inc. v. Aspen Tech., Inc., No. 07 Civ. 1204(JFK), 2008 WL 731971, at*1 (S.D.N.Y Mar. 18, 2008); see also Patane v. Clark, 508 F.3d 106, 111 n.2 (2d Cir. 2007); Germano, 2005 WL 2030355, at *4.

[11] Plaintiffs also fail to address any of the authority cited by Safrin for the argument that their breach of fiduciary duty claim is just a reformulated articulation of their breach of contract claims. (See Def's Br. at 23-24; Opp. at 16-17.) Instead, they cite cases that have no application here. (See Opp. at 16) (citing Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 168, 521 N.Y.S.2d 672, 676 (1st Dep't 1987) (defendant owed a duty, as a highly paid consultant, to give advice and act for appellants' benefit, that was independent of employment contract); Maillet v. Frontpoint Partners, LLC, No. 02 Civ. 7865(GBD), 2003 WL 21355218, at *3 (S.D.N.Y. June 10, 2003) (partners owe a fiduciary duty to other partners); and In re Tristar Pictures, Inc., Litig., 634 A.2d 319, 329 (Del. 1993) ("[u]nder all these circumstances, we cannot conclude at this stage, as the trial court did, that [majority shareholder] had no fiduciary relationship to the minority")).

8

C.  **Plaintiffs' Proffer Of A "Special Relationship Substitute" -- i.e., Defendants' Partial Disclosures Of Information And Superior Knowledge -- Fails Because Plaintiffs Were Well Aware That They Were Missing Material Information And Proceeded With The Transaction Anyway**

Implicitly recognizing that the torts of negligent misrepresentation, fraudulent concealment and breach of fiduciary duty all require a special relationship and that none exists here vis-à-vis Safrin, plaintiffs urge the existence here of a "special relationship substitute" -- defendants' alleged partial disclosure of information and superior knowledge. Specifically, plaintiffs assert that the defendants' alleged partial disclosures and superior knowledge regarding the Citibank loan documents and LLC agreements obviate the need for a special relationship. This argument is simply unavailing, though, because the plaintiffs' own pleadings make clear that they were fully aware of these documents <u>and</u> their significance. In fact, plaintiffs allege that they requested, but were denied access, to the documents, and elected to proceed with the transaction nonetheless. (SC ¶¶46, 197, 214.) Put simply, plaintiffs' concession that they were aware of these material documents but consummated the transaction without seeing them eviscerates any argument plaintiffs could have under this theory. (<u>See</u> <u>infra</u> Pt. IV.E.)

IV.  **PLAINTIFFS' FRAUD ARGUMENTS ARE DEFECTIVE**

A.  **Plaintiffs' Deficient Agency Claim Underscores Their Failure To Comply With Rule 9(b)**

Plaintiffs readily admit that all of the statements alleged in the complaint and attributed to Safrin were made by his alleged agent, Stephen Friedman. (Opp. at 17-18.) In their papers, they attempt to parlay this concession into a means by which to sidestep the pleading requirements of Fed R. Civ. P. 9(b); according to plaintiffs, their identification of Friedman as the agent for First Republic LLC, Stern and Safrin obviates the need to spell out the role of each defendant in the alleged fraud. But plaintiffs cannot justify this impermissible "group pleading" by hiding behind their agency claim.[12] See <u>Rich v. Maidstone Fin., Inc.</u>, No. 98 CIV. 2569(DAB), 2001 WL

---

[12] Ironically, plaintiffs' argument only highlights how integral plaintiffs' agency claim is to their fraud claims. Consequently, and notwithstanding plaintiffs' argument to the contrary (Opp. at 6), Rule 9(b) applies to the pleading of their agency claim. In <u>Dover Ltd. v. A.B. Watley, Inc.</u>, 423 F. Supp. 2d 303, 319 (S.D.N.Y. 2006), this Court held that Rule 9(b) <u>is</u> applicable to plaintiffs' fraud-based claims premised upon an agency relationship because the

9

286757, at *7 (S.D.N.Y. Mar. 23, 2001) (fraud allegations insufficient to meet the particularity requirements of Rule 9(b) and the PSLRA where plaintiffs alleged, inter alia, that "Newman, on behalf of Defendants, made the following representations" and that Defendants, "through their agents," made misrepresentations and omissions).

Plaintiffs' other contention -- that there is no need under Rule 9(b) to identify which defendant is responsible for alleged omissions (Opp. at 17) -- is refuted by recent decisions of this Court. See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 213, 216 (S.D.N.Y 2007) (amended complaint ran afoul of Rule 9(b), where it, inter alia, failed to identify the representative responsible for the failure to disclose); Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 248 (S.D.N.Y. 2006) (complaint fails to identify which of the two defendants made the statement or omission).

Finally, plaintiffs contend that they do not have to plead their claims for breach of fiduciary duty, conspiracy and conversion in accordance with Rule 9(b). (Opp. at 20-21.) Plaintiffs do not assert that their pleading of these claims in any way satisfies Rule 9(b); they simply argue that they need not comply with it. (Opp. at 20). As set forth in Safrin's brief -- and in the rule itself -- 9(b) applies to these claims because they are clearly premised upon allegations of fraud. (See Def's Br. at 25 n. 10) (citing cases – unrefuted by plaintiffs -- applying Rule 9(b) to breach of fiduciary duty, conspiracy and conversion claims that are premised on fraud). Plaintiffs' arguments are simply contrary to the law.[13]

---

purported relationship between Safrin (principal) and Friedman (agent) "was an integral part of the fraud." Dover Ltd., 423 F.Supp.2d at 319-320 ("Since there has been no showing that . . . [alleged principals] made any false statements to the Plaintiffs at or prior to the time of the Dover investment, the [alleged principals] could only be held liable for the alleged fraud if Assemi was working as their agent to fraudulently induce Yap to remit the Dover funds. Thus, the theory of recovery against the [the alleged principals] plainly is not merely vicarious liability. For this reason, the Plaintiffs' allegation of agency must meet the stringent requirements of Rule 9(b)"; held, plaintiffs' allegations about relationship between firm and its affiliate's principal were legally insufficient to plead a fraud claim based on actual or apparent authority); In re Lois/USA Inc. v. Conesco Fin. Serv. Corp., 283 B.R. 382, 387 (Bankr. S.D.N.Y. 2002) ("where allegations of fraud are based on a claim of agency, the pleading of the alleged agency relationship must itself meet the requirements of Rule 9(b)").

[13] The cases cited by plaintiffs do not require a different result: The bankruptcy court decisions plaintiffs cite (Opp. at 20) both explicitly countenance the application of Rule 9(b) to breach of fiduciary duty claims that are premised on fraudulent conduct.

10

**B.**   **Plaintiffs Offer No Support For Their Argument That Statements Made To *Third Parties* (Counts 19 and 20) Are Actionable As A Fraud Perpetrated Upon Plaintiffs**

Plaintiffs' half-hearted argument -- that they may assert a fraud claim based on representations made to third parties simply because they (the plaintiffs) were allegedly "harmed" (Opp. at 18) -- is without merit (see Def's Br. at 26-27), and plaintiffs offer no case law to support their position. Because plaintiffs have not -- and cannot -- distinguish the authority cited by Safrin in his moving brief on this issue, Counts 19 and 20 must be dismissed.

**C.**   **Plaintiffs Reluctantly Concede That Count 23 Fails To Allege That Safrin Did Not Intend To Perform His "Promise"**

Count 23 alleges that Safrin made an actionable "false promise" to "deliver a partnership agreement" or to "draft and provide replacement or additional ownership and security agreements post-closing." (SC ¶229). Plaintiffs argue in opposition that Safrin's alleged false promise to deliver a partnership agreement (Count 23) constitutes an actionable fraud because he had no intent to perform that promise at the time he made it. But plaintiffs' opposition papers concede that plaintiffs do not "expressly allege" that Safrin lacked a present intent to perform the promise. (Opp. at 19.) This admission is fatal to plaintiffs' claim. See Nat'l Westminster Bank, U.S.A. v Ross, 130 B.R. 656, 664 (S.D.N.Y. 1991) (cited by plaintiffs, see Opp. at 18-19) ("The defrauded party must allege specific facts showing that the promisor intended not to honor his obligations at the time the promise was made"). Indeed, this Court recently dismissed a fraud claim as insufficient for just such a failure. See GMA Accessories, Inc. v. ePartners Inc., No. 07 Civ.8414 (LAK), 2008 WL 781188, at *1 (S.D.N.Y. Mar. 19, 2008) (Kaplan, J) (holding actual fraud claim insufficient; "There is no allegation in the amended complaint, however, that even remotely approaches suggesting that the defendant knew when the promises and predictions allegedly were made that they would not be performed or would not come to pass") (citations omitted). Instead, plaintiffs urge the Court to infer an intent not to perform based on Safrin's alleged failure ultimately to perform. This argument is legally deficient as well. Nat'l Westminster Bank, 130 B.R. at 664.

11

D.  **Plaintiffs' Factually Inconsistent Claim in Count 15 -- That Defendants Fraudulently Induced Plaintiffs To Invest Based On Facts That Defendants Themselves Did Not Learn Until A Later Point In Time -- Cannot Plausibly Support A Fraud Claim**

In Count 15, plaintiffs allege that on June 29, Safrin and Stern, *through Friedman*, falsely represented that the entire $13 million was necessary for completion of the property portfolio purchase because they "knew on that same day that they only needed about $9 million." (SC ¶168.)  But the complaint alleges facts (incorporated into this Count) that explicitly contradict this.  Paragraph 39 makes clear that defendants did not obtain a reduction of the purchase price until July 2 at the earliest, days after First Republic Corp. and Amusement executed the LOI and Amusement wired the $13 million.  (SC ¶39.)  See Sofi Classic, 444 F. Supp. 2d at 249 (dismissing fraud claims, where, inter alia, there were inconsistent factual allegations; "Concealment of facts in September 2001 could not have played a role in inducing Plaintiffs to enter into the Settlement Agreement in July 2001").  Given the Supreme Court decision in Twombly and the Second Circuit's decision in Iqbal, plaintiffs' speculation as to what might be "possible" (Opp. at 20) does not satisfy the governing plausibility test.

E.  **Plaintiffs' Decision To Proceed With The Transaction Without Confirming Admittedly Material Facts Was Unreasonable As A Matter Of Law And Defeats Any Claim Of Justifiable Reliance**

Plaintiffs' contention -- that they justifiably proceeded with this $13 million transaction based entirely on Friedman's assurances, despite their awareness of the existence of material documents and their request for (and defendants' alleged denial of) access to these documents -- is clearly unreasonable.[14]  Despite plaintiffs' claims to the contrary, courts do dismiss claims

---

[14] Plaintiffs' reliance on Ambra v. Awad, 16 Misc. 3d 1128(A), 847 N.Y.S.2d 900, 2007 WL 2409600, at *11 (Sup Ct. Nassau Co. Aug. 6, 2007) (see Opp. at 22), for the proposition that it was reasonable for plaintiffs here (and their counsel) to rely on the *factual* representations of opposing counsel (Friedman) (Opp. at 21-22), is misplaced.  In Ambra, the representation of opposing counsel (upon which his adversary relied) was a statement of fact as to the existence or non-existence of insurance; further, opposing counsel's representation "involved the reliance of the Court, in the context of recommending settlement."  Id.  By contrast, here, plaintiffs relied wholesale on Friedman's alleged representations -- including repeated assurances as to the adequate protection of plaintiffs' interests (see, e.g., SC ¶¶ 47, 48, 56, 60) -- because they "trusted" him.  (Opp. at 24.)  Nevertheless, plaintiffs allege that the Citibank loan documents were so important that defendants had a "duty" to provide them and that, had plaintiffs known of the terms of those documents, "Amusement would not have provided its $13 million." (SC ¶197.)  The case at hand resembles more closely Matsumura v. Benihana Nat. Corp., v. Benihana Nat. Corp., --- F. Supp. 2d ---,

where, as here, reliance is unreasonable as a matter of law. See, e.g., Matsumura, 2008 WL 282021, at *9 (Def's Br. at 30-31); Belin v. Weissler, No. 97 Civ. 8787 (RWS), 1998 WL 391114, at *7 (S.D.N.Y. July 14, 1998) (dismissing complaint where alleged reliance on oral representation regarding insurance amount was unreasonable where investor could have asked to see policy, and "even if [plaintiff] did not have ready access to the relevant information, [his] reliance would not be reasonable because, as a sophisticated investor, he should have confirmed that $5.8 million of insurance existed and not relied on [defendant's] oral representations").[15] Under Belin and Matsumura, plaintiffs cannot establish justifiable reliance, an essential element of their misrepresentation claims.

### V. PLAINTIFFS' CONVERSION CLAIM FAILS BECAUSE THEY CONCEDE THAT STEVEN ALEVY IS RESPONSIBLE FOR THE RELEASE OF THE ESCROW FUNDS

Plaintiffs' opposition papers concede that Steven Alevy is responsible for the release of the funds from escrow, presumably to his chosen payee (not Safrin's). (See Opp. at 4; SC ¶63). Plaintiffs' allegations thus do not permit a conversion claim to proceed again Safrin, where, as here, there is no plausible basis to assert that Safrin was responsible for the alleged improper

---

No. 06 Civ. 7609 (NRB), No. 06 Civ. 7609 (NRB), 2008 WL 282021, at *9 (S.D.N.Y. Jan. 25, 2008) (cited in Def's Br. at 31, n.15), where the Court held that plaintiffs' decision to rely on opposing counsel's opinion "with respect to the interpretation of the Stockholders' Agreement or Benihana's performance under that contract was unreasonable." Matsumura, 2008 WL 282021, at *9. As the Matsumura Court makes clear, "We find incredible, and unjustifiable . . . that such sophisticated plaintiffs . . . failed to confirm with [their attorney] that the express provisions of the Stockholders' Agreement adequately protected their interests." Id.

[15] In Catton v. Def. Tech. Sys., Inc., No. 05 Civ. 6954 (SAS), 2006 WL 27470, at *9 (S.D.N.Y. Jan. 3, 2006) (discussed at length in plaintiffs' Opp. at 23-24), the Court declined to resolve reliance on a motion to dismiss because one of the plaintiffs alleged he had purchased stock based on various false representations of a certain individual defendant, with whom he "had a long-standing and trusting relationship." Id. Plaintiffs here do not allege they had any such relationship or even contact with Safrin that would justify their decision to proceed with their $13 million investment without confirming admittedly material facts. Plaintiffs, rather, assert only that they had such a long-standing and trusting relationship with *Friedman*. (Opp. at 24.) Plaintiffs' argument might make sense (although it would have no merit, see Matsumura, supra) if plaintiffs were suing Friedman. But it makes no sense here, where, for some inexplicable reason, they have chosen to sue Safrin instead. The decision in Allied Irish Banks, P.L.C. v. Bank of America, N.A., No. 03 Civ. 3748(DAB), 2006 WL 278138, at *9 (S.D.N.Y. Feb. 2, 2006) (cited by plaintiffs' Opp. at 23), is similarly inapposite because it too was based on the "alleged circumstances" present there (and not here) -- namely, that the plaintiff "could not have insisted easily on examining data that immediately would have revealed Defendants' misrepresentations, since Plaintiff was not alerted to that data in the first instance." In contrast, plaintiffs' own allegations here make it clear that that they were aware of the Citibank loan documents and LLC Agreements and their significance.

13

transfer of the escrow funds, or that he ever received them.  See <u>Dover Ltd.</u>, 423 F.Supp.2d at 328 (dismissing conversation claim against defendants other than ABW; "Indeed, there is nothing in the Amended Complaint to suggest that any of the Defendants other than ABW itself was responsible for the improper transfer of Dover's funds to another account").

## **CONCLUSION**

For the foregoing reasons, plaintiffs' claims against Safrin should be dismissed with prejudice and without leave to replead.

Dated: New York, New York
April 11, 2008

>
> FLEMMING ZULACK WILLIAMSON
>    ZAUDERER LLP
>
> By:_____/s/_____
>    Jonathan D. Lupkin (JL-0792)
>    Jean Marie Hackett (JH-1784)
>
> One Liberty Plaza
> New York, New York  10006
> Tel: (212) 412-9500
> Fax: (212) 964-9200
> Email: jlupkin@fzwz.com
>           jhackett@fzwz.com
>
> *Attorneys for Defendant Joshua Safrin*