Jonathan D. Lupkin, Esq.
FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York 10006
Tel: (212) 412-9500
Fax: (212) 964-9200
Email: jlupkin@fzwz.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

AMUSEMENT INDUSTRY, INC., dba WESTLAND   :   No. 07 Civ. 11586 (LAK)(GWG)
INDUSTRIES; PRACTICAL FINANCE CO., INC.,   :

                                  :   (ECF)

                           Plaintiffs,   :

                                    :   **REPLY DECLARATION OF**

        - against -                      :   **JONATHAN D. LUPKIN**

                                    :

MOSES STERN, aka MARK STERN; JOSHUA SAFRIN, :
FIRST REPUBLIC REALTY LLC, EPHRAIM   :
FRANKEL, LAND TITLE ASSOCIATES ESCROW,   :

                                    :

                         Defendants.   :

------------------------------------------------------------------- x

         JONATHAN D. LUPKIN declares, pursuant to 28 U.S.C. § 1746, as follows:

         1.      I am a member of the law firm Flemming Zulack Williamson & Zauderer LLP. I submit this declaration in support of defendant Joshua Safrin's motion to dismiss the complaint.

         2.      Annexed hereto as Exhibit 1 is a true and correct copy of the Limited Liability Company Agreement of First Republic Group Realty LLC, together with the schedules appended thereto, produced by plaintiffs with their initial disclosures served March 17, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York on April 11, 2008.

                                   _____/S/_____

                                      JONATHAN D. LUPKIN

303482

**EXHIBIT 1**

LIMITED LIABILITY COMPANY AGREEMENT
OF
FIRST REPUBLIC GROUP REALTY LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of First Republic Group Realty LLC (the "Company"), is entered into by FRGR Managing Member LLC, as the sole equity member (the "Member"), the undersigned Persons identified as the Springing Member on the signature page hereto (the "Springing Members") and the Independent Directors (as defined on Schedule A hereto). Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Member, by execution of this Agreement, hereby forms the Company as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. Sections 18-101, et seq.), as amended from time to time (the "Act"), and the Member and Springing Members agree as follows:

Section 1.     Name.

The name of the limited liability company formed hereby is First Republic Group Realty LLC.

Section 2.     Principal Business Office.

The principal business office of the Company shall be located 241 5th Avenue, Room 302, New York, New York 10016 or such other location as may hereafter be determined by the Member.

Section 3.     Registered Office.

The address of the registered office of the Company in the State of Delaware is c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 10908.

Section 4.     Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 10908.

Section 5.     Members.

(a)     The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

(b)     Subject to Section 9(j), the Member may act by written consent.

(c)     Upon the occurrence of any event that causes the Member to cease to be a member of the Company (other than (i) upon an assignment by the Member of all of its limited

1

AI000324

liability company interest in the Company and the admission of the transferee pursuant to Sections 21 and 23, or (ii) the resignation of the Member and the admission of an additional member of the Company pursuant to Sections 22 and 23), each person acting as an Independent Director pursuant to Section 10 shall, without any action of any Person and simultaneously with the Member ceasing to be a member of the Company, automatically be admitted to the Company as a Springing Member and shall preserve and continue the Company without dissolution. No Springing Member may resign from the Company or transfer its rights as Springing Member unless (i) a successor Springing Member has been admitted to the Company as Springing Member by executing a counterpart to this Agreement, and (ii) such successor has also accepted its appointment as Independent Director pursuant to Section 10; provided, however, the Springing Members shall automatically cease to be members of the Company upon the admission to the Company of a substitute Member. Each Springing Member shall be a member of the Company that has no interest in the profits, losses and capital of the Company and has no right to receive any distributions of Company assets. Pursuant to Section 18-301 of the Act, a Springing Member shall not be required to make any capital contributions to the Company and shall not receive a limited liability company interest in the Company. A Springing Member, in its capacity as Springing Member, may not bind the Company. Except as required by any mandatory provision of the Act, each Springing Member, in its capacity as Springing Member, shall have no right to vote on, approve or otherwise consent to any action by, or matter relating to, the Company, including, without limitation, the merger, consolidation or conversion of the Company. In order to implement the admission to the Company of each Springing Member, each person acting as an Independent Director pursuant to Section 10 shall execute a counterpart to this Agreement. Prior to its admission to the Company as Springing Member, each person acting as an Independent Director pursuant to Section 10 shall not be a member of the Company.

(d)    The Company shall at all times have two (2) Springing Members. No resignation or removal of a Springing Member, and no appointment of a successor Springing Member, shall be effective unless and until such successor shall have executed a counterpart to this Agreement and accepted its appointment as Independent Director pursuant to Section 10. In the event of a vacancy in the position of either Springing Member, the Member shall, as soon as practicable, appoint a successor Springing Member to fill such vacancy.

Section 6.    Certificates.

Steven Fleissig, is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Formation of the Company with the Secretary of State of the State of Delaware. Upon the filing of the Certificate of Formation with the Secretary of State of the State of Delaware, his powers as an "authorized person" ceased, and the Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act. The Member or an Officer shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in Alabama, Georgia, North Carolina and Virginia and in any other jurisdiction in which the Company may wish to conduct business.

2

AI000325

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Formation as provided in the Act.

Section 7.     Purposes.  The purpose to be conducted or promoted by the Company shall be limited to the following activities:

(a)

(i)     acting as the fee owner of certain real properties identified on Schedule A-1 attached hereto, together with all buildings, improvements, appurtenances, fixtures, equipment and personal property attached or pertaining to the Land and such buildings (each an "Individual Property" and, collectively, the "Properties"); and

(ii)    engaging in any lawful act or activity and exercising any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes; provided, however, notwithstanding anything contained herein to the contrary, the Company shall not engage in any business, and it shall have no purpose, unrelated to the Properties and shall not acquire any real property or own assets other than those related to the Properties and/or otherwise in furtherance of the purposes of the Company.

(b)     The Company and the Member, or any Director (other than any Independent Director) or Officer on behalf of the Company, may enter into and perform (i) the Basic Documents, and (ii) all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any Member, Director, Officer or other Person notwithstanding any other provision of this Agreement, the Act or applicable law, rule or regulation.  The foregoing authorization shall not be deemed a restriction on the powers of the Member or any Director or Officer to enter into other agreements on behalf of the Company.

Section 8.     Powers.

Subject to Sections 9(j) and 10, the Company, and the Board of Directors and the Officers of the Company on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in Section 7 and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.  Notwithstanding the foregoing (or anything to the contrary contained in this Agreement), neither the Company, the Board of Directors, the Officers of the Company, nor the Member shall have any authority to perform any act in respect of the Company in violation of any applicable laws or regulations.

3

AI000326

Section 9.    Management.

(a)    Board of Directors. Subject to Sections 9(j) and 10, the business and affairs of the
Company shall be managed by or under the direction of a Board of one or more Directors
designated by the Member. Subject to Section 10, the Member may determine at any time in its
sole and absolute discretion the number of Directors to constitute the Board. The authorized
number of Directors may be increased or decreased by the Member at any time in its sole and
absolute discretion, upon notice to all Directors, and subject in all cases to Section 10. The
initial number of Directors shall be five, two of which shall be Independent Directors pursuant to
Section 10. Each Director elected, designated or appointed by the Member shall hold office until
a successor is elected and qualified or until such Director's earlier death, resignation, expulsion
or removal. Each Director shall execute and deliver the Directorship Agreement. Directors need
not be a Member. The initial Directors designated by the Member are listed on Schedule D
hereto.

(b)    Powers. Subject to Sections 9(j) and 10, the Board of Directors shall have the
power to do any and all acts necessary, convenient or incidental to or for the furtherance of the
purposes described herein, including all powers, statutory or otherwise. Subject to Section 7, the
Board of Directors has the authority to bind the Company.

(c)    Meeting of the Board of Directors. The Board of Directors of the Company may
hold meetings, both regular and special, within or outside the State of Delaware. Regular
meetings of the Board may be held without notice at such time and at such place as shall from
time to time be determined by the Board. Special meetings of the Board may be called by the
President on not less than one day's notice to each member of the Board by telephone, facsimile,
mail, telegram or any other means of communication, and special meetings shall be called by the
President or Secretary in like manner and with like notice upon the written request of any one or
more of the members of the Board.

(d)    Quorum: Acts of the Board. At all meetings of the Board, a majority of the
members of the Board shall constitute a quorum for the transaction of business and, except as
otherwise provided in any other provision of this Agreement, the act of a majority of the
members of the Board present at any meeting at which there is a quorum shall be the act of the
Board. If a quorum shall not be present at any meeting of the Board, the members of the Board
present at such meeting may adjourn the meeting from time to time, without notice other than
announcement at the meeting, until a quorum shall be present. Any action required or permitted
to be taken at any meeting of the Board or of any committee thereof may be taken without a
meeting if all members of the Board or committee, as the case may be, consent thereto in writing,
and the writing or writings are filed with the minutes of proceedings of the Board or committee,
as the case may be; provided, however, no such written consent of the Independent Directors
shall be required for the validity of such action by the Board unless, pursuant to the provisions of
this Agreement, including, without limitation, the provisions of item (v) on Exhibit B, such
action would be invalid in the absence of the affirmative vote or consent of such Independent
Directors.

(e)    Electronic Communications. Members of the Board, or any committee designated
by the Board, may participate in meetings of the Board, or any committee, by means of

4

AI000327

telephone conference or similar communications equipment that allows all Persons participating in the meeting to hear each other, and such participation in a meeting shall constitute presence in Person at the meeting. If all the participants are participating by telephone conference or similar communications equipment, the meeting shall be deemed to be held at the principal place of business of the Company.

    (f)    Committees of Directors.

        (i)    The Board may, by resolution passed by a majority of the members of the Board, designate one or more committees, each committee to consist of one or more of the members of the Board of the Company. The Board may designate one or more members of the Board as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.

        (ii)    In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member.

        (iii)    Any such committee, to the extent provided in the resolution of the Board, and subject to, in all cases, Sections 9(j) and 10, shall have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Company. Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board. Each committee shall keep regular minutes of its meetings and report the same to the Board when required.

    (g)    Compensation of Directors; Expenses. The Board shall have the authority to fix the compensation of Directors. The Directors may be paid their expenses, if any, of attendance at meetings of the Board, which may be a fixed sum for attendance at each meeting of the Board or a stated salary as Director. No such payment shall preclude any Director from serving the Company in any other capacity and receiving compensation therefor. Members of special or standing committees may be allowed like compensation for attending committee meetings.

    (h)    Removal of Directors. Unless otherwise restricted by law, any Director or the entire Board of Directors may be removed or expelled, with or without cause, at any time by the Member, and, subject to Section 10, any vacancy caused by any such removal or expulsion may be filled by action of the Member.

    (i)    Directors as Agents. To the extent of their powers set forth in this Agreement and subject to Section 9(j), the members of the Board are agents of the Company for the purpose of the Company's business, and the actions of the members of the Board taken in accordance with such powers set forth in this Agreement shall bind the Company. Notwithstanding the last sentence of Section 18-402 of the Act, except as provided in this Agreement or in a resolution of the Board, a Director may not bind the Company.

5

AI000328

(j)      Limitations on the Company's Activities.

So long as any obligations under either of the Loans shall be outstanding, the following provisions shall be in effect:

(A)      The Company shall not have the authority to perform any act in violation of any (a) applicable laws or regulations or (b) any agreement with First Lender (including, without limitation, the First Loan Documents)

(B)      The Board of Directors will not take any action requiring the unanimous affirmative vote of 100% of the members of the Board of Directors unless, at the time of such action there are at least two members of the Board of Directors who are Independent Directors, and all of the Directors (including all Independent Directors) shall have participated in such vote.

(C)      The Company shall comply with, observe and otherwise comply with the "Special Purpose Entity" covenants attached hereto in Exhibit B and incorporated by reference as if set forth at length.

Failure of the Company, or the Member or the Board on behalf of the Company, to comply with any of the foregoing covenants or any other covenants contained in this Agreement shall not affect the status of the Company as a separate legal entity or the limited liability of the Member or the Directors.

Section 10.     Independent Directors.

So long as either of the Loans is outstanding, the Member shall cause the Company at all times to have at least two Independent Directors who will be appointed by the Member and whose sole power and authority in their capacity as Independent Directors shall be to vote only on actions which, by the express terms of this Agreement, require the unanimous affirmative vote of 100% of the members of the Board of Directors. To the fullest extent permitted by law, including Section 18-1101(c) of the Act, the Independent Directors shall consider only the interests of the Company, including its respective creditors, in acting or otherwise voting on the matters referred to in item (v) on Exhibit B hereto . No resignation or removal of an Independent Director, and no appointment of a successor Independent Director, shall be effective until such successor (i) shall have accepted his or her appointment as an Independent Director by a written instrument, which may be a counterpart signature page to the Directorship Agreement, and (ii) shall have executed a counterpart to this Agreement as required by Section 5(c). In the event of a vacancy in the position of an Independent Director, the Member shall, as soon as practicable, appoint a successor Independent Director. All right, power and authority of the Independent Directors shall be limited to the extent necessary to exercise those rights and perform those duties specifically set forth in this Agreement. Except as provided in the second sentence of this Section 10, in exercising their rights and performing their duties under this Agreement, any Independent Director shall have a fiduciary duty of loyalty and care similar to that of a director of a business corporation organized under the General Corporation Law of the State of Delaware.

6

AI000329

No Independent Director shall at any time serve as trustee in bankruptcy for any Affiliate of the Company.

Section 11.    Officers.

(a)    Officers. The initial Officers of the Company shall be designated by the Member. The additional or successor Officers of the Company shall be chosen by the Board and shall consist of at least a President, a Secretary and a Treasurer. The Board of Directors may also choose one or more Vice Presidents, Assistant Secretaries and Assistant Treasurers. Any number of offices may be held by the same person. The Board shall choose a President, a Secretary and a Treasurer. The Board may appoint such other Officers and agents as it shall deem necessary or advisable who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board. The salaries of all Officers and agents of the Company shall be fixed by or in the manner prescribed by the Board. The Officers of the Company shall hold office until their successors are chosen and qualified. Any Officer may be removed at any time, with or without cause, by the affirmative vote of a majority of the Board. Any vacancy occurring in any office of the Company shall be filled by the Board. The initial Officers of the Company designated by the Member are listed on Schedule E hereto.

(b)    President. The President shall be the chief executive officer of the Company, shall preside at all meetings of the Board, shall be responsible for the general and active management of the business of the Company and shall see that all orders and resolutions of the Board are carried into effect. The President or any other Officer authorized by the President or the Board shall execute all bonds, mortgages and other contracts, except: (i) where required or permitted by law or this Agreement to be otherwise signed and executed, including Section 7(b); (ii) where signing and execution thereof shall be expressly delegated by the Board to some other Officer or agent of the Company, and (iii) as otherwise permitted in Section 11(c).

(c)    Vice President. In the absence of the President or in the event of the President's inability to act, the Vice President, if any (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the Board, or in the absence of any designation, then in the order of their election), shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. The Vice Presidents, if any, shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(d)    Secretary and Assistant Secretary. The Secretary shall be responsible for filing legal documents and maintaining records for the Company. The Secretary shall attend all meetings of the Board and record all the proceedings of the meetings of the Company and of the Board in a book to be kept for that purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or shall cause to be given, notice of all meetings of the Member, if any, and special meetings of the Board, and shall perform such other duties as may be prescribed by the Board or the President, under whose supervision the Secretary shall serve. The Assistant Secretary, or if there be more than one, the Assistant Secretaries in the order determined by the Board (or if there be no such determination, then in order of their election), shall, in the absence of the Secretary or in the event of the Secretary's inability to act,

7

AI000330

perform the duties and exercise the powers of the Secretary and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(e)     Treasurer and Assistant Treasurer.  The Treasurer shall have the custody of the Company funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Company and shall deposit all moneys and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Board.  The Treasurer shall disburse the funds of the Company as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the President and to the Board, at its regular meetings or when the Board so requires, an account of all of the Treasurer's transactions and of the financial condition of the Company.  The Assistant Treasurer, or if there shall be more than one, the Assistant Treasurers in the order determined by the Board (or if there be no such determination, then in the order of their election), shall, in the absence of the Treasurer or in the event of the Treasurer's inability to act, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(f)     Officers as Agents.  The Officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Board not inconsistent with this Agreement, are agents of the Company for the purpose of the Company's business and, subject to Section 9(j), the actions of the Officers taken in accordance with such powers shall bind the Company.

(g)     Duties of Board and Officers.  Except to the extent otherwise provided herein, each Director and Officer shall have a fiduciary duty of loyalty and care similar to that of directors and officers of business corporations organized under the General Corporation Law of the State of Delaware.

Section 12.     Limited Liability.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor the Springing Members nor any Director shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Springing Member or Director of the Company.

Section 13.     Capital Contributions.

The Member has contributed to the Company property of an agreed value as may be from time to time reflected on the books and records of the Company.  In accordance with Section 5(c), the Springing Members shall not be required to make any Capital Contributions to the Company.

Section 14.     Additional Contributions.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member.  To the extent that the Member makes an additional

8

capital contribution to the Company, the Member shall revise <u>Schedule B</u> of this Agreement. The provisions of this Agreement, including this <u>Section 14</u>, are intended to benefit the Member and the Springing Members and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Member and the Springing Members shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

Section 15.    <u>Allocation of Profits and Losses</u>.

The Company's profits and losses shall be allocated to the Member.

Section 16.    <u>Distributions</u>.

Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Board to the extent permitted by the Loan Documents as long as either of the Loans is outstanding. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Member on account of its interest in the Company if such distribution would violate Section 18-607 of the Act or any other applicable law or any Basic Document.

Section 17.    <u>Books and Records</u>.

The Board shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business. The books of the Company shall at all times be maintained by the Board. The Member and its duly authorized representatives shall have the right to examine the Company books, records and documents during normal business hours. To the fullest extent permitted by applicable law, the Company, and the Board on behalf of the Company, shall not have the right to keep confidential from the Member any information that the Board would otherwise be permitted to keep confidential from the Member pursuant to Section 18-305(c) of the Act. The Company's books of account shall be kept using the method of accounting determined by the Member. The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Member.

Section 18.    <u>Reports</u>.

(a)    Within 30 days after the end of each fiscal quarter, the Board shall cause to be prepared an unaudited report setting forth as of the end of such fiscal quarter:

        (i)    unless such quarter is the last fiscal quarter, a balance sheet of the Company; and

        (ii)    unless such quarter is the last fiscal quarter, an income statement of the Company for such fiscal quarter.

(b)    The Board shall use diligent efforts to cause to be prepared and mailed to the Member, within 60 days after the end of each fiscal year, an audited or unaudited report setting forth as of the end of such fiscal year:

AI000332

(i)     a balance sheet of the Company;

(ii)    an income statement of the Company for such fiscal year; and

(iii)   a statement of the Member's capital account.

(c)     The Board shall, after the end of each fiscal year, use reasonable efforts to cause the Company's independent accountants, if any, to prepare and transmit to the Member as promptly as possible any such tax information as may be reasonably necessary to enable the Member to prepare its federal, state and local income tax returns relating to such fiscal year.

Section 19.    Other Business.

Notwithstanding any duty otherwise existing at law or in equity, the Member, the Springing Members and any Affiliate of the Member or the Springing Members may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others notwithstanding any provision to the contrary at law or in equity. The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 20.    Exculpation and Indemnification.

(a)     Neither the Member nor the Springing Members nor any Officer, Director, employee or agent of the Company nor any employee, representative, agent or Affiliate of the Member or Springing Members (collectively, the "Covered Persons") shall, to the fullest extent permitted by law, be liable to the Company or any other Person that is a party to or is otherwise bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.

(b)     To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 20 by the Company shall be provided out of and to the extent of Company assets only, and the Member and the Springing Members shall not have personal liability on account thereof; and provided further, that so long as either of the Loans is outstanding, no indemnity payment from funds of the Company (as distinct from funds from other sources, such as insurance) of any indemnity under this Section 20 shall be payable from amounts allocable to any other Person pursuant to the Basic Documents.

10

AI000333

(c)     To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 20.

(d)     A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)     To the extent that, at law or in equity, a Covered Person has duties (including fiduciary duties) and liabilities relating thereto to the Company or to any other Covered Person, a Covered Person acting under this Agreement shall not be liable to the Company or to any other Covered Person bound by this Agreement for its good faith reliance on the provisions of this Agreement or any approval or authorization granted by the Company or any other Covered Person. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person to the Company or its members otherwise existing at law or in equity, are agreed by the Member and the Springing Members to replace such other duties and liabilities of such Covered Person.

(f)     Notwithstanding the foregoing provisions, to the fullest extent provided by law, any indemnification set forth herein or in any other agreement between the Company and any Covered Person shall be fully subordinate to the Loans and shall not constitute a claim against the Company in the event that the Company's cash flow is insufficient to pay its indebtedness, liabilities or obligations.

(g)     The foregoing provisions of this Section 20 shall survive any termination of this Agreement.

Section 21.     Assignments.

(a)     The Member may assign in whole or in part its limited liability company interest in the Company, provided, however, that, so long as either of the Loans shall be outstanding, any such assignment shall be subject to any restrictions contained in the Loan Documents. Subject to Section 23, if the Member transfers all or part of its limited liability company interest in the Company pursuant to this Section 21, the transferee shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company. Notwithstanding anything in this Agreement to the contrary, any successor to the Member by merger or consolidation in compliance with the Basic Documents shall, without further act, be the Member hereunder, and such merger or consolidation shall not

11

AI000334

constitute an assignment for purposes of this Agreement and the Company shall continue without dissolution.

(b)      Without limiting the provisions of Section 21(a), the Company hereby consents to the pledge by the Member of its limited liability company interests in the Company to the Second Lender in connection with the Second Loan, and agrees that any such pledge may be foreclosed and sold at a foreclosure sale, or the pledged interest transferred to the Second Lender or its designee in lieu of foreclosure, and/or the other rights of the Second Lender under such pledge exercised, without the need for any consents, approvals or other action by the Company.

Section 22.    Resignation.

So long as either of the Loans is outstanding, the Member may not resign, except as permitted under the Loan Documents. If the Member is permitted to resign pursuant to this Section 22, an additional member of the Company shall be admitted to the Company, subject to Section 23, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

Section 23.    Admission of Additional Members.

One or more additional members of the Company may be admitted to the Company with the written consent of the Member; provided, however, that, notwithstanding the foregoing, so long as the First Lender holds a mortgage lien against any of the Properties, no additional Member may be admitted to the Company pursuant to Sections 21, 22 or 23 except in accordance with the terms of the Loan Documents.

Section 24.    Dissolution.

(a)      Subject to Section 9(j), the Company shall be dissolved, and its affairs shall be wound up only upon the first to occur of the following: (i) the termination of the legal existence of the last remaining member of the Company or the occurrence of any other event which terminates the continued membership of the last remaining member of the Company in the Company unless the Company is continued without dissolution in a manner permitted by this Agreement or the Act or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act. Upon the occurrence of any event that causes the last remaining member of the Company to cease to be a member of the Company or that causes the Member to cease to be a member of the Company (other than (x) upon an assignment by the Member of all of its limited liability company interest in the Company and the admission of the transferee pursuant to Sections 21 and 23, or (y) the resignation of the Member and the admission of an additional member of the Company pursuant to Sections 22 and 23), to the fullest extent permitted by law, the personal representative of such member is hereby authorized to, and shall, within 90 days after the occurrence of the event that terminated the continued membership of such member in the Company, agree in writing (A) to continue the Company and (B) to the admission of the personal representative or its nominee or designee, as the case may be, as a substitute member of

12

the Company, effective as of the occurrence of the event that terminated the continued membership of the last remaining member of the Company or the Member in the Company.

(b)      Notwithstanding any other provision of this Agreement, the Bankruptcy of the Member or a Springing Member shall not cause the Member or Springing Member, respectively, to cease to be a member of the Company and upon the occurrence of such an event, the Company shall continue without dissolution.

(c)      In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(d)      The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Formation shall have been canceled in the manner required by the Act.

Section 25.      Waiver of Partition; Nature of Interest.

Except as otherwise expressly provided in this Agreement, to the fullest extent permitted by law, each of the Member and the Springing Members hereby irrevocably waives any right or power that such Person might have to cause the Company or any of its assets to be partitioned, to cause the appointment of a receiver for all or any portion of the assets of the Company, to compel any sale of all or any portion of the assets of the Company pursuant to any applicable law or to file a complaint or to institute any proceeding at law or in equity to cause the dissolution, liquidation, winding up or termination of the Company.

Section 26.      Benefits of Agreement; No Third-Party Rights.

None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member or a Springing Member, other than First Lender and Second Lender.  Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons and First Lender and Second Lender) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person other than First Lender and Second Lender (except as provided in Section 29).

Section 27.      Severability of Provisions.

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

13

AI000336

Section 28.    Entire Agreement.

This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

Section 29.    Binding Agreement.

Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement, including, without limitation, Sections 7, 8, 9, 10, 20, 21, 22, 23, 24, 26, 29, 31, and 35, constitutes a legal, valid and binding agreement of the Member by the Independent Directors, and is enforceable against the Member in accordance with its terms. In addition, the Independent Directors, First Lender and Second Lender (solely with respect to the provisions of Section 9(j) of this Agreement as long as either of the Loans is outstanding) shall be intended beneficiaries of this Agreement.

Section 30.    Governing Law.

This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 31.    Amendments.

This Agreement may be modified, altered, supplemented, amended or repealed pursuant to a written agreement executed and delivered by the Member; provided, however, that so long as any obligations under either of the Loans shall be outstanding, the Member shall not amend, alter, change or repeal the definition of "Independent Director" or Sections 5(c), 7, 8, 9 (including Exhibit B), 10, 16, 21, 22, 23, 24, 25, 26, 29, 31, and 35 of this Agreement (A) except in accordance with the terms of the First Loan Documents; (B) without (1) the unanimous written consent of the Independent Directors, (2) the written consent of the First Lender, not to be unreasonably withheld and (3) the written consent of the Second Lender, not to be unreasonably withheld; and (C) unless the First Lender and the Second Lender, as applicable, have received confirmation that the applicable Rating Agencies have issued a Rating Agency Confirmation except:  (i) to cure any ambiguity or (ii) to convert or supplement any provision in a manner consistent with the intent of this Agreement and the other Basic Documents.

Section 32.    Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement and all of which together shall constitute one and the same instrument.

Section 33.    Notices.

Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the

AI000337

Company at its address in <u>Section 2</u>, (b) in the case of the Member, to the Member at its address as listed on <u>Schedule B</u> attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

Section 34.     <u>Effectiveness</u>.

Pursuant to Section 18-201 (d) of the Act, this Agreement shall be effective as of the time of the filing of the Certificate of Formation with the Office of the Delaware Secretary of State on June 19, 2007.

Section 35.     <u>Nature of Membership Interests; Certification of Membership Interest</u>.

(a)     The Company shall not allow direct or indirect transfers of ownership interests in or control rights over the Company that would violate the provisions of the Loan Documents.

(b)     The Company shall not, without the prior written consent of Lender, issue any additional limited liability company interests of the Company other than its initial issuance of membership interests issued on or prior to the date hereof.

(c)     Member's limited liability company interest in the Company shall be represented by the Shares (defined below) issued to Member by the Company. Member's Shares represent Member's entire limited liability company interest in the Company. Member hereby agrees that its interest in the Company and in the Shares shall for all purposes be personal property. Member has no interest in specific Company property. "Shares" means the limited liability company interest in the Company held by Member. The limited liability company interest in the Company shall constitute a "security" within the meaning of, and governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of Delaware and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995. Notwithstanding any provision of this Agreement to the contrary, to the extent that any provision of this Agreement is inconsistent with any non-waivable provision of Article 8 of the Uniform Commercial Code as in effect in the State of Delaware (the "UCC"), such provision of Article 8 of the UCC shall control.

(d)     (i)     Upon the issuance of the Shares to Member in accordance with the provisions of this Agreement, the Company shall issue one Share Certificate (defined below) in the name of Member. Such Share Certificate shall be denominated such that it evidences 100% of the Shares and shall be signed by the Member on behalf of the Company. "Share Certificate" means a non-negotiable certificate issued and endorsed by the Company substantially in the form attached as <u>Exhibit A</u> hereto, which evidences the ownership of the Shares. The Share Certificate shall bear the following legend: "This certificate evidences 100% of the membership interests in First Republic Group Realty LLC and shall be a security for purposes of Article 8 of the Uniform Commercial Code of the State of Delaware." This provision shall not be amended, and no such purported amendment to this provision shall be effective until all outstanding certificates have been surrendered for cancellation.

15

AI000338

(ii)    The Company shall issue a new Share Certificate in place of any Share Certificate previously issued if the holder of the Shares, as reflected on the books and records of the Company: (1) makes proof by affidavit, in form and substance satisfactory to the Company, that such previously issued Share Certificate has been lost, stolen or destroyed; (2) requests the issuance of a new Share Certificate before the Company has notice that such previously issued Share Certificate has been acquired by a purchaser for value in good faith and without notice of an adverse claim; (3) if requested by the Company, delivers to the Company a bond, in form and substance satisfactory to the Company, with such surety or sureties as the Company may direct, to indemnify the Company against any claim that may be made on account of the alleged loss, destruction or theft of the previously issued Share Certificate; and (4) satisfies any other reasonable requirements imposed by the Company.

(iii)    Upon a Member's Transfer (defined below) in accordance with the provisions of this Agreement of all or any portion of the Shares represented by the Share Certificate, the Transferee (defined below) of such Shares shall deliver such Share Certificate to the Company for cancellation, and the Company shall thereupon issue a new Share Certificate to such Transferee for the number of Shares being Transferred and, if applicable, cause to be issued to such Member a new Share Certificate for that number of Shares that were represented by the canceled Share Certificate and that are not being Transferred. "Transfer" means, with respect to any Shares, and when used as a verb, to sell or assign such Shares, and, when used as a noun, shall have a meaning that correlates to the foregoing. "Transferee" means an assignee or transferee.

(e)    To the fullest extent permitted by the Act and in accordance with the Loan Documents, Member may, at any time or from time to time, without the consent of any other person or entity, Transfer, pledge or encumber any portion or all of the Shares. The Transferee of any of the Shares shall be admitted to the Company as a substitute Member of the Company on the effective date of such Transfer upon (i) such Transferee's written acceptance of the terms and provisions of this Agreement and its written assumption of the obligations hereunder of the transferor of such Shares, which shall be evidenced by such Transferee's execution and delivery to the Company of an Application for Transfer of Share on the reverse side of the Share Certificate representing the Shares being transferred, and (ii) the recording of such Transferee's name as the substitute Member on the books and records of the Company. Any Transfer of any Shares pursuant to this section shall be effective as of the later of (i) the close of business on the day on which such Transfer occurs, or (ii) the effective date and time of such Transfer that is designated in the Application for Transfer of Shares delivered by the Transferee to the Company. The Company shall maintain books for the purpose of registering the Transfer of Shares. A Transfer of Shares requires delivery of an endorsed Share Certificate representing such Shares.

(f)    The Company shall not amend, terminate or otherwise alter the provisions of this Section 35 without the prior written consent of Lenders.

(g)    In the event of any conflict or inconsistency between the terms and provisions of this Section 35 and the balance of this Agreement (including, without limitation, Section 21 and Section 23 hereof), the terms and conditions contained in this Section 35 shall control and govern.

16

AI000339

[Signature Page Follows]

17

AI000340

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Limited Liability Company Agreement as of the _____ day of June, 2007.

MEMBER:

FRGR MANAGING MEMBER LLC, a Delaware
limited liability company

By: _____
     Name: Mark Stern
     Title: President


INDEPENDENT DIRECTORS/SPRINGING
MEMBERS


By:_____
Name: Frank Dwyer



By:     _____
     Name: Mary Stark

AI000341

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Limited Liability Company Agreement as of the _____ day of June, 2007.

MEMBER:

FRGR MANAGING MEMBER LLC, a Delaware limited liability company

By: _____
    Name: Mark Stern
    Title: President

INDEPENDENT DIRECTORS/SPRINGING MEMBERS

By: _____
Name: Frank Dwyer

By: _____
Name: Mary Stark

AI000342

SCHEDULE A

Definitions

A.    Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"Act" has the meaning set forth in the preamble to this Agreement.

"Affiliate" means, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by under common Control with such Person.

"Agreement" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"Bankruptcy" means, with respect to any Person, if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (vii) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated.  The foregoing definition of "Bankruptcy" is intended to replace and shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-101(1) and 18-304 of the Act.

"Basic Documents" means this Agreement, the Directorship Agreement, the Loan Documents and all documents and certificates contemplated thereby or delivered in connection therewith.

"Board" or "Board of Directors" means the board of directors of the Company; provided, however, that the "Board" or "Board of Directors" shall only include an Independent Director in connection with actions which, by the express terms of this Agreement, require the unanimous affirmative vote of 100% of the members of the Board of Directors.

"Certificate of Formation" means the Certificate of Formation of the Company filed with the Secretary of State of the State of Delaware on June 19, 2007, as amended or amended and restated from time to time.

"Code" mean the Uniform Commercial Code from time to time in effect in the State of Delaware.

"Company" means First Republic Group Realty LLC, a Delaware limited liability company.

"Control", "Controlled", or "Controlling" shall include, without limitation, (i) the ownership, control or power to vote ten percent (10%) or more of (x) the members or (y) the Company or beneficial interests of any such person or entity, as the case may be, directly or indirectly, or acting through one or more persons or entities, (ii) the control in any manner over the managing member(s) or the election of more than one director or trustee (or persons exercising similar functions) of such person or entity, or (iii) the power to exercise, directly or indirectly, control over the management or policies of such person or entity. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"Covered Persons" has the meaning set forth in Section 20(a).

"Directors" means the Persons elected to the Board of Directors from time to time by the Member, including the Independent Directors, in their capacity as managers of the Company. Each Director is hereby designated a "manager" of the Company within the meaning of Section 18-101(10) of the Act.

"Directorship Agreement" means the agreement of the Directors in the form attached hereto as Schedule C. The Directorship Agreement shall be deemed incorporated into, and a part of, this Agreement.

"First Lender" means Citigroup Global Markets Realty Corp. (together with its successors and assigns).

"First Loan" means the loan made by First Lender to the Company in the original principal amount of One Hundred Fifteen Million Dollars ($115,000,000).

"First Loan Documents" means the documents delivered in connection with the First Loan (for such time as the First Loan remains outstanding).

"Independent Director" means a natural person who, shall not have been at any time during the preceding five years or at the time of such individual's appointment and or any of its shareholders, subsidiaries or Affiliates, (ii) a director (other than as an Independent Director) shall not thereafter become while serving as Independent Director (except pursuant to Section 5(c) which provides for each Independent Director to become a Springing Member) (i) a shareholder/partner/member of, or an officer, consultant or employee of, the Company of any shareholder, subsidiary or Affiliate of the Company, (iii) a customer of, or supplier to, the Company or any of its shareholders, subsidiaries or Affiliates, (iv) a Person who Controls any such shareholder, supplier or customer, or (v) a member of the immediate family of any such shareholder/director/partner/member, officer, employee, supplier or customer or of any director of the Company (other than as an Independent Director).

AI000344

"Lenders" means First Lender (for such time as the First Loan remains outstanding) and Second Lender (for such time as the Second Loan remains outstanding).

"Loans" means the First Loan (for such time as the First Loan remains outstanding) and the Second Loan (for such time as the Second Loan remains outstanding).

"Loan Documents" means the documents delivered in connection with the First Loan (for such time as the First Loan remains outstanding) and the Second Loan (for such time as the Second Loan remains outstanding).

"Member" means FRGR Managing Member LLC, as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company; provided, however, the term "Member" shall not include the Springing Members.

"Officer" means an officer of the Company described in Section 11.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

"Rating Agencies" means, prior to the final securitization of the First Loan, each of Standard & Poor's Ratings Group, a division of The McGraw-Hill Companies, Moody's Investors Service, Inc. and Fitch, Inc., or any other nationally-recognized statistical rating agency which has been designated by the First Lender or the Second Lenders, as applicable, and, after the final securitization of the First Loan or the Second Loan, as applicable, shall mean any of the foregoing that have rated any of the Securities.

"Rating Agency Confirmation" means a written affirmation from each of the Rating Agencies that the credit rating of the Securities by such Rating Agency immediately prior to the occurrence of the event with respect to which such Rating Agency Confirmation is sought will not be qualified, downgraded or withdrawn as a result of the occurrence of such event, which affirmation may be granted or withheld in such Rating Agency's sole and absolute discretion.

"Securities" means any certificates, notes or other securities issued in connection with the securitization of the First Loan or any portion thereof in a single asset securitization or a pooled loan securitization.

"Second Lender" means Citigroup Global Markets Realty Corp. (together with its successors and assigns).

"Second Loan" means the loan made by the Second Lender to the Member in the original principal amount of Fifteen Million Dollars ($15,000,000).

"Second Loan Documents" means the documents delivered in connection with the Second Loan (for such time as the Second Loan remains outstanding).

"Springing Member" means, upon such person's admission to the Company as a member of the Company pursuant to Section 5(c), a person acting as Independent Director, in such person's capacity as a member of the Company. A Springing Member shall only have the rights and duties expressly set forth in this Agreement.

B.    Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation." The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision. The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement. All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

C.    Undefined Terms

Any Capitalized term used in the Agreement and not defined therein or herein shall have the meaning ascribed to it in the Loan Documents.

SCHEDULE A-1

<u>Identification of Properties</u>

1.  Colonial Promenade at Montgomery - 2572-2796 East Boulevard, Montgomery, Alabama 36117

2.  Colonial Promenade Montgomery-North - 2232-2430 East Boulevard, Montgomery, Alabama 36117

3.  Colonial Shoppers at Bellwood - 2701-2787 Bell Road, Montgomery, Alabama 36117

4.  Colonial Shoppers at McGehee - 3459 McGehee Road, Montgomery, Alabama 36111

5.  Olde Town Shopping Square - 3003-3009 McGehee Road, Montgomery, Alabama 36111

6.  Britt David Shopping Center - 2911 Airport Thruway, Columbus, Georgia 31906

7.  Colonial Mall Staunton - 90 Lee Jackson Highway, Staunton, Virginia 24401

8.  Colonial Mall Decatur - 1801 Beltline Road, S.W., Decatur, Alabama 35601

9.  Colonial Mall Lakeshore - 150 Pearl Nix Parkway, Gainesville, Georgia 30501

10. Colonial Shoppes Quaker Village - 5605 West Friendly Avenue, Greensboro, North Carolina 27410

11. Mayberry Mall, 480 North Andy Griffith Parkway, Mt. Airy, North Carolina 27030

SCHEDULE B

<u>Member</u>

| Name | Mailing Address | Membership Interest |
|---|---|---|
| FRGR Managing Member LLC | First Republic Group, Corp.<br>241 5th Avenue, Room 302<br>New York, New York 10016<br>Attn: Mark Stern | 100% |

AI000348

## SCHEDULE C

## FIRST REPUBLIC GROUP LLC
## INDEPENDENT DIRECTOR'S CONTRACT

THIS AGREEMENT (the "Agreement") is made as of the ___ day of June, 2007 and is by and between., FIRST REPUBLIC GROUP LLC, a Delaware limited liability company (the "Company"), and _____ (the "Director").

### BACKGROUND

The Company desires to retain Director for the duties of Independent Director and Director desires to be retained for such position and to perform the duties required of such position in accordance with the terms and conditions of this Agreement.

### AGREEMENT

In consideration for the premises recited above and the mutual covenants contained herein, the adequacy and sufficiency of which are hereby acknowledged, the Company and the Director hereby agree as follows:

Section 1.      **DUTIES & PERFORMANCE.** The Company hereby requires that the Director be available to perform such duties as may be determined pursuant to the Company's articles of incorporation and bylaws, which the Director has reviewed and is familiar with. The Director agrees to devote as much time as is necessary to perform completely his duties as the Director of the Company.

Section 2.      **TERM & COMPENSATION.** Except in the case of early termination, as hereinafter specifically provided, the term of this Agreement shall commence as of the date of this Agreement and shall continue for an indefinite period or until the Company is dissolved or the services of the Director are no longer required, all as decided by the Company in its sole discretion. The Company agrees to pay the Director a base fee of One Thousand and 00/100 Dollars ($1000) per year payable in advance. The initial year's base fee is due upon execution of this Agreement by both parties and is non-refundable. Thereafter, the fee shall be due on or before July 1st of each succeeding year and shall be refundable pursuant to the termination provisions contained in this Agreement. Such fee may be adjusted from time to time as agreed by the parties.

Section 3.      **EXPENSES.** In addition to the compensation provided in paragraph 2 hereof, the Company will reimburse the Director for reasonable business-related travel expenses incurred in the performance of the Director's duties for the Company, provided that such expenses are previously approved by the Company. Such payments shall be made by the Company upon submission by the Director of a signed statement, with supporting documentation, itemizing the expenses incurred.

Section 4.      **CONFIDENTIALITY.** The Director may obtain access to certain confidential information concerning the Company and its affairs, including, but not limited to business methods, information systems, financial data and strategic plans which are unique assets of the

Company ("Confidential Information"). The Director covenants not to, either directly or indirectly, in any manner, utilize or disclose to any person, firm, corporation, association or other entity any Confidential Information at any time.

Section 5. **NOTICE OF MATERIAL CHANGE IN FINANCIAL CONDITION OF THE COMPANY**. The Company shall notify the Director in writing, at the earliest practicable time, of any material adverse change in the financial condition of the Company.

Section 6. **TERMINATION**. With or without cause, the Company may terminate this Agreement at any time upon written notice for any reason, and the Company shall be obligated to pay to the Director the compensation and expenses due up to the date of the termination. If termination occurs prior to April 1st of any year after the first year of this Agreement, the Company shall be entitled to receive, upon written request by the Company, a prorated refund of the portion of the base fee that relates to the period after the applicable termination date. Such written request must be submitted within ninety (90) days of the termination date. Nothing contained herein or omitted herefrom shall prevent the members of the Company from removing the Director with immediate effect at any time for any reason. The Director may terminate this Agreement only if a previously approved successor Director is identified and engaged by the Company or if the Company fails to pay the Director within sixty (60) days of the annual due date, in which case a successor Director shall not be required.

Section 7. **DISCONTINUANCE OF BUSINESS**. If, during the term of this Agreement, the Company should discontinue its business indefinitely, this Agreement shall automatically terminate without further liability on the part of either of the parties hereto.

Section 8. **INDEMNIFICATION**. The Company shall indemnify, defend and hold harmless the Director as provided by the Company's operating agreement, except with respect to the Director's gross negligence, willful misconduct or bad faith.

Section 9. **EFFECT OF WAIVER**. The waiver by either party of the breach of any provision of this Agreement shall not operate as or be construed as a waiver of any subsequent breach thereof.

Section 10. **NOTICE**. Any and all notices referred to herein shall be sufficient if furnished in writing to:

the Company at:    First Republic Group LLC
         46 Main Street
         Monsey, New York 10952
         Attention: Mark Stern

         with a copy to:

         Steven Friedman, Esq.
         Buchanan Ingersoll & Rooney P.C.
         One Chase Manhattan Plaza
         35th Floor
         New York, New York 10016

AI000350

the Director at:

_____
_____
_____

with a copy to:

_____
_____
_____

10.     **ARBITRATION.**  Any dispute or claim arising out of, or relating to, this Agreement or any breach thereof, with the sole exception of any dispute or claim arising out of, or relating to, indemnification and advancement rights of the Director, shall be submitted to binding arbitration which shall take place in New York County, New York, in accordance with the Rules of the American Arbitration Association; judgment upon the award rendered may be entered in any court having jurisdiction over the dispute.  The agreement to arbitrate herein recited is based upon mutual consideration exchanged between the parties hereto, and is irrevocable.  The award of the arbitrators shall be rendered by majority agreement and shall constitute a final resolution of the dispute or claim on questions of both law and fact pertaining to the dispute or claim submitted hereunder.

11.     **GOVERNING LAW.**  This Agreement shall be interpreted in accordance with, and the rights of the parties hereto shall be determined by, the laws of the State of New York without reference to its conflicts of law principles.

12.     **ASSIGNMENT.**  The rights and benefits of the Company under this Agreement shall be transferable, and all the covenants and agreements hereunder shall inure to the benefit of, and be enforceable by or against, its successors and assigns.  The duties and obligations of the Director under this Agreement are personal and therefore the Director may not assign any right or duty under this Agreement without the prior written consent of the Company.

13.     **MISCELLANEOUS.**

     (a)     If any provision of this Agreement shall be declared invalid or illegal, for any reason whatsoever, then, notwithstanding such invalidity or illegality, the remaining terms and provisions of this Agreement shall remain in full force and effect in the same manner as if the invalid or illegal provision had not been contained herein.

     (b)     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their respective heirs, executors, administrators, successors and assigns.

     (c)     This agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument, and may be executed by facsimile signature which shall be considered an original in all respects.

**IN WITNESS WHEREOF,** the parties hereto have caused this Independent Director Agreement to be duly executed as of the day and year first above written.

**FIRST REPUBLIC GROUP REALTY LLC**

By:_____
  Name:
  Title:


**DIRECTOR:**


_____

AI000352

Directorship Agreement

June ___, 2007

First Republic Group Realty LLC
241 5th Avenue, Room 302
New York, New York 10016

Re:  Directorship Agreement– First Republic Group Realty LLC

Ladies and Gentlemen:

For good and valuable consideration, each of the undersigned Persons, who have been designated as directors of First Republic Group Realty LLC, a Delaware limited liability company (the "Company"), in accordance with the Limited Liability Company Agreement of the Company, of even date herewith, as it may be amended or restated from time to time (the "LLC Agreement"), hereby agree as follows:

1.      Each of the undersigned accepts such Person's rights and authority as a Director under the LLC Agreement and agrees to perform and discharge such Person's duties and obligations as a Director under the LLC Agreement, and further agrees that such rights, authorities, duties and obligations under the LLC Agreement shall continue until such Person's successor as a Director is designated or until such Person's resignation or removal as a Director in accordance with the LLC Agreement.  Each of the undersigned agrees and acknowledges that it has been designated as a "manager" of the Company within the meaning of the Delaware Limited Liability Company Act.

2.      So long as any Obligation is outstanding, each of the undersigned agrees, solely in its capacity as a creditor of the Company on account of any indemnification or other payment owing to the undersigned by the Company, not to acquiesce, petition or otherwise invoke or cause the Company to invoke the process of any court or governmental authority for the purpose of commencing or sustaining a case against the Company under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Company or any substantial part of the property of the Company, or ordering the winding up or liquidation of the affairs of the Company.

3.      THIS DIRECTORSHIP AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, AND ALL RIGHTS AND REMEDIES SHALL BE GOVERNED BY SUCH LAWS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.

Initially capitalized terms used and not otherwise defined herein have the meanings set forth in the LLC Agreement.

This Directorship Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Directorship Agreement and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have executed this Directorship Agreement as of the day and year first above written.

_____

_____

_____

_____

_____

AI000354

SCHEDULE D

<u>DIRECTORS</u>

1. Mark Stern
2. Esther Stern
3. Joshua Safrin
4. Frank Dwyer (Independent Director)
5. Mary Stark (Independent Director)

SCHEDULE E

OFFICERS

OFFICERS                                    TITLE

Mark Stern                                  President/Secretary

                                            Vice President/Treasurer

AI000356

EXHIBIT A

FORM OF CERTIFICATE FOR
LIMITED LIABILITY COMPANY INTEREST
OF FIRST REPUBLIC GROUP REALTY LLC

This Certificate has not been and will not be registered under the Securities Act of 1933 or under the securities or blue sky laws of any state. The holder of this Certificate, by its acceptance hereof, represents that it is acquiring this security for investment and not with a view to any sale or distribution hereof.

Certificate Number __                                  ___% Limited Liability Company Interest

First Republic Group Realty LLC, a Delaware limited liability company (the "Company"), hereby certifies that [_____] (together with any assignee of this Certificate, the "Holder") is the registered owner of all of the limited liability company interests in the Company (the "Shares"). The rights, powers, preferences, restrictions and limitations of the Shares are set forth in, and this Certificate and the Shares represented hereby are issued and shall in all respects be subject to the terms and provisions of, the Limited Liability Company Operating Agreement of the Company dated as of June __, 2007, as the same may be amended or restated from time to time (the "Limited Liability Company Agreement"). THE TRANSFER OF THIS CERTIFICATE AND THE SHARES REPRESENTED HEREBY IS RESTRICTED AS DESCRIBED IN THE LIMITED LIABILITY COMPANY AGREEMENT. By acceptance of this Certificate, and as a condition to being entitled to any rights and/or benefits with respect to the Limited Liability Company Interest evidenced hereby, the Holder is deemed to have agreed to comply with and be bound by all the terms and conditions of the Limited Liability Company Agreement. The Company will furnish a copy of the Limited Liability Company Agreement to the Holder without charge upon written request to the Company at its principal place of business. This Certificate evidences an interest in First Republic Group Realty LLC.

The Company maintains books for the purpose of registering the transfer of Shares.

Each limited liability company interest in the Company shall constitute a "security" within the meaning of, and governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of New York, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995.

This Certificate shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of laws.

[Signature Page to Follow]

IN WITNESS WHEREOF, the Company has caused this Certificate to be executed as of the date set forth below.

First Republic Group Realty LLC

Dated: June ___, 2007

By:_____

President

AI000358

EXHIBIT B

SPECIAL PURPOSE ENTITY PROVISIONS

The Company has not and shall not:

(a)     engage in any business or activity other than the acquisition, development, ownership, operation, leasing, managing and maintenance of the Properties, and entering into the Loans, and activities incidental thereto;

(b)     acquire or own any material assets other than (i) the Properties, and (ii) such incidental Personal Property as may be necessary for the operation of any Individual Property;

(c)     merge into or consolidate with any Person or dissolve, terminate or liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure;

(d)     fail to observe its organizational formalities or preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its organization or formation, and qualification to do business in the State where any Individual Property is located, if applicable, or (ii) without the prior written consent of Lender, amend, modify, terminate or fail to comply with the provisions of this Agreement;

(e)     , own any subsidiary or make any investment in, any Person without the prior written consent of Lender;

(f)     commingle its assets with the assets of any of its members, general partners, Affiliates, principals or of any other Person, participate in a cash management system with any other Person or fail to use its own separate stationery, telephone number, invoices and checks;

(g)     incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than the Debt, except for trade payables in the ordinary course of its business of owning and operating the Properties, provided that such debt (i) is not evidenced by a note, (ii) is paid within sixty (60) days of the date incurred, (iii) does not exceed, in the aggregate, two percent (2%) of the outstanding principal balance of the Note and (iv) is payable to trade creditors and in amounts as are normal and reasonable under the circumstances;

(h)     become insolvent and fail to pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due;

AI000359

(i)    (i) fail to maintain its records (including financial statements), books of account and bank accounts separate and apart from those of the members, general partners, principals and Affiliates of the Company or the Affiliates of the Company, and any other Person, (ii) permit its assets or liabilities to be listed as assets or liabilities on the financial statement of any other Person or (iii) include the assets or liabilities of any other Person on its financial statements;

(j)    enter into any contract or agreement with any member, general partner, principal or Affiliate of the Company, the Member, Guarantor, or any member, general partner, principal or Affiliate thereof (other than a business management services agreement with an Affiliate of any of the foregoing, provided that (i) such agreement is acceptable to Lender, (ii) the manager, or equivalent thereof, under such agreement holds itself out as an agent of the Company and (iii) the agreement meets the standards set forth in this subsection (j) following this parenthetical), except upon terms and conditions that are commercially reasonable, intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any member, general partner, principal or Affiliate of the Company, the Member, Guarantor, or any member, general partner, principal or Affiliate thereof;

(k)    seek the dissolution or winding up in whole, or in part, of the Company;

(l)    fail to correct any known misunderstandings regarding the separate identity of the Company, or any member, general partner, principal or Affiliate thereof or any other Person;

(m)    guarantee or become obligated for the debts of any other Person or hold itself out to be responsible for the debts of another Person;

(n)    make any loans or advances to any third party, including any member, general partner, principal of the Company, the Member or any member, principal or Affiliate thereof, and shall not acquire obligations or securities of any member, general partner, principal of the Company, the Member or any member, general partner, or Affiliate thereof;

(o)    fail to file its own tax returns or be included on the tax returns of any other Person except as required by Applicable Law;

(p)    fail either to hold itself out to the public as a legal entity separate and distinct from any other Person or to conduct its business solely in its own name or a name franchised or licensed to it by an entity other than an Affiliate of the Company and not as a division or part of any other entity in order not (i) to mislead others as to the identity with which such other party is transacting business, or (ii) to suggest that the Company is responsible for the debts of any third party (including any member,

AI000360

general partner, principal or Affiliate of the Company or any member, general partner, principal or Affiliate thereof);

(q)     fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations;

(r)     share any common logo with or hold itself out as or be considered as a department or division of (i) any general partner, principal, member or Affiliate of the Company, (ii) any Affiliate of a general partner, principal or member of the Company, or (iii) any other Person;

(s)     fail to allocate fairly and reasonably any overhead expenses that are shared with an Affiliate, including paying for office space and services performed by any employee of an Affiliate;

(t)     pledge its assets for the benefit of any other Person, and with respect to the Company, other than with respect to the Loan;

(u)     fail to maintain a sufficient number of employees in light of its contemplated business operations;

(v)     for so long as the Loan is outstanding pursuant to the Note and the First Loan Documents, the Company shall not file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute, or make an assignment for the benefit of creditors without the unanimous affirmative vote of 100% of the Board of Directors (including each Independent Director);

(w)     fail to hold its assets in its own name;

(x)     fail to consider the interests of its creditors in connection with all corporate actions to the extent permitted by Applicable Law;

(y)     have any of its obligations guaranteed by an Affiliate except the Guarantor in connection with the Loan;

(z)     violate or cause to be violated the assumptions made with respect to the Company and the Member in the Insolvency Opinion;

Upon the occurrence of any event that causes the Member to cease to be a member of the Company, to the fullest extent permitted by law, the personal representative of Member shall, within ninety (90) days after the occurrence of the event that terminated the continued membership of Member in the Company, agree in writing (A) to continue the Company and (B) to the admission of the personal representative or its nominee or designee, as the case may be, as a substitute member of the Company, effective as of the occurrence of the event that

AI000361

terminated the continued membership of Member of the Company in the Company.  Any action initiated by or brought against Member or Special Member under any Creditors Rights Laws shall not cause Member or Special Member to cease to be a member of the Company and upon the occurrence of such an event, the business of the Company shall continue without dissolution. Each of Member and Special Member hereby waives any right it might have to agree in writing to dissolve the Company upon the occurrence of any action initiated by or brought against Member or Special Member under any Creditors Rights Laws, or the occurrence of an event that causes Member or Special Member to cease to be a member of the Company.

AI000362