Stephen R. Stern, Esq. (SRS-5665)
Mark W. Geisler, Esq. (MG-7261)
HOFFINGER STERN & ROSS, LLP
150 East 58th Street, 19th Floor
New York, New York 10155
Tel:    (212) 421-4000
Fax:    (212) 750-1259

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AMUSEMENT INDUSTRY, INC., dba WESTLAND
INDUSTRIES; PRATICAL FINANCE CO., INC.,           :

                    Plaintiffs,           :   07CV11586 (LAK) (GWG)
    -against-
                                                           :
MOSES STERN, aka MARK STERN, JOSHUA SAFRIN,    (ECF)
FIRST REPUBLIC GROUP REALTY, LLC,                 :
EPHRAIM FRENKEL,
LAND TITLE ASSOCIATES ESCROW,                     :

                    Defendants.          :
-----------------------------------------------------------------X
JOSHUA SAFRIN,
        Defendant/Third Party-Crossclaim-
        Counterclaim Plaintiff,
    -against-

STEPHEN FRIEDMAN, STEVEN ALEVY, BUCHANAN
INGERSOLL & ROONEY, P.C., BANKERS CAPITAL
REALTY ADVISORS, LLC, and FIRST REPUBLIC
GROUP CORP.,
        Third Party Defendants,
    -and-

MOSES STERN, aka MARK STERN, FIRST REPUBLIC
GROUP REALTY LLC, EPHRAIM FRENKEL, and
LAND TITLE ASSOCIATES ESCROW,
        Defendants/Crossclaim Defendants,
    -and-

AMUSEMENT INDUSTRY, INC. dba WESTLAND
INDUSTRIES, PRACTICAL FINANCE CO., INC.
        Plaintiffs/Counterclaim Defendants.
-----------------------------------------------------------------X

## MEMORANDUM OF LAW ON BEHALF OF THIRD PARTY DEFENDANT FIRST REPUBLIC GROUP CORP. TO DISMISS THIRD PARTY COMPLAINT OF JOSHUA SAFRIN

# **TABLE OF CONTENTS**

Table of Authorities ...................................................................................................ii

Preliminary Statement ................................................................................................1

Statement of Facts .....................................................................................................1

POINT I
NO CLAIM IS ASSERTED AGAINST
FIRST CORP. IN THE TPC ......................................................................................2

      A.   The Foundation for the TPC – The Complaint ............................................3

      B.   The TPC's impermissible expansion, embellishment and re-writing
          of the Complaint ............................................................................................3

POINT II
THE FIRST COUNT FOR INDEMNIFICATION AND
CONTRIBUTION SHOULD BE DISMISSED AS AGAINST FIRST CORP.....................6

POINT III
THE CIVIL RIGHTS LAW CLAIMS (COUNTS V AND VII)
SHOULD BE DISMISSED AS TO FIRST CORP..........................................................7

POINT IV
THE CALIFORNIA COMMON LAW RIGHT OF PRIVACY/COMMERCIAL
MISAPPROPRIATION CLAIMS SHOULD BE DISMISSED (COUNTS VI AND VIII)......10

POINT V
THE SECOND COUNT FOR DECLARATORY
RELIEF SHOULD BE DISMISSED AS AGAINST FIRST CORP. ...............................11

CONCLUSION ...........................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                           **Page**

85 Fifth Ave. 4th Floor, LLC v. I.A. Selig, LLC, 45 A.D.3d 439,
845 N.Y.S.2d 274 (1st Dept. 2007) ………………………………………….. 9

Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968,
510 N.Y.S.2d 546 (1986) …………………………………………………… 9

Corley v. Country Squire Apartments, Inc., 32 A.D.3d 867,
820 N.Y.S.2d 900 (2d Dept. 2006) ………………………………………… 7

Flores v. Mosler Safe Company, 7 N.Y.2d 276, 196 N.Y.S.2d 975 (1959)………………... 9

Freihofer v. Hearst Corp., 65 N.Y.2d 135, 490 N.Y.S.2d 735 (1985) ……………………... 8

Meeropol v. Nizer, 381 F.Supp. 29 (S.D.N.Y. 1974) ……………………………………… 9

Messenger v. Gruner + Jahr Printing and Publishing, 94 N.Y.2d 436,
706 N.Y.S.2d 52 (2000) …………………………………………………… 8-9

Salvatore v. Kumar, 45 A.D.3d 560, 845 N.Y.S.2d 384 (2d Dept 2007) …………………. 9

**Statutes**

New York Civil Rights Law, § 50 ……………………………………………………….. 7-9

New York Civil Rights Law, § 51 ……………………………………………………….. 7-9

## Preliminary Statement

Third Party Defendant First Republic Group Corp. ("First Corp.") respectfully submits this Memorandum of Law in support of its motion to dismiss the Third Party Complaint ("TPC") of defendant/third party crossclaim-counterclaim plaintiff Joshua Safrin ("Safrin") (ECF Document no. 65). As will be shown, the TPC clearly alleges no claim whatsoever against First Corp. and, apparently, was brought without any competent factual basis alleged therefor. Under the circumstances, the TPC must be dismissed as against First Corp.

## Statement of Facts

At the outset of the document, the TPC expressly asserts it is based -- "upon information and belief" -- on the pleading filed *by the plaintiffs* in the action, Amusement Industry, Inc. dba Westland Industries ("Amusement) and Practical Finance Co., Inc. ("Practical Finance"):

> "In the complaint, plaintiffs allege a series of transactions, the details of which follow herein. The following allegations are made on information and belief. The bases for Safrin's belief are, largely, the allegations in the Complaint itself." [TPC, ¶ 19]

Thus, Safrin expressly bases the TPC, upon information and belief, and solely upon the allegations in the Complaint (ECF document no. 1).

The TPC adds (a) a host of third party defendants – Stephen Friedman ("Friedman"), Steven Alevy ("S Alevy"), Buchanan Ingersoll & Rooney, P.C. ("Buchanan Ingersoll"), Bankers Capital Realty Advisors LLC ("Bankers Capital") and First Corp.; (b) crossclaims against defendants Moses Stern, aka Mark Stern ("Stern"), First Republic Group Realty LLC, Ephraim Frenkel ("Frenkel") and Land Title Associates Escrow ("Land Title");[1] and (c) counterclaims against plaintiffs Amusement and Practical Finance.

---

[1] Motions to dismiss the TPC as against Stern, First Republic LLC, Frenkel and Land Title have been filed (ECF document nos. 76, 77, 79. 80).

In the preamble to the TPC, Safrin inappropriately lumps together <u>all</u> original defendants in the action with <u>all</u> newly named third party defendants, indicating they will be referred to collectively as "Defendants" in the TPC. Thus, indiscriminate and inappropriate references to "Defendants" in the TPC are to the following <u>nine</u> parties: (a) Stern, (b) First Republic Group Realty, LLC, (c) Frenkel, (d) Land Title, (e) Friedman, (f) S Alevy, (g) Buchanan, (h) Bankers Capital, and (i) First Corp. (collectively referred to herein as the "TPC Nine").

With respect to First Corp., the TPC purports to allege the following six claims for relief:

Indemnification and contribution – Count I

Declaratory Judgment – Count II

N.Y. Civil Rights Law §§ 50, 51 – Count V

Violation of California Common Law Right of Privacy/Commercial Misappropriation – Count VI

Conspiracy to Violate N.Y. Civil Rights Law §§ 50, 51 – Count VII

Conspiracy to Violate Safrin's Right to Privacy under California Common Law – Count VIII

As will be demonstrated below, the TPC is nothing more than a conclusory, shotgun approach to pleading, improperly and repeatedly resorting to wholesale and nonspecific references to "Defendants" in violation of the Federal Rules of Civil Procedure – i.e., the TPC Nine -- and should be dismissed as against First Corp.

## POINT I

### NO CLAIM IS ASSERTED AGAINST FIRST CORP. IN THE TPC

The foundation for the TPC is the Plaintiffs' Complaint, which contains two innocuous references to First Corp. Notwithstanding Safrin's misplaced attempt to rewrite the Complaint

upon which he explicitly states he bases the TPC, it is clear absolutely no claim for relief is stated against First Corp. and the TPC should be dismissed.

### A. The Foundation for the TPC – The Complaint

The Complaint does not name First Corp. a party defendant. The Complaint does simply allege First Corp. entered into a contract to purchase certain properties from another non-party, Colonial Realty Limited Partnership, and thereafter (and prior to the closing), assigned the contract to purchase to First Republic Group Realty, LLC (a named defendant and purported cross-claim defendant from Safrin's perspective). Thus, prior to the time the properties at issue in the Complaint were purchased, and prior to the time plaintiffs allege they advanced $13,000,000 in connection with said purchase, First Corp. was no longer a party to the purchase transaction, having assigned the contract of sale to defendant First Republic Group Realty, LLC.

Over the course of the 86 page, 262 paragraph Complaint – the explicitly stated foundation for Safrin's TPC against First Corp. – there are only *two references to First Corp.:*

> "6. Non-party, First Republic Group, Corp. is a corporation registered to do business in New York, with its principal place of business in New York. Upon information and belief, First Republic Group, Corp., is and at all times relevant to this action was, solely owned and controlled by Most Stern aka Mark Stern."
>
> "24. On or about April 20, 2007, First Republic Group, Corp., as buyer, entered into a written contract to purchase from Colonial Realty Limited Partnership, as seller, numerous shopping centers in the southeastern United States. This contract was subsequently amended and assigned, to among other things, change the buyer to First Republic LLC, . . . First Republic LLC's purchase of the property portfolio closed on about July 12, 2007, so that First Republic LLC became owner of the eleven properties . . . ."

### B. The TPC's impermissible expansion, embellishment and re-writing of the Complaint

Against the "background" of the foregoing two innocuous references to First Corp. in the Complaint, the TPC *expands, embellishes and rewrites* the Complaint, making the following allegations in the TPC regarding First Corp.:

3

"9. Upon information and belief, Third Party Defendant First Republic Group Corp. ("First Republic Corp.") is a corporation organized under the law of New York, with its principal place of business ad 241 Fifth Avenue, Suite 302, New York, New York 10016. Upon information and belief, First Republic Corp. was, at all times mentioned herein, solely owned and controlled by defendant Moses Stern."

"20. According to the Complaint, First Republic Group Corp. purchased from non-party Colonial Realty Limited Partnership ("Colonial Realty") a certain real estate portfolio consisting of shopping centers located in the Southeastern United States (the "Property Portfolio). At some point, First Republic Corp. assigned its interest in the Property Portfolio to First Republic LLC."

"29. According to the Complaint, the investment opportunity presented by Friedman and Alevy in June, 2007, purportedly on behalf of Safrin and others, resulted in a 'written Letter of Intent' drafted by Alevy, signed by Stern on behalf of First Republic Corp. and dated June 29, 2007. Although the document is referred to as a 'Letter of Intent' in the Complaint, the document itself is characterized as a Letter of Understanding (hereafter 'LOI'). (Complaint, Ex. 2.) The LOI identifies as its parties First Republic Corp. and Westland Industries, the name under which Amusement does business. (Id.)"

"32. According to the Complaint, on June 29, 2007, the same day Stern signed the LOI on behalf of First Republic Corp., Amusement wired $13,000,000 into the Land Escrow account. Plaintiffs assert that as a result of this wire transfer, a contract formed among Amusement and Safrin, among others, having the terms of the LOI."

"36. Plaintiffs allege that on June 29, 2007 and during the seven-day period that followed, Amusement and First Republic Corp. had agreed to work in good faith 'to finalize [their] agreements.' During that time period, Amusement drafted and forwarded three partnership agreements to Friedman for Safrin, among others, to sign in order 'to complete a transaction.' (Complaint, Ex. 3)"

"41. Plaintiffs allege that on July 6, 2007, counsel for Amusement also wrote to Friedman, stating that if the transaction had materially changed from the draft partnership agreements and the LOI (agreements to which only Amusement and First Republic Corp. are parties), then the wired $13 million should be returned."

"43. On July 9, 2007, according to the Complaint, Amusement asked Friedman, in writing, for a copy of the Citibank loan documents that provided for the majority of the financing for the Property Portfolio purchase. Friedman did not provide the documents, but responded that same day, in writing, that First Republic LLC was now the purchasing entity."

4

While repeatedly couching the above allegations as "according to the Complaint," or claiming "plaintiffs allege" the foregoing, a comparison of the two allegations regarding First Corp. in the Complaint against the assertions in the TPC reveals a wide disparity, to say the least. For example, TPC ¶ 20 quoted above incorrectly states the Complaint alleges First Corp. purchased the property portfolio. But the Complaint – which Safrin asserts he bases his allegations on – pointedly says something completely different, namely, that the disparate entity First Republic Group Realty LLC purchased the property portfolio. Thus, and contrary to Safrin's misstatement of the Complaint, paragraph 24 of the Complaint clearly alleges the property portfolio was purchased by First Republic LLC: ". . . First Republic LLC's purchase of the property portfolio closed on about July 12, 2007, so that First Republic LLC became owner of the eleven properties . . ."

By way of further example, Safrin asserts in paragraph 29 of the TPC that "according to the Complaint" the so-called "Letter of Intent" of June 29, 2007 was "signed by Stern on behalf of First Republic Corp." (notably, the so-called Letter of Intent was not alleged to have been signed by any other party to the alleged transaction). However, the Complaint (the cited source for Safrin's allegation) asserts the Letter of Intent was signed by the disparate party, First Republic Group Realty LLC: ". . . on June 29, 2007 a written Letter of Intent . . . was . . . signed by Stern on behalf of the purchaser of the property portfolio . . ." (Complaint, ¶ 35). As noted, the Complaint alleges the purchaser was First Republic Group Realty, LLC (<u>not</u> First Corp.) and it is undisputed the property portfolio was purchased by First Republic Group Realty, LLC. Once again, Safrin inexplicably and impermissibly strays from and rewrites the Complaint, which he claims he bases his TPC upon.

5

The apparent reason for Safrin basing his allegations on the Complaint is his litigation position that he had no involvement in the property portfolio purchase transaction at all and that his signature was forged onto certain documents. Given that litigation position, he cannot take literary license and then re-write the Complaint, while stating he based his TPC solely upon the Complaint (and even then, only "upon information and belief"). Thus, the Complaint itself – the supposed sole pleaded foundation for Safrin's TPC against First Corp. – squarely defeats the claims he now purports to assert against First Corp. Indeed, there are no allegations in the Complaint to support any claim against First Corp. Based on the admitted "source" of Safrin's allegations, no claim has been asserted in the TPC against First Corp., and the TPC should be dismissed as against First Corp.

**POINT II**

**THE FIRST COUNT FOR INDEMNIFICATION AND
CONTRIBUTION SHOULD BE DISMISSED AS AGAINST FIRST CORP.**

In addition to and independent of the foregoing, the claims in the TPC are defective for other reasons as well.

The first count, asserted against all "Defendants" – i.e., the TPC Nine – asserts Safrin is innocent of any wrongdoing or fault and to the extent he "is found liable to plaintiffs for the wrongful conduct alleged in the Complaint, Safrin is entitled to indemnity and/or contribution from *one or more* of the Defendants" (TPC, ¶ 69 [emphasis supplied]). The conclusory assertion is insufficient against First Corp.

First, the Complaint does not ascribe any wrongful conduct to First Corp.; neither does Safrin. Safrin cannot claim First Corp. caused him any damage in the event Safrin is found liable to plaintiffs. There is nothing pleaded as to what First Corp. was supposed to do or failed to do and, indeed, the source of all allegations in the TPC – the Complaint – does not ascribe any

6

wrongdoing to First Corp. Accordingly, it is submitted the indemnification/contribution claim against First Corp. must fall. See, e.g., Corley v. Country Squire Apartments, Inc., 32 A.D.3d 867, 820 N.Y.S.2d 900 (2d Dept. 2006) ("Country Squire failed to sufficiently plead the elements of common-law indemnification as its cross claim did not allege that the plaintiff's injury was due solely to the appellant's negligent performance or nonperformance of an act solely within its province [citation omitted]").

## POINT III

### THE CIVIL RIGHTS LAW CLAIMS (COUNTS V AND VII) SHOULD BE DISMISSED AS TO FIRST CORP.

Safrin indiscriminately claims the TPC Nine violated his rights under New York Civil Rights Law, §§ 50 and 51. As with his other claims, Safrin does not ascribe any particular conduct to First Corp. nor, in fact, could he, inasmuch as the lynchpin and source of his "allegations" is the Complaint which contains two innocuous paragraphs concerning First Corp. – regarding its State of incorporation, place of business, and that it entered into a contract which it assigned to First Republic Group Realty, LLC. Understandably, Safrin nowhere explains how the alleged pre-closing assignment of the contract to First Republic Group Realty, LLC somehow violated his rights under the Civil Rights Law. Further, as noted above, Safrin's embarkation on a detour, improperly and inaccurately re-phrasing what the Complaint alleges, does not provide any substance to his Civil Rights Law claims, much less any support for the *in terrorem* and conclusory charge that the TPC Nine acted outrageously, entitling him to punitive damages. The Civil Rights Law claims cannot stand as against First Corp.

Further, the Civil Rights Law plainly does not apply to Safrin's claims. Section 50 of the Civil Rights Law is, by itself, a criminal statute which, on its own, does not provide for a civil remedy:

> "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, . . . is guilty of a misdemeanor."

Section 51 provides in pertinent part:

> "Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages. . . ."

Sections 50 and 51 of the Civil Rights Law are found in "Article 5 – Right of Privacy" in the New York Civil Rights Law. The New York State Civil Rights Law statutes do not apply, and were not intended to apply, to the claims of Safrin, that his name was allegedly forged on business documents.

"[I]n this state, there is no common-law right of privacy and the only available remedy is that created by Civil Rights Law §§ 50 and 51" (Freihofer v. Hearst Corp., 65 N.Y.2d 135, 140, 490 N.Y.S.2d 735 [1985] [citations omitted]). The statute "created a limited right of privacy, which had not existed prior to the enactment [of said statute]" (Id. [citation omitted]). The New York State Court of Appeals has taken "cognizance of the limited scope of the statute as granting protection only to the extent of affording a remedy for commercial exploitation of an individual's name, portrait or picture, without written consent" (Id.).

8

Further, the New York State Court of Appeals has noted, "recognizing the Legislature's pointed objective in enacting sections 50 and 51, we have underscored that the statute is to be narrowly construed and 'strictly limited to nonconsensual commercial appropriations of the name, portrait or picture of a living person'" (Messenger v. Gruner + Jahr Printing and Publishing, 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52 [2000], quoting Finger v. Omni Publs. Intl., 77 N.Y.2d 138, 141). Narrow construction of the statute, in accordance with the statute's purpose, warrants dismissal of the Civil Rights Law claims.

Indeed, "[t]he primary purpose of this legislation was to protect the sentiments, thoughts and feelings of an individual" (Flores v. Mosler Safe Company, 7 N.Y.2d 276, 280, 196 N.Y.S.2d 975 [1959] [citation omitted]). See generally, Meeropol v. Nizer, 381 F.Supp. 29, n. 6 at 39 (S.D.N.Y. 1974) ("Generally, the law of defamation protects an individual from harm to relational interest, while the right of privacy has developed to compensate an individual for the injury to his feelings, to prevent inaccurate portrayal of private life, and, in some instances, to prevent one's private life from being depicted at all" [citation omitted]), affd on other grounds, 560 F.2d 1061 (2d Cir. 1977). Safrin does not claim his "sentiments, thoughts and feelings" were hurt by the alleged conduct, nor do the facts he alleges fall within the scope of a Civil Rights Law privacy claim.

Thus, the circumstances alleged by Safrin – involving the alleged forgery of his signature on business documents – does not fall within the scope of a cause of action under New York Civil Rights Law, § 51, and the claims should be dismissed.

Beyond the foregoing, Count VII, asserting a conspiracy to violate the Right of Privacy statutes cited in Count V, is subject to dismissal for an additional, independent ground. "'New York does not recognize a civil conspiracy to commit a tort as an independent cause of action.'"

Salvatore v. Kumar, 45 A.D.3d 560, 845 N.Y.S.2d 384 (2d Dept 2007), quoting Pappas v. Passias, 271 A.D.2d 420, 421, 707 N.Y.S.2d 178 (2d Dept 2000); see also, e.g., Alexander & Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 510 N.Y.S.2d 546 (1986); 85 Fifth Ave. 4th Floor, LLC v. I.A. Selig, LLC, 45 A.D.3d 439, 845 N.Y.S.2d 274 (1st Dept. 2007).

Indeed, Safrin expressly incorporated by reference this argument in support of the motion to dismiss the twenty-fifth claim in the Complaint for conspiracy to commit conversion and fraud. See ECF Document No. 33, p. 34. This basic principle of law fully applies here as well.

Accordingly, for the foregoing reasons, Counts V and VII should be dismissed.

## POINT IV

### THE CALIFORNIA COMMON LAW RIGHT OF PRIVACY/COMMERCIAL MISAPPROPRIATION CLAIMS SHOULD BE DISMISSED (COUNTS VI AND VIII)

Counts VI and VIII allege, respectively, that the TPC Nine violated Safrin's California common law right of privacy/commercial misappropriation and conspired to violate his California common law right of privacy.

Once again, as with all his claims, Safrin simply does not – because he cannot -- ascribe any particular wrongful conduct to First Corp., resorting, instead, to wholesale references to "Defendants" (i.e., the TPC Nine).

Aside from the foregoing fundamental defect, Safrin can hardly claim rights under California law. Safrin alleges he is a citizen and resident of the State of New York (TPC ¶ 4). Safrin alleges, upon information and belief, First Corp. is a New York corporation, with a principal place of business in New York, and that it is solely owned by Mark Stern, whom he also alleges, upon information and belief, is a New York citizen and resident (TPC ¶¶ 9, 12). Thus, there are no contacts with the State of California and Safrin cannot claim a violation of his supposed California common law rights which presumably apply to California citizens.

## POINT V

## THE SECOND COUNT FOR DECLARATORY RELIEF SHOULD BE DISMISSED AS AGAINST FIRST CORP.

The Second Count for declaratory relief is asserted against the TPC Nine as well as the plaintiffs-counterclaim defendants. It essentially alleges there is a controversy concerning the existence of a principal-agent or attorney-client relationship between Safrin and Friedman/Buchanan Ingersoll. With the dismissal of the foregoing claims against First Corp., there would be no reason to retain this cause of action against First Corp.

## Conclusion

For the reasons stated herein, the Third Party Complaint should be dismissed against First Republic Group Corp.

Dated: New York, New York
May 27, 2008

HOFFINGER STERN & ROSS, LLP
Attorneys for Third Party Defendant
First Republic Group Corp.

_____
Stephen R. Stern (SRS5565)
Mark W. Geisler (MG7261)
150 East 58th Street, 19th Floor
New York, New York 10155
(212) 421-4000