**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| AMUSEMENT INDUSTRY, INC., dba WESTLAND INDUSTRIES, and PRACTICAL FINANCE CO., INC., | ) ) ) | CASE NO. 07 CV 11586 (LAK) (GWG) |
| Plaintiffs, | ) ) ) | **PLAINTIFFS' OPPOSITION TO DEFENDANT FRENKEL'S MOTION TO QUASH PLAINTIFFS' NORTH** |
| v. | ) ) ) | **FORK BANK/CAPITAL ONE SUBPOENA AND CERTIFICATION IN SUPPORT THEREOF** |
| MOSES STERN, aka MARK STERN; JOSHUA SAFRIN, FIRST REPUBLIC GROUP REALTY LLC, EPHRAIM FRENKEL, and LAND TITLE ASSOCIATES ESCROW, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs Amusement Industry, Inc. ("Amusement") and Practical Finance Co., Inc. (together, "plaintiffs") hereby responds to defendant Frenkel's motion to quash the Rule 45 subpoena served on North Fork Bank/Capital One ("Capital One") in the above-captioned action (the "Action"). For the reasons set forth below, Frenkel's motion should be denied.

### Summary of Dispute and Argument

Plaintiffs' allegations concerning the underlying facts in the Action are straightforward: in June 2007, defendants Stern and Safrin, through their agent and attorney Friedman, solicited Amusement's participation in a real estate investment opportunity. That opportunity involved defendants' purchase of a significant portfolio of shopping centers (the "Portfolio") from an entity known as Colonial Realty Limited Partnership. On June 29, 2007, Amusement contributed $13 million to defendants' Portfolio purchase by wiring that amount to an escrow account maintained by defendant Land Title Associates Escrow (Frenkel's company) at North Fork Bank, now known as Capital One. Plaintiffs contend that defendants thereafter misappropriated plaintiffs' $13 million without authorization.

On April 2, 2008, plaintiffs served a Rule 45 subpoena (the "First Subpoena") on Capital One. (Ex. A.) Defendants, including Frenkel, did not object to the First Subpoena, which sought discovery of important evidence in the Action, including documents relating to (i) the $13 million Amusement deposited into the Land Title account; and (ii) transfers and disbursements of funds from that account. (Id. (Request Nos. 1 and 3).)

Records produced by Capital One in response to the First Subpoena indicate that on July 3, 2008, Amusement's $13 million was transferred to a second account held in the name of First Republic Group Corp. (the "First Republic account"). (Ex. B (NF/CAP1 00012 and 00016).[1]) Capital One's records further indicate that, on July 12, 2007 – one day before receiving what defendants contend was a purported authorization from Steven Alevy to release Amusement's funds (defendants knew that Steven Alevy had no authority to release the escrow) – Amusement's escrowed funds apparently were disbursed to a variety of entities. (Id.)

Thereafter, plaintiffs asked Capital One to produce additional documents concerning the disbursements identified in the account statements produced by Capital One. (Sragow Cert. ¶ 2.) Capital One requested that plaintiff serve another subpoena specifically identifying the desired records. (Id.) Accordingly, even though they believed the additional documents were responsive to the First Subpoena, plaintiffs served a second subpoena (the "Second Subpoena"). (Ex. C.)

The Second Subpoena seeks documents specifically concerning the transfers and disbursements identified in the account statements produced by Capital One. These documents directly relate both to Amusement's $13 million and to plaintiffs' claims concerning the escrow account, and, as such, plainly are discoverable. F.R.C.P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party").

---

[1]     Capital One produced the documents annexed as Exhibit B without Bates stamps. For identification purposes, plaintiffs have affixed Bates numbers.

Defendant Frenkel complains that the Second Subpoena "constitutes a fishing expedition" that is "unrelated" to Amusement's funds. (Frenkel Aff. ¶ 6.) Not so. As can be seen from the July 2007 account statements produced by Capital One, virtually every transfer identified in those accounts apparently relates to Amusement's money. In fact, prior to Amusement's $13 million deposit on July 2, the balance in the Land Title account was $55,000, and the balance in the First Republic account was $0. Simply put, as the Court observed at the March 28, 2008 hearing regarding defendants' motion to quash plaintiffs' nonparty subpoenas, "the subpoenas addressed to the disbursement of the proceeds that are in issue here are patently relevant. I simply reject the contrary argument." (Ex. D.)

Further, plaintiffs carefully crafted the Second Subpoena directly to address the transfers involving Amusement's funds. Specifically, the account numbers listed in Request No. 1 (set forth in the order in which they appear on the statement) all are from transactions listed on the First Republic July 2007 account statement. Similarly, Request Nos. 2-5 expressly relate to the individual transactions identified on the First Republic July 2007 account statement.

Frenkel's vague and conclusory claim that the Second Subpoena will interfere with his client relationships also is not well founded. (Frenkel Aff. ¶ 9.) First, Frenkel offers no evidence in support of this speculative assertion. In fact, Frenkel's "clients" may never learn that plaintiffs obtained discovery of bank records relating to the transfer of plaintiffs' $13 million. In any case, while they have no intention of interfering with Frenkel's clients, plaintiffs are entitled to trace the transfers of Amusement's $13 million, and to probe the facts and circumstances regarding those transfers.[2]

---

[2]    Moreover, Frenkel's motion is tardy. Inomed Labs v. Alza Corp., 211 F.R.D. 237, 240 (S.D.N.Y. 2002) ("Although Rule 45(c)(3)(A)(iv) requires that the motion to quash be timely without defining what 'timely' is, it is reasonable to assume that the motion to quash should be brought before the noticed date"). Here, the Second Subpoena required a response by May 30.

As noted, this is not the first time defendants have resisted discovery concerning the disbursements of Amusement's $13 million. On March 28, 2008, the Court denied defendants' motion to quash plaintiffs' subpoenas relating to that issue. (Ex. D.) Plaintiffs respectfully submit that the Court should deny Frenkel's second motion for the same reasons.

DATED: June 6, 2008

SILLS CUMMIS & GROSS, P.C.

By: _____
Marc D. Youngelson, Esq.
One Rockefeller Plaza
New York, NY 10020
Telephone: (212) 643-7000
Attorneys for plaintiffs

Allen P. Sragow, Esq., under penalty of perjury, hereby certifies as follows:

1.      Annexed hereto are true and correct copies of (i) the Subpoena (Ex. A); (ii) documents produced by Capital One bearing Bates Nos. NF/CAP1 00012 and 00016-18 (Ex. B); (iii) the Second Subpoena (Ex. C); and (iv) relevant pages from the transcript of the March 28, 2008 hearing concerning defendants' motion to quash plaintiffs' Rule 45 subpoenas.

2.      After Capital One produced documents in response to the First Subpoena, I requested that Capital One produce additional documents concerning the disbursements identified in the produced documents. In response, Bozenna Danowksi of Capital One requested that plaintiffs issue a second subpoena specifically identifying the desired documents.

I certify under penalty of perjury that the foregoing is true and correct.

EXECUTED ON: June __, 2008

_____
Allen P. Sragow

As noted, this is not the first time defendants have resisted discovery concerning the disbursements of Amusement's $13 million.  On March 28, 2008, the Court denied defendants' motion to quash plaintiffs' subpoenas relating to that issue.  (Ex. D.)  Plaintiffs respectfully submit that the Court should deny Frenkel's second motion for the same reasons.

DATED: June 6, 2008

SILLS CUMMIS & GROSS, P.C.

By:_____
Marc D. Youngelson, Esq.
One Rockefeller Plaza
New York, NY 10020
Telephone: (212) 643-7000
Attorneys for plaintiffs

Allen P. Sragow, Esq., under penalty of perjury, hereby certifies as follows:

1.    Annexed hereto are true and correct copies of (i) the Subpoena (Ex. A); (ii) documents produced by Capital One bearing Bates Nos. NF/CAP1 00012 and 00016-18 (Ex. B); (iii) the Second Subpoena (Ex. C); and (iv) relevant pages from the transcript of the March 28, 2008 hearing concerning defendants' motion to quash plaintiffs' Rule 45 subpoenas.

2.    After Capital One produced documents in response to the First Subpoena, I requested that Capital One produce additional documents concerning the disbursements identified in the produced documents.  In response, Bozenna Danowksi of Capital One requested that plaintiffs issue a second subpoena specifically identifying the desired documents.

I certify under penalty of perjury that the foregoing is true and correct.

EXECUTED ON: June 6, 2008

_____
Allen P. Sragow

4

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

AMUSEMENT INDUSTRY, INC., a California
corporation dba WESTLAND INDUSTRIES;
PRACTICAL FINANCE, CO., INC., a California
corporation,

        **Plaintiff,**

v.

MOSES STERN, an individual aka MARK STERN,
JOSHUA SAFRIN, an individual; FIRST REPUBLIC
GROUP REALTY LLC, a Delaware limited liability
company, EPHRAIM FRENKEL, an individual;
LAND TITLE ASSOCIATES ESCROW, a New York
limited company,

        **Defendant.**

## SUBPOENA IN A CIVIL CASE

Case No. 07 CV 11586

(Pending in S.D.N.Y)

TO:    NORTH FORK BANK, 24-02A Fair Lawn Avenue, Fair Lawn, New Jersey 07410, (201) 794-7220

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURT ROOM |
| --- | --- |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a videotaped trial deposition in the above case relating to the topics identified in Schedule B hereto.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| | ———— |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the documents or objects identified in Schedule A at the place, date, and time specified below.

| PLACE | DATE AND TIME |
| --- | --- |
| Sills Cummis & Gross P.C.<br>One Riverfront Plaza<br>Newark, New Jersey 07102 | April 14, 2008<br>9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    (DATE)

7/1/08

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
    Marc D. Youngelson, Esq.
    Sills Cummis & Gross P.C.
    One Rockefeller Plaza
    New York, New York 10020
    (212)-643-7000
    Counsel for plaintiffs Amusement Industry, Inc. and Practical Finance Co.

(See Rule 45, Federal Rules of Civil Procedures, Parts C&D on Reverse)

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
|      |       |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|
|                        |                   |

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|
|                        |       |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonableattorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance
(3) Quashing or Modifying a Subpoena
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated

(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost If that showing ismade, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C) The court may specify conditions for the discovery
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trialpreparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trialpreparation material, the person making the claim may notify any party that received the information of the claim and the basis for it After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii)

1394889 v1

SCHEDULE A

**DEFINITIONS**

1.      Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      Document. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

3.      Identify (with respect to persons). When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with his subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4.      Identify (with respect to documents). When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipients(s).

5.      Parties. The terms "plaintiff" and "defendant" as well as party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

6.      Person. The term "person" is defined as any natural person or any business, legal or governmental entity or association.

7.      Concerning. The term "concerning" means related to, referring to, describing, evidencing or constituting.

8.      The following rules of construction apply all discovery requests:

    (a)      All/Each. The terms "all" and "each" shall be construed as all and each.

    (b)      And/Or. The connectives "and" and "or" shall be construed either

1

disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9.      The term "BANK" as used herein, refers to NORTH FORK BANK, a Division of Capital One, N.A.

10.     The term "LAND TITLE ASSOCIATES ESCROW", as used herein, refers to the Defendant in this action, LAND TITLE ASSOCIATES ESCROW, a New York limited liability company, and to each person who, with respect to the subject matter of the request, was or is acting on behalf of such entity.

10.     As used herein, the singular and masculine gender shall mean also the plural and feminine or neuter, and vice-versa, as may be appropriate; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; and "all" includes each and every.

11.     Documents responsive to the requests for production below include any responsive emails and other forms of communication in electronic format that exist, in accordance with F.R.C.P. 34(b), which must be produced in their native electronic format, meaning in the electronic file format in which the subpoenaed party maintains and retains them.

## REQUESTS FOR PRODUCTION

1.      Documents concerning the Thirteen Million Dollars ($13,000,000.00) deposited from Amusement Industry, Inc. into Land Title Associates Escrow's account at the BANK, account number 5514007904, on about June 29, 2007.

2.      Documents concerning all other deposits made into Land Title Associates Escrow's account at the BANK, account number 5514007904, during the period of June 1, 2007 through July 13, 2007.

3.      Documents concerning the disbursement of all funds from Land Title Associates Escrow's account at the BANK, account number 5514007904, from June 29, 2007 through July 31, 2007.

4.     Documents concerning the recipients of all funds disbursed from Land Title Associates Escrow's account at the BANK, account number 5514007904, from June 29, 2007 through July 31, 2007.

5.     Bank Statements for Land Title Associates Escrow's account at the BANK, account number 5514007904, covering the period of June 29, 2007 through July 31, 2007.

6.     Copies of checks and wire transfers concerning Land Title Associates Escrow's account at the BANK, account number 5514007904, covering the period of June 29, 2007 through July 31, 2007.

7.     Documents concerning the disbursement of monies during the period of June 29, 2007 through July 31, 2007 from any Land Title Associates Escrow account to:

        a.     Any of the parties in this action (provided in the case caption)

        b.     Colonial Realty Limited Partnership

        c.     Carruthers & Roth

        d.     Fidelity National Title Insurance Company

        e.     Buchanan Ingersoll & Rooney PC

        f.     Herrick Feinstein LLP

        g.     Mary Stark

        h.     Frank Dwyer

        i.     Steven Alevy

        j.     Bankers Capital LLC

        k.     Avery Egert

        l.     Young Conaway Stargatt & Taylor

        m.     Odin Feldman Pittleman

        n.     Cazavos Hendricks Poirot & Smitham PC

        o.     NRAI Entity Services LLC

3

p.    Burr Forman LLP

q.    Parker Huddson Rainer & Dobbs LLP

r.    Prudential Douglas Elliman

s.    Integra Realty Resources

t.    Law Offices of Bruce W. Minsky PC

u.    GMAC International Properties Group

v.    Ace Capital Group

w.    Hoffinger Stern & Ross LLP

x.    Reiss Eisenpress LLP

y.    Roman Associates Limited

z.    Roger G. Roth CPA & Associates LLP

aa.   Chatham Financial Corporation, or

bb.   All Risk Insurance Agency Inc.

4

EPS Judicial Process Service, Inc.
29-27 41ˢᵗ Avenue. Suite 812
Long Island City, NY 11101
Telephone: 718-472-2900
Facsimile: 718-472-2909

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------------------X
AMUSEMENT INDUSTRY, INC., a California
corporation dba WESTLAND INDUSTRIES;          Index No. 07 CV 11586
PRACTICAL FINANCE, CO., INC., a California    AFFIDAVIT OF SERVICE
corporation,

                         Plaintiff (s),

              -against-

MOSES STERN, an individual aka MARK STERN,
JOSHUA SAFRIN, an individual; FIRST REPUBLIC
GROUP REALTY LLC, a Delaware limited liability
company EPHRAIM FRENKEL, an individual;
LAND TITLE ASSOCIATES ESCROW, a New York
limited company,

                         Defendant (s).
---------------------------------------------------------------------X
STATE OF NEW YORK      )
                       :s.s:
COUNTY OF QUEENS       )

          ANTHONY CALDERON, being duly sworn, deposes and says:

          I am not a party to this action, am over the age of eighteen years, and

reside in the State of New York.


     On the 2ⁿᵈ day of April, 2008, at approximately 2:24 p.m. at 265 Broadhollow

Road, Melville, New York, I served a true copy of the SUBPOENA IN A CIVIL CASE,

in the above entitled-action, upon NORTH FORK BANK (now known as Capital One

Bank), by personally delivering to and leaving thereat, a true copy of the above

mentioned document with Jay Patel. At time of service, Mr. Patel identified himself as

the Compliance Manager for Capital One Bank and as a person authorized to accept

service of process for North Fork Bank.

Mr. Patel is a West-Indian male, approximately 32-38 years of age, 5'7" tall, 185 lbs, with dark hair and dark eyes.

Sworn to before me this,
2nd day of April, 2008

NOTARY PUBLIC

EDWIN PATRICK SANTAMARIA
Notary Public, State of New York
No. 01SA6062013
Qualified in New York County
Commission Expires July 30, 20 09

ANTHONY CALDERON
Organization License No. 1155020

# EXHIBIT B

FAIR LAWN
For Information: (877)694-9111

NOTICE: See Reverse side
for Important Information

```
                                                  7-31-07
                                          PAGE           1
                                          5514007904
                                          NO ENCLOSURES
```

LAND TITLE ASSOCIATES AGENCY,LLC            551
ESCROW ACCOUNT
1979 MARCUS AVE STE 209
NEW HYDE PARK NY 11042-1002

MORE BRANCHES, MORE ATMS, MORE HOURS, MORE LOCATIONS,
MORE WAYS TO SERVE YOU BETTER. FOR A WIDE RANGE OF
PRODUCTS TO BETTER SERVE YOUR FINANCIAL NEEDS CALL OUR
TELEPHONE EXPRESS BANKING CENTER AT 877-694-9111.

BUSINESS ADVANTAGE PLUS                     551400 790 4

| | | |
|---|---|---|
| Previous Balance | 6-30-07 | 55,301.38 |
| +Deposits/Credits | 4 | 21,777,500.00 |
| -Checks/Debits | 4 | 21,777,500.00 |
| -Service Charge | | .00 |
| Ending Balance | 7-31-07 | 55,301.38 |
| Days In Statement Period | 31 | |

| DATE | DESCRIPTION | CHECK# | DEBITS | CREDITS | BALANCE |
|---|---|---|---|---|---|
| | Beginning Balance | | | | 55,301.38 |
| 7-02 | AMUSEMENT INDUSTRY INC | | | 13,000,000.00 | 13,055,301.38 |
| 7-03 | TRANSFER TO 5516019766 | | 13,000,000.00 | | 55,301.38 |
| 7-12 | IOLA-TEPFER AND TEPFER PC SPEC | | | 8,677,500.00 | 8,732,801.38 |
| 7-12 | WEB XFER TO DDA 005516019766 | | 8,677,500.00 | | 55,301.38 |
| 7-13 | WEB XFER TO DDA 005516019766 | | 50,000.00 | | 5,301.38 |
| 7-16 | WEB XFER PR DDA 005516019766 | | | 50,000.00 | 55,301.38 |
| 7-20 | WEB XFER TO DDA 005514007797 | | 50,000.00 | | 5,301.38 |
| 7-23 | WEB XFER FR DDA 005514008209 | | | 50,000.00 | 55,301.38 |
| | Ending Balance | | | | 55,301.38 |

Please be advised that we are not legally obligated to print these statements out on North Fork statement paper. Due to the fact effective August 1, 2007, North Fork Bank was merged into Capital One, N.A.

END OF STATEMENT

NF/CAP1 00012

```
FAIR LAWN
For Information: (877)694-9111            NOTICE: See Reverse side
                                          for Important Information

                                                         7-31-07
                                                         PAGE    1
                                                         5516019766
                                                         8 ENCLOSURES
                              JEM

FIRST REPUBLIC GROUP CORP                    551
C/O LAND TITLE ASSOCIATES AGENCY,L
1979 MARCUS AVE STE 209
NEW HYDE PARK NY 11042-1002


        MORE BRANCHES, MORE ATMS, MORE HOURS, MORE LOCATIONS,
        MORE WAYS TO SERVE YOU BETTER. FOR A WIDE RANGE OF
        PRODUCTS TO BETTER SERVE YOUR FINANCIAL NEEDS CALL OUR
        TELEPHONE EXPRESS BANKING CENTER AT 877-694-9111.


  ESCROW MANAGEMENT ACCOUNT              551601 976 6
           Previous Balance          7-03-07              .00
           +Deposits/Credits          22       32,367,000.00
           -Checks/Debits             63       31,737,121.50
           -Service Charge                              .00
           +Interest Paid                             956.43
           Ending Balance            7-31-07       630,834.93
           Days in Statement Period    28
                              INTEREST INFORMATION
           Average Daily Balance                   630,830.61
           Interest Paid This Year                    956.43
      Date      Rate        Date      Rate        Date      Rate
      7-03      .250%
```

| DATE | DESCRIPTION            CHECK# | DEBITS | CREDITS | BALANCE |
|---|---|---|---|---|
| | Beginning Balance | | | .00 |
| 7-03 | TRANSFER FROM 5514007904 | | 13,000,000.00 | 13,000,000.00 |
| 7-05 | INT PMT 07/03/07 THRU 07/04/07 | | 178.07 | 13,000,178.07 |
| 7-06 | INT PMT 07/05/07 THRU 07/05/07 | | 89.04 | 13,000,267.11 |
| 7-08 | INT PMT 07/06/07 THRU 07/07/07 | | 178.08 | 13,000,445.19 |
| 7-09 | INT PMT 07/08/07 THRU 07/08/07 | | 89.04 | 13,000,534.23 |
| 7-10 | INT PMT 07/09/07 THRU 07/09/07 | | 89.04 | 13,000,623.27 |
| 7-11 | INT PMT 07/10/07 THRU 07/10/07 | | 89.04 | 13,000,712.31 |
| 7-12 | WEB XFER FR DDA 005514007904 | 8,677,500.00 | 8,677,500.00 | 21,678,212.31 |
| 7-12 | Tepfer and Tepfer | 8,677,500.00 | | 13,000,712.31 |
| 7-12 | Rcman Associates | 2,670,000.00 | | 10,330,712.31 |
| 7-12 | GMAC | 2,325,000.00 | | 8,005,712.31 |
| 7-12 | Bruce W Minsky Esq | 934,500.00 | | 7,071,212.31 |
| 7-12 | Land Title Associates | 934,500.00 | | 6,136,712.31 |
| 7-12 | Latham& Watkins LLP | 277,500.00 | | 5,859,212.31 |
| 7-12 | Herrick Feinstein LLP | 200,000.00 | | 5,659,212.31 |
| 7-12 | SMBC Derivative Products Limit | 111,760.00 | | 5,547,452.31 |
| 7-12 | Integra Realty Resources | 96,485.00 | | 5,450,967.31 |
| 7-12 | Helix Financial | 88,538.42 | | 5,362,428.89 |
| 7-12 | LandAmerica Assesment Corp | 44,800.00 | | 5,317,628.89 |
| 7-12 | LeaseProbe | 16,125.00 | | 5,301,503.89 |
| 7-12 | Young Conaway Stargatt & Taylo | 15,000.00 | | 5,286,503.89 |
| 7-12 | Parker Hudson Rainer & Dobbs L | 12,400.00 | | 5,274,103.89 |
| 7-12 | Chatham Financial Corp | 11,176.00 | | 5,262,927.89 |
| 7-12 | The Planing & Zoning Resource | 7,001.80 | | 5,255,926.09 |
| 7-12 | Odin Feldman & Pittleman PC | 6,800.00 | | 5,249,126.09 |
| 7-12 | LandAmerica Assesment Corp | 2,400.00 | | 5,246,726.09 |
| 7-12 | ChoicePoint | 1,350.96 | | 5,245,375.13 |
| 7-12 | INT PMT 07/11/07 THRU 07/11/07 | | 89.04 | 5,245,464.17 |
| 7-13 | FIRST REPUBLIC GROUP CORP | 2,325,000.00 | | 7,570,464.17 |
| 7-13 | WEB XFER FR DDA 005514008290 | 1,260,000.00 | | 8,830,464.17 |
| 7-13 | WEB XFER FR DDA 005514008332 | 1,180,000.00 | | 10,010,464.17 |
| 7-13 | WEB XFER FR DDA 005514008258 | 350,000.00 | | 10,360,464.17 |
| 7-13 | WEB XFER FR DDA 005514008258 | 230,000.00 | | 10,590,464.17 |
| 7-13 | WEB XFER FR DDA 005514008316 | 150,000.00 | | 10,740,464.17 |
| 7-13 | WEB XFER FR DDA 005514008944 | 130,000.00 | | 10,870,464.17 |
| 7-13 | WEB XFER FR DDA 005514008217 | 120,000.00 | | 10,990,464.17 |

Continued on next page

FIRST REPUBLIC GROUP CORP
C/O LAND TITLE ASSOCIATES AGENCY,L
1979 MARCUS AVE STE 209
NEW HYDE PARK NY 11042-1002

7-31-07
PAGE    2
5516019766

| DATE | DESCRIPTION | CHECK# | DEBITS | CREDITS | BALANCE |
|------|-------------|--------|--------|---------|---------|
| | Balance Forward | | | | 10,990,464.17 |
| 7-13 | WEB XFER FR DDA 005514008274 | | | 100,000.00 | 11,090,464.17 |
| 7-13 | WEB XFER FR DDA 005514008282 | | | 100,000.00 | 11,190,464.17 |
| 7-13 | WEB XFER FR DDA 005514008951 | | | 70,000.00 | 11,260,464.17 |
| 7-13 | WEB XFER FR DDA 005514008365 | | | 50,000.00 | 11,310,464.17 |
| 7-13 | WEB XFER FR DDA 005514008308 | | | 50,000.00 | 11,360,464.17 |
| 7-13 | WEB XFER FR DDA 005514007904 | | | 50,000.00 | 11,410,464.17 |
| 7-13 | WEB XFER FR DDA 005514008241 | | | 30,000.00 | 11,440,464.17 |
| 7-13 | WEB XFER FR DDA 005514008266 | | | 20,000.00 | 11,460,464.17 |
| 7-13 | WEB XFER FR DDA 005514001329 | | | 20,000.00 | 11,480,464.17 |
| 7-13 | Incoming Wire Transfer Fee | | 15.00 | | 11,480,449.17 |
| 7-13 | first republic group realty/s | | 6,337,047.62 | | 5,143,401.55 |
| 7-13 | CRLP | | 1,116,210.00 | | 4,027,191.55 |
| 7-13 | northmarq capital inc | | 975,000.00 | | 3,052,191.55 |
| 7-13 | Reiss Eisenpress LLP | | 350,000.00 | | 2,702,191.55 |
| 7-13 | Citigroup Global Markets Realt | | 230,000.00 | | 2,472,191.55 |
| 7-13 | Cavazos , Hendricks & Poirot PC | | 12,000.00 | | 2,460,191.55 |
| 7-13 | Burr & Forman LLP | | 5,750.00 | | 2,454,441.55 |
| 7-13 | citigroup global markets realt | | 743.28 | | 2,453,698.27 |
| 7-13 | INT PMT 07/12/07 THRU 07/12/07 | | | 35.93 | 2,453,734.20 |
| 7-15 | INT PMT 07/13/07 THRU 07/14/07 | | | 33.61 | 2,453,767.81 |
| 7-16 | FIRST REPUBLIC GROUP CORP | | | 2,670,000.00 | 5,123,767.81 |
| 7-16 | LAND TITLE | | | 934,500.00 | 6,058,267.81 |
| 7-16 | Incoming Wire Transfer Fee | | 15.00 | | 6,058,252.81 |
| 7-16 | Incoming Wire Transfer Fee | | 15.00 | | 6,058,237.81 |
| 7-16 | First Republic Group Realty/St | | 50,000.00 | | 6,008,237.81 |
| 7-16 | Buchanan Ingersoll PC | | 50,000.00 | | 5,958,237.81 |
| 7-16 | CRLP/ Corporate Account | | 27,000.00 | | 5,931,237.81 |
| 7-16 | Integra Realty Resources | | 15,520.00 | | 5,915,717.81 |
| 7-16 | Cavazos, Hendricks & Poirot PC | | 12,000.00 | | 5,903,717.81 |
| 7-16 | WEB XFER TO DDA 005514008290 | | 1,260,000.00 | | 4,643,717.81 |
| 7-16 | WEB XFER TO DDA 005514008332 | | 1,180,000.00 | | 3,463,717.81 |
| 7-16 | WEB XFER TO DDA 005514008258 | | 350,000.00 | | 3,113,717.81 |
| 7-16 | WEB XFER TO DDA 005514008258 | | 229,770.00 | | 2,883,947.81 |
| 7-16 | WEB XFER TO DDA 005514008316 | | 150,000.00 | | 2,733,947.81 |
| 7-16 | WEB XFER TO DDA 005514008944 | | 130,000.00 | | 2,603,947.81 |
| 7-16 | WEB XFER TO DDA 005514008217 | | 120,000.00 | | 2,483,947.81 |
| 7-16 | WEB XFER TO DDA 005514008282 | | 100,000.00 | | 2,383,947.81 |
| 7-16 | WEB XFER TO DDA 005514008274 | | 100,000.00 | | 2,283,947.81 |
| 7-16 | WEB XFER TO DDA 005514008951 | | 70,000.00 | | 2,213,947.81 |
| 7-16 | WEB XFER TO DDA 005514007904 | | 50,000.00 | | 2,163,947.81 |
| 7-16 | WEB XFER TO DDA 005514008365 | | 50,000.00 | | 2,113,947.81 |
| 7-16 | WEB XFER TO DDA 005514008308 | | 50,000.00 | | 2,063,947.81 |
| 7-16 | WEB XFER TO DDA 005514008241 | | 30,000.00 | | 2,033,947.81 |
| 7-16 | WEB XFER TO DDA 005514008266 | | 20,000.00 | | 2,013,947.81 |
| 7-16 | WEB XFER TO DDA 005514001329 | | 20,000.00 | | 1,993,947.81 |
| 7-16 | WEB XFER TO DDA 005514008258 | | 230.00 | | 1,993,717.81 |
| 7-16 | INT PMT 07/15/07 THRU 07/15/07 | | | 16.81 | 1,993,734.62 |
| 7-17 | Bruce Minsky, Esq | | 1,134,934.42 | | 858,800.20 |
| 7-17 | INT PMT 07/16/07 THRU 07/16/07 | | | 13.66 | 858,813.86 |
| 7-18 | INT PMT 07/17/07 THRU 07/17/07 | | | 5.88 | 858,819.74 |
| 7-19 | INT PMT 07/18/07 THRU 07/18/07 | | | 5.88 | 858,825.62 |
| 7-20 | WEB XFER TO DDA 005514007797 | | 850,000.00 | | 8,825.62 |
| 7-20 | | 1024 | 50,000.00 | | 41,174.38- |
| 7-20 | INT PMT 07/19/07 THRU 07/19/07 | | | 5.88 | 41,168.50- |
| 7-23 | WEB XFER FR DDA 005514008209 | | | 850,000.00 | 808,831.50 |
| 7-23 | Carruthers & Roth PA Trust Acc | | 5,250.00 | | 803,581.50 |
| 7-23 | | 1028 | 50,000.00 | | 753,581.50 |
| 7-23 | | 1029 | 50,000.00 | | 703,581.50 |
| 7-24 | INT PMT 07/23/07 THRU 07/23/07 | | | 4.82 | 703,586.32 |
| 7-25 | | 1012 | 10,100.00 | | 693,486.32 |
| 7-25 | INT PMT 07/24/07 THRU 07/24/07 | | | 4.82 | 693,491.14 |
| 7-26 | | 1031 | 1,500.00 | | 691,991.14 |
| 7-26 | INT PMT 07/25/07 THRU 07/25/07 | | | 4.75 | 691,995.89 |
| 7-27 | | 1018 | 11,784.00 | | 680,211.89 |
| 7-27 | INT PMT 07/26/07 THRU 07/26/07 | | | 4.74 | 680,216.63 |

Continued on next page

NF/CAP1 00017

```
FIRST REPUBLIC GROUP CORP                          7-31-07
C/O LAND TITLE ASSOCIATES AGENCY,L                 PAGE    3
1979 MARCUS AVE STE 209                            5516019766
NEW HYDE PARK NY 11042-1002
```

| DATE | DESCRIPTION | CHECK# | DEBITS | CREDITS | BALANCE |
|---|---|---|---|---|---|
| | Balance Forward | | | | 680,216.63 |
| 7-29 | INT PMT 07/27/07 THRU 07/28/07 | | | 9.32 | 680,225.95 |
| 7-30 | | 1014 | 48,000.00 | | 632,225.95 |
| 7-30 | | 1032 | 1,400.00 | | 630,825.95 |
| 7-30 | INT PMT 07/29/07 THRU 07/29/07 | | | 4.66 | 630,830.61 |
| 7-31 | INT PMT 07/30/07 THRU 07/30/07 | | | 4.32 | 630,834.93 |
| | Ending Balance | | | | 630,834.93 |

CHECKS PAID DURING STATEMENT PERIOD        * INDICATES CHECK OUT OF SEQUENCE

| NUMBER | DATE | AMOUNT | NUMBER | DATE | AMOUNT |
|---|---|---|---|---|---|
| 1012 | 7-25 | 10100.00 | 1014* | 7-30 | 48000.00 |
| 1018* | 7-27 | 11784.00 | 1024* | 7-20 | 50000.00 |
| 1028* | 7-23 | 50000.00 | 1029 | 7-23 | 50000.00 |
| 1031* | 7-26 | 1500.00 | 1032 | 7-30 | 1400.00 |

Please be advised that we are not legally obligated to print these
statements out on North Fork statement paper. Due to the fact
effective August 1, 2007, North Fork Bank was merged into
Capital One, N.A.

END OF STATEMENT

**EXHIBIT C**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

AMUSEMENT INDUSTRY, INC., a California
corporation dba WESTLAND INDUSTRIES;
PRACTICAL FINANCE, CO., INC., a California
corporation,

        Plaintiff,

v.

MOSES STERN, an individual aka MARK STERN,
JOSHUA SAFRIN, an individual; FIRST REPUBLIC
GROUP REALTY LLC, a Delaware limited liability
company, EPHRAIM FRENKEL, an individual;
LAND TITLE ASSOCIATES ESCROW, a New York
limited company,

        Defendant.

## SUBPOENA IN A CIVIL CASE

Case No. 07 CV 11586

(Pending in S.D.N.Y)

TO:   NORTH FORK BANK/CAPITAL ONE, 9025 Main Road, P.O. Box 1439, Mattituck, NY 11952

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

PLACE OF TESTIMONY

| | COURT ROOM |
| --- | --- |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a videotaped trial deposition in the above case relating to the topics identified in Schedule B hereto.

PLACE OF DEPOSITION

| | DATE AND TIME |
| --- | --- |
| | — |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the documents or objects identified in Schedule A at the place, date, and time specified below.

PLACE

Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, New Jersey 07102

| | DATE AND TIME |
| --- | --- |
| | **May 30, 2008** <br> 9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

PREMISES

| | DATE AND TIME |
| --- | --- |

ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)

(DATE) 5/15/08

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Marc D. Youngelson, Esq.
Sills Cummis & Gross P.C.
One Rockefeller Plaza
New York, New York 10020
(212)-643-7000
Counsel for plaintiffs Amusement Industry, Inc. and Practical Finance Co.

(See Rule 45, Federal Rules of Civil Procedures, Parts C&D on Reverse)

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| | |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

**(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.**

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) DUTIES IN RESPONDING TO A SUBPOENA.**

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) CONTEMPT.**

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

1394889 v1

<u>SCHEDULE A</u>

**<u>DEFINITIONS</u>**

1. Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2. Document. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

3. Identify (with respect to persons). When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with his subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4. Identify (with respect to documents). When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipients(s).

5. Parties. The terms "plaintiff" and "defendant" as well as party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

6. Person. The term "person" is defined as any natural person or any business, legal or governmental entity or association.

7. Concerning. The term "concerning" means related to, referring to, describing,

evidencing or constituting.

8.    The following rules of construction apply all discovery requests:

(a)        All/Each.  The terms "all" and "each" shall be construed as all and each.

(b)        And/Or.  The connectives "and" and "or" shall be construed either

disjunctively or conjunctively as necessary to bring within the scope of the discovery request all

responses that might otherwise be construed to be outside of its scope.

9.    The term "BANK" as used herein, refers to NORTH FORK BANK, a Division of

Capital One, N.A.

10.    The term "BANK DEPOSIT DOCUMENTS" as used herein, refers to documents

showing the originator of the deposit, including the sender's American Bankers Association

Number (ABA) or Routing and Transit Number (RTN), or the Input Message Accountability Data

(IMAD), and all transaction logs, federal reference documentation, deposit memos, transmission

records, routing records, receipts, message information, correspondence, depositary financial

institution documentation.

11.    The term "BANK DEBIT DOCUMENTS" as used herein, refers to documents

showing the receiver and beneficiary of the debit, including the receiver's American Bankers

Association Number (ABA) or Routing and Transit Number (RTN), or the Output Message

Accountability Data (OMAD), and all transaction logs, federal reference documentation, debit

memos, transmission records, routing records, receipts, message information, correspondence,

depositary financial institution documentation, and including all documents showing the receiver

and beneficiary of the debit.

12.    The term "LAND TITLE ASSOCIATES ESCROW", as used herein, refers to the

Defendant in this action, LAND TITLE ASSOCIATES ESCROW, a New York limited liability

company, and to each person who, with respect to the subject matter of the request, was or is acting on behalf of such entity.

13.    As used herein, the singular and masculine gender shall mean also the plural and feminine or neuter, and vice-versa, as may be appropriate; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; and "all" includes each and every.

14.    Documents responsive to the requests for production below include any responsive emails and other forms of communication in electronic format that exist, in accordance with F.R.C.P. 34(b), which must be produced in their native electronic format, meaning in the electronic file format in which the subpoenaed party maintains and retains them.

15.    .

## PREFACE

For the convenience of the responding party, attached hereto as Exhibit A is the July 31, 2007 account statement for the First Republic Group Corp. Escrow Management Account previously produced by the responding party. The requests below primarily relate to and are listed on the July 31, 2007 account statement.

## REQUESTS FOR PRODUCTION

1.    All account statements, copies of checks, and copies of wire transfers  for the period of April 1, 2007 to August 31, 2007 for North Fork Account Numbers:

    a.  5514007904

    b.  5516019766

    c.  005514008290

    d.  005514008332

    e.  005514008258

  f. 005514008316

  g. 005514008944

  h. 005514008217

  i. 005514008274

  j. 005514008282

  k. 005514008951

  l. 005514008365

  m. 005514008308

  n. 005514007904

  o. 005514008241

  p. 005514008266

  q. 005514001329

2. All documents concerning the following deposits into Land Title Associates Escrow's account at the BANK, account number 5514007904, including all BANK DEPOSIT DOCUMENTS, as defined above.

  a. Eight Million Six Hundred Seventy Seven Thousand Five Hundred Dollars ($8,677,500.00) deposited from "IOLA-Tepfer and Tepfer PC SPEC" on about July 12, 2007

3. All documents concerning the following deposits into First Republic Group Corp.'s account at the BANK, account number 5516019766, including all BANK DEPOSIT DOCUMENTS, as defined above.

  a. Two Million Three Hundred Twenty Five Thousand Dollars ($2,325,000.00) deposited from "FIRST REPUBLIC GROUP CORP" on about July 13, 2007.

b. One Million Two Hundred Sixty Thousand Dollars ($1,260,000.00) deposited from "WEB XFER FR DDA 005514008290" on about July 13, 2007.

c. One Million One Hundred Eighty Thousand Dollars ($1,180,000.00) deposited from "WEB XFER FR DDA 005514008332" on about July 13, 2007.

d. Three Hundred Fifty Thousand Dollars ($350,000.00) deposited from "WEB XFER FR DDA 005514008258" on about July13, 2007.

e. Two Hundred Thirty Thousand Dollars ($230,000.00) deposited from "WEB XFER FR DDA 005514008258" on about July 13, 2007.

f. One Hundred Fifty Thousand Dollars ($150,000.00) deposited from "WEB XFER FR DDA 005514008316" on about July 13, 2007.

g. One Hundred Thirty Thousand Dollars ($130,000.00) deposited from "WEB XFER FR DDA 005514008944" on about July 13, 2007.

h. One Hundred Twenty Thousand Dollars ($120,000.00) deposited from "WEB XFER FR DDA 005514008217" on about July 13, 2007.

i. One Hundred Thousand Dollars ($100,000.00) deposited from "WEB XFER FR DDA 005514008274" on about July 13, 2007 .

j. One Hundred Thousand Dollars ($100,000.00) deposited from "WEB XFER FR DDA 005514008282" on about July 13, 2007.

k. Seventy Thousand Dollars ($70,000.00) deposited from "WEB XFER FR DDA 005514008951" on about July 13, 2007.

l. Fifty Thousand Dollars ($50,000.00) deposited from "WEB XFER FR DDA 005514008365" on about July 13, 2007.

m. Fifty Thousand Dollars ($50,000.00) deposited from "WEB XFER FR DDA

005514008308" on about July 13, 2007.

n.   Fifty Thousand Dollars ($50,000.00) deposited from "WEB XFER FR DDA 005514007904" on about July 13, 2007.

o.   Thirty Thousand Dollars ($30,000.00) deposited from "WEB XFER FR DDA 005514008241" on about July 13, 2007.

p.   Twenty Thousand Dollars ($20,000.00) deposited from "WEB XFER FR DDA 005514008266" on about July 13, 2007.

q.   Twenty Thousand Dollars ($20,000.00) deposited from "WEB XFER FR DDA 005514001329" on about July 13, 2007.

r.   Two Million Six Hundred Seventy Thousand Dollars ($2,670,000.00) deposited from "FIRST REPUBLIC GROUP CORP" on about July 16, 2007.

s.   Nine Hundred Thirty Four Thousand Five Hundred Dollars ($934,500.00) deposited from "LAND TITLE" on about July 16, 2007, including all documents showing the originator of the deposit.

t.   Eight Hundred Fifty Thousand Dollars ($850,000.00) deposited from "WEB XFER FR DDA 005514008209" on about July 23, 2007.

4.   All documents concerning the following debits from First Republic Group Corp.'s account at the BANK, account number 5516019766, including all BANK DEBIT DOCUMENTS, as defined above:

a.   Eight Million Six Hundred Seventy Seven Thousand Five Hundred Dollars ($8,677,500.00) debited on about July 12, 2007, and disbursed to Tepfer and Tepfer.

b.   Two Million Six Hundred Seventy Thousand Dollars ($2,670,000.00) debited on

about July 12, 2007, and disbursed to Roman Associates.

c.  Two Million Three Hundred Twenty Five Thousand Dollars ($2,325,000.00) debited on about July 12, 2007, and disbursed to GMAC.

d.  Nine Hundred Thirty Four Thousand Five Hundred Dollars ($934,500.00) debited on about July 12, 2007, and disbursed to Bruce W Minsky Esq..

e.  Nine Hundred Thirty Four Thousand Five Hundred Dollars ($934,000.00) debited on about July12, 2007, and disbursed to Land Title Associates.

f.  Two Hundred Seventy Seven Thousand Five Hundred Dollars ($277,500.00) debited on about July 12, 2007, and disbursed to Latham & Watkins LLP.

g.  Two Hundred Thousand Dollars ($200,000.00) debited on about July 12, 2007, and disbursed to Herrick Feinstein LLP.

h.  One Hundred Eleven Thousand Seven Hundred Sixty Dollars ($111,760.00) debited on about July 12, 2007, and disbursed to SMBC Derivative Products Limit.

i.  Ninety Six Thousand Four Hundred Eighty Five Dollars ($96,485.00) debited on about July 12, 2007, and disbursed to Integra Realty Resources.

j.  Eighty Eight Thousand Five Hundred Thirty Eight Dollars and Forty Two Cents ($88,538.42) debited on about July 12, 2007, and disbursed to Helix Financial including all BANK DEBIT DOCUMENTS, as defined above.

k.  Forty Four Thousand Eight Hundred Dollars ($44,800.00) debited on about July 12, 2007, and disbursed to LandAmerica Assesment Corp.

l.  Sixteen Thousand One Hundred Twenty Five Dollars ($16,125.00) debited on about July 12, 2007, and disbursed to LeaseProbe.

m.  Fifteen Thousand Dollars ($15,000.00) debited on about July 12, 2007, and

disbursed to Young Conaway Stargatt & Taylor, including all documents showing the receiver and beneficiary of the debit.

n. Twelve Thousand Four Hundred Dollars ($12,400.00) debited on about July 12, 2007, and disbursed to Parker Hudson Rainer & Dobbs LLP.

o. Eleven Thousand One Hundred Seventy Six Dollars ($11,176.00) debited on about July 12, 2007, and disbursed to Chatham Financial Corp.

p. Seven Thousand One Dollars and Eighty Cents ($7,001.80) debited on about July 12, 2007, and disbursed to The Planning & Zoning Resource.

q. Six Thousand Eight Hundred Dollars ($6,800.00) debited on about July 12, 2007, and disbursed to Odin Feldman & Pittleman PC.

r. Two Thousand Four Hundred Dollars ($2,400.00) debited on about July 12, 2007, and disbursed to LandAmerica Assesment Corp.

s. One Thousand Three Hundred Fifty Dollars and Ninety Six Cents Dollars ($1,350.96) debited on about July 12, 2007, and disbursed to ChoicePoint.

t. Six Million Three Hundred Thirty Seven Thousand Forty Seven Dollars and Sixty Two Cents ($6,337,047.62) debited on about July 13, 2007, and disbursed to First Republic Group Realty.

u. One Million One Hundred Sixteen Thousand Two Hundred Ten Dollars ($1,116,210.00) debited on about July 13, 2007, and disbursed to CRLP.

v. Nine Hundred Seventy Five Thousand Dollars ($975,000.00) debited on about July 13, 2007, and disbursed to Northmarg Capital Inc..

w. Three Hundred Fifty Thousand Dollars ($350,000.00) debited on about July13, 2007, and disbursed to Reiss Eisenpress LLP.

x.  Two Hundred Thirty Thousand Dollars ($230,000.00) debited on about July 13, 2007, and disbursed to Citigroup Global Markets Realty.

y.  Twelve Thousand Dollars ($12,000.00) debited on about July 13, 2007, and disbursed to Cavazos, Hendricks & Poirot PC.

z.  Five Thousand Seven Hundred Fifty Dollars ($5,750.00) debited on about July 13, 2007, and disbursed to Burr Forman LLP.

aa.  Seven Hundred Forty Three Dollars and Twenty Eight Cents ($743.28) debited on about July 13, 2007, and disbursed to Citigroup Global Markets Realty.

bb.  Fifty Thousand Dollars ($50,000.00) debited on about July 16, 2007, and disbursed to First Republic Group Realty.

cc.  Fifty Thousand Dollars ($50,000.00) debited on about July16, 2007, and disbursed to Buchan Ingersoll PC.

dd.  Twenty Seven Thousand Dollars ($27,000.00) debited on about July 16, 2007, and disbursed to CRLP/Corporate Account.

ee.  Fifteen Thousand Five Hundred Twenty Dollars ($15,520.00) debited on about July 16, 2007, and disbursed to Integra Realty Resources.

ff.  Twelve Thousand Dollars ($12,000.00) debited on about July 16, 2007, and disbursed to Cavazos, Hendricks & Poirot PC.

gg.  One Million Two Hundred Sixty Thousand Dollars ($1,260,000.00) debited on about July 16, 2007, and disbursed to WEB XFER TO DDA 005514008290.

hh.  One Million One Hundred Eighty Thousand Dollars ($1,180,000.00) debited on about July 16, 2007, and disbursed to WEB XFER TO DDA 005514008332.

ii.  Three Hundred Fifty Thousand Dollars ($350,000.00) debited on about July16,

2007, and disbursed to WEB XFER TO DDA 005514008258.

jj. Two Hundred Twenty Nine Thousand Seven Hundred Seventy Dollars ($229,770.00) debited on about July 16, 2007, and disbursed to WEB XFER TO DDA 005514008258.

kk. One Hundred Fifty Thousand Dollars ($150,000.00) debited on about July 16, 2007, and disbursed to WEB XFER TO DDA 005514008316.

ll. One Hundred Thirty Thousand Dollars ($130,000.00) debited on about July 16, 2007, and disbursed to WEB XFER TO DDA 005514008944.

mm. One Hundred Twenty Thousand Dollars ($120,000.00) debited on about July 16, 2007, and disbursed to WEB XFER TO DDA 005514008217.

nn. One Hundred Thousand Dollars ($100,000.00) debited on about July 16, 2007, and disbursed to WEB XFER TO DDA 005514008282.

oo. One Hundred Thousand Dollars ($100,000.00) debited on about July 16, 2007, and disbursed to WEB XFER TO DDA 005514008274.

pp. Seventy Thousand Dollars ($70,000.00) debited on about July 16, 2007, and disbursed to WEB XFER TO DDA 005514008951.

qq. Fifty Thousand Dollars ($50,000.00) debited on about July 16, 2007, and disbursed to WEB XFER TO DDA 005514007904.

rr. Fifty Thousand Dollars ($50,000.00) debited on about July 16, 2007, and disbursed to WEB XFER TO DDA 005514008365.

ss. Fifty Thousand Dollars ($50,000.00) debited on about July16, 2007, and disbursed to WEB XFER TO DDA 005514008308, including all documents showing the receiver and beneficiary of the debit.

tt.  Thirty Thousand Dollars ($30,000.00) debited on about July 16, 2007, and

disbursed to WEB XFER TO DDA 005514008241.

uu. Twenty Thousand Dollars ($20,000.00) debited on about July 16, 2007, and

disbursed to WEB XFER TO DDA 005514008266.

vv. Twenty Thousand Dollars ($20,000.00) debited on about July 16, 2007, and

disbursed to WEB XFER TO DDA 005514001329.

ww. One Million One Hundred Thirty Four Thousand Nine Hundred Thirty Four

Dollars and Forty Two Cents ($1,134,934.42) debited on about July 17, 2007, and

disbursed to Bruce Minsky, Esq..

xx. Eight Hundred Fifty Thousand Dollars ($850,000.00) debited on about July 20,

2007, and disbursed to 005514007797.

yy. Five Thousand Two Hundred Fifty Dollars ($5,250.00) debited on about July 23,

2007, and disbursed to Carruthers & Roth PA Trust Account.

5.  All documents concerning the following checks drawn from First Republic Group

Corp.'s account at the BANK, account number 5516019766, including all BANK DEBIT

DOCUMENTS, as defined above and all cancelled checks, deposit tickets, and credit and debit

memos:

a.  Fifty Thousand Dollars ($50,000.00) debited on about July 20, 2007, described as

Check No. 1024.

b.  Fifty Thousand Dollars ($50,000.00) debited on about July 23, 2007, described as

Check No. 1028.

c.  Fifty Thousand Dollars ($50,000.00) debited on about July 23, 2007, described as

Check No. 1029.

   d.  Ten Thousand One Hundred Dollars ($10,100.00) debited on about July 24, 2007, described as Check No. 1012.

   e.  One Thousand Five Hundred Dollars ($1,500.00) debited on about July 26, 2007, described as Check No. 1031.

   f.  Eleven Thousand Seven Hundred Eighty Four Dollars ($11,784.00) debited on about July 27, 2007, described as Check No. 1018.

   g.  Forty Eight Thousand Dollars ($48,000.00) debited on about July 30, 2007, described as Check No. 1014.

   h.  One Thousand Four Hundred Dollars ($1,400.00) debited on about July 30, 2007, described as Check No. 1032.

**EXHIBIT D**

1

83S5AMUM                         motion

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   AMUSEMENT INDUSTRY INC., *et*
     *ano.*,
 4
                     Plaintiff,
 5
               v.                          07 CIV. 11586 (LAK)
 6
     MOSES STERN, *et al.*,
 7
                     Defendants.
 8
     ------------------------------x
 9
                                           March 28, 2008
10                                         10:50 a.m.
     Before:
11
                     HON. LEWIS A. KAPLAN,
12
                                           District Judge
13
                         APPEARANCES
14
     SILLS, CUMMIS & GROSS
15        Attorneys for Plaintiff
     BY:  PHILIP R. WHITE
16
     HOFFINGER, STERN & ROSS, L.L.P.
17        Attorneys for Defendants Stern, Frenkel, First Republic
     and Land Associates
18   BY:  STEPHEN R. STERN

19   FLEMMING, ZULACK, WILLIAMSON, ZAUDERER, L.L.P.
          Attorneys for Defendant Safrin
20   BY:  JONATHAN D. LUPKIN

21        JEAN MARIE HACKETT

22

23

24

25

83S5AMUM                          motion

1    time which is why we decided to do them early in the process.

2         And, to the extent that we haven't given -- I don't

3    understand about the use of proceeds argument that Mr. Stern is

4    making exactly, but in the initial disclosures that we made in

5    which we did not produce categories of documents but instead

6    produced several, I don't know, a large pile of actual

7    documents that we think are relevant, among them with several

8    closing statements that don't reconcile with each other.  And

9    so, we are trying to figure out what that's about.

10        At heart there is an awful lot of -- and I think

11   Mr. Stern alluded to it, allegations that are going to come of

12   patent dishonesty among these people and these documents are

13   relevant to those allegations.  And if we are going to get to

14   where somebody says very quickly the note, the assignment and

15   whatever, are actually enforceable valid documents, then this

16   case will be very quick, your Honor, because they're in default

17   and we are entitled to foreclose on those assets and we will be

18   the observers very quickly.

19        But, I suspect that when we come around to that point

20   we are not going to hear this is a case only about a note and

21   an assignment of collateral, we are going to hear it is a

22   massive fraud and conspiracy case and I'm trying to get to the

23   bottom of that quickly because we don't have a lot of time.

24        THE COURT:  Okay.  All right.

25        I was presented last week with a proposed order to

83S5AMUM                       motion

1   show cause to quash, modify, limit and/or enjoin approximately

2   37, plus or minus -- 38 subpoenas, actually, served by the

3   plaintiff on non-party witnesses.  The proposed order to show

4   cause was presented on behalf of the defendants other than

5   Mr. Safrin.

6           Rather than go through the time consuming and wasteful

7   exercise of having lots of papers prepared, I invited counsel

8   to come in today and we have just heard argument on the matter

9   and I am going to treat the motion set out in the order to show

10  cause as having been made and I deny it.

11          First of all, I am completely unpersuaded by the

12  movant's contention that discovery ought to go forward only as

13  among the parties initially and that all discovery against

14  non-party witnesses be deferred.  That just doesn't make any

15  sense to me and it seems also perfectly apparent, first, that

16  there are relevant documents that quite likely that are in the

17  hands of non-parties that are not in the hands of the parties

18  and, in all the circumstances of this case, issues as to

19  whether some potentially relevant documents that are or were in

20  the hands of some parties may, for one reason or another,

21  simply not turn up in discovery among the parties.  So, I just

22  decline altogether to accept the assertion about the order of

23  discovery.

24          Secondly, I think the assertion that there is some

25  horrible threat of irreparable harm if discovery proceeds

24

83S5AMUM                         motion

1    against Jones LaSalle and Citibank is, first of all,

2    unsupported by any substantive showing, highly speculative, and

3    a kind of the-sky-is-falling argument.  I see nothing to it, at

4    least at this point.

5          Thirdly, I think that the subpoenas addressed to the

6    disbursement of the proceeds that are in issue here are

7    patently relevant.  I simply reject the contrary argument.

8    And, the long and the short of it is that I don't see any

9    persuasive basis on the part of the moving defendants to

10   suggest or to lead me to the conclusion that the discovery

11   sought is not relevant in the broad scope of that term as

12   defined in the Federal Rules of Civil Procedure.

13         If and to whatever extent there are legitimate

14   concerns about confidentiality, they are readily resolved by

15   the parties that are entering into the standard form of

16   confidentiality order which could readily contemplate the

17   designation of confidential materials that are of concern to

18   non-party witnesses as confidential under the terms of the

19   order.  And, I would be perfectly prepared to sign the normal

20   form order.  And so, the motion is denied.  I do say, also,

21   however, that this is without prejudice to whatever arguments

22   might be raised on behalf of particular non-party witnesses who

23   have not been heard and to whatever objections they might have

24   to the subpoenas, and I do expect that the parties will be

25   reasonably accommodating of the interests of the non-party