UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

AMUSEMENT INDUSTRY, INC., dba WESTLAND
INDUSTRIES; PRACTICAL FINANCE CO., INC.,

                       Plaintiffs,

        - against -

MOSES STERN, aka MARK STERN; JOSHUA SAFRIN,
FIRST REPUBLIC GROUP REALTY LLC, EPHRAIM
FRENKEL, LAND TITLE ASSOCIATES ESCROW,

                    Defendants.

: No. 07 Civ. 11586 (LAK) (GWG)
: (ECF)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

JOSHUA SAFRIN,

             Defendant/Third Party-Crossclaim-
               Counterclaim-Plaintiff,

        - against -

STEPHEN FRIEDMAN, STEVEN ALEVY, BUCHANAN
INGERSOLL & ROONEY, P.C., BANKERS CAPITAL
REALTY ADVISORS LLC, and FIRST REPUBLIC GROUP
CORP.,

               Third Party Defendants,

        - and -

MOSES STERN, aka MARK STERN, FIRST REPUBLIC
GROUP REALTY LLC, EPHRAIM FRENKEL, and LAND
TITLE ASSOCIATES ESCROW,

             Defendants/Crossclaim Defendants,

        - and -

AMUSEMENT INDUSTRY, INC., dba WESTLAND
INDUSTRIES, PRACTICAL FINANCE CO., INC.

             Plaintiffs/Counterclaim Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STERN AND
FIRST REPUBLIC'S MOTION TO DISMISS THE CLAIMS ASSERTED
AGAINST THEM IN SAFRIN'S AMENDED THIRD PARTY COMPLAINT**

Defendants and putative third-party defendants Mark Stern ("Stern") and First Republic Realty Group LLC ("First Republic") submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 14(a) and 12(b)(6), to strike or dismiss the claims asserted against them in the amended third-party complaint (attached hereto as Exhibit A) filed by defendant and third-party plaintiff Joshua Safrin ("Safrin") because: (i) a defendant cannot assert claims against a party in a third-party action where the defendant is already a defendant in the primary action under Fed. R. Civ. P. 14(a); and (ii), alternatively, Counts I, and V-VIII against Stern and First Republic fail to state claims upon which relief can be granted.

## PROCEDURAL HISTORY

On December 27, 2007, plaintiffs Amusement Industry, Inc, dba Westland Industries ("Amusement") and Practical Finance Co., Inc. ("Practical Finance") filed a complaint (the "Complaint") asserting claims against defendants Safrin, Stern, First Republic, Ephraim Frenkel ("Frenkel") and Land Title Associates Escrow ("Land Title").

On February 27, 2008, all defendants moved to dismiss the claims against them in their entirety. Those motions are *sub judice*.

On February 28, 2008, the Court held a pre-trial conference with all parties and entered a scheduling order (the "Scheduling Order") which provided, *inter alia*, that additional parties be joined by May 1, 2008.

On May 1, 2008, Safrin filed a third-party complaint in which he asserted purported cross-claims against defendants Stern, First Republic, Frenkel and Land Title, purported counterclaims against plaintiffs Amusement and Practical Finance and third-party claims against nonparties Stephen Friedman, Steven Alevy, Buchanan Ingersoll & Rooney P.C., Bankers Capital Realty Advisors LLC and First Republic Group Corp. The claims asserted

against Stern and First Republic include claims for contribution and indemnification (Count 1)

and claims for violations of Sections 50 and 51 of the New York Civil Rights statute and of the

California common law right of privacy/commercial misappropriation (Counts V-VIII).

On May 29, 2008, Safrin filed an amended third party complaint (cited herein as

"ATPC __"), which asserts the same claims for relief against the third-party defendants named in

the original third-party complaint.

<u>**ARGUMENT**</u>

**I.**      **SAFRIN'S ASSERTION OF CLAIMS AGAINST STERN AND FIRST REPUBLIC IN A THIRD PARTY COMPLAINT IS NOT PERMITTED UNDER RULE 14(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND THOSE CLAIMS SHOULD BE DISMISSED**

Safrin's assertion of new claims against Stern and First Republic in its amended

third-party complaint is a clear violation of the Federal Rules of Civil Procedure.  Third party

practice under the Federal Rules is governed by Rule 14(a), which provides in relevant part:

> A defending party may, as third-party plaintiff, serve a summons
> and complaint on a nonparty who is or who may be liable to it for
> all or part of the claim against it.

Fed. R. Civ. P. 14(a).  That rule makes it absolutely clear that a defendant in the primary action

may only bring a third-party complaint against nonparties; he cannot bring a claim against parties

who are already defendants to the original litigation.  *See, e.g., Mauney v. Boyle*, 865 F. Supp.

142, 153 (S.D.N.Y. 1994) ("[U]nder Rule 14(a) a third-party action may not be brought against a

third-party defendant that is already a party to the action.").

The case law makes clear that the appropriate remedy for violation of Rule 14(a)

is dismissal of the improperly brought claims. *See, e.g., Henz v. Superior Trucking Co*., 96

F.R.D. 219, 220 (M.D. Pa. 1982) (impleader by defendant against plaintiff improper); *Atl. Nat'l

Bank of Jacksonville v. First Nat'l Bank,* 7 F.R.D. 573 (M.D. Pa. 1947) (striking fourth-party

complaint brought by third-party defendant against original plaintiff noting that Rule 14(a) only permits the joinder of additional parties not already a party to the action); *Horton v. Cont'l Can Co.*, 19 F.R.D. 429, 432 (D. Neb. 1956) (denying defendant's motion to bring a third-party action against a party already a defendant to the primary action).

Commentators examining Rule 14(a) have reached the same conclusion. *See* 3 Moore's Federal Practice § 14.09 (3d ed. 2008) at 14-45. ("The impleader rule expressly provides for the joinder of a 'nonparty.' On its face then, the rule precludes impleader of one who is already a party to the litigation. In fact, the proper procedural devices for asserting claims against those who are already parties are counterclaims (which are asserted against an opposing party) and crossclaims (which are asserted against a 'coparty')."); *See also* Steven Baicker-McKee, Federal Civil Rules Handbook 440-441 (West 2008). In explaining the application of Rule 14(a), the authors of the handbook state that "Rule 14 permits parties who are defending against claims to join other persons, not yet parties, who may be obligated to reimburse the party defending the claim for some or all of that party's liability," *id.* at 440, and that "[o]nly persons not already parties may be impleaded," *id.* at 441.

Thus, under the plain application of Rule 14(a) and applicable caselaw, Safrin cannot assert claims in a third-party complaint against Stern and First Republic because Stern and First Republic are already defendants to the primary action.[1] Accordingly, this Court should dismiss all claims asserted against Stern and First Republic in Safrin's amended Third Party Complaint.

---

[1]    Safrin's characterization of Stern and First Republic in its third-party complaint as "crossclaim defendants" is, in and of itself, a recognition on Safrin's part that its claims are cross-claims and not third-party claims. Accordingly, those claims should be asserted if, at all, in Safrin's answer and not in a third-party complaint.

## II.    THE CLAIMS ASSERTED AGAINST STERN AND FIRST REPUBLIC IN THE AMENDED THIRD PARTY COMPLAINT SHOULD BE DISMISSED

Even if Safrin could assert claims against Stern and First Republic in his amended third-party complaint (which he cannot for the reasons demonstrated in Point I), none of those claims state causes of action and all of the claims should be dismissed.[2]

### A.    The Indemnification and Contribution Claim Against Stern and First Republic Should Be Dismissed

The first count, asserted against all "Defendants" – *i.e.*, each of the defendants in the amended third-party complaint – asserts that Safrin is innocent of any wrongdoing or fault and to the extent he "is found liable to Plaintiffs for the wrongful conduct alleged in the Complaint" (referring to plaintiffs' claims against Safrin in the primary action), that "Safrin is entitled to indemnity and/or contribution from one or more of the Defendants." (ATPC ¶ 69.) This conclusory assertion is insufficient to state a claim against either Stern or First Republic.  In order to defeat this motion to dismiss, Safrin must meet the pleading standard of "plausibility" announced by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) – that is, the complaint must "amplify a claim with some factual allegations to render the claim plausible."[3]  *See Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).  In complying with this "plausibility" standard, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI*, 493 F.3d at 98 (quoting *Bell Atl.*, 127 S. Ct. at 1965).  The complaint cannot rely

---

[2]    Stern and First Republic move to dismiss all claims asserted against them in the Amended Third Party Complaint, other than the declaratory judgment claim (Count II).

[3]    The pleading standard announced by the Supreme Court in *Bell Atl.* is not limited to the antitrust context in which that case arose.  Indeed, the Second Circuit has "declined to read *Twombly's* . . . 'plausibility standard' as relating only to antitrust cases."  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007).

on mere "labels and conclusions." *Bell Atl.*, 127 S. Ct. at 1965.

Nowhere in his amended third-party complaint does Safrin provide any factual allegations to support a plausible claim for indemnification or contribution or raise his right to relief above the speculative level. Safrin does not sufficiently plead the factual basis for either claim, *i.e*, he does not sufficiently allege whether he had a contractual or common law right of indemnity from either Stern or First Republic and what the factual basis of that claim would be and he does not sufficiently allege the factual basis for a contribution claim against either Stern or First Republic. Accordingly, the indemnification/contribution claim against Stern and First Republic fails. *See Bell Atl.*, 127 S. Ct. at 1965; *ATSI Commc'ns*, 493 F.3d at 98; *See also, e.g., Corley v. Country Squire Apartments, Inc*., 32 A.D.3d 978, 979, 820 N.Y.S.2d 900 (2d Dep't 2006) ("Country Squire failed to sufficiently plead the elements of common-law indemnification as its cross claim did not allege that the plaintiff's injury was due solely to the appellant's negligent performance or nonperformance of an act solely within its province.").

**B.    The Civil Rights Law Claims (Counts V and VII) Should Be Dismissed Against Stern and First Republic**

Section 50 of the Civil Rights Law plainly does not apply to Safrin's claims against either Stern or First Republic. Section 50 of the Civil Rights Law is a criminal statute which does not provide for a civil remedy:

> A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, . . . is guilty of a misdemeanor.

N.Y. Civ. R. § 50.

Section 51 provides in pertinent part:

> Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade

> without the written consent first obtained as above provided may
> maintain an equitable action in the supreme court of this state
> against the person, firm or corporation so using his name, portrait,
> picture or voice, to prevent and restrain the use thereof; and may
> also sue and recover damages for any injuries sustained by reason
> of such use and if the defendant shall have knowingly used such
> person's name, portrait, picture or voice in such manner as is
> forbidden or declared to be unlawful by section fifty of this article,
> the jury, in its discretion, may award exemplary damages.

N.Y. Civ. R. § 51.

The New York State Civil Rights Law statutes do not apply, and were not intended to apply to Safrin's claims that his name was allegedly forged on business documents. Sections 50 and 51 of the Civil Rights Law are found in "Article 5 - Right of Privacy" in the New York Civil Rights Law.  "[I]n this state, there is no common-law right of privacy and the only available remedy is that created by Civil Rights Law §§ 50 and 51."  *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 140, 490 N.Y.S.2d 735 (1985).  The statute "created a limited right of privacy, which had not existed prior to [its] enactment" and hence the New York State Court of Appeals has taken "cognizance of the limited scope of the statute as granting protection only to the extent of affording a remedy for commercial exploitation of an individual's name, portrait or picture, without written consent."  *Id.*

Further, the New York State Court of Appeals has underscored that the statute is to be narrowly construed and "'strictly limited  to nonconsensual commercial appropriations of the name, portrait or picture of a living person.'"  *Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52 (2000) (quoting *Finger v. Omni Publ'ns Intl., Ltd.*, 77 N.Y.2d 138, 141 (1990)).  Narrow construction of the statute, in accordance with the statute's purpose, warrants dismissal of the Civil Rights Law claims.  Indeed, "[t]he primary purpose of this legislation was to protect the sentiments, thoughts and feelings of an individual." *Flores v.*

*Mosler Safe Co.*, 7 N.Y.2d 276, 280, 196 N.Y.S.2d 975 (1959).  *See generally, Meeropol v. Nizer*, 381 F. Supp. 29, 39 n.6 (S.D.N.Y. 1974) ("Generally, the law of defamation protects an individual from harm to relational interests, while the right of privacy has developed to compensate an individual for the injury to his feelings, to prevent inaccurate portrayal of private life, and, in some instances, to prevent one's private life from being depicted at all."), *aff'd on other grounds*, 560 F.2d 1061 (2d Cir. 1977).  Safrin does not claim his "sentiments, thoughts and feelings" were hurt by the alleged conduct, nor do the facts he alleges fall within the scope of a Civil Rights Law privacy claim.  Thus, the circumstances alleged by Safrin – the alleged forgery of his signature on business documents – fail to state a claim under New York Civil Rights Law, § 51, and the claims should therefore be dismissed.[4]

Furthermore, Count VII, asserting a conspiracy to violate the Right of Privacy statutes cited in Count V, should be dismissed for an additional, independent ground.  "'New York does not recognize civil conspiracy to commit a tort as an independent cause of action.'"  *Salvatore v. Kumar,* 45 A.D.3d 560, 563, 845 N.Y.S.2d 384 (2d Dep't 2007) (quoting *Pappas v. Passias,* 271 A.D.2d 420, 421 (2d Dep't 2000)); *see also Alexander & Alexander, Inc. v. Fritzen*, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546 (1986); *85 Fifth Ave. 4th Floor, LLC v. I.A. Selig, LLC,* 45 A.D.3d 349, 350, 845 N.Y.S.2d 274 (1st Dep't 2007).[5]  This basic principle of law fully applies here.  Accordingly, for the foregoing reasons, Counts V and VII should be dismissed.

---

[4]    Furthermore, Counts V and VII should be dismissed for the additional reason that Safrin indiscriminately claims that "defendants" violated his rights under New York Civil Rights Law, §§ 50 and 51 without ascribing any particular conduct to either Stern or First Republic.

[5]    Indeed, Safrin expressly incorporated by reference this argument in support of the his motion to dismiss the twenty-fifth claim in the Complaint for conspiracy to commit conversion and fraud.  *See* Memorandum of Law in Support of Defendant Joshua Safrin's Motion to Dismiss the Complaint, Docket No. 33 at 34 (entered Feb. 28, 2008).

C.    **The California Common Law Right of Privacy/Commercial Misappropriation Claims (Counts VI AND VIII) Should Be Dismissed Against Stern and First Republic**

Counts VI and VIII allege, respectively, that "defendants" violated Safrin's California common law right of privacy/commercial misappropriation and conspired to violate his California common law right of privacy.   Once again, as with all his claims, Safrin simply does not – because he cannot – ascribe any particular wrongful conduct to either Stern or First Republic,  resorting, instead, to wholesale and misplaced references to "Defendants."

Aside from the foregoing fundamental defect in his pleading, Safrin can hardly claim rights under California law.  Safrin alleges he is a citizen and resident of the State of New York.  (*See* ATPC  ¶ 4.)  Safrin further alleges, upon information and belief, that First Republic is a Delaware limited liability company with its principal place of business in the State of New York, (ATPC ¶ 14), and that Mark Stern is a citizen of the State of New York, (ATPC ¶ 12.)  Thus, the amended Third Party Complaint does not allege that either Safrin, Stern or First Republic had any contacts with the State of California and Safrin cannot claim a violation of his supposed California common law rights which presumably apply to California citizens.

## CONCLUSION

For all of the foregoing reasons, Safrin's amended third party complaint against Stern and First Republic should be dismissed.

Dated: June 9, 2008
       New York, New York

By: /s/ Michael A. Lynn
Arthur Brown (AB-0627)
Michael Lynn (ML-6052)
Efrem Schwalb (ES-5288)
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022

Tel: (212) 836-8000
Fax: (212) 836-8689
Email: mlynn@kayescholer.com

Stephen R. Stern (SS-5665)
HOFFINGER STERN & ROSS LLP
150 East 58th Street
New York, New York 10155
Tel: (212) 421-4000
Fax: (212) 750-1259
Email: srstern@hsrlaw.com

*Attorneys for Mark Stern and First
Republic Group Realty LLC*


To:    FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
       Jonathan D. Lupkin (JL-0792)
       Jean Marie Hackett (JH-1784)
       One Liberty Plaza
       New York, New York 10006
       Tel: (212) 412-9500
       Fax: (212) 964-9200
       Email: jlupkin@fzwz.com

       *Attorneys for Defendant-Third Party Plaintiff Joshua Safrin*

       SILLS CUMMIS & GROSS, P.C.
       Philip R. White
       Marc D. Youngelson
       One Rockefeller Plaza
       New York, New York 10020
       Tel: (212) 643-7000
       Fax: (212) 643-5000
       Email: myoungelson@sillscummis.com

       SRAGOW & SRAGOW
       Allen P. Sragow
       6665 Long Beach Blvd, Suite B-22
       Long Beach, California 90805
       (310) 639-0782

       *Attorneys for Plaintiffs/Counterclaim Defendants*

KAVANAGH MALONEY & OSNATO LLP
James J. Maloney
David F. Bayne
Steven M. Cordero
Meredith D. Balkin
415 Madison Avenue
New York, New York 10017

*Attorneys for Third Party Defendants Buchanan Ingersoll*
*& Rooney P.P. and Steven Friedman*

# EXHIBIT A

Jonathan D. Lupkin, Esq. (JL-0792)
FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York 10006
Tel: (212) 412-9500
Fax: (212) 964-9200
Email: jlupkin@fzwz.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

AMUSEMENT INDUSTRY, INC., dba WESTLAND
INDUSTRIES; PRACTICAL FINANCE CO., INC.,

                       Plaintiffs,

   - against -

MOSES STERN, aka MARK STERN; JOSHUA SAFRIN,
FIRST REPUBLIC GROUP REALTY LLC, EPHRAIM
FRENKEL, LAND TITLE ASSOCIATES ESCROW,

                Defendants.

-------------------------------------------------------------- X

JOSHUA SAFRIN,

         Defendant/Third Party-Crossclaim-
              Counterclaim-Plaintiff,

   - against –

STEPHEN FRIEDMAN, STEVEN ALEVY, BUCHANAN
INGERSOLL & ROONEY, P.C., BANKERS CAPITAL
REALTY ADVISORS LLC, and FIRST REPUBLIC
GROUP CORP.,

           Third Party Defendants,

   - and -

MOSES STERN, aka MARK STERN, FIRST REPUBLIC
GROUP REALTY LLC, EPHRAIM FRENKEL, and
LAND TITLE ASSOCIATES ESCROW,

           Defendants/Crossclaim Defendants,

   - and -

AMUSEMENT INDUSTRY, INC., dba WESTLAND
INDUSTRIES, PRACTICAL FINANCE CO., INC.,

          Plaintiffs/Counterclaim Defendants.

-------------------------------------------------------------- X

**JURY TRIAL DEMANDED**

No. 07 Civ. 11586 (LAK)(GWG)

(ECF)

**AMENDED THIRD PARTY
COMPLAINT
(CONTAINING
CROSSCLAIMS AND
COUNTERCLAIMS)**

Defendant/Third Party-Counterclaim-Crossclaim-Plaintiff Joshua Safrin ("Safrin") by his attorneys, for his third party complaint against third party defendants Stephen Friedman, Steven Alevy, Buchanan Ingersoll & Rooney, P.C., Bankers Capital Realty Advisors LLC, and First Republic Group Corp. (hereinafter collectively referred to as the "Third Party Defendants"), crossclaims against Moses Stern, aka Mark Stern, First Republic Group Realty LLC, Ephraim Frenkel, Land Title Associates Escrow (referred to collectively, together with the Third Party Defendants, as "Defendants"), and counterclaims against Amusement Industry, Inc., dba Westland Industries ("Amusement"), and Practical Finance Co., Inc. (collectively, "Plaintiffs"), alleges, upon information and belief, as follows:

## NATURE OF THE ACTION

1.     On December 27, 2007, Plaintiffs commenced an action in this Court against Safrin, Mark Stern ("Stern"), Ephraim Frenkel ("Frenkel"), First Republic Group Realty LLC ("First Republic LLC") and Land Title Associates Escrow ("Land Escrow"). (the "Main Action") (A copy of the summons and complaint (the "Complaint") is attached as Exhibit A.)

2.     Although the Complaint names Safrin, a well-respected name in the real estate industry, as a defendant, Safrin was unaware of any of the transactions at issue in the Main Action until shortly before being served with process. Plaintiffs, who allege a series of transactions and negotiations in connection with a large real estate transaction, premise their entire case against Safrin on the claim that he participated in these transactions and negotiations through Friedman, who purportedly acted for and spoke as Safrin's attorney and agent.

3.     Safrin was unaware that Friedman represented to Plaintiffs that he (Friedman) was Safrin's agent or attorney, did not authorize Friedman to make any such representations, and had no knowledge of any of the representations or actions described in the Complaint that were purportedly undertaken by Friedman on his behalf. As set forth more fully below, Friedman,

2

together with the other Defendants, was an integral part of a conspiracy to misappropriate

Safrin's identity (i.e., his name, stellar reputation in the real estate industry, and financial

wherewithal) in order to secure financing for the purchase of a portfolio of real estate located

throughout the Southeastern United States.

## PARTIES

4.      Defendant/Third Party-Crossclaim-Counterclaim-Plaintiff Joshua Safrin is an

individual and citizen of the State of New York, residing at 50 Riverside Drive, Apt. 2A, New

York, New York, 10024.

5.      Third Party Defendant Stephen Friedman ("Friedman") is an individual and citizen

of the State of New York.  Upon information and belief, Friedman is an attorney with and

shareholder in the law firm Buchanan Ingersoll & Rooney, P.C. ("BIR").  Upon information and

belief, Friedman was acting, at all times mentioned herein, in his capacity as an attorney and

shareholder of BIR.

6.      Third Party Defendant Buchanan Ingersoll & Rooney, P.C. is a professional

corporation organized under the laws of Pennsylvania, which maintains offices for the practice of

law at 620 Eighth Avenue, 23rd Floor, New York, NY 10018-1669.  Upon information and

belief, Friedman practices out of BIR's New York office.

7.      Third-party Defendant Steven Alevy ("Alevy") is an individual and citizen of the

State of New York, residing at 275 West 96th St, New York, New York, 10025.  Upon

information and belief, Alevy is Managing Director of Bankers Capital Realty Advisors LLC,

and is the son of Allen Alevy, the sole shareholder of plaintiff Amusement Industry, Inc.

8.      Third-Party Defendant Bankers Capital Realty Advisors LLC ("Bankers Capital")

was and is a limited liability company with its principal place of business at 575 Madison

Avenue, 10th floor, New York, NY 10022.  Upon information and belief, Alevy was acting, at

3

all times mentioned herein, in his capacity as an employee and Managing Director of Bankers Capital.

9.      Upon information and belief, Third Party Defendant First Republic Group Corp. ("First Republic Corp.") is a corporation organized under the law of New York, with its principal place of business at 241 Fifth Avenue, Suite 302, New York, New York 10016. Upon information and belief, First Republic Corp. was, at all times mentioned herein, solely owned and controlled by defendant Moses Stern.

10.      Upon information and belief, Plaintiff/Counterclaim-Defendant Amusement Industry, Inc., dba Westland Industries, is a corporation organized under the laws of the State of California with its principal place of business at 6665 Long Beach Blvd., Long Beach, California, 90805

11.      Upon information and belief, Plaintiff/Counterclaim Defendant Practical Finance Co., Inc. ("Practical Finance"), is a corporation organized under the laws of the State of California with its principal place of business at 6665 Long Beach Blvd., Long Beach, California, 90805.

12.      Upon information and belief, Defendant/Crossclaim Defendant Moses aka Mark Stern is an individual and citizen of the State of New York residing at 39 Remsen Avenue, Monsey, New York  10952.

13.      Upon information and belief, Defendant/Crossclaim Defendant Ephraim Frenkel is an individual and citizen of the State of New York.

14.      Upon information and belief, Defendant/Crossclaim Defendant First Republic Group Realty LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York County in the State of New York.

15.      Upon information and belief, at all times mentioned herein, Defendant/Crossclaim Defendant Land Title Associates Escrow was and is a limited liability company organized under

the laws of the State of New York with its principal place of business at 1979 Marcus Avenue,

Suite 210, Lake Success, New York 11042, operating under the name "Land Title Associates."

## SUBJECT MATTER JURISDICTION AND VENUE

16.    This Court has jurisdiction over Safrin's claims pursuant to Fed. R. Civ. P.

13(a), (g), 14(a), 28 U.S.C. §§1367 and 2201, and pursuant to the Court's subject matter

jurisdiction over the Main Action.

17.    This Court has personal jurisdiction over the Third Party Defendants, pursuant to

CPLR 301 and 302, by virtue of the fact that they reside in, transact, do or conduct business

in New York and because they committed tortious acts within New York and tortious acts

without New York causing injury to persons within New York.

18.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because all

of the Third Party Defendants reside in this judicial district and because a substantial number

of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND

**The Underlying Complaint**

19.    In the Complaint, Plaintiffs allege a series of transactions, the details of which

follow herein. The following allegations are made on information and belief. The bases for

Safrin's belief are, largely, the allegations in the Complaint itself.

20.    According to the Complaint, First Republic Group Corp. purchased from non-party

Colonial Realty Limited Partnership ("Colonial Realty") a certain real estate portfolio consisting

of shopping centers located in the Southeastern United States (the "Property Portfolio"). At

some point, First Republic Corp. assigned its interest in the Property Portfolio to First Republic

LLC.

**The Citigroup Loan Documents**

21.    Plaintiffs allege that Stern and Safrin obtained financing for the purchase of the Property Portfolio by executing two loan agreements with Citigroup Global Markets Realty Corp. ("Citigroup") on behalf of various purchasing entities.  First Republic LLC executed a loan agreement with Citigroup for $111,150,000.00 and FRGR Managing Member LLC, a constituent member of the First Republic LLC ownership structure, executed a Mezzanine Loan Agreement with Citigroup for $15,000,000.00.  Both loan agreements are dated as of July 11, 2007, and define "Guarantor" to include Safrin.

22.    The purported signatures of Safrin on these documents are forgeries, as confirmed by a highly reputable handwriting expert with 40 years of experience in the field.  (Exhibit B hereto.)

**Plaintiffs' Investment**

23.    Plaintiffs allege that because the Citigroup loan was insufficient to enable First Republic LLC to purchase the Property Portfolio, Safrin, among others, approached mortgage broker Alevy, of Bankers Capital, and Friedman, for the purpose of obtaining the additional necessary financing.

24.    Safrin never made any such approach.

25.    According to the Complaint, on June 29, 2007, Alevy and Friedman presented an investment opportunity to Amusement, purportedly on behalf of Safrin and others, to raise funds sufficient to complete the Property Portfolio Purchase.

26.    Safrin never authorized Alevy or Friedman to present any opportunity to Amusement.

27.    Plaintiffs allege that Friedman "represented" among others, Safrin, in purported "communications and dealings with [P]laintiffs."  Plaintiffs also allege that Friedman owed a separate fiduciary duty to Amusement because he had previously represented Amusement, as

well as its sole shareholder, Allen Alevy, and his son, Steven Alevy, in various legal matters. Plaintiffs contend that "as a result" of this previous representation by Friedman, "Friedman led Plaintiffs to believe that he had full authority to speak on behalf of . . . Safrin."

28.    Safrin never retained or otherwise authorized Friedman to speak or act on his behalf in connection with the transactions described in the Complaint.

**The June 29, 2007 "Letter of Intent"**

29.    According to the Complaint, the investment opportunity presented by Friedman and Alevy in June, 2007, purportedly on behalf of Safrin and others, resulted in a "written Letter of Intent" drafted by Alevy, signed by Stern on behalf of First Republic Corp. and dated June 29, 2007. Although the document is referred to as a "Letter of Intent" in the Complaint, the document itself is characterized as a Letter of Understanding (hereafter "LOI"). (Complaint, Ex. 2.) The LOI identifies as its parties First Republic Corp. and Westland Industries, the name under which Amusement does business. (Id.)

30.    Safrin was not a party to the LOI. (Complaint, Ex. 2).

31.    Plaintiffs allege that on July 2, 2007, Alevy e-mailed the so-called "Letter of Intent" to Friedman and Stern.

32.    According to the Complaint, on June 29, 2007, the same day Stern signed the LOI on behalf of First Republic Corp., Amusement wired $13,000,000.00 into the Land Escrow account. Plaintiffs assert that as a result of this wire transfer, a contract formed among Amusement and Safrin, among others, having the terms of the LOI.

33.    Safrin never entered into any such contract.

34.    Plaintiffs allege that on or after July 2, 2007, Safrin and Stern obtained a reduction of the purchase price of the property portfolio "by about $4.47 million dollars."

35.    Safrin never obtained any such reduction because he had no involvement with either the purchase or the financing of the Property Portfolio.

7

**Plaintiffs' Subsequent Negotiations With Friedman**

36.    Plaintiffs allege that on June 29, 2007 and during the seven-day period that followed, Amusement and First Republic Corp. had agreed to work in good faith "to finalize [their] agreements." During that time period, Amusement drafted and forwarded three partnership agreements to Friedman for Safrin, among others, to sign in order "to complete a transaction." (Complaint, Ex. 3)

37.    None of these draft agreements called for Safrin's signature.

38.    According to the Complaint, after the seven day period passed without agreements being "finalized," Amusement continued to negotiate through Friedman.

39.    According to the Complaint, on July 6, 2007, Plaintiffs, through Friedman:  (a) suggested a new Property Portfolio ownership structure; (b) inquired as to whether its $13,000,000.00 contribution to the purchase should be a loan to Stern or to the entity that would be the owner of the Property Portfolio; (c) notified Safrin, among others, that the seven-day period had expired; and (d) noted that there should be about $4,000,000.00 in reserve after the closing.  Plaintiffs also instructed Friedman not to authorize the release of the $13,000,000.00 held in escrow.

40.    Safrin was unaware of these negotiations and communications.

41.    Plaintiffs allege that on July 6, 2007, counsel for Amusement also wrote to Friedman, stating that if the transaction had materially changed from the draft partnership agreements and the LOI (agreements to which only Amusement and First Republic Corp. are parties), then the wired $13 million should be returned.

42.    Safrin was unaware of this communication.

43.    On July 9, 2007, according to the Complaint, Amusement asked Friedman, in writing, for a copy of the Citigroup loan documents that provided for the majority of the

financing for the Property Portfolio purchase. Friedman did not provide the documents, but responded that same day, in writing, that First Republic LLC was now the purchasing entity.

44. Safrin was unaware of this representation.

45. During the flurry of back-and-forth communications alleged to have occurred on July 9, 2007 through Friedman, purportedly on behalf of Safrin and others, Friedman promised, in writing, that formal documentation of Amusement's interest in the Property Portfolio was recognized and would be completed as necessary after closing once First Republic LLC owned the property portfolio.

46. Safrin was unaware that any of these representations were being made on his behalf.

47. According to the Complaint, Amusement then instructed Friedman, for a second time, not to authorize release of the $13 million in escrow. Amusement also instructed Land Escrow and Frenkel not to release Amusement's funds without written authorization of Sragow & Sragow, one of two firms acting as counsel of record to Plaintiffs in the Main Action.

48. Safrin was unaware that Amusement's money, or indeed anyone's money, was being held in escrow in connection with the Property Portfolio's purchase or financing.

49. Plaintiffs allege that on July 11, 2007, Friedman provided documents to Amusement, including a Promissory Note for $13,000,000.00 signed by Stern in his individual capacity, an Escrow Agreement, and Agreements, purportedly signed by Stern and Safrin (Complaint, Exs. 5 and 6), assigning their respective LLC membership interests in First Republic LLC and the underlying LLC ownership structure, and eleven grant deeds constituting the Property Portfolio, all of which were signed by Stern on behalf of First Republic LLC and notarized on July 12, 2007 (Complaint, Ex. 1) (these documents are collectively referred to herein as the "Escrow Documents").

50.   Safrin's signature on the "Agreement" that purportedly assigns his LLC interests ("Assignment Agreement") is a forgery, as confirmed by a highly reputable handwriting expert with 40 years of experience in the field. (Exhibit B hereto.)  Moreover, Safrin's forged signature, as it appears in the document, is not witnessed, as required by the form itself.

**The July 11, 2007 Counter Offer**

51.   According to the Complaint, on July 11, 2007, Amusement communicated to Safrin, among others, in writing "through Friedman" a "counter offer" because it disagreed with the characterization of the transaction among the parties reflected in the Escrow Documents, including that the money from Amusement was a loan.  Amusement declared that there would be no loan.  Rather, the $13,000,000.00 would be treated as a direct investment with a preferred right to return of this investment within 45 days.  In addition, the repayment right would be increased to $15,000,000.00 because of the $4,000,000.00 remaining in reserve after closing. Amusement also demanded conveyance to Amusement of 100% of the Property Portfolio by deeding all eleven properties to Amusement, together with the conveyance of the LLC membership interests, and noted that Stern and Safrin would have a limited option to repurchase the grant deeds and a 50% ownership interest by providing "the partnership agreement" (presumably an executed copy of the document attached to the Complaint as Ex. 3) within a period of 45 days.

52.   Safrin was unaware of these communications.

53.   According to the Complaint, Friedman responded, telling Amusement that it "should not worry as Amusement now owned the whole thing," and the following day, provided a $15,000,000.00 promissory note signed by Stern in his individual capacity.  (Compl. Ex. 7.)

54.   Safrin was unaware of Friedman's representation and never authorized Friedman to make it.

10

55.   Plaintiffs allege that on July 12, 2007, Frenkel and Land Escrow "took and used" the $13,000,000.00 in escrow based on verbal and written instructions from Alevy, without notice or authorization from Amusement.

## Safrin Had No Involvement In The Transactions Alleged In The Complaint

56.   Safrin had no involvement with any of the transactions alleged in the Complaint.

57.   Safrin had no knowledge regarding the Property Portfolio until shortly before being served with process.

58.   Safrin had no knowledge regarding any of the "contracts" alleged in the Complaint until shortly before being served with process.

59.   Safrin has no knowledge regarding any of the LLCs alleged in the Complaint, including First Republic LLC, and had never heard of any of them until he was named in this lawsuit.

60.   Safrin never met nor spoke with Stern.

61.   Safrin never met nor communicated with the Plaintiffs.

62.   Safrin did not sign, nor direct anyone else to sign on his behalf, any of the following: (a) the Citigroup loan documents; (b) the Assignment Agreement purportedly assigning his LLC interests to Amusement; or (c) the operating agreements of JSAE Colonial LLC and FRGR Holdings LLC.  The purported signatures of "Joshua Safrin" on these documents are forged.

63.   Safrin: (a) did not engage or retain Friedman; and (b) never asked Friedman to represent him, or to speak, act or function on his behalf in connection with any of the transactions alleged in the Complaint.

64.   Until shortly before he was served with the Complaint, Safrin was unaware: (a) that Friedman made any of the alleged representations described in the foregoing paragraphs to Plaintiffs, including the representation that he (Friedman) represented and had authority to speak

11

on behalf of Safrin; and (b) that Friedman engaged in any of the conduct purportedly undertaken on his behalf in connection with the transactions alleged in the Complaint.

65. Safrin did not authorize Friedman to make any of the representations ascribed to him in the Complaint, or engage in any of the conduct described therein.

66. Safrin did not ratify any of the representations made or actions purportedly undertaken by Friedman on Safrin's behalf in connection with the transactions alleged in the Complaint.

## Count I

### (Indemnification and Contribution – Against All Defendants)

67. Safrin repeats and realleges the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

68. Safrin denies any wrongdoing or fault. To the extent that he may be found liable to Plaintiffs for damages, however, such damages were caused, in whole or in part, by the wrongful conduct of one or more of the Defendants.

69. By reason of the foregoing, to the extent that Safrin is found liable to Plaintiffs for the wrongful conduct alleged in the Complaint, Safrin is entitled to indemnity and/or contribution from one or more of the Defendants.

## Count II

### (Declaratory Judgment Against Defendants and Plaintiffs/Counterclaim Defendants)

70. Safrin repeats and realleges the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

71. A live, actual and justiciable controversy exists between the parties concerning whether a principal-agent or attorney-client relationship existed between Safrin, on the one hand, and Friedman/BIR, on the other, such that Friedman/BIR had authority to act on Safrin's behalf in connection with the transactions alleged in the Complaint.

72. Safrin contends that he never engaged, retained or authorized Friedman or BIR to act on his behalf as his agents or attorneys in connection with the transactions alleged in the Complaint and that Friedman/BIR had no authority, whether actual or apparent, to act on his (Safrin's) behalf in connection with the transactions alleged in the Complaint.

73. By reason of the forgoing, Safrin is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that (a) no attorney-client or other principal-agency relationship existed between Safrin and Friedman/BIR in connection with the transactions alleged in the Complaint; (b) Friedman/BIR had no authority, whether actual or apparent, to act on Safrin's behalf in connection with the transactions alleged in the Complaint; and (c) Safrin did not ratify any of the representations or conduct allegedly made or undertaken on his behalf by Friedman/BIR in connection with the transactions alleged in the Complaint.

## Count III

**(Implied Indemnification – Implied Contractual Indemnity, Against Friedman and BIR)**

74. Safrin repeats and realleges the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

75. Safrin is not at fault and denies liability for the tortious conduct alleged in the Complaint. If Friedman/BIR are determined to have been Safrin's agents or attorneys, then Friedman/BIR exceeded their actual authority in connection with the conduct and representations purportedly undertaken on Safrin's behalf.

76. If Friedman/BIR are determined to have been Safrin's agents or attorneys, with some authority to make representations to act towards, or make representations to, Plaintiffs or others on his behalf in connection with the transactions alleged in the Complaint, then : (a) Safrin transferred any duties owed to the Plaintiffs and others by implied agreement with

13

Friedman/BIR; (b) Friedman/BIR agreed to assume responsibility for those duties in connection with the transactions alleged in the Complaint, and (c) Friedman/BIR breached these duties.

77.    By reason of the foregoing, and to the extent that Safrin is found liable to Plaintiffs for the wrongful conduct alleged in the Complaint, then Safrin is entitled to indemnification from Friedman and BIR.

**Count IV**

**(Breach of Duty As Agent/Attorney – Against Friedman and BIR)**

78.    Safrin repeats and realleges the allegations contained in paragraphs 1 through 66 and 74 through 77 as if fully set forth herein.

79.    Safrin denies any liability for or wrongdoing in connection with the transactions alleged in the Complaint.

80.    If it is determined that Friedman/BIR were acting, in any way, as Safrin's agents or attorneys, then Friedman/BIR owed certain duties to Safrin as his principal, including, but not limited to:

    a.    The duty of loyalty;

    b.    The duty of obedience;

    c.    The duty of reasonable care;

    d.    The fiduciary duty to act for the principal's benefit in all matters connected with the agency relationship;

    e.    The duty to take action only within the scope of the agent's actual authority; and

    f.    The duty to comply with all lawful instructions received from the principal and persons designated by the principal concerning the agent's actions on behalf of the principal.

81.    If it is determined that Friedman/BIR were acting as Safrin's agents or attorneys in any respect, then Friedman/BIR breached these duties because, without Safrin's knowledge or

14

consent, they: (a) exceeded the scope of their authority; (b) used Safrin's name and identity

and/or confidential information concerning Safrin (without his knowledge or consent) for their

own purposes and material benefit and/or for the purposes and material benefit of third parties;

and (c) improperly represented that they were authorized to act on Safrin's behalf to consummate

the transactions alleged in the Complaint.

82.    Friedman/BIR's conduct was so outrageous as to evince a high degree of moral

turpitude and show such wanton dishonesty as to imply criminal indifference to civil obligations.

83.    By reason of the foregoing, Friedman and BIR are liable to Safrin for damages,

including punitive damages and the cost of defending against the Main Action, in an amount to

be determined at trial.

### Count V

### (N.Y. Civil Rights Law §§ 50, 51 – Against All Defendants)

84.    Safrin repeats and realleges the allegations contained in paragraphs 1 through 66 as

if fully set forth herein.

85.    Defendants, operating out of their places of business within the State of New York,

knowingly and intentionally: (a) used Safrin's forged name on the purported Assignment

Agreement, the operating agreements of FRGR Holdings LLC and JSAE Colonial LLC, as well

as other transactional documents, including officer's certificates, and the Citigroup loan

documents; (b) used Safrin's name and identity in connection with their negotiations with

Plaintiffs; and (c) drafted those documents that were necessary to create LLCs in which Safrin

was a purported member, director or manager. These LLCs include, but are not limited to, JSAE

Colonial LLC and FRGR Holdings LLC, both of which are part of the First Republic LLC

ownership structure.

86.    Upon information and belief, Defendants used Safrin's name, without Safrin's

consent, within the State of New York.

87. Upon information and belief, Friedman/BIR also improperly used Safrin's name to mislead the New York-based attorneys responsible for the closing concerning the sale of the Property Portfolio into believing that Safrin was part of the transaction.

88. Safrin did not give either his oral or written consent to the use of his name in connection with any of the transactions alleged in the Complaint, and Defendants knew that no such consent had been obtained.

89. In short, Defendants misappropriated Safrin's identity and stellar reputation in the real estate industry in order to obtain the necessary financing from Citigroup as well as to entice Plaintiffs into making its $13 million investment.

90. Defendants engaged in this conduct in order to make a profit and develop business for the benefit of Defendants and/or others.

91. By reason of the foregoing, Defendants violated N.Y. Civil Rights Law §§ 50 and 51.

92. Defendants' conduct was so outrageous as to evince a high degree of moral turpitude and shows such wanton dishonesty as to imply criminal indifference to civil obligations.

93. By reason of the foregoing the Defendants are liable to Safrin for damages, including punitive damages and reasonable attorney's fees, sustained by reason of their use of Safrin's name, in an amount to be determined at trial.

## Count VI

**(Violation of California Common Law Right Of Privacy/ Commercial Misappropriation – Against All Defendants)**

94. Safrin repeats and realleges the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

16

95.    Defendants, operating out of their places of business within the State of New York, knowingly utilized Safrin's name on various transaction-related documents and transmitted these documents to Plaintiffs in California.  Defendants also used Safrin's name and identity in connection with their negotiations with Plaintiffs.

96.    Upon information and belief, Friedman, BIR and Stern used Safrin's name and identity without his oral or written authorization in order to intentionally cause Amusement and its counsel to believe that Safrin was part of the transaction.

97.    On information and belief, most of the negotiations with Plaintiffs occurred in telephone calls between New York and California (where Amusement is located), and via email that was transmitted between New York and California.

98.    In short, Defendants misappropriated Safrin's identity and stellar reputation in the real estate industry in order to entice Plaintiffs into making their $13 million investment, and Defendants engaged in this conduct in order to make a profit and develop business for the benefit of Defendants and/or for the benefit of other parties.

99.    Safrin did not provide Defendants with either his oral or written consent to use his name or identity in connection with any of the transactions alleged in the Complaint, and Defendants knew that no such consent had been obtained.

100.  Defendants' conduct was so outrageous as to evince a high degree of moral turpitude and shows such wanton dishonesty as to imply criminal indifference to civil obligations.

101.  By reason of the foregoing the Defendants are liable to Safrin for damages, including punitive damages and reasonable attorney's fees, sustained by reason of their use of Safrin's name, in an amount to be determined at trial.

## Count VII

### (Conspiracy to Violate N.Y. Civil Rights Law §§ 50, 51 – Against All Defendants)

102.   Safrin repeats and realleges the allegations contained in paragraphs 1 through 66 and 84 – 93 as if fully set forth herein.

103.   Upon information and belief, Defendants intentionally and knowingly agreed and conspired, in violation of N.Y. Civil Rights Law §§ 50, 51, to misappropriate Safrin's identity (i.e., his name and his stellar reputation in the real estate industry) in order to secure the requisite financing for the purchase of the Property Portfolio.  Defendants conspired and, in fact, engaged in this conduct for their own benefit, profit and unlawful gain.

104.   In furtherance of this conspiracy, Defendants knowingly and intentionally: (a) used Safrin's forged name on the purported Assignment Agreement, the Citigroup loan documents, the operating agreements of FRGR Holdings LLC and JSAE Colonial LLC and other transactional documents, including officer's certificates in connection with the transactions alleged in the Complaint; (b) used Safrin's name and identity in connection with the investment proposal presented to Plaintiffs and in their negotiations with Amusement; (c) drafted and emailed the LOI; (d) transmitted the forged Assignment Agreement to Plaintiffs; (e) improperly authorized the release of the funds in escrow; and (f) created a variety of LLCs that identify Safrin as a purported member, director or manager, including, but not limited to, JSAE Colonial LLC and FRGR Holdings LLC, both of which are part of the First Republic LLC ownership structure.

105.   Defendants' conduct was so outrageous as to evince a high degree of moral turpitude and shows such wanton dishonesty as to imply criminal indifference to civil obligations.

106.   By reason of the foregoing, the Defendants are liable to Safrin for damages, including punitive damages, in an amount to be determined at trial.

## <u>Count VIII</u>

**(Conspiracy to Violate Safrin's Right To Privacy Under California Common Law – Against All Defendants)**

107.  Safrin repeats and realleges the allegations contained in paragraphs 1 through 66 and 94-101 as if fully set forth herein.

108.  Upon information and belief, Defendants intentionally and knowingly agreed and conspired, in violation of Safrin's right to privacy under California law, to misappropriate and use Safrin's identity (i.e., his name, his stellar reputation in the real estate industry, and financial wherewithal) in order to secure the requisite financing and entice Plaintiffs to make a $13 million investment.  Defendants engaged in this conduct for their own benefit, profit and unlawful gain and the benefit, profit and unlawful gain of others.

109.  In furtherance of this conspiracy, Defendants knowingly and intentionally: (a) used Safrin's forged name on the purported Assignment Agreement, the Citigroup loan documents, the operating agreements of FRGR Holdings LLC and JSAE Colonial LLC, as well as, other transactional documents, including officer's certificates, in connection with the transactions alleged in the Complaint; (b) used Safrin's name and identity in connection with the investment proposal presented to Plaintiffs and in their negotiations with Plaintiffs; (c) drafted and e-mailed the LOI; (d) transmitted the forged Assignment Agreement to Plaintiffs; (e) improperly authorized the release of the funds in escrow; and (f) the creation of a variety of LLCs that identify Safrin as a purported member, director or manager, including, but not limited to, JSAE Colonial LLC and FRGR Holdings LLC, both of which are part of the First Republic LLC ownership structure.

110.  Defendants' conduct was so outrageous as to evince a high degree of moral turpitude and shows such wanton dishonesty as to imply criminal indifference to civil obligations.

19

111. By reason of the foregoing, the Defendants are liable to Safrin for damages, including punitive damages, in an amount to be determined at trial.

## JURY DEMAND

Safrin demands a trial by jury on all issues so triable.

WHEREFORE, Safrin demands judgment as follows:

     (a)    On Count 1, in the event that Safrin is found liable, for Safrin and against Defendants, for indemnity or contribution in an amount to be determined at trial, including reasonable attorney's fees;

     (b)    On Count 2, for Safrin and against Plaintiffs/Counterclaim Defendants and Defendants, declaring that: (i) no attorney-client or other principal-agency relationship existed between Safrin and Friedman/BIR in connection with the transactions alleged in the Complaint; (ii) Friedman/BIR had no authority, whether actual or apparent, to act on Safrin's behalf in connection with the transactions alleged in the Complaint; and (iii) Safrin did not ratify any of the representations or conduct allegedly made or undertaken on his behalf by Friedman/BIR in connection with the transactions alleged in the Complaint;

     (c)    On Count 3, in the event that Safrin is found to have had a principal-agent relationship with Friedman/BIR, for Safrin and against Friedman and BIR, for indemnity in an amount to be determined at trial, including reasonable attorney's fees;

     (d)    On Count 4, in the event that Safrin is found to have had a principal-agent relationship with Friedman/BIR, for Safrin and against Friedman and BIR,

20

for damages, including punitive damages and reasonable attorney's fees, in an amount to be determined at trial;

(e)    On Count 5, for Safrin and against Defendants, for damages, including punitive damages and reasonable attorney's fees, in an amount to be determined at trial;

(f)    On Count 6, for Safrin and against Defendants, for damages, including punitive damages and reasonable attorney's fees, in an amount to be determined at trial;

(g)    On Count 7, for Safrin and against Defendants, for damages, including punitive damages and reasonable attorney's fees, in an amount to be determined at trial;

(h)    On Count 8, for Safrin and against Defendants, for damages, including punitive damages and reasonable attorney's fees, in an amount to be determined at trial;

(i)    Awarding Safrin his costs and disbursements; and

(j)     Granting such other, further and different relief as the Court deems just

and proper.

Dated: New York, New York
        May 29, 2008

FLEMMING ZULACK WILLIAMSON
ZAUDERER LLP

By: _____
    Jonathan D. Lupkin (JL-0792)
    Jean Marie Hackett (JH-1784)

One Liberty Plaza
New York, New York  10006
Tel: (212) 412-9500
Fax: (212) 964-9200
Email: jlupkin@fzwz.com
        jhackett@fzwz.com

*Attorneys for Defendant/Third Party-
Crossclaim-Counterclaim-Plaintiff Joshua
Safrin*