UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------x

AMUSEMENT INDUSTRY, INC., dba WESTLAND   :
INDUSTRIES; PRATICAL FINANCE CO., INC.,     :
                                   :
                 Plaintiffs,       :  07 CV 11586 (LAK)(GWG)
        -against-                :  ECF Case
                                     :

MOSES STERN, aka MARK STERN, JOSHUA SAFRIN,   :
FIRST REPUBLIC GROUP REALTY, LLC,     :
EPHRAIM FRENKEL,                :
LAND TITLE ASSOCIATES ESCROW,       :
                                   :
            Defendants.      :

--------------------------------------------------------------------------x

JOSHUA SAFRIN,                  :
         Defendant/Third Party-Crossclaim-   :
         Counterclaim Plaintiff,        :
        -against-               :
                                   :

STEPHEN FRIEDMAN, STEVEN ALEVY, BUCHANAN   :
INGERSOLL & ROONEY, P.C., BANKERS CAPITAL   :
REALTY ADVISORS, LLC, and FIRST REPUBLIC   :
GROUP CORP.,                :
         Third Party Defendants,      :
                                   :
        -and-                 :
                                   :

MOSES STERN, aka MARK STERN, FIRST REPUBLIC   :
GROUP REALTY, LLC, EPHRAIM FRENKEL, and   :
LAND TITLE ASSOCIATES ESCROW,       :
              Defendants/Crossclaim Defendants,   :
                                   :
        -and-                 :
                                   :

AMUSEMENT INDUSTRY, INC. dba WESTLAND   :
INDUSTRIES, PRACTICAL FINANCE CO., INC.   :
              Plaintiffs/Counterclaim Defendants.   :

--------------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY
PLAINTIFFS' CALIFORNIA CO-COUNSEL SRAGOW & SRAGOW**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND TO THE MOTION ........................................................................................ 3

A.    First Republic's Contract to Acquire the Properties ............................................ 3

B.    Mr. Sragow's Pivotal Role in the Fraudulent Scheme to Wrest Control of the
       Properties from First Republic and Stern ............................................................. 4

C.    Allen Sragow's Crucial Role in the Negotiations With First Republic Concerning
       Proposed Financing for the Transaction ............................................................... 5

D.    Allen Sragow's Pivotal Role in the Dispute over the Release of the Escrowed
       Funds .................................................................................................................... 6

E.    Allen Sragow's Role in the Post Closing Refinancing Efforts ............................. 7

F.    Plaintiffs' Pleadings Confirm the Critical Role Played by Plaintiffs' California
       Counsel ................................................................................................................. 8

ARGUMENT ........................................................................................................................... 10

SRAGOW & SRAGOW SHOULD BE DISQUALIFIED UNDER THE "ADVOCATE-
       WITNESS" RULE ............................................................................................... 10

     I.    AN ATTORNEY WHO IS A NECESSARY WITNESS TO A CLAIM
                CANNOT REPRESENT A CLIENT IN THAT LITIGATION ......................... 10

     II.   ALLEN SRAGOW AND THE OTHER ATTORNEYS AT HIS FIRM
                ARE NECESSARY WITNESSES AND SHOULD BE DISQUALIFIED ......... 12

          A.    Allen Sragow and the Other Members of the Sragow & Sragow
                     Firm "Ought To Be Called As A Witness" On Behalf Of Their
                     Clients and, Therefore, Must Be Disqualified .......................................... 12

               1.    Sragow's and His Firm's Testimony Is Necessary to
                          Plaintiffs' Case .......................................................................... 13

               2.    No Exceptions to the Advocate-Witness Rule Apply Here .......... 14

          B.    Sragow "May Be Called As A Witness" On A Significant Issue
                     Other than On Plaintiff's Behalf and, Therefore, Should Be
                     Disqualified ............................................................................................. 15

CONCLUSION ......................................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Acme Analgesics, Ltd. v. Lemmon Co.*,
  602 F. Supp. 306 (S.D.N.Y. 1985) .......................................................................... 12, 14

*Amalgamated Servs. & Allied Indus. Joint Bd. v. Supreme Hand Laundry, Inc.*,
  No. 94 Civ. 2904 (MGC), 1996 WL 583351 (S.D.N.Y. Oct. 9, 1996).................. 12

*Blue Planet Software, Inc. v. Games Int'l, LLC*,
  331 F. Supp. 2d 273 (S.D.N.Y. 2004)..................................................................... 10

*Fulfree v. Manchester*,
  945 F. Supp. 768 (S.D.N.Y. 1996) ......................................................................12, 16, 17

*Gandler v. Nazarov*,
  No. 94 Civ. 2272 (CSH), 1994 WL 391665 (S.D.N.Y. Jul. 28, 1994).................. 12, 15

*Gleason v. Zocco*,
  941 F. Supp. 32 (S.D.N.Y. 1996) ........................................................................... 15

*Kubin v. Miller*,
  801 F. Supp. 1101 (S.D.N.Y. 1992)........................................................................ 12, 13

*Lamborn v. Dittmer*,
  873 F.2d 522 (2d Cir. 1989)................................................................................... 13

*MacArthur v. Bank of New York*,
  524 F. Supp. 1205 (S.D.N.Y. 1981)........................................................................11, 12, 13, 15

*Multi-Juice, S.A. v. Snapple Beverage Corp.*,
  No. 02 Civ. 4635 (RPP), 2003 WL 1961636 (S.D.N.Y. Apr. 25, 2003) ............... 11, 13

*S & S Hotel Ventures Ltd. P'ship v. S.H. Corp.*,
  69 N.Y.2d 437, 515 N.Y.S.2d 735 (1987) ............................................................. 13

*Stratavest Ltd. v. Rogers*,
  903 F. Supp. 663 (S.D.N.Y. 1995) ......................................................................... 16

*Tru-Brite Labs, Inc. v. Ashman*,
  54 A.D.2d 345, 388 N.Y.S.2d 279 (1st Dep't 1976) ............................................. 13

*Wickes v. Ward*,
  706 F. Supp. 290 (S.D.N.Y. 1989) ......................................................................11, 13, 14, 15

Page(s)

**STATUTES**

22 NYCRR § 1200.21 (DR 5-102) ............................................................ *passim*

MODEL CODE OF PROF'L RESPONSIBILITY DR 5-101(B) .................................. 10

MODEL CODE OF PROF'L RESPONSIBILITY EC 5-9 ........................................ 11

MODEL RULES OF PROF'L CONDUCT R. 3.7(a) .............................................. 11

Defendants Moses Stern ("Stern"), First Republic Group Realty, LLC ("First Republic"), Ephraim Frenkel ("Frenkel") and Land Title Associates Escrow ("Land Title") (collectively, "Movants") submit this memorandum of law in support of their motion to disqualify plaintiffs' California co-counsel, Allen P. Sragow and the other members of his law firm, Sragow & Sragow, because members of the Sragow firm are necessary witnesses and are thereby prohibited from representing the plaintiffs pursuant to Disciplinary Rule 5-102 of the New York Code of Professional Responsibility.

## PRELIMINARY STATEMENT

The transaction that is the subject of this action and a newly-filed action in New York Supreme Court against Allen Sragow and other defendants[1] involves the advance of $13 million by plaintiffs to First Republic in connection with First Republic's acquisition of eleven shopping centers in the Southeast region of the United States (the "Properties"). Movants and the plaintiffs in this action were engaged in negotiations through various representatives relating to First Republic's financing of its acquisition. There are essentially three central disputes between the parties in this action: (1) whether the parties entered into a binding agreement relating to the financing of the Properties; (2) whether the $13 million was improperly released from the escrow account that was used by defendants in connection with the acquisition of the Properties; and (3) whether the plaintiffs in this lawsuit were engaged in a fraudulent scheme, directed by Mr. Sragow and his father-in-law, Allen Alevy, out of Mr. Sragow's law

---

[1]      A copy of Stern and First Republic's state court complaint is attached as Exhibit A to the Declaration of Stephen R. Stern  ("Stern Declaration") dated June 11, 2008.  The allegations of the state court complaint are also pleaded in Defendants Stern and First Republic's Answer to and Cross-Claims Against Third Party Defendants Steven Alevy and Bankers Capital Realty Advisors LLC, filed herewith and also attached to the Stern Declaration as Exhibit D.

offices, acting in concert with Steven Alevy and Robert Friedman, to wrest control of the Properties from First Republic and Stern and place those Properties in the hands of plaintiffs.

Each of these three issues requires critical testimony by Mr. Allen Sragow and members of his law firm, Sragow & Sragow; thus, they should be disqualified from serving as co-counsel in this litigation.   Mr. Sragow was the principal negotiator and draftsman in connection with the various agreements that plaintiffs seek to enforce.   Documents recently produced by plaintiffs and other parties to the litigation establish the involvement of Mr. Sragow and members of his firm with respect to the pivotal issue of whether the parties entered into a binding agreement regarding the financing.   Copies of some of those documents are attached collectively as Exhibit B to the Stern Declaration.   Indeed, as shown below, Mr. Sragow's own emails establish that plaintiffs' claims that the parties entered into a binding agreement concerning the Properties are false, thereby indicating his truthful testimony would be adverse and prejudicial to his clients' interests.

Mr. Sragow also played a pivotal role in connection with the release of the escrowed funds.   While plaintiffs wrongly assert Defendants stole that money, it is Movants' contention that plaintiffs authorized the release of those funds.   The two persons who were in contact with the escrow agent and with each other at the time the funds were allegedly improperly released are Mr. Sragow and Steven Alevy.   At that time, it was Mr. Sragow who expressly stated plaintiffs would not enter into any agreement with Stern and First Republic unless all of their demands were met, which Stern and First Republic rejected.   As more fully set forth in Movants' state court complaint, although Steven Alevy authorized the release of the escrowed funds, on July 16, 2007, four days after the closing of the title to the Properties occurred, Mr. Sragow emailed the escrow agent and Stern's lawyer and stated that because all of

plaintiffs' demands were not met and plaintiffs had not received all the "agreements" they were demanding, plaintiffs did not agree to the release of the $13 million.

Finally, as more fully set forth in First Republic's and Stern's state court complaint, Mr. Sragow conspired with others and orchestrated a fraudulent scheme to wrest control of the Properties from First Republic and Stern. Once again, there are critical emails from Mr. Sragow which demonstrate his role in the scheme and his testimony will, therefore, be necessary not only to prove Stern and First Republic's version of the facts, but to establish the liability of Mr. Sragow and his clients and co-conspirators, Allen Alevy, Steven Alevy and Robert Friedman.

For these reasons, Mr. Sragow and his law firm should be disqualified.

## BACKGROUND TO THE MOTION

### A.    First Republic's Contract to Acquire the Properties

Movants' state court complaint alleges that, Effective as of April 20, 2007, First Republic Group Corp., pursuant to a written contract, as later amended, agreed to acquire eleven shopping centers in the Southeast region of the United States from Colonial Realty Limited Partnership ("Colonial") for a total purchase price of $129 million. (Stern Decl. Ex. A ¶ 12.) Under the terms of the contract, as amended, First Republic, the assignee, paid Colonial a nonrefundable $1 million deposit, with the balance of the purchase price due at the closing that was scheduled to occur no later than June 15, 2007. (*Id.*) In addition to paying Colonial the $129 million purchase price at the closing, First Republic was also obligated to pay certain closing costs and make certain escrow deposits. (*Id.* ¶ 15.)

At the same time that Stern and First Republic were negotiating to acquire the Properties, they were also working with a number of mortgage brokers, but not plaintiffs, to secure financing for the acquisition and related expenses. (*Id.* ¶ 16.) In early- to mid-May, First

Republic and Stern employed Bankers Capital Realty Advisors, LLC ("Bankers Capital") and its principals Steven Alevy and Robert Friedman (collectively, the "Bankers Capital Group") as one of their brokers to obtain financing for the Colonial transaction, including the additional financing needed to cover closing costs and required escrow deposits.  (*Id.* ¶ 17-19.)

**B.      Mr. Sragow's Pivotal Role in the Fraudulent Scheme
to Wrest Control of the Properties from First Republic and Stern**

At the request of Steven Alevy and Robert Friedman, Stern forwarded all of his confidential and proprietary information about the Properties, the Colonial transaction, and Stern's efforts to obtain financing for the transaction to Steven Alevy and Friedman.  (*Id.* ¶ 21.) However, unbeknownst to Stern, instead of using that information to secure financing for First Republic's purchase of the Colonial properties, the Banker's Capital Group conspired with Steven Alevy's father, Allen Alevy, and his brother-in-law, Allen Sragow, to sabotage First Republic's acquisition of the Properties so that an entity controlled by Allen Alevy could purchase the Properties.  (*Id.* ¶ 24.)

Taking direction from Allen Alevy and Allen Sragow, the Bankers Capital Group strung Stern along by causing him to believe that Steven Alevy and Robert Friedman were actively seeking to obtain financing for the acquisition of the Properties when, in fact, they were not seeking financing for First Republic, but were attempting to persuade potential financing sources not to loan money to First Republic.  (*Id.* ¶¶ 25-26.)

In mid-June 2007, after Steven Alevy and Robert Friedman were allegedly unable to obtain any financing for Stern and with the closing date for the Colonial transaction fast approaching, the Alevys, Mr. Sragow and Friedman stepped up their efforts to implement their plan to take over the Properties.  Steven Alevy called Stern and told him that he had "family" in "Long Beach, California," his father Allen Alevy and brother-in-law Allen Sragow, who had the

ability and were interested in investing in the Colonial transaction. (*Id.* ¶ 39.) As described above, without Stern's knowledge or permission and in breach of their fiduciary duties to Stern and First Republic, Steven Alevy and Robert Friedman had previously forwarded Stern's and First Republic's confidential and proprietary business and personal information about the Colonial transaction and his efforts to secure financing for the transaction to Allen Alevy and Allen Sragow. (*Id.*)

C.    **Allen Sragow's Crucial Role in the Negotiations With First Republic Concerning Proposed Financing for the Transaction**

As more fully set forth in First Republic's and Stern's state court complaint, still completely unaware of the efforts by the Alevys and Mr. Sragow to sabotage First Republic's acquisition of the Properties, Stern, on behalf of First Republic, agreed to consider any proposal made by Steven Alevy for "Long Beach" financing. (*Id.* ¶ 40.) To that end, Allen Alevy and Allen Sragow indirectly made various proposals to Stern. One of the central issues in the present lawsuit is whether the parties came to an agreement, and, if so, what the terms of that agreement were. It is First Republic's and Stern's position that there was no meeting of the minds and that the various agreements and conditions that Allen Alevy and Allen Sragow proposed were never agreed to by Stern and First Republic.

The primary person involved in the alleged agreements that are the subject of the present lawsuit on behalf of Allen Alevy and the Alevy family is Allen Alevy's son-in-law and plaintiffs' California attorney, Allen Sragow. Mr. Sragow and his law firm drafted various documents relating to the proposed financing including, *inter alia*, proposed partnership agreements between First Republic and Alevy entities, LLC agreements for Alevy entities to supply the financing, assignments of property interests, promissory notes and an escrow agreement. (*See* Stern Decl. Ex. B.)

During July 2007, when the parties were attempting to reach an agreement concerning financing, Mr. Sragow and Sragow's law firm communicated with First Republic and Stern and their attorney about the terms of those agreements and, in fact, stated and wrote that the parties did *not* have an agreement.  Sragow was the point person for plaintiffs in those negotiations.  *Id.*

**D.      Allen Sragow's Pivotal Role in the Dispute over the Release of the Escrowed Funds**

Moreover, the other central subject of this lawsuit concerns the release of $13 million that Allen Alevy and Allen Sragow had directed to be escrowed with Land Title. While plaintiffs wrongly assert that Defendants stole that money, it is Stern and First Republic's contention that plaintiffs authorized the release of those funds.  The two persons who were in contact with the escrow agent and with each other at the time the funds were allegedly improperly released are Allen Sragow and Steven Alevy.  On July 13, 2007, Steven Alevy gave written instructions to release the escrow.  (*Id.* ¶ 55.)  However, Steven Alevy was not aware that Allen Alevy and Allen Sragow were imposing further pre-conditions to a financing deal with Stern and First Republic, including making unreasonable and coercive demands that First Republic and Stern agree to an assignment of the Properties from First Republic to a new entity established by the plaintiffs.  (*Id.*)  Mr. Sragow, not realizing the funds had already been released to First Republic, stated that plaintiffs would not enter into the agreement with First Republic unless all of their demands were met.  (*See* Stern Decl. Ex. B.)

On July 16, 2007, Mr. Sragow emailed the escrow agent and Stern's lawyer and stated that because all of their demands were not met and they had not received all the agreements they were demanding, plaintiffs did not agree to the release of the $13 million.  (*Id.*) Mr. Sragow added that if the funds were released, they should be retrieved until all of plaintiffs' demands were met.  (*Id.*)

**E.**   **Allen Sragow's Role in the Post Closing Refinancing Efforts**

After First Republic closed with Colonial, First Republic and Stern once again engaged the Bankers Capital Group to assist them in obtaining financing and refinancing of the Properties so that the $13 million advanced to First Republic could be repaid.   (Stern Declaration, Ex. A ¶ 61.)   In late July 2007, Steven Alevy and Robert Friedman, taking instruction directly from Allen Alevy and Allen Sragow, demanded that Stern provide them with additional information, such as loan documents and closing statements for the primary loan from Citigroup to acquire the Properties, leases and rent rolls of the tenants at the Properties, and pictures of the Properties, in order for Bankers Capital to obtain financing and refinancing.  (*Id.* ¶ 62.)   In response, and relying upon the brokerage relationship with the Bankers Capital Group, First Republic provided Steven Alevy and Robert Friedman with additional sensitive, confidential and proprietary information about the Properties, First Republic and Stern.  (*Id.*)

However, all of the information Stern was providing to Steven Alevy and Robert Friedman was improperly being forwarded to Allen Sragow and Allen Alevy.   Indeed, on September 10, 2007, Robert Friedman forwarded a confidential email from Stern to Allen Alevy and Allen Sragow, which was cced to Steven Alevy, concerning the refinancing that the Bankers Capital Group was supposedly working on.  (Stern Decl. Ex. B.)  Mr. Sragow then suggested that Robert Friedman probe Stern for further information as to the timing of the refinancing ("Why not respond: 'Timeframe?  I thought you wanted to refinance out Alevy in 60 days?'"), which Robert Friedman did.  (*Id.*)

**F.    Plaintiffs' Pleadings Confirm the Critical
       Role Played by Plaintiffs' California Counsel**

Plaintiffs' own complaint confirms Mr. Sragow's and his firm's critical and pivotal role in this case. The complaint makes several allegations that rest on Mr. Sragow or his firm for proof. Thus, plaintiffs' Complaint, (*see* docket entry no. 1), alleges:

45. Also on about July 6, 2007, California counsel for Amusement wrote to [Stephen] Friedman stating that if the transaction between Amusement, Stern and Safrin had materially changed from the partnership agreement and LOI, then the wired $13 million should be returned. No funds were returned. . . .

51. Seeing that finalization of assignment of ownership documents was not moving as fast as expected, Amusement again instructed [Stephen] Friedman not to allow release of Amusement's $13 million from escrow. [Stephen] Friedman agreed. Amusement also directly instructed Land Escrow and Frenkel not to release Amusement's funds without written authorization from Sragow & Sragow. . . .

62. Also on July 13, 2007, Amusement's California counsel and Allen Alevy in California were asked by Frenkel and Land Escrow to provide written authorization for release of the $13 million escrowed funds, but authorization was refused for reasons previously disclosed. . . .

63. Also on July 13, 2007, Frenkel announced that Steven Alevy had verbally authorized the release and asked Amusement's California counsel for written authorization, who refused. In the afternoon, Steven Alevy wrote to Frenkel: "You are hereby authorized to release $13,000,000 from escrow. The interest earned should be returned to originator." Frenkel and Land Escrow knew that such purported authorization from Steven Alevy could not properly authorize release of Amusement's escrowed funds because they had been specifically told otherwise in writing by Amusement.

65. Amusement's California counsel wrote to Frenkel and Land Escrow on July 15, 2007 that when the proper documents are provided the written authorization to release would be provided, and that if on or before the July 13, 2007 the funds were released, Frenkel and Land Escrow should retrieve them. Frenkel and Land Escrow did not respond.

66. On July 16, 2007, Amusement's California counsel wrote to Frenkel, Land Escrow and [Stephen] Friedman and told them that the agreed upon terms and conditions among Stern, Safrin and First Republic LLC with Amusement were not fulfilled by the documents that were previously provided. Frenkel, Land Escrow, First Republic LLC, Stern, Safrin and [Stephen] Friedman did not refute or object to this assertion.

67. On July 19, 2007, Amusement's California counsel wrote to Frenkel and Land Escrow, asking them to wire the accrued interest back to Amusement. They did not do so.

Moreover, plaintiffs' amended Rule 26(a)(1) initial disclosure statement (Exhibit C) specifically identifies every member of Mr. Sragow's firm as individuals "likely to have knowledge of discoverable facts that they [plaintiffs] may use to support their claims and defenses . . . ." (*See* Stern Decl. Ex. C at 2-3):

Allen Sragow, c/o Sragow & Sragow, counsel for Plaintiffs – "Generally familiar with the transaction"

Michael Libraty, c/o Sragow & Sragow, counsel for Plaintiffs – "Generally familiar with the transaction"

Farida Baig, c/o Sragow & Sragow, counsel for Plaintiffs – "Communications with E. Frenkel"

Marilu Garcia, c/o Sragow & Sragow, counsel for Plaintiffs – "Knowledge of wiring of funds"

Thus, plaintiffs have advised the Court that their California counsel, Sragow & Sragow, have "knowledge of discoverable facts that they may use to support their claims and defenses," thereby injecting their testimony and credibility into the proceedings.

Accordingly, not only do Mr. Sragow and his firm have critical knowledge of the facts that are the subject of this lawsuit, but as discussed above, Mr. Sragow and his firm have knowledge of facts that are prejudicial to the interest of his clients. Sragow & Sragow must therefore be disqualified as counsel in this case.

# ARGUMENT

## SRAGOW & SRAGOW SHOULD BE
## DISQUALIFIED UNDER THE "ADVOCATE-WITNESS" RULE

**I.    AN ATTORNEY WHO IS A NECESSARY WITNESS TO A CLAIM CANNOT REPRESENT A CLIENT IN THAT LITIGATION**

In considering motions to disqualify attorneys, courts look to the New York Code of Professional Responsibility, the ABA Model Code of Professional Responsibility, and the ABA Model Rules of Professional Conduct.  *Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 275 (S.D.N.Y. 2004).  Those rules, although not binding, uniformly provide that attorneys are prohibited from advocating on behalf of a client when they are simultaneously a necessary witness on a disputed issue.  *Id.*

The advocate-witness rule in New York is codified in DR 5-102 of the New York Lawyer's Code of Professional Responsibility.  *See* 22 NYCRR § 1200.2 *et seq.*  Under DR 5-102(A), a lawyer is prohibited at the outset from accepting a representation, "if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client," subject to specified exceptions, not applicable here, which are discussed below.  22 NYCRR § 1200.21(A); *accord* MODEL CODE OF PROF'L RESPONSIBILITY DR 5-101(B) ("A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness . . . .").  Similarly, under DR 5-102(C), if a lawyer has accepted representation and then "learns or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client," the lawyer is prohibited from serving "as an advocate on issues of fact before the tribunal."  22 NYCRR § 1200.21(C).

In the case of a lawyer-witness who may be called by a party other than the client, lawyers are prohibited from accepting employment if "it is apparent that the testimony would or

might be prejudic[ial] to the client." 22 NYCRR § 1200.21(B). Similarly, if the lawyer is already representing the client, he must withdraw as "an advocate before the tribunal" if he "may be called as a witness on a significant issue other than on behalf of the client" and "it is apparent that the testimony is or may be prejudicial to the client." 22 NYCRR § 1200.21(D); *see also* MODEL RULES OF PROF'L CONDUCT R. 3.7(a) ("A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness . . . .").

The advocate-witness rule promotes "[s]trong policies" designed to protect "the interests of the plaintiff, the interests of the adverse party, and the reputation of the legal profession as a whole." *MacArthur v. Bank of New York*, 524 F. Supp. 1205, 1208 (S.D.N.Y. 1981). In particular:

> If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

MODEL CODE OF PROF'L RESPONSIBILITY EC 5-9.

Applying these standards, courts routinely disqualify attorneys who fall under the ambit of the advocate-witness rule. For example, in *Wickes v. Ward,* 706 F. Supp. 290, 292 (S.D.N.Y. 1989), the court disqualified a plaintiff's attorney in a Title VII action because he had "information crucial to [the] plaintiff's case" and the case rested "substantially, if not entirely" on the attorney's testimony. More recently, in *Multi-Juice, S.A. v. Snapple Beverage Corp.*, No. 02 Civ. 4635 (RPP), 2003 WL 1961636, at *6-7 (S.D.N.Y. Apr. 25, 2003), the court disqualified an attorney who "ought to be called as a witness" because he was often the plaintiff's sole

representative at meetings and conversations related to the underlying agreement which formed the basis for the action. *Accord Fulfree v. Manchester*, 945 F. Supp. 768, 770-72 (S.D.N.Y. 1996) (disqualifying attorney under DR 5-102(B) because he was a necessary witness and likely to be prejudicial to his client); *Amalgamated Servs. & Allied Indus. Joint Bd. v. Supreme Hand Laundry, Inc.*, No. 94 Civ. 2904 (MGC), 1996 WL 583351, at *2-6 (S.D.N.Y. Oct. 9, 1996) (disqualifying attorney as a necessary witness despite the court applying "fairly strict scrutiny"); *Gandler v. Nazarov*, No. 94 Civ. 2272 (CSH), 1994 WL 391665, at *2-3 (S.D.N.Y. Jul. 28, 1994) (attorney disqualified as a necessary witness because only he could testify to pertinent conversations related to the underlying contract in an action for breach of that contract); *Kubin v. Miller*, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992) (attorney disqualified because he had unique knowledge which was highly relevant); *Acme Analgesics, Ltd. v. Lemmon Co.*, 602 F. Supp. 306 (S.D.N.Y. 1985) (attorney disqualified as "a material, if not the key, witness" in contract dispute); *MacArthur*, 524 F. Supp. at 1208 (attorney "ought to testify" because of his intimate knowledge of the dispute at issue).

II.    **ALLEN SRAGOW AND THE OTHER ATTORNEYS AT HIS FIRM ARE NECESSARY WITNESSES AND SHOULD BE DISQUALIFIED**

A.    **Allen Sragow and the Other Members of the Sragow & Sragow Firm "Ought To Be Called As A Witness" On Behalf Of Their Clients and, Therefore, Must Be Disqualified**

Plaintiffs cannot prove their central allegations without the testimony of Mr. Sragow and other members of his law firm, and he (and his firm), therefore, should be disqualified as plaintiffs' co-counsel. The circumstances here are even more in favor of disqualification than the test or standard under DR 5-102(A) and (C), which "is not whether the attorney will be called as a witness, or whether the plaintiff presently plans to call the attorney, but whether the attorney 'ought' to be called." *Wickes*, 706 F. Supp. at 292 (citations omitted).

"If an attorney 'ought' to be called, then the mandatory nature of the rule requires the attorney's disqualification." *Id.* An attorney "ought to be called as a witness" under DR 5-102(A) & (C) when "the attorney's testimony could be significantly useful to his client," *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989) (citing *MacArthur*, 524 F. Supp. at 1208), and "'when it is likely that the testimony to be given by a witness is necessary.'" *Multi-Juice*, 2003 WL 1961636 at *7 (quoting *S & S Hotel Ventures Ltd. P'ship v. S.H. Corp.*, 69 N.Y.2d 437, 446, 515 N.Y.S.2d 735, 739 (1987)).

Courts have examined a number of factors to determine what testimony is useful or necessary, namely "'the significance of the matters, weight of the testimony, and availability of other evidence.'" *Kubin*, 801 F. Supp. at 1113 (quoting *S & S Hotel Ventures*, 69 N.Y.2d at 446, 515 N.Y.S.2d at 739); *Multi-Juice*, 2003 WL 1961636 at *7. When there is a question of whether a lawyer may represent and testify for a client, "doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate." *MacArthur*, 524 F. Supp. at 1209; *Wickes*, 706 F. Supp. at 292; *Tru-Brite Labs, Inc. v. Ashman*, 54 A.D.2d 345, 347, 388 N.Y.S.2d 279, 280 (1st Dep't 1976). Here, there is no doubt that Mr. Sragow's testimony plainly is necessary to prove his clients' case – the entitlement to monies under a certain alleged promissory note, "contracts" alleged to exist as pled in the Complaint, and the alleged lack of authorization to release the "escrowed" funds.

## 1.    Sragow's and His Firm's Testimony Is Necessary to Plaintiffs' Case

Central to plaintiffs' claims are the allegations that the parties entered into a binding agreement concerning the Properties. Mr. Sragow and the members of his firm were the principle drafters and negotiators of the alleged agreements on behalf of the plaintiffs. Therefore, they are the central witnesses in attempting to establish plaintiffs' claims.

Similarly, Mr. Sragow ought to be called as a witness with respect to plaintiffs' claim that defendants stole $13 million that was escrowed with Land Title. Mr. Sragow was one of the two representatives of the plaintiffs who were in contact with the escrow agent at the time, and he was the only one who allegedly told the escrow agent not to release the funds that had been escrowed. (*See* Stern Decl. Ex. B.) Only Mr. Sragow can testify about the instructions that he gave the escrow agent.

Thus, Mr. Sragow is "a material, if not the key" witness on these issues and he should be disqualified. *Acme Analgesics*, 602 F. Supp. at 306. Plaintiffs' case rests "substantially, if not entirely" on Mr. Sragow's testimony. *Wickes*, 706 F. Supp. at 292. Accordingly, Mr. Sragow should be disqualified because he ought to be called as a witness.

### 2.    No Exceptions to the Advocate-Witness Rule Apply Here

DR 5-102(A) enumerates four exceptions to the rule in cases where a lawyer "ought to be called" on behalf of the client: (1) when the "testimony will relate solely to an uncontested issue;" (2) when the "testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;" (3) when the "testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer;" and (4) when disqualification of the attorney "would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case." 22 NYCRR § 1200.21(A)(1-4). None of these exceptions applies in the present action.

Issues concerning whether the parties entered into a binding agreement and authorization to release the escrow deposit and the testimony that Mr. Sragow would offer on these issues cannot be considered "uncontested" or "a matter of formality" under DR 5-102(A)(1) and (2). Nor does the issue relate to the value of legal services under DR 5-102(A)(3). With respect to the final exception under DR 5-102(A)(4), there is nothing so distinctive about

Mr. Sragow's value as counsel in this case that would work a substantial hardship on the plaintiffs, particularly since he and his firm are functioning as co-counsel to the Sills Cummis firm.

The "substantial hardship" exception "must be narrowly construed" by courts. *Wickes*, 706 F. Supp. at 293; *MacArthur*, 524 F. Supp. at 1210. In fact, "[h]ardship alone, however substantial, is insufficient to permit continued representation." *MacArthur*, 524 F. Supp. at 1210. "Accordingly, the prejudice to plaintiff of having to change counsel at this stage of the proceeding – and the 'tactical advantage' to the defendant – are insignificant." *Gleason v. Zocco*, 941 F. Supp. 32, 36 (S.D.N.Y. 1996).

Furthermore, there is nothing to suggest, given the claims in this case, that Sills Cummis or a different co-counsel firm would not be able to evaluate and, if appropriate, advocate for plaintiffs' claims in a competent and professional manner. *Wickes*, 706 F. Supp. at 293 (disqualified attorney did not "provide[] any distinctive value" to the case); *Gandler*, 1994 WL 391665 at *3 (finding that a breach of contract issue was "not so complex a matter that effective substitute counsel cannot be found"). While there might be a minimal delay and added expense to the plaintiffs, those are not substantial hardships. Courts have stated that "if the expense and delay routinely incident to disqualification satisfied the substantial-hardship exception, that exception would soon swallow the rule." *MacArthur*, 524 F. Supp. at 1210.

Accordingly, plaintiffs can claim no exception to the advocate-witness rule under which Mr. Sragow or any other attorney from the Sragow firm could testify and continue to represent plaintiffs.

   **B.    Sragow "May Be Called As A Witness" On A Significant Issue Other than On Plaintiff's Behalf and, Therefore, Should Be Disqualified**

As set forth above, Mr. Sragow should be disqualified because he "ought to be called as a witness on a significant issue" on behalf of his client under DR 5-102(A) & (C).  But even if, contrary to fact, Mr. Sragow were not a necessary witness on behalf of his client, he should be disqualified pursuant to DR 5-102(B) and (D) because he "may" be called by the defense, his testimony is "necessary, and . . . this testimony is substantially likely to be prejudicial" to his client.  *Stratavest Ltd. v. Rogers*, 903 F. Supp. 663, 667 (S.D.N.Y. 1995).  The moving party has the burden of demonstrating how and as to what issues in the case the prejudice may occur.  *Fulfree*, 945 F. Supp. at 770.

The analysis of whether a witness is "necessary" is the same as it is under DR 5-102(A) & (C).  *Stratavest*, 903 F. Supp. at 667 (under DR 5-102(B) a "finding of necessity takes into account such factors as the significance of the matters, the weight of the testimony, and the availability of other evidence").

As demonstrated above, Mr. Sragow is plainly a necessary witness and, if he were not called by plaintiffs, it is likely he will be called by defendants as a number of his emails clearly establish that plaintiffs never believed that they had a binding agreement with First Republic and Stern.  (*See* Stern Decl. Ex. B.)  It is only after the fact and in connection with this litigation that plaintiffs are claiming that the parties entered into binding agreements concerning the Properties.  In addition, Mr. Sragow would likely be called as a witness to establish First Republic's and Stern's claim that Allen Alevy, Mr. Sragow and the Bankers Capital Group were engaged in a fraudulent scheme to gain control of the Properties for the Alevy family and related affiliates.  As demonstrated by Mr. Sragow's September 10, 2007 email, Mr. Sragow directed Robert Friedman to extract information from Stern so that plaintiffs could obtain leverage in connection with their pursuit of the Properties.  (*See id.*)  Moreover, as described above,

Mr. Sragow's emails concerning whether plaintiffs authorized the release of the escrowed funds is flatly contradicted by relevant emails from his own client, Steven Alevy, creating another conflict between Mr. Sragow's testimony and the interest of his client.

The likelihood of prejudice to the plaintiffs would be substantial should Mr. Sragow continue as their counsel. His testimony about the parties' purported agreement concerning the Properties and the instructions relating to the escrowed funds relate to core issues. In light of the disputes concerning the alleged agreements and the release of the escrow, Mr. Sragow's credibility would be placed squarely at issue throughout a trial. Mr. Sragow's "success or lack thereof as a witness may affect his success as a lawyer and vice versa" leading to prejudice against his client. *Fulfree*, 945 F. Supp. at 772 (disqualifying attorney under DR 5-102(B) because the attorney was a material witness to core issues and his lack of success as a witness could prejudice his client).

## CONCLUSION

For the reasons set forth above, the Court should grant the motion to disqualify Sragow & Sragow as co-counsel for plaintiffs.

Dated:    New York, New York
          June 11, 2008


                              HOFFINGER STERN & ROSS, LLP


                              /s/ Stephen R. Stern_____
                              By:   Stephen R. Stern (SS-5665)
                                    Mark W. Geisler (MG-7261)
                              150 East 58th Street, 19th Floor
                              New York, New York 10155
                              (212) 421-4000

                              *Attorneys for Defendants Moses Stern, aka Mark
                              Stern, First Republic Group Realty, LLC, Ephraim
                              Frenkel and Land Title Associates Escrow*


                              KAYE SCHOLER LLP
                              Arthur Brown (AB-0627)
                              Michael Lynn (ML-6052)
                              Efrem Schwalb (ES-5288)
                              425 Park Avenue
                              New York, New York 10022
                              (212) 836-8000

                              *Attorneys for Defendants Moses Stern, aka Mark
                              Stern and First Republic Group Realty, LLC*