**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMUSEMENT INDUSTRY, INC., dba )
WESTLAND INDUSTRIES, and )
PRACTICAL FINANCE CO., INC., )     CASE NO. 07 CV 11586 (LAK) (GWG)
                                                 )
                Plaintiffs, )
                                                 )
v. )
                                                 )
MOSES STERN, aka MARK STERN; )
JOSHUA SAFRIN, FIRST REPUBLIC )
GROUP REALTY LLC, EPHRAIM )
FRENKEL, and LAND TITLE ASSOCIATES )
ESCROW, )
                                                 )
                Defendants. )
_____ )

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISQUALIFY THE SRAGOW FIRM**

---

                                               **SILLS CUMMIS & GROSS P.C.**
                                               **One Rockefeller Plaza**
                                               **New York, NY 10020**
                                               (212) 643-7000
                                               Attorneys for Plaintiffs
                                               Amusement Industry, Inc. dba Westland
                                               Industries and Practical Finance Co., Inc.
                                               and Third Party Defendants Steven Alevy
                                               and Bankers Capital

TABLE OF CONTENTS

Page

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ............................................................................................................................... 3

    A.    Discovery to Date Has Confirmed Plaintiffs' Claims............................................ 3

    B.    The Timing of Defendants' Motion is Suspect, As Defendants Always
        Have Known of the Sragow Firm's Involvement in the Transactions at
        Issue. ....................................................................................................................... 5

    C.    Defendants Refused Plaintiffs' Offer to Stipulate that the Sragow Firm
        Would Not Act as Trial Counsel in the Action. ...................................................... 6

    D.    Defendants' Motion Is Yet Another Tactical Effort by Defendants to
        Avoid the Merits and to Increase Plaintiffs' Litigation Costs. .............................. 6

ARGUMENT ..................................................................................................................... 8

    A.    Defendants Have Not Carried Their Heavy Burden of Demonstrating that
        Mr. Sragow's Testimony Is Necessary to Plaintiffs' Claims................................ 10

    B.    Defendants' Have Not Established that Mr. Sragow's Testimony Would
        Be Prejudicial to Plaintiffs. .................................................................................. 14

    C.    The Sragow Firm Should Be Permitted To Remain As Counsel During
        Pretrial Discovery Proceedings............................................................................. 17

CONCLUSION................................................................................................................. 20

# TABLE OF AUTHORITIES

Page

**CASES**

Conigliaro v. Horace Mann School,
No. 95 Civ. 3555, 1997 U.S. Dist. LEXIS 5169 (S.D.N.Y. April 14, 1997)................8, 18, 20

Lyman v. Albany,
No. 06-CV-1109, 2007 U.S. Dist. LEXIS 10359 (N.D.N.Y. Feb. 12, 2007) .................. Passim

Paramount Comm'ns Inc. v. Simon & Schuster Inc.,
858 F. Supp. 391 (S.D.N.Y. 1994) .......................................................................................15

Ragdoll Productions (Uk) Ltd. v. Wal-Mart Stores, Inc.,
No. 99 CIV. 2101, 1999 U.S. Dist. LEXIS 14828 (S.D.N.Y. Sept. 24, 1999)........ 8, 15, 18-19

Ramey v. Int'l Assoc. of Machinists and Aerospace Workers,
378 F.2d 269 (2d Cir. 2004)......................................................................................9

Reitman Co. v. IRB-Brasil Resseguros S.A.,
No. 01 Civ. 0265, 2001 U.S.Dist. LEXIS 16073 (S.D.N.Y. September 25, 2001) ...........10, 14

Rosefield v. Orentreich,
No. 98 Civ. 2721, 1998 U.S. Dist. LEXIS 13934 (S.D.N.Y Sept. 2, 1998) .................... Passim

U.S. v. Tate & Lyle North American Sugars, Inc.,
184 F. Supp. 2d 344 (S.D.N.Y. 2002).................................................................................12

Versace, Inc. v. Versace S.P.A.,
160 F. Supp. 2d 657 (S.D.N.Y. 2001).......................................................................... Passim

**OTHER AUTHORITIES**

22 N.Y.C.R.R. § 1200.21 (2008) (DR 5-102).................................................................. Passim

## PRELIMINARY STATEMENT

Defendants' suspiciously timed motion to disqualify the Sragow firm from representing plaintiffs in the Action – defendants do not seek to disqualify the Sragow firm from representing third party defendants Bankers Capital and Steven Alevy – has no merit. As confirmed by the very documents upon which they rely, defendants have known about the Sragow firm's involvement in the transactions at issue herein since they occurred a year ago. Notwithstanding, defendants (i) did not identify in their initial disclosures anyone from the Sragow firm as a potential witness; and (ii) have not objected to the Sragow firm's acting as pretrial counsel for the past seven months. Strangely, defendants now claim that Mr. Sragow is a critical witness on both plaintiffs' and defendants' claims.

The law is plain that a party moving for disqualification – a motion which is universally disfavored by Second Circuit courts because of its routine use for tactical purposes – bears a heavy burden of demonstrating that the attorney's testimony is (i) "necessary" to plaintiffs' claims; or (ii) "necessary" to defendants' claims and substantially likely to be prejudicial to plaintiffs. Defendants have not carried their heavy burden. First, defendants have not established that Mr. Sragow is a necessary witness because, inter alia, (i) he is only one of many witnesses with knowledge of the transactions (which defendants admit); (ii) the undisputed documents establish defendants' wrongful misappropriation of plaintiffs' $13 million (which defendants ignore); and (iii) some or all of plaintiffs' claims – e.g., on the promissory notes executed by Stern – may be resolved on summary judgment (thereby obviating the need for trial testimony). Second, defendants also have not shown that Mr. Sragow's testimony would be prejudicial to plaintiffs because (i) defendants' contentions are based on sheer speculation (which is legally insufficient to justify disqualification); and (ii) in any case, the documents submitted by defendants plainly belie this self-serving assertion (which defendants again ignore).

1

Moreover, the law is plain that disqualification motions should be denied where, as here, they are premature. Defendants have not yet filed answers to plaintiffs' complaint. The parties currently are conducting document discovery, and depositions will not begin until approximately September 2008. The parties undoubtedly will file dispositive motions, which may resolve, or least narrow, the factual issues at trial. In short, there is no way to tell at this stage which factual issues, if any, will be in dispute at trial. In other words, defendants' claim that Mr. Sragow's testimony is necessary, let alone necessary and prejudicial, is sheer speculation.

In any case, plaintiffs never intended for the Sragow firm to be trial counsel. Accordingly, and in the interest of avoiding unnecessary motion practice, plaintiffs offered to stipulate that the Sragow firm would not act as trial counsel. At the time, plaintiffs confirmed that the Sragow firm would continue to be counsel during discovery proceedings, as it has done since the Action started. Without any meaningful explanation, defendants refused plaintiffs' proposal. Defendants did confirm, however, that they were not seeking to bar the Sragow firm from consulting or working with Sills Cummis during the discovery process. The "great weight of authority" in the Second Circuit confirms that, in situations such as this, allowing counsel who may be a witness at trial to continue as pretrial counsel is appropriate.

At bottom, the only real issue before this Court is whether the Sragow firm may continue as pretrial counsel for plaintiffs in the Action. Defendants' refusal to accept plaintiffs' offer to stipulate that the Sragow firm would not act as trial counsel, along with the suspicious timing of defendants' motion and other factors, suggest that defendants' motion – like most disqualification motions – is yet another attempt by defendants to derail or delay the reaching of the merits in the Action. Whatever defendants' motivation, their motion should be denied.

## FACTS[1]

### A.    Discovery to Date Has Confirmed Plaintiffs' Claims.

Plaintiffs' allegations concerning the underlying facts in the Action are straightforward: defendants stole plaintiffs' $13 million out of escrow.  Specifically, on June 29, 2007, Amusement contributed $13 million to defendants' purchase of a significant portfolio of shopping centers (the "Portfolio") from an entity known as Colonial Real Estate by wiring that amount to an escrow controlled by defendants Ephraim Frenkel and Land Title Associates (together, the "Frenkel defendants") at North Fork Bank, now known as Capital One ("Capital One").  (Compl. ¶¶ 13, 14, 36.)  At the time Amusement wired the funds, the parties had executed a letter of intent stating that Amusement would provide the money in exchange for a 50% equity and voting interest in the Portfolio and a 12% annual preferred return on the amount provided.  (Id. ¶ 34(d), (e), 35, Ex. 2.)  The parties also agreed (i) to work in good faith to finalize appropriate agreements within 7 days, and (ii) that until those agreements were finalized, Amusement would own 100% of the equity and voting interests in the Portfolio. (Id. ¶ 36, Ex. 2.)  Further, the parties contemplated that defendants would "take out" – i.e., refinance – Amusement within 60 days.  (Id. ¶ 34(d)(e).)

Discovery to date has confirmed that defendants appropriated plaintiffs' funds without authorization from or notice to plaintiffs, four days after the money was received in the escrow account.  Specifically, documents produced by Capital One confirm that (i) on July 3, 2008, Amusement's $13 million was transferred from the escrow account to which Amusement wired the funds to an  account held in the name of First Republic Group Corp. (an entity apparently owned by at least some of the Stern defendants); and (ii) on July 12, 2007 – one day before

---

[1]    Plaintiffs present here an abbreviated factual summary for the Court's convenience. Plaintiffs respectfully refer the Court to plaintiffs' complaint for a more detailed description of (i) the facts and circumstances underlying this action; and (ii) plaintiffs' legal claims.

3

receiving what defendants contend was a purported authorization from Steven Alevy to release the escrow funds (defendants knew Steven Alevy had no authority to release the funds) – Amusement's funds were disbursed to a variety of different entities.[2]  (Certification of Marc D. Youngelson, Esq., executed on July 11, 2008 ("Youngelson Cert."), Ex. A.)

Throughout the period between the receipt of the funds in the escrow and the closing with the seller of the Portfolio, defendants continued to negotiate the terms of Amusement's investment with plaintiffs, who believed their money was still held in escrow.  (See, e.g., Compl. ¶¶ 47-49.)  Although the parties did not execute any further documents, defendants sent plaintiffs two promissory notes and some other documents as "collateral" when defendants used the proceeds of the escrow for their own unexplained purposes.  (Youngelson Cert., Ex. A.)  To add insult to injury, defendants now contest the validity of the "collateral" documents.  Although defendants now contend that they were tricked into accepting Amusement's money – bizarre as that may seem – they have not returned Amusement's money since they took it without authorization nearly a year ago.

The details concerning the parties' communications and the underlying negotiation of the transaction at issue are undeniably complex.  Certainly, the parties contemplated a variety of different structures for their transaction, and considered a variety of ways to document their agreement.  The parties plainly disagree as to what their ultimate agreement was.  Discovery undoubtedly will clarify these issues.  At the end of the day, however, the plain fact is that defendants have $13 million of plaintiffs' money, and control of the Portfolio.  Plaintiffs, for their part, have nothing but this lawsuit to show for their money.

---

[2]     Discovery to date also shows that, contrary to what Amusement was led to believe, the escrow controlled by the Frenkel defendants was not even the escrow the Stern defendants were using to coordinate the purchase of the Portfolio – that function was performed by another entity, Fidelity.  From the beginning, the Stern defendants and their agents misled Amusement.

**B.     The Timing of Defendants' Motion is Suspect, As Defendants Always Have Known
of the Sragow Firm's Involvement in the Transactions at Issue.**

Plaintiffs always have acknowledged that attorneys at the Sragow firm have knowledge

of, and were involved in, the transactions at issue in the Action.  In their initial disclosures,

plaintiffs identified Mr. Sragow and his employees as potential witnesses for precisely this

reason.  (Youngelson Cert., Ex. B.)  Plaintiffs' initial disclosures also identified Hoffinger Stern

& Ross, counsel to the Stern and Frenkel defendants, as attorneys at that firm also were involved

in the events underlying the transaction.  (Id.)

In a transparent effort to support the timing of their motion, defendants disingenuously

contend that documents recently produced by plaintiffs and others "establish the involvement of

Mr. Sragow and members of his firm with respect to the pivotal issue of whether the parties

entered into a binding agreement."  (Defendants' Brief ("Def. Br.") at 2.)  The very documents

submitted by defendants – some of which they produced – belie this contention.  In fact, all of

the documents relied upon by defendants were (i) to or from defendants' counsel at the time

(third party defendant Stephen Friedman of Buchanan Ingersoll); or (ii) directed to the Frenkel

defendants.  (Stern Decl. Ex. B.)  Defendants have known of the Sragow firm's involvement in

the underlying transactions since they occurred more than a year ago.

Unlike plaintiffs, however, defendants did not identify Mr. Sragow, or anyone from his

firm, as a potential witness in their initial disclosures.  (Youngelson Cert., Exs. C and D.)  In

fact, plaintiffs were not aware – until this motion – that defendants intended to call Mr. Sragow

on their behalf.  Further, notwithstanding their knowledge of his involvement, defendants never –

again, until this motion – objected to Mr. Sragow's participation in pretrial discovery, which has

been ongoing for the past seven months.  Defendants apparently decided that Mr. Sragow was a

"critical" witness only so they could seek his disqualification.

C.    **Defendants Refused Plaintiffs' Offer to Stipulate that the Sragow Firm Would Not Act as Trial Counsel in the Action.**

While they do not believe that the Sragow firm should be disqualified, particularly at this stage of the Action, plaintiffs never intended for Mr. Sragow or his firm to be trial counsel. Accordingly, and in the interest of avoiding unnecessary motion practice, plaintiffs offered to stipulate that the Sragow firm would not serve as trial counsel. (Youngelson Cert., Ex. E ("plaintiffs are willing to stipulate that the Sragow firm will not serve as an advocate on issues of fact before the tribunal at the trial of the Action").) Plaintiffs also confirmed that the Sragow firm would continue to represent plaintiffs in pretrial proceedings, as it has done for the past seven months. (Id.) Consistent with their prior conduct, defendants did not object to Mr. Sragow's continuing to work with plaintiffs and Sills Cummis to prepare this case for trial. (Id.)

Surprisingly, defendants refused plaintiffs' proposal. (Youngelson Cert., Ex. F.) In so doing, defendants set forth an even more surprising new position, one not advanced in discussions with counsel or specified in their moving papers – i.e., that the Sragow firm should be disqualified "for all purposes – both at trial and in pre-trial proceedings." (Id.) Defendants did not explain precisely what they meant by this position, though they did concede that they are not seeking to bar the Sragow firm from consulting and working with plaintiffs' co-counsel, Sills Cummis, on pretrial preparations. (Id. ("Whether or not [sic] the Sragow firm could or would be permitted to consult or work with your firm after it is disqualified is besides the point").)

D.    **Defendants' Motion Is Yet Another Tactical Effort by Defendants to Avoid the Merits and to Increase Plaintiffs' Litigation Costs.**

To date, defendants have refused to explain what happened to Amusement's funds and have failed to honor their agreements with plaintiffs. In fact, defendants have done everything possible to avoid addressing the merits of plaintiffs' claims. For example, defendants engaged in evasive and obstructive tactics to avoid their discovery obligations, which resulted in Judge

6

Kaplan's May 1, 2008 Order granting plaintiffs' motion to compel. (Docket Nos. 59 and 64.)
Then, on June 11 – six months into the Action – the Stern defendants filed cross claims against
Bankers Capital, in which they assert that (i) Bankers Capital took part in a fraudulent scheme to
wrest control of the Portfolio from defendants (even though the Stern defendants undeniably
control the Portfolio and the entities that own it); and (ii) plaintiffs' efforts to get relief from
defendants wrongful conduct somehow has damaged the Stern defendants. As noted, however,
defendants have both plaintiffs' $13 million <u>and</u> control of the Portfolio, while plaintiffs have
<u>nothing</u> to show for their money (except this lawsuit).[3]

Defendants now further seek to delay this Action and to avoid the merits by filing the
present motion to disqualify the Sragow firm. The suspect timing of defendants' motion, along
with defendants' inexplicable rejection of plaintiffs' offer to stipulate that, the Sragow firm
would not be trial counsel in the Action, confirms defendants' dilatory intent. For the reasons set
forth below, defendants' motion should be denied.[4]

---

[3]    On June 11, 2008, the Stern defendants also commenced an action in New York State
Court (the "New York Action") against Mr. Sragow, Allen Alevy (the principal of Amusement),
Robert Friedman (a Bankers Capital employee), and Safrin's son-in-law, Avery Egert ("Egert")
(collectively, the "New York Action defendants"), in which they assert that the New York
Action defendants took part in a fraudulent scheme to wrest control of the Portfolio from the
Stern defendants (even though the Stern defendants undeniably control the Portfolio and the
entities that own it). These claims, which are identical to defendants' claims against Bankers
Capital in this Action, could have been asserted here against the New York Action defendants
pursuant to this Court's supplemental jurisdiction. Instead, consistent with their litigation tactics
to date, the Stern defendants commenced the duplicative New York Action apparently further to
delay this Action and to increase plaintiffs' litigation costs.

[4]    Plaintiffs reserve the right to seek to disqualify Hoffinger Stern & Ross, should discovery
confirm that attorneys from that firm likely will be trial witnesses for plaintiffs or defendants.

**ARGUMENT**

Courts in the Second Circuit view motions to disqualify with "disfavor," and subject them to "strict scrutiny," as such motions often are "tactical" in nature. Versace, Inc. v. Versace S.P.A., 160 F. Supp. 2d 657, 663 (S.D.N.Y. 2001); Ragdoll Productions (Uk) Ltd. v. Wal-Mart Stores, Inc., No. 99 CIV. 2101, 1999 U.S. Dist. LEXIS 14828, at *2-3 (S.D.N.Y. Sept. 24, 1999) ("Motions to disqualify are subject to strict scrutiny because of their potential to be used for tactical purposes"). Thus, the moving party "bears a heavy burden of proof to show that disqualification is necessary." Versace, 160 F. Supp. 2d at 663; Lyman v. Albany, No. 06-CV-1109, 2007 U.S. Dist. LEXIS 10359, at *6 (N.D.N.Y. Feb. 12, 2007) ("The party seeking disqualification, therefore, bears a heavy burden before an attorney will be removed from a case") (citing Evans v. Artek Sys. Corp., 715 F.2d 788, 794 (2d Cir. 1983)). "Mere speculation will not suffice." Versace, 160 F. Supp. 2d at 663 (quoting Russo v. Friedman, No. 91 Civ. 6913, 1992 U.S. Dist LEXIS 11418, at *23 (S.D.N.Y. July 31, 1992); Conigliaro v. Horace Mann School, No. 95 Civ. 3555, 1997 U.S. Dist. LEXIS 5169, at *10 (S.D.N.Y. April 14, 1997) ("the party seeking disqualification bears a heavy burden which cannot be met with mere speculation") (quotation omitted). Motions to disqualify are subject to even stricter scrutiny where, as here, the movant asserts that the attorney may be called as a witness other than on behalf of his client. Versace, 160 F. Supp. 2d at 664 (such motions are "subject to particularly strict scrutiny").

The policy rationale underlying the Second Circuit's disfavor of disqualification motions is two-fold. First, such motions encroach on a party's right to choose its own counsel. Versace, 160 F. Supp. 2d at 662-63 ("Disqualification, however, is a drastic measure that is viewed with disfavor because it impinges on a party's right to employ the counsel of its choice") (quotation omitted); Lyman, 2007 U.S. Dist. LEXIS 10359, at *6 ("Courts recognize the importance of a

8

litigant being represented by counsel of his or her own choosing"). Second, as noted, motions to disqualify frequently are brought for tactical purposes that have nothing to do with the merits. Versace, 160 F. Supp. 2d at 663 (noting the potential of such motions "to be used for tactical purposes or to 'stall and derail the proceedings'") (citation omitted); Lyman, 2007 U.S. Dist. LEXIS 10359, at *6 ("The Second Circuit disfavors such motions because they are often used for purely tactical reasons") (citing Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989)).

Consistent with these policy goals, courts addressing disqualification motions focus on preserving the integrity of the trial process and, accordingly, grant such motions only where that integrity truly is threatened:

> [T]he Second Circuit has instructed district courts to take a 'restrained approach that focuses primarily on preserving the integrity of the trial process' when deciding disqualification motions. Armstrong v. McAlpin, 625 F.2d 433, 444 (2d Cir. 1980), vacated on other grounds, 449 U.S. 1106 (1981). Indeed, the 'mere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion. Rather, the motion will be granted only if the facts present a real risk that the trial will be tainted.' United States Football League v. National Football League, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985)

Versace, 160 F. Supp. 2d at 664; see also Ramey v. Int'l Assoc. of Machinists and Aerospace Workers, 378 F.2d 269, 283 (2d Cir. 2004) (noting that the "concerns [underlying the advocate-witness rule] are absent or, at least, greatly reduced when [as here] the lawyer-witness does not act as trial counsel") (quotation omitted).

Here, defendants have moved, pursuant to DR 5-102, to disqualify the Sragow firm. Under DR 5-102(a) and (c), defendants assert that Mr. Sragow and his employees are necessary witnesses that "ought" to testify on plaintiffs' behalf concerning the "critical" issues of whether (i) the parties had a binding agreement; (ii) defendants' wrongfully stole plaintiffs' $13 million out of escrow; and (iii) Mr. Sragow, plaintiffs, Bankers Capital, and their principals engaged in a fraudulent scheme to take control of the property Portfolio. (Def. Br. at 13-14, 16-17.) Under

9

DR 5-102(b) and (d), defendants assert that (i) even if plaintiffs do not call Mr. Sragow as a witness, defendants "may" call him on these issues; (ii) his testimony will be both necessary and prejudicial to plaintiffs.  (Id. at 12 and 16.)  Defendants are wrong on all fronts.

## A.    Defendants Have Not Carried Their Heavy Burden of Demonstrating that Mr. Sragow's Testimony Is Necessary to Plaintiffs' Claims.

DR 5-102(c) provides that, subject to the enumerated exceptions in subsection (a), an attorney should not serve as an advocate at trial on issues of fact where that attorney learns that he "ought to testify" on his client's behalf in the pending litigation:

> (c) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client, the lawyer shall not serve as an advocate on issues of fact before the tribunal, except that the lawyer may continue as an advocate on issues of fact and may testify in the circumstances enumerated in paragraphs (a)(1) through (4) of this section.

22 N.Y.C.R.R. § 1200.21(c) (2008) (DR 5-102) (emphasis added); see also Reitman Co. v. IRB-Brasil Resseguros S.A., No. 01 Civ. 0265, 2001 U.S.Dist. LEXIS 16073, *5 (S.D.N.Y. September 25, 2001) ("Generally, subsections (A) and (C) provide that, except in the limited situations outlined in subsection (A), a lawyer should not accept or continue representation in a matter in which the lawyer is likely to be called as witnesses on behalf of his or her client.").[5]

"The standard for disqualification, therefore, is whether the attorney 'ought to testify' on his client's behalf." Lyman, 2007 U.S. Dist. LEXIS 10359, at *8.  Courts in this district have held that an attorney "ought" to testify on his client's behalf only where his testimony is necessary to the case. Lyman, 2007 U.S. Dist. LEXIS 10359, at *9 ("An attorney 'ought' to testify when his or her testimony  would be significantly useful to his client and is necessary to the case") (emphasis added) (citing Purgess v. Sharrock, 33 F.3d 134, 144 2d Cir. 1994));

---

[5]    Similarly, DR 5-102(a) provides that an attorney shall not act as an advocate before the tribunal if he ought to be called as a witness on his client's behalf.  22 N.Y.C.R.R. § 1200.21 (a).

Rosefield v. Orentreich, No. 98 Civ. 2721, 1998 U.S. Dist. LEXIS 13934, at *12 (S.D.N.Y Sept. 2, 1998) ("the mere fact that an attorney was involved in [the] transactions at issue, or that his proposed testimony would be relevant or even 'highly useful,' is insufficient to warrant disqualification . . .the critical question is whether the subject testimony is 'necessary'") (quoting S&S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp., 69 N.Y.2d 437, 445-46 (1987)).

In determining whether an attorney's testimony is "necessary," courts consider "such factors as the 'significance of the matters, weight of the testimony, and availability of other evidence.'" Rosefield, 1998 U.S. Dist. LEXIS 13934, at *12 (quoting S&S Hotel Ventures); Lyman, 2007 U.S. Dist. LEXIS 10359, at *10 (same). "[C]umulative testimony does not warrant disqualification." Lyman, 2007 U.S. Dist. LEXIS 10359, at *10. In short, "[t]estimony may be relevant and even useful but still not strictly necessary." Id. Defendants do not dispute the legal test for determining whether testimony is "necessary." (Def. Br. at 12-13.)

Defendants first argue that plaintiffs "cannot prove their central allegations without the testimony of Mr. Sragow and other members of his law firm" on the issues of whether (i) there is a binding agreement between the parties concerning plaintiffs' $13 million; and (ii) defendants stole plaintiffs' funds. (Def. Br. at 12-14.) Even at this early stage of the Action, the evidence plainly demonstrates that defendants are wrong.

While he undeniably has knowledge of the facts concerning the parties' agreements and the communications with the escrow agent, Mr. Sragow is only one of a number of witnesses with such knowledge. In their initial disclosures – which fail to identify Mr. Sragow or anyone else from his firm – defendants admit that at least seven other individuals – defendants Stern, Safrin, and Frenkel, third party defendants Friedman and Steven Alevy, plaintiff Allen Alevy, and non-party Avery Egert (Safrin's son-in-law) – have knowledge of "the various documents

11

and communications exchanged between the parties." In fact, the documents submitted by

defendants on this motion establish that most of these individuals have knowledge of the parties'

agreements and the escrow instructions provided to the Frenkel defendants. (Stern Decl. Ex. B

(e-mails forwarding draft agreements and escrow instructions between and among Friedman,

Frenkel, Steven Alevy, Allen Alevy, Michael Libraty and Allen Sragow).) Under the

circumstances, Mr. Sragow's testimony on these issues may very well be cumulative, not

necessary. Versace, 160 F. Supp. 2d at 664 (holding that attorney's testimony "would be

necessary *only* if there were no other witnesses to the circumstances surrounding the writing" of

the document at issue) (italics in original); Lyman, 2007 U.S.Dist. LEXIS 10359 at *12 (denying

motion where, even though attorney "was personally and directly involved in many of the

allegations of fact in the amended complaint it also appears likely that others were present for

and likely witnessed many, if not all, of those same events"); see also U.S. v. Tate & Lyle North

American Sugars, Inc., 184 F. Supp. 2d 344, 347 (S.D.N.Y. 2002) (Attorney's testimony not

necessary where it is "merely cumulative" of other evidence) (citation omitted).

Notwithstanding, defendants conclusorily assert that Mr. Sragow's testimony is necessary

to establish the parties' agreements because he and his employees "were the principle drafters

and negotiators of the alleged agreements." (Def. Br. at 13.) Defendants, perhaps deliberately,

have missed the point. Contrary to defendants' assertion, the parties' agreements may be

established based upon the undisputed documents, including, inter alia, the letter of

understanding, the assignment agreement, and the two promissory notes executed by Stern. If

anything, Stern's truthful testimony, not Mr. Sragow's, is necessary to establish the

enforceability of these documents.[6] Moreover, given that promissory notes like those executed

---

[6]    Unlike Safrin, Stern has never contended that he did not execute these documents.

by Stern are particularly susceptible to summary disposition, there ultimately may be no need for any trial testimony whatsoever relating to at least certain aspects of the parties' agreements. Rosefield, 1998 U.S.Dist. LEXIS 13934 at *14 (possibility that "resolution of [] dispute turns on questions of law that do not require [attorney's] testimony. . .mitigates against disqualification").

Defendants next argue that Mr. Sragow's testimony is necessary to establish that defendants' stole plaintiffs' funds because he was "one of the two representatives of the plaintiffs who were in contact with the escrow agent [the Frenkel defendants] at the time." (Def. Br. at 14.) Not so. Defendants' thievery can be established through clear documentary evidence. As noted, the Capital One bank records plainly demonstrate that defendants took control of plaintiffs' funds four days after the money was received in the escrow account – and ten days before receiving what defendants contend was a purported authorization from Steven Alevy to release the escrow funds. Mr. Sragow's testimony concerning his escrow instructions to the Frenkel defendants is not needed to establish the foregoing – indeed, he was unaware of defendants' chicanery.[7]

Moreover, defendants' papers concede their wrongful misappropriation of plaintiffs' funds. Specifically, defendants assert that "there was no meeting of the minds and that the various agreements and conditions" proposed by plaintiffs "were never agreed to by Stern and First Republic." (Br. at 5.) If defendants are correct, then what right did they have to take and use Amusement's $13 million? Defendants cannot have it both ways – either they had an agreement with plaintiffs regarding the $13 million, or they stole it without authorization.

---

[7]    Defendants simply ignore the fact that the documents they submitted establish that Sragow's written instructions with respect to Amusement's $13 million clearly and unambiguously stated that Steven Alevy was not authorized to order the release of those funds. (Stern Decl. Ex. B.) Mr. Sragow's authentication of this instruction almost certainly will be undisputed. Such testimony plainly falls within the express exceptions in DR 5-102, and, as such, would not require his disqualification. 22 N.Y.C.R.R. § 1200.21(a) (2008) (DR 5-102).

13

Defendants' reliance on Acme Analgesics and Wickes is thus misplaced.  (Def. Br. at 14.)  In Acme, the attorney whose disqualification was sought negotiated, executed and administered the contract at issue.  602 F. Supp. 306, 306 (S.D.N.Y. 1985).  In Wickes, the attorney whose disqualification was sought was the "only" witness who could provide testimony on a crucial issue.  706 F. Supp. 290, 292 (S.D.N.Y. 1989).  As noted, Mr. Sragow is one of several witnesses with knowledge of the issues identified by defendants, and Stern, not Mr. Sragow, executed certain key documents here.

In sum, plaintiffs' case with respect to both the parties' agreements and defendants' wrongful taking of plaintiffs' funds does not rest "substantially, if not entirely, on Sragow's testimony." (Br. at 14.)  Defendants have failed to demonstrate otherwise.  Accordingly, defendants' motion to disqualify the Sragow firm pursuant to 5-102(a) and (c) should be denied.

**B.      Defendants' Have Not Established that Mr. Sragow's Testimony Would Be Prejudicial to Plaintiffs.**

DR 5-102(d) provides that an attorney should withdraw from acting as trial counsel if it becomes apparent that he or she may be called as a witness on a significant issue other than on behalf of the client, and that such testimony may be prejudicial to the client:

> (d) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in his or her firm may be called as a witness on a significant issue other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer and the firm must withdraw from acting as an advocate before the tribunal.

22 N.Y.C.R.R. § 1200.21(d) (2008) (DR 5-102); see also Reitman, 2001 U.S.Dist. LEXIS 16072, at *5 ("Subsections (B) and (D) state that the lawyer and his or her firm should not accept or continue representation when the lawyer's testimony is likely to be prejudicial").  As noted, motions under this section are subject to "particularly strict scrutiny."  Versace, 160 F. Supp. 2d at 664.  Thus, in order to justify a disqualification under 5-102(b) and (d), the moving party must

14

show that the attorney's testimony is both (i) necessary; and (ii) "substantially likely" to be prejudicial. Id. at 664; Ragdoll, 1999 U.S. Dist. LEXIX 14828, at *5 (same).

The test to determine whether testimony is "necessary" under 5-102(d) is the same as it is under 5-102(c). (Def. Br. at 16.) An attorney's testimony is considered "prejudicial" if it is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the client might have an interest in the lawyer's independence in discrediting that testimony." Paramount Comm'ns Inc. v. Simon & Schuster Inc., 858 F. Supp. 391, 395 (S.D.N.Y. 1994); Versace, 160 F. Supp. 2d at 664 (citing Paramount). Again, defendants concede the applicable legal test. (Def. Br. at 16.)

Initially, the timing of the Stern defendants' sudden assertion that Mr. Sragow should be disqualified now because "it is likely he will be called" by defendants as a witness is suspect. (Def. Br. at 16.) As confirmed by the very documents upon which they base their motion, defendants have known since last June of Mr. Sragow's involvement in the transactions at issue. Notwithstanding, defendants failed to identify Mr. Sragow or anyone else from his firm as a potential witness in their initial disclosures. Defendants also never previously objected to Mr. Sragow's acting as counsel to plaintiffs in pretrial discovery. Simply put, defendants apparently decided that they "may" call Mr. Sragow in order to make this motion.

Undeterred, defendants contend that Mr. Sragow's testimony will establish that "plaintiffs never believed that they had a binding agreement" with defendants. (Def. Br. at 17.) Defendants' vague, self-serving assertion is sheer speculation. Mr. Sragow has yet to be deposed in the Action, and his testimony is not yet known. If anything, a plain reading of the communications submitted by defendants demonstrates only that plaintiffs were gravely concerned that defendants, after not executing some of the transactional documents, had taken

15

Amusement's fund without proper authorization – not that plaintiffs believed they did not have "a binding agreement" with defendants. Defendants' rank speculation to the contrary simply is not sufficient to justify Mr. Sragow's disqualification.

Finally, defendants claim that Mr. Sragow's testimony will establish that he and others "engaged in a fraudulent scheme to gain control of the Properties" is baseless. (Def. Br. at 16.) The one document cited by defendants in support of this slanderous allegation – a September 10 e-mail from Mr. Sragow to Robert Friedman – does not direct Mr. Friedman to "extract information from Stern" for the purposes of gaining "leverage" on defendants. (Id.) That e-mail simply suggests that Mr. Friedman inquire whether defendants intended to honor their agreement with Amusement. Again, defendants' mischaracterization of this e-mail is sheer speculation.[8]

In sum, even if the Court overlooks the suspicious timing of defendants' new assertion that they may call Mr. Sragow to testify on their behalf, defendants plainly have not demonstrated that Mr. Sragow's testimony would be both necessary and prejudicial to plaintiffs. Accordingly, defendants' motion should be denied.

---

[8]     Defendants' claim that Mr. Sragow's e-mail "concerning whether plaintiffs authorized the release of the escrowed funds is flatly contradicted by relevant e-mails from his own client, Steven Alevy" is ridiculous. (Def. Br. at 17.) These documents confirm that Mr. Sragow unambiguously instructed Frenkel that Steven Alevy did not have authority to release the escrow funds. (Stern Decl. Ex. B) Mr. Alevy's e-mails nowhere contradict this instruction. (Id.)

**C.    The Sragow Firm Should Be Permitted To Remain As Counsel During Pretrial Discovery Proceedings.**

New York courts routinely deny disqualification motions as premature where, as here, it is unclear whether an attorney's testimony on a given issue in fact will be "necessary." See, e.g., Lyman, 2007 U.S. Dist. LEXIS 10359, at *10 (denying motion as premature because "it is unclear at this early stage of the proceedings which, if any, of the events to which [plaintiffs' attorney] was a witness will ultimately remain contested issues at trial"); Rosefield, 1998 U.S. Dist. LEXIS 13934, at *14 (denying motion because "lacking the benefit of an answer, discovery, or a pre-trial plan, the court cannot presently determine whether Salomon's testimony is necessary . . . the case may never proceed to trial for any number of reasons, and Salomon's testimony may never be offered"); Versace, 160 F. Supp. 2d at 664 ("when, as here, it is not clear, prior to the completion of discovery, whether the moving party sustained its burden of showing that the attorney would be called as a witness, the motion to disqualify counsel is premature and should be denied") (quotation omitted).

In such situations, the "great weight of authority" in the Second Circuit confirms that the Sragow firm should be permitted to continue as pretrial counsel, at least until an appropriate determination can be made as to whether Mr. Sragow's testimony is necessary:

> several courts in this district have permitted attorneys who were potential witnesses at trial to continue to represent their clients during pre-trial proceedings. . . . The Court finds this line of cases persuasive, and follows the great weight of authority in this District in refusing to disqualify Holzberg prior to trial. [Defendant] is free to seek the disqualification of [plaintiff's attorney] at the close of discovery if it believes the circumstances are such that [his] testimony is then necessary and likely to be prejudicial . . .

Versace, 160 F. Supp. 2d at 665 (citing cases); see also Lyman, 2007 U.S. Dist. LEXIS 10359, at *12 ("No reason appears why [plaintiffs' attorney] should not be permitted to continue to represent the [plaintiffs] through the completion of discovery and dispositive motions. At that

stage a fair determination can e made as to whether Aretakis 'ought to be called as a witness on behalf of' the Lymans.") (citing <u>Versace</u>); <u>Rosefield</u>, 1998 U.S. Dist. LEXIS 13934, at *15 ("the court cannot say that Rosefield has carried his burden of proof at this time. Too much remains unknown. Therefore, the motion to disqualify is denied, without prejudice to renewal").

Allowing attorneys who are potential trial witnesses to act as pretrial counsel best balances the two main policy interests at stake – <u>i.e.</u>, preserving both the integrity of the trial and a client's right to choose its own counsel. <u>Versace</u>, 160 F. Supp. 2d at 665 ("the concerns underlying DR 5-102(a) and (b) arise out of an attorney's presence at trial and are therefore not implicated when the attorney represents the client prior to trial. Furthermore, permitting pre-trial representation 'protects the clients' right to choose their own counsel.") (citation omitted); <u>Conigliaro</u>, 1997 U.S. Dist. LEXIS 5169, at *("the concerns underlying DR 5-102(a) and (b) arise out of an attorney's presence at trial. Allowing an attorney to continue his representation pre-trial does nothing to undermine those interests, and protects the clients' right to choose their own counsel.").

A plain reading of DR 5-102 further confirms that permitting an attorney/potential witness to act as pretrial counsel is appropriate: 5-102(c) refers only to an attorney not serving "as an advocate on issues of fact before the tribunal," and 5-102(d) refers only to an attorney withdrawing "as an advocate before the tribunal." <u>Ragdoll</u>, 1999 U.S. Dist. LEXIX 14828, at *7 (noting that the text of DR 5-102 "further emphasizes that the concern of the section is advocate-witness participation in fact finding, and not in pretrial proceedings").

Here, while discovery is under way, the Action is in a relatively nascent stage. Several motions to dismiss currently are pending before the Court, and defendants have yet to file answers. The parties currently are conducting document discovery (over 150,000 pages have

been produced to date). Depositions will not commence until at least September 2008.

Dispositive motions will not be filed for months, and a trial date similarly is at least several

months away. There simply is no way to tell at this juncture which factual issues, if any, will be

in dispute at trial. This Court should not speculate concerning whether Mr. Sragow, or his

employees, ought to testify on as yet unknown issues. Lyman, 2007 U.S. Dist. LEXIS 10359, at

*10 (denying motion to disqualify where it would require "undue speculation" to determine

whether issues would remain for trial on which the attorney ought to testify). Simply put,

defendants' motion is premature.

     In any event, plaintiffs never intended for Mr. Sragow or his firm to be trial counsel in

the Action. It was for this reason that plaintiffs offered to stipulate as much. Plaintiffs submit

that such a result is both appropriate and consistent with the "great weight of authority" in the

Second Circuit. Versace, 160 F. Supp. 2d at 665; Ragdoll, 1999 U.S.Dist. LEXIS 14828, at *6

(holding that, where, as here, party agreed that its attorney would not act as trial counsel,

attorney was allowed to "continue to represent his client in pretrial proceedings" because the

policy concerns underlying DR 5-102 were not "implicated . . . by permitting the attorney to

represent the client prior to trial") (quotation omitted).

     Defendants' rejection of plaintiffs' proposal is puzzling, particularly in light of

defendants' (i) acknowledgment that they are not seeking to prevent Mr. Sragow or his firm from

working with Sills Cummis in prosecuting and defending the Action; (ii) knowledge of Mr.

Sragow's involvement in the transactions at issue since their occurrence; (iii) failure to identify

Mr. Sragow as a potential witness on their initial disclosures, (iv) failure to object to Mr.

Sragow's participation in pretrial proceedings for the past seven months; and (v) the plain case

law noted herein. Plaintiffs can only surmise that defendants' motion does not seek to remedy a

19

real issue in this case, but instead, like so many disqualification motions, simply is defendants'

next tactic in their unending effort to avoid the merits and to waste plaintiffs' time and money.[9]

Accordingly, defendants' motion to disqualify the Sragow firm should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motion to

disqualify Allen Sragow and other members of Sragow & Sragow be denied.

Dated: New York, New York
     July 11, 2008

SILLS CUMMIS & GROSS P.C.


By: /s/ Marc D. Youngelson
    Philip R. White
    Marc D. Youngelson

One Rockefeller Plaza
New York, NY 10020
Telephone: (212) 643-7000

Attorneys for Plaintiffs

---

[9]    Defendants could have asserted claims against Mr. Sragow as in this Action. Had they done so, however, they would have had even less basis to argue for disqualification. Conigliaro, 1997 U.S. Dist. LEXIS 5169, at *12 ("the same concerns that require disqualification of a witness-advocate are not implicated when that witness is also a party"). Plaintiffs suspect that defendants chose to assert their claims against Mr. Sragow in the substantively duplicative New York Action apparently to avoid that problem (as well as to further delay the Action).