UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X
AMUSEMENT INDUSTRY, INC., dba WESTLAND
INDUSTRIES; PRACTICAL FINANCE CO., INC.,                    :    No. 07 Civ. 11586 (LAK)(GWG)

                            Plaintiffs,          :    (ECF)

    - against -                                                    :

MOSES STERN, aka MARK STERN; JOSHUA SAFRIN,      :
FIRST REPUBLIC GROUP REALTY LLC, EPHRAIM          :
FRENKEL, LAND TITLE ASSOCIATES ESCROW,            :
                          Defendants.          :
                                       :
-------------------------------------------------------------------------- X
JOSHUA SAFRIN,                                                 :
              Defendant/Third Party-Crossclaim-      :
                  Counterclaim-Plaintiff,                  :
    - against –                                                   :

STEPHEN FRIEDMAN, STEVEN ALEVY, BUCHANAN           :
INGERSOLL & ROONEY, P.C., BANKERS CAPITAL           :
REALTY ADVISORS LLC, and FIRST REPUBLIC GROUP     :
CORP.,                                                        :
                Third Party Defendants,                  :
    - and -                                                       :

MOSES STERN, aka MARK STERN, FIRST REPUBLIC        :
GROUP REALTY LLC, EPHRAIM FRENKEL, and LAND        :
TITLE ASSOCIATES ESCROW,                                    :

           Defendants/Crossclaim Defendants,        :
    - and -                                                       :

AMUSEMENT INDUSTRY, INC., dba WESTLAND             :
INDUSTRIES, PRACTICAL FINANCE CO., INC.,            :

            Plaintiffs/Counterclaim Defendants.      :
-------------------------------------------------------------------------- X

## THIRD PARTY PLAINTIFF JOSHUA SAFRIN'S MEMORANDUM OF LAW IN OPPOSITION TO FRIEDMAN AND BUCHANAN, INGERSOLL & ROONEY, P.C.'S MOTION TO DISMISS THE AMENDED THIRD PARTY COMPLAINT

Of Counsel:
    Jonathan D. Lupkin
    Jean Marie Hackett

**FLEMMING ZULACK WILLIAMSON ZAUDERER LLP**
**Attorneys for Defendant Joshua Safrin**
**One Liberty Plaza**
**New York, New York 10006**
**(212) 412-9500**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ............................................................................. iv

PRELIMINARY STATEMENT .......................................................................1

PROCEDURAL HISTORY..............................................................................3

STATEMENT OF FACTS ...............................................................................4

    A. The Underlying Complaint InThe Main Action ...................................4

    B. The Parties .........................................................................................5

    C. The Citigroup Loan Documents............................................................7

    D. Plaintiffs' Investment..........................................................................8

        1. The June 29, 2007 "Letter of Intent" ..........................................8

        2. Plaintiffs' Subsequent Negotiations With Friedman .................9

        3. The July 11, 2007 Counter Offer .............................................11

    E. Safrin Had No Involvement In The Transactions
       Alleged In The Complaint .................................................................12

ARGUMENT.................................................................................................13

POINT I:

SAFRIN'S CLAIM FOR INDEMNITY AGAINST THE
ATTORNEY DEFENDANTS -- WHO MADE REPRESENTATIONS
THAT PLAINTIFFS CONTEND CAUSED THEM DAMAGE
AND ENTERED INTO CONTRACTS THAT PLAINTIFFS CONTEND
HAVE BEEN BREACHED -- ARE MORE THAN SUFFICIENT .....................13

    A. Safrin States A Claim For Common Law Indemnity (Count I)
       Because There Exists The Possibility That Safrin Might Be
       Found Liable Without His Simultaneously Being Found
       To Be "At Fault"................................................................................14

    B. The Attorney Defendants' Argument For Dismissal Of Safrin's
       Implied Contractual Indemnity Claim (Count III) Is Completely
       At Odds With The Rules Governing Pleading In Federal Court .........17

## <u>TABLE OF CONTENTS</u> (continued)

<u>Page(s)</u>

POINT II:

BECAUSE SAFRIN'S VARIOUS BREACH OF DUTY CLAIMS ARE
CONTINGENT ON A FINDING OF AN ATTORNEY-CLIENT OR AGENCY
RELATIONSHIP, SAFRIN STATES A CLAIM, NOTWITHSTANDING
HIS DENIAL OF SUCH RELATIONSHIP .........................................................20

POINT III

BECAUSE THE THREAT OF LITIGATION HAS ALREADY BEEN
REALIZED, THIS ACTION IS, BY DEFINITION, "AN ACTUAL
CASE OR CONTROVERSY" WITHIN THE MEANING OF THE
DECLARATORY JUDGMENT ACT .................................................................20

POINT IV:

SAFRIN'S ALLEGATIONS OF A NONCONSENSUAL COMMERCIAL
USE OF HIS NAME STATE A CLAIM UNDER SECTIONS 50 AND 51
OF THE CIVIL RIGHTS LAW .........................................................................22

POINT V:

SAFRIN STATES A CLAIM UNDER THE CALIFORNIA COMMON
LAW RIGHT TO BECAUSE HE ALLEGES SEPARATE VIOLATIONS
OF HIS RIGHT TO PRIVACY BASED ON CONDUCT IN CALIFORNIA .....26

POINT VI

COUNTS VII AND VIII PLEAD THE EXISTENCE
OF A CONSPIRACY .......................................................................................28

**TABLE OF CONTENTS** (continued)

Page(s)

POINT VII

SAFRIN'S ALLEGATIONS STATE A CLAIM FOR
PUNITIVE DAMAGES ........................................................................29

    A. This Is Not A Contract Case, And New York Law Does Not
       Require Allegations Of A Public Wrong For The Imposition Of
       Punitive Damages In Tort Cases Like This One...................................29

    B. The Attorney Defendants' Alleged Conduct -- In Wrongfully
       Holding Themselves Out As Safrin's Attorney When They
       Know They Did Not Represent Him -- Is Sufficiently Outrageous
       To Sustain A Claim For Punitive Damages.........................................32

    C. Safrin's Punitive Damage Claims Cannot Be Dismissed In Any
       Event Because § 51 Of The New York Civil Rights Law
       Explicitly Provides For An Award Of Exemplary Damages...............33

CONCLUSION..................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Apple Corps Ltd. v. Capitol Records, Inc.,
    13 Misc. 3d 1211(A), 824 N.Y.S.2d 752 (Sup Ct. N.Y. Co. 2006) ................................. 31

Arrington v. The New York Times Co.,
    55 N.Y.2d 433, 434 N.E.2d 1319, 449 N.Y.S.2d 941 (1982) ........................................ 24

Ascher v. Target Corp.,
    522 F. Supp. 2d 452 (E.D.N.Y. 2007).............................................................................. 18

Bankers Trust Co. v. State Street Bank & Trust Co.,
    No. 96 Civ. 7573 (RPP), 1998 WL 355418 (S.D.N.Y. July 2, 1998) ............................ 18

Beverly v. Choices Women's Med. Ctr., Inc.,
    78 N.Y.2d 745, 587 N.E.2d 275, 579 N.Y.S.2d 637 (1991) ........................................... 24

Bialobroda v. Buchwald,
    51 A.D.3d 467, 856 N.Y.S.2d 484 (1st Dept. 2008) ....................................................... 29

Bond v. Sterling, Inc.,
    997 F. Supp. 306 (N.D.N.Y. 1998) ................................................................................. 33

Briarpatch Ltd., L.P. v. Pate,
    81 F. Supp. 2d 509 (S.D.N.Y. 2000) ............................................................................... 28

Bristol-Myers Squibb Co. v. Rhone -Poulenc Rorer, Inc.,
    No. 95 Civ 8833 (RPP), 1996 WL 71492 (S.D.N.Y. 1996) ........................................... 22

Caraway v. L.S. Agency,
    No. 85 Civ. 1855-CSH, 1986 WL 12529 (S.D.N.Y. Oct. 27, 1986)................................ 23

Celebrity Cruises Inc. v. Essef Corp.,
    530 F. Supp. 2d 532 (S.D.N.Y. 2008) ...................................................................... 18, 19

Cevasco v. Nat'l R.R. Passenger Corp.,
    No. 04 Civ. 5760 (PAC) (GWG),
    2007 WL 4440922 (S.D.N.Y. S.D.N.Y. Dec. 18, 2007)................................ 14, 15, 16, 17

Chambers v. Time Warner,
    No. 00 Civ. 2839 (JSR), 2003 WL 749422 (S.D.N.Y. Mar. 5, 2003).............................. 23

# TABLE OF AUTHORITIES (Continued)

**Page(s)**

**Cases**

Cigna Co. v. A.I. Bazzini Co.,
   No. 87 Civ. 6877 (SWK), 1990 WL 160901 (S.D.N.Y. Oct. 16, 1990) ......................... 16

Coleman v. Ted's Auto Sales, Inc.,
   227 N.Y.S.2d 693 (Sup. Ct. Kings Co. 1962), aff'd,
   17 A.D.3d 827, 233 N.Y.S.2d 239 (2d Dep't 1962) ........................................................ 26

Cox v. Abrams,
   No. 93 CIV. 6899 (RJW), 1997 WL 251532 (S.D.N.Y. May 14, 1997) ........................ 27

D'Amour v. Ohrenstein & Brown LLP,
   17 Misc.3d 1130(A), 851 N.Y.S.2d 68,
   2007 WL 4126386 (Sup. Ct. N.Y. Co. Aug. 13, 2007) ....................................... 30, 31, 33

Dataline v. MCI Worldcom,
   No. 00 CIV. 1578 LAP, 2001 WL 102336 (S.D.N.Y. Feb. 6, 2001) .............................. 21

Davis v. High Soc'y Magazine, Inc.,
   90 A.D.2d 374, 457 N.Y.S.2d 308 (2d Dep't 1982) .................................................. 23, 24

Delan by Delan v. CBS, Inc.,
   1 Ad.2d 255, 458 N.Y.S.2d 608) (2d Dep't 1983) ...................................................... 23-24

Don Buchwald & Assocs., Inc. v. Rich,
   281 A.D.2d 329, 723 N.Y.S.2d 8 (1st Dep't 2001) ............................................. 30, 31, 32

Evans Medical Ltd. v. Am. Cynamid Co.,
   980 F. Supp. 132 (S.D.N.Y. 1997) .................................................................................. 21

Flores v. Mosler Safe Co.,
   7 N.Y.2d 276, 164 N.E.2d 853, 196 N.Y.S.2d 975 (1959) .............................................. 24

Frazier v. Turning Stone Casino,
   254 F. Supp. 2d 295 (N.D.N.Y. 2003) ............................................................................. 28

Gleason v. Temple Hill Assocs.,
   159 A.D.2d 682, N.Y.S. 2d at 430 (2d Dep't 1990) ....................................................... 16

## TABLE OF AUTHORITIES (Continued)

**Page(s)**

**Cases**

Griffin v. Law Firm of Harris, Beach, Wilcox, Rubin & Levey,
112 A.D.2d 514, 490 N.Y.S.2d 919 (3d Dep't 1985) .................................................. 24, 25

Headman v. Berman Leasing Co.,
352 F. Supp. 211 (E.D. Pa. 1972)...................................................................................... 19

Henry v. Daytop Village, Inc.,
42 F.3d 89 (2d Cir. 1994) ................................................................................................. 19

Highland Capital Mgmt, L.P. v. Schneider,
533 F. Supp. 2d 345 (S.D.N.Y. 2008) ........................................................................ 16, 19

IDT Corp. v. Morgan Stanley Dean Witter & Co.,
45 A.D.3d 419, 846 N.Y.S.2d 116 (1st Dep't 2007)........................................................ 30

Kane v. Orange County Publ'ns,
232 A.D2d 526, 649 N.Y.S.2d 23 (2d Dep't 1996) ......................................................... 24

Lader v. Dahlberg,
2 F.R.D. 49 (S.D.N.Y. 1941)............................................................................................ 19

Langenberg v. Sofair,
No. 03 Civ. 8339(KMK)(FM), 2006 WL 3518197(S.D.N.Y. Dec. 7, 2006)................... 31

Lawser v. Poudre School District R-1,
171 F.Supp.2d 1155 (D. Colo. 2001) ............................................................................... 18

MacQuesten Gen. Contr. Inc. v. HCE, Inc.,
296 F. Supp. 2d 437 (S.D.N.Y. 2003) .............................................................................. 31

Mathews v. ABC Television, Inc.,
No. 88 CIV. 6031 (SWK), 1989 WL 107640 (S.D.N.Y. Sept. 11, 1989) ........................ 27

May Dep't Stores v. Employees Ret. Sys. of Alabama,
93 Civ. 0879 (JSM),1993 WL 362389 (S.D.N.Y. Sept. 14, 1993) ................................... 22

**TABLE OF AUTHORITIES (Continued)**

**Page(s)**

<u>**Cases**</u>

<u>Meyer v. Holley</u>,
    537 U.S. 280, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003) ................................................. 15

<u>New York Univ. v. Cont'l Ins. Co.</u>,
    87 N.Y.2d 308, 662 N.E.2d 763 (1995) .................................................... 29, 30

<u>Padre Shipping, Inc. v. Yong He Shipping</u>,
    553 F.Supp.2d 328 (S.D.N.Y. 2008) ............................................................. 18

<u>Parady v. Phillips</u>,
    No. 07 Civ. 3640 (JCF), 2008 WL 591868 (S.D.N.Y. Mar. 5, 2008).............................. 31

<u>Pennisi v. Standard Fruit & S.S. Co.</u>,
    206 A.D.2d 290, 614 N.Y.S.2d 519 (1st Dep't 1994)....................................... 16

<u>People's Democratic Republic of Yemen v. Goodpasture, Inc.</u>,
    782 F.2d 346 (2d Cir. 1986) ...................................................... 16, 17

<u>Polin v. Wisehart & Koch</u>,
    No. 00 Civ. 9624 (DLC), 2004 WL 1944721 (S.D.N.Y. Sept. 2, 2004).......................... 30

<u>Radio Today, Inc. v. Westwood One, Inc.</u>,
    684 F. Supp. 68 (S.D.N.Y. 1988) ....................................................... 23, 24, 25

<u>Ravich v. Kling</u>,
    17 Misc. 2d 683, 187 N.Y.S.2d 272 (Sup Ct. N.Y. Co. 1959)......................................... 28

<u>Rocanova v. Equitable Life Assur Soc'y of the U.S.</u>,
    83 N.Y.2d 603, 634 N.E.2d 940 (1994) .................................................. 29, 30

<u>Rosenkrantz v. Steinberg</u>,
    13 A.D.3d 88, 786 N.Y.S.2d 35 (lst Dep't 2004) ............................................ 32

<u>Shell Oil Corp. v. Amoco Corp.</u>,
    970 F.2d 885 (Fed. Cir. 1992) ........................................................... 21

## TABLE OF AUTHORITIES (Continued)

**Page(s)**

**Cases**

SSDW Co. v. Feldman-Misthopoulos Assocs.,
    151 A.D.2d 293, 542 N.Y.S.2d 564 (1st Dep't 1989) ..................................................... 16

Travelers Indem. Co. v. Crown Cork & Seal Co., Inc.,
    865 F. Supp. 1083 (S.D.N.Y. 1994) ............................................................................ 21

Triguero v. Consol. Rail Corp.,
    932 F.2d 95 (2d Cir. 1991) ......................................................................................... 16

Ulico Cas. Co. v Wilson, Elser, Moskowitz, Edelman & Dicker,
    16 Misc. 3d 1051, 843 N.Y.S.2d 749 (Sup Ct. N.Y. Co. 2007) ................................. 31, 32

Welch v. Mr. Christmas, Inc.,
    57 N.Y.2d 143, 440 N.E.2d 1317, 454  N.Y.S.2d 971 (1982) ......................................... 33

Williams v. Congregation Yetev Lev.,
    No. 01 CV 2030 (GBD),  2008 WL 852450 (S.D.N.Y. Mar. 31, 2008)          15

Zamierowski v. Nat'l R.R. Passenger Corp.,
    No. 05 Civ. 9309 (WCC), 2006 WL 1816377 (S.D.N.Y. June 28, 2006) .......... 14, 15, 17

Zoll v. Jordache Enters., Inc.,
    No. 01 Civ. 1339 (CSH), 2003 WL 1964054 (S.D.N.Y. Apr. 24, 2003) ........................ 24

**Treatises**

Robert L. Haig ed., *Business & Commercial Litigation in Federal Courts* § 6:26
    (2d ed. 2007) .......................................................................................................... 19

**Statutes and Rules**

Fed. R. Civ. P. 8 .................................................................................. 2, 17, 18, 19

Fed. R. Civ. P. 13(g) .................................................................................................... 4

Fed. R. Civ. P. 12(b)(1) .............................................................................................. 22

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 22

28 U.S.C. § 2201(a) .................................................................................................... 21

N.Y. Civil Rights Law §§ 50, 51 ........................................................................... passim

## PRELIMINARY STATEMENT

Defendant/Third Party-Plaintiff Joshua Safrin ("Safrin") respectfully submits this Memorandum of Law in opposition to the motion of Third Party Defendants Stephen Friedman ("Friedman") and Buchanan Ingersoll & Rooney, P.C. ("BIR") (collectively, the "Attorney Defendants") to dismiss (Docket Entry No. 133) the Amended Third Party Complaint ("TPC").[1]

With regard to this case, Stephen Friedman is the proverbial "800-pound gorilla in the room": Although plaintiffs declined to name Friedman and his law firm, BIR, as defendants in the main action (finding it perhaps too close for comfort to sue Amusement's and the Alevy family's attorney), Friedman is nonetheless a featured star of the Complaint, along with his sidekick (also a non-party by strategic design), broker Steven Alevy ("Alevy"), the son of Amusement's sole shareholder who improperly and without authority directed the release of plaintiffs' $13 million dollar "investment" from escrow.

This case simply cannot be litigated without the Attorney Defendants. Plaintiffs allege -- without any factual support -- that Friedman represented Safrin in all of his communications and dealings with plaintiffs and that Friedman "led them to believe" he had authority to speak on Safrin's behalf. Plaintiffs do <u>not</u> allege that Safrin ever did anything to foster this belief. Rather, all of plaintiffs' claims against Safrin are based on statements purportedly made and actions purportedly taken on his behalf by attorney Friedman. As plaintiffs' allegations make clear, it is Friedman who made the purported contracts that plaintiffs claim have been breached, and it is Friedman who made the representations and committed the other wrongs that they now claim caused them damage. Put differently, instead of suing Friedman and Alevy -- the individuals most directly involved -- plaintiffs have crafted flimsy allegations against Safrin, hoping to foist liability upon a wealthy but blameless stranger, instead of upon culpable friends and family

---

[1] The Amended Third Party Complaint asserts claims against the Attorney Defendants for: Indemnification and/or Contribution (Count I); Declaratory Judgment (Count II); Implied Contractual Indemnity (Count III); Breach of Duty As Agent/Attorney (Count IV); N.Y. Civil Rights Law §§ 50, 51 (Count V); Violation of California Common Law Right of Privacy/Commercial Misappropriation (Count VI); Conspiracy to Violate N.Y. Civil Rights Law §§ 50, 51 (Count V); and Conspiracy to Violate Safrin's Right to Privacy Under California Common Law (Count VIII).

members. This has left Safrin with no choice but to take the laboring oar and implead the real
wrongdoers.

As set forth more fully below, the Attorney Defendants' motion for partial dismissal of
Safrin's claims is devoid of merit:[2]

- First, Safrin's Common Law Indemnification claim (Count I) is sufficient because any
  theoretical (albeit unlikely) finding of liability on Safrin's part would be vicarious
  liability premised upon Safrin's "agent" (Friedman) operating with apparent, but not
  actual, authority. Under such circumstances, the Attorney Defendants would bear
  primary (if not exclusive) culpability for plaintiffs' losses and, under well-settled law,
  would be required to indemnify the vicariously liable party (Safrin) for any judgment
  against him (see infra, Point I.A);

- Second, Safrin's hypothetical pleading of his Implied Contractual Indemnity claim
  (Count III) -- i.e., if it is determined that the Attorney Defendants had authority to act
  on his behalf, then they may be held liable to him -- is entirely proper under the
  Federal Rules (see infra, Point I.B);

- Third, because Safrin's breach of duty claims (Count IV) are premised on a
  hypothetical finding that the Attorney Defendants were acting as his agents or
  attorneys, they are more than sufficient under Rule 8 to state a claim, notwithstanding
  Safrin's vehement denial of an attorney-client or agency relationship with the Attorney
  Defendants in connection with the transaction at issue (see infra, Point II);

- Fourth, because an actual lawsuit has been commenced against Safrin, there is, by
  definition, "an actual case or controversy" such that Safrin's declaratory judgment
  claim (Count II) is properly before the Court (see infra, Point III);

- Fifth, Safrin's allegations that the Attorney Defendants misappropriated his name,
  identity and stellar reputation in the real estate industry in order to obtain the
  necessary financing from Citigroup as well as to entice plaintiffs into making their $13
  million investment, all for the purpose of making a profit and developing business for
  their own benefit, properly state a claim under New York Civil Rights Law §§ 50, 51
  (Count V) (see infra, Point IV);

- Sixth, Safrin states a claim under California's common law right to privacy (Count VI)
  because, contrary to the Attorney Defendants' mischaracterization, this count of the
  Amended Third Party Complaint is not the same claim asserted against these
  Defendants under N.Y. Civil Rights Law, but a separate cause of action concerning
  separate misconduct committed in the state of California (see infra, Point V);

---

[2] The Attorney Defendants' motion does not challenge Safrin's claim for contribution (Count I). Therefore, in the
unlikely event that the Attorney Defendants prevailed on this motion in its entirety, they would remain parties to this
litigation.

- <u>Seventh</u>, Safrin states claims for conspiracy (Counts VII and VIII) because he has pled the existence of actionable underlying torts, namely, breach of duty claims as well as violations of N.Y. Civil Rights Law §§ 50 and 51 and California's common law right to privacy (<u>see</u> <u>infra</u>, Point VI); and

- <u>Finally</u>, Safrin's punitive damages claims in Counts IV through VIII should stand because (i) there is no requirement in a tort case such as this that plaintiff allege conduct directed at the public to warrant an award for exemplary damages; (ii) there cannot be any determination at this early stage in the litigation that the Attorney Defendants' misconduct, as pled, is not sufficiently egregious to warrant the imposition of punitive damages; and (iii) Section 51 of the New York Civil Rights Law explicitly provides for the award of punitive damages upon no more than a finding that the misappropriation of Safrin's name was committed knowingly (<u>see</u> <u>infra</u>, Point VII).

This motion is a thinly veiled attempt to forestall the Attorney Defendants' obligation to answer the claims asserted against them and, thereby, take formal positions on Safrin's allegations that they improperly held themselves out as his attorneys when they knew they had no authority to do so, that they used his name, identity and confidential information without his knowledge or consent, and that they knowingly misappropriated Safrin's identity and utilize forged documentation to secure financing for financial gain.  For the foregoing reasons and the reasons set forth below, this motion should be denied in its entirety.

## PROCEDURAL HISTORY

On February 27, 2008, all of the defendants in the main action filed motions to dismiss (Docket Entry Nos. 27, 35) the plaintiffs' complaint (the "Complaint") in its entirety.  These motions remain <u>sub judice</u>, and to date, only Safrin has filed an answer.  (Docket Entry. No. 148.)  On February 28, 2008, the Court held a pre-trial conference, which resulted in a scheduling order ("Scheduling Order") entered on March 5, 2008.  (Docket Entry No. 41.)  The Scheduling Order set May 1, 2008 as the deadline for joinder of additional parties.

On May 1, 2008, Safrin impleaded third party defendants Friedman, BIR, Alevy, Bankers Capital Realty Advisors LLC ("Bankers Capital"), and First Republic Group Corp. (First Republic Corp.) (hereinafter collectively referred to as the "Third Party Defendants").  (Docket Entry No. 65.)  In his pleading, and together with traditional contribution and indemnification

3

claims, Safrin also asserted against the Third Party Defendants several independent tort claims

and a claim for declaratory judgment.  In that same pleading, and pursuant to Fed. R. Civ. P.

13(g), Safrin also asserted crossclaims against co-defendants Mark Stern ("Stern"), First

Republic Group Realty LLC ("First Republic LLC"), Ephraim Frenkel ("Frenkel"), and Land

Title Associates Escrow ("Land Escrow") (collectively, the "Stern Defendants"), and

counterclaims against the plaintiffs.  The crossclaims asserted against the Stern Defendants are

the same as those asserted against the Third Party Defendants.

On May 29, 2008, with Court approval, Safrin filed an amended third party complaint

containing crossclaims and counterclaims, which asserts the same claims for relief against the

Third Party Defendants and the Stern Defendants as were interposed against these parties in the

original third party complaint.  (Docket Entry No. 93.)

On June 17, 2008, Third Party Defendants BIR and Friedman filed the present motion to

dismiss (Docket Entry No. 133) Safrin's Amended Third Party Complaint ("TPC").

## STATEMENT OF FACTS

### A.    The Underlying Complaint In The Main Action

On December 27, 2007, plaintiffs commenced an action in this Court against Safrin,

Stern, Frenkel, First Republic LLC and Land Escrow (the "Main Action") (A copy of the

summons and complaint (the "Complaint") is attached to the Amended Third Party Complaint

(Exhibit 1 to the Declaration of Jonathan D. Lupkin, dated July 31, 2008 ("Lupkin Decl."), as

Exhibit A).  (TPC ¶ 1.)  The gravamen of plaintiffs' claims are that they were misled into

"investing" $13 million towards the purchase of a real estate portfolio and that someone stole

that money from the designated escrow account into which the $13 million had been deposited,

leaving plaintiffs with neither their $13 million nor any interest in the real estate portfolio.  (TPC

¶¶ 32, 55; Compl. ¶¶ 32, 58.)

The Complaint begins with plaintiff Amusement Industry, Inc.'s acceptance of an

investment proposal presented by Alevy and Friedman, on behalf of First Republic Group Corp.

("First Republic Corp.").  (TPC ¶¶ 25, 29; Compl. ¶ 31.)  The proposal contemplated First

Republic Corp.'s purchase from non-party Colonial Realty Limited Partnership ("Colonial Realty") of a certain real estate portfolio consisting of shopping centers located in southeastern United States (the "Property Portfolio").  (TPC ¶ 25; Compl. ¶¶ 24, 30-31.)  First Republic Corp., which is solely owned by defendant Mark Stern, contracted to buy the property in April, 2007. (TPC ¶ 20; Compl. ¶ 24.)  At some point, First Republic Corp. assigned its interest in the Property Portfolio to First Republic Group Realty LLC ("First Republic LLC") (TPC ¶ 20; Compl. ¶ 24).

Although the Complaint names Safrin, a well-respected name in the real estate industry, as a defendant, Safrin was unaware of any of the transactions at issue in the Main Action until shortly before being served with process.  (TPC ¶¶ 2, 57.)  Plaintiffs, who complain of a host of wrongdoing in connection with the purchase and financing of the Property Portfolio, premise their entire case against Safrin on their contention that he participated in these transactions and negotiations through Friedman, who purportedly acted for and spoke as Safrin's attorney and agent.  (TPC ¶¶ 2, 27; Compl. ¶ 32.)

**B.    The Parties**

Defendant/Third Party-Crossclaim-Counterclaim-Plaintiff Joshua Safrin is an individual and citizen of the State of New York, residing at 50 Riverside Drive, Apt. 2A, New York, New York, 10024.  (TPC ¶ 4; Compl. ¶ 4.)

Third Party Defendant Friedman is an individual and citizen of the State of New York. (TPC ¶ 5).  Friedman is an attorney with and shareholder in the law firm BIR.  (TPC ¶ 5; Compl. ¶ 8.)  At all times relevant to the Complaint, Friedman was acting in his capacity as an attorney and shareholder of BIR.  (TPC ¶ 5.)

Third Party Defendant BIR is a professional corporation organized under the laws of Pennsylvania, which maintains offices for the practice of law at 620 Eighth Avenue, 23rd Floor, New York, NY 10018-1669.  (TPC ¶ 6.)  Friedman practices out of BIR's New York office. (TPC ¶ 6.)

Third Party Defendant Alevy is an individual and citizen of the State of New York, residing at 275 West 96th St, New York, New York, 10025. (TPC ¶ 7.)   Alevy is Managing Director of Bankers Capital, and is the son of Allen Alevy, the sole shareholder of plaintiff Amusement Industry, Inc. (TPC ¶ 7; Compl. ¶ 30.)

Third-Party Defendant Bankers Capital was and is a limited liability company with its principal place of business at 575 Madison Avenue, 10th floor, New York, NY 10022. (TPC ¶ 8.) Safrin alleges that at all times relevant to the Complaint, Alevy was acting in his capacity as an employee and Managing Director of Bankers Capital. (TPC ¶ 8; Compl. ¶ 30.)

Third Party Defendant First Republic Corp. is a corporation organized under the law of New York, with its principal place of business at 241 Fifth Avenue, Suite 302, New York, New York 10016. (TPC ¶ 9; Compl. ¶ 6.) Safrin alleges that First Republic Corp. is solely owned and controlled by defendant Stern. (TPC ¶ 9; Compl. ¶ 6.)

Plaintiff/Counterclaim-Defendant Amusement Industry, Inc., dba Westland Industries, is a corporation organized under the laws of the State of California with its principal place of business at 6665 Long Beach Blvd., Long Beach, California, 90805. (TPC ¶ 10; Compl. ¶ 1.)

Plaintiff/Counterclaim Defendant Practical Finance Co., Inc. ("Practical Finance"), is a corporation organized under the laws of the State of California with its principal place of business at 6665 Long Beach Blvd., Long Beach, California, 90805. (TPC ¶ 11; Compl. ¶ 2.)

Defendant/Crossclaim Defendant Stern is an individual and citizen of the State of New York residing at 39 Remsen Avenue, Monsey, New York, 10952. (TPC ¶ 12; Compl. ¶ 3.)

Defendant/Crossclaim Defendant Frenkel is an individual and citizen of the State of New York. (TPC ¶ 13; Compl. ¶ 13.)

Defendant/Crossclaim Defendant Land Escrow was and is a limited liability company organized under the laws of the State of New York with its principal place of business at 1979 Marcus Avenue, Suite 210, Lake Success, New York 11042, operating under the name "Land Title Associates." (TPC ¶ 15; Compl. ¶ 14.)

Defendant/Crossclaim Defendant First Republic LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York County in the State of New York.  (TPC ¶ 14; Compl. ¶ 5.)  The Complaint further alleges the following ownership and management structure of First Republic LLC (Compl. ¶¶ 5, 9-12):



## C.    <u>The Citigroup Loan Documents</u>

Plaintiffs allege that Stern and Safrin obtained financing for the purchase of the Property Portfolio by executing two loan agreements with Citigroup Global Markets Realty Corp. ("Citigroup") on behalf of various purchasing entities.  (TPC ¶ 21; Compl. ¶¶ 25-26.)  First Republic LLC executed a loan agreement with Citigroup for $111,150,000.00 and FRGR Managing Member LLC, a constituent member of the First Republic LLC ownership structure, executed a Mezzanine Loan Agreement with Citigroup for $15,000,000.00.  (TPC ¶ 21; Compl. ¶¶ 25-26.)  Both loan agreements are dated as of July 11, 2007, and define "Guarantor" to include Safrin.  (TPC ¶ 21.)

The purported signatures of Safrin on these documents are forgeries, as confirmed by a highly reputable handwriting expert with 40 years of experience in the field.  (See Exhibit 1 to the Lupkin Decl. (Amended Third Party Complaint), at Exhibit B.)  (TPC ¶ 22.)

**D.    Plaintiffs' Investment**

Plaintiffs allege that because the Citigroup loan was insufficient to enable First Republic LLC to purchase the Property Portfolio, Safrin and Stern approached mortgage broker Alevy, of Bankers Capital, and Friedman, for the purpose of obtaining the additional necessary financing. (TPC ¶ 23; Compl. ¶ 28-30).  Safrin never made any such approach. (TPC ¶ 24).

According to the Complaint, on June 29, 2007, Alevy and Friedman presented an investment opportunity to Amusement, purportedly on behalf of Safrin and Stern, to raise funds sufficient to complete the Property Portfolio Purchase. (TPC ¶ 25; Compl. ¶ 31).  Safrin never authorized Alevy or Friedman to present any opportunity to Amusement. (TPC ¶ 26).

Plaintiffs allege that Friedman "represented" Stern, Safrin and later First Republic LLC in their purported "communications and dealings with [P]laintiffs."  (TPC ¶ 27; Compl. ¶ 32) Plaintiffs also allege that Friedman owed a separate fiduciary duty to Amusement because he had previously represented Amusement, as well as its sole shareholder, Allen Alevy, and his son, Steven Alevy, in various legal matters. (TPC ¶ 27, Compl. ¶¶ 32-33).  Plaintiffs contend that "as a result" of this previous representation by Friedman, "Friedman led Plaintiffs to believe that he had full authority to speak on behalf of Stern, Safrin and First Republic LLC." (TPC ¶ 27, Compl. ¶ 32).  Safrin never retained or otherwise authorized Friedman to speak or act on his behalf in connection with the transactions described in the Complaint.  (TPC ¶ 28.)

**1.    The June 29, 2007 "Letter of Intent"**

According to the Complaint, the investment opportunity presented by Friedman and Alevy in June, 2007, purportedly on behalf of Safrin and Stern, resulted in a "written Letter of Intent" drafted by Alevy, signed by Stern on behalf of First Republic Corp. and dated June 29, 2007. (TPC ¶ 29; Compl. ¶ 35).  Although the document is referred to as a "Letter of Intent" in the Complaint, the document characterizes itself as a Letter of Understanding (hereafter "LOI").

8

(TPC ¶ 29; Compl. Ex. 2.) The LOI identifies as its parties First Republic Corp. and Westland Industries, the name under which Amusement does business. (TPC ¶ 29; Compl. Ex. 2.) Safrin was not a party to the LOI. (TPC ¶ 30; Compl. Ex. 2.)

Plaintiffs allege that on July 2, 2007, Alevy e-mailed the so-called "Letter of Intent" to Friedman and Stern. (TPC ¶ 31; Compl. Ex. 2.)

According to the Complaint, on June 29, 2007, the same day Stern signed the LOI on behalf of First Republic Corp., Amusement wired $13,000,000.00 into the Land Escrow account. (TPC ¶ 32; Compl. ¶ 36.) Plaintiffs assert that as a result of this wire transfer, a contract formed among Amusement and the borrowers and the soliciting parties, Stern and Safrin, having the terms of the LOI. (Id.) Safrin never entered into any such contract. (TPC ¶ 33.)

### 2.    Plaintiffs' Subsequent Negotiations With Friedman

Plaintiffs allege that during the seven-day period defined by the LOI, Amusement drafted and forwarded three partnership agreements to Friedman for Safrin and Stern to sign in order "to complete a transaction." (TPC ¶ 36; Compl. ¶ 42.) After the seven day period passed without agreements being finalized, Amusement continued to negotiate through Friedman. (TPC ¶ 38, Compl. ¶¶ 44-61.)

According to the Complaint, on July 6, 2007, plaintiffs, through Friedman: (a) suggested a new Property Portfolio ownership structure; (b) inquired as to whether its $13,000,000.00 contribution to the purchase should be a loan to Stern or to the entity that would be the owner of the Property Portfolio; (c) notified Safrin and Stern that the seven-day period had expired; and (d) noted that there should be about $4,000,000.00 in reserve after the closing. (TPC ¶ 39; Compl. ¶ 44.) Plaintiffs also instructed Friedman not to authorize the release of the $13,000,000.00 held in escrow. (Id.)

Safrin was unaware of these negotiations and communications. (TPC ¶ 40.)

On that same day, July 6, 2007, counsel for Amusement also wrote to Friedman, stating that if the transaction had materially changed from the draft partnership agreements and the LOI (agreements to which only Amusement and First Republic Corp. are parties), then the wired $13

million should be returned. (TPC ¶ 41; Compl. ¶ 45.) Safrin was unaware of this communication. (TPC ¶ 42.)

On July 9, 2007, according to the Complaint, Amusement asked Friedman, in writing, for a copy of the Citigroup loan documents that provided for the majority of the financing for the Property Portfolio purchase. (TPC ¶ 43; Compl. ¶ 46.) Friedman did not provide the documents, but responded that same day, in writing, that First Republic LLC was now the purchasing entity. (TPC ¶ 43; Compl. ¶ 46.) Safrin was unaware of this representation. (TPC ¶ 44.)

During the flurry of back-and-forth communications alleged to have occurred on July 9, 2007 through Friedman, purportedly on behalf of Safrin and Stern, Friedman promised, in writing, that formal documentation of Amusement's interest in the Property Portfolio was recognized and would be completed as necessary after closing once First Republic LLC owned the property portfolio. (TPC ¶ 45; Compl. ¶ 48.) Safrin was unaware that any of these representations were being made on his behalf. (TPC ¶ 46.)

According to the Complaint, Amusement then instructed Friedman, for a second time, not to authorize release of the $13 million in escrow. (TPC ¶ 47; Compl. ¶ 51.) Amusement also instructed Land Escrow and Frenkel not to release Amusement's funds without written authorization of Sragow & Sragow, one of two firms acting as counsel of record to plaintiffs in the Main Action. (TPC ¶ 47; Compl. ¶ 51.) Safrin was unaware that Amusement's money, or indeed anyone's money, was being held in escrow in connection with the Property Portfolio's purchase or financing. (TPC ¶ 48.)

Plaintiffs allege that on July 11, 2007, Friedman provided documents to Amusement, including a Promissory Note for $13,000,000.00 signed by Stern in his individual capacity, an Escrow Agreement, and Agreements, purportedly signed by Stern and Safrin (Compl., Exs. 5 and 6), assigning their respective LLC membership interests in First Republic LLC and the underlying LLC ownership structure, and eleven grant deeds constituting the Property Portfolio, all of which were signed by Stern on behalf of First Republic LLC and notarized on July 12,

2007 (Compl., Ex. 1) (these documents are collectively referred to herein as the "Escrow Documents").  (TPC ¶ 49; Compl. ¶ 52.)

Safrin's signature on the "Agreement" that purportedly assigns his LLC interests ("Assignment Agreement") is a forgery, as confirmed by a highly reputable handwriting expert with 40 years of experience in the field. (See Lupkin, Decl., Exhibit 1 (Amended Third Party Complaint), at Exhibit B) (TPC ¶ 50.)  Moreover, Safrin's forged signature, as it appears in the document, is not witnessed, as required by the form itself.  (TPC ¶ 50.)

### 3.    The July 11, 2007 Counter Offer

According to the Complaint, on July 11, 2007, Amusement communicated to Safrin, Stern, and First Republic LLC, in writing "through Friedman" a "counter offer" because it disagreed with the characterization of the transaction among the parties reflected in the Escrow Documents, including that the money from Amusement was a loan.  (TPC ¶ 51; Compl. ¶ 53.) Amusement declared that there would be no loan.  (TPC ¶ 51; Compl. ¶ 53.)  Rather, the $13,000,000.00 would be treated as a direct investment with a preferred right to return of this investment within 45 days.  (TPC ¶ 51; Compl. ¶ 53.)  In addition, the repayment right would be increased to $15,000,000.00 because of some $4,000,000.00 remaining in reserve after closing. (TPC ¶ 51; Compl. ¶ 53.)  Amusement also demanded conveyance to Amusement of 100% of the Property Portfolio by deeding all eleven properties to Amusement, together with the conveyance of the LLC membership interests, and noted that Stern and Safrin would have a limited option to repurchase the grant deeds and a 50% ownership interest by providing "the partnership agreement" (presumably an executed copy of the document attached to the Complaint as Ex. 3) within a period of 45 days. (TPC ¶ 51; Compl. ¶ 53.)  Safrin was unaware of these communications.  (TPC ¶ 52.)

According to the Complaint, Friedman responded, telling Amusement that it "should not worry as Amusement now owned the whole thing," and the following day, provided a $15,000,000.00 promissory note signed by Stern in his individual capacity.  (TPC ¶ 53; Compl. ¶

56 & Ex. 7.)  Safrin was unaware of Friedman's representation and never authorized Friedman to make it.  (TPC ¶ 54.)

Plaintiffs allege that on July 12, 2007, Frenkel and Land Escrow "took and used" the $13,000,000.00 in escrow based on verbal and written instructions from Alevy, without notice or authorization from Amusement.  (TPC ¶ 55; Compl. ¶¶ 58, 63.)

E.    **Safrin Had No Involvement In The Transactions Alleged In The Complaint**

Although the Complaint names Safrin, a well-respected name in the real estate industry, as a defendant, Safrin was unaware of any of the transactions at issue in the Main Action until shortly before being served with process.  (TPC ¶¶ 2, 57.)  Plaintiffs, premise their entire case against Safrin on the claim that he participated in these transactions and negotiations through Friedman, who purportedly acted for and spoke as Safrin's attorney and agent.[3]  (TPC ¶ 2; Compl. ¶ 32.)  Beginning with Friedman's presentation of the investment opportunity to plaintiffs in June, 2007, the Complaint alleges that all of the negotiations at issue occurred through Friedman:

> Stern and Safrin, and later First Republic LLC, were represented by attorney Friedman in their communications and dealings with plaintiffs . . . Friedman led plaintiffs to believe that he had full authority to speak on behalf of Stern, Safrin, and First Republic LLC concerning their purchase of the property portfolio, and upon information and belief Friedman had such authority when communication occurred with plaintiffs, and Allen Alevy.

(Compl. ¶ 32.)

In essence, paragraph 32 declares Friedman to be the conduit for, and speaker and recipient of, all communications with plaintiffs that follow, thereby establishing the lens through which to view the remaining 240-odd paragraphs in the pleading.  By incorporating this

---

[3] Plaintiffs, who cannot plausibly allege that Safrin played any role in the transaction at issue, nevertheless attempt to assert claims against him for: (i) declaratory relief (Count 1); (ii) quiet title (Count 3); judicial foreclosure of real property (Count 5); (iii) breach of contract (Counts 6, 8, 9, 11, 12 and 16); (iv) fraud (Counts 19, 20, 23); (v) fraud in the inducement (Counts 15 and 17); (vi) fraudulent concealment (Counts 17, 21); (viii) negligent misrepresentation (Counts 18, 20, and 22); (ix) Conversion (Count 24); (x) conspiracy to commit conversion and fraud (Count 25); (xi) unjust enrichment (Count 26); and (xii) breach of fiduciary duty (Count 27).

allegation at the outset of all 27 counts, the Complaint renders this allegation indispensable to each of the purported claims.  (Compl. ¶ 32.)

Safrin was unaware that Friedman represented to plaintiffs that he (Friedman) was Safrin's agent or attorney, did not authorize Friedman to make any such representations, and had no knowledge of any of the representations or actions described in the Complaint that were purportedly undertaken by Friedman on his behalf.  (TPC ¶¶ 63-66.)

As set forth more fully below, Friedman, together with others, was an integral part of a scheme to misappropriate Safrin's identity (i.e., his name, stellar reputation in the real estate industry, and financial wherewithal) in order to secure financing for the Property Portfolio.

## ARGUMENT

I.    **SAFRIN'S CLAIMS FOR INDEMNITY AGAINST THE ATTORNEY DEFENDANTS -- WHO MADE REPESENTATIONS THAT PLAINTIFFS CONTEND CAUSED THEM DAMAGE AND ENTERED INTO CONTRACTS THAT PLAINTIFFS CONTEND HAVE BEEN BREACHED -- ARE MORE THAN SUFFICIENT**

The only arguments that the Attorney Defendants offer for dismissal of Safrin's indemnity claims are:  (a) that Safrin cannot plead common law indemnity (Count I), which essentially requires the putative indemnitee to be faultless, because if Safrin is held liable to the plaintiffs, then he necessarily will have been found to be at fault himself; and (b) that Safrin cannot, as he does, deny any contractual relationship between him and BIR (i.e. a principal-agent or attorney-client relationship) and simultaneously allege an implied contractual right to indemnification (Count III).  (See Attorney Defendants' Memorandum of Law in Support of Their Motion to Dismiss (Docket Entry No. 134) ("Defs' Mem.") at 6-8.)  Neither argument has merit.  First, any finding that Safrin is liable to the plaintiffs would be vicarious in nature, premised upon the acts of his "agent" (Friedman) operating with apparent, but not actual, authority.  Contrary to the Attorney Defendants' assertions, a finding of vicarious liability is tantamount to a finding of liability *without* actual fault, such a finding is consistent with a claim for common law indemnity, which requires, as a prerequisite to recovery, that the putative

13

indemnitor (i.e., the actual tortfeasor whose conduct formed the basis for the vicarious liability)

is primarily responsible for the loss at issue. <u>Second</u>, Safrin's hypothetical pleading in Count III

-- i.e., that *if* the Attorney Defendants had authority to act on his behalf *then* they may be held

liable to him -- is entirely proper under the Federal Rules.  In any event, though, the Court cannot

determine relative liability or relationships among the parties at this early stage in the litigation.

**A.    Safrin States A Claim For Common Law Indemnity (Count I)
       Because There Exists The Possibility That Safrin Might Be Found
       Liable Without His Simultaneously Being Found To Be "At Fault"**

The Attorney Defendants contend that "if Safrin is found liable, it will not be primarily

[their] fault . . . because Safrin will necessarily have been found at fault." (Defs' Mem. at 7.)

This assertion has no merit (and no support) and is, in any event, premature; at this stage in the

litigation, the Court cannot determine liability among the parties.

Common law or "implied in law" indemnity "is a tort based right to indemnification

found when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has

paid for a loss that was primarily the responsibility of the other." <u>Cevasco v. Nat'l R.R.</u>

<u>Passenger Corp.</u>, No. 04 Civ. 5760 (PAC) (GWG), 2007 WL 4440922, at *6 (S.D.N.Y. Dec. 18,

2007) (Gorenstein, J) (holding that proposed complaint stated claim for indemnification);

<u>Zamierowski v. Nat'l R.R. Passenger Corp.</u>, No. 05 Civ. 9309 (WCC), 2006 WL 1816377, at *7

(S.D.N.Y. June 28, 2006) (railroad defendants' common law indemnity cross claims against

Club held sufficient where plaintiffs in the action "brought negligence claims against both the

railroad defendants and [the club]" arising out accident whereby Amtrak train killed plaintiff's

decedent as he was attempting to pass through an unsignaled, ungated private railway crossing

en route to the club).

The factual predicate for Safrin's indemnity claims is quite simple:  Plaintiffs allege

claims of negligent misrepresentation, breach of fiduciary duty and conversion, as well as a host

of fraud claims against Safrin in connection with a series of transactions and negotiations, but

premise their entire case against Safrin on the claim that he participated in these transactions and

negotiations entirely through Friedman. Thus, to the extent that Safrin may be found liable to plaintiffs for these various torts and breaches of duty, Safrin is entitled to common law indemnity because such liability would result in his paying "for a loss that was primarily the responsibility of the other [tortfeasor]" -- namely, BIR and Friedman.[4]  Cevasco, 2007 WL 4440922, at *6.

The Attorney Defendants dispute this. They argue that Safrin may only be found liable for the actions of the Attorney Defendants upon a showing of a principal-agent relationship, established through a finding of apparent authority. Were such authority to be established, Safrin necessarily will have been found "at fault" or "negligen[t]," (Defs' Mem. at 7-8), thereby precluding a claim for common law indemnity. This assertion has no merit.

Even assuming that Safrin, through his words or deeds, conferred apparent authority upon the Attorney Defendants, it does not follow that such a finding would compel the conclusion that Safrin "violated the same duty to the plaintiff[s]" that the Attorney Defendants violated, see Zamierowski, 2006 WL 1816377, at *7, let alone constitute an abstract finding of fault or negligence on Safrin's part. To the contrary, the most common context in which common law indemnity arises is in situations like this involving "vicarious liability without actual fault on the part of the proposed indemnitee." Cevasco, 2007 WL 4440922, at *6.

"It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." Williams v. Congregation Yetev Lev, No. 01 CV 2030 (GBD), 2008 WL 852450 at *5 (S.D.N.Y. Mar. 31, 2008) (quoting Meyer v. Holley, 537 U.S. 280, 285, 123 S.Ct. 824, 829, 154 L.Ed.2d 753 (2003)). Moreover, the general rule is that a principal may be

---

[4] The Attorney Defendants assert that there is no allegation that they are primarily responsible for plaintiffs' loss. (Defs' Mem. at 8.) This is patently untrue. (See TPC ¶ 68.) In any event, the Attorney Defendants base this contention on their myopic characterization of plaintiffs' allegations as involving only the loss of their funds from escrow, and Safrin's allegation that Alevy authorized release of the money from escrow. But plaintiffs allege 27 separate causes of action, the bulk of which have been asserted against Safrin, including a number for fraudulent inducement and negligent misrepresentation claims and other wrongs. These are premised entirely on statements made by Friedman and information concealed by Friedman during negotiations. (See, e.g., Compl. ¶ 32.) These claims, however meritless they may be, are still alive, and go beyond simply stealing plaintiffs' $13 million from escrow.

held vicariously liable for the acts of his agent that fall within his apparent authority, even though those acts exceed the agent's actual authority. See Gleason v. Temple Hill Assocs., 159 A.D.2d 682, 683-84, 553 N.Y.S.2d 430, 432 (2d Dep't 1990); *Restatement (Third) Agency* § 7.03. On the other hand, "the agent remains liable to the principal for the agent's negligence; indemnification also *is a fundamental element of the principal-agent relationship*." Gleason, 159 A.D.2d at 684, 553 N.Y.S.2d at 432 (emphasis added) (finding it "clear [that insurer] would be liable in the event that unauthorized acts of its agents . . . , acting within the scope of their apparent, but not actual, authority, misled the plaintiff. In that event, [the agents] would remain liable to Norfolk for any loss resulting from their negligence as [insurer]'s agents").

Finally, even though the party seeking common law indemnification "must ultimately show that it is free from fault, adjudication of this issue is normally not possible at the pleading stage." Cevasco, 2007 WL 4440922, at *6. Safrin's allegations -- i.e., his explicit denial of "any wrongdoing or fault" (TPC ¶ 68) and his claim that "[t]o the extent that he may be found liable to Plaintiffs for damages, however, such damages were caused, in **whole** or in part, by the wrongful conduct of one or more of the Defendants" (TPC ¶ 68 (emphasis added)) -- are more than sufficient, at this stage in the proceedings, for his indemnification claim to survive.[5] See Cevasco, 2007 WL 4440922, at *7 (concluding that because "we cannot look beyond Amtrak's assertion -- implicit in the complaint -- that Amtrak ultimately may be found liable in this case

---

[5] The two cases cited by the Attorney Defendants for purported pleading requirements were actually decided on summary judgment motions -- not motions to dismiss for failure to state a claim. (See Defs' Mem. at 6 (citing Triguero v. Consol. Rail Corp., 932 F.2d 95, 101-102 (2d Cir. 1991) (affirming summary judgment dismissing contractual indemnity claim where the record did not reflect relationship on which defendant could hang its indemnity claim); Pennisi v. Standard Fruit & S.S. Co., 206 A.D.2d 290, 293, 614 N.Y.S.2d 519, 522 (1st Dep't 1994) (holding that "[t]he record . . . precludes a finding at this time as to the existence or nonexistence of an implied contract to indemnity")). Indeed, most of the cases cited by the Attorney Defendants in the indemnity section of their brief do not involve a motion to dismiss on the pleadings. (See Defs' Mem. at 5-6.) (citing Cigna Co. v. A.I. Bazzini Co., No. 87 Civ. 6877 (SWK), 1990 WL 160901, at *5 (S.D.N.Y. Oct. 16, 1990) (decided on summary judgment decision, although the Attorney Defendants' parenthetical ambiguously states only that it involves the "dismissing" of a third party claim) (Defs' Mem. at 5.); SSDW Co. v. Feldman-Misthopoulos Assocs., 151 A.D.2d 293, 542 N.Y.S.2d 564 (1st Dep't 1989) (granting summary judgment dismissing third party complaint); People's Democratic Republic of Yemen v. Goodpasture, Inc., 782 F.2d 346, 351-352 (2d Cir. 1986) (dismissing complaint on appeal following a non-jury bench trial); Highland Capital Mgmt, L.P. v. Schneider, 533 F. Supp. 2d 345 (S.D.N.Y. 2008) (granting summary judgment dismissing third party complaint)).

without necessarily being found negligent . . . the proposed complaint states a claim for indemnification"); Zamierowski, 2006 WL 1816377, at *7 (holding that dismissal of railroad defendants' common law indemnity cross claims against Club, where plaintiffs in the action brought negligence claims against both the railroad defendants and the club, was precluded because "[a]t this stage of the proceedings, the Court cannot determine liability among the parties").

For these reasons, Safrin's common law indemnity claim must be permitted to stand.

**B.      The Attorney Defendants' Argument For Dismissal Of Safrin's Implied Contractual Indemnity Claim (Count III) Is Completely At Odds With The Rules Governing Pleading In Federal Court**

The Attorney Defendants' sole argument for dismissal of Safrin's implied contractual (or implied-in-fact)[6] indemnity claim is that Safrin's "denial of any contractual relationship between him and BIR makes it impossible for him to allege an implied contractual right to indemnification; because of Safrin's denial, according to BIR, "there is nothing from which to create any implied obligation running from BIR to Safrin."[7] (Defs' Mem. at 6.) The Attorney Defendants' argument is nothing but a naive refusal to acknowledge the proper use of hypothetical pleading and the assertion of inconsistent claims or defenses under Fed R. Civ. P. 8, as well as the obvious reality of pleading an indemnification claim in the context of third party practice.

Contrary to the Attorney Defendants' contention, Safrin's implied contractual indemnity claim is properly premised (or contingent) upon a hypothetical finding that the Attorney

---

[6] The Attorney Defendants confuse the different kinds of implied indemnity. As made clear by the cases even they cite, implied contractual indemnity and "implied in fact" indemnity are the same thing. See People's Democratic Republic, 782 F.2d at 351 (cited at Defs' Mem. at 5.). "Implied in law" or "common law indemnity" (which the Attorney Defendants mistakenly refer to as "implied in fact" indemnity, see Defs' Mem. at 6.) is a tort based right to indemnification found when there is a great disparity in the fault of two tortfeasors. Id.; Cevasco, 2007 WL 4440922, at *6.

[7] The Attorney Defendants' characterize Safrin's allegations as denying "any contractual relationship between he and BIR." (Defs' Mem. at 6 (citing TPC ¶¶ 28, 63, 65, 66, 72, 73).) More precisely, though these paragraphs allege that the Attorney Defendants were never engaged, retained or authorized to act or speak on his behalf in connection with the transactions alleged in the Complaint.

Defendants were his attorneys/agents with some authority to act on his behalf -- i.e., a finding of

a relationship from which an implied obligation would flow.[8] See , e.g., TPC ¶ 76 ("*If*

*Friedman/BIR are determined to have been Safrin's agents or attorneys, with some authority to*

*make representations to act towards, or make representations to, plaintiffs or others on his behalf*

*in connection with the transactions alleged in the Complaint, then: (a) Safrin transferred any*

*duties owed to the Plaintiffs and others by implied agreement with Friedman/BIR; (b)*

*Friedman/BIR agreed to assume responsibility for those duties in connection with the*

*transactions alleged in the Complaint, and (c) Friedman/BIR breached these duties*) (emphasis

added). In other words, the entire claim is contingent on a finding of a "relationship."

Under the Federal Rules of Civil Procedure, it is to entirely proper to assert such a

contingent claim. See Celebrity Cruises Inc. v. Essef Corp., 530 F. Supp. 2d 532, 540 (S.D.N.Y.

2008) ("Nothing prevents Essef from pleading in the alternative by, as in this instance, asserting

a contingent or hypothetical claim: if Essef is found to have waived comparative negligence,

only then does it have a malpractice claim arising out of that failure") (citing Lawser v. Poudre

School District R-1, 171 F. Supp. 2d 1155, 1158 (D. Colo. 2001); 5 Wright & Miller, *Federal*

*Practice and Procedure: Civil 2d* § 1282 (2001 Pocket Part) (explaining that hypothetical

pleading "is formulated as 'if-then' allegations"); see also Padre Shipping, Inc. v. Yong He

Shipping, 553 F.Supp.2d 328, 333 (S.D.N.Y. 2008) ("Under federal pleading rules, plaintiffs are

allowed to assert inconsistent facts in support of alternative claims . . . ."); Ascher v. Target

Corp., 522 F. Supp. 2d 452, 458 (E.D.N.Y. 2007) (Under Fed. R. Civ. P. 8 "a defendant is

entitled to plead in the alternative . . . therefore, the Court cannot construe one claim as an

---

[8] The fact that the claim is premised on such a finding distinguishes it from the decision in Bankers Trust Co. v.
State Street Bank & Trust Co., No. 96 Civ. 7573 (RPP), 1998 WL 355418, at *5 (S.D.N.Y. July 2, 1998), cited by
the Attorney Defendants. (Defs' Mem. at 4-5.) In Bankers Trust, there simply was "no contractual relationship"
between plaintiff BT, the custodian of assets of bricklayers pension fund that acquired a Connecticut fund in a
merger and assumed the role of custodian of assets of the combined entity, on the one hand, and SSB, the custodian
of assets of the Connecticut fund prior to the merger, on the other, sufficient to support an indemnification claim
when BT improperly relied on information provided by SSB about the transfer of funds in connection with the
merger and mistakenly sold stock. Bankers Trust , 1998 WL 355418, at * 5. Here, in contrast, the vitality of
Safrin's claim hinges on a finding of an actual relationship.

admission against another alternative or inconsistent claim"); Henry v. Daytop Village, Inc., 42

F.3d 89, 95 (2d Cir. 1994) (recognizing that "[t]he inconsistency may lie either in the statement

of the facts or in the legal theories adopted . . . ."); Lader v. Dahlberg, 2 F.R.D. 49, 50 (S.D.N.Y.

1941) (noting that the Federal Rules of Civil Procedure "contemplate a disposition of all issues

between litigants in a single law suit," regardless of whether stated "alternatively or

hypothetically") (citing Fed. R. Civ. P. 8).  In sum, the predicate pled for the contingent claim

"does not operate as a binding admission."  Celebrity Cruises Inc., 530 F. Supp. 2d at 540-41.

 Nowhere is this basic principle more evident than in the pleading of indemnity or

contribution claims in the context of a third party complaint.  As a leading New York treatise has

observed, a "prototypical instance of pleading hypothetically is an indemnity or contribution

claim: a plaintiff pleads that *if* it incurs a loss or liability, *then* the defendant is liable to it for

indemnity or contribution."  Robert L. Haig ed., 1 *Business & Commercial Litigation in Federal

Courts* § 6:26 (2d ed. 2007) (emphasis added); see Headman v. Berman Leasing Co., 352 F.

Supp. 211, 213 (E.D. Pa. 1972) (rejecting plaintiff's contention that defendant's cross-claim,

seeking indemnity and contribution in the event of a recovery against it, was inconsistent with

the defendant's denial of agency in its answer).[9]

 Thus, it is entirely proper for Safrin to allege that he never retained or authorized the

Attorney Defendants to act on his behalf in connection with the transactions alleged in the

Complaint and that they had no authority to do so, but simultaneously to allege, that "if" the

contrary is found, "then" the Attorney Defendants may be held liable to him.  Accordingly, the

Attorney Defendants' motion to dismiss Safrin's implied contractual indemnity claim must be

denied.

---

[9] Indeed, this scenario is illustrated by this Court's decision in Highland Capital Mgmt, L.P, 533 F. Supp. at 350 (granting summary judgment and dismissing as moot claims premised on a finding that RBC was the Schneiders' agent; the Court had already found as a matter of law that "there is no evidence supporting plaintiffs' theory that RBC acted as an agent with the authority to bind the Schneiders . . ."), which is cited throughout the moving papers. (See Defs' Mem. at 6, 7, 9, 10.)

## II.    BECAUSE SAFRIN'S VARIOUS BREACH OF DUTY CLAIMS ARE CONTINGENT ON A FINDING OF AN ATTORNEY-CLIENT OR AGENCY RELATIONSHIP, SAFRIN STATES A CLAIM, NOTWITHSTANDING HIS DENIAL OF SUCH A RELATIONSHIP

Safrin alleges in Count IV that if Friedman/BIR are determined to have been acting as his agents or attorneys, then they owed him certain duties (e,g., the duty of loyalty, a fiduciary duty, duty of reasonable care) and that they breached those duties.  The breaches would include having exceeded the scope of their authority, and, without Safrin's knowledge or consent, committing Safrin to participate in a major real estate transaction by using his name and confidential information and improperly representing that they had authority to do so.  (TPC ¶¶ 79-83.)  The Attorney Defendants mistakenly argue that because Safrin denies any relationship with BIR, his breach of duty claims must fail because "in the absence of any relationship, no fiduciary relationship exists between Safrin and BIR."  (Defs' Mem. at 12.)  Because Safrin's breach of duty claims (Count IV) are *premised* on the hypothetical finding that the Attorney Defendants were acting as his agents or attorneys, they are more than sufficient under Rule 8 to state a claim. (See supra, Point I.B.)

The fact that the Attorney Defendants deny that they represented Safrin in the transaction at issue (Defs' Mem. at 12.) does not alter this result.  At the moment, plaintiffs have asserted a host of claims against Safrin, all based on the conduct and statements of Friedman, and all purportedly undertaken on Safrin's behalf.  As a final adjudication of plaintiffs' claims has yet to be rendered, it remains theoretically possible for Friedman to be found as having had some authority to act on Safrin's behalf.  Hence, since Safrin's claims in Count IV are expressly pled as contingent, the Attorney Defendants' motion to dismiss Count IV must be dismissed.

## III.   BECAUSE THE THREAT OF LITIGATION HAS ALREADY BEEN REALIZED, THIS ACTION IS, BY DEFINTION, "AN ACTUAL CASE OR CONTROVERSY" WITHIN THE MEANING OF THE DECLARATORY JUDGMENT ACT

In Count II, Safrin seeks a declaration that: (a) no attorney-client or other principal-agency relationship existed between Safrin and Friedman/BIR in connection with the transactions alleged in the Complaint; (b) Friedman/BIR had no authority, whether actual or

apparent, to act on Safrin's behalf in connection with the transactions alleged in the Complaint;
and (c) Safrin did not ratify any of the representations or conduct allegedly made or undertaken
on his behalf by Friedman/BIR in connection with the transactions alleged in the Complaint.
(TPC ¶ 73.)

Citing to a litany of inapplicable cases in which plaintiffs failed to establish "an actual
controversy" sufficient to invoke the Court's subject matter jurisdiction, the Attorney Defendants
argue that Safrin's declaratory judgment claim must be dismissed because there is no threat of
impending litigation. (Defs' Mem. at 10-11.) However, because a lawsuit has, in fact, been
commenced against Safrin, there is, definitionally, "an actual case or controversy" before the
Court.

The Declaratory Judgment Act provides, in relevant part:

> In a case of actual controversy within its jurisdiction ... any court of the
> United States, upon the filing of an appropriate pleading, may declare the
> rights and other legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The general purpose of this Act "is to provide an immediate forum for the
adjudication of rights and obligations in an actual controversy." Travelers Indem. Co. v. Crown
Cork & Seal Co., Inc., 865 F. Supp. 1083, 1088 (S.D.N.Y. 1994) (finding that plaintiffs pleaded
an actual controversy where "plaintiffs here are confronted with actual claims against them.").
Whether an "actual controversy" is present "within the meaning of the statute depends on
'whether the facts alleged . . . show that there is a substantial controversy between the parties
having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a
declaratory judgment.'" Evans Med. Ltd. v. Am. Cynamid Co., 980 F. Supp. 132, 135 (S.D.N.Y.
1997). Accordingly, it is precisely because "the threat of litigation between Safrin and BIR has
been realized" (Defs' Mem. at 11.), that this count satisfies the actual controversy requirement.[10]

---

[10]   For this reason, the cases cited by the Attorney Defendants are inapposite. See, e.g., Shell Oil Corp. v. Amoco
Corp., 970 F.2d 885, 889 (Fed. Cir. 1992) (actual controversy did not exist because there was neither an express
charge of infringement nor a threat of an infringement suit); Evans Med., 980 F. Supp. at 138 ("[b]ecause
defendants' allegations do not state a case or controversy... we lack subject matter jurisdiction under the
Declaratory Judgment Act...."); Dataline v. MCI Worldcom, No. 00 CIV. 1578 LAP, 2001 WL 102336, at *6

The Attorney Defendants also contend that a declaration is "unnecessary" in light of the claims in the main action. (Defs' Mem. at 11.) But it is not for the Attorney Defendants to determine how Safrin should litigate his affirmative claims. This claim is "necessary" because other parties to this litigation (i.e., Alevy and Bankers) have asserted cross claims against the Attorney Defendants, and the Attorney Defendants (and perhaps others) may choose to claim over against Safrin. The declaratory judgment Safrin seeks would clarify legal relations among the parties and resolve the questions pertaining to Safrin's potential liability once and for all.

Thus, the Attorney Defendants' motion to dismiss Safrin's declaratory judgment claim should be denied.

### IV.    SAFRIN'S ALLEGATIONS OF A NONCONSENSUAL COMMERICIAL USE OF HIS NAME STATE A CLAIM UNDER SECTIONS 50 AND 51 OF THE NEW YORK CIVIL RIGHTS LAW

The Attorney Defendants' sole argument for dismissal of Safrin's claim under § 51 of the New York Civil Rights Law is that "there are no allegations that BIR, which was not even a party to the transaction, used Safrin's name for advertising or trade purposes as required under the statutes." (Defs' Mem. at 14.)  Because this argument fails squarely to address the allegations in Safrin's Amended Third Party Complaint -- i.e., that Defendants misappropriated Safrin's identity and stellar reputation in the real estate industry in order to obtain the necessary financing from Citigroup as well as to entice plaintiffs into making its $13 million investment, all for the purpose of making a profit and developing business for their own benefit (TPC ¶¶ 89-90), the Attorney Defendants' motion to dismiss must be denied.

---

(S.D.N.Y. Feb. 6, 2001) (dismissing declaratory judgment claim for lack of jurisdiction where plaintiff failed to establish an actual controversy).  Moreover, May Dep't Stores v. Employees Ret. Sys. of Alabama, No. 93 Civ. 0879 (JSM), 1993 WL 362389 (S.D.N.Y. Sept. 14, 1993) and Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., No. 95 Civ. 8833 (RPP), 1996 WL 71492 (S.D.N.Y. Feb. 20, 1996) (see Defs' Mem. at 10-11.), actually support Safrin's position.  In May Dep't Stores, the Court found the declaratory judgment action to be within its subject matter jurisdiction, disagreeing with defendants' argument that "there are no future concerns or legal relations which need be addressed by a declaratory action," because plaintiffs alleged that the determination of their claim was necessary to resolve the appropriateness of their acts so as to guide their actions in the future.  May Dep't Stores, 1993 WL 362389 at *2.  In Bristol-Myers, the Court denied defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), finding that plaintiffs demonstrated that an actual controversy existed; although there was no express charge of infringement, both parties believed "a lawsuit was imminent." ).  Bristol-Myers, 1996 WL 71492, at *5-6.

Section 51 of the New York Civil Rights Law protects individuals from suffering the misappropriation of their identities by another for commercial gain.  It states, in relevant part:

> Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided [in §50] may . . . sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages.

New York Civil Rights Law § 51.

As the Attorney Defendants concede, a § 51 claim "encompass[es] . . the commercial use of an individual's name or likeness." (Defs' Mem. at 13.)  See Chambers v. Time Warner, No. 00 Civ. 2839 (JSR), 2003 WL 749422, at *4 (S.D.N.Y. Mar. 5, 2003) (citations and internal quotation marks omitted) (A violation of New York Civil Rights Law § 51 requires, inter alia, a showing of "the commercial use of a person's name or photograph"); Radio Today, Inc. v. Westwood One, Inc., 684 F. Supp. 68, 75 (S.D.N.Y. 1988) (denying motion to dismiss where "[t]he thrust of plaintiffs' allegations is that defendant misused Dan Formento's name for the purpose of commercial exploitation, which, as defendant concedes, is the harm that the statute is meant to prevent").  Moreover, as the case law cited by the also Attorney Defendants acknowledges, "the courts have broadly construed what constitutes commercial misappropriation of a person's name or picture under [§§ 50 and 51]."  See Davis v. High Soc'y Magazine, Inc., 90 A.D.2d 374, 379, 457 N.Y.S.2d 308, 313 (2d Dep't 1982) (cited in Defs' Mem. at 14.).  For example, though not precisely defined, courts have found that use for "purposes of trade" encompasses **any** use motivated by profit.  Caraway v. L.S. Agency, No. 85 Civ. 1855-CSH, 1986 WL 12529, at *6 n.5 (S.D.N.Y. Oct. 27, 1986) (the definition of a use for purposes of trade "appears to encompass any use motivated by profit so long as the [Constitutional] newsworthy privilege does not apply"; held, motion to dismiss §51 claim denied) (citing Delan by Delan v.

23

CBS, Inc., 91 A.D.2d 255, 259, 458 N.Y.S.2d 608, 613 (2d Dep't 1983) ("[t]he very term 'purposes of trade' encompasses use for the purpose of making profit.")).

Faced with these broad parameters,[11] the Attorney Defendants nonetheless contend that this case is "analogous" to Griffin v. Law Firm of Harris, Beach, Wilcox, Rubin & Levey, 112 A.D.2d 514, 490 N.Y.S.2d 919 (3d Dep't 1985), which rejected the plaintiffs' § 51 claim. In Griffin, the plaintiff alleged that the defendants, at the behest of defendants' hotel owner clients, listed him as a named party in a federal lawsuit designed to block the construction of a new hotel. Id. at 516, 921. Defendants' hope, according to the Griffin plaintiff, was that the association of plaintiff's name and reputation (as a representative of the poor) with the lawsuit would spur the community to oppose the building of a new hotel, that such opposition would, in turn, defeat the new hotel, and that the defeat of the new hotel would, in turn, benefit their clients who owned the competing hotel. Id. at 515-16, 920-21. The Court dismissed the case,

---

[11] Read together, the cases suggest that use for the purpose of making a profit is sufficient to constitute a "use for the purposes of trade" within the meaning of the statute so long as the alleged use does not implicate the statute's exemption for the reporting of matters of public interest (i.e., Constitutional issues related to free speech and free press), and is not too remote or speculative from the alleged commercial purpose. See, e.g. Radio Today, 684 F. Supp. at 74-75 (finding that the alleged commercial exploitation was neither subject to the newsworthy exception nor was the use too remote or speculative vis a vis the alleged commercial purpose); Davis, 90 A.D.2d at 379 (use of a name or picture in connection with a newsworthy item is protected by the First Amendment and "is not considered a use for purposes of trade . . . irrespective of the fact that such publications are carried on largely, and even primarily, to make a profit"). Aside from Griffin, infra, most of the cases relied upon by the Attorney Defendants involve the Constitutional newsworthiness exception, which is inapplicable here. See id.; Arrington v. The New York Times Co., 55 N.Y.2d 433, 440, 434 N.E.2d 1319, 1322, 449 N.Y.S.2d 941, 944 (N.Y. 1982) (nonconsensual publication of plaintiff's photo, taken while he was walking down the street, on cover of article entitled "The Black Middle Class: Making It" failed to state a Section 51 claim where "it can hardly be questioned that the article . . . related to a subject of 'public interest'"); Beverly v. Choices Women's Med. Ctr., Inc., 78 N.Y.2d 745, 749, 587 N.E.2d 275, 276, 579 N.Y.S.2d 637, 638 (1991) (plaintiff's photo, name and professional title were used in calendar for "advertising purposes" within the meaning of Civil Rights Law § 51, and the public interest/newsworthiness and public figure doctrines did not rescue defendant from liability for this invasion of privacy); Flores v. Mosler Safe Co., 7 N.Y.2d 276, 280, 164 N.E.2d 853, 855, 196 N.Y.S.2d 975, 978 (1959) (holding that complaint stated cause of action for violation of §51 where defendant incorporated an entire newspaper article about a fire that had mentioned the plaintiff by name into a circular designed for the sole purpose of soliciting purchasers for the defendant's products). Other cases cited by the Attorney Defendants involve completely inapplicable facts, i.e., where there was no profit motive whatsoever. See Zoll v. Jordache Enters., Inc., No. 01 Civ. 1339 (CSH), 2003 WL 1964054, at *8 (S.D.N.Y. Apr. 24, 2003) ("television programs that aired the 1978 commercial as part of fashion-related stories did not have any profit motive relating to the same of Jordache jeans") and Kane v. Orange County Publ'ns, 232 A.D.2d 526, 527, 649 N.Y.S.2d 23, 25 (2d Dep't 1996) (plaintiffs failed to allege that use of their names in funeral director's open letter in newspaper in response to unfavorable publicity was for purpose of soliciting customers or to draw trade).

concluding that the contemplated use of plaintiff's name was not sufficiently related to a commercial purpose. Id. at 514-16, 920-21.

The convoluted "commercial purpose" rejected by the Griffin Court is a far cry from the concrete commercial purpose inherent in the Attorney Defendants' improper use of Safrin's name. In this case, Safrin's name and reputation were used to obtain over $100 million in financing to purchase the Property Portfolio. More specifically, the Attorney Defendants improperly used Safrin's name and reputation to secure approximately $130 million from Citigroup and $13 million from plaintiffs in order to facilitate the purchase of the Property Portfolio. It is difficult to imagine a more direct link between the misappropriation of a name and the concomitant commercial gain; the Attorney Defendants and their accomplices needed (and used) Safrin's name and formidable reputation to secure this financing, presumably, because Citigroup would not lend $130 million to just anyone.

This case is similar to the Radio Today case, decided by Judge Mukasey. In Radio Today, plaintiff Dan Formento, the producer of a rock radio show called "Flashback" alleged that the defendant deliberately mislabeled its own "Backtrack" rock program to state that Formento had produced it, "for the purpose of misleading radio stations into accepting 'Backtrack' as part of the 'Flashback' series and to exploit the plaintiffs' goodwill and reputation." The defendants moved to dismiss, arguing that the mistaken producer credit "does not constitute a use of Formento's name for advertising purposes or for purposes of trade." Radio Today, 684 F. Supp. at 74. The Court disagreed, finding that "[d]efendants' contentions simply do not engage the allegations in the Amended Complaint, where Formento alleges that defendant deliberately mislabeled the 'Backtrack' albums for the purpose of misleading radio stations into accepting 'Backtrack' as part of the 'Flashback' series and to exploit the plaintiffs' goodwill and reputations." Id. Distinguishing Griffin, the Court further found that the commercial purpose sought to be achieved through the mislabeling was not too remote or speculative to be actionable under §§ 50 and 51 of the Civil Rights Law. Id. at 75.

Coleman v. Ted's Auto Sales, Inc., 33 Misc. 2d 739, 227 N.Y.S.2d 693 (Sup. Ct. Kings Co. 1962), aff'd, 17 A.D.2d 827, 233 N.Y.S.2d 239 (2d Dep't 1962) is also instructive. There, an attorney known for representing auto dealers, alleged that the defendant, a franchised auto dealer, informed Dun and Bradstreet that the plaintiff was the treasurer and one of the three directors of the corporate defendant even though this was not true. The purported reason for this misrepresentation was to induce others to impart credit to them. The Court held that the complaint sufficiently stated a cause of action, rejecting defendants' arguments that the use did not constitute "advertising or trade":

> Shorn of all the niceties of language, the complaint alleges that the defendants used the plaintiff's name, reputation and known widespread legal talent in the automotive field for the purpose of conveying to those with whom they did business and to those from whom the defendants sought credit, the notion that the plaintiff was financially connected with the firm and was responsible for its business policies, all with the view of inducing the others, on the strength of plaintiff's reputation, to impart credit to them. The granting of credit to the defendants was a means of doing business or trade; it enabled them to carry on business or trade, if the facts alleged in the complaint are deemed to be true.

Id. at 741, 696.

The same result should follow here. The Amended Third Party Complaint alleges that the Attorney Defendants were part of a scheme to exploit commercially Safrin's name, stellar reputation in the real estate industry, and financial wherewithal in order to secure the necessary financing to purchase the Property Portfolio and that they did so for the purpose of making a profit for themselves and others, including their clients, Stern and First Republic LLC. The Attorney Defendants' motion to dismiss Safrin's claim under §§ 50 and 51 of the Civil Rights Law must therefore be dismissed.

## V.  SAFRIN STATES A CLAIM UNDER THE CALIFORNIA COMMON LAW RIGHT TO BECAUSE HE ALLEGES SEPARATE VIOLATIONS OF HIS RIGHT TO PRIVACY BASED ON CONDUCT IN CALIFORNIA

The Attorney Defendants argue in Point VI that Safrin cannot assert a claim for violation of California's common law right to privacy "because New York law, and not California law,

26

applies to Safrin's claims." (Defs' Mem. at 15.) This argument mischaracterizes Safrin's privacy claims as constituting a single claim brought pursuant to two different states' laws. This is not the case. Rather, Safrin has asserted separate causes of action based on separate conduct. The Attorney Defendants have it only half right -- New York law applies to Safrin's claims based on use of his name in New York, but California law applies to Safrin's claims based upon the use of his name in California. Accordingly, BIR and Friedman's motion to dismiss Count VI must be denied.

Under New York choice of law rules, Safrin may assert a violation of his privacy rights under California common law based upon violations of his privacy that occurred within the state of California. As even the case law cited by the Attorney Defendants makes clear, see Mathews v. ABC Television, Inc., No. 88 CIV. 6031 (SWK), 1989 WL 107640, at *4 (S.D.N.Y. Sept. 11, 1989), New York's choice of law rules for torts apply to right to privacy claims, and "these rules direct the Court to the substantive law of the state with the most significant relationship *to the violation* of the right of privacy." Id. (emphasis added). Thus, "[w]hile the usual presumption [as pointed out by BIR] with regard to choice of law questions is that the plaintiff in a privacy action may invoke the law of plaintiff's domicile, New York's choice of law rules for torts apply to privacy claims, and these rules direct the Court to the substantive law of the state with the most significant relationship to the violation of the right of privacy." Cox v. Abrams, No. 93 CIV. 6899 (RJW), 1997 WL 251532, at *9 (S.D.N.Y. May 14, 1997).

Here, the violation of the right of the California common law right of privacy is premised upon the impermissible use of Safrin's name in the state of California -- e.g., the transmission of documents containing his name to plaintiffs in California and the use of Safrin's name in connection with negotiations with plaintiffs in California. (TPC ¶¶ 95-97.) The Attorney Defendants' assertion that there are no contacts with the state of California (see Defs' Mem. at 15.), is simply incorrect. Thus, as California has the most significant relationship to these

specific alleged violations,[12] the Attorney Defendants' motions to dismiss Safrin's claim for violation of the California common law right to privacy must be denied.

## VI.    COUNTS VII AND VIII PLEAD THE EXISTENCE OF A CONSPIRACY

The Attorney Defendants contend (Point VII) that Safrin's conspiracy claims in Counts VII and VII fail to state a claim because New York does not recognize conspiracy as an independent cause of action and Safrin cannot state a claim for the primary torts. (Defs' Mem. at 16.) However, it is well-settled that although there is no substantive tort of conspiracy under New York law, "a plaintiff may plead the existence of conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." Briarpatch Ltd., L.P. v. Pate, 81 F. Supp. 2d 509, 516 (S.D.N.Y. 2000). Here, as shown supra, Safrin has stated several claims for actionable underlying torts -- various breaches of duty and violations of his right to privacy. Thus, the Attorney Defendants' motion to dismiss his conspiracy claims must be denied.

Indeed, courts in this district and in New York state have upheld conspiracy claims where plaintiffs pled the existence of an underlying tort, including conspiracy claims based on a violation of New York Civil Rights Law § 51. See Frazier v. Turning Stone Casino, 254 F. Supp. 2d 295, 313 (N.D.N.Y. 2003) (allegations sufficiently pled a claim for civil conspiracy based upon the underlying tort of invasion of privacy, as set forth in §§ 50 and 51 of the New York Civil Rights Law, where plaintiffs alleged, inter alia, that defendants "acted in concert and by agreement to misappropriate the Plaintiff's image and likeness for commercial gain"); Ravich v. Kling, 17 Misc. 2d 683, 684,187 N.Y.S.2d 272, 274 (Sup Ct. N.Y. Co. 1959) (finding allegations of conspiracy to invade plaintiff's right of privacy, in violation of § 51 of the Civil Rights law, sufficient to state a cause of action); Briarpatch Ltd., 81 F. Supp. 2d at 516 (granting plaintiffs' motion to amend their complaint to add, inter alia, two new claims for conspiracy

---

[12] New York has the most significant relationship to the violations alleged in Count V, which concern use of Safrin's name in New York. (TPC ¶¶ 85-87.) Indeed, § 51, by its terms, only applies to conduct that occurs within the State of New York.

where proposed amended complaint alleged colorable underlying torts); Bialobroda v. Buchwald, 51 A.D.3d 467, 467, 856 N.Y.S.2d 484, 484 (1st Dep't 2008) (affirming denial of defendants' motion for summary judgment motion dismissing complaint, and finding, "with respect to the ninth cause of action," that "plaintiff may plead conspiracy in order to connect defendants' actions with her underlying claims of fraud and constructive eviction").

As Safrin has stated a cause of action for various breaches of duty and a violation of his right to privacy under both N.Y. Civil Rights Law § 51 and California common law, his allegations of conspiracy are sufficient to state a claim, and the Attorney Defendants' motion to dismiss Counts VII and VIII must be denied.

## VII.   SAFRIN'S ALLEGATIONS STATE A CLAIM FOR PUNITIVE DAMAGES

The Attorney Defendants erroneously contend that that Safrin's allegations "are insufficient" to support a claim of punitive damages. Given that (i) there is no requirement in a tort case such as this that plaintiff allege conduct directed at the public to sustain a claim for punitive damages (as mistakenly suggested by the Attorney Defendants here); (ii) there cannot be a conclusive determination at this early stage in the litigation that the Attorney Defendants' misconduct is not sufficiently egregious to warrant the imposition of punitive damages; and (iii) Section 51 of the New York Civil Rights Law explicitly provides for award of punitive damages for a mere showing of knowing misappropriation of an individual's identity, the Attorney Defendants' motion to dismiss the punitive damages claims in Counts IV through VIII should be denied.

### A.   This Is Not A Contract Case, And New York Law Does Not Require Allegations Of A Public Wrong For The Imposition of Punitive Damages in Tort Cases Like This One

Based on their misreading of New York law, the Attorney Defendants conclude that Safrin's punitive damages allegations are insufficient because he fails to allege harmful conduct directed to the public. They are wrong. Under Rocanova v. Equitable Life Assur. Soc'y of the U.S., 83 N.Y.2d 603, 613-14, 634 N.E.2d 940 (1994) and New York Univ. v. Cont'l Ins. Co., 87

N.Y.2d 308, 315-16, 662 N.E.2d 763, 767 (1995), a showing of public harm is only required for claims "arising from" or having their "genesis" in a breach of contract claim. New York Univ., 87 N.Y.2d at 315, 662 N.E.2d at 767. Accord. IDT Corp. v. Morgan Stanley Dean Witter & Co., 45 A.D.3d 419, 420, 846 N.Y.S.2d 116, 118 (1st Dep't 2007) (citation omitted) (affirming denial of motion to dismiss punitive damages claim because "the rule that an award for punitive damages must be limited to conduct directed at the general public applies in breach of contract cases, not tort cases for breach of fiduciary duty"); D'Amour v. Ohrenstein & Brown LLP, 17 Misc. 3d 1130(A), 851 N.Y.S.2d 68, 2007 WL 4126386, at *19 (Sup. Ct. N.Y. Co. Aug. 13, 2007) (Table) (refusing to dismiss punitive damages demands in suit by former partners of law firm against other partners with respect to claims for breach of fiduciary duty and related wrongful conduct); Don Buchwald & Assocs., Inc. v. Rich, 281 A.D.2d 329, 330, 723 N.Y.S.2d 8, 9 (1st Dep't 2001) (reversing dismissal of punitive damages claim because "[t]he limitation of an award for punitive damages to conduct directed at the general public applies only in breach of contract cases, not in tort cases for breach of fiduciary duty"). The Attorney Defendants apparently assume, without argument or explanation, that Safrin's third party claims arise out of a contract, and thus cite to these and a number of other wholly inapplicable cases.

But even assuming the existence of a contractual, agency or attorney-client relationship between Safrin and the Attorney Defendants, the latter's tortious conduct -- improperly representing that they were authorized to act on Safrin's behalf, using Safrin's name, identity and confidential information without his consent, exceeding the scope of their authority, and scheming to misappropriate Safrin's name -- falls, by definition, outside the terms of such a contractual relationship.[13] As such, "the requirement of public harm as a prerequisite for punitive

---

[13] The Attorney Defendants' reading of New York law would effectively render every tort claim brought by a client against his attorney or agent (whether breach of fiduciary duty or legal malpractice, etc.) as one necessarily arising out of a contract and, therefore, requiring an allegation of a harm to the public to support a claim for punitive damages. But the four legal malpractice cases cited by the Attorney Defendants refute such a conclusion; not one of those decisions (including post-Rocanova decisions) requires or even references allegations of harm to the public. (See Defs' Mem. at 18 (citing cases).) This is not surprising, given the special duties of trust and confidence inherent in the attorney-client relationship and specific to the highly regulated legal profession. See Polin v. Wisehart & Koch, No. 00 Civ. 9624 (DLC), 2004 WL 1944721, at *3 n.8 (S.D.N.Y. Sept. 2, 2004) (noting that

damages [i]s not triggered." [14]  See MacQuesten Gen. Contr. Inc. v. HCE, Inc., 296 F. Supp. 2d

437, 447 (S.D.N.Y. 2003), aff'd, 128 Fed. Appx. 782 (2d Cir. 2005) (because the conversion of

defendant's equipment is separate tortious conduct, independent of the terms of the contract

between the general contractor and subcontractor, the public harm requirement does not apply).

Because Counts IV through VIII of the Amended Third Party Complaint assert

independent *tort* claims for breach of duty (including, inter alia, breach of fiduciary duty),

violation of Safrin's right to privacy under New York and California law, and conspiracy to

commit those torts, Safrin need only establish that the Attorney Defendants' harmful conduct

was: (1) intentional or deliberate, (2) aggravating or outrageous, (3) committed with a fraudulent

or evil motive, or (4) constituted a conscious act that willfully and wantonly disregarded the

rights of another. See Don Buchwald, 281 A.D.2d at 330, 723 N.Y.S.2d at 9; Parady v. Phillips,

No. 07 Civ. 3640 (JCF), 2008 WL 591868, at *6 (S.D.N.Y. Mar. 5, 2008) (denying motion for

summary judgment dismissing punitive damage claims in tort action where "a jury could find

that [the defendant's] conduct was so reckless as to amount to a conscious disregard of the rights

of others").  Safrin's pleading makes these allegations.

---

punitive damages are permissible in a legal malpractice action where defendants violate "the duties that arose from their relationships of trust and confidence with [the plaintiff] and so grossly disregarded those duties that their conduct exhibited a high degree of moral culpability"). Moreover, New York courts have expressly permitted punitive damages claims in breach of fiduciary duty actions absent allegations of a public harm, in cases where the parties arguably had, at bottom, a contractual relationship. See, e.g., D'Amour, 17 Misc. 3d 1130(A), 851 N.Y.S.2d 68, 2007 WL 4126386 (breach of fiduciary duty claims against former partners); Apple Corps Ltd. v. Capitol Records, Inc., 13 Misc. 3d 1211(A), 824 N.Y.S.2d 752 (Sup. Ct. N.Y. Co. Aug. 21, 1006) (suit by Beatles against record company for royalties and alleging fraud, breach of contract and breach of fiduciary duty). See also Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker, 16 Misc. 3d 1051, 1075, 843 N.Y.S.2d 749, 769-70 (Sup Ct. N.Y. Co. Mar. 29, 2007) (on the record, court could not find that Wilson Elser's breach of fiduciary duty did not involve the moral culpability necessary to support an award of punitive damages).

[14]  Even if an allegation of a public wrong was a requirement, the Amended Third Party Complaint would satisfy it. As the main action indicates, Safrin is not the only one subjected to harm as a result of the Attorney Defendants' actions. In fact, the Attorney Defendants made misrepresentations as to their ability to speak on behalf of Safrin and knowingly transmitted documents containing his forged signature to the plaintiffs, to the scores of attorneys involved in the closing of the sale of the Property Portfolio, and to major lending institutions such as Citigroup. Safrin also alleges that the Attorney Defendants were part of a conspiracy to create a variety of LLCs identifying Safrin as a purported member and use his forged name on a variety of transactional documents. This is sufficient to allege a public wrong. See Langenberg v. Sofair, No. 03 Civ. 8339(KMK)(FM), 2006 WL 3518197, at *5 (S.D.N.Y. Dec. 7, 2006) (numerous false statements in securities filings and promotional materials held sufficient to establish a public wrong).

**B.     The Attorney Defendants' Alleged Conduct -- In Wrongfully Holding Themselves Out As Safrin's Attorney When They Knew They Did Not Represent Him -- Is Sufficiently Outrageous To Sustain A Claim For Punitive Damages**

The Attorney Defendants also contend that Safrin has not met the standard for alleging punitive damages in a legal malpractice action, where one must allege that the attorney's "conduct was so outrageous as to evince a high degree of moral turpitude and showing such wanton dishonesty as to imply criminal indifference to civil obligations" (Defs' Mem. at 18.) (citing Rosenkrantz v. Steinberg, 13 A.D.3d 88, 88, 786 N.Y.S.2d 35, 36 (1st Dep't 2004)(internal quotes omitted)), essentially arguing that the absence of any allegation "that BIR had any involvement in the alleged forgery of Safrin's signatures . . . or that BIR knew that the signatures were allegedly forged . . ." is fatal to his claim. (Defs' Mem. at 18.) The Attorney Defendants are wrong on both counts.

First, this is not a legal malpractice action. To sustain a claim for punitive damages with regard to the alleged torts, rather, and as noted above, one of the following must be shown:  (1) intentional or deliberate wrongdoing, (2) aggravating or outrageous circumstances, (3) a fraudulent or evil motive, or (4) a conscious act that willfully and wantonly disregards the rights of another.  Don Buchwald, 281 A.D.2d at 330, 723 N.Y.S.2d at 9.

Second, at this early stage in the litigation, there is no basis for dismissing Safrin's punitive damages claims.  His allegations -- that Friedman and BIR held themselves out as his attorneys/agents when they knew they had no authority to do so, used his name, identity and confidential information without Safrin's knowledge or consent, and schemed to use Safrin's forged name and identity in connection with the transactions alleged in the Complaint -- are, if proven, more than sufficient to satisfy the standards set forth in either Don Buchwald or Rosenkrantz.[15] Accord. Ulico, 16 Misc. 3d at 1075, 843 N.Y.S.2d at 769-70 (allowing punitive damages claim to stand where the court could not find as a matter of law that Wilson Elser's

---

[15] The Attorney Defendants' argument that there is no allegation that they were involved in or knew about the forgeries of Safrins signatures is wishful thinking and demonstrably false.  For example, Safrin specifically alleges that the Attorney Defendants, in furtherance of a conspiracy, "knowingly and intentionally" used Safrin's forged name and created a variety of LLCs of which he is purportedly a member (TPC ¶¶ 85, 104), and "knowingly utilized Safrin's name on various transaction-related documents" without his consent  (TPC ¶ 95).

breach of fiduciary duty did not involve the moral culpability necessary to support an award of punitive damages).

Because the Complaint alleges that Friedman, an attorney at a national law firm, flouted his professional obligations and led plaintiffs, as well as a host of lawyers and financial institutions, to believe that he represented Safrin when he did not, improperly created companies of which Safrin was a purported member, and used Safrin's forged signature on a variety of transactional documents, punitive damages can hardly be ruled out.

**C.    Safrin's Punitive Damages Claims Cannot Be Dismissed
In Any Event Because § 51 of the New York Civil Rights Law
Explicitly Provides For An Award Of Exemplary Damages**

Dismissal of Safrin's punitive damages claim would not be warranted for an additional reason. Regardless of whether Safrin alleged conduct sufficient to meet any of the standards enumerated above (which he did), § 51 of the New York Civil Rights Law expressly provides an award of punitive damages upon nothing more than a showing that his name was "knowingly used" without authorization. N.Y. Civil Rights Law § 51.

Count V of Safrin's Amended Third Party Complaint alleges violations of New York Civil Rights Law §§ 50 and 51. In § 51, the Legislature modified the common law standard for an award of punitive damages, expressly providing that "the jury, in its discretion, may award exemplary damages" if "the defendant shall have knowingly used [the plaintiff's] name, portrait picture or voice" in a manner that violates Civil Rights Law § 50. Thus, "[i]n order to recover exemplary damages under the statute, 'no more need be shown than knowing use.'" D'Amour, 17 Misc. 3d 1130(A), 851 N.Y.S.2d 68, 2007 WL 4126386, at *19 (holding that dismissal of the claim for exemplary damages under §50 and 51 "would not be warranted merely because the alleged wrongful conduct was neither part of a pattern of conduct directed at the public generally, nor so egregious as to imply a criminal indifference to civil obligations") (quoting Welch v. Mr. Christmas, Inc., 57 N.Y.2d 143, 440 N.E.2d 1317, 454 N.Y.S.2d 971 (1982)); Bond v. Sterling, Inc., 997 F. Supp. 306, 311 (N.D.N.Y. 1998) ("Section 51 by its terms allows

recovery of exemplary damages for knowing violations.  Exemplary damage are, of course, nothing more than punitive damages, *see* Black's Law Dictionary 390 (6th ed.1990), and courts consequently have treated § 51 as allowing for punitive damages in appropriate cases"; <u>held</u>, defendants' motion to dismiss punitive damages claim denied).

Here, Safrin alleges that the Attorney Defendants committed knowing violations of his civil rights under §§ 50 and 51 in that they "knowingly and intentionally": (a) used Safrin's forged name on the purported Assignment Agreement, the operating agreements of FRGR Holdings LLC and JSAE Colonial LLC, as well as other transactional documents, including officer's certificates, and the Citigroup loan documents; (b) used Safrin's name and identity in connection with their negotiations with plaintiffs; and (c) drafted those documents that were necessary to create LLCs in which Safrin was a purported member, director or manager.  These LLCs include, but are not limited to, JSAE Colonial LLC and FRGR Holdings LLC, both of which are part of the First Republic LLC ownership structure.  (TPC ¶ 85.)

Accordingly, as Safrin has alleged knowing violations of his civil rights pursuant to New York Civil Rights Law §§50 and 51, The Attorney Defendants' motion to dismiss his punitive damages claim must be denied.

34

## CONCLUSION

For the foregoing reasons, the Attorney Defendants' motion to dismiss must be denied in its entirety.

Dated: New York, New York
      July 31, 2008

FLEMMING ZULACK WILLIAMSON
ZAUDERER LLP

By:_____/s/_____
   Jonathan D. Lupkin (JL-0792)
   Jean Marie Hackett  (JH-1784)

One Liberty Plaza
New York, New York  10006
Tel: (212) 412-9500
Fax: (212) 964-9200
Email: jlupkin@fzwz.com

*Attorneys for Defendant/ Third Party Plaintiff*
*Joshua Safrin*

35