UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------x
AMUSEMENT INDUSTRY, INC., dba WESTLAND : 
INDUSTRIES; PRATICAL FINANCE CO., INC., :
 :
                            Plaintiffs, : 07 CV 11586 (LAK)(GWG)
        -against- : ECF Case
 :
MOSES STERN, aka MARK STERN, JOSHUA SAFRIN, :
FIRST REPUBLIC GROUP REALTY, LLC, :
EPHRAIM FRENKEL, :
LAND TITLE ASSOCIATES ESCROW, :
 :
                            Defendants. :
---------------------------------------------------------------------------x
JOSHUA SAFRIN, :
        Defendant/Third Party-Crossclaim- :
        Counterclaim Plaintiff, :
        -against- :
 :
STEPHEN FRIEDMAN, STEVEN ALEVY, BUCHANAN :
INGERSOLL & ROONEY, P.C., BANKERS CAPITAL :
REALTY ADVISORS, LLC, and FIRST REPUBLIC :
GROUP CORP., :
                   Third Party Defendants, :
 :
        -and- :
 :
MOSES STERN, aka MARK STERN, FIRST REPUBLIC :
GROUP REALTY, LLC, EPHRAIM FRENKEL, and :
LAND TITLE ASSOCIATES ESCROW, :
               Defendants/Crossclaim Defendants, :
 :
        -and- :
 :
AMUSEMENT INDUSTRY, INC. dba WESTLAND :
INDUSTRIES, PRACTICAL FINANCE CO., INC. :
           Plaintiffs/Counterclaim Defendants. :
---------------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY
PLAINTIFFS' CALIFORNIA CO-COUNSEL SRAGOW & SRAGOW**

31677271.DOC

## TABLE OF CONTENTS

<u>Page</u>

ARGUMENT ........................................................................................................................ 3

    I.    PLAINTIFFS' RESPONSE DEMONSTRATES THAT ALLEN SRAGOW MUST TESTIFY ON THE CENTRAL ISSUES IN THIS CASE OR THAT HE MAY BE CALLED AS A WITNESS ON BEHALF OF DEFENDANTS ................................................................................ 3

    II.    MR. SRAGOW AND HIS LAW FIRM SHOULD BE DISQUALIFIED FROM THE ENTIRE CASE ................................................................................ 8

CONCLUSION ................................................................................................................... 11

## TABLE OF AUTHORITIES

### CASES

Page(s)

*A.V. By Versace, Inc. v. Versace*,
   160 F. Supp. 2d 657 (S.D.N.Y. 2001)..................................................................................10

*Acme Analgesics, Ltd. v. Lemmon Co.*,
   602 F. Supp. 306 (S.D.N.Y. 1985) ..................................................................................7, 10

*Amalgamated Servs. & Allied Indus. Joint Bd. v. Supreme Hand Laundry*,
   1996 U.S. Dist. LEXIS 14962 (S.D.N.Y. Oct. 9, 1996) ........................................................9

*Brooks v. Bates*,
   1994 U.S. Dist. LEXIS 4502 (S.D.N.Y. Apr. 4, 1994)..........................................................9

*Cadle Co. v. Damadeo*,
   256 F. Supp. 2d 155 (E.D.N.Y. 2003) ...................................................................................9

*Corona v. Hotel & Allied Servs. Union Local 758*,
   2005 U.S. Dist. LEXIS 18545 (S.D.N.Y. Aug. 30, 2005) .....................................................9

*Crews v. County of Nassau*,
   2007 U.S. Dist. LEXIS 6572 (E.D.N.Y. Jan. 30, 2007) ........................................................9

*Fulfree v. Manchester*,
   945 F. Supp. 768 (S.D.N.Y. 1996) ........................................................................................9

*Galerie v. M&T Bank Corp.*,
   30 F. Supp. 2d 322 (N.D.N.Y. 1998)................................................................................7, 9

*Gandler v. Nazarov*,
   1994 U.S. Dist. LEXIS 10236 (S.D.N.Y. Jul. 28, 1994) .......................................................9

*Gleason v. Zocco*,
   941 F. Supp. 32 (S.D.N.Y. 1996) ..........................................................................................9

*Kent v. Scamardella*,
   2007 U.S. Dist. LEXIS 50376 (S.D.N.Y. July 11, 2007) ......................................................9

*Lamborn v. Dittmer*,
   873 F.2d 522 (2d Cir. 1989).................................................................................................. 3

*Lyman v. City of Albany*,
   2007 U.S. Dist. LEXIS 10359 (N.D.N.Y. Feb. 12, 2007) ...................................................10

 Page(s)

*Multi-Juice, S.A. v. Snapple Beverage Corp.*,
   2003 WL 1961636 (S.D.N.Y. April 25, 2003) ..................................................................3, 7, 9

*Munk v. Goldome Nat'l Corp.*,
   697 F. Supp. 784 (S.D.N.Y. 1988) ......................................................................................9, 10

*Mut. Life Ins. Co. of New York v. Liberty Mut. Ins. Co.*,
   746 F. Supp. 375 (S.D.N.Y. 1990) ........................................................................................8, 9

*Neufeld v. Neufeld*,
   1994 U.S. Dist. LEXIS 7923 (S.D.N.Y. June 15, 1994).............................................................9

*New Gold Equities Corp. v. Capital Growth Real Estate, Inc.*,
   1990 U.S. Dist. LEXIS 3854 (S.D.N.Y. Apr. 9, 1990)................................................................9

*Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*,
   440 F. Supp. 2d 303 (S.D.N.Y. 2006) .......................................................................................3

*Ragdoll Prods. (UK) Ltd. v. Wal-Mart Stores, Inc.*,
   1999 U.S. Dist. LEXIS 14828 (S.D.N.Y. Sept. 24, 1999).........................................................10

*Renner v. Townsend Fin. Servs. Corp.*,
   2002 U.S. Dist. LEXIS 8898 (S.D.N.Y. May 14, 2002)..............................................................9

*Rosefield v. Orentreich*,
   1998 U.S. Dist. LEXIS 13934 (S.D.N.Y. Sept. 2, 1998)..........................................................10

*Sapienza v. New York News, Inc.*,
   481 F. Supp. 676 (S.D.N.Y. 1979) .....................................................................................7, 10

*Selby v. Arms*,
   1994 U.S. Dist. LEXIS 9165 (S.D.N.Y. July 7, 1994) ...............................................................9

*Soberman v. Groff Studios Corp.*,
   1999 U.S. Dist. LEXIS 8075 (S.D.N.Y. May 28, 1999)....................................................6, 7, 9

*Tiuman v. Canant*,
   1994 U.S. Dist. LEXIS 6626 (S.D.N.Y. May 19, 1994)..............................................................9

*Ulster Sci., Inc. v. Guest Elchrom Sci. Ag*,
   181 F. Supp. 2d 95 (N.D.N.Y. 2001) ....................................................................................7, 9

*Wickes v. Ward*,
   706 F. Supp. 290 (S.D.N.Y. 1989) ............................................................................................9

**STATUTES**

22 NYCRR § 1200.21..........................................................................................................................8

Page(s)

22 NYCRR § 1200.21(a) ..................................................................................................7

22 NYCRR § 1200.21(d) ..................................................................................................3

**MISCELLANEOUS**

MODEL CODE OF PROF'L RESPONSIBILITY ........................................................................ 8-9

Plaintiffs go to great lengths to obscure the issues raised by this disqualification motion. Among other things, they improperly argue the merits of their claims and question defendants' motivation and timeliness in making the motion.[1] But, in the end, these issues are diversionary and do not address the basic issue raised by this motion: whether a lawyer and his law firm, who were admittedly intimately involved in every aspect of this action's underlying controversies, can continue to serve as co-litigation counsel when it is clear that the principal lawyer and other lawyers at his firm are necessary witnesses, either because they "ought to be called as witnesses" on behalf of their clients or because, in the case of Mr. Sragow, that he "may be called as a witness" on a significant issue other than on plaintiffs' behalf.

Plaintiffs' own response demonstrates that Mr. Sragow is a necessary witness in this case. With respect to the issues of whether there was a binding agreement between plaintiffs and defendants and whether Mr. Sragow conspired with other defendants to defraud Stern and First Republic, the best that plaintiffs can do is to debate the meaning of the words written by Mr. Sragow and others in emails and letters in connection with the transaction and attempt to offer a different interpretation of those documents. While defendants dispute plaintiffs' after-the-fact interpretations of those communications, only Mr. Sragow and other members of his firm can explain the meaning of the words they wrote. In the one case where Mr. Sragow's emails are at odds with his clients' claims in this case (whether the escrow funds were authorized to be released), plaintiffs have no answer other than to suggest that Mr. Sragow's testimony falls within an exception to the disqualification rule. However, that exception applies *only* if the testimony relates to a matter not in dispute and clearly the issue of whether plaintiffs authorized

---

[1] Contrary to plaintiffs' contention that the timing of defendants' motion is "suspect," defendants brought this motion seven months after the case began and six weeks after plaintiffs first produced documents on April 28, 2008. Plaintiffs do not cite a single case denying a disqualification motion in such circumstances.

the release of the escrowed funds is a matter that is in dispute. In either case, New York's "advocate-witness rule" mandates disqualification for both Mr. Sragow and his firm from any further representation of plaintiffs in this action.

Before addressing the substance of plaintiffs' legal arguments, defendants feel compelled to address briefly plaintiffs' improper attempt to once again argue the merits of the case. In the "FACTS" section of their opposition brief, plaintiffs include a heading that states: "Discovery to Date Has Confirmed Plaintiffs' Claims" and then spend two pages explaining why that is the case. In the immortal words of Yogi Berra, this is "deja vu all over again." As the Court may recall, immediately prior to the July 1 status conference, plaintiffs sent a letter to the Court opposing defendants' application for a pre-motion conference with respect to Bankers Capital's untimely document production and made the identical assertion that "Discovery to Date Has Confirmed Plaintiffs' Claims." Defendants responded to that letter by pointing out that it was inappropriate for plaintiffs to argue the merits of the case on a discovery-related motion.

At the July 1 conference, this Court chastised plaintiffs for arguing the merits of their claims stating that:

> So when people start going on about the merits, I assume that their case is weak. So people who do that -- they should know that they have like two and three-quarter strikes against them, especially when they go on at length and it obviously has nothing to do with the issue that I'm being asked to resolve. So please keep that in mind in the future.

(7/1/08 Conf. Tr. at 21.) Apparently, plaintiffs' counsel has decided not to heed this Court's advice because they simply cut the same three paragraphs of their June 30 letter to the Court and pasted them into pages 3-4 of their opposition brief. Defendants will not waste the Court's time explaining why discovery to date has, in fact, not confirmed plaintiffs' version of the case other than to refer this Court to its June 30 letter for a more detailed response to those issues.

As demonstrated below, Mr. Sragow and his firm should be disqualified from serving as litigation co-counsel in this action.

## ARGUMENT

**I. PLAINTIFFS' RESPONSE DEMONSTRATES THAT ALLEN SRAGOW MUST TESTIFY ON THE CENTRAL ISSUES IN THIS CASE OR THAT HE MAY BE CALLED AS A WITNESS ON BEHALF OF DEFENDANTS**

Plaintiffs do not dispute the legal test for disqualification of an "advocate-witness." An attorney must be disqualified if the attorney's testimony "could be significantly useful to his client," *Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir. 1989), and "it is likely that the testimony to be given by a witness is necessary," *Multi-Juice, S.A. v. Snapple Beverage Corp.,* 2003 WL 1961636, at *7 (S.D.N.Y. Apr. 25, 2003). (*See* Plaintiff's Opposition Br. ("Opp.") at 10.) Where the attorney "may be called as a witness on a significant issue other than on behalf of the client," he should be disqualified if "it is apparent that the testimony is or may be prejudicial to the client." 22 NYCRR § 1200.21(d).[2] "[A]ny doubts [about whether an attorney's testimony may be prejudicial] should be resolved in favor of disqualification." *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 440 F. Supp. 2d 303, 315 (S.D.N.Y. 2006) (Katz, M.J.).

Plaintiffs also do not dispute that there are three central disputes between the parties in this action: (1) whether the parties entered into a binding agreement relating to the financing of the Properties; (2) whether the $13 million was improperly released from the escrow account that was used by defendants in connection with the acquisition of the Properties; and (3) whether the plaintiffs in this lawsuit were engaged in a fraudulent scheme, directed by

---

[2]    Heading B in plaintiffs' argument section, (*see* Opp. at 14), incorrectly states the test for disqualification as requiring that Mr. Sragow's testimony "would be" prejudicial to plaintiffs' claims. However, it is clear from the law cited in text that plaintiffs concede that the standard is whether the attorney's testimony "may be" prejudicial to the client's claims.

31677271.DOC                                             3

Mr. Sragow and his father-in-law, Allen Alevy, out of Mr. Sragow's law offices, acting in concert with Steven Alevy and Robert Friedman, to wrest control of the Properties from First Republic and Stern and place those Properties in the hands of plaintiffs.

Finally, plaintiffs concede that the agreements in dispute were drafted and negotiated by Mr. Sragow and his law firm.

Plaintiffs, however, argue that Mr. Sragow's testimony is not necessary because it "may" be cumulative, it can be supplanted by certain documents or the emails themselves and it is premature to know whether Mr. Sragow's testimony is needed or whether it may be prejudicial to plaintiffs' claims. (Opp. at 11-16.) None of these arguments has any merit.

In defendants' moving brief, defendants identified specific emails and letters that were authored by Allen Sragow and employees of his firm relating to the three central issues of the case:

- On July 6, 2007, Mr. Sragow sent an email to Mark Stern through Stephen Friedman seeking the return of the funds plaintiff had escrowed because, according to Sragow, "First Republic has not responded to the draft agreements that were proposed." (Stern Decl. Ex. B at AI000264.)

- On July 9, 2007, Mr. Sragow emailed attorney Stephen Friedman requiring certain agreements to be signed by Mark Stern, to which Mr. Friedman responded: "Are you kidding? That is not going to happen. . . . Not going to happen or even be considered." (*Id.* at AI 001438.)

- On July 9, 2007, Mr. Sragow emailed attorney Stephen Friedman instructing him: "[D]o not authorize the release of the $13,000,000 from the Alevys in escrow without specific authorization from Allen Alevy or myself." (*Id.* at AI 000596.)

- On July 10, 2007, Mr. Sragow sent an email to "closing@ltatitle.com" stating: "Please do not release any of the $13,000,000 without written authorization from my office." (*Id.* at AI 000154.)

- On July 11, 2007, Mr. Sragow's associate, Michael Libraty, sent an email to Stephen Friedman seeking modifications of prior proposals for the transaction and stated "It is no longer a loan transaction." (*Id.* at AI 000161.)

- On July 16, 2007, Mr. Sragow, not realizing the escrowed funds had already been released to First Republic, stated that plaintiffs would not enter into the agreement with First Republic unless all of their demands were met. (*Id.* at AI 001420.)

- Later that day, Mr. Sragow sent a letter to Stephen Friedman and defendant Ephraim Frenkel in which he expressly stated that "[n]ot all documents were executed and returned. The agreed upon conditions were not fulfilled . . . ." (*Id.* at AI 000170.)

- On July 16, 2007, Mr. Sragow sent an email to Stephen Friedman stating that defendant Ephraim Frenkel told him that Friedman had authorized the release of the escrow on July 13. (*Id.* at AI 001424.)

- On September 10, 2007, Robert Friedman forwarded a confidential email from Mark Stern to Allen Alevy and Allen Sragow, which was CCed to Steven Alevy, concerning the refinancing that the Bankers Capital Group was supposedly working on and Mr. Sragow then suggested that Robert Friedman probe Stern for further information as to the timing of the refinancing. (*Id.* at FR 0001608 ("Why not respond: 'Timeframe? I thought you wanted to refinance out Alevy in 60 days?'").)

These communications from Mr. Sragow unquestionably establish him as a critical witness in connection with the claims at issue.

Indeed, as defendants noted in their opening brief, Mr. Sragow's written communications support defendants' claims in this action. A number of Mr. Sragow's emails establish that plaintiffs never believed that they had a binding agreement with First Republic. (*See* Defendants' moving brief ("Def. Br.") at 16.) Further, Mr. Sragow's September 10 email, in which Mr. Sragow directed Robert Friedman to extract information from Mark Stern so that plaintiffs could obtain leverage in connection with their pursuit of the Properties, establishes that he and others were engaged in a fraudulent scheme to gain control of the Properties. (*See id.*) Finally, Mr. Sragow's emails concerning whether plaintiffs authorized the release of the escrowed funds are flatly contradicted by emails from his own client, Steven Alevy, creating

another conflict between Mr. Sragow's testimony and the interest of his client. (*See id.* at 16-17.)

In response, plaintiffs ignore many of the critical communications from Mr. Sragow that were identified by defendants. When plaintiffs do respond, their response demonstrates the necessity of Mr. Sragow's testimony. For example, plaintiffs assert that Mr. Sragow's communications about whether the parties entered into a binding agreement can be interpreted to mean that "plaintiffs were gravely concerned that defendants, after not executing some of the transactional documents, had taken Amusement's fund without authorization -- not that plaintiffs believed they did not have a 'binding agreement' with defendants." (Opp. at 15-16.) Similarly, plaintiffs argue that the September 10 email does not direct Robert Friedman to extract information from Stern, rather that email can be interpreted as a suggestion from Mr. Sragow "that Mr. Friedman inquire whether defendants intended to honor their agreement with Amusement." (*Id.* at 16.)

The fact that plaintiffs debate the meaning of Mr. Sragow's emails on these central issues clearly demonstrates that his testimony is not cumulative. Plaintiffs contend that the meaning of Mr. Sragow's various communications cannot be established by reading the writings themselves. Plaintiffs will only be able to support their interpretation by offering the testimony of Mr. Sragow as to his intent in sending these emails. The Court need only read the emails to realize that Mr. Sragow is unquestionably a necessary witness. *See Soberman v. Groff Studios Corp.*, 1999 U.S. Dist. LEXIS 8075, at *21 (S.D.N.Y. May 28, 1999) ("As the sole witness to many of the relevant communications, counsel for plaintiff is an essential witness and cannot also represent a party to this lawsuit.").

Finally, plaintiffs cannot explain how Mr. Sragow's testimony is not needed with respect to the issue of the release of the $13 million from escrow because there is a clear contradiction between Mr. Sragow's instructions that the escrowed funds were only to be released upon authorization from his office and the fact that his client, Steven Alevy, indisputably provided oral and written authorization for the release of the escrowed funds.[3]

In such circumstances, where an attorney and his law firm have become intimately involved with its client's business dealings, including the negotiation and drafting of contracts that are the subject of litigation, courts have routinely granted disqualification motions. *See Multi-Juice*, 2003 WL 1961636 at *6-7; *Ulster Sci., Inc. v. Guest Elchrom Sci. Ag*, 181 F. Supp. 2d 95, 103 (N.D.N.Y. 2001); *Soberman*, 1999 U.S. Dist. LEXIS 8075 at *21; *Galerie v. M&T Bank Corp.*, 30 F. Supp. 2d 322, 324 (N.D.N.Y. 1998); *Acme Analgesics, Ltd. v. Lemmon Co.*, 602 F. Supp. 306 (S.D.N.Y. 1985); *Sapienza v. New York News, Inc.*, 481 F. Supp. 676, 681 (S.D.N.Y. 1979).[4]

---

[3] Plaintiffs argue that Mr. Sragow's testimony concerning the authorization to release the escrowed funds falls under an exception to DR 5-102. (*See* Opp. at 13 n.7.) However, those exceptions apply only if the testimony relates to a matter *not in dispute*. *See* 22 NYCRR § 1200.21(a); (*see also* Def. Br. at 14-15.) Defendants have already identified Steven Alevy's contradictory instructions authorizing the release of the escrow. Thus, Mr. Sragow's testimony does not relate to a matter that is not in dispute.

[4] While plaintiffs argue that defendants' motion is premature, discovery to date already establishes that Mr. Sragow's testimony is necessary and may be prejudicial to his client. As demonstrated in Point II, the overwhelming majority of the caselaw does not support deferring disqualification pending a determination of whether issues may be resolved on summary judgment. (*See infra* at Point II.) In this case, assuming plaintiffs' claims survive defendants' motion to dismiss, Mr. Sragow's testimony would likely be used in any summary judgment motion. Moreover, it is unlikely that the factual disputes about which Mr. Sragow would be testifying could be resolved on summary judgment.

## II. MR. SRAGOW AND HIS LAW FIRM SHOULD BE DISQUALIFIED FROM THE ENTIRE CASE

Plaintiffs erroneously assert that the weight of authority only requires disqualification of a party that violates the "advocate-witness" rule at trial, but does not require disqualification from pre-trial matters. Because Mr. Sragow is a necessary witness and his testimony may be prejudicial to his clients' claims, he, and his law firm, should be disqualified from the *entire case* -- that is, they should no longer be permitted to represent plaintiffs during pre-trial proceedings or at trial.[5]

The rule itself explicitly prohibits the attorney from "accept[ing] employment in contemplated or pending litigation" and must withdraw from acting as an "advocate before the tribunal," a role which plainly encompasses not only serving as the client's attorney at trial, but any service as an attorney for the client. 22 NYCRR § 1200.21. *See Mut. Life Ins. Co. of New York v. Liberty Mut. Ins. Co.*, 746 F. Supp. 375, 377 (S.D.N.Y. 1990).

Moreover, the "advocate-witness" rule promotes policies that apply not only to trial counsel, but to any counsel that serves as an attorney in a litigation. The Model Code of Professional Responsibility explains:

> If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

---

[5] Defendants rejected plaintiffs' offer to stipulate that that the Sragow firm not serve as trial counsel because the caselaw requires disqualification from pre-trial proceedings as well.

31677271.DOC                          8

MODEL CODE OF PROF'L RESPONSIBILITY EC 5-9. By functioning as litigation counsel and testifying as a witness, the integrity of the judicial process is called into question. *See Mut. Life Ins.*, 746 F. Supp. at 377; *Munk v. Goldome Nat'l Corp.*, 697 F. Supp. 784, 788 (S.D.N.Y. 1988).

Accordingly, contrary to plaintiffs' assertion, a survey of the caselaw demonstrates that the overwhelming weight of authority does not distinguish between the pre-trial and trial stages of a litigation and instead disqualifies counsel immediately upon learning that the attorney's testimony is necessary or may be prejudicial to the client's case. *See Kent v. Scamardella*, 2007 U.S. Dist. LEXIS 50376, at *5-6 (S.D.N.Y. July 11, 2007); *Crews v. County of Nassau*, 2007 U.S. Dist. LEXIS 6572, at *22-23 (E.D.N.Y. Jan. 30, 2007); *Corona v. Hotel & Allied Servs. Union Local 758*, 2005 U.S. Dist. LEXIS 18545, at *21-22 (S.D.N.Y. Aug. 30, 2005); *Multi-Juice*, 2003 WL 1961636 at *7; *Cadle Co. v. Damadeo*, 256 F. Supp. 2d 155, 158 (E.D.N.Y. 2003); *Renner v. Townsend Fin. Servs. Corp.*, 2002 U.S. Dist. LEXIS 8898, at *27 (S.D.N.Y. May 20, 2002); *Ulster Sci.*, 181 F. Supp. 2d at 102; *Soberman*, 1999 U.S. Dist. LEXIS 8075 at *20-22; *Galerie*, 30 F. Supp. 2d at 324; *Fulfree v. Manchester*, 945 F. Supp. 768, 777 (S.D.N.Y. 1996); *Amalgamated Servs. & Allied Indus. Joint Bd. v. Supreme Hand Laundry*, 1996 U.S. Dist. LEXIS 14962, at *17 (S.D.N.Y. Oct. 9, 1996); *Gleason v. Zocco*, 941 F. Supp. 32, 35-36 (S.D.N.Y. 1996); *Selby v. Arms*, 1994 U.S. Dist. LEXIS 9165, at *3-4 (S.D.N.Y. July 7, 1994); *Gandler v. Nazarov*, 1994 U.S. Dist. LEXIS 10236, at *7-8 (S.D.N.Y. July 28, 1994); *Neufeld v. Neufeld*, 1994 U.S. Dist. LEXIS 7923, at *13 (S.D.N.Y. June 15, 1994); *Tiuman v. Canant*, 1994 U.S. Dist. LEXIS 6626, at *12-13 (S.D.N.Y. May 19, 1994); *Brooks v. Bates*, 1994 U.S. Dist. LEXIS 4502, at *10-14 (S.D.N.Y. Apr. 4, 1994); *Mut. Life Ins.*, 746 F. Supp. at 378; *New Gold Equities Corp. v. Capital Growth Real Estate, Inc.*, 1990 U.S. Dist. LEXIS 3854, at *3-4 (S.D.N.Y. Apr. 9, 1990); *Wickes v. Ward*, 706 F. Supp. 290, 292-93 (S.D.N.Y. 1989);

*Munk*, 697 F. Supp. at 788; *Acme Analgesics*, 602 F. Supp. at 306; *Sapienza*, 481 F. Supp. at 681.[6]

The integrity of the judicial process would be called into question if Mr. Sragow and the members of his firm were permitted to continue to represent plaintiffs for pre-trial proceedings. As a necessary witness, Mr. Sragow might be called upon to answer interrogatories or to be orally examined in pretrial stages. He may also need to make factual affidavits in connection with motions for summary judgment. He may argue motions for or against preclusion or protection orders concerning his own testimony. Because all of these events may occur in pretrial stages, Mr. Sragow most likely will find himself in the unseemly situation of arguing his own credibility, a situation which the disciplinary rules strive to avoid. Moreover, if any depositions taken or defended by Mr. Sragow are introduced at trial and Mr. Sragow testifies at trial, the fact finder may draw adverse inferences that would impact the judicial process. The

---

[6]   The four cases that plaintiffs rely upon that distinguish between pre-trial and trial proceedings are inapposite. (*See* Opp. at 17-20.) In *Ragdoll Prods. (UK) Ltd. v. Wal-Mart Stores, Inc.,* 1999 U.S. Dist. LEXIS 14828, at *8 (S.D.N.Y. Sept. 24, 1999), the court noted that no argument had even suggested that the attorney's participation would create any conflicts or impact pre-trial proceedings because his involvement in the underlying dispute was limited to the giving of an opinion. By contrast, Mr. Sragow and his firm were intimately involved with all aspects of the underlying dispute and there is no question that his involvement has created conflicts and will impact the proceedings. In *Lyman v. City of Albany,* 2007 U.S. Dist. LEXIS 10359, at *12 (N.D.N.Y. Feb. 12, 2007), the attorney's testimony was cumulative as "others were present for and likely witnessed many, if not all, of" the events that the attorney witnessed. In *A.V. By Versace, Inc. v. Versace,* 160 F. Supp. 2d 657, 664 (S.D.N.Y. 2001), the attorney's testimony was cumulative because there were two other witnesses who were able to testify as to the event with which the attorney was involved. Finally, in *Rosefield v. Orentreich,* 1998 U.S. Dist. LEXIS 13934, at *13-15 (S.D.N.Y. Sept. 2, 1998), it was not clear whether the attorney's testimony would be cumulative. As demonstrated above, the Sragow firm's testimony is not cumulative on the three central issues in the case.

interests of plaintiffs, defendants, and the court demand that Mr. Sragow and his law firm be disqualified from the *entire* case.[7]

## CONCLUSION

For the foregoing reasons and those set out in their opening memorandum, defendants respectfully request that their motion to disqualify plaintiffs' California co-counsel Sragow & Sragow be granted.

Dated:   New York, New York
         August 1, 2008

HOFFINGER STERN & ROSS, LLP

/s/ Stephen R. Stern
By:   Stephen R. Stern (SS-5665)
      Mark W. Geisler (MG-7261)
      150 East 58th Street, 19th Floor
      New York, New York 10155
      (212) 421-4000

*Attorneys for Defendants Moses Stern, aka Mark Stern, First Republic Group Realty, LLC, Ephraim Frenkel and Land Title Associates Escrow*

KAYE SCHOLER LLP
Arthur Brown (AB-0627)
Michael Lynn (ML-6052)
Efrem Schwalb (ES-5288)
425 Park Avenue
New York, New York 10022
(212) 836-8000

*Attorneys for Defendants Moses Stern, aka Mark Stern and First Republic Group Realty, LLC*

---

[7] Plaintiffs assert that defendants' motion to disqualify was not directed at Sragow & Sragow's service as attorneys for Steven Alevy and Bankers Capital. Clearly, if the Sragow firm is disqualified as counsel for plaintiffs, the same concerns would apply to it serving as counsel for Steven Alevy and Bankers Capital and it should be disqualified from serving as their counsel as well.