UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X
                                                                      :
AMUSEMENT INDUSTRY, INC., dba WESTLAND                                :   No. 07 Civ. 11586 (LAK)(GWG)
INDUSTRIES; PRACTICAL FINANCE CO., INC.,                              :
                                                                      :   (ECF)
                                        Plaintiffs,                   :
            - against -                                               :
                                                                      :
MOSES STERN, aka MARK STERN; JOSHUA SAFRIN,                           :
FIRST REPUBLIC GROUP REALTY LLC, EPHRAIM                              :
FRENKEL, LAND TITLE ASSOCIATES ESCROW,                                :
                                                                      :
                                        Defendants.                   :
                                                                      :
--------------------------------------------------------------------- X
                                                                      :
JOSHUA SAFRIN,                                                        :
                        Defendant/Third Party-Crossclaim-             :
                            Counterclaim-Plaintiff,                   :
            - against –                                               :
                                                                      :
STEPHEN FRIEDMAN, STEVEN ALEVY, BUCHANAN                              :
INGERSOLL & ROONEY, P.C., BANKERS CAPITAL                             :
REALTY ADVISORS LLC, and FIRST REPUBLIC GROUP                        :
CORP.,                                                                :
                        Third Party Defendants,                      :
            - and -                                                   :
                                                                      :
MOSES STERN, aka MARK STERN, FIRST REPUBLIC                           :
GROUP REALTY LLC, EPHRAIM FRENKEL, and LAND                           :
TITLE ASSOCIATES ESCROW,                                              :
                                                                      :
                        Defendants/Crossclaim Defendants,             :
            - and -                                                   :
                                                                      :
AMUSEMENT INDUSTRY, INC., dba WESTLAND                                :
INDUSTRIES, PRACTICAL FINANCE CO., INC.,                              :
                                                                      :
                        Plaintiffs/Counterclaim Defendants.           :
--------------------------------------------------------------------- X

## DEFENDANT JOSHUA SAFRIN'S MEMORANDUM OF LAW IN OPPOSITION TO CROSSCLAIM DEFENDANTS' MOTIONS TO PARTIALLY DISMISS THE CROSSCLAIMS

Of Counsel:
    Jonathan D. Lupkin
    Jean Marie Hackett

**FLEMMING ZULACK WILLIAMSON ZAUDERER LLP**
**Attorneys for Defendant Joshua Safrin**
**One Liberty Plaza**
**New York, New York 10006**
**(212) 412-9500**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................. 4

    A.  The Underlying Complaint in the Main Action ........................................... 4

    B.  The Parties .......................................................................................... 4

    C.  The Citigroup Loan Documents ............................................................. 7

    D.  Plaintiffs' Investment .......................................................................... 8

        1.  The June 29, 2007 "Letter of Intent" .............................................. 9

        2.  Plaintiffs' Subsequent Negotiations With Friedman ........................ 9

        3.  The July 11, 2007 Counter Offer .................................................... 11

    E.  Frenkel and Land Escrow Take And Use The $13 Million
        In Escrow In Contravention Of Amusement's Instructions ..................... 12

    F.  Safrin Had No Involvement In The Transactions
        Alleged In The Complaint, But The Stern Defendants
        Used His Name And Reputation -- Without His Knowledge
        Or Consent -- To Make It Happen ......................................................... 12

PROCEDURAL HISTORY .......................................................................... 13

ARGUMENT ............................................................................................ 14

POINT I:

SAFRIN PLEADS MORE THAN ENOUGH FACTS TO STATE
A PLAUSIBLE CLAIM TO RELIEF FOR CONTRIBUTION AND/OR
INDEMNITY AGAINST THE STERN DEFENDANTS ..................................... 14

    A.  *Twombly* and Its Progeny Require Only That A Pleader
        Allege Claims That Are "Plausible" ...................................................... 14

B. Safrin's Pleading Gives The Stern Defendants More Than
Fair Notice Of His Claims For Contribution And Indemnification
And Contributions And The Grounds Upon Which
Those Claims Rest ........................................................................................15

    1. Common Law Indemnification ......................................................15

    2. Safrin's Indemnification Claims Against The Stern
       Defendants Are Hardly Speculative, Given The Specific Factual
       Allegations As To Their Roles In The Transactions Underlying
       The Complaint ............................................................................16

    3. Contribution under N.Y.C.P.L.R. §1401 ......................................17

    4. Safrin's Contribution Claim Against The Stern Defendants
       Is Clearly Sufficient Because Plaintiffs Allege
       That They Are Joint Tortfeasors ...................................................18

POINT II:

THE CROSSCLAIMS PLEAD THE REQUISITE ELEMENTS
OF A CLAIM UNDER NEW YORK CIVIL RIGHTS LAW §§ 50 AND 51 ..........19

    A. Injury to "Thoughts, Feelings And Sentiments" Is Not A
       Required Element Of A § 51 Claim ............................................19

    B. Safrin's Allegations As Pled (Not As Mischaracterized
       By The Stern Defendants) Plainly State A Claim For
       Violations Of §§ 50 and 51 ........................................................23

POINT III:

THE CALIFORNIA COMMON LAW RIGHT TO PRIVACY CLAIM
IS SUFFICIENT BECAUSE IT ALLEGES SEPARATE VIOLATIONS,
BASED ON CONDUCT IN CALIFORNIA, OF SAFRIN'S RIGHT
TO PRIVACY ..................................................................................................24

POINT IV:

THE CROSSCLAIMS PLEAD THE EXISTENCE OF A CONSPIRACY ..............25

CONCLUSION ................................................................................................27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Alexander & Alexander of N.Y., Inc. v. Fritzen,
    503 N.E.2d 102, 68 N.Y.2d 968, 510 N.Y.S.2d 546 (1986) .................................................. 26

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)........................................................................................ 14

Bell Atl. Corp. v. Twombly,
    --- U.S. ---, 127 S. Ct. 1955 (2007)............................................................................. 14, 15

Bialobroda v. Buchwald,
    51 A.D.3d 467, 856 N.Y.S.2d 484 (lst Dep't 2008) ............................................................ 265

Bolton v. Weil, Gotshal & Manges LLP,
    9 Misc.3d 1105(A), 2005 WL 2185470 ( Sup.Ct. N.Y. Co.  July 13, 2005) .......................... 18

Briarpatch Ltd., L.P. v. Pate,
    81 F. Supp. 2d 509 (S.D.N.Y. 2000).................................................................................. 25, 26

Cevasco v. Nat'l R.R. Passenger Corp.,
    No. 04 Civ. 5760 (PAC) (GWG), 2007 WL 4440922 (S.D.N.Y. Dec. 18, 2007) ............ 15, 17

Chambers v. Time Warner,
    No. 00 Civ. 2839 (JSR), 2003 WL 749422 (S.D.N.Y. Mar. 5, 2003) .............................. 19, 22

Coleman v. Ted's Auto Sales, Inc.,
    33 Misc.2d 739, 227 N.Y.S.2d 693 (Sup. Ct. N.Y. Co. 1962) ............................................... 22

Corley v. County Squire Apartments, Inc.,
    32 A.D.3d 978, 820 N.Y.S.2d 900 (2d Dep't 2006) .............................................................. 17

Cox v. Abrams,
    No. 93 CIV. 6899 (RJW), 1997 WL 251532 (S.D.N.Y. May 14, 1997) ................................ 25

D'Amour v. D'Ohrenstein & Brown, LLP,
    17 Misc. 36 1130(A), 851 N.Y.S.2d 68,
    2007 WL 4126386 (Sup. Ct.  N.Y. Co. Aug. 13, 2007) ......................................................... 21

Elektra Entm't Group, Inc. v. Barker,
    551 F. Supp. 2d 234 (S.D.N.Y. 2008).................................................................................. 14, 15

## TABLE OF AUTHORITIES (continued)

Page(s)

Flores v. Mosler Safe Co.,
    164 N.E.2d 853, 7 N.Y.2d 276, 196 N.Y.S.2d 975 (1959).............................................. 20, 21

Frazier v. Turning Stone Casino,
    254 F. Supp. 2d 295 (N.D.N.Y. 2003)............................................................................ 22, 26

Freihofer v. Hearst Corp.,
    480 N.E.2d 349, 65 N.Y.2d 135, 490 N.Y.S.2d 735 (1985).................................................... 21

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007), cert. granted, Ashcroft v. Iqbal,
    --- S. Ct. ---, 2008 WL336310 (U.S. June 16, 2008) (No. 07-1015) ...................................... 14

Mathews v. ABC Television, Inc.,
    No. 88 CIV. 6031 (SWK), 1989 WL 107640 (S.D.N.Y. Sept. 11, 1989) ............................. 24

Meeropol v. Nizer,
    381 F. Supp. 29 (S.D.N.Y. 1974).................................................................................... 20, 21

Messenger ex rel. Messenger v. Gruner,
    727 N.E.2d 549, 94 N.Y.2d 436, 706 N.Y.S.2d 52 (2000)................................................ 21, 23

Molina v. Phoenix Sound Inc.,
    297 A.D.2d 595, 747 N.Y.S.2d 227 (1st Dep't 2003) ............................................................ 19

Nieves v. Home Box Office, Inc.,
    30 A.D.3d 1143, 817 N.Y.S.2d 227 (1st Dep't 2006) ............................................................ 21

Radio Today, Inc. v. Westwood One, Inc.,
    684 F. Supp. 68 (S.D.N.Y. 1988)......................................................................................... 22

Raquet v. Braun,
    681 N.E.2d 404, 90 N.Y.2d 177, 659 N.Y.S.2d 237 (1977)..................................................... 18

Ravich v. Kling,
    17 Misc.2d 683, 187 N.Y.S.2d 272 (Sup. Ct. N.Y. Co. 1959) .............................................. 26

Ryan v. Volpone Stamp Co.,
    107 F. Supp. 2d 369 (S.D.N.Y. 2000)................................................................................ 19, 22

Salvatore v. Kumar,
    45 A.D.3d 560, 845 N.Y.S.2d 384 (2d Dep't 2007) ............................................................ 26

**TABLE OF AUTHORITIES (continued)**

Page(s)

Tower Bldg. Restoration, Inc. v. 20 E. 9th St. Apt. Corp.,
    295 A.D.2d 229, 744 N.Y.S.2d 319 (lst Dep't 2002) ....................................................... 17, 18

Zamierowski v. Nat'l R.R. Passenger Corp.,
    No. 05 Civ. 9309 (WCC), 2006 WL 1816377 (S.D.N.Y. June 28, 2006) ....................... 15, 17


**Statutes and Rules**

CPLR § 1401 ................................................................................................................ 17, 18

N. Y. Civil Rights Law §§ 50, 51 ..................................................................................... passim

Fed. R. Civ. P. 9(b) ............................................................................................................ 20

## PRELIMINARY STATEMENT

Defendant/ Crossclaim Plaintiff Joshua Safrin ("Safrin") submits this Memorandum of Law in opposition to the motions filed by Defendants/Crossclaim Defendants Mark Stern ("Stern") and First Republic Group Realty LLC ("First Republic LLC") (Docket Entry No.118), and by Defendants/Crossclaim Defendants Ephraim Frenkel ("Frenkel") and Land Title Associates Escrow ("Land Escrow") (Docket Entry No. 116) to dismiss the crossclaims ("Crossclaims") asserted against them in Safrin's Answer.[1] (First Republic LLC, Stern, Frenkel, and Land Escrow are collectively referred to herein as the "Crossclaim Defendants" or "Stern Defendants").[2]

The essence of Safrin's Crossclaims is that Stern and First Republic LLC, together with Frenkel, Land Escrow and others, were integral parts of a scheme to misappropriate Safrin's identity (i.e., his name, stellar reputation in the real estate industry, and financial wherewithal). The schemers used Safrin's identity to secure plaintiffs' $13 million "investment" (for which plaintiffs claim to have received nothing in return) as well as $130 million in loans to purchase a large real estate portfolio of properties located throughout the Southeastern United States ("Property Portfolio").

The Stern Defendants each played a material role in the transactions at issue.[3] Indeed, the salient events date back to April of 2007, when First Republic Group Corp. ("First Republic Corp.") -- Stern's solely-owned company -- contracted to purchase the real estate portfolio. Collectively, the Stern Defendants each contributed to the plaintiffs' alleged harm:  Stern executed the operative transaction and ownership documents, and through his and First Republic LLC's lawyer, Stephen Friedman (who is separately named as a Third Party Defendant), made a

---

[1] A copy of the Answer with Crossclaims is attached as Exhibit 1 to the Declaration of Jonathan D. Lupkin, executed July 31, 2008 ("Lupkin Decl.").

[2] As the arguments contained in the briefs submitted in support of these two motions are virtually identical, references herein to the arguments in these memoranda of law are made by citation to the brief in support of Defendant Stern and First Republic LLC's motion (Docket No. 119) (hereafter, "Mem.").

[3] A copy of Complaint ("Complaint" or "Compl.") is attached as Exhibit A to Safrin's Answer with Crossclaims, which is itself attached to the Lupkin Decl. as Exhibit 1.

host of purported misrepresentations to the plaintiffs, including that Safrin was part of the deal. Frenkel and Land Escrow put the finishing touches on the plan when they improperly took and used the $13 million plaintiffs placed into escrow based upon the unauthorized instructions issued by third party defendant Steven Alevy.

Because of the representations that Safrin as part of the deal, plaintiffs have chosen to feature Safrin in this suit as an individually-named defendant, together with the Stern Defendants. Nevertheless, plaintiffs noticeably neglect to ascribe to Safrin any active role in the tortuous tale they have spun (aside from what they claim happened "through Friedman," which Safrin denies). Plaintiffs fail to allege -- because they cannot -- a single meeting with Safrin, or even that plaintiffs ever negotiated with Safrin directly. Safrin's name does not appear on the so-called "Letter of Intent" that began this deal, nor is he identified in the purported, unsigned partnership agreement attached to the Complaint, and to which plaintiffs ascribe some sort of significance.

Certainly, the Stern Defendants cannot claim lack of involvement:

- **Crossclaim Defendant Stern's** "fingerprints" can be found throughout the exhibits to the Complaint: he signed the grant deeds for the properties in the Property Portfolio (Compl., Ex. 1), the Letter of Intent, which was also sent to his e-mail account (Compl., Ex. 2), and executed two separate promissory notes to plaintiff Amusement Industry, Inc., for $13 million and $15 million, respectively (Compl., Exs. 6 and 7). Stern is also the designated signatory, on behalf of First Republic Corp., to the draft partnership agreement (Compl., Ex. 3). Finally, Stern retained attorney Stephen Friedman ("Friedman") to act on his and First Republic LLC's behalf in connection with the transactions at issue;

- **Crossclaim Defendant First Republic LLC** is alleged to have taken over First Republic Corp.'s role as buyer of the real estate portfolio at issue in the underlying Complaint. (Crossclaims ¶ 285; Compl. ¶¶ 24, 46.) It is also alleged to be controlled and partially owned by Stern (Compl. ¶¶ 5, 9-12); and

2

- **Crossclaim Defendants Frenkel and Land Escrow** are alleged to have taken and used the $13 million of plaintiffs' money held in escrow -- in violation of plaintiffs' instructions -- at the behest of Steven Alevy, a mortgage broker who happens to be the son of Allen Alevy, plaintiff Amusement's sole shareholder. (Crossclaims ¶ 320; Compl. ¶¶ 58, 63.)  Steven Alevy ("Alevy") is separately named as a Third Party Defendant.

Given the Stern Defendants' critical roles in the transactions at issue, Safrin respectfully submits that these motions should be summarily denied:[4]

- First, by referencing exclusively a single paragraph of Safrin's Crossclaims and ignoring the Crossclaims' remaining 97-odd paragraphs, the Stern Defendants assert, in essence, that Safrin has not pleaded enough to state claims for contribution and indemnification.  As set forth more fully below, Safrin's factual allegations, all of which are explicitly incorporated into his claims for indemnity and contribution, are more than sufficient to render such claims viable and "plausible" (see infra, Point I);

- Second, the Stern Defendants' argue that Safrin cannot state a claim under N.Y. Civil Rights Law §§ 50 and 51, but their contention is based on a misreading of the law and mischaracterization of Safrin's allegations.  As set forth more fully below (and as made clear by the plain terms of the statute and its interpretive case law) Safrin's allegations -- that the Stern Defendants actively participated in a scheme to misappropriate Safrin's name and reputation within the State of New York in order to gain a commercial advantage -- are more than sufficient to state a claim under the statute (see infra, Point II);

- Third, contrary to the Stern Defendants' contention, Safrin states a claim under California's common law right to privacy.  This count of the Crossclaims is different from Safrin's claims under the New York Civil Rights Law; the California claim concerns separate misconduct committed in the state of California and not covered by the New York statute (see infra, Point III); and

- Fourth, Safrin has stated claims for conspiracy under New York law because he has pled the existence of actionable underlying torts, namely, violations of N.Y. Civil Rights Law §§ 50 and 51 and California's common law right to privacy (see infra, Point IV).

---

[4] In addition to the dubious nature of the Stern Defendants' legal arguments, their motion, even if somehow meritorious, would not dispose of the entire action; they do not move against Safrin's declaratory judgment claim.

For the foregoing reasons and the reasons set forth below, the Stern Defendants' motions should be denied in their entirety.

## STATEMENT OF FACTS

### A.    The Underlying Complaint in the Main Action

On December 27, 2007, Plaintiffs commenced an action in this Court against Safrin, Stern, Frenkel, First Republic LLC and Land Escrow (the "Main Action") (Crossclaims ¶ 268.)

The Complaint begins with plaintiff Amusement Industry, Inc.'s ("Amusement") acceptance of an investment proposal presented by non-parties Steven Alevy and Stephen Friedman, on behalf of First Republic Corp. -- a company alleged to be solely owned and controlled by Stern. (Crossclaims ¶¶ 290, 294; Compl. ¶ 31). The proposal contemplated First Republic Corp.'s purchase from non-party Colonial Realty Limited Partnership ("Colonial Realty") of a certain real estate portfolio consisting of shopping centers located in southeastern United States (the "Property Portfolio"). (Crossclaims ¶ 290; Compl. ¶¶ 24, 30-31.) First Republic Corp. contracted to buy the property in April, 2007. (Crossclaims ¶ 285; Compl. ¶ 24.) At some point, First Republic Corp. assigned its interest in the Property Portfolio to First Republic LLC. (Crossclaims ¶ 285; Compl. ¶ 46.)

Although the Complaint names Safrin, a well-respected name in the real estate industry, as a defendant, Safrin was unaware of any of the transactions at issue in the Main Action until shortly before being served with process. (Crossclaims ¶ 269.) Plaintiffs, who allege gross misconduct against Safrin and his co-defendants in connection with the Property Portfolio transaction, premise their entire case against Safrin on statements made and actions taken by Friedman, Stern and First Republic LLC's attorney, who purportedly acted for and spoke as Safrin's attorney and agent.[5] (Crossclaims ¶¶ 269, 292; Compl. ¶ 32.) Beginning with

---

[5] Plaintiffs, who cannot plausibly allege that Safrin played any role in the transaction at issue, nevertheless attempt to assert claims against him for: (i) declaratory relief (Count 1); (ii) quiet title (Count 3); judicial foreclosure of real property (Count 5); (iii) breach of contract (Counts 6, 8, 9, 11, 12 and 16); (iv) fraud (Counts 19, 20, 23); (v) fraud in the inducement (Counts 15 and 17); (vi) fraudulent concealment (Counts 17, 21); (viii) negligent misrepresentation (Counts 18, 20, and 22); (ix) Conversion (Count 24); (x) conspiracy to commit conversion and fraud (Count 25); (xi) unjust enrichment (Count 26); and (xii) breach of fiduciary duty (Count 27).

4

Friedman's presentation of the investment opportunity to plaintiffs in June, 2007, the Complaint alleges that virtually all of the negotiations at issue occurred through Friedman. (Crossclaims ¶¶ 269, 292; Compl. ¶ 32.)

## B.    The Parties

Defendant/Third Party-Crossclaim-Counterclaim-Plaintiff Safrin is an individual and citizen of the State of New York, residing at 50 Riverside Drive, Apt. 2A, New York, New York, 10024. (Crossclaims ¶ 271; Compl. ¶ 4.)

Defendant/Crossclaim Defendant Stern is an individual and citizen of the State of New York residing at 39 Remsen Avenue, Monsey, New York  10952. (Crossclaims ¶ 274; Compl. ¶ 3.)

Defendant/Crossclaim Defendant Frenkel is an individual and citizen of the State of New York. (Crossclaims ¶ 275; Compl. ¶ 13.)

Defendant/Crossclaim Defendant Land Escrow was and is a limited liability company organized under the laws of the State of New York with its principal place of business at 1979 Marcus Avenue, Suite 210, Lake Success, New York 11042, operating under the name "Land Title Associates." (Crossclaims ¶ 277; Compl. ¶ 14.)

Crossclaim Defendant First Republic LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York County in the State of New York.  (Crossclaims ¶ 276; Compl. ¶ 5).  The Complaint further alleges the following ownership and management structure of First Republic LLC (Compl. ¶¶ 5, 9-12):

5



Friedman is an individual and citizen of the State of New York. (Crossclaims ¶ 278.) He is an attorney with and a shareholder in the law firm Buchanan, Ingersoll & Rooney, P.C. ("BIR"). (Crossclaims ¶ 278; Compl. ¶ 8.) Friedman was acting, at all times mentioned herein, in his capacity as an attorney and shareholder of BIR. (Crossclaims ¶ 278.) Friedman is separately named as a Third Party Defendant. (Id.)

BIR is a professional corporation organized under the laws of Pennsylvania, which maintains offices for the practice of law at 620 Eighth Avenue, 23rd Floor, New York, NY 10018-1669. (Crossclaims ¶ 279.) Friedman practices out of BIR's New York office. (Id.) BIR is separately named as a Third Party Defendant. (Id.)

Alevy is an individual and citizen of the State of New York, residing at 275 West 96th St, New York, New York, 10025. (Crossclaims ¶ 280.) Alevy is Managing Director of Bankers Capital Realty Advisors LLC ("Bankers Capital"), and is the son of Allen Alevy, the sole shareholder of plaintiff Amusement Industry, Inc. (Crossclaims ¶ 280; Compl. ¶30.) Alevy is separately named as a Third Party Defendant. (Crossclaims ¶ 280.)

6

Bankers Capital was and is a limited liability company with its principal place of business at 575 Madison Avenue, 10th floor, New York, NY 10022. (Crossclaims ¶ 281.) Safrin alleges that Alevy was acting, at all times mentioned herein, in his capacity as an employee and Managing Director of Bankers Capital. (Crossclaims ¶ 281; Compl. ¶ 30.) Bankers Capital is separately named as a Third Party Defendant. (Crossclaims ¶ 281.)

First Republic Corp. is a corporation organized under the law of New York, with its principal place of business at 241 Fifth Avenue, Suite 302, New York, New York 10016. (Crossclaims ¶ 282; Compl. ¶ 6.) First Republic Corp. was, at all times mentioned herein, solely owned and controlled by defendant Stern. (Crossclaims ¶ 282; Compl. ¶ 6.) First Republic Corp. is separately named as a Third Party Defendant. (Crossclaims ¶ 282; Compl. ¶ 6.)

Plaintiff/Counterclaim-Defendant Amusement is a corporation organized under the laws of the State of California with its principal place of business at 6665 Long Beach Blvd., Long Beach, California, 90805. (Crossclaims ¶ 272; Compl. ¶ 1.)

Plaintiff/Counterclaim Defendant Practical Finance Co., Inc. ("Practical Finance"), is a corporation organized under the laws of the State of California with its principal place of business at 6665 Long Beach Blvd., Long Beach, California, 90805. (Crossclaims ¶ 273; Compl. ¶ 2.)

## C.    The Citigroup Loan Documents

Plaintiffs allege that Stern and Safrin obtained financing for the purchase of the Property Portfolio by executing two loan agreements with Citigroup Global Markets Realty Corp. ("Citigroup") on behalf of various purchasing entities. (Crossclaims ¶ 286, Compl. ¶¶ 25-26.) First Republic LLC executed a loan agreement with Citigroup for $111,150,000.00 and FRGR Managing Member LLC, a constituent member of the First Republic LLC ownership structure, executed a Mezzanine Loan Agreement with Citigroup for $15,000,000.00. (Crossclaims ¶ 286, Compl. ¶¶ 25-26.) Both loan agreements are dated as of July 11, 2007 and define "Guarantor" to include Safrin. (Crossclaims ¶ 286, Compl. ¶¶ 25-26.)

The purported signatures of Safrin on these documents are forgeries, as confirmed by a highly reputable handwriting expert with 40 years of experience in the field. (Crossclaims ¶ 287.) (Lupkin Aff., Exhibit 1 (Crossclaims) at Exhibit B.)  Stern, whose signatures also appear on these documents, does not deny that the signatures are his.  (Crossclaims ¶ 327.)

### D.    Plaintiffs' Investment

Plaintiffs allege that because the Citigroup loan was insufficient to enable First Republic LLC to purchase the Property Portfolio, Safrin and Stern approached mortgage broker Alevy and Friedman for the purpose of obtaining the additional necessary financing.  (Crossclaims ¶ 288; Compl. ¶ 28-30).  Safrin never made any such approach. (Crossclaims ¶ 289.)

According to the Complaint, on June 29, 2007, Alevy and Friedman presented an investment opportunity to Amusement, on behalf of Safrin and Stern, to raise funds sufficient to complete the Property Portfolio purchase. (Crossclaims ¶ 290; Compl. ¶ 31).  Safrin never authorized Alevy or Friedman to present any such opportunity to Amusement.  (Crossclaims ¶ 291.)

Plaintiffs allege that Friedman "represented" Stern, Safrin and later First Republic LLC in their purported "communications and dealings with plaintiffs."  (Crossclaims ¶ 292; Compl. ¶ 32.)  Plaintiffs also allege that Friedman owed a separate fiduciary duty to Amusement because he had previously represented Amusement, as well as its sole shareholder, Allen Alevy, and his son, Steven Alevy, in various legal matters.  (Crossclaims ¶ 292; Compl. ¶¶ 32-33.)  Plaintiffs contend that "as a result" of this previous representation by Friedman, "Friedman led Plaintiffs to believe that he had full authority to speak on behalf of Stern, Safrin and First Republic LLC." (Crossclaims ¶ 292; Compl. ¶ 32.)  Safrin never retained or otherwise authorized Friedman to speak or act on his behalf in connection with the transactions described in the Complaint. (Crossclaims ¶ 293.)

By contrast, it is undisputed that Friedman served as Stern's and First Republic's attorney and represented them in connection with these transactions.

1.    **The June 29, 2007 "Letter of Intent"**

According to the Complaint, the investment opportunity presented by Friedman and Alevy in June, 2007 resulted in a "written Letter of Intent" drafted by Alevy, signed by Stern on behalf of First Republic Corp. (Stern's solely-owned company) and dated June 29, 2007. (Crossclaims ¶ 294; Compl. ¶ 35). Although the document is referred to as a "Letter of Intent" in the Complaint, the document characterizes itself as a Letter of Understanding (hereafter "LOI"). (Crossclaims ¶ 294; Compl., Ex. 2.)  The LOI identifies as its parties First Republic Corp. (Stern's company) and Westland Industries, the name under which Amusement does business. (Crossclaims ¶ 294; Compl., Ex. 2.)  Safrin was not a party to the LOI.  (Crossclaims ¶ 295; Compl., Ex. 2).

Plaintiffs allege that on July 2, 2007, Alevy e-mailed the so-called LOI to Friedman and Stern. (Crossclaims ¶ 296; Compl., Ex. 2.)

According to the Complaint, on June 29, 2007, the same day Stern signed the LOI on behalf of First Republic Corp., Amusement wired $13,000,000.00 into the Land Escrow account. (Crossclaims ¶ 297; Compl. ¶ 36.)  Plaintiffs assert that as a result of this wire transfer, a contract formed among Amusement and the borrowers and the soliciting parties, Stern and Safrin, said contract having the terms of the LOI.  (Crossclaims ¶ 297; Compl. ¶ 36.)  Safrin never entered into any such contract. (Crossclaims ¶ 300; Compl., Ex. 2)

2.    **Plaintiffs' Subsequent Negotiations With Friedman**

Plaintiffs allege that during the seven-day period defined by the LOI, Amusement drafted and forwarded three partnership agreements to Friedman for Stern to sign in order "to complete a transaction." (Crossclaims ¶ 301; Compl. ¶ 42.)  The draft agreement attached to the Complaint does not call for Safrin's signature -- it calls for Stern's -- and the only parties to the draft partnership agreement are plaintiffs and "First Republic Group Corp." (Stern's solely-owned company). (Crossclaims ¶ 302; Compl., Ex. 3.)

According to the Complaint, after the seven day period passed without agreements being "finalized," Amusement continued to negotiate through Friedman (Crossclaims ¶ 303; Compl. ¶¶

9

44-61), and on July 6, 2007, plaintiffs, through Friedman: (a) suggested a new Property Portfolio ownership structure; (b) inquired as to whether its $13,000,000.00 contribution to the purchase should be a loan to Stern or to the entity that would be the owner of the Property Portfolio; (c) advised that the seven-day period had expired; and (d) noted that there should be about $4,000,000.00 in reserve after the closing. (Crossclaims ¶¶ 304; Compl. ¶ 44.) Plaintiffs also instructed Friedman not to authorize the release of the $13,000,000.00 held in escrow. (Crossclaims ¶¶ 304; Compl. ¶ 44.)

Safrin was unaware of these negotiations and communications. (Crossclaims ¶ 305.)

Plaintiffs allege that on July 6, 2007, counsel for Amusement also wrote to Friedman, stating that if the transaction had materially changed from the terms embodied by the draft partnership agreements and the LOI (agreements to which only Amusement and First Republic Corp. were parties), then the wired $13 million should be returned. (Crossclaims ¶ 306; Compl. ¶ 45.) Safrin was unaware of this communication. (Crossclaims ¶ 307.)

On July 9, 2007, according to the Complaint, Amusement asked Friedman, in writing, for a copy of the Citigroup loan documents that provided the majority of the financing for the Property Portfolio purchase. (Crossclaims ¶ 308; Compl. ¶ 46.) Friedman did not provide the documents, but responded that same day, in writing, that First Republic LLC was now the purchasing entity. (Crossclaims ¶ 308; Compl. ¶ 46.) Safrin was unaware of this representation. (Crossclaims ¶ 309.)

During the flurry of back-and-forth communications alleged to have occurred on July 9, 2007 through Friedman (Crossclaims ¶ 310; Compl. ¶¶ 46-49) Friedman promised, in writing, that formal documentation of Amusement's interest in the Property Portfolio was recognized and would be completed as necessary after closing once First Republic LLC owned the Property Portfolio. (Crossclaims ¶ 310; Compl. ¶ 48.) Safrin was unaware that any of these representations were being made on his behalf. (Crossclaims ¶ 311.)

According to the Complaint, Amusement then instructed Friedman, for a second time, not to authorize release of the $13 million in escrow. (Crossclaims ¶ 312; Compl. ¶ 51.)

Amusement also instructed Land Escrow and Frenkel not to release Amusement's funds without written authorization of Sragow & Sragow, one of two firms acting as counsel of record to plaintiffs in the Main Action. (Crossclaims ¶ 312; Compl. ¶ 51.)  Safrin was unaware that Amusement's money, or indeed anyone's money, was being held in escrow in connection with the Property Portfolio's purchase or financing. (Crossclaims ¶ 313.)

Plaintiffs allege that on July 11, 2007, Friedman provided documents to Amusement, including a Promissory Note for $13,000,000.00 signed by Stern in his individual capacity, an Escrow Agreement, and Agreements, purportedly signed by Stern and Safrin (Compl., Exs. 5 and 6), assigning their respective LLC membership interests in First Republic LLC and the underlying LLC ownership structure, and eleven grant deeds for the property in the Property Portfolio, all of which were signed by Stern on behalf of First Republic LLC and notarized on July 12, 2007 (Compl., Ex. 1) (these documents are collectively referred to herein as the "Escrow Documents"). (Crossclaims ¶ 314; Compl. ¶ 52.)

Safrin's signature on the "Agreement" that purportedly assigns his LLC interests ("Assignment Agreement") is a forgery, as confirmed by a highly reputable handwriting expert with 40 years of experience in the field. (Crossclaims at Exhibit B; Crossclaims ¶ 315.) Moreover, Safrin's forged signature, as it appears in the document, is not witnessed, as required by the form itself. (Crossclaims ¶ 315.)

### 3.    The July 11, 2007 Counter Offer

According to the Complaint, on July 11, 2007, Amusement communicated to Safrin, Stern, and First Republic LLC, in writing "through Friedman" a "counter offer" because it disagreed with the characterization of the transaction among the parties reflected in the Escrow Documents, including that the money from Amusement was a loan. (Crossclaims ¶ 316; Compl. ¶ 53.)  Amusement declared that there would be no loan. (Crossclaims ¶ 316; Compl. ¶ 53.) Rather, the $13,000,000.00 would be treated as a direct investment with a preferred right to a return of this investment within 45 days. (Crossclaims ¶ 316; Compl. ¶ 53.)  In addition, the cost of the repayment right would be increased to $15,000,000.00 because of some $4,000,000.00

11

remaining in reserve after closing.  (Crossclaims ¶ 316; Compl. ¶ 53.)  Amusement also

demanded conveyance to Amusement of 100% of the Property Portfolio by deeding all eleven

properties to Amusement, together with the conveyance of the LLC membership interests, and

noted that Stern and Safrin would have a limited option to repurchase the grant deeds and a 50%

ownership interest by providing "the partnership agreement" (presumably an executed copy of

the document attached to the Compl. as Ex. 3) within a period of 45 days.  (Crossclaims ¶ 316;

Compl. ¶ 53.)  Safrin was unaware of these communications.  (Crossclaims ¶ 317.)

   According to the Complaint, Friedman responded, telling Amusement that it "should not

worry as Amusement now owned the whole thing," and the following day, provided a

$15,000,000.00 promissory note signed by Stern only, in his individual capacity.  (Crossclaims ¶

318; Compl. ¶ 56, and Ex. 7.)  Safrin was unaware of Friedman's representation and never

authorized Friedman to make it.  (Crossclaims ¶ 319.)

**E.     Frenkel And Land Escrow Take And Use The $13 Million
         In Escrow In Contravention of Amusement's Instructions**

   Plaintiffs allege that on July 12, 2007, and in direct violation of plaintiffs' prior

instructions, Frenkel and Land Escrow "took and used" the $13,000,000.00 in escrow based on

unauthorized verbal and written instructions from Alevy.  (Crossclaims ¶ 320; Compl. ¶¶ 58, 63.)

**F.     Safrin Had No Involvement In The Transactions Alleged
         In The Complaint, But The Stern Defendants Used His Name And
         Reputation -- Without His Knowledge Or Consent -- To Make It Happen**

   Safrin was unaware that Friedman represented to plaintiffs that he (Friedman) was

Safrin's agent or attorney, did not authorize Friedman to make any such representations, and had

no knowledge of any of the representations or actions described in the Complaint that were

purportedly undertaken by Friedman -- Stern's and First Republic LLC's attorney -- on his

behalf.  (Crossclaims ¶ 270.)

   As set forth more fully below, Stern, First Republic LLC, together with Frenkel and Land

Escrow, as well Third Party Defendants Friedman, Alevy, BIR and Bankers, were integral

parts of a scheme to misappropriate Safrin's identity (i.e., his name, stellar reputation in the real estate industry, and financial wherewithal), in order to secure financing for the purchase of the Property Portfolio. (Id.)

## PROCEDURAL HISTORY

On February 27, 2008, all of the defendants in the main action filed motions to dismiss (Docket Entry Nos. 27, 35) the Complaint in its entirety. These motions remain sub judice; only Safrin has filed an Answer. (Docket Entry No. 148.) On February 28, 2008, the Court held a pre-trial conference, which resulted in a scheduling order ("Scheduling Order") entered on March 5, 2008. (Docket Entry No. 41.) The Scheduling Order set May 1, 2008 as the deadline for joinder of additional parties.

On May 1, 2008, Safrin impleaded third party defendants Friedman, Alevy, BIR, Bankers Capital, and First Republic Corp. (hereinafter collectively referred to as the "Third Party Defendants"). (Docket Entry No. 65.) In his pleading, and together with traditional contribution and indemnification claims, Safrin has also asserted several independent tort claims and a claim for declaratory judgment against the Third Party Defendants. In that same pleading, Safrin also asserted crossclaims against co-defendants Stern, First Republic LLC, Frenkel, and Land Title, and counterclaims against the plaintiffs. The crossclaims asserted against the Stern Defendants were the same as those asserted against the Third Party Defendants.

On May 29, 2008, and with Court approval, Safrin filed an Amended Third Party Complaint ("TPC") containing crossclaims and counterclaims, which asserts the same claims for relief against the Third Party Defendants and the Stern Defendants as were interposed against these parties in the original third party complaint. (Docket Entry No. 93.)

On June 9, 2008, the Stern Defendants filed motions to dismiss the claims asserted against them in the Amended Third Party Complaint under Rules 14(a) and 12(b)(6). (Docket Entry Nos. 116 and 118.)

On July 3, 2008, at a conference before Judge Gorenstein, the Court directed Safrin to re-file his crossclaims with an answer on or before July 18, 2008. The TPC would remain operative

as against the impleaded parties, Friedman, BIR, Alevy, Bankers Capital and First Republic Corp.

On July 18, 2008, Safrin filed his Answer containing Crossclaims.[6]  (Docket Entry No. 148.)  On July 28, 2008, counsel for the Stern Defendants submitted declarations restating and reincorporating the substantive grounds for dismissal asserted in their June 9, 2008 memoranda of law in support of their previously filed motions to dismiss the Crossclaims (Docket Entry Nos. 116 and 118), but withdrawing those portions of the motions seeking dismissal pursuant to Rule 14.  See Declaration of Michael A. Lynn, executed July 28, 2008 (Docket Entry No. 149) and Declaration of Stephen R. Stern, executed July 28, 2008 (Docket Entry No. 150).

## ARGUMENT

### I.  SAFRIN PLEADS MORE THAN ENOUGH FACTS TO STATE A PLAUSIBLE CLAIM FOR CONTRIBUTION AND/OR INDEMNITY AGAINST THE STERN DEFENDANTS

**A.**  *Twombly* **and Its Progeny Require Only That A Pleader Allege Claims That Are "Plausible"**

In Bell Atl. Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007), the Supreme Court endorsed "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (italics in original), cert. granted, Ashcroft v. Iqbal, --- S. Ct. ----, 2008 WL 336310, at *1 (U.S. June 16, 2008) (No. 07-1015); see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).  Thus, in order to survive a motion to dismiss, a plaintiff must state "'only enough facts to state a claim to relief that is plausible on its face.'"  Twombly, 127 S.Ct. at 1974; see Elektra Entm't Group,

---

[6]  Safrin's Answer asserts the same Crossclaims against the Stern Defendants as in the Amended Third Party Complaint: Indemnification and/or Contribution (Count I); Declaratory Judgment (Count II); N.Y. Civil Rights Law §§ 50, 51 (Count III (TPC Count V)); Violation of California Common Law Right of Privacy/Commercial Misappropriation (Count IV (TPC Count VI)); Conspiracy to Violate N.Y. Civil Rights Law §§ 50, 51 (Count V (TPC Count VII)); and Conspiracy to Violate Safrin's Right to Privacy Under California Common Law (Count VI (TPC Count VIII)).

Inc. v. Barker, 551 F. Supp. 2d 234, 237 (S.D.N.Y. 2008) ("a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations") (quoting Twombly, 127

S. Ct. at 1964).  Ordinarily, "[a] motion to dismiss requires the Court to accept as true the factual

allegations made in the complaint and draw all inferences in favor of the plaintiffs." Elektra, 551

F. Supp. 2d at 238 (internal quotation marks and citations omitted).

Stern and First Republic LLC's token "Twombly" objection -- that paragraph 334 of the

Crossclaims (TPC ¶ 69) purportedly fails to plead a factual basis for his contribution or

indemnification claims -- is baseless.  The argument is premised entirely upon the Stern

Defendants' myopic reference to a single paragraph -- paragraph 334.  It completely ignores the

substantial factual allegations preceding (and expressly incorporated into) Safrin's count for

indemnity and contribution.[7]  Consequently, insofar as the Stern Defendants' motions are

premised upon Twombly, they must be denied.

**B.**     **Safrin's Pleading Gives The Stern Defendants More Than**
**Fair Notice Of His Claims For Indemnification And Contribution**
**And The Grounds Upon Which Those Claims Rest**

**1.**     **Common Law Indemnification**

Common law or "implied in law indemnity . . . is a tort-based right to indemnification

found when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has

paid for a loss that was primarily the responsibility of the other." Cevasco v. Nat'l R.R.

Passenger Corp., No. 04 Civ. 5760 (PAC) (GWG), 2007 WL 4440922, at *6, 7 (S.D.N.Y. Dec.

18, 2007) (Gorenstein, J.) (holding that proposed complaint stated claim for indemnification);

Zamierowski v. Nat'l R.R. Passenger Corp., No. 05 Civ. 9309 (WCC), 2006 WL 1816377, at *1,

7 (S.D.N.Y. June 28, 2006) (railroad defendants' common law indemnity cross claims against

Club held sufficient where plaintiffs in the action "brought negligence claims against both the

railroad defendants and [the club]" arising out of accident whereby Amtrak train killed plaintiff's

---

[7] Indeed, this nearsighted argument would call for dismissal of Frenkel and Land Escrow's crossclaims against
Alevy and Bankers Capital (Docket No. 132), as their causes of action for indemnity and contribution are quite
similar to those asserted by Safrin.

decedent as he was attempting to pass through an unsignaled, ungated private railway crossing
en route to the club).

2.    **Safrin's Indemnification Claims Against The Stern Defendants
      Are Hardly Speculative, Given The Specific Factual Allegations
      As To Their Roles In The Transactions Underlying The Complaint**

The Stern Defendants fail to back up their objection, that "[n]owhere in his amended
third party complaint does Safrin provide any factual allegations to support a plausible claim for
indemnification or contribution to raise his right to relief above the speculative level." (Stern
Mem. at 5.) Indeed, that this argument is entirely unsubstantiated is evident upon even the most
cursory review of the Crossclaims and the Complaint:

- Stern signed, on behalf of First Republic LLC, the eleven grant deeds constituting
  the Property Portfolio (Compl., Ex. 1), the Letter of Intent (Compl., Ex. 2), and
  two separate promissory notes to Amusement Industry, Inc., for $13 million and
  $15 million, respectively (Compl., Exs. 6 and 7), and is the designated signatory,
  on behalf of First Republic Corp., to the draft partnership agreement (Compl., Ex.
  3). (Crossclaims ¶ 314; Compl. ¶ 52.)

- First Republic LLC is alleged to have taken over First Republic Corp.'s role as
  buyer of the real estate portfolio at issue in the underlying Complaint
  (Crossclaims ¶ 285; Compl. ¶ 46) and is also alleged to be controlled and partially
  owned by Stern. (Crossclaims ¶ 282; Compl. ¶ 6.)

- Crossclaim Defendants Frenkel and Land Escrow are alleged to have taken and
  used the $13 million of plaintiffs' money held in escrow -- in violation of
  plaintiffs' instructions -- at the behest of Steven Alevy, who is separately named
  as a Third Party Defendant. (Crossclaims ¶ 320; Compl. ¶¶ 58, 63.)

- Stern retained Friedman as counsel to him and to First Republic LLC, and,
  presumably, directed Friedman to make (or was at least aware that Friedman was
  making) the representations to plaintiffs that form the basis of the Complaint.

The factual predicate for Safrin's indemnity claims is quite simple:  Plaintiffs allege
claims of negligent misrepresentation, breach of fiduciary duty and a host of other torts against
"Stern and Safrin" or "Stern, Safrin and First Republic LLC," as well as conversion and fraud
claims against Safrin, Stern, Frenkel and Land Escrow.  Safrin denies any wrongdoing or fault.
Accordingly, in the unlikely event that Safrin is found liable to plaintiffs for the various torts and

16

breaches of duty alleged in the Complaint, Safrin has adequately alleged a claim for common law

indemnity because such liability would result in his paying for a loss that was primarily the

responsibility of the other tortfeasors. See Cevasco, 2007 WL 4440922, at *6.

Corley v. County Squire Apartments, Inc., 32 A.D.3d 978, 979, 820 N.Y.S.2d 900 (2d

Dep't 2006), cited by the Stern Defendants (Stern Mem. at 5), does not alter this result. In

Corley, the Court held that the defendant apartment building failed to allege that plaintiff's injury

was due solely to the negligence of co-defendant construction company. Here, by contrast,

Safrin explicitly "denies any wrongdoing or fault" (Crossclaims ¶ 333; TPC ¶ 68) and alleges

that "[t]o the extent he may be found liable to Plaintiffs for damages, however, such damages

were caused, in **whole** or in part, by the wrongful conduct of one or more of the Defendants."

((Crossclaims ¶ 333; TPC ¶ 68) (emphasis added).) Accordingly (even under Corley), Safrin's

allegations are sufficient at this preliminary stage in the proceedings for his indemnification

claim to survive. See Cevasco, 2007 WL 4440922, at *6 (concluding that because "we cannot

look beyond Amtrak's assertion -- implicit in the complaint -- that Amtrak ultimately may be

found liable in this case without necessarily being found negligent . . . the proposed complaint

states a claim for indemnification."); Zamierowski, 2006 WL 1816377, at *7 (refusing to dismiss

railroad defendants' common law indemnity cross claims against Club, where plaintiffs in the

action brought negligence claims against both, because "[a]t this stage of the proceedings, the

Court cannot determine liability among the parties.").

### 3.    Contribution under N.Y. C.P.L.R. §1401

"All that must be shown . . . to set forth a viable claim for contribution is that both parties

owed a duty to [plaintiff] and that both contributed to [plaintiff]'s harm by breaching their

respective duties." Tower Bldg. Restoration, Inc. v. 20 E. 9th St. Apt. Corp., 295 A.D.2d 229,

229-30, 744 N.Y.S.2d 319, 320 (1st Dept 2002) (lower court "properly held that, insofar as any

liability on [fourth party plaintiff]'s part [to third party plaintiff] is based in tort, he may seek

contribution from [fourth party defendant] under the theory that [he] is a successive tortfeasor.").

Accordingly, "contribution is available whether or not the culpable parties are allegedly liable for

the injury under the same or different theories, and the remedy may be invoked against concurrent, successive, independent, alternative and even intentional tortfeasors." <u>Raquet v. Braun</u>, 681 N.E.2d 404, 407, 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 240 (1997) (internal citations and quotation marks omitted). Thus, to state a contribution claim, "the 'critical requirement' is an allegation that 'the breach of duty by the contributing party . . . had a part in causing or augmenting the injury for which contribution is sought.'" <u>Bolton v. Weil, Gotshal & Manges LLP</u>, 9 Misc.3d 1105(A), 2005 WL 2185470, at *3, 4 (Sup. Ct. N.Y. Co. July 13, 2005) (quoting <u>Raquet</u>, 681 N.E.2d at 407, 90 N.Y.2d at 183, 659 N.Y.S.2d at 240) (denying motion to dismiss third party action for contribution where third party plaintiff law firm alleged that another lawyer and his firm "as independent, concurrent tortfeasors, have contributed to or aggravated [plaintiff]'s injuries. This is clearly the type of claim encompassed by CPLR 1401.").

     **4.**     **Safrin's Contribution Claim Against**
           **The Stern Defendants Is Clearly Sufficient Because Plaintiffs**
           <u>**Allege That Safrin And The Stern Defendants Are Joint Tortfeasors**</u>

To the extent that Safrin may be held liable as a joint tortfeasor in conjunction with the Stern Defendants, he has a viable claim for contribution. Since "[a]ll that must be shown . . . to set forth a viable claim for contribution is that both parties owed a duty to [plaintiff] and that both contributed to [plaintiff]'s harm by breaching their respective duties," <u>see</u> <u>Tower Bldg.</u>, 295 A.D.2d at 229, 744 N.Y.S.2d at 319 (1st Dep't 2002), Safrin's contribution claim is more than plausible because plaintiffs allege the same torts against Safrin as the Stern Defendants.

Simply put, because plaintiffs allege claims of negligent misrepresentation, breach of fiduciary duty and a host of other torts against "Stern and Safrin" or "Stern, Safrin and First Republic LLC" as well as conversion and fraud claims against Safrin, in concert with Stern, Frenkel and Land Escrow, if Safrin and one or more of the Stern Defendants are held liable to the plaintiffs, then they necessarily will have been found to have breached one or more duties owed to the plaintiffs. Assuming such duties run to plaintiffs (an essential prerequisite to any

finding of tort liability here) and assuming further a finding (however unlikely) of fault against Safrin (i.e., a breach of one or more of these duties), Safrin would be entitled to request an apportionment of liability among the culpable tortfeasors.

## II.    THE CROSSCLAIMS PLEAD THE REQUISITE ELEMENTS OF A CLAIM UNDER NEW YORK CIVIL RIGHTS LAW §§ 50 AND 51[8]

The Stern Defendants contend that Safrin's allegations fail to state a claim under N.Y. Civil Rights Law §§ 50 and 51 because (1) Safrin does not claim that his "sentiments thoughts and feelings" were hurt; and (2) the facts alleged do not constitute the type of misconduct to which § 51 applies. (Stern Mem. at 5-7.)  Neither assertion is correct.  Consequently, the Stern Defendants' motions to dismiss must be denied.

### A.    Injury To "Thoughts, Feelings And Sentiments" Is Not A Required Element of a § 51 Claim

A violation of New York Civil Rights Law § 51 consists of only four elements: (i) usage of plaintiff's name, portrait, picture, or voice, (ii) within the state of New York, (iii) for purposes of advertising or trade, (iv) without plaintiff's written consent.  See Molina v. Phoenix Sound Inc., 297 A.D.2d 595, 597, 747 N.Y.S.2d 227, 230 (1st Dep't 2002); see also Chambers, 2003 WL 749422, at *4.  Accordingly, "the right of privacy is applicable here if [plaintiff]'s name was used without his consent."  Ryan, 107 F. Supp. 2d at 392-93.[9]

---

[8] The Stern Defendants' contention that "Section 50 of the Civil Rights Law plainly does not apply to Safrin's claims" (Stern Mem. at 5) ignores the interplay between §§ 50 and 51 of the Civil Rights Law, and, in any event, is of no consequence.  As courts within this district and throughout New York State have recognized, it is § 50 that "creates a statutory right of privacy making it a misdemeanor for '[a] person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person,'" (see Ryan v. Volpone Stamp Co., 107 F. Supp. 2d 369, 391 (S.D.N.Y. 2000) (quoting N.Y. Civil Rights Law § 50)), but it is § 51, its counterpart, that "creates a private right of action in equity and in law for violations of section 50."  Chambers v. Time Warner, No. 00 Civ. 2839 (JSR), 2003 WL 749422, at *4 (S.D.N.Y. Mar. 5, 2003).  Section 51 provides, in pertinent part: "Any person whose name, portrait or picture is used within the state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided [in section 50 NYCRL] may maintain an equitable action ... against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use . . . ."  Id. at *4 n.5 (quoting N.Y. Civil Rights Law §51).  Thus, contrary to the Stern Defendants' assertions, § 50 applies to Safrin's claims insomuch as his § 51 claim is necessarily premised on violations of § 50.

[9] The Stern Defendants relegate to a footnote their wholly unsupported "argument" that Safrin's privacy claim (and Civil Rights claim for conspiracy to violate his right to privacy) "should be dismissed for the additional reason that

Safrin's Crossclaims allege that the Stern Defendants, together with others, misappropriated and commercially exploited Safrin's name and identity (i.e., his name, stellar reputation in the real estate industry, and financial wherewithal), and confidential information containing Safrin's identity, and used these in order to make a profit and further their own commercial interests. (Crossclaims ¶¶ 340-48.)  These allegations are sufficient to plead the required elements of a § 51 claim.

The Stern Defendants do not argue that Safrin has failed to plead any of these requisite elements.  Instead, they assert that Safrin's pleading is deficient because it "does not claim [Safrin's] 'sentiments, thoughts and feelings' were hurt by the alleged conduct."  (Stern Mem. at 7.)  But nowhere in the statute or the cited case law is there any such requirement.  Those cases that actually address the notion of "hurt feelings" simply recognize that the protection of the individual's identity is at the core of this statute.  (See Stern Mem. at 6-7.)[10]  Safrin is surely entitled to that protection.

---

Safrin indiscriminately claims that 'defendants' violated his rights under New York Civil Rights Law, §§ 50 and 51 without ascribing any particular conduct to [them]."  (Stern Mem. at 7, n.4.)  They lodge a similar complaint with respect to Safrin's California privacy claims (Counts V and VI), asserting that Safrin fails to "ascribe any particular wrongful conduct [to them], resorting, instead, to wholesale and misplaced references to 'Defendants.'"  (Id. at 8.)  The Stern Defendants do not cite a single rule, statute or case in support of this apparent argument that some sort of heightened pleading standard applies here.  Accordingly, this argument should be disregarded.  To the extent that the Stern Defendants are making the roundabout argument that Fed R. Civ. P. 9(b) should apply, they are mistaken, and, in any event, they have failed to move for dismissal pursuant to Rule 9(b).  Safrin's Civil Rights claims neither allege, nor are premised upon fraud -- indeed, his claims simply assert that the Stern Defendants, acting in concert with others, made commercial use of a Safrin's name without Safrin's written consent for such use.  Of course, the Stern Defendants have failed to cite to any cases -- let alone cases applying Rule 9(b) to a right to privacy claim-- in support of their "argument."

[10]  The footnote in Meeropol v. Nizer, 381 F. Supp. 29, 39 n.6 (S.D.N.Y. 1974), aff'd, 560 F.2d 1061 (2d Cir. 1977), cited by the Stern Defendants (Stern Mem. at 7), merely discusses the origins of the right of privacy in connection with a more general discussion of the different interests served by the law of defamation and the right of privacy. Specifically, the Court notes that "the right of privacy has developed to compensate an individual for the injury to his feelings, to prevent inaccurate portrayal of private life, and, in some instances, to prevent one's private life from being depicted at all." Id.  Similarly, Flores v. Mosler Safe Co., 164 N.E.2d 853, 855, 7 N.Y.2d 276, 280, 196 N.Y.S.2d 975, 978 (1959), also cited by the Stern Defendants (Stern Mem. at 6-7), notes that "the primary purpose of this [privacy] legislation was to protect the sentiments, thoughts and feelings of an individual" and further states that "the purpose of the statute is remedial and rooted in popular resentment at the refusal of the courts to grant recognition to the newly expounded right of an individual to be immune from commercial exploitation." Safrin's allegations that the Stern Defendants, acting in concert with others, namely, Freidman, Alevy, BIR and Bankers Capital, misappropriated and commercially exploited Safrin's name and identity in order to make a profit, easily falls within the ambit of the statute's "purpose." (Crossclaims ¶¶ 340-46.)

The balance of the Stern Defendants' cases on this point are also inapposite. They involve situations in which either: (i) plaintiff has not properly pled the elements of the statute; or (ii) the claim was precluded by virtue of some particular First Amendment concern. (See Stern Mem. at 6-7) (citing Messenger ex rel. Messenger v. Gruner, 727 N.E.2d 549, 553-54, 94 N.Y.2d 436, 444, 706 N.Y.S.2d 52, 56-57 (2000) (model failed to state a § 51 claim for use of her photo in connection with a newsworthy article because a §§ 50 and 51 claim "does not lie where a plaintiff's photograph is used to illustrate a newsworthy article."); Freihofer v. Hearst Corp., 480 N.E.2d 349, 353-54, 65 N.Y.2d 135, 140-42, 490 N.Y.S.2d 735, 739-40 (1985) (dismissing § 51 claims based on publication of news articles concerning plaintiff's divorce because of the constitutional newsworthiness exception); Meeropol, 381 F. Supp. 29 (plaintiffs, the children of Julius and Ethel Rosenberg, failed to state a § 51 claim regarding statements in book concerning their activities during their parents' trial, as the statements were constitutionally protected; they concerned matters within the public interest, and plaintiffs' claims were based on statements which did not refer to the plaintiffs by their name); Flores, 164 N.E.2d 853, 7 N.Y.2d 276, 196 N.Y.S.2d 975 (denying motion to dismiss claim for violation of § 51 where defendant incorporated an entire newspaper article about a fire that had mentioned the plaintiff by name into a circular designed for the sole purpose of soliciting purchasers for the defendant's products). Neither of these concerns is an issue in the context of Safrin's pleading.

Not surprisingly, numerous decisions have sustained § 51 claims where the requisite elements were pled, but where allegations regarding hurt sentiments, thoughts, or feelings were lacking. See D'Amour v. Ohrenstein & Brown, LLP, 17 Misc. 3d 1130(A), 851 N.Y.S.2d 68, 2007 WL 4126386, at *19 (Sup Ct. N.Y. Co. Aug. 13, 2007) (Table) (denying motion to dismiss §§ 50 and 51 claims where plaintiffs, former partners in a law firm, alleged that defendants continued to use photos of them in law firm's promotional materials and website after plaintiffs left the firm and without their permission); Nieves v. Home Box Office, Inc., 30 A.D.3d 1143, 1143, 817 N.Y.S.2d 227, 227 (1st Dep't 2006) (motion to dismiss properly denied where plaintiff sought "to recover damages pursuant to [§ 51] for the unauthorized use of her image in a

television show produced and aired by defendants"); Chambers, 2003 WL 749422 at *4, 5

(denying motion to dismiss where plaintiffs alleged, *inter alia* that defendant, without written

consent, "derived revenue from the use of plaintiffs' names, likenesses and voices without their

consent on the MP3.com website" and that they were "harmed" thereby); Ryan, 107 F. Supp. 2d

at 392 (plaintiff stated a § 51 claim where "[v]iewing the allegations in the light most favorable

to the Plaintiff, it would appear that [defendant] used [Plaintiff]'s name for commercial purposes

without his consent"); Radio Today, Inc. v. Westwood One, Inc., 684 F. Supp. 68, 75 (S.D.N.Y.

1988) (denying motion to dismiss where "[t]he thrust of plaintiffs' allegations is that defendant

misused Dan Formento's name for the purpose of commercial exploitation, which, as defendant

concedes, is the harm that the statute is meant to prevent.") (citation omitted); Coleman v. Ted's

Auto Sales, Inc., 33 Misc. 2d 739, 739-41, 227 N.Y.S.2d 693, 695-96 (Sup. Ct. Kings Co.

1962), aff'd, 17 A.D.2d 827, 233 N.Y.S.2d 239 (2d Dep't 1962) (attorney's complaint alleging

that defendants used his name, reputation and widespread legal talent in automotive field for

purpose of conveying to those with whom they did business and from whom they sought credit,

through published credit report, notion that plaintiff was financially connected with their firm

and was responsible for its business policies, all with view of inducing others, on strength of

plaintiff's reputation, to impart credit to them, pleaded cause of action under §§ 50, 51); see also

Frazier v. Turning Stone Casino, 254 F. Supp. 2d 295, 300, 313 (N.D.N.Y. 2003) (allegations

sufficiently pled a claim for civil conspiracy based upon the underlying tort of invasion of

privacy, as set forth in §§ 50 and 51 of the New York Civil Rights Law, where plaintiffs alleged,

*inter alia*, that defendants "acted in concert and by agreement to misappropriate the Plaintiff's

image and likeness for commercial gain.")

     Accordingly, the Stern Defendants' motions to dismiss on the ground that "Safrin does

not claim his 'sentiments, thoughts and feelings' were hurt" (Stern Mem. at 7) must be denied.

**B.    Safrin's Allegations As Pled (Not As Mischaracterized By The Stern Defendants)
Plainly State A Claim For Violations of §§ 50 and 51**

The Stern Defendants also argue that the facts and circumstances alleged by Safrin --

"forgery of his signature on business documents" (Stern Mem. at 7) -- fail to state a claim

because the statute is "limited to nonconsensual commercial appropriations of the name, portrait,

or picture of a living person." (Id. at 6 (quoting Messenger, 727 N.E.2d at 552, 94 N.Y.2d at

441, 706 N.Y.S.2d at 55 (2000).)

The Stern Defendants have the law right, but the facts alleged wrong. Safrin's claim is

not one to recover for forgery, as such. Instead, Safrin alleges that the Stern Defendants co-

opted and used Safrin's name and reputation in order to facilitate a financial transaction for their

own profit and benefit. More specifically, Safrin alleges that the Stern Defendants

misappropriated his name and identity (and therefore his reputation in the real estate industry),

which included the use of Safrin's forged signature "in order to obtain the necessary financing

from Citigroup" as well as to "entice Plaintiffs" into making their $13 million contribution

towards the purchase of the Property Portfolio (Crossclaims ¶¶ 270, 340-48). As alleged in the

Crossclaims:

- "Crossclaim Defendants, together with the Third Party Defendants, operating out of
their places of business within the State of New York, knowingly and intentionally:
(a) used Safrin's forged name on the purported Assignment Agreement, the
operating agreements of FRGR Holdings LLC and JSAE Colonial LLC, as well as
other transactional documents, including officer's certificates, and the Citigroup loan
documents; (b) used Safrin's name and identity in connection with their negotiations
with Plaintiffs; and (c) drafted those documents that were necessary to create LLCs
in which Safrin was a purported member, director or manager. These LLCs include,
but are not limited to, JSAE Colonial LLC and FRGR Holdings LLC, both of which
are part of the First Republic LLC ownership structure." (Crossclaims ¶ 340.)

- " . . . Crossclaim Defendants used Safrin's name, without Safrin's consent, within
the State of New York." (Crossclaims ¶ 341.)

- "Safrin did not give either his oral or written consent to the use of his name in
connection with any of the transactions alleged in the Complaint, and Crossclaim
Defendants knew that no such consent had been obtained." (Crossclaims ¶ 343.)

- " . . . Crossclaim Defendants misappropriated Safrin's identity and stellar reputation in the real estate industry in order to obtain the necessary financing from Citigroup as well as to entice Plaintiffs into making its $13 million investment." (Crossclaims ¶ 344.)

- "Crossclaim Defendants engaged in this conduct in order to make a profit and develop business for the benefit of Crossclaim Defendants and/or others." (Crossclaims ¶ 345.)

(Crossclaims ¶¶ 340-45.)

Though the Stern Defendants may prefer to be litigating a different set of facts, the facts alleged by Safrin plainly present "a nonconsensual commercial appropriation" (Stern Mem. at 6) of Safrin's name. Accordingly, the Stern Defendants' motions to dismiss must be denied.

## III.  THE CALIFORNIA COMMON LAW RIGHT TO PRIVACY CLAIM IS SUFFICIENT BECAUSE IT ALLEGES SEPARATE VIOLATIONS, BASED ON CONDUCT IN CALIFORNIA, OF SAFRIN'S RIGHT TO PRIVACY

The Stern Defendants argue that Safrin cannot assert a claim for violation of California's common law right to privacy because he does not allege "any contacts with the State of California."[11] (Stern Mem. at 8.) In so doing, the Stern Defendants mischaracterize Safrin's privacy claims as a single cause of action brought pursuant to two different states' laws. This is not the case. Rather, Safrin has asserted separate causes of action based on separate conduct, in violation of the applicable law. Accordingly, the Stern Defendants' motions to dismiss Safrin's claim for violation of California's common law right to privacy must be denied.

Under New York choice of law rules, Safrin may assert a violation of privacy under California common law based on violations of his privacy that occurred within the state of California. New York's choice of law rules for torts apply to right to privacy claims, and "these rules direct the Court to the substantive law of the state with the most significant relationship *to the violation* of the right of privacy." Mathews v. ABC Television, Inc., No. 88 CIV. 6031

---

[11] The Stern Defendants also assert that Safrin "cannot claim a violation of his supposed California common law rights which presumably apply to California citizens." (Stern Mem. at 8.) As they fail to cite any authority for this naked proposition, it requires no response.

(SWK), 1989 WL 107640, at *4 (S.D.N.Y. Sept. 11, 1989) (citations omitted) (emphasis added); see Cox v. Abrams, No. 93 CIV. 6899(RJW), 1997 WL 251532, at *9 (S.D.N.Y. May 14, 1997) ("While the usual presumption with regard to choice of law questions is that the plaintiff in a privacy action may invoke the law of plaintiff's domicile, New York's choice of law rules for torts apply to privacy claims, and these rules direct the Court to the substantive law of the state with the most significant relationship to the violation of the right of privacy.").

The violation of California's common law right of privacy is premised upon the impermissible use of Safrin's name in California -- e.g., the transmission of documents containing his name to plaintiffs in California and the use of Safrin's name in connection with negotiations with plaintiffs in California. (Crossclaims ¶¶ 350-52.) The New York Civil Rights Law, by its terms, does not cover these claims because, under the statute, the prohibited conduct must have occurred in New York. See New York Civil Rights Law § 51. Thus, as California has the most significant relationship to these specific alleged violations,[12] the Stern Defendants' motions to dismiss this claim must be denied.

## IV.    THE CROSSCLAIMS PLEAD THE EXISTENCE OF A CONSPIRACY

The Stern Defendants half-heartedly assert that Safrin's conspiracy claim should be dismissed because New York does not recognize conspiracy as an independent cause of action. (Stern Mem. at 7.) However, it is well-settled that although there is no substantive tort of conspiracy under New York law, "a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." Briarpatch Ltd., L.P. v. Pate, 81 F. Supp. 2d 509, 516 (S.D.N.Y. 2000).[13] Even cases cited by the Stern Defendants make this basic point.

---

[12] In contrast, New York has the most significant relationship to the violations alleged in Safrin's claim under the New York Civil Rights Law § 51, which concerns the use of Safrin's name in New York. (Crossclaims ¶¶ 340-48.) Indeed, § 51 does not apply to conduct that occurs outside the State of New York.

[13] It is of no help to the Stern Defendants that Safrin incorporated a similar argument to the one they have asserted here in connection with his own motion to dismiss the plaintiffs' Complaint. (Stern Mem. at 7.) The Complaint's allegations against Safrin – which fail to allege that plaintiffs ever had a single conversation or exchange of correspondence with Safrin-- renders the Complaint against him implausible, including the underlying torts that would be necessary to support a conspiracy claim.

(See Stern Mem. at 7 (citing, e.g., Salvatore v. Kumar, 45 A.D.3d 560, 563-64, 845 N.Y.S.2d 384, 388 (2d Dep't 2007) ("Such a [conspiracy] claim stands or falls with the underlying tort") (internal citation omitted); Alexander & Alexander of N.Y., Inc. v. Fritzen, 503 N.E.2d 102, 103 68 N.Y.2d 968, 969 510 N.Y.S.2d 546, 547 (1986) (allegations of conspiracy are permitted to connect the actions of separate defendants to an actionable tort).)

Indeed, courts in this district and in New York state have upheld conspiracy claims where plaintiffs pled the existence of an underlying tort -- including conspiracy claims based on a violation of New York Civil Rights Law § 51. See Bialobroda v. Buchwald, 51 A.D.3d 467, 856 N.Y.S.2d 484 (1st Dep't 2008) (affirming denial of defendants' motion for summary judgment motion dismissing complaint, and finding, "with respect to the ninth cause of action," that "plaintiff may plead conspiracy in order to connect defendants' actions with her underlying claims of fraud and constructive eviction"); Frazier, 254 F. Supp. 2d at 300, 313 (allegations sufficiently pled a claim for civil conspiracy based upon the underlying tort of invasion of privacy, as set forth in §§ 50 and 51 of the New York Civil Rights Law, where plaintiffs alleged, inter alia, that defendants "acted in concert and by agreement to misappropriate the Plaintiff's image and likeness for commercial gain"); Briarpatch Ltd., 81 F. Supp. 2d at 516 (granting plaintiffs' motion to amend their complaint to add, inter alia, two new claims for conspiracy where proposed amended complaint alleged colorable underlying torts); Ravich v. Kling, 17 Misc.2d 683, 684, 187 N.Y.S.2d 272, 274 (Sup Ct. N.Y. Co. 1959) (finding allegations of conspiracy to invade plaintiff's right of privacy, in violation of § 51 of the Civil Rights law, sufficient to state a cause of action).

## CONCLUSION

For the foregoing reasons, the Stern Defendants' motions must be denied in their entirety.

Dated: New York, New York
       August 1, 2008

                            FLEMMING ZULACK WILLIAMSON
                            ZAUDERER LLP

                            By:_____/s/_____
                                Jonathan D. Lupkin (JL-0792)
                                Jean Marie Hackett  (JH-1784)

                            One Liberty Plaza
                            New York, New York  10006
                            Tel: (212) 412-9500
                            Fax: (212) 964-9200
                            Email: jlupkin@fzwz.com

                            *Attorneys for Defendant Joshua Safrin*