UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

AMUSEMENT INDUSTRY, INC., dba WESTLAND
INDUSTRIES; PRACTICAL FINANCE CO., INC.,

                                    Plaintiffs,

       - against -

MOSES STERN, aka MARK STERN; JOSHUA SAFRIN,
FIRST REPUBLIC GROUP REALTY LLC, EPHRAIM
FRENKEL, LAND TITLE ASSOCIATES ESCROW,

                                  Defendants.

: No. 07 Civ. 11586 (LAK)(GWG)

: (ECF)

----------------------------------------------------------------- X

JOSHUA SAFRIN,

                Defendant/Third Party-Crossclaim-
                        Counterclaim-Plaintiff,

       - against –

STEPHEN FRIEDMAN, STEVEN ALEVY, BUCHANAN
INGERSOLL & ROONEY, P.C., BANKERS CAPITAL
REALTY ADVISORS LLC, and FIRST REPUBLIC GROUP
CORP.,

                    Third Party Defendants,

       - and -

MOSES STERN, aka MARK STERN, FIRST REPUBLIC
GROUP REALTY LLC, EPHRAIM FRENKEL, and LAND
TITLE ASSOCIATES ESCROW,

                    Defendants/Crossclaim Defendants,

       - and -

AMUSEMENT INDUSTRY, INC., dba WESTLAND
INDUSTRIES, PRACTICAL FINANCE CO., INC.,

                Plaintiffs/Counterclaim Defendants.

----------------------------------------------------------------- X

## DEFENDANT JOSHUA SAFRIN'S MEMORANDUM OF LAW
## IN OPPOSITION TO THIRD PARTY DEFENDANT FIRST REPUBLIC CORP.'S
## MOTION TO DISMISS THE AMENDED THIRD PARTY COMPLAINT

Of Counsel:
    Jonathan D. Lupkin
    Jean Marie Hackett

**FLEMMING ZULACK WILLIAMSON ZAUDERER LLP**
**Attorneys for Defendant Joshua Safrin**
**One Liberty Plaza, 35th Floor**
**New York, New York 10006**
**(212) 412-9500**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................... 3

A. The Underlying Complaint in the Main Action ............................................. 3

B. The Parties ............................................................................................ 4

C. The Citigroup Loan Documents ............................................................... 6

D. Plaintiffs' Investment ............................................................................. 7

    1. The June 29, 2007 "Letter of Intent" ..................................................... 7

    2. Plaintiffs' Subsequent Negotiations With Friedman .................................. 8

    3. The July 11, 2007 Counter Offer ......................................................... 10

E. Frenkel and Land Escrow Take And Use The $13 Million
   In Escrow In Contravention Of Amusement's Instructions ............................. 11

F. Safrin Had No Involvement In The Transactions
   Alleged In The Complaint, But First Republic Corp., With Others,
   Used His Name And Reputation -- Without His Knowledge
   Or Consent -- To Make It Happen ............................................................. 11

PROCEDURAL HISTORY ................................................................................. 11

ARGUMENT .................................................................................................... 13

POINT I:

AS ITS OWN BRIEF DEMONSTRATES, THERE ARE AMPLE
ALLEGATIONS IN A SAFRIN'S THIRD PARTY COMPLAINT
TO SUPPORT HIS CLAIMS AGAINST FIRST REPUBLIC CORP. ........................... 13

    A. *Twombly* and Its Progeny Require Only That The Pleader
      Allege Facts To Render A Claim Plausible ............................................. 13

B. First Republic Corp.'s Memorandum Demonstrates The
Sufficiency Of Safrin's Allegations Against It ........................................................ 14

C. First Republic Corp.'s Unsubstantiated Argument For
Dismissal -- Its Own Refusal To Accept Safrin's
Allegations -- Has No Merit ...................................................................................... 15

   1. Safrin's Allegations Are Based On Information And Belief,
   Not "Solely" Upon The Allegations In The Underlying
   Complaint; In Any Event, The Complaint And Its Exhibits
   Support Safrin's Claims ...................................................................................... 16

   2. First Republic Corp.'s Failure To Cite Any Legal
   Authorities Or Otherwise Comply With Local Rule 7.1
   Warrants Denial Of The Motion Insofar As It Asserts A
   "Heightened Pleading" Argument ...................................................................... 16

POINT II:

INCORPORATION OF LEGAL ARGUMENTS MADE IN
OPPOSITION TO THE STERN DEFENDANTS' MOTION TO
DISMISS THE CROSSCLAIMS ................................................................................ 19

POINT III:

BECAUSE SAFRIN ADEQUATELY ALLEGES A BASIS FOR
BRINGING FIRST REPUBLIC CORP. INTO THIS CASE,
SAFRIN'S CLAIM FOR DECLARATORY RELIEF -- AS WITH
ALL HIS OTHER CLAIMS -- MUST STAND ........................................................ 19

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                                    Pages(s)

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
   493 F.3d 87 (2d Cir. 2007) ....................................................................................... 13

Bell Atl. Corp. v. Twombly,
   --- U.S. ---, 127 S. Ct. 1955 (2007) ................................................................... 13, 18

Elektra Entm't Group, Inc. v. Barker,
   551 F. Supp. 2d 234 (S.D.N.Y. 2008) .................................................................... 13

Ello v. Singh,
   No. 05-CV-9625 (KMK), 2006 WL 2270871 (S.D.N.Y. Aug. 7, 2006) ................................ 17

Iqbal v. Hasty,
   490 F.3d 143 (2d Cir. 2007) , cert. granted, Ashcroft v. Iqbal,
--- S. Ct. ---, 2008 WL336310 (U.S. June 16, 2008) (No. 07-1015) .......................................... 13

Paulino v. Carrion,
   No. 07 Civ. 5773 (LAK) (GWG), 2008 WL 2627767 (S.D.N.Y. July 1, 2008).................... 17

Pelman ex rel. Pelman v. McDonald's Corp.,
   396 F.3d 508 (2d Cir. 2005) ..................................................................................... 18

Toner v. United Broth. of Carpenters,
   No. 96 Civ. 0023, 1999 WL 178784 (S.D.N.Y. Mar. 31, 1999)............................................. 17

**Statutes**

Fed. R. Civ. P. 9(b)...................................................................................................18

Local Civil Rule 7.1.......................................................................................... 16, 17

N. Y. Civil Rights Law §§ 50, 51 ............................................................................. 17, 18

## PRELIMINARY STATEMENT

Defendant/Third Party-Plaintiff Joshua Safrin ("Safrin") respectfully submits this Memorandum of Law in opposition to the motion of Third Party Defendant First Republic Group Corp. ("First Republic Corp.") (Docket Entry #114) to dismiss the Amended Third Party Complaint. (A copy of the Amended Third Party Complaint ("TPC") is attached as Exhibit 1 to the Declaration of Jonathan D. Lupkin, executed August 1, 2008 ("Lupkin Decl.").)

First Republic Corp., a company that is solely owned by defendant Mark Stern ("Stern") (who is also named by Safrin as a Crossclaim Defendant), functioned as a vehicle through which Stern participated in a concerted scheme to misappropriate Safrin's identity (i.e., his name, stellar reputation in the real estate industry, and financial wherewithal) in order to secure a $13 million investment from the plaintiffs (for which plaintiffs claim to have received nothing in return) and $130 million in loans, purportedly so that Stern could, in turn, purchase a portfolio of real estate located throughout the Southeastern United States for his own financial gain.

First Republic Corp. played a material role in the transactions at issue in plaintiffs' Complaint. (A copy of Complaint ("Complaint" or "Compl.") is attached as Exhibit A to Safrin's TPC, which is itself attached to the Lupkin Decl. as Exhibit 1.) Indeed, the salient events began back in April of 2007, when First Republic Corp. contracted to purchase a real estate portfolio. Not only was First Republic Corp. the initial party to the real estate purchase contract (signed by Stern), but it was also a party to the Letter of Intent (Compl., Ex. 2) executed with plaintiffs and was the party with whom the plaintiffs contemplated a partnership with in the draft partnership agreement attached to their Complaint (Compl., Ex. 3).

Indeed, plaintiffs allege that it was not until **July 9, 2007** -- almost two weeks after execution of the June 29, 2007 Letter of Intent -- that they even learned that First Republic Group Realty LLC ("First Republic LLC") was the putative purchasing entity for the Property Portfolio. Thus, until that time, plaintiffs considered their investment to be between themselves, on the one hand, and Stern and First Republic Corp., on the other, and accordingly drafted a partnership agreement reflecting this understanding. Because plaintiffs apparently believed they

were negotiating with First Republic Corp. until July 9, all of their claims concerning fraudulent and negligent misrepresentations to induce their $13 million investment (as agreed via the Letter of Intent executed over one week earlier on June 29, 2007) had nothing to do with First Republic LLC (the only entity alleged to involve Safrin in its ownership structure), and everything to do with First Republic Corp.

Though plaintiffs have chosen to feature Safrin in this suit as an individually-named defendant, they noticeably neglect to ascribe to Safrin any active role in the tortuous tale they have spun (aside from what they claim happened through Stephen Friedman ("Friedman") -- Stern's lawyer -- which Safrin denies). It bears mention that, in contrast to First Republic Corp., the Complaint is devoid of allegations that Safrin played any active role in connection with the Property Portfolio transactions. Plaintiffs fail to allege -- because they cannot -- a single meeting with Safrin, or even that plaintiffs ever negotiated with Safrin directly. Safrin's name does not appear on the so-called "Letter of Intent" that began this deal, nor is he found in the purported, unsigned partnership agreement attached to the Complaint, and to which plaintiffs ascribe some sort of significance. Certainly, the same cannot be said for First Republic Corp. -- Stern's solely owned instrumentality.

Given its critical role in connection with the transactions therefore alleged in the Complaint, First Republic Corp. surely belongs in this case. Its motion to dismiss Safrin's Amended Third Party Complaint must therefore fail for one or more of the following reasons:

- First, First Republic Corp. argues -- unpersuasively -- that "no claim is asserted against [it]" (See Memorandum of Law of Law on Behalf of Third Party Defendant First Republic Group Corp. to Dismiss the Amended Third Party Complaint ("FR Mem.") at 3 (Docket Entry No. 115)), asserting a three-fold argument that lacks any legal support whatsoever (i.e., case law, statutes, or rules), is premised on inaccuracies made apparent by the record, and ignores the reality that the allegations in Safrin's third party complaint must, at this stage in the litigation, be accepted as true, with all inferences to be drawn in his favor;

- Second, because First Republic Corp. raises virtually the same arguments as those set forth in the motions filed by Defendants/Crossclaim Defendants Stern and First Republic LLC, and by Defendants/Crossclaim Defendants Ephraim Frenkel

("Frenkel") and Land Title Associates Escrow ("Land Escrow") (collectively, the "Stern Defendants") to dismiss the crossclaims asserted against them in Safrin's Answer, First Republic Corp.'s motion should be dismissed for the same reasons as set forth in Points I-IV of Safrin's memorandum of law in opposition to those motions (Docket Entry No. 157); and

- Finally, because Safrin more than adequately alleges a basis for bringing First Republic Corp. into this case, his declaratory judgment claim against this entity must stand.

For the foregoing reasons and the reasons set forth below, First Republic Corp.'s motion should be denied in its entirety.

## STATEMENT OF FACTS

### A.    The Underlying Complaint in the Main Action

On December 27, 2007, Plaintiffs commenced an action in this Court against Safrin, Stern, Frenkel, First Republic LLC and Land Escrow (the "Main Action") (TPC ¶ 1.)

The Complaint begins with plaintiff Amusement Industry, Inc.'s acceptance of an investment proposal presented by non-parties Steven Alevy and Friedman, on behalf of First Republic Corp. -- a company alleged to be solely owned and controlled by Stern. (TPC ¶¶ 25, 29; Compl. ¶ 31). The proposal contemplated First Republic Corp.'s purchase from non-party Colonial Realty Limited Partnership ("Colonial Realty") of a certain real estate portfolio consisting of shopping centers located in southeastern United States (the "Property Portfolio"). (TPC ¶ 20; Compl. ¶¶ 24, 30-31.) First Republic Corp. contracted to buy the property in April, 2007. (TPC ¶ 20; Compl. ¶ 24.) At some point, First Republic Corp. assigned its interest in the Property Portfolio to First Republic LLC. (TPC ¶ 20; Compl. ¶ 46.)

Although the Complaint names Safrin, a well-respected name in the real estate industry, as a defendant, Safrin was unaware of any of the transactions at issue in the Main Action until shortly before being served with process. (TPC ¶ 2.) Plaintiffs, who allege gross misconduct against Safrin and his co-defendants in connection with the Property Portfolio transaction, premise their entire case against Safrin on statements made and actions taken by Friedman, Stern and First Republic LLC's attorney, who purportedly acted for and spoke as Safrin's attorney and

3

agent.[1]  (TPC ¶¶ 2, 27; Compl. ¶ 32.)  Beginning with Friedman's presentation of the investment opportunity to plaintiffs in June, 2007, the Complaint alleges that virtually all of the negotiations at issue occurred through Friedman.  (TPC ¶¶ 2, 27; Compl. ¶ 32.)

## B.    The Parties

Defendant/Third Party-Crossclaim-Counterclaim-Plaintiff Joshua Safrin is an individual and citizen of the State of New York, residing at 50 Riverside Drive, Apt. 2A, New York, New York, 10024.  (TPC ¶ 4; Compl. ¶ 4.)

Third Party Defendant First Republic Corp. is a corporation organized under the law of New York, with its principal place of business at 241 Fifth Avenue, Suite 302, New York, New York 10016.  (TPC ¶ 9; Compl. ¶ 6.)  Safrin alleges that First Republic Corp. is solely owned and controlled by defendant Stern.  (TPC ¶ 9; Compl. ¶ 6.)

Third Party Defendant Friedman is an individual and citizen of the State of New York.  (TPC ¶ 5.)  Friedman is an attorney with and shareholder in the law firm Buchanan Ingersoll & Rooney, P.C. ("BIR").  (TPC ¶ 5; Compl. ¶ 8.)  At all times relevant to the Complaint, Friedman was acting in his capacity as an attorney and shareholder of BIR.  (TPC ¶ 5.)

Third Party Defendant BIR is a professional corporation organized under the laws of Pennsylvania, which maintains offices for the practice of law at 620 Eighth Avenue, 23rd Floor, New York, NY 10018-1669.  (TPC ¶ 6.)  Friedman practices out of BIR's New York office.  (TPC ¶ 6.)

Third Party Defendant Steven Alevy is an individual and citizen of the State of New York, residing at 275 West 96th St, New York, New York, 10025.  (TPC ¶ 7.)  Alevy is Managing Director of Bankers Capital, and is the son of Allen Alevy, the sole shareholder of plaintiff Amusement Industry, Inc.  (TPC ¶ 7; Compl. ¶ 30.)

---

[1]  Plaintiffs, who cannot plausibly allege that Safrin played any role in the transaction at issue, nevertheless attempt to assert claims against him for: (i) declaratory relief (Count 1); (ii) quiet title (Count 3); judicial foreclosure of real property (Count 5); (iii) breach of contract (Counts 6, 8, 9, 11, 12 and 16); (iv) fraud (Counts 19, 20, 23); (v) fraud in the inducement (Counts 15 and 17); (vi) fraudulent concealment (Counts 17, 21); (viii) negligent misrepresentation (Counts 18, 20, and 22); (ix) Conversion (Count 24); (x) conspiracy to commit conversion and fraud (Count 25); (xi) unjust enrichment (Count 26); and (xii) breach of fiduciary duty (Count 27).

Third-Party Defendant Bankers Capital Realty Advisors LLC ("Bankers Capital") was and is a limited liability company with its principal place of business at 575 Madison Avenue, 10th floor, New York, NY 10022. (TPC ¶ 8.) Safrin alleges that at all times relevant to the Complaint, Alevy was acting in his capacity as an employee and Managing Director of Bankers Capital. (TPC ¶ 8; Compl. ¶ 30.)

Plaintiff/Counterclaim Defendant Amusement Industry, Inc., dba Westland Industries ("Amusement"), is a corporation organized under the laws of the State of California with its principal place of business at 6665 Long Beach Blvd., Long Beach, California, 90805. (TPC ¶ 10; Compl. ¶ 1.)

Plaintiff/Counterclaim Defendant Practical Finance Co., Inc. ("Practical Finance"), is a corporation organized under the laws of the State of California with its principal place of business at 6665 Long Beach Blvd., Long Beach, California, 90805. (TPC ¶ 11; Compl. ¶ 2.)

Defendant/Crossclaim Defendant Stern is an individual and citizen of the State of New York residing at 39 Remsen Avenue, Monsey, New York 10952. (TPC ¶ 12; Compl. ¶ 3.)

Defendant/Crossclaim Defendant Frenkel is an individual and citizen of the State of New York. (TPC ¶ 13; Compl. ¶ 13.)

Defendant/Crossclaim Defendant Land Escrow was and is a limited liability company organized under the laws of the State of New York with its principal place of business at 1979 Marcus Avenue, Suite 210, Lake Success, New York 11042, operating under the name "Land Title Associates." (TPC ¶ 15; Compl. ¶ 14.)

Defendant/Crossclaim Defendant First Republic LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York County in the State of New York. (TPC ¶ 14; Compl. ¶ 5.) The Complaint further alleges the following ownership and management structure of First Republic LLC (Compl. ¶¶ 5, 9-12):



C.    **The Citigroup Loan Documents**

Plaintiffs allege that Stern and Safrin obtained financing for the purchase of the Property

Portfolio by executing two loan agreements with Citigroup Global Markets Realty Corp.

("Citigroup") on behalf of various purchasing entities. (TPC ¶ 21; Compl. ¶¶ 25-26.)  First

Republic LLC executed a loan agreement with Citigroup for $111,150,000.00 and FRGR

Managing Member LLC, a constituent member of the First Republic LLC ownership structure,

executed a Mezzanine Loan Agreement with Citigroup for $15,000,000.00. (TPC ¶ 21; Compl.

¶¶ 25-26.)  Both loan agreements are dated as of July 11, 2007 and define "Guarantor" to include

Safrin. (TPC ¶ 21; Compl. ¶¶ 25-26.)

The purported signatures of Safrin on these documents are forgeries, as confirmed by a

highly reputable handwriting expert with 40 years of experience in the field. (TPC ¶¶ 22, 62.)

(Lupkin Aff., Exhibit 1 (Amended Third Party Complaint) at Exhibit B.)  Stern, whose

signatures also appear on these documents, does not deny that the signatures are his.

**D.**     **Plaintiffs' Investment**

Plaintiffs allege that because the Citigroup loan was insufficient to enable First Republic

LLC to purchase the Property Portfolio, Safrin and Stern approached mortgage broker Alevy and

Friedman for the purpose of obtaining the additional necessary financing. (TPC ¶ 23; Compl. ¶

28-30).  Safrin never made any such approach. (TPC ¶ 24.)

According to the Complaint, on June 29, 2007, Alevy and Friedman presented an

investment opportunity to Amusement, on behalf of Safrin and Stern, to raise funds sufficient to

complete the Property Portfolio purchase. (TPC ¶ 25; Compl. ¶ 31).  Safrin never authorized

Alevy or Friedman to present any such opportunity to Amusement.  (TPC ¶ 26.)

Plaintiffs allege that Friedman "represented" Stern, Safrin and later First Republic LLC

in their purported "communications and dealings with plaintiffs." (TPC ¶ 27; Compl. ¶ 32.)

Plaintiffs also allege that Friedman owed a separate fiduciary duty to Amusement because he had

previously represented Amusement, as well as its sole shareholder, Allen Alevy, and his son,

Steven Alevy, in various legal matters. (TPC ¶ 27; Compl. ¶¶ 32-33.)  Plaintiffs contend that "as

a result" of this previous representation by Friedman, "Friedman led Plaintiffs to believe that he

had full authority to speak on behalf of Stern, Safrin and First Republic LLC." (TPC ¶ 27;

Compl. ¶ 32.)  Safrin never retained or otherwise authorized Friedman to speak or act on his

behalf in connection with the transactions described in the Complaint.  (TPC ¶ 28.)

**1.**     **The June 29, 2007 "Letter of Intent"**

According to the Complaint, the investment opportunity presented by Friedman and

Alevy in June, 2007 resulted in a "written Letter of Intent" drafted by Alevy, signed by Stern on

behalf of First Republic Corp. (Stern's solely-owned company) and dated June 29, 2007. (TPC ¶

29; Compl. ¶ 35).  Although the document is referred to as a "Letter of Intent" in the Complaint,

the document characterizes itself as a Letter of Understanding (hereafter "LOI"). (TPC ¶ 29;

Compl., Ex. 2.)  The LOI identifies as its parties First Republic Corp. (Stern's company) and

Westland Industries, the name under which Amusement does business. (TPC ¶ 29; Compl., Ex.

2.)  Safrin was not a party to the LOI.  (TPC ¶ 30; Compl., Ex. 2).

Plaintiffs allege that on July 2, 2007, Alevy e-mailed the so-called LOI to Friedman and Stern. (TPC ¶ 31; Compl., Ex. 2.)

According to the Complaint, on June 29, 2007, the same day Stern signed the LOI on behalf of First Republic Corp., Amusement wired $13,000,000.00 into the Land Escrow account. (TPC ¶ 32; Compl. ¶ 36.)  Plaintiffs assert that as a result of this wire transfer, a contract formed among Amusement and the borrowers and the soliciting parties, Stern and Safrin, said contract having the terms of the LOI.  (TPC ¶ 32; Compl. ¶ 36.)  Safrin never entered into any such contract. (TPC ¶ 30; Compl., Ex. 2)

### 2.     Plaintiffs' Subsequent Negotiations With Friedman

Plaintiffs allege that during the seven-day period defined by the LOI, Amusement drafted and forwarded three partnership agreements to Friedman for Stern to sign in order "to complete a transaction." (TPC ¶ 36; Compl. ¶ 42.)  The draft agreement attached to the Complaint does not call for Safrin's signature -- it calls for Stern's -- and the only parties to the draft partnership agreement are plaintiffs and "First Republic Group Corp." (Stern's solely-owned company). (TPC ¶ 37; Compl., Ex. 3.)

According to the Complaint, after the seven day period passed without agreements being "finalized," Amusement continued to negotiate through Friedman (TPC ¶ 38; Compl. ¶¶ 44-61), and on July 6, 2007, plaintiffs, through Friedman:  (a) suggested a new Property Portfolio ownership structure; (b) inquired as to whether its $13,000,000.00 contribution to the purchase should be a loan to Stern or to the entity that would be the owner of the Property Portfolio; (c) advised that the seven-day period had expired; and (d) noted that there should be about $4,000,000.00 in reserve after the closing.  (TPC ¶ 39; Compl. ¶ 44.)  Plaintiffs also instructed Friedman not to authorize the release of the $13,000,000.00 held in escrow.  (TPC ¶ 39; Compl. ¶ 44.)

Safrin was unaware of these negotiations and communications. (TPC ¶ 40.)

Plaintiffs allege that on July 6, 2007, counsel for Amusement also wrote to Friedman, stating that if the transaction had materially changed from the terms embodied by the draft

partnership agreements and the LOI (agreements to which only Amusement and First Republic Corp. were parties), then the wired $13 million should be returned. (TPC ¶ 41; Compl. ¶ 45.) Safrin was unaware of this communication. (TPC ¶ 42.)

On July 9, 2007, according to the Complaint, Amusement asked Friedman, in writing, for a copy of the Citigroup loan documents that provided the majority of the financing for the Property Portfolio purchase. (TPC ¶ 43; Compl. ¶ 46.) Friedman did not provide the documents, but responded that same day, in writing, that First Republic LLC was now the purchasing entity. (TPC ¶ 43; Compl. ¶ 46.) Safrin was unaware of this representation. (TPC ¶ 44.)

During the flurry of back-and-forth communications alleged to have occurred on July 9, 2007 through Friedman (TPC ¶ 45; Compl. ¶¶ 46-49), Friedman promised, in writing, that formal documentation of Amusement's interest in the Property Portfolio was recognized and would be completed as necessary after closing once First Republic LLC owned the Property Portfolio. (TPC ¶ 45; Compl. ¶ 48.) Safrin was unaware that any of these representations were being made on his behalf. (TPC ¶ 46.)

According to the Complaint, Amusement then instructed Friedman, for a second time, not to authorize release of the $13 million in escrow. (TPC ¶ 47; Compl. ¶ 51.) Amusement also instructed Land Escrow and Frenkel not to release Amusement's funds without written authorization of Sragow & Sragow, one of two firms acting as counsel of record to plaintiffs in the Main Action. (TPC ¶ 47; Compl. ¶ 51.) Safrin was unaware that Amusement's money, or indeed anyone's money, was being held in escrow in connection with the Property Portfolio's purchase or financing. (TPC ¶ 48.)

Plaintiffs allege that on July 11, 2007, Friedman provided documents to Amusement, including a Promissory Note for $13,000,000.00 signed by Stern in his individual capacity, an Escrow Agreement, and Agreements, purportedly signed by Stern and Safrin (Compl., Exs. 5 and 6), assigning their respective LLC membership interests in First Republic LLC and the underlying LLC ownership structure, and eleven grant deeds for the property in the Property Portfolio, all of which were signed by Stern on behalf of First Republic LLC and notarized on

9

July 12, 2007 (Compl., Ex. 1) (these documents are collectively referred to herein as the "Escrow Documents"). (TPC ¶ 49; Compl. ¶ 52.)

Safrin's signature on the "Agreement" that purportedly assigns his LLC interests ("Assignment Agreement") is a forgery, as confirmed by a highly reputable handwriting expert with 40 years of experience in the field. (TPC at Exhibit B; TPC ¶ 50.) Moreover, Safrin's forged signature, as it appears in the document, is not witnessed, as required by the form itself. (TPC ¶ 50.)

### 3.    The July 11, 2007 Counter Offer

According to the Complaint, on July 11, 2007, Amusement communicated to Safrin, Stern, and First Republic LLC, in writing "through Friedman" a "counter offer" because it disagreed with the characterization of the transaction among the parties reflected in the Escrow Documents, including that the money from Amusement was a loan. (TPC ¶ 51; Compl. ¶ 53.) Amusement declared that there would be no loan. (TPC ¶ 51; Compl. ¶ 53.) Rather, the $13,000,000.00 would be treated as a direct investment with a preferred right to a return of this investment within 45 days. (TPC ¶ 51; Compl. ¶ 53.) In addition, the cost of the repayment right would be increased to $15,000,000.00 because of some $4,000,000.00 remaining in reserve after closing. (TPC ¶ 51; Compl. ¶ 53.) Amusement also demanded conveyance to Amusement of 100% of the Property Portfolio by deeding all eleven properties to Amusement, together with the conveyance of the LLC membership interests, and noted that Stern and Safrin would have a limited option to repurchase the grant deeds and a 50% ownership interest by providing "the partnership agreement" (presumably an executed copy of the document attached to the Compl. as Ex. 3) within a period of 45 days. (TPC ¶ 51; Compl. ¶ 53.) Safrin was unaware of these communications. (TPC ¶ 51.)

According to the Complaint, Friedman responded, telling Amusement that it "should not worry as Amusement now owned the whole thing," and the following day, provided a $15,000,000.00 promissory note signed by Stern only, in his individual capacity. (TPC ¶ 53;

10

Compl. ¶ 56, and Ex. 7.) Safrin was unaware of Friedman's representation and never authorized Friedman to make it. (TPC ¶ 54.)

**E.    Frenkel And Land Escrow Take And Use The $13 Million In Escrow In Contravention of Amusement's Instructions**

Plaintiffs allege that on July 12, 2007, and in direct violation of plaintiffs' prior instructions, Frenkel and Land Escrow "took and used" the $13,000,000.00 in escrow based on unauthorized verbal and written instructions from Alevy. (TPC ¶ 55; Compl. ¶¶ 58, 63.)

**F.    Safrin Had No Involvement In The Transactions Alleged In The Complaint, But First Republic Corp., With Others, Used His Name And Reputation -- Without His Knowledge Or Consent -- To Make It Happen**

Safrin was unaware that Friedman represented to plaintiffs that he (Friedman) was Safrin's agent or attorney, did not authorize Friedman to make any such representations, and had no knowledge of any of the representations or actions described in the Complaint that were purportedly undertaken by Friedman -- Stern's and First Republic LLC's attorney -- on his behalf. (TPC ¶ 3, 27; Compl. ¶ 32.)

As set forth more fully below, First Republic Corp. and Third Party Defendants Friedman, Alevy, BIR and Bankers Capital, along with the Stern Defendants, were integral parts of a scheme to misappropriate Safrin's identity (i.e., his name, stellar reputation in the real estate industry, and financial wherewithal), in order to secure financing for the purchase of the Property Portfolio. (Id.)

## PROCEDURAL HISTORY

On February 27, 2008, all of the defendants in the main action filed motions to dismiss (Docket Entry Nos. 27, 35) the Complaint in its entirety. These motions remain sub judice; only Safrin has filed an Answer. (Docket Entry No. 148.) On February 28, 2008, the Court held a pre-trial conference, which resulted in a scheduling order ("Scheduling Order") entered on March 5, 2008. (Docket Entry No. 41.) The Scheduling Order set May 1, 2008 as the deadline for joinder of additional parties.

On May 1, 2008, Safrin impleaded third party defendants Friedman, Alevy, BIR, Bankers Capital, and First Republic Corp. (hereinafter collectively referred to as the "Third Party Defendants"). (Docket Entry No. 65.)  In his pleading, and together with traditional contribution and indemnification claims, Safrin has also asserted several independent tort claims and a claim for declaratory judgment against the Third Party Defendants.  In that same pleading, Safrin also asserted crossclaims against co-defendants Stern, First Republic LLC, Frenkel, and Land Title, and counterclaims against the plaintiffs.  The crossclaims asserted against the Stern Defendants were the same as those asserted against the Third Party Defendants.

On May 29, 2008, and with Court approval, Safrin filed an Amended Third Party Complaint containing crossclaims and counterclaims, which asserts the same claims for relief against the Third Party Defendants and the Stern Defendants as were interposed against these parties in the original third party complaint.  (Docket Entry No. 93.)

On June 9, 2008, First Republic Corp. filed a motion to dismiss the claims asserted against it in the Amended Third Party Complaint under Rules 14(a) and 12(b)(6).  (Docket Entry No. 114.)

On July 3, 2008, at a conference before Judge Gorenstein, the Court directed Safrin to re-file his crossclaims with an answer on or before July 18, 2008.  The Amended Third Party Complaint would remain operative as against the impleaded parties, Friedman, BIR, Alevy, Bankers Capital and First Republic Corp.

## ARGUMENT

### I.  AS ITS OWN BRIEF DEMONSTRATES, THERE ARE AMPLE ALLEGATIONS IN SAFRIN'S THIRD PARTY COMPLAINT TO SUPPORT HIS CLAIMS AGAINST FIRST REPUBLIC CORP.

The most striking aspect of First Republic Corp.'s brief is that it defeats itself. Specifically, notwithstanding its protestations to the contrary, First Republic Corp.'s own brief recites a litany of facts that are alleged in Safrin's Third Party Complaint and that are specific to First Republic Corp.  It is this set of facts that demonstrates the sufficiency of Safrin's factual allegations.  Accordingly, First Republic Corp.'s motion to dismiss on the ground Safrin has failed to state any claim against it must be dismissed.

### A.    *Twombly* and Its Progeny Require Only That The Pleader Allege Facts To Render A Claim Plausible

In Bell Atl. Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007), the Supreme Court endorsed "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (italics in original), cert. granted, Ashcroft v. Iqbal, ---- S. Ct. ----, 2008 WL 336310, at *1 (U.S. June 16, 2008) (No. 07-1015); see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).  Thus, in order to survive a motion to dismiss, a plaintiff must state "'only enough facts to state a claim to relief that is plausible on its face.'"  Twombly, 127 S.Ct. at 1974; see Elektra Entm't Group, Inc. v. Barker, 551 F. Supp. 2d 234, 237 (S.D.N.Y. 2008) ("'a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations'") (quoting Twombly, 127 S. Ct. at 1964).  Ordinarily, "[a] motion to dismiss requires the Court to accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs." Elektra, 551 F. Supp. 2d at 238 (internal quotation marks and citations omitted).

13

**B.    First Republic Corp.'s Memorandum Demonstrates
        The Sufficiency Of Safrin's Allegations Against It**

First Republic Corp. cites to more than a page -- seven full paragraphs' worth -- of the

allegations pled specifically against it in Safrin's Amended Pleading.  (See FR Mem. at 4-5

(quoting ¶¶ 9, 20, 29, 32, 36, 41 and 43 of the Amended Pleading).)  These allegations assert

that:

- First Republic Corp. (unlike First Republic LLC) is solely owned and controlled
  by Stern (TPC ¶ 9; see Compl. ¶ 6);

- First Republic Corp. was the original entity that contracted to purchase the real
  estate portfolio, but assigned its interest in the portfolio, at some point, to
  defendant First Republic LLC.  Significantly, plaintiffs did not learn of this
  purported assignment until July 9, 2007 (TPC ¶¶ 20, 43; see Compl. ¶¶ 24, 46);

- First Republic Corp. is the party to the "Letter of Intent" executed June 29, 2007
  and attached to the Complaint as Exhibit 2.[2] (TPC ¶¶ 29, 32; see Compl. ¶ 35,
  Ex. 2)

- First Republic Corp. is the party to the draft partnership agreement prepared by
  Amusement within the seven days after the LOI and attached to the Complaint as
  Exhibit 3. (TPC ¶¶ 36, 41; see Compl. ¶¶ 42-43, and Exhibit 3.)

To summarize, Safrin alleges (and a review of the Complaint and the documents annexed

to it makes clear), that First Republic Corp. was the original contracting buyer of the Property

Portfolio from Colonial Realty, the party to the alleged Letter of Intent executed June, 29, 2007

(Compl., Ex. 2) and to the unsigned partnership agreement that, according to the Complaint,

features prominently later in this transactional saga. (Compl., Ex. 3.)  First Republic Corp. may

---

[2]    The LOI is signed by Stern on behalf of "First Republic Group" and refers to an agreement between "First
Republic Group" and "Westland Industries."- not "First Republic Group Realty." (Compl., Ex. 2.)  Moreover, the
draft partnership agreement sent by plaintiffs during the seven day period following execution of the LOI (Compl.,
Ex. 3) expressly contemplates a partnership between plaintiffs and "First Republic Group Corp." Accordingly, the
reasonable inference to be drawn from Safrin's pleading (in connection with a reading of plaintiffs' Complaint and
the documents annexed to it) is that the original contracting and negotiating parties to this deal were plaintiffs and
First Republic Corp. Indeed, the LOI was signed June 29, 2007, and the partnership agreement was sent within the
week thereafter. (TPC ¶ 43; Compl. ¶ 46.)

therefore be held liable with respect to the negotiations that occurred before plaintiffs were even aware that that First Republic Corp. had purportedly assigned its rights to First Republic LLC. Moreover, plaintiffs' alleged breach of contract claims concern the breach of terms purportedly agreed upon in the LOI, as modified by a subsequent "agreement" that supposedly formed as a result of Amusement's July 11, 2007 counteroffer. Though plaintiffs allege that they entered into these contracts with "Stern, Safrin, and First Republic LLC" (see Compl. ¶¶ 102, 116, 136, 144), the only parties to the LOI attached to the Complaint are Amusement and First Republic Corp. (Compl., Ex. 2). Similarly, the purported breach of contract set forth in Count 16 of the Complaint is based on an alleged agreement concerning the terms relating to the financing of the Property Portfolio purchase by **First Republic Corp.**

Accordingly, Safrin has alleged a substantial factual predicate to his claims for indemnity or contribution from First Republic Corp. Further, as a company solely owned and controlled by defendant Mark Stern, Safrin's allegations that First Republic Corp., in concert with the other defendants, schemed to misappropriate his name in order to obtain the necessary financing from Citigroup as well as to entice Plaintiffs' $13 million "investment," are more than sufficient to withstand a motion to dismiss on the pleadings.

## C. First Republic Corp.'s Unsubstantiated Argument For Dismissal -- Its Own Refusal To Accept Safrin's Allegations -- Has No Merit

Because there are ample allegations against First Republic Corp., it resorts to asserting a tripartite argument that lacks any support whatsoever (i.e., case law, statutes, or rules), is premised on inaccuracies made apparent by the record, and fails to recognize that the allegations in Safrin's third party complaint must, at this stage in the litigation, be accepted as true, with all inferences drawn in his favor.

1.    **Safrin's Allegations Are Based On Information And Belief,
Not "Solely" Upon The Allegations In the Underlying Complaint;
<u>In Any Event, The Complaint And Its Exhibits Support Safrin's Claims</u>**

First Republic Corp. contends, erroneously, that because the Complaint (i) is the sole

foundation for Safrin's pleading, (ii) fails to name First Republic Corp. as a Defendant, and (iii)

contains "only two innocuous references" to it, there cannot possibly be any claim for relief by

Safrin against First Republic Corp. (FR Mem. at 3.)  The only accurate assertion in this

argument is that First Republic Corp. was not named a defendant by the plaintiffs.  In fact, it is

precisely because of this that Safrin was compelled to add First Republic Corp. as a third party

defendant.

Safrin did not plead his allegations "solely" upon plaintiffs' Complaint. (FR Mem. at 1

(quoting TPC ¶ 19).)  Rather, Safrin's allegations "are made on information and belief." (TPC ¶

19), and the bases for that belief are "largely" -- though not exclusively -- the allegations in the

Complaint itself.  (<u>Id.</u>)  First Republic Corp.'s objection to the notion that Safrin's pleading

"expands, embellishes and rewrites the Complaint" -- a four page argument devoid of any

citation to case law, statutes or rules -- fails to recognize that it is Safrin's pleading at issue here,

not the plaintiffs'.  (<u>See</u> FR Mem. at 3-6.)  Safrin made his own, stand alone allegations, which

draw inferences from plaintiffs' Complaint (and the documents annexed to it) as well from other

information.  These allegations, taken as a whole, clearly establish the legitimacy of adding First

Republic Corp. as a third party defendant.

2.    **First Republic Corp.'s Failure To Cite Any Legal Authorities
Or Otherwise Comply With Local Rule 7.1 Warrants Denial Of
<u>The Motion Insofar As It Asserts A "Heightened Pleading" Argument</u>**

In its Statement of Facts, and then scattered throughout the remainder of its brief, First

Republic Corp. impermissibly asserts -- without any legal support -- that Safrin "makes

indiscriminate and inappropriate references to 'Defendants' in [his pleading]" (FR Mem. at 2),

"improperly and repeatedly resorting to wholesale and nonspecific references to 'Defendants' in violation of the Federal Rules of Civil Procedure" (Id. at 2-3).[3]

This sort of unsupported argument runs afoul of Local Civil Rule 7.1 of the Rules of the United States District Courts for the Southern and Eastern Districts of New York, which provides, in pertinent part:

> Except as otherwise permitted by the court, all motions and all oppositions thereto shall be supported by a memorandum of law, **setting forth the points and authorities relied upon in support of or in opposition to the motion, and divided, under appropriate headings, into as many parts as there are points to be determined.** Willful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default.

Local Civil Rule 7.1 (emphasis added).

The fact that First Republic Corp. fails to cite any authority in support of its contention (i.e., that Safrin's collective references to "Defendants" are inappropriate or improper) and even fails to assert this contention as an "argument" under an appropriate point heading in its brief renders it procedurally defective. The consequence of this failure is that it "unfairly and unreasonabl[y] shift[s] the burden of articulating [First Republic Corp.'s] arguments to the party opposing the motion or to the court." Ello v. Singh, No. 05-CV-9625 (KMK), 2006 WL 2270871, at *2 n.5 (S.D.N.Y. Aug. 7, 2006) (quoting Toner v. United Broth. of Carpenters., No. 96 Civ. 0023, 1999 WL 178784, at *1 (S.D.N.Y. Mar. 31, 1999); see Paulino v. Carrion, No. 07 Civ. 5773 (LAK) (GWG), 2008 WL 2627767, at *4 n.1 (S.D.N.Y. July 1, 2008) (declining to address any arguments regarding a motion to dismiss for failure to state a claim where such arguments were contained within the same point heading in which the defendant argued lack of subject matter jurisdiction); see also Toner, 1999 WL 178784, at *1 (noting that "this Court has the authority to deny a motion that is not filed in accordance with Local Rule 7.1" and denying defendant's motion where, inter alia, the motion and accompanying submissions "contain only

---

[3] See also FR Mem. at 7 ("Safrin indiscriminately claims the [defendants] violated his rights under New York Civil Rights Law §§ 50 and 51"); Id. at 10 ("wholesale and misplaced references to "Defendants"").

vague and conclusory legal statements, and fail to notify the opposing party of the legal bases for the motion."). Accordingly, First Republic Corp.'s motion, to the extent premised on this improperly presented "argument," should be denied.

But, even if Safrin takes the proverbial "bait" and shoulders the burden of extrapolating from First Republic Corp.'s amorphous briefing some sort of heightened pleading or Fed R. Civ. P. 9(b) argument, First Republic Corp.'s motion must fail. First, the motion must be denied because First Republic Corp. failed even to move for dismissal pursuant to Rule 9(b). Second, and putting aside this deficiency, First Republic Corp. fails to cite any authority to justify the application of Rule 9(b) to Safrin's claims for indemnity, contribution, violations of New York Civil Rights Law §§ 50 and 51, violations of California's common law right to privacy, and conspiracy to commit the latter two violations. Indeed, it does not because it cannot, as none of these claims allege or are premised upon fraud.[4] Since Rule 9(b) does not apply to these claims, Safrin need only meet the "bare-bones notice pleading requirements of Rule 8(a)," Pelman, 396 F.3d at 511, and, in order to survive a motion to dismiss, state "only enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1974. Safrin has done just that.

Accordingly, First Republic Corp's motion to dismiss on the ground that "no claim is asserted against [it]" must be denied.

---

[4]  For example, Safrin's privacy claim under § 51 simply asserts that the Third Party Defendants, acting in concert, made commercial use of a Safrin's name without Safrin's written consent for such use -- which is all that he is required  In fact, Rule 9(b) does not even apply to claims under New York's deceptive practices statute, which, like a § 51 claim, does not require proof of the essential elements of fraud.  See Pelman ex. rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) ("because § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices, and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed.R.Civ.P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a).") (internal citations omitted).

## II.    INCORPORATION OF LEGAL ARGUMENTS MADE IN OPPOSITION TO THE STERN DEFENDANTS' MOTION TO DISMISS THE CROSSCLAIMS

Because, other than the arguments discussed above, First Republic Corp.'s memorandum of law raises many of the same arguments as the Stern Defendants in their motions to dismiss the crossclaims, Safrin hereby incorporates by reference the legal arguments set forth in Points I, II, III and IV of his memorandum of law in opposition (Docket Entry No. 157) to the motions filed by the Stern Defendants to dismiss the crossclaims asserted against them in Safrin's Answer.

## III.    BECAUSE SAFRIN ADEQUATELY ALLEGES A BASIS FOR BRINGING FIRST REPUBLIC CORP. INTO THIS CASE, SAFRIN'S CLAIM FOR DECLARATORY RELIEF -- AS WITH ALL HIS OTHER CLAIMS -- MUST STAND

Based on its assumption that all claims against it will be dismissed, First Republic Corp. presumptively argues (in a one-line argument) that "there would be no reason to retain" Safrin's claim for declaratory relief against First Republic Corp. (FR Mem. at 11.) Because, as shown above (see supra, Points I and II), Safrin has sufficiently pled his claims against First Republic Corp., this argument has no merit. Moreover, even if the balance of First Republic Corp.'s motion had merit (and it does not), it cites to no authority for dismissal of a declaratory judgment claim by virtue of the dismissal of other counts in the Complaint. Accordingly, First Republic Corp.'s motion must be denied.

## CONCLUSION

For the foregoing reasons, the First Republic Corp.'s motion must be denied in its entirety.

Dated: New York, New York
      August 1, 2008

<div style="margin-left:40%">

FLEMMING ZULACK WILLIAMSON
      ZAUDERER LLP

By:_____/s/_____
      Jonathan D. Lupkin (JL-0792)
      Jean Marie Hackett  (JH-1784)

One Liberty Plaza
New York, New York  10006
Tel: (212) 412-9500
Fax: (212) 964-9200
Email: jlupkin@fzwz.com

*Attorneys for Defendant Joshua Safrin*

</div>