EUGENE R. SCHEIMAN
MARK A. BLOOM
ARENT FOX LLP
1675 Broadway
New York, New York 10019-5820
Tel:  (212) 484-3900
Fax:  (212) 484-3990

ALLEN P. SRAGOW
SRAGOW & SRAGOW
6665 Long Beach Boulevard, Suite B-22
Long Beach, California 90805
Tel: (310) 639-0782
Fax: (310) 639-7210

*Attorneys for Plaintiffs and Third Party Defendants*
*Steven Alevy, Bankers Capital, Allen Sragow, Allen*
*Alevy, and Robert Friedman*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMUSEMENT INDUSTRY, INC. (dba WESTLAND INDUSTRIES), and PRACTICAL FINANCE CO., INC.<br>Plaintiffs,<br><br>v.<br><br>MOSES STERN (aka MARK STERN); JOSHUA SAFRIN; FIRST REPUBLIC GROUP REALTY, LLC; EPHRAIM FRENKEL; FIRST REPUBLIC GROUP CORP.; LAND TITLE ASSOCIATES AGENCY, LLC (aka LAND TITLE ASSOCIATES); and AVERY EGERT<br>Defendants. | **CASE NO. 07 Civ. 11586 (LAK) (GWG)**<br><br><br><br>**THIRD AMENDED COMPLAINT** |

JOSHUA SAFRIN,
Defendant/Third Party Crossclaim – Counterclaim
Plaintiff,

v.

STEPHEN FRIEDMAN; STEVEN ALEVY;
BUCHANAN INGERSOLL & ROONEY, P.C.;
BANKERS CAPITAL REALTY ADVISORS
LLC; FIRST REPUBLIC GROUP CORP.; and
HERRICK FEINSTEIN, LLP,
Third Party Defendants,

- and -

MOSES STERN aka MARK STERN; FIRST
REPUBLIC GROUP REALTY, LLC; EPHRAIM
FRENKEL; and LAND TITLE ASSOCIATES
AGENCY, LLC aka LAND TITLE ASSOCIATES
Defendants/Crossclaim Defendants,

- and -

AMUSEMENT INDUSTRY, INC. dba
WESTLAND INDUSTRIES, and PRACTICAL
FINANCE CO., INC.
Plaintiffs/Counterclaim Defendants.

BUCHANAN INGERSOLL & ROONEY, P.C.
Third-Party Defendant and
Fourth-Party Plaintiff,

v.

AVRAHOM EGERT a/k/a AVERY EGERT and
THE SAFRIN GROUP, LLC a/k/a THE
SOVEREIGN GROUP
Fourth-Party Defendants.

Plaintiffs Amusement Industry, Inc. ("Amusement"), a California corporation, and

Practical Finance Co., Inc. ("Practical"), a California corporation, by and through their

attorneys, state their complaint against Defendants Moses Stern, an individual aka Mark

Stern ("Stern"), Joshua Safrin ("Safrin"), an individual, Avery Egert ("Egert"), an

individual, First Republic Group Realty LLC, a Delaware limited liability company (FRG

LLC), First Republic Group, Corp., a New York Corporation ("FRG Corp."), Ephraim

Frenkel ("Frenkel"), an individual, and Land Title Associates Agency, LLC, a New York limited liability company aka Land Title Associates ("LTA"), as follows:

## A.    INTRODUCTION

1.      This case concerns the misappropriation of $13 million from Amusement through a coordinated effort by all of the Defendants to deceive Amusement into believing it was pursuing a legitimate real estate investment when, in fact, it was not and Defendants knew it.

2.      In April 2007, FRG Corp. entered into an agreement to purchase a portfolio of eleven shopping centers (the "Portfolio")[1] from Colonial Realty Limited Partnership ("Colonial"). The purchase contract provided for a closing in late June 2007. On or about June 23, 2007, FRG LLC was formed, and upon information and belief, after that date but prior to the date of closing FRG Corp. assigned its interest in the purchase contract to FRG LLC. As the closing date approached, Stern, who controlled FRG Corp. and FRG LLC, along with Egert and Safrin, who were contributing money to facilitate the acquisition of the Portfolio, sought additional funds needed for closing the purchase of the Portfolio from Amusement. In reliance on representations by Stern, among others things, about the appraised value of the Portfolio, and representations by Egert and Safrin about their financial participation in the acquisition, FRG Corp. and/or FRG LLC entered into a letter of understanding with Amusement on June 29, 2007, pursuant to which Amusement deposited $13 million into an escrow account with LTA and Frenkel. The parties understanding was that the $13 million was to remain in escrow pending finalization of the terms pursuant to which Amusement was to obtain a 50% equity and voting interest in the Portfolio.

---

[1]  **Exhibit 1** hereto contains legal descriptions of the properties included within the Portfolio.

3.      Although Amusement made several proposals to finalize the terms under which its $13 million could be used to purchase the Portfolio, no such agreement was ever reached.  However, on or about July 3, 2007, before Amusement made any of its proposals, Frenkel and LTA transferred Amusement's money from the account into which Amusement had wired the funds into one controlled by FRG Corp. and/or FRG LLC.  Thereafter, Frenkel and LTA disbursed the $13 million in accordance with instructions from Stern, FRG Corp. and/or FRG LLC.  All of this was done by Stern, Frenkel, LTA, and FRG Corp and/or FRG LLC without Amusement's knowledge or permission.

4.      Defendants closed the purchase of the Portfolio from Colonial on or about July 12, 2007 using Amusement's money without its permission and knowing that they did not have permission.  In an apparent effort to induce Amusement to ratify the use of its funds without knowing it, Defendants delivered grant deeds to the individual properties in the Portfolio in blank executed by Stern on behalf of FRG LLC, assignments of the interests of Stern and Safrin in FRG LLC and various other entities that appear to be connected with the purchase, sale and financing of the Portfolio acquisition transaction between Colonial on the one hand with FRG Corp. and FRG LLC on the other, a $13 million promissory note executed by Stern and due in 60 days, a $15 million promissory note executed by Stern and due in 60 days, and an escrow agreement executed by Stern placing these items in escrow with the attorney and agent who had been representing Stern, Safrin, FRG Corp. and/or FRG LLC in most of their communications with Amusement.  Amusement has not accepted and did not accept these documents and terms for the use of its $13 million.

5.      Because Defendants appear to have used the money misappropriated by them in a variety of unauthorized ways, Plaintiffs are pursuing a number of alternate legal remedies in this litigation, which are broken down into three categories: (1) claims asserting

a security interest in the real estate (equitable lien, constructive trust, purchase money resulting trust and declaratory relief); (2) claims of tort resulting from the theft of the funds (fraud, conversion, conspiracy and breach of fiduciary duty); and (3) claims related to the agreements reached between the parties and the unjust enrichment of the defendants (breach of contract, breach of promissory note and unjust enrichment).

**B.     PARTIES**

6.      Amusement is a California corporation doing business as Westland Industries, incorporated, duly organized and existing under the laws of the State of California, and conducting business from its principal place of business in Long Beach, California.

7.      Practical is a California corporation, incorporated, duly organized and existing under the laws of the State of California, and conducting business from its principal place of business in Long Beach, California.  Practical is a licensed State of California finance lender.  Practical is the assignee of Amusement's interests in the promissory notes signed by Stern.

8.      Stern is an individual who, upon information and belief, is a citizen of the State of New York.  Stern also regularly transacts business in New York County.

9.      Safrin is an individual who, upon information and belief, is a citizen of the State of New York.

10.     Egert is an individual who, upon information and belief, is a citizen of the State of New York.

11.     First Republic Group Realty LLC, is a Delaware limited liability company, formed, duly organized and existing under the laws of the State of Delaware in June 2007, whose registered office is in the State of Delaware and whose principal place of business is

in New York County, State of New York, and whose sole member is non-party, FRGR

Managing Member LLC.  Upon information and belief, First Republic Group Realty LLC is

a citizen of the State of New York, in that all of its members are citizens of New York.

12.    Defendant, First Republic Group, Corp. is a corporation registered to do

business in New York, with its principal place of business in New York.  Upon information

and belief, First Republic Group, Corp., is and at all times relevant to this action was a

citizen of the State of New York, in that it is solely owned and controlled by Stern.

13.    At all times relevant to the allegations set forth in this complaint, Stern

exercised complete and actual dominion over Defendants First Republic Group Realty LLC,

and First Republic Group, Corp. with respect to the transaction at issue and such domination

was used to commit a fraud or wrong that injured Plaintiffs.

14.    Frenkel is an individual who, upon information and belief, is a citizen of the

State of New York and the sole owner and sole member of Land Title Associates Escrow.

15.    Land Title Associates Agency, LLC is a limited liability company and third-

party depository, duly organized and existing under the laws of the State of New York,

whose registered office is in the State of New York and whose principal place of business is

in Nassau County, the State of New York.  Upon information and belief, Land Title

Associates Agency, LLC also conducts business under various similar names, including

Land Title Associates.  LTA is a citizen of the State of New York, in that its member is a

citizen of the State of New York.

16.    At all times relevant to the allegations set forth in this complaint, Frenkel

exercised complete and actual dominion over LTA with respect to the transaction at issue

and such domination was used to commit a fraud or wrong that injured Plaintiffs.

## C.    JURISDICTION AND VENUE

17.    This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

18.    Venue is proper herein pursuant to 28 U.S.C. § 1391(a)(1), in that at least one defendant resides in this district and all Defendants reside in New York.

19.    Venue also is proper herein pursuant to 28 U.S.C. § 1391(a)(2), in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## D.    DEFENDANTS OBTAIN ACCESS TO AMUSEMENT'S $13 MILLION

20.    As described above, Stern and FRG Corp. entered into a contract to purchase the Portfolio from Colonial in April 2007.  Upon information and belief, FRG Corp. assigned its rights in that contract to FRG LLC some time after FRG LLC was formed on June 23, 2007, but prior to the closing date.  The closing date designated in the contract was June 29, 2007, and the actual closing date was on or about July 12, 2007 or July 13, 2007.

21.    In May 2007, Stern and FRG Corp. hired Banker Capital Realty Advisors ("Bankers Capital"), on a non-exclusive basis, to assist them in locating acceptable financing for the acquisition.  Upon information and belief prior to the date of closing, which was on or about July 13, 2007, FRG Corp. assigned its interests in all aspects of the transaction to FRG LLC.  FRG Corp. and FRG LLC did not disclose to Bankers Capital that the purchase contract had been assigned.  As such, both FRG Corp. and FRG LLC received the benefit of Bankers Capital's services, through the assets FRG LLC received through the transaction, and by preventing both entities from being responsible to other third parties for

breach of contract claims related to the failure to close the transaction.  The principal of

Bankers Capital is Steven Alevy, the son of Allen Alevy, Amusement's principal.

22.     As the closing date approached, Stern, FRG Corp. and/or FRG LLC had not

obtained all of the financing they required to close the acquisition of the Portfolio.  In an

effort to obtain the needed capital, Stern, FRG Corp. and/or FRG LLC authorized Steven

Alevy and Steven Friedman, a lawyer they had retained to act as counsel and to help locate

financing, to approach Amusement to determine if it would supply the needed funds.

23.     Friedman presented a good opportunity to Amusement on behalf of his

clients Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC:  initially FRG Corp. and, upon

information and belief, later via an assignment from FRG Corp., FRG LLC had a contract to

purchase the Portfolio, the value of which had been appraised at $190 million, for

approximately $131 million. Friedman offered Amusement the opportunity to invest in the

Portfolio.  Amusement was further enticed by Friedman's representation that Safrin, a

respected New York real estate investor, was supplying much of the equity needed for the

acquisition.

24.     These facts were confirmed by Steven Alevy, who had seen the appraisal

during his efforts to locate financing, and who was aware of a specific representation that

Stern made to Robert Friedman, a colleague of Steven Alevy, on June 7, 2007, that Safrin

and Egert were supplying most of the equity for the acquisition.   Further, Steven Alevy had

been communicating with Stern and Egert for over a month regarding the planned

acquisition and had been assured of these facts by them during those discussions.  Finally,

Safrin had expressed his pleasure at participating jointly with the Alevy family in acquiring

the Portfolio during a walk on West End Avenue with Steven Alevy in late May or early

June of 2007.

25.     Stephen Friedman's bona fides were well established at the time.  He was a partner in the law firm of Buchanan Ingersol & Rooney, who repeatedly represented to Amusement that he had been retained by Stern, Safrin, Egert, and the entity designated to buy the Colonial Portfolio, which was FRG Corp. and/or FRG LLC, to act as an attorney for them and to serve as an agent for them to locate, negotiate and close financing for the planned acquisition of the Portfolio.

26.     Friedman had actual and/or apparent authority to bind Stern, FRG Corp. and/or FRG LLC.  By letter dated May 10, 2007, he was specifically retained by Stern and FRG Corp., as their lawyer and agent, to obtain funding to allow them to complete the purchase of the Portfolio.  Further, on many occasions, Friedman represented to Amusement that he had such authority.  Stern, FRG Corp. and/or FRG LLC, were aware of those representations, but did not contradict them.

27.     Likewise, Friedman had actual and/or apparent authority to bind Egert and Safrin.  Pursuant to a retainer letter dated October 26, 2006, Friedman had a broad agency and attorney client relationship with Egert and Safrin that encompassed Friedman's role in the transactions at issue in the matter.  Egert, who is Safrin's son-in-law, confirmed to Steven Alevy that Friedman could bind Safrin.  For example, during one of the conversations between Egert and Steven Alevy that occurred within the two weeks preceding Amusement's transmittal of the $13 million, Egert directed Steven Alevy to negotiate with Friedman for a larger part of the equity in the Portfolio that would come from Safrin's share.  Steven Alevy had witnessed Friedman's authority to act on behalf of Safrin in other transactions.  Friedman represented on several occasions that he had such authority with regard to Safrin.  Safrin permitted Friedman to demonstrate his authority to act on his behalf in this transaction by allowing Friedman to obtain and convey to interested parties

Safrin's personal financial statements and tax returns and to procure his signature on legally significant documents.

28.    When the events involved in this case occurred, Friedman was already representing an Alevy family entity in an unrelated transaction at the time and had been a close family friend for many years.  Friedman was therefore an individual in whom Amusement reasonably reposed its trust.

29.    Amusement entered into a letter of understanding with FRG Corp. and/or FRG LLC on June 29, 2007 as a starting point for their effort to agree on terms for Amusement's $13 million contribution to the acquisition of the Portfolio.  In deciding to do so, Amusement relied on the representations as to the availability of the investment opportunity, the participants in the transaction and Friedman's authority.  Further, because the closing under the contract with Colonial was approaching, Amusement lacked sufficient time for proper due diligence and, therefore, had to decide how to proceed based on the available information.

30.    Stern, Safrin, Egert, and FRG LLC and/or FRG Corp. encouraged this sense of urgency by not informing Amusement until later that Colonial had agreed to a 12 day delay of the closing.

31.    On about June 29, 2007, a written Letter of Understanding ("LOU") was executed by Stern, on behalf of FRG LLC and/or FRG Corp.  The LOU sets forth the terms of a proposed $13 million financing:

      a.    Amusement would receive a 50% equity and voting interest in the Portfolio, plus a 12% annual preferred return on its investment;

      b.    First Republic would be responsible for major decisions regarding the Portfolio, including any refinancing, sales and operations;

   c.  During a 7 day negotiating period in which the parties were to reach a

binding agreement, 100% of the equity and voting interest in the Portfolio would be

held in escrow for Amusement's benefit.

A true and correct copy of the LOU is attached hereto as **Exhibit 2**.

###   E.   DEPOSIT INTO LTA/FRENKEL ESCROW AND UNAUTHORIZED RELEASE

  32.  On or about June 29, 2007, Amusement wired $13,000,000 to LTA in

accordance with Stern's, and FRG Corp. and/or FRG LLC's instructions. Amusement

directed the wire to LTA account number 5514007904 at North Fork Bank, which Friedman

told Amusement was the escrow account being used by FRG Corp. and/or FRG LLC to

accumulate the funds needed to acquire the Portfolio.

  33.  By virtue of the fact that Amusement placed the $13 million in escrow with

LTA and Frenkel, both LTA and Frenkel had a special and confidential relationship with

Amusement such that they had a fiduciary duty to Amusement.

  34.  As a condition to sending the wire, Amusement directed and Stern, Friedman,

LTA and Frenkel acknowledged, that the money was to be held in escrow by LTA and

Frenkel and released only if Amusement so instructed.  The money was not wired for any

use or benefit of FRG Corp. and/or FRG LLC.

  35.  Between June 29, 2007 and July 14, 2007 Amusement attempted to negotiate

a final agreement for the terms of use of its escrowed $13 million with Stern, Safrin, Egert,

and FRG Corp. and/or FRG LLC.  These negotiations continued beyond the 7 day period in

the LOU, although Amusement notified Stern, Safrin, Egert, and FRG Corp. and/or FRG

LLC that it did not regard itself as bound by the LOU after the expiration of the 7 day period

in the LOU.

36.    Between June 29, 2007 and July 14, 2007, Amusement repeatedly communicated to Friedman, LTA and Frenkel that its money was not to be released from escrow.

37.    Such communications with Friedman occurred on June 29, July 6 and July 9.

38.    Such communications with Frenkel and LTA occurred on July 10 and 12.

39.    Amusement believed throughout this period that Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC were negotiating in good faith. Amusement also believed that its money was safely in escrow.

40.    Unfortunately, neither belief was correct: although Amusement did not know it, Amusement's money had been transferred on July 3, 2007 from the escrow account to an LTA account at North Fork Bank with an account title identifying ownership and control exclusively by FRG Corp. (account number 5516029766), from which the funds were disbursed for various expenses apparently associated with the acquisition of the Portfolio on FRG LLC's behalf, and funds were disbursed from the account on the behalf of Defendants Stern and FRG Corp. for expenses, debts or the purchase of assets unrelated to the Portfolio.

41.    Upon information and belief, based on their common ownership and status as assignor-assignee of the underlying purchase contract, FRG Corp. frequently undertook acts on behalf of FRG LLC, and FRG LLC frequently undertook acts on behalf of FRG Corp.

42.    Amusement later learned that the account to which it had directed its wire, account number 5514007904, was not the escrow account FRG Corp. and/or FRG LLC were using for the acquisition from Colonial. Rather, that account was Frenkel's general escrow account, which only contained Amusement's $13 million.

43.    During this period, Amusement also did not know that FRG Corp. and/or FRG LLC could not perform the obligations undertaken in the LOU because those

obligations conflicted with the terms of Citigroup's financing commitment. Amusement later learned that Citigroup had committed to providing approximately $126 million toward the purchase price of the Portfolio. Despite Amusement's insistence in communications with Friedman that it would not finalize a transaction regarding the Portfolio without reviewing the transaction documents with Citigroup; Stern, Safrin, Egert, FRG Corp. and FRG LLC did not provide the information or documents. The failure of Stern, Safrin, Egert, FRG Corp. and FRG LLC to provide these documents in the face of Amusement's demand gave Amusement false confidence that its money was safely in escrow.

44.     Because Frenkel and LTA were part of the conspiracy to steal Amusement's $13 million, and Stern, Safrin, Egert, FRG Corp. and/or FRG LLC aided and abetted the theft of Amusement's $13 million, the special and confidential relationship between LTA/Frenkel and Amusement extended to the other Defendants such that all of the Defendants were in a special and confidential relationship with Amusement such that they had a fiduciary duty to Amusement.

### F.     DEFENDANTS SEEK TO COVER THEIR TRACKS

45.     One day before the closing with Colonial which occurred on or about July 12, 2007, with no agreement between the parties, and with Defendants planning to use what remained of Amusement's $13 million to purchase the Portfolio, Stern, Safrin, Egert, FRG Corp. and/or FRG LLC, through Friedman simply sent a set of partially executed transaction documents to Amusement. They took this action apparently hoping that it would satisfy Amusement. However, it was unacceptable to Amusement, and without knowing of Defendants' misappropriation of its money, Amusement continued to negotiate and to refuse to authorize the release of the $13 million.

46.     On July 11, 2007, Friedman sent the following documents to Steven Alevy

with a statement that there was no time to fully document the parties' agreement prior to the

close of escrow:

>     a.     A promissory note for $13 million signed only by Stern;
>
>     b.     Assignments of Stern's and Safrin's membership interests in FRG
>
> LLC and the underlying LLC ownership structure;
>
>     c.     Eleven grant deeds conveying ownership of the individual properties
>
> in the Portfolio signed by Stern on behalf of FRG LLC; and
>
>     d.     An escrow agreement signed by Stern placing these documents in
>
> escrow with Friedman's law firm.

47.     Friedman subsequently advised Steven Alevy that his firm would not act as

escrow.  Friedman then conveyed the eleven grant deeds to Steven Alevy for the purpose of

creating a security interest in the properties in acknowledgement of Defendants'

unauthorized taking of Amusement's $13 million.

48.     The next day, July 12, 2007, Stern executed a $13 million promissory note in

favor of Amusement wherein Stern promised to repay Amusement, and Practical as the

subsequent assignee, the sum of $13,000,000.00 principal, plus interest on the principal

amount from July 12, 2007 to September 10, 2007, with both sums due on the maturity date

of September 10, 2007.  Attached as **Exhibit 3** hereto, is a true and correct copy of this

promissory note of July 12, 2007.

49.     Unbeknownst to Amusement, on July 12, 2007, Stern, Safrin, Egert, and FRG

Corp. and/or FRG LLC used Amusement's money to close the purchase of the Portfolio,

even though they knew Amusement had not authorized the release of the funds, had

instructed that the funds not be released, that they had not reached any agreement with

Amusement permitting the use of Amusement's funds and that the LOU had expired days before the closing.

50.     Later that day, Stern executed a further promissory note in favor of Amusement wherein Stern promised to pay Amusement, and Practical as subsequent assignee the sum of $15,000,000.00 principal, due on the maturity date of September 10, 2007. Attached as **Exhibit 4** hereon, is a true and correct copy of this promissory note of July 12, 2007.

51.     Amusement rejected every one of these proposals.

52.     After the closing, Defendants deceived Amusement into believing that its $13 million was still in escrow. In three separate instances, Defendants sought permission from Amusement to release the funds from escrow. On all three occasions, Amusement refused to authorize the release.

53.     This was all a charade, since the funds were long gone.

### G.     AMUSEMENT DEMANDS THE RETURN OF ITS MONEY

54.     Late on July 15, 2007 or early on July 16, 2007, Amusement for the first time learned that Defendants had caused Amusement's escrowed funds to be paid out of North Fork Bank during the previous week.

55.     In response, Amusement wrote to Frenkel and LTA with a copy to both Stern and Friedman, asked for the fully documented transaction or the retrieval and return of Amusement's funds, stated that authorization to release would only be provided after the proper documents were received, and directed that if the funds had already been released, then Frenkel and LTA should retrieve them.

56.     Nobody responded or refuted any of the assertions in Amusement's letter.

## FIRST CAUSE OF ACTION
### (EQUITABLE LIEN AGAINST STERN, SAFRIN, EGERT, AND FRG CORP. AND/OR FRG LLC)

57.     Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Complaint as if stated in full herein.

58.     Amusement placed its $13 million into escrow pursuant to a contract with Defendants that identified the Portfolio as security for Amusement, and Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC intended and indicated in writing that the Portfolio would be security for Amusement's $13 million.

59.     Amusement's $13 million was used by Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC to purchase the Portfolio and/or for expenses required to accomplish the acquisition.

60.     Amusement has an equitable lien on the Portfolio.

61.     Amusement's $13 million was used by Stern and FRG Corp. not only to purchase the Portfolio and/or for expenses required to accomplish the acquisition, but also for expenses unrelated to the purchase of the Portfolio.

62.     Amusement has an equitable lien to the extent of the funds spent on the purchase of any other assets or bank accounts that Stern and FRG Corp. purchased or funded with Plaintiffs' funds, including but not limited to any funds that were returned to Stern and FRG Corp. from the Citigroup reserve accounts funded with Plaintiffs' $13 million.

## SECOND CAUSE OF ACTION
### (CONSTRUCTIVE TRUST AGAINST STERN, SAFRIN, EGERT, AND FRG CORP. AND/OR FRG LLC)

63.     Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Amended Complaint as if stated in full herein.

64.     A special and confidential relationship existed between Amusement and Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC once Amusement placed $13 million into escrow with Frenkel and LTA.

65.     Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC took Amusement's $13 million without authorization, utilized it to purchase the Portfolio and for other expenses necessary to acquire the Portfolio, and did not provide Amusement with any consideration. Stern and FRG Corp. also used Amusement's funds without authorization to fund the purchase of assets and expenses unrelated to the Portfolio, without providing Amusement with any consideration.

66.     Stern, Safrin, Egert, FRG LLC have been unjustly enriched by the use of Amusement's funds towards the purchase of the portfolio at Amusement's expense.  Stern and FRG Corp. have been unjustly enriched by their use of Amusement's funds both for expenses, debts and losses related and unrelated to the purchase of the Portfolio, as well as the purchase of assets unrelated to the Portfolio.

67.     This unjust enrichment gives rise to a constructive trust on the Portfolio and/or any assets into which the $13 million can be traced for the benefit of Amusement.

### THIRD CAUSE OF ACTION
(PURCHASE MONEY RESULTING TRUST PURSUANT TO NY EPTL §7-1.3, OR THE LAWS OF VIRGINIA, GEORGIA AND ALABAMA, AGAINST STERN, SAFRIN, EGERT, FRG CORP. AND FRG LLC)

68.     Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Amended Complaint as if stated in full herein.

69.     The conduct of Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC as described herein gives rise to a trust on the Portfolio in favor of Amusement to the extent necessary to satisfy Amusement's claims in this action.

70.     The conduct of Stern and FRG Corp. as described herein gives rise to a trust on assets other than those contained in the Portfolio that were purchased with the $13 million, in favor of Amusement to the extent necessary to satisfy Amusement's claims in this action.

## FOURTH CAUSE OF ACTION
### (DECLARATORY RELIEF AS TO A SECURITY INTEREST IN THE PROPERTY PORTFOLIO AGAINST STERN, SAFRIN, FRG LLC, FRG CORP. AND EGERT)

71.     Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Amended Complaint as if stated in full herein.

72.     An actual and present controversy has arisen and now exists between Plaintiffs and Defendants Stern, Safrin, and FRG LLC (or FRG Corp. as FRG LLC's assignor) in that Plaintiffs contend, and these defendants deny that these defendants in fact gave the grant deeds for each of the eleven properties to Steven Alevy to be held in escrow for the purpose of securing the promissory notes given by Stern in acknowledgement of Defendants' unauthorized taking of Amusement's funds.

73.     Plaintiffs desire a declaration that they have a security interest in the eleven properties in the Portfolio in the amount of at least $13 million.

## FIFTH CAUSE OF ACTION
### (FRAUD AGAINST STERN, SAFRIN, EGERT, FRG CORP., FRG LLC, FENKEL AND LTA)

74.     Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Amended Complaint as if stated in full herein.

75.     A special and confidential relationship existed between Amusement and Frenkel, LTA, Stern, Safrin, Egert, FRG Corp. and FRG LLC once Amusement placed $13 million into escrow with Frenkel/LTA, such that they had a fiduciary duty to Amusement.

76.     Stern, Safrin, Egert, FRG Corp., FRG LLC, Frenkel and LTA knowingly made false statements to Amusement with the motive to induce it to place the $13 million in escrow with Frenkel and LTA and, after the money was misappropriated, to cause Amusement to believe that its money was still in escrow.  These false statements were made by these defendants so that they could obtain and use Amusement's money to acquire the Portfolio.

77.     These statements were either made directly to Amusement or to others with the intent that the content of the statements be passed on to, and relied upon by, prospective investors such as Amusement.

78.     The substance of the statements, all of which were knowingly false when made, to induce Amusement to place the $13 million in escrow include, but are not limited to, the following:

a.      On May 15, 2007, Stern transmitted personal financial statements via e-mail to Bankers Capital showing Stern to have a personal net worth of $37 million;

b.      In late May or early June of 2007, during an in person conversation on West End Avenue in New York City, Safrin told Steven Alevy that he was participating in the acquisition of the Portfolio;

c.      During telephone conversations that took place in May or June of 2007, Stern and Egert told Steven Alevy that he and Safrin were equity participants in the planned acquisition of the Portfolio;

d.      On June 4, 2007, by both telephone and e-mail, Friedman told Steven Alevy that Egert was to be placed on the advisory board of the entity that was acquiring the Portfolio;

e.    On June 4, 2007, by e-mail, Stern told Steven Alevy that Safrin was on the advisory board of the entity that was acquiring the Portfolio;

f.    On June 4, 2007, by both telephone and e-mail, Stern told Bankers that Safrin was a sponsor of the acquisition of the Portfolio with between $15 million and $18 million in liquidity;

g.    On June 5, 2007, by e-mail and later confirmed by Friedman by telephone, Stern told Bankers that Safrin was a co-sponsor of the Portfolio acquisition and will sign the "carve-outs" on the financing package;

h.    On June 7, 2007, by both telephone and e-mail, Stern told Bankers that most of the equity for the Portfolio acquisition will come from Safrin and Egert;

i.    During a telephone conversation in the first week of June 2007, Stern told Steven Alevy that Amusement's $13 million would go straight to Colonial for the purchase of the portfolio;

j.    During telephone conversations in the last two weeks in June 2007, Egert told Steven Alevy that Friedman had authority to bind Egert and Safrin with regard to negotiating the relative equity participations in the Portfolio[2];

k.    In telephone conversations between June 20 and 29, 2007, Friedman told Bankers and Amusement that a 50/50 equity split between Amusement on one hand and Stern, Safrin and Egert on the other was permitted under the financing obtained from Citigroup;

l.    Shortly before Amusement wired the $13 million, Stern represented, in phone conversations and e-mails, to Steven Alevy that Stern had no affiliation with LTA and Frenkel;

---

[2]    Although Plaintiffs contend that Egert did have the authority to speak on Safrin's behalf, in the event Safrin and/or Egert now deny this allegation the June 2007 representation by Egert was false.

m.      On June 29, 2007, the LOU, signed by Stern, stated that 100% of the equity and voting interest in the Portfolio would be held in escrow for the benefit of Amusement until the parties reached a final agreement governing Amusement's participation in the Portfolio;

n.      On June 29, 2007, the LOU, signed by Stern, represented that Amusement's $13 million would only be used towards the purchase of the Portfolio; and

o.      On June 29, 2007, Frenkel confirmed in an e-mail to Friedman and Steven Alevy that he would not release the $13 million without prior authorization.

79.      From June 29, 2007 to July 15, 2007, while the parties sought to negotiate a final agreement governing the terms of Amusement's participation in the Portfolio, Stern, Safrin, Egert, Frenkel, LTA, and FRG Corp. and/or FRG LLC had superior information concerning the fact that Amusement's money was removed from the account into which Amusement had wired it, this fact was not readily available to Amusement and Stern, Safrin, Egert, Frenkel, LTA, and FRG Corp. and/or FRG LLC knew that Amusement was acting on the basis of mistaken knowledge. Nevertheless, Stern, Safrin, Egert, Frenkel, LTA, and FRG Corp. and/or FRG LLC concealed from Amusement the fact that Amusement's money was removed from the account into which Amusement had wired it.

80.      Due to the relationship among the parties, Stern, Safrin, Egert, Frenkel, LTA, and FRG Corp. and/or FRG LLC had a duty to disclosure this information.

81.      Stern, Safrin, Egert, Frenkel, LTA, and FRG Corp. and/or FRG LLC acted with a high level of moral culpability because they made and planned the aforementioned fraudulent statements and concealments with, wanton dishonesty, malice and the intent to oppress.

82.      Amusement's reliance on these statements and concealments was reasonable.

83.    As a proximate result of the false statements and concealments enumerated herein, Amusement has been damaged.

## SIXTH CAUSE OF ACTION
(NEGLIGENT MISREPRESENTATION AGAINST STERN, SAFRIN, EGERT, FRENKEL, LTA, AND FRG CORP. AND/OR FRG LLC)

84.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Amended Complaint as if stated in full herein.

85.    In the alternative to the Fifth cause of action above, if Stern, Safrin, Egert, Frenkel, LTA, and FRG Corp. and/or FRG LLC did not know the falsity of the representations and omissions identified in the above paragraphs, those representations and omissions were the result of negligence.

86.    Defendants had a duty of reasonable care in their communications with Amusement.  Moreover, by virtue of the fact that Amusement placed the $13 million in escrow with LTA and Frenkel, both LTA and Frenkel had a special and confidential relationship with Amusement such that they had a fiduciary duty to Amusement.  The fiduciary duty extended to the other Defendants.

87.    Defendants breached their fiduciary duty and their duty of reasonable care because they should have known that the statements listed in the paragraphs above were materially false.

88.    Amusement was damaged as a direct and proximate result of Defendants' negligence.

## SEVENTH CAUSE OF ACTION
(CONVERSION AGAINST STERN, SAFRIN, EGERT, FRENKEL, LTA, AND FRG CORP. AND/OR FRG LLC)

89.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Amended Complaint as if stated in full herein.

90.    Amusement placed $13 million into an escrow maintained by LTA and Frenkel, bearing account #5514007904.  These funds were not to be used for any purpose without Amusement's permission.

91.    On or about July 3, 2007, these funds were removed from that account, and transferred to an account bearing account #5516029766.  This transfer was not authorized by Amusement.

92.    Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC had no right or claim to the $13 million being held in escrow.

93.    Stern, Safrin, Egert, Frenkel, LTA, and FRG Corp. and/or FRG LLC acted with a high level of moral culpability because they planned and executed the aforementioned conversion with, wanton dishonesty, malice and the intent to oppress.

94.    Amusement's $13 million was used for the benefit of Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC and/or their chosen payee, which precluded Amusement's exercise of its rights of ownership over the funds.

95.    Despite Amusement's demand, it has not received a refund of the $13 million, or other compensation in lieu of a return of its funds.

### EIGHTH CAUSE OF ACTION
**(CONSPIRACY TO COMMIT CONVERSION AND/OR FRAUD – AGAINST STERN, SAFRIN, EGERT, FRG CORP., FRG LLC, FRENKEL AND LTA)**

96.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Amended Complaint as if stated in full herein.

97.    Stern, Safrin, Egert, Frenkel, LTA, and FRG Corp. and/or FRG LLC conspired and agreed, without Amusement's knowledge, consent or authorization, to take Amusement's escrowed funds and provide them to Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC or to their chosen payee, to be used for their benefit.

98.     This conspiracy to defraud and/or to convert Amusement's escrowed funds was in fact performed.

99.     Frenkel and/or LTA transferred Amusement's funds out of the escrow account, which was an act in furtherance of the agreement.

100.    Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC directed and provided Frenkel and/or LTA with information on where payments should be made, provided wire instructions to Amusement, made various false representations, and/or negotiated with Amusement in a manner best-suited to facilitate the conspiracy's success, all of which were act(s) in furtherance of the agreement.

101.    Stern, Safrin, Egert, Frenkel, LTA, and FRG Corp. and/or FRG LLC intentionally engaged in the acts referred to above for the furtherance of the agreed upon plan or purpose of improperly obtaining Amusement's funds.

102.    As a direct and proximate result of Stern, Safrin, Egert, Frenkel, LTA, and FRG Corp. and/or FRG LLC's conspiracy to commit conversion and/or fraud, Amusement has been damaged.

103.    Amusement has demanded that Stern, Safrin, Egert, Frenkel, LTA, and FRG Corp. and/or FRG LLC return the sums taken by them from Amusement, but these Defendants have failed and refused to return such sums.

104.    These Defendants' acts as alleged in the Fifth through Eighth Causes of Action were willful, wanton, malicious, and oppressive.

## NINTH CAUSE OF ACTION
### (BREACH OF $13,000,000 PROMISSORY NOTE AGAINST STERN)

105.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Amended Complaint as if stated in full herein.

106.     On or about July 11, 2007, Stern executed a promissory note in the amount of $13 million, subject to other terms in the note, in favor of Amusement.

107.     Payment of the principal and interest was due on or before September 10, 2007.

108.     Upon information and belief Stern executed this note to acknowledge his unauthorized use of Amusement's funds.

109.     Amusement did not accept the promissory note, but pleads this cause of action as an alternative, should it be unsuccessful on its other claims herein.

110.     Stern defaulted on the $13 million promissory note on September 10, 2007 by not making or paying this Note's principal with interest on that date as required by the terms of the promissory note.  Stern has made no payment towards the promissory note. At this time, the outstanding balance owed by Stern, to Practical Finance as assignee, pursuant to the terms of the promissory note is the sum of $13,000,000.00 of principal, plus interest, plus default interest, all pursuant to the note's terms.

## TENTH CAUSE OF ACTION
(BREACH OF $15,000,000 PROMISSORY NOTE AGAINST STERN)

111.     Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Amended Complaint as if stated in full herein.

112.     On or about July 11, 2007, Stern executed a promissory note in the amount of $15 million, subject to other terms in the note, in favor of Amusement.

113.     Payment of the principal and interest was due on or before September 10, 2007.

114.     Upon information and belief Stern executed this note to acknowledge his unauthorized use of Amusement's funds.

115.     Amusement did not accept the promissory note, but pleads this cause of action as an alternative, should it be unsuccessful on its other claims herein.

116.     Stern defaulted on the $15 million promissory note on September 10, 2007 by not making or paying this Note's principal with interest on that date as required by the terms of the promissory note.  Stern has made no payment towards the promissory note. At this time, the outstanding balance owed by Stern, to Practical Finance as assignee, pursuant to the terms of the promissory note is the sum of $15,000,000.00 of principal, plus interest, plus default interest, all pursuant to the note's terms.

## ELEVENTH CAUSE OF ACTION
(BREACH OF FIDUCIARY DUTY, AGAINST FRENKEL AND LTA)

117.     Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Amended Complaint as if stated in full herein.

118.     Amusement placed trust and confidence in the integrity and fidelity of LTA and Frenkel as escrow agents and a purportedly independent third party depository.

119.     Based on that trust and confidence and the escrow agreement referred to in the preceding paragraphs, Amusement transmitted its funds to Frenkel and LTA with the expectation the funds would only be used as authorized by Amusement.

120.     Frenkel and LTA as escrow agents holding Amusement's $13 million deposit had a fiduciary duty to Amusement.

121.     Frenkel and LTA were given clear instructions on multiple occasions directly from Amusement, to only release the escrowed money with written authorization from either Allen Alevy or Allen Sragow.

122.     On or about July 3, 2007, Frenkel and LTA transferred Amusement's $13,000,000 held in escrow account #5514007904 to a separate escrow account controlled

by Stern (account #5516019766) without receiving written authorization from either Allen Alevy or Allen Sragow.

123.    On or about July 12, 2007 and July 13, 2007, Frenkel and LTA again released to unauthorized persons approximately $11,500,000 of Amusement's funds that were held in escrow account #5516019766, without receiving written authorization from either Allen Alevy or Allen Sragow.

124.    By correspondence on or about July 15, 2007, from Allen Sragow to Frenkel and LTA, Amusement requested the return of the funds that it had placed into escrow.

125.    A similar written demand requesting release of the documents was repeated through a separate letter from Allen Sragow to Frenkel and LTA on July 16, 2007.

126.    The release of these funds by LTA and Frenkel in violation of the escrow instructions is a breach of fiduciary duty owed to Amusement.

127.    The release of the funds by LTA and Frenkel was egregious in nature, akin to conduct evincing a high degree of moral turpitude, and was directed at Amusement and part of a pattern directed at the public generally.

**TWELFTH CAUSE OF ACTION**
(UNJUST ENRICHMENT AGAINST STERN, SAFRIN, EGERT, FRENKEL, LTA, FRG CORP. AND FRG LLC)

128.    Plaintiffs replead and reallege each and every allegation stated in the foregoing paragraphs of this Amended Complaint as if stated in full herein.

129.    Amusement placed their funds into escrow with Frenkel and LTA as separate segregated funds within account #5516029766, in contemplation of executing an agreement with Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC, and such funds were only to be released from escrow if a final agreement with Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC was reached.

130.    A final written agreement between Amusement and Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC  was not executed.

131.    Stern, Safrin, Egert, Frenkel, LTA, and FRG Corp. and/or FRG LLC knowingly and unlawfully accessed and obtained for their own benefit, without Amusement's knowledge or consent, Amusement's $13 million of escrowed funds, even though all of these Defendants were aware that no final agreement existed between Stern, Safrin, Egert, and FRG Corp. and/or FRG LLC, and Amusement that permitted the release of any part of Amusement's escrowed $13 million, and even though all these Defendants were aware that Amusement had not provided authorization for release of the escrowed funds.

132.    As such, on or about July 3, 2007, Stern, Safrin, Egert, FRG Corp., and FRG LLC wrongly obtained the benefit of the escrowed $13 million, and shortly thereafter on or about July 12, 2007 they obtained a benefit from the escrowed $13 million through: their receipt of the assets that comprised the Portfolio, and a reduction of their debts and/or potential losses based on agreements or obligations, including third-party contracts, concerning or relating to the acquisition, financing or management of the Portfolio, such as those that arose during the period of April 2007 through July 2007 with Citigroup, Northmarq, Jones Lang LaSalle, and various title companies.

133.    Additionally, on or about July 3, 2007, Stern and/or FRG Corp. wrongly obtained the benefit of the escrowed $13 million, and shortly thereafter on or about July 12, 2007 they obtained a benefit from the escrowed $13 million through: the receipt of assets that were not part of the Portfolio, and a reduction of their debts and/or potential losses both related to and unrelated to the Portfolio.

134.    At all relevant times herein, and continuing to the present, Amusement had and continues to have a legal and equitable interest in the $13 million, which sum was improperly taken by these Defendants, and on that basis Defendants' taking of such funds was at Amusement's expense.

135.    Thus, as a result of these Defendants' wrongful conduct, they have been and continue to be unjustly enriched by the wrongful withdrawal and receipt by them of any portion of Amusement's $13 million.

136.    These Defendants have failed to pay or compensate Amusement any amount whatsoever since the beginning of their wrongful conduct.

137.    The fair and reasonable value of Amusement's loss, and of Defendants' collective benefit, as a result of these Defendants' wrongful withdrawal is the sum of $13 million, plus interest.

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

A.    AS TO THE FIRST CAUSE OF ACTION FOR EQUITABLE LIEN, STERN, SAFRIN, EGERT, and FRG CORP. and/or FRG LLC:

1.    For an equitable lien on the Portfolio.

2.    For the imposition of a equitable lien for the benefit of Plaintiffs on all sums of money deposited in escrow, that remain in any Defendant's control, or on any assets purchased with those funds;

3.    For restitution of all moneys deposited in escrow by Plaintiffs;

4.    For an order directing Defendants to account to Plaintiffs for all of the income derived by Defendants from the property, and to Pay to Plaintiffs in proportion to their share of ownership the sum found due on such accounting; and

5.    For an order requiring transferees with knowledge of the moneys deposited in escrow by Plaintiffs to make restitution.

B.     AS TO THE SECOND CAUSE OF ACTION FOR CONSTRUCTIVE
       TRUST AGAINST STERN, SAFRIN, EGERT, and FRG CORP. and/or
       FRG LLC:

      1.    For a constructive trust on the Portfolio;

      2.    For a constructive trust on any assets purchased with Plaintiff's funds
             unrelated to the Portfolio by Stern and FRG Corp.;

      3.    For restitution of all moneys deposited in escrow by Plaintiffs;

      4.    For an order directing Defendants to account to Plaintiffs for all of the
             income derived by Defendants from the Portfolio, and to Pay to
             Plaintiffs in proportion to their share of ownership the sum found due
             on such accounting; and

      5.    For an order requiring transferees with knowledge of the moneys
             deposited in escrow by Plaintiffs to make restitution.

C.     AS TO THE  THIRD CAUSE OF ACTION FOR PURCHASE MONEY
       RESULTING TRUST AGAINST STERN, SAFRIN, EGERT, and FRG
       CORP. and/or FRG LLC:

      1.    An order that Stern, Safrin, Egert, and FRG CORP. and/or FRG LLC
             are declared trustees of the properties in the Portfolio, holding legal
             title to the properties for the benefit of Plaintiffs;

      2.    An order that Stern and FRG Corp. are declared trustees of all assets
             unrelated to the Portfolio, holding legal title to those assets for the
             benefit of Plaintiffs;

      3.    For restitution of all moneys deposited in escrow by Plaintiffs;

      4.    For an order directing Defendants to account to Plaintiffs for all of the
             income derived by Defendants from the property, and to pay to
             Plaintiffs in proportion to their share of ownership the sum found due
             on such accounting; and

      5.    For an order requiring transferees with knowledge of the moneys
             deposited in escrow by Plaintiffs to make restitution.

D.     AS TO THE FOURTH CAUSE OF ACTION FOR DECLARATORY
       RELIEF AGAINST STERN, SAFRIN, EGERT, and FRG CORP. and/or
       FRG LLC:

      1.    A declaration that Plaintiffs have a security interest of $15 million in
             the eleven portfolio properties;

E.     AS TO THE FIFTH CAUSE OF ACTION FOR FRAUD:

    1.    For compensatory damages allowed by law, the exact sum to be proven at time of trial;

    2.    For exemplary and punitive damages to be proven at time of trial; and

F.     AS TO THE SIXTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION:

    1.    For compensatory damages allowed by law, the exact sum to be

G.     AS TO THE SEVENTH CAUSE OF ACTION FOR CONVERSION:

    1.    For compensatory damages allowed by law, the exact sum to be proven at time of trial.

    2.    For exemplary and punitive damages to be proven at time of trial.

H.     AS TO THE EIGHTH CAUSE OF ACTION FOR CONSPIRACY TO COMMIT FRAUD AND/OR CONVERSION:

    1.    For compensatory damages allowed by law, the exact sum to be proven at time of trial;

    2.    For exemplary and punitive damages to be proven at time of trial; and

    3.    As a result of the foregoing, Plaintiffs are equitably entitled to an order divesting Defendants from management and ownership of the property portfolio wrongly obtained and retained by them, and vesting same with Plaintiffs, to the greatest extent permitted in equity.

I.     AS TO THE NINTH AND TENTH CAUSES OF ACTION FOR BREACH OF CONTRACT AGAINST MARK STERN -- $13,000,000 PROMISSORY NOTE, BREACH OF CONTRACT AGAINST MARK STERN - $15,000,000 PROMISSORY NOTE:

    1.    For compensatory damages allowed by law, the exact sum to be proven at time of trial.

J.     AS TO THE ELEVENTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY AGAINST EPHRAIM FRENKEL AND LAND TITLE ASSOCIATES:

    1.    For compensatory damages allowed by law, the exact sum to be proven at time of trial.

K.   AS TO THE TWELFTH CAUSE OF ACTION FOR UNJUST ENRICHMENT:

   1.   For compensatory and punitive damages allowed by law, the exact sum to be proven at time of trial;

   2.   For the imposition of a constructive trust on for the benefit of Plaintiffs for all sums of money deposited in escrow;

   3.   For restitution of all moneys deposited in escrow by Plaintiffs;

   4.   For an equitable lien on all subject matters purchased with moneys deposited in escrow by Plaintiffs;

   5.   For an order requiring transferees with knowledge of the moneys deposited in escrow by Plaintiffs to make restitution; and

   6.   For an accounting between the parties and for payment to Plaintiffs of the amounts found due and owing from Defendants as a result of such accounting.

L.   AS TO ALL CAUSES OF ACTION:

   1.   For Plaintiffs' reasonable attorneys' fees and costs of suit incurred herein; and

   2.   For such other and further relief as the Court deems just, necessary or appropriate.

DATED:  April 26, 2010

ALLEN P. SRAGOW
SRAGOW & SRAGOW
6665 Long Beach Boulevard, Suite B-22
Long Beach, California 90805
Tel: (310) 639-0782
Fax: (310) 639-7210

EUGENE R. SCHEIMAN
MARK A. BLOOM
ARENT FOX LLP
1675 Broadway
New York, New York 10019-5820
Tel:  (212) 484-3900
Fax:  (212) 484-3990

*Attorneys for Plaintiffs and Third Party Defendants Steven Alevy, Bankers Capital, Allen Sragow, Allen Alevy, and Robert Friedman*